1  Christina N. Goodrich (SBN 261722)
   christina.goodrich@klgates.com
2  Zachary T. Timm (SBN 316564)
   zach.timm@klgates.com
3  **K&L GATES LLP**
   10100 Santa Monica Boulevard
4  Seventh Floor
   Los Angeles, California  90067
5  Telephone: 310.552.5000
   Facsimile: 310.552.5001
6
   Beth W. Petronio, admitted *pro hac vice*
7  beth.petronio@klgates.com
   **K&L GATES LLP**
8  1717 Main Street, Suite 2800
   Dallas, TX 75201
9  Telephone:  (214) 939-5815
   Facsimile:  (214) 939-5849
10
   Attorneys for Defendant
11 Tyler Technologies, Inc.

12                    **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

14

15 | JOHN ROE 1, an individual; JANE | Case No. 8:22-cv-00983-DOC-DFM |
   ROE 1, an individual; JANE ROE 2

16 an individual; JANE ROE 3, an | **TYLER TECHNOLOGIES, INC.'S**
   individual, JOHN ROE 2, on behalf | **NOTICE OF MOTION AND**

17 of themselves and all others | **MOTION TO DISMISS FIRST**
   similarly situated, | **AMENDED COMPLAINT**

18              Plaintiffs, | [Assigned to Hon. David O. Carter,
                            | Courtroom 10A]
19       v.

20 THE STATE BAR OF
   CALIFORNIA; TYLER

21 TECHNOLOGIES, INC., a | State Complaint Filed:  March 18, 2022
   Delaware corporation; KEVAN | [Orange County Superior Court Case

22 SCHWITZER, an individual; RICK | No. 30-02022-01250695-CU-AT-CXC]
   RANKIN, an individual; and DOES

23 4 through 10, inclusive, | First Amended
                            | Complaint Filed:      April 13, 2022
24              Defendants.

25                            | Notice of Removal
                            | Filed:                May 13, 2022
26
                            | Hearing Date:         August 8, 2022
27

28

DEFENDANT TYLER TECHNOLOGIES INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 8, 2022, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 10A of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, California 92701, Defendant Tyler Technologies, Inc. ("Tyler") will and hereby does move to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

This Motion is made on the grounds that the Roe Plaintiffs have failed to state any claim against Tyler upon which relief can be granted.

This motion is made following the conference of counsel for all Parties pursuant to Local Rule 7-3, which took place on May 26, 2022.  Tyler, by and through its counsel, explained the basis for this Motion, including the grounds upon with relief is sought, but Plaintiffs would not agree to a dismiss Tyler with prejudice.  Accordingly, the Parties have reached an impasse requiring Tyler to bring the instant Motion.  Tyler is informed and believes that Plaintiffs intend to oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities and supporting declaration of Beth W. Petronio, the Complaint, the Proposed First Amended Complaint, the complete files and records in this action, and such other and further matters as the Court may deem just and proper to consider this Motion.

**K&L GATES LLP**

Dated:  June 6, 2022         By:      */s/ Zachary T. Timm*
                                                Beth W. Petronio
                                                Christina N. Goodrich
                                                Zachary T. Timm

                                                Attorneys for Defendant
                                                TYLER TECHNOLOGIES, INC.

1

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND ................................................................ 2

III.    THE LEGAL STANDARD ................................................................. 5

IV.     ARGUMENT ....................................................................................... 6

        A.     Plaintiffs Fail to State a Claim for Constitutional or Common
               Law Invasion of Privacy ........................................................ 6

        B.     Plaintiffs Fail to Properly Allege Any Antitrust Claim .................... 10

        C.     Plaintiffs Fail to State a Claim for Negligence ................................. 14

        D.     Plaintiffs' Negligence *Per Se* "Claim" Is Not a Standalone
               Claim ....................................................................................... 16

V.      CONCLUSION ..................................................................................17

TABLES OF CONTENTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ......................................................................5

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,
    592 F.3d 991 (9th Cir. 2010) ......................................................................11

*Am. Acad. Of Pediatrics v. Lungren*,
    16 Cal.4th 307 (1997) ..................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................5

*Belluomini v. Citigroup, Inc.*,
    No. CV 13-01743 CRB, 2013 WL 3855589 (N. D. Cal., July 24, 2013) ...................7

*Catlin v. Wash. Energy Co.*,
    791 F.2d 1343 (9th Cir. 1986) ....................................................................11

*Corales v. Bennet*,
    567 F.3d 554 (9th Cir. 2009) ......................................................................14

*Cordova v. Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A.*,
    649 F.2d 36 (1st Cir. 1981) ........................................................................14

*Corona v. Sony Pictures Entertainment, Inc.*,
    No. 14-CV-09600-RGK, 2015 WL 3916744 (C.D. Cal., June 15, 2015) ...............15

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (9th Cir. 2010) ........................................................12

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal., Nov. 3, 2016)..10, 16

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ...............................................................5, 15

*Fields v. Napa Milling Co.*,
    164 Cal.App.2d 442 (1958) ........................................................................15

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal.App.4th 986 (2011) ......................................................................10

*Free FreeHand Corp. v. Adobe Sys. Inc.*,
    852 F. Supp. 2d 1171 (N.D. Cal. 2012) ......................................................13

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  Inc., 896 F.2d 1542 (9th Cir. 1990) ............................................................5

*Hill v. Nat'l Collegiate Athletic Ass'n,*
  7 Cal.4th 1 (1994) .....................................................................................6, 7

*Hoff v. Vacaville Unified Sch. Dist.,*
  19 Cal.4th 925 (Cal. 1998). .........................................................................16

*Holly v. Alta Newport Hosp., Inc.,*
  No. 2:19-cv-07496-ODW (MRWx), 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) 16

*In re Attorney Discipline System,*
  19 Cal.4th 582 (Cal. 1998) ............................................................................2

*In re Google Assistant Privacy Litig.,*
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ...........................................................8

*In re iPhone Application Litig.,*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................9, 10, 15

*In re Yahoo Mail Litigation,*
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................6, 7, 8, 10

*Jordache Enters., Inc. v. Brobeck, Pheger & Harrison,*
  18 Cal.4th 739 (1998) .................................................................................15

*Kaplan v. Burroughs Corp.,*
  611 F.2d 286 (9th Cir. 1979) .......................................................................11

*Loder v. City of Glendale,*
  14 Cal.4th 846 (1997) ...................................................................................6

*Low v. LinkedIn Corp.,*
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................6, 7, 8

*Manzareck v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008) .......................................................................5

*McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.,*
  No. Civ. 08-00080 JMS/BMK, 2008 WL 2437739 (D. Haw. June 17, 2008) .........11

*McGarry v. Sax,*
  158 Cal. App. 4th 983 (2008) ......................................................................14

*McGlinchy v. Shell Chem. Co.,*
  845 F.2d 802 (9th Cir. 1988) .......................................................................13

*Morgan, Strand, Wheeler & Biggs v. Radiology Ltd.,*
  924 F.2d 1484 (9th Cir. 1991) .....................................................................13

*Naso v. Park,*
  850 F. Supp. 264 (S.D. N.Y. 1994) .............................................................14

*Newcal Indus. Inc. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008) .....................................................................11

iii
TABLES OF CONTENTS AND AUTHORITIES

*Paladin Assocs. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) .................................................................... 13

*Papasan v. Allain*,
  478 U.S. 265 (1986) .................................................................................... 11

*People of Cal. v. Kinder Morgan Energy Partners, L.P.*,
  569 F. Supp. 2d 1073 (S.D. Cal. 2008) ...................................................... 16

*Praxair Servs., Inc. v. Rabb*,
  No. CV 07-677-TUC-RCC, 2008 WL 11339091 (D. Ariz. May 21, 2008) ............ 13

*Quiroz v. Seventh Ave. Ctr.*,
  140 Cal. App. 4th 1256 (2006) ................................................................... 16

*Razuki v. Caliber Home Loans, Inc.*,
  No. 17cv1718-LAB (WVG), 2018 WL 2761818 (S.D. Cal., June 8, 2018)............. 9

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ....................................................................... 12

*Rosenthal v. Justices of the Supreme Ct. of Cal.*,
  910 F.2d 561 (9th Cir. 1990) ......................................................................... 2

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 3d 1121 (N.D. Cal. 2008), *aff'd*, 380 Fed. App'x 689 (9th Cir. 2010) 10

*Sayre v. Google, Inc.*,
  No. C 19-02247, 2019 WL 6036703 (N.D. Cal. Nov. 14, 2019) ............................ 11

*Schmitt v. SN Servicing Corp.*,
  No. 21-CV-03355-WHO, 2021 WL 5279822 (N.D. Cal. Nov. 12, 2021).................. 9

*Scott-Codiga v. Cnty. Of Monterey*,
  No. 10-CV-05440-LHK, 2011 WL 4434812 (N.D. Cal., Sept. 23, 2011) ................ 8

*Shapiro v. AT&T Mobility, LLC*,
  No. 2:19-CV-8972-CBM-FFM, 2020 WL 4341778 (C.D. Cal., May 18, 2020)..8, 10

*Shaw v. Hahn*,
  56 F.3d 1128 (9th Cir. 1995) ......................................................................... 6

*Shwarz v. U.S.*,
  234 F.3d 428 (9th Cir. 2000) ......................................................................... 6

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) .................................................................................... 12

*U.S. Philips Corp. v. KXD Tech. Inc.*,
  No. CV 05-8953 ER (PLAx), 2006 WL 8421895 (C.D. Cal. Sept. 14, 2006).......... 12

*U.S. v. Grinnell Corp.*,
  384 U.S. 563 (1966) .................................................................................... 11

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ......................................................................... 6

TABLES OF CONTENTS AND AUTHORITIES

*Viriyapanthu v. State Bar of California,*
  813 Fed. App'x. 312 (9th Cir. 2020) ........................................................12

*W. Mining Council v. Watt,*
  643 F.2d 618 (9th Cir. 1981) .....................................................................5

*Zbitnoff v. Nationstar Mortgage, LLC,*
  No. C 13-05221 WHA, 2014 WL 1101161 (N.D. Cal., March 18, 2014).................8

**Statutes**

15 U.S.C. § 2 .............................................................................................11

15 U.S.C. § 3 .............................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................5, 11, 15

Fed. R. Evid. 201(b)(2) ................................................................................6

TABLES OF CONTENTS AND AUTHORITIES

## I.   **INTRODUCTION**

Tyler Technologies, Inc. ("Tyler") is a leading provider of technology solutions to schools, courts and other public sector clients at the local, state, and federal level. (First Amended Complaint ("FAC") ¶88.)  Among Tyler's many solutions is a suite of software for state courts and clerks, popularly known as "Odyssey." (FAC ¶8.)  Tyler licensed certain Odyssey modules to  the State Bar of California (the "State Bar"), including a public-facing module referred to as the "Odyssey Portal" that enabled State Bar information to be accessed and searched via the internet. (*See* FAC ¶¶8, 16-19.)[1]

On February 24, 2022, the State Bar learned that certain nonpublic case information related to lawyer disciplinary proceedings—including case number, filing date, case type, case status, and respondent and complaining witness names (the "Case Data")—had been "harvested" from the Odyssey Portal and posted on a third-party website, JudyRecords.com.  (FAC ¶¶ 22, 25, 27, 32.)  By February 26, 2022, the Case Data was removed from JudyRecords.com.   The State Bar provided various public updates regarding the incident on its website, including answers to certain "Frequently Asked Questions" (the "FAQs"). (FAC ¶36; Ex. A.)  The FAC incorporates those FAQs into the complaint and refers to them multiple times.  (FAC ¶¶ 33, 36.)

Among other things, the FAQs made clear that the information harvested from the Odyssey Portal and posted to JudyRecords.com included only the limited Case Data and not underlying disciplinary complaints, filings or other case documents.  During the time the Case Data was publicly posted on JudyRecords.com, only 1,034 records were viewed through a search on JudyRecrods.com.  Only six of those 1,034 records included

---

[1]     The "Odyssey" software module at issue here is the public-facing search portal, as opposed to the internal case management software used by the State Bar to manage and store its own records.  The FAC frequently conflates the two, but they are different software systems.  Plaintiffs' confusion on this issue is one of numerous technically inaccurate allegations in the FAC.  By citing to the FAC and accepting its well-pleaded allegations as true for purposes of this motion, Tyler is not agreeing that Plaintiffs' allegations are necessarily accurate, correct or true.

1

any potentially sensitive information, as those six records identified the case type as "Mental Health/Substance Abuse."

On March 18, 2022, five unidentified Roe individuals filed a Class Action Complaint in Superior Court in Orange County, California purporting to represent classes of individuals who had been either the subject of a disciplinary proceeding or complaining witnesses. Two Roe Plaintiffs allege to have been complaining witnesses in disciplinary proceedings, and three Roe Plaintiffs allege that they were licensed attorneys that were the subject of disciplinary complaints filed with the State Bar. In their FAC, filed on April 13, 2022, the Roe Plaintiffs attempt to assert six separate causes of action against Tyler. For the reasons detailed below, the Roe Plaintiffs have failed to state a claim for any of these six causes of action asserted against Tyler.

## II.   **FACTUAL BACKGROUND**

The State Bar is a public corporation created as an administrative arm of the California Supreme Court for the purpose of assisting in matters of attorney admission and discipline. *See In re Attorney Discipline System,* 19 Cal.4th 582, 598–99 (Cal. 1998); *see also Rosenthal v. Justices of the Supreme Ct. of Cal.*, 910 F.2d 561, 566 (9th Cir. 1990); FAC ¶12. The State Bar maintains certain disciplinary records in a case management system known as Odyssey that was licensed to the State Bar by Tyler. (FAC ¶¶16-17.) Pursuant to State Bar Rules of Procedure, certain portions of these records are kept confidential and not made publicly available. (FAC ¶¶13-15.) In addition to its internal Odyssey case management system, the State Bar permits the public to search nonpublic State Bar records via a separate Odyssey software referred to as the "Odyssey Portal." (FAC ¶17.) When searched, the Odyssey Portal initially returns Case Data similar to a court docket sheet. (FAC ¶¶26, 32; Ex. A, p. 3.)

According to the FAC, Kevan Schwitzer ("Schwitzer"), an individual unaffiliated with either Tyler or the State Bar,[2] operates a website at www.JudyRecords.com that

---

[2]   Schwitzer was previously named as a defendant in this matter, but has been dismissed via stipulation.

seeks to consolidate and make records from various federal and state agencies, including courts, available to the public.  (FAC ¶7.)  In or about October 2021, Schwitzer decided to make the State Bar's disciplinary records part of the court records that were searchable and accessible on JudyRecords.com.  (FAC ¶22.)  Because of a previously unknown vulnerability in the Odyssey Portal, Schwitzer was able to access approximately 322,525 Case Data reports that the State Bar otherwise intended to remain confidential.  (FAC ¶¶21, 22, 25; *see also* Ex. A, pp. 2 & 3.)  Schwitzer made the Case Data publicly available to be searched on JudyRecords.com for approximately four months.  (FAC ¶25.)

On February 24, 2022, an individual who was a complainant in a State Bar disciplinary proceeding, informed the State Bar that certain confidential records were accessible on JudyRecords.com.  (FAC ¶27.)  The State Bar immediately began an investigation and initially reported that the State Bar's Odyssey Portal had been unlawfully accessed.  (Ex. A, p. 4.)  The State Bar later characterized the incident not unlawful, but as an unintentional act by Schwitzer, who was allegedly using a unique access method to attempt to access public records.  (Ex. A, p. 3.)  According to the State Bar, Schwitzer's unique access method took advantage of a previously unknown security vulnerability in the Odyssey Portal.  (Ex. A, p. 3.)

During the time the State Bar records were available to be searched on JudyRecords.com, 1,034 of those records showed evidence of actually being accessed by a member of the public.  (Ex. A, pp. 1-2, 4.)  Of the records that were accessed, only six contained potentially sensitive information, as the "Case Type" identified the case as related to "Mental Illness or Substance Abuse."  (Ex. A, pp. 1-2.)  None of the Roe Plaintiffs allege that their disciplinary proceedings before the State Bar involved allegations of mental illness or substance abuse.  (*See generally* FAC ¶¶ 1-5.)  Likewise, none allege that their Case Data showed evidence of being accessed while the information was available for search on JudyRecords.com.  Nor is there any allegation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

that the information was accessed by a member of the public, as opposed to by either the attorney or complaining witness themselves.

When the Defendants realized that confidential information had been posted to JudyRecords.com, they worked to ensure that all of the State Bar records were removed from the site. (Ex. A, pp. 2-4.) The search function on JudyRecords.com was disabled. (*Id.*) In addition, Tyler and the State Bar took steps to remediate the security vulnerability in the Odyssey Portal. (*Id.*) The State Bar reported the software vulnerability to the Common Vulnerabilities and Exposures Program, an international, community-driven effort to identify, define and publicly catalog cybersecurity vulnerabilities. (*Id.*)

By March 15, 2022, Tyler had remediated the vulnerability in the Odyssey Portal and public access to the State Bar's Odyssey Portal had been restored. (Ex. A, pp. 1-2.) On May 6, 2022, although not legally required to do so, the State Bar gave notice to all complainants, witnesses and respondents whose names appeared in the 322,525 records that were available for searching on JudyRecords.com from approximately October 15, 2021 to February 26, 2022. (Ex. A, p. 1.)

The Roe Plaintiffs originally filed their Class Action Complaint on March 18, 2022. Tyler was initially identified as a non-party software supplier to the State Bar. On March 25, 2022, the Roe Plaintiffs amended their complaint to substitute Tyler for "Doe 1."

On April 13, 2022, the Roe Plaintiffs filed the FAC. Jane Roes 1 and 2 allege that they were complaining witnesses in State Bar disciplinary proceedings. (FAC ¶¶1-2.) Jane Roe 3 and John Roes 1 and 2 allege that they were attorneys licensed to practice law in California who were the subject of a State Bar disciplinary complaint or investigation. (FAC ¶¶3-5.) The Roe Plaintiffs provide little to no additional information regarding themselves, but purport to represent putative classes of complaining witnesses or attorneys involved in State Bar disciplinary proceedings who

were identified in the 322,525 Case Data records that were available to be searched on JudyRecords.com between October 2021 and February 2022.  (FAC ¶43.)

The FAC alleges six causes of action against Tyler: (1) Invasion of Privacy under the California Constitution Article I Section 1; (2) Invasion of Privacy under California Civil Code § 1798.53; (3) Antitrust Violation – Sherman Act § 2; (4) Antitrust Violation – Sherman Act § 3; (5) Negligence; and (6) Negligence Per Se.  None of these causes of action have been properly pled and each one should be dismissed for the reasons detailed below.

## III.   The Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party."  *Manzareck v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, a court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  *See, Id*. (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A district court generally will not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) motion to dismiss.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).  Courts may, however, "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *U.S. v.*

*Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995).  A court need not accept as true allegations that are contradicted by judicially noticeable facts.  *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).  Here, the FAQs were incorporated into and referenced in the FAC (¶¶ 30, 36) and are proper for this Court to consider.  Moreover, because the FAQs are posted on a publicly-available website of a public corporation created as an administrative arm of the California Supreme Court, they are properly the subject of judicial notice by this Court. *See* Fed. R. Evid. 201(b)(2).

## IV.  <u>ARGUMENT</u>

The FAC fails to state any claim against Tyler upon which relief can be granted.

### A.  **Plaintiffs Fail to State a Claim for Constitutional or Common Law Invasion of Privacy**

The California Constitution creates a privacy right that protects individuals from the invasion of their privacy by private parties. *Am. Acad. Of Pediatrics v. Lungren*, 16 Cal.4th 307, 326 (1997).  To establish a constitutional invasion of privacy claim, a plaintiff must demonstrate three elements: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 39-40 (1994).  Similarly, to state a common law invasion of privacy claim, a plaintiff must allege "(1) intrusion into a private place, conversation or matter (2) in a manner *highly offensive to a reasonable person*."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (emphasis in original).  "These elements are not a categorical test, but rather serve as threshold components of a valid claim to be used to 'weed out claims that involve so insignificant or de minimus an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.'"  *In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016, 1037 (N.D. Cal. 2014), *quoting Loder v. City of Glendale*, 14 Cal.4th 846, 893 (1997).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

The California Constitution and common law each set a "high bar" for establishing an invasion of privacy claim. *Low*, 900 F. Supp. 2d at 1025*; see also In re Yahoo*, 7 F. Supp. 3d at 1038, *citing Belluomini v. Citigroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, at *6 (N. D. Cal., July 24, 2013). In order to qualify as a "serious invasion of privacy," the defendant's conduct must be "an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal.4th at 37.

"Whether a legally recognizable privacy interest is present in a given case is a question of law to be decided by the court." *Id.* at 40. Likewise, whether defendant's conduct constitutes a serious invasion of privacy "may be adjudicated as a matter of law" if "the undisputed material facts show…an insubstantial impact on privacy interests." *Id.* Here, Plaintiffs have failed to sufficiently allege the required elements of either a constitutional or common law invasion of privacy claim as a matter of law.

First, Plaintiffs have failed to allege a legally protected privacy interest. The FAC alleges only that the Roe Plaintiffs "had a legally protected privacy interest." (FAC ¶66.) This allegation is "simply a bare recitation of the elements of a privacy claim," and is "fatally conclusory." *In re Yahoo*, 7 F. Supp. 3d at 1041. Moreover, "the California Constitution protects only the 'dissemination of misuse of *sensitive* and *confidential* information.'" *Id.* at 1040, *citing Hill*, 7 Cal.4th at 35 (emphasis in original). Although there are allegations regarding Case Data being posted on JudyRecords.com (*see, e.g.,* FAC ¶¶21-22), the Roe Plaintiffs fail to allege what specific information belonging to them was actually published to JudyRecords.com, whether any member of the public actually accessed that information, or how their particular Case Data, qualifies as confidential or sensitive information.

Moreover, as noted above, during the four months that the State Bar Case Data records were available for search on JudyRecords.com, only 1,034 Case Data records were actually accessed by a member of the public. (Ex. A, pp. 1-2.) The Roe Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

have not alleged that any specific Case Data related to them was actually accessed or that any member of the public actually viewed that information.[3]

The court in *In Re Yahoo* faced a similar situation.  There, the plaintiffs generally alleged that emails intercepted by Yahoo contained sensitive personal information, but did not allege what specific content in the emails was legally protected.  7 F. Supp. 3d at 1041.  Instead, plaintiffs alleged in a conclusory fashion that the emails were "private."  *Id.*  The court found that plaintiffs' allegations failed as a matter of law and were "fatally conclusory."  *Id.*; *see also Zbitnoff v. Nationstar Mortgage, LLC*, No. C 13-05221 WHA, 2014 WL 1101161, at *4 (N.D. Cal., March 18, 2014) (explaining the allegation that information was "private information" was too conclusory); *Scott-Codiga v. Cnty. Of Monterey*, No. 10-CV-05440-LHK, 2011 WL 4434812, at *7 (N.D. Cal., Sept. 23, 2011) (dismissing constitutional privacy claim where plaintiff had not "specified the material defendants released to the public in enough detail for the Court to determine whether it might conceivably fall within a recognized privacy interest."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (reasoning that plaintiffs failed to alleged sufficient information about the content of conversations that were recorded to support a privacy claim); *Shapiro v. AT&T Mobility, LLC*, No. 2:19-CV-8972-CBM-FFM, 2020 WL 4341778, at *2 (C.D. Cal., May 18, 2020) ("Plaintiff's use of the phrases 'account information,' 'personal, legal, and business information,' and 'confidential financial, business, and legal information,' are too vague for the Court to determine whether Plaintiff has a right to protection of such information under the California Constitution."); *Low*, 900 F. Supp. 2d at 1025 (N.D. Cal. 2012) (refusing to find serious invasion of privacy where plaintiffs could not allege that third parties actually obtained or viewed any confidential information).

Here, other than generically alleging that "State Bar disciplinary records" (FAC ¶22), "confidential information from the State Bar" (*Id.*), and "confidential

---

[3]   Because the Roe Plaintiffs have chosen to proceed anonymously, there is no way to confirm whether any of their information was accessed, and, if so, whether what was accessed was legally protected confidential or sensitive information.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

disciplinary records or other confidential information" (FAC ¶25), were made public on JudyRecords.com, the Roe Plaintiffs have not specifically identified what information was actually available for searching on JudyRecords.com or was accessed and then viewed by the public.  Roe Plaintiffs' conclusory allegations do not suffice.  In the absence of an allegation that any of the Roe Plaintiffs had a legally protected privacy interest, this Court should dismiss the invasion of privacy claim.

Second, plaintiffs have not properly plead a serious invasion of privacy.  As a matter of law, "[l]osing personal data through insufficient security doesn't rise to the level of an egregious breach of social norms underlying the protection of sensitive data." *Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 2761818, at *2 (S.D. Cal., June 8, 2018).  "Even negligent conduct that leads to theft of highly personal information, including social security numbers, does not approach the standard of actionable conduct under the California Constitution and thus does not constitute a violation of Plaintiff's right to privacy."  *Id.*, *quoting In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *see also, Schmitt v. SN Servicing Corp.*, No. 21-CV-03355-WHO, 2021 WL 5279822, at *4 (N.D. Cal. Nov. 12, 2021) (finding even negligent data breach exposing personal and financial information, including names, addresses, loan numbers, balance and billing information, not sufficient to state a claim).

Here, the nature of the incident does not rise to the level of an "egregious" breach.  Although the Roe Plaintiffs make the conclusory allegation that Defendants' actions involved "intentional conduct" (FAC ¶25), the FAC fails to allege any criminal or intentionally malicious conduct.   Instead, the Roe Plaintiffs have alleged mere negligence that exposed otherwise non-public information as a result of allegedly insufficient security.  (FAC ¶¶112-120.)  Such allegations are, as a matter of law, insufficient to rise to the level of an egregious breach of social norms required to state a claim under either the California Constitution or common law.  *See, e.g, Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL

9

6523428, at * 12 (S.D. Cal., Nov. 3, 2016) ("Plaintiff fails, for example, to allege any facts that would suggest that the data breach was an intentional violation of Plaintiff's and other class members' privacy, as opposed to merely a negligent one.").

Moreover, "[e]ven disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *In re Yahoo*, 7 F. Supp. 3d at 1038; *see also Shapiro*, 2020 WL 4341778 at *2 ("The alleged disclosure of Plaintiff's AT&T account information and CPNI, and Plaintiff and his family's personal, business, legal, and financial information does not constitute an egregious breach of social norms."); *In re iPhone,* 844 F. Supp. 2d at 1063 (holding that disclosure of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy); *Ruiz v. Gap, Inc.*, 540 F. Supp. 3d 1121, 1127-28 (N.D. Cal. 2008), *aff'd*, 380 Fed. App'x 689 (9th Cir. 2010) (theft of laptop containing personal information, including social security numbers, was not egregious breach of privacy); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) (disclosure of plaintiff's address not egregious breach of privacy).

The Roe Plaintiffs have simply failed to allege any sufficient factual basis to state a claim for either constitutional or common law invasion of privacy.  The Court should dismiss those claims.

## B.    Plaintiffs Fail to Properly Allege Any Antitrust Claim

The Roe Plaintiffs' Sherman Act antitrust claims are fatally deficient efforts to push a round peg into a square hole; they fail at every level to state a claim.  While the Roe Plaintiffs' allegations are not a model of clarity, they appear to be alleging that the Defendants, including Tyler, engaged in anti-competitive conspiracy to intentionally restrict the ability of certain "attorneys who have been disciplined"—primarily solo practitioners— to compete in the "legal profession."  (FAC ¶¶ 81-99.)  The FAC utterly fails to explain why Tyler, a software vendor to the public sector, would have any reason whatsoever to conspire against members of the California bar or to assist the State Bar

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

in favoring large law firms over solo practitioners.  Even if the allegations were true (and they are not), it is simply not actionable anti-competitive conduct under the Sherman Act.

Section 2 of the Sherman Act provides liability for attempts to "monopolize any part of the trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 2.  To succeed in a Section 2 claim, a plaintiff must establish "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal anti-trust injury."  *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010); *see also U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  Similarly, attempted monopolization under Section 2 requires that a plaintiff allege "(1) specific intent to monopolize a relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of success."  *Catlin v. Wash. Energy Co.*, 791 F.2d 1343, 1348 (9th Cir. 1986).  Here, Plaintiffs have not sufficiently alleged any of these elements.

First, Plaintiffs have failed to properly plead a relevant market.  Typically, "a 'relevant market' encompasses notions of geography along with product use, quality and description."  *Sayre v. Google, Inc.*, No. C 19-02247, 2019 WL 6036703, at *2 (N.D. Cal. Nov. 14, 2019), *citing Kaplan v. Burroughs Corp.*, 611 F.2d 286, 292 (9th Cir. 1979).  Although a relevant market is typically a factual element, a complaint may still be "dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable."  *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).  Plaintiffs must support their allegation of a relevant market with factual allegations that support the market, and a mere "legal conclusion couched as a factual allegation" will not suffice.  *McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*, No. Civ. 08-00080 JMS/BMK, 2008 WL 2437739, at *7 (D. Haw. June 17, 2008), *quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, Plaintiffs are apparently attempting to allege that the relevant market is the practice of law in the State of California:  "[t]he market in this case is comprised of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

approximately 250,000 members of the California State Bar."   (FAC ¶85.)   This conclusory allegation is not sufficient.   Even if it were, the allegation makes no sense in the context of the Roe Plaintiffs' Section 2 claim.

Perhaps that is because the Roe Plaintiffs also have not, and cannot allege either the possession of monopoly power in that market by Tyler or the dangerous probability of successful monopolization by Tyler (or any of the other Defendants).   To sufficiently plead the possession of monopoly power, the Roe Plaintiffs must "allege sufficient facts to establish either direct proof of injury to competition in terms of restricted output and supra-competitive prices, or circumstantial proof establishing that [defendant] 'owns a dominant share of that market' and that 'there are significant barriers to entry.'" *U.S. Philips Corp. v. KXD Tech. Inc.*, No. CV 05-8953 ER (PLAx), 2006 WL 8421895, at *2 (C.D. Cal. Sept. 14, 2006), *quoting Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *see also DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1136 (9th Cir. 2010) ("Market power is the ability to raise price profitability by restricting output; when a party has sufficient market power to exclude competition or control prices, that party possess monopoly power.") (citation omitted).   Similarly, to properly allege "the dangerous probability of monopolization in an attempt case…requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993).   Thus, to the extent the Roe Plaintiffs are alleging attempted monopolization, they fail to offer even a conclusory allegation of a "dangerous probability of success," let alone one that rises above the speculative level. *See, e.g., Viriyapanthu v. State Bar of California*, 813 Fed. App'x. 312 (9th Cir. 2020) (holding that accusations of conspiracy against the State Bar of California were too conclusory and were properly dismissed).

Tyler develops, licenses, implements, and supports software solutions for the public sector.   Plaintiffs do not allege that Tyler competes in the professional legal practice market, controls prices for legal services, or otherwise has power or control in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

that market.[4]   Because the Roe Plaintiffs have not alleged that Tyler possessed a monopoly in the legal practice market or had a "specific intent to control prices or destroy competition in the relevant market,…they have failed to state a claim for attempted monopolization under which relief can be granted." *Praxair Servs., Inc. v. Rabb*, No. CV 07-677-TUC-RCC, 2008 WL 11339091 (D. Ariz. May 21, 2008), *citing Morgan, Strand, Wheeler & Biggs v. Radiology Ltd.*, 924 F.2d 1484, 1491 (9th Cir. 1991).

Second, the Roe Plaintiffs have failed to sufficiently allege actionable anticompetitive activity by Tyler.  The FAC only includes the conclusory allegation that "Tyler Technologies and the State Bar join in anticompetitive behavior which benefitted lawyers."  (FAC ¶ 96.)  Without more, this allegation is not sufficient.  Sherman Act plaintiffs typically allege that defendants are "(1) charging monopolist prices; (2) discontinuing support for and development of [acquired products; and] (3) bundling [products to further enhance marketshare] . . . ."  *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012).  Not only do the Roe Plaintiffs not allege any typical type of anticompetitive activity, the FAC fails to explain how or why Tyler would or could participate in an anticompetitive conspiracy in an industry that it has no involvement in.

Third, to the extent they are alleging an actual monopoly, the Roe Plaintiffs have failed to plead an antitrust injury.  An antitrust injury is "injury to the market or to competition in general, not merely injury to individuals."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988).  "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).  Here, at most, Roe Plaintiffs have alleged only speculative, uncertain and potentially negative

---

[4]  Roe Plaintiffs do allege that Tyler has "market power" in the public sector software licensing space (FAC ¶90), but that "market power" is entirely irrelevant to the alleged Sherman Act claim.   Roe Plaintiffs are not alleging that Tyler took steps to harm competition in that market.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

impacts on certain individual attorneys because clients *might* avoid hiring attorneys with disciplinary complaints.  (*See, e.g.,* FAC ¶ 99.)  This allegation does not rise to the level of an antitrust injury.

Finally, the Roe Plaintiffs' claim that purports to allege violations of Section 3 of the Sherman Act must be dismissed because Section 3, by its express terms, applies to agreements made "in restraint of trade or commerce *in any Territory of the United States or the District of Columbia*."  15 U.S.C. § 3 (emphasis added).  Section 3 extends the reach of the Sherman Act to U.S. Territories and the District of Columbia.  *Id.; see also, e.g., Cordova v. Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A.*, 649 F.2d 36 (1st Cir. 1981) (analyzing whether Puerto Rico qualified as a "territory" for purposes of Section 3 of the Sherman Act).  Because plaintiffs "have not alleged that trade of any Territory or the District of Columbia is affected by defendants' actions," the FAC fails to state a Section 3 Sherman Act claim and must be dismissed.  *Naso v. Park,* 850 F. Supp. 264, 272 n.6 (S.D. N.Y. 1994).

### C.   Plaintiffs Fail to State a Claim for Negligence

To state a claim for negligence in California, a plaintiff must establish the following elements: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)."  *Corales v. Bennet*, 567 F.3d 554, 572 (9th Cir. 2009) *citing McGarry v. Sax,* 158 Cal. App. 4th 983, 994 (2008).  Plaintiffs have not adequately alleged these elements.

First, the Roe Plaintiffs have not sufficiently alleged that Tyler owed a duty directly to Roe Plaintiffs.  Instead, the FAC only superficially alleges the following conclusory statement: "Defendant Tyler Technologies voluntarily undertook to take responsibility for one or more of their Co-defendant's duties and/or owed the Plaintiffs and all members of the Classes a general duty of care when securing the confidential

14

disciplinary records so it could not be accessed through the portal." (FAC ¶116.) The FAC, however, contains no allegations to support this conclusion, including what responsibility Tyler "undertook to take," what steps Tyler was supposedly required to take and failed to take, or what standard of conduct Tyler was required to abide by for purposes of assessing its "general duty of care." The Roe Plaintiffs' conclusory and generalized allegations of a duty and nebulous breach of that duty are insufficient to state a claim pursuant to Rule 12(b)(6). *See, e.g., Fayer*, 649 F.3d at 1064 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.")

Second, "[i]t is fundamental that a negligent act is not actionable unless it results in injury to another." *Fields v. Napa Milling Co.*, 164 Cal.App.2d 442, 447 (1958). "California courts have indicated that speculative harm or the mere threat of future harm is insufficient to constitute actual loss." *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-CV-09600-RGK, 2015 WL 3916744, at *3 (C.D. Cal., June 15, 2015), *citing Jordache Enters., Inc. v. Brobeck, Pheger & Harrison,* 18 Cal.4th 739, 743 (1998). Plaintiffs must allege "an appreciable, nonspeculative, present injury." *In re iPhone*, 844 F. Supp. 2d at 1064. Here, the Roe Plaintiffs have alleged only speculative injuries without any specific details. For example, the Roe Plaintiffs allege that the public disclosure "*can* lead to reputation loss, job loss, [and] emotional distress" and that a "complainant *may* suffer in their employment" or that "any attorney *could* be harmed by others." (FAC ¶39) (emphasis added). The Roe Plaintiffs then make the conclusory allegation, unsupported by any actual facts, that they have suffered "harm…including, but not limited to, time, expense, worry, anxiety, reputational harm, and emotional distress." (FAC ¶41.)[5] Even if these allegations were generally characterized as assertions of proximate cause and damages, they are so bare as to be woefully

---

[5]    The Roe Plaintiffs' inability to allege any concrete damage makes sense given the fact that they also have not alleged that any of the Case Data accessed on JudyRecords.com actually related to any of the Roe Plaintiffs. The Roe Plaintiffs' simply have not (and cannot) allege the elements of a negligence claim against Tyler, and it should be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

insufficient. *See, e.g., Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496-ODW (MRWx), 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) (recognizing that, "although actual damages can include emotional distress, a plaintiff must support [their] claim for pain and suffering with something more than [their] own conclusory allegations, such as specific claims of genuine injury").

### D. Plaintiffs' Negligence *Per Se* "Claim" Is Not a Standalone Claim

In California, negligence *per se* is a "presumption of negligence that arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." *See, e.g., Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal.4th 925, 938 (Cal. 1998). "Accordingly, negligence *per se* is simply a codified evidentiary doctrine and does not *per se* establish tort liability." *Dugas*, 2016 WL 6523428, at *12, *citing Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1284-85 (2006). "[N]egligence *per se* does not state an independent cause of action because '[t]he doctrine does not provide a private right of action for violation of a statute.'" *Dugas*, 2016 WL 6523428, at *12, *quoting People of Cal. v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1087 (S.D. Cal. 2008). Thus, to the extent Plaintiffs' FAC purports to assert an independent cause of action for negligence *per se*, that cause of action should be dismissed.

Moreover, because Tyler has not violated any statute, including the California Constitution, the Roe Plaintiffs' negligence *per se* claim fails for this reason as well.

///
///
///
///
///
///
///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  **V.**      **CONCLUSION**

2          In light of the foregoing, Tyler respectfully requests that the Court grant this

3  motion, dismiss all of the Roe Plaintiffs claims against Tyler, and grant Tyler such other

4  and further relief to which it may be entitled.

5                                          **K&L GATES LLP**

6   Dated:  June 6, 2022                 By: */s/ Zachary T. Timm*

7                                              Beth W. Petronio
                                               Christina N. Goodrich
8                                              Zachary T. Timm

9
                                               Attorneys for Defendant
10                                             TYLER TECHNOLOGIES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS