Lenore L. Albert, Esq. SBN 210876
LAW OFFICES OF LENORE ALBERT
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Email: lenalbert@InteractiveCounsel.com
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of*
*themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, *on behalf of themselves and all others similarly situated*,<br><br>                      Plaintiff,<br>vs.<br><br>THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; KEVAN SCHWITZER; RICK RANKIN; and DOES 4 through 10, inclusive,<br>                      Defendants. | CASE NO. 22-cv-00983-DFM<br><br>Assigned to Hon. Douglas F. McCormick<br>Complaint filed: 03-18-2022<br><br>**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: September 15, 2022<br>Time: 2:00PM<br>Crtm: 6B |

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

I, Lenore Albert, am the attorney for the plaintiffs in the above-captioned matter and am licensed to practice law before the highest court in the state of California, the state of Michigan and the United States Supreme Court. I am a member in good standing in the United States District Court for the Central District of California. If called as a witness, I could testify competently to the following:

1. On May 26, 2022 I met with defense counsel on the issue whether the State Bar, its agents and employees should be enjoined pending final outcome of trial. A follow up email exchange occurred in July 2022. Attached hereto and fully incorporated herein as **Exhibit 1** is a true and correct copy of my email exchange requesting assurances that the State Bar would not pursue old investigations against the members who had their confidential investigations land on JudyRecords.com website.

2. I submitted claims in compliance with the Tort Claims act for both the complainants and the attorneys. Attached hereto and incorporated herein as **Exhibit 2** is a true and correct copy of the Claim form I submitted for Complainant John Roe 1, Dan Chmielewski, Jane Roe 1 and myself for all attorneys, along with rejection letter for John Roe 1.

3. Attached hereto and incorporated herein as **Exhibit 3** is a true and correct copy of the Rejection to the Claim form I submitted for Jane Roe 1.

4. Attached hereto and incorporated herein as **Exhibit 4** is a true and correct copy of my rejection letter to the claim I submitted for member plaintiffs.

5. I submitted each claim prior to filing the lawsuit.

6. I received rejections from the State Bar on each of the three claims.

7. After I submitted the claim to the State Bar and filed this action, the State Bar filed public Notice of Disciplinary Charges against me the following month.

8. That investigation had started more than six months prior and contained allegations of conduct that occurred in 2019.

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

9.  I filed a motion to dismiss and the State Bar Court granted the motion.

10. That action no longer appears on my membership page.

11. Undeterred, the State Bar Office of Chief Trial Counsel then filed the same charge in June 2022.

12. I requested all investigations that were pending against me from the State Bar.

13. I received a response to my request denying my access on the grounds the investigations are confidential. Attached hereto and incorporated herein as **Exhibit 5** is a true and correct copy of the State Bar response that it was confidential so there is no way attorneys can protect themselves.

14. I could not in good conscience file tort claims in the names of other attorneys that sought my representation in this matter.

15. I am using myself as an example to demonstrate that there is a reasonable basis for the attorney members to fear retaliation or having old confidential investigations pursued by the State Bar that would not have been pursued but for the data breach.

16. I received a notice by email that my confidential information had evidence of a page view on May 18, 2022. This was nearly three months after I asked the State Bar about the breach. Attached hereto and incorporated herein as **Exhibit 6** is a true and correct copy of the email notice I received about the breach.

17. I have received similar notices dated May 19, 2022, May 23, 2022 and July 11, 2022 from both complainants and attorney members, except most of the named plaintiffs have not received one.

18. The State Bar was given the identities of the original named plaintiffs in this case and they did not get the notice except for John Roe 2.

19. The earliest dated confidential investigation that was part of the breach that I am aware of was in or about the year 2000.

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*        22-CV-00983-DFM

20. Hence, the other named plaintiffs should have received notices too.

21. The State Bar published there was a breach of nearly 322,525 confidential records. Attached hereto as **Exhibit 7** is a true and correct copy of the State Bar website page where it published the breach occurred which can be confirmed by going to: https://www.calbar.ca.gov/About-Us/News/Data-Breach-Updates.

22. The State Bar also published links to the form letters it was sending out which can be confirmed going to: https://www.calbar.ca.gov/About-Us/News/Data-Breach-Updates and https://www.calbar.ca.gov/Portals/0/documents/DataBreach/Sample-Notice-Witness-Viewed-Records-No-Personal-Information.pdf and https://www.calbar.ca.gov/Portals/0/documents/DataBreach/Sample-Notice-Respondent-Viewed-Records.pdf

23. None of the forms the State Bar sent out contained the information as laid out in Cal Civ Code § 1798.29.

24. I received multiple inquiries from attorneys in good standing that received the notice, wondering if the communication meant that they had confidential information that landed on JudyRecords.

25. Some of the people who reached out to me did not believe the notice meant that there was a confidential matter that landed on the website because it said there were no page views.

26. I also had one State Bar defense counsel ask me why he was getting notices of the breach in the name of his clients.

27. I have scanned the documents I received from former Defendant Kevan Schwitzer and it appears that the State Bar and Tyler Technologies were very concerned about 'messaging' and it understood that they failed to adequately

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*        22-CV-00983-DFM

4

secure the confidential information in the Odyssey system. I will be filing his declaration concurrently herewith.

28. The 2020 State Bar audit shows that only 3.5% of the investigations became public. Attached hereto and incorporated herein as **Exhibit 8** is a true and correct copy of the 2020 State Bar Audit showing 3.5% of all cases are actually filed with public notice of disciplinary charges.

29. Only 10,670 investigations remain open according to the State Bar's own digital report which is far less than the 322,525 confidential investigations the State Bar said was found on JudyRecords.com. Attached hereto and incorporated herein as **Exhibit 9** is a true and correct copy of the 2021 State Bar Digital Report on the Disciplinary System metrics. The investigation number in the report can be found at https://annualreport.calbar.ca.gov/2021-annual-report/regulation-and-discipline?overlay=key-metrics.

30. When asked for assurances that these investigations would remain confidential the Board said it could not do so necessitating this motion.

31. It is easy fodder to be doxxed on the dark web, set up for harassment by never-do-wells or extortion.

Dated: August 5, 2022

Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT
/s/ Lenore Albert_____
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs, John Roe 1, Jane Roe 1, Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of themselves and all others similarly situated*

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*                22-CV-00983-DFM

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1968 S Coast Hwy #3960, Laguna Beach, CA 92651
A true and correct copy of the foregoing document entitled:

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR; and **(b)** in the manner stated below:

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):
Pursuant to F.R.Civ.P. on 08-05-2022, I served the following persons and/or entities ECF or email as follows:

X Service information continued on attached page
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08-05-2022 | James D. Ocon | /s/James D. Ocon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*        22-CV-00983-DFM

6

1

**SERVICE BY ECF**

2

**Defendant**

3

| The State Bar of California | represented by | **Michael G Rhodes** |

4

Cooley LLP

5

3 Embarcadero Center 20th Floor
San Francisco, CA 94111

6

415-693-2000

7

Fax: 415-693-2222

8

Email: rhodesmg@cooley.com
*LEAD ATTORNEY*

9

*ATTORNEY TO BE NOTICED*

10

**Barrett J Anderson**

11

Cooley LLP

12

4401 Eastgate Mall
San Diego, CA

13

858-550-6000

14

Fax: 858-550-6420

15

Email: banderson@cooley.com
*ATTORNEY TO BE NOTICED*

16

17

**Gregory John Merchant**
Cooley LLP

18

3175 Hanover Street

19

Palo Alto, CA 94304

20

650-843-5620
Email: gmerchant@cooley.com

21

*ATTORNEY TO BE NOTICED*

22

**Walter Waidelich**

23

Cooley LLP

24

4401 Eastgate Mall
San Diego, CA 92121

25

858-550-6000

26

Fax: 858-550-6420
Email: cwaidelich@jonesday.com

27

*ATTORNEY TO BE NOTICED*

28

**Defendant**

7

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

| | | |
|---|---|---|
| **Tyler Technologies, Inc.**<br>*also known as*<br>Doe 1 | represented by | **Jason Nathaniel Haycock**<br>K and L Gates LLP<br>Four Embarcadero Center Suite 1200<br>San Francisco, CA 94111<br>415-882-8200<br>Fax: 415-882-8220<br>Email:<br>jason.haycock@klgates.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Christina N Goodrich**<br>K and L Gates LLP<br>10100 Santa Monica Boulevard<br>8th Floor<br>Los Angeles, CA 90067<br>310-552-5000<br>Fax: 310-552-5001<br>Email:<br>christina.goodrich@klgates.com<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Kevan Schwitzer** | represented by | **David Belcher**<br>Faegre Drinker Biddle and Reath LLP<br>1800 Century Park East Suite 1500<br>Los Angeles, CA 90067<br>310-203-4000<br>Fax: 310-229-1285<br>Email:<br>david.belcher@faegredrinker.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Peter William Baldwin**<br>Faegre Drinker Bibble and Reath LLP |

8

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*        22-CV-00983-DFM

| | | 1177 Avenue of the Americas 41st Floor<br>New York, NY 10036<br>212-248-3140<br>Fax: 212-248-3141<br>Email:<br>peter.baldwin@faegredrinker.com<br>*ATTORNEY TO BE NOTICED* |
| --- | --- | --- |
| **Defendant** | | **Michael Gold** |
| **Rick Rankin** | | MAG@jmbm.com via Email |

Tiana A. Demas    tdemas@cooley.com

Christina N. Goodrich    klgateseservice@klgates.com, christina.goodrich@klgates.com

Michael Allan Gold    mgold@jmbm.com, cl7@jmbm.com, mastercalendar@jmbm.com

Lenore L Albert    docket@interactivecounsel.com, lenorealbert@msn.com, lenalbert@interactivecounsel.com

Justin Alexander Anderson    learly@jmbm.com, janderson@jmbm.com, mastercalendar@jmbm.com

Michael G Rhodes    mrhodes@cooley.com, john-brocales-7263@ecf.pacerpro.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, rhodesmg@cooley.com, smartinez@cooley.com

Walter Waidelich    cwaidelich@cooley.com, kjones@cooley.com

David Belcher    docketgeneral@faegredrinker.com, shanta.teekah@faegredrinker.com, david.belcher@faegredrinker.com

Beth W. Petronio    beth.petronio@klgates.com

Gregory John Merchant    gmerchant@cooley.com

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*        22-CV-00983-DFM

1

2    Peter William Baldwin     peter.baldwin@faegredrinker.com,
3    usacac.criminal@usdoj.gov, peter.baldwin@usdoj.gov

4    Barrett J Anderson     banderson@cooley.com, mdejesus@cooley.com, efiling-
5    notice@ecf.pacerpro.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

**DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

Roe 1, et al v State Bar of California et al - Reassurances

From:  lenore albert (lenalbert@interactivecounsel.com)

To:  banderson@cooley.com; beth.petronio@klgates.com; christina.goodrich@klgates.com; klgateservice@klgates.com; david.belcher@faegredrinker.com; gmerchant@cooley.com; janderson@jmbm.com; mgold@jmbm.com; rhodesmg@cooley.com; mrhodes@cooley.com; smartinez@cooley.com; peter.baldwin@faegredrinker.com; robert.retana@calbar.ca.gov; joan.randolph@calbar.ca.gov; suzanne.grandt@calbar.ca.gov; tdemas@cooley.com; vanessa.holton@calbar.ca.gov; cwaidelich@cooley.com; kjones@cooley.com; zach.timm@klgates.com

Date:  Monday, July 25, 2022 at 01:27 PM PDT

Dear Counsel,

I write seeking a written reassurance from the State Bar of California that it will immediately cease and desist from filing any public notice of disciplinary charges against any victim of the breach if the investigation/complaint is more than six months old.

The State Bar should be restrained from rushing to proceed to make these old matters public (regardless of investigative merit) due to the Breach on the misguided notion that such would mitigate the State Bar's damages here.


Sincerely,

Lenore Albert, Esq.
**Law Offices of Lenore Albert**
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Phone: 424-365-0741
https://InteractiveCounsel.com

*Consumer trial lawyer serving Michigan and California residents*

*Also, President & CEO*
**Simply Lenore LLC** *(patent pending ICan ID(tm) technology)*
**Mined Media Org.**
**Project Geeks**
**MasterMined(tm) Tech.**
**InteractiveCounsel**
**FactChecks(tm)**


Cal Bus & Prof Code 6001.1
"Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

"People who live in glass houses shouldn't throw stones."

If you believe this statement, you are in my tribe.

THIS E-MAIL MESSAGE IS INTENDED FOR THE SOLE USE OF THE INTENDED RECIPIENT(S) AND MAY CONTAIN ATTORNEY-CLIENT PRIVILEGED, ATTORNEY WORK PRODUCT PROTECTED, COMMON INTEREST PRIVILEGED, AND/OR OTHER CONFIDENTIAL INFORMATION. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE, OR DISTRIBUTION OF THIS MESSAGE AND/OR ITS ATTACHMENTS IS PROHIBITED.

IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS MESSAGE, PLEASE CONTACT THE SENDER BY REPLY E-MAIL (OR OTHER IMMEDIATE MEANS) AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE AND ITS ATTACHMENTS, IF ANY.

THANK YOU.

Re: Roe 1, et al v State Bar of California et al - Reassurances

From: lenore albert (lenalbert@interactivecounsel.com)

To: beth.petronio@klgates.com; christina.goodrich@klgates.com; klgateseservice@klgates.com; david.belcher@faegredrinker.com; gmerchant@cooley.com; janderson@jmbm.com; mgold@jmbm.com; rhodesmg@cooley.com; smartinez@cooley.com; peter.baldwin@faegredrinker.com; robert.retana@calbar.ca.gov; joan.randolph@calbar.ca.gov; suzanne.grandt@calbar.ca.gov; tdemas@cooley.com; vanessa.holton@calbar.ca.gov; cwaidelich@cooley.com; kjones@cooley.com; zach.timm@klgates.com; banderson@cooley.com

Date: Monday, August 1, 2022 at 04:51 PM PDT

Mr. Anderson I am only asking that the State Bar follow Bus & Prof Code which requires it to file its investigations or dismiss them in 6 months. Any investigation which began more than 6 months ago surely is not a priority. However, I can see and it was even kind of mentioned that the State Bar's position is there is no harm once charges are filed. Some of these investigations that were confidential and part of the breach date back to what - 2000? Bus & Prof Code gives a clear line where a public prosecution would appear to be retaliatory versus high priority.

I am not asking the State Bar to stop any investigation, but to stop any public disciplinary charge being filed where the investigation started more than six months ago.


Sincerely,

Lenore Albert, Esq.
**Law Offices of Lenore Albert**
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Phone: 424-365-0741
https://InteractiveCounsel.com

*Consumer trial lawyer serving Michigan and California residents*

Also, President & CEO
**Simply Lenore LLC** *(patent pending ICan ID(tm) technology)*
**Mined Media Org.**
**Project Geeks**
**MasterMined(tm) Tech.**
**InteractiveCounsel**
**FactChecks(tm)**


Cal Bus & Prof Code 6001.1
"Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

"People who live in glass houses shouldn't throw stones."

If you believe this statement, you are in my tribe.

THIS E-MAIL MESSAGE IS INTENDED FOR THE SOLE USE OF THE INTENDED RECIPIENT(S) AND MAY CONTAIN ATTORNEY-CLIENT PRIVILEGED, ATTORNEY WORK PRODUCT PROTECTED, COMMON INTEREST PRIVILEGED, AND/OR OTHER CONFIDENTIAL INFORMATION. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE, OR DISTRIBUTION OF THIS MESSAGE AND/OR ITS ATTACHMENTS IS PROHIBITED.

IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS MESSAGE, PLEASE CONTACT THE SENDER BY REPLY E-MAIL (OR OTHER IMMEDIATE MEANS) AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE AND ITS ATTACHMENTS, IF ANY.

THANK YOU.


On Monday, August 1, 2022 at 04:26:25 PM PDT, Anderson, Barrett <banderson@cooley.com> wrote:


Counsel:

As you know, the Chief Trial Counsel (CTC) is responsible for the enforcement and prosecution of disciplinary charges. The CTC "reports to and serves under the Regulation and Discipline Oversight Committee and does not serve under the direction of the executive director." Cal. Bus. & Prof. Code § 6079.5. Moreover, the Board of Trustees of the State Bar may not interfere with the CTC's independence or his discretion to investigate and prosecute disciplinary proceedings. The State Bar is thus unable to agree to your request.

The State Bar is also unable to agree to your request insofar as delaying a disciplinary proceeding would result in undermining the State Bar's "highest priority" as established by law, which is the "[p]rotection of the public." Cal. Bus. & Prof. Code § 6001.1.

Sincerely,

Barrett

---

**From:** lenore albert <lenalbert@interactivecounsel.com>
**Sent:** Tuesday, July 26, 2022 5:27 AM
**To:** Anderson, Barrett <banderson@cooley.com>; beth.petronio@klgates.com; christina.goodrich@klgates.com; klgateseservice@klgates.com; david.belcher@faegredrinker.com; Merchant, Greg J. <gmerchant@cooley.com>; janderson@jmbm.com; mgold@jmbm.com; Rhodes, Michael <RHODESMG@cooley.com>; Rhodes, Michael <RHODESMG@cooley.com>; Martinez, Suenmy <smartinez@cooley.com>; peter.baldwin@faegredrinker.com; robert.retana@calbar.ca.gov; joan.randolph@calbar.ca.gov; suzanne.grandt@calbar.ca.gov; Demas, Tiana <tdemas@cooley.com>; vanessa.holton@calbar.ca.gov; Waidelich, Chris <cwaidelich@cooley.com>; Jones, Kendra <kjones@cooley.com>; zach.timm@klgates.com
**Subject:** Roe 1, et al v State Bar of California et al - Reassurances

[External]

Dear Counsel,

I write seeking a written reassurance from the State Bar of California that it will immediately cease and desist from filing any public notice of disciplinary charges against any victim of the breach if the investigation/complaint is more than six months old.

The State Bar should be restrained from rushing to proceed to make these old matters public (regardless of investigative merit) due to the Breach on the misguided notion that such would mitigate the State Bar's damages here.

Sincerely,

Lenore Albert, Esq.

**Law Offices of Lenore Albert**

1968 S. Coast Hwy #3960

Laguna Beach, CA 92651

Phone: 424-365-0741

https://InteractiveCounsel.com

*Consumer trial lawyer serving Michigan and California residents*

*Also, President & CEO*

***Simply Lenore LLC*** *(patent pending ICan ID(tm) technology)*

***Mined Media Org.***

***Project Geeks***

***MasterMined(tm) Tech.***

***InteractiveCounsel***

***FactChecks(tm)***

Cal Bus & Prof Code 6001.1

"Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

"People who live in glass houses shouldn't throw stones."

If you believe this statement, you are in my tribe.

THIS E-MAIL MESSAGE IS INTENDED FOR THE SOLE USE OF THE
INTENDED RECIPIENT(S) AND MAY CONTAIN ATTORNEY-CLIENT
PRIVILEGED, ATTORNEY WORK PRODUCT PROTECTED, COMMON
INTEREST PRIVILEGED, AND/OR OTHER CONFIDENTIAL INFORMATION.
ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE, OR DISTRIBUTION OF
THIS MESSAGE AND/OR ITS ATTACHMENTS IS PROHIBITED.

IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS MESSAGE,
PLEASE CONTACT THE SENDER BY REPLY E-MAIL (OR OTHER
IMMEDIATE MEANS) AND DESTROY ALL COPIES OF THE
ORIGINAL MESSAGE AND ITS ATTACHMENTS, IF ANY.

THANK YOU.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

## CLAIMS OFFICER/OFFICE OF THE SECRETARY - California State Bar Data Breach

From: lenore albert (lenalbert@interactivecounsel.com)

To: barcomm@calbar.ca.gov; vanessa.holton@calbar.ca.gov; attorneyregulation@calbar.ca.gov

Bcc: dairma@yahoo.com; dchm@cox.net

Date: Monday, March 14, 2022, 03:40 PM PDT

To the Claims Officer/Ofc of the Secretary, the Executive Director and Members of the Board of the State Bar of California,

Please see compliance with the California Government Tort Claims Act. Three tort claims forms are attached. Originals are also being sent by mail - in triplicate.

Sincerely,

Lenore Albert, Esq.
**Law Offices of Lenore Albert**
31872 Joshua Dr #22C
Trabuco Canyon, CA 92679
Phone: 424-365-0741
https://InteractiveCounsel.com

*Consumer trial lawyer serving Michigan and California residents*

Cal Bus & Prof Code 6001.1
"Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

If you believe this statement, you are in my tribe.

THIS E-MAIL MESSAGE IS INTENDED FOR THE SOLE USE OF THE INTENDED RECIPIENT(S) AND MAY CONTAIN ATTORNEY-CLIENT PRIVILEGED, ATTORNEY WORK PRODUCT PROTECTED, COMMON INTEREST PRIVILEGED, AND/OR OTHER CONFIDENTIAL INFORMATION. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE, OR DISTRIBUTION OF THIS MESSAGE AND/OR ITS ATTACHMENTS IS PROHIBITED.

IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS MESSAGE, PLEASE CONTACT THE SENDER BY REPLY E-MAIL (OR OTHER IMMEDIATE MEANS) AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE AND ITS ATTACHMENTS, IF ANY.

THANK YOU.

 Data Breach Tort Claim to State Bar for Class Reps LenoreA.pdf
275.5kB

 Data Breach Tort Claim to State Bar for Class Reps DanC.pdf
276.7kB

 Data Breach Tort Claim to State Bar for Class Reps IrmaE.pdf
275.6kB

**Government Claims Program Information and Claim Form**

**The State Bar of California**
**180 Howard Street**
**San Francisco, CA 94105**

**www.calbar.ca.gov**



For Office Use only
Claim No.:

## *Is your claim complete?*

| | |
|---|---|
| ☐ | Complete all sections relating to this claim and sign the form. Please print or type all information. |
| ☐ | Attach receipts, bills, estimates or other documents that back up your claim. |
| ☐ | Include two copies of this form and all the attached documents with the original. |

## *Claimant Information*

| **1** | | | | **2** | Tel:  (    )    - |
| --- | --- | --- | --- | --- | --- |
| | *Last Name* | *First Name* | *MI* | **3** | Email: |
| **4** | | | | | |
| | *Address* | *City* | *State* | *Zip Code* | |

| **5** | Best time and method to reach you: | |
| --- | --- | --- |
| **6** | Is the claimant under 18?  ☐ Yes  ☐ No | If YES, give date of birth:  ☐  ☐  ☐ |
| | | *MM    DD    YYYY* |

## *Attorney or Representative Information*

| **7** | | | | **8** | Tel:  (    )    - |
| --- | --- | --- | --- | --- | --- |
| | *Last Name* | *First Name* | *MI* | **9** | Email: |
| **10** | | | | | |
| | *Address* | *City* | *State* | *Zip Code* | |

| **11** | Relationship to claimant: | State Bar Number: |
| --- | --- | --- |

## *Claim Information*

| **12** | Date of Incident:      /      / | | |
| --- | --- | --- | --- |
| | Was the incident more than six months ago? | ☐ Yes | ☐ No |
| | If YES, did you attach a separate sheet with an explanation for the late filing? | ☐ Yes | ☐ No |

| 13 | List the name of the State Bar employee(s) against whom the claim is filed, if any: |
|---|---|

| 14 | Dollar amount of claim: |
|---|---|

| | If the amount is more than $10,000, indicate the type of civil case: | ☐ Limited civil case ($25,000 or less) <br> ☐ Non-limited civil case (over $25,000) |
|---|---|---|

| | Explain how you calculated the amount: |
|---|---|

| 15 | For claims involving real property, list the location or address of the incident: |
|---|---|

| 16 | Describe the specific damage or injury (You may attach extra pages if necessary): |
|---|---|

| 17 | Explain the circumstances that led to the damage or injury (You may attach extra pages if necessary): |
|---|---|

| 18 | Explain why you believe the State Bar of California is responsible for the damage or injury (You may attach extra pages if necessary): |
|---|---|

## *Notice and Signature*

| 19 | I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true and correct to the best of my information and belief. I further understand that if I have provided information that is false, intentionally incomplete, or misleading I may be charged with a felony punishable by up to four years in state prison and/or a fine of up to $10,000 (California Penal Code § 72). |
|---|---|

| | *Lenore Albert* | |
|---|---|---|
| | *Signature of Claimant or Representative* | *Date* |

| 20 | Mail the original and three copies of this form, along with three copies of all supporting documents to: <br><br> The State Bar of California <br> 180 Howard Street <br> San Francisco, CA 94105 <br> Attention:  CLAIMS OFFICER/OFFICE OF THE SECRETARY <br><br> Forms can also be hand-delivered to: The State Bar of California, 180 Howard Street, San Francisco, CA, marked "Attention Claims Officer, Office of the Secretary," during regular business hours (8:45 a.m. to 5:00 p.m.), Monday through Friday. <br><br> Electronic versions of this form can be found on the State Bar of California's website at: <br><br> https://www.calbar.ca.gov/Portals/0/documents/forms/misc/Govt-Claim-Form.pdf |
|---|---|

**The State Bar of California**

**OFFICE OF GENERAL COUNSEL**

180 Howard Street, San Francisco, CA 94105

May 2, 2022

**VIA CERTIFIED MAIL**

Lenore Albert
Law Office of Lenore Albert
1968 S. Coast Hwy, Suite #3960
Laguna Beach, CA 92651

RE:  *Claim of Dan Chmieleweski*

Dear Ms. Albert:

Notice is hereby given that as of this date, the State Bar of California rejected the claim you presented on behalf of Dan Chmieleweski to the State Bar of California on or about March 29, 2022.

**WARNING**

**SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE THIS NOTICE WAS PERSONALLY DELIVERED OR DEPOSITED IN THE MAIL TO FILE A COURT ACTION ON THIS CLAIM. SEE GOVERNMENT CODE SECTION 945.6.**

Sincerely,

/s/ *Suzanne C. Grandt*

Suzanne C. Grandt
Assistant General Counsel and Claims Officer

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

**The State Bar**
*of California*

**OFFICE OF GENERAL COUNSEL**

180 Howard Street, San Francisco, CA 94105

May 2, 2022

**VIA CERTIFIED MAIL**

Lenore Albert
Law Office of Lenore Albert
1968 S. Coast Hwy, Suite #3960
Laguna Beach, CA 92651

RE:  *Claim of Irma Escobar*

Dear Ms. Albert:

Notice is hereby given that as of this date, the State Bar of California rejected the claim you presented on behalf of Irma Escobar to the State Bar of California on or about March 29, 2022.

**WARNING**

**SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE THIS NOTICE WAS PERSONALLY DELIVERED OR DEPOSITED IN THE MAIL TO FILE A COURT ACTION ON THIS CLAIM. SEE GOVERNMENT CODE SECTION 945.6.**

Sincerely,

/s/ *Suzanne C. Grandt*

Suzanne C. Grandt
Assistant General Counsel and Claims Officer

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

# The State Bar
## of California

**OFFICE OF GENERAL COUNSEL**

180 Howard Street, San Francisco, CA 94105

May 2, 2022

**VIA CERTIFIED MAIL**

Lenore Albert
Law Office of Lenore Albert
1968 S. Coast Hwy, Suite #3960
Laguna Beach, CA 92651

RE: *Claim of Lenore Albert*

Dear Ms. Albert:

Notice is hereby given that as of this date, the State Bar of California rejected the claim you
presented to the State Bar of California on or about March 29, 2022.

<b>WARNING</b>

**SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE THIS
NOTICE WAS PERSONALLY DELIVERED OR DEPOSITED IN THE MAIL TO FILE A COURT ACTION
ON THIS CLAIM. SEE GOVERNMENT CODE SECTION 945.6.**

Sincerely,

/s/ *Suzanne C. Grandt*

Suzanne C. Grandt
Assistant General Counsel and Claims Officer

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017



## The State Bar
## *of California*

845 South Figueroa Street, Los Angeles, CA 90017                                    pra@calbar.ca.gov

SENT VIA EMAIL

April 14, 2022

Lenore Albert
Law Offices of Lenore Albert
31872 Joshua Drive #22C
Trabuco Canyon, CA 92679

RE: California Public Records Act (CPRA) request dated April 4, 2022

Dear Ms. Albert,

I am writing on behalf of the State Bar of California in response to your California Public Records Act (CPRA) request dated April 4, 2022. The State Bar responds as follows

**Request No. 1**: Open State Bar investigation against me;

**Response to Request No. 1**: The CPRA requires that the State Bar respond to requests for reasonably identifiable records. (Cal. Gov. Code § 6253). It does not obligate the State Bar to answer questions or create new records in order to respond to a records request. *Fredericks v. Sup. Ct.* (2015) 233 Cal.App.4th 209, 227 (citing *Haynie v. Sup. Ct.* (2001) 26 Cal.4th 1061, 1075). It is not clear from your Request what record(s) you are requesting from the State Bar. To the extent this request could be construed as a request for all records concerning open State Bar investigations against you, all such records are confidential and exempt from disclosure. (Gov. Code § 6254(f) [Investigatory files compiled by a state agency for licensing purposes are not subject to disclosure under the California Public Records Act]; Bus. & Prof. Code § 6086.1(b) ["[D]isciplinary investigations ... shall not be disclosed pursuant to any state law, including, but not limited to, the California Public Records Act."].

Please be advised that these records would also be exempt pursuant to Government Code section 6254(k), which exempts from disclosure "records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." Here, any withheld records are exempt from disclosure pursuant to the Official Information Privilege contained in Evidence Code sections 1040 - 1042 (protecting information "acquired in confidence by a public employee in the course of his or her

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Lenore Albert
April 14, 2022
Page 2

duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made"), and the Attorney Work Product Privilege contained in the Code of Civil Procedure section 2018.030 ("Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.")

**Request No. 2:** Closed State Bar investigation against me since August 1, 2014;

**Response to Request No. 2:** The CPRA requires that the State Bar respond to requests for reasonably identifiable records. (Cal. Gov. Code § 6253). It does not obligate the State Bar to answer questions or create new records in order to respond to a records request. *Fredericks v. Sup. Ct.* (2015) 233 Cal.App.4th 209, 227 (citing *Haynie v. Sup. Ct.* (2001) 26 Cal.4th 1061, 1075). It is not clear from your Request what record(s) you are requesting from the State Bar. To the extent this could be construed as a request for all records concerning closed State Bar investigations against you, all such records are confidential and exempt from disclosure. (Gov. Code § 6254(f) [Investigatory files compiled by a state agency for licensing purposes are not subject to disclosure under the California Public Records Act]; Bus. & Prof. Code § 6086.1(b) ["[D]isciplinary investigations ... shall not be disclosed pursuant to any state law, including, but not limited to, the California Public Records Act."].

Please be advised that these records would also be exempt pursuant to Government Code section 6254(k), which exempts from disclosure "records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." Here, any withheld records are exempt from disclosure pursuant to the Official Information Privilege contained in Evidence Code sections 1040 - 1042 (protecting information "acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made"), and the Attorney Work Product Privilege contained in the Code of Civil Procedure section 2018.030 ("Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.")

**Request No. 3:** Any open monetary charges I owe the State Bar or State Bar Client Security Fund

**Response to Request No. 3:** The CPRA requires that the State Bar respond to requests for reasonably identifiable records.  (Cal. Gov. Code § 6253). It does not obligate the State Bar to answer questions or create new records in order to respond to a records request. *Fredericks v. Sup. Ct.* (2015) 233 Cal.App.4th 209, 227 (citing *Haynie v. Sup. Ct.* (2001) 26 Cal.4th 1061, 1075). This is not a request for a reasonably identifiable record(s). For information regarding fees, costs or penalties, please visit your MyStateBarProfile. For information regarding debt owed to the State Bar Client Security Fund, please contact collections@calbar.ca.gov.

**Request No. 4:** Any pending or open Client Security Funds claims filed against me;

Lenore Albert
April 14, 2022
Page 3

**Response to Request No. 4:** The CPRA requires that the State Bar respond to requests for reasonably identifiable records. (Cal. Gov. Code § 6253). It does not obligate the State Bar to answer questions or create new records in order to respond to a records request. *Fredericks v. Sup. Ct.* (2015) 233 Cal.App.4th 209, 227 (citing *Haynie v. Sup. Ct.* (2001) 26 Cal.4th 1061, 1075). It is not clear from your Request what record(s) you are requesting from the State Bar. To the extent this could be construed as a request for all pending or open Client Security Fund applications filed against you, such documents are confidential under state law (State Bar Rule, rule 3.461(A)) and therefore exempt from public disclosure under the CPRA (Gov. Code § 6254(k).)

**Request No. 5:** Closed State Bar Client Security Funds claims filed against me since August 1, 2014;

**Response to Request No. 5:** The CPRA requires that the State Bar respond to requests for reasonably identifiable records.  (Cal. Gov. Code § 6253). It does not obligate the State Bar to answer questions or create new records in order to respond to a records request. *Fredericks v. Sup. Ct.* (2015) 233 Cal.App.4th 209, 227 (citing *Haynie v. Sup. Ct.* (2001) 26 Cal.4th 1061, 1075). It is not clear from your Request what record(s) you are requesting from the State Bar. To the extent this could be construed as a request for all closed Client Security Fund applications filed against you, such documents are confidential under state law (State Bar Rule, rule 3.461(A)) and therefore exempt from public disclosure (Gov. Code § 6254(k).)

**Request No. 6:**. Investigative subpoenas that you have issued referring or relating to me in that past five years.

**Response to Request No. 6:** The State Bar has no nonexempt records responsive to this Request as all responsive records are confidential and exempt from disclosure. (Gov. Code § 6254(f) [Investigatory files compiled by a state agency for licensing purposes are not subject to disclosure under the California Public Records Act]; Bus. & Prof. Code § 6086.1(b) ["[D]isciplinary investigations ... shall not be disclosed pursuant to any state law, including, but not limited to, the California Public Records Act."].

Sincerely,

Public Records Coordinator
The State Bar of California

## Informational Notice Re Odyssey Portal Vulnerability

From: CA State Bar (admin@castatebarodysseynotice.com)

To: lenalbert@interactivecounsel.com

Date: Wednesday, May 18, 2022, 02:01 PM PDT

**INFORMATIONAL NOTICE RE ODYSSEY PORTAL VULNERABILITY**

Dear LENORE LUANN ALBERT,

On February 24, 2022, the California State Bar became aware that judyrecords.com (judyrecords), a public website that aggregates nationwide court case records, had included both public and nonpublic State Bar case records in its search engine. These records came from the State Bar's Odyssey Portal, which was supposed to provide access to public case records only. The State Bar immediately asked the owner of judyrecords to remove the nonpublic records from the search engine (which they did) and launched an investigation with the assistance of a third-party IT forensics firm (Forensics Firm).

We are notifying you because your nonpublic State Bar record(s) showed evidence of a page view on judyrecords. This notice provides you with information about the data fields contained in a nonpublic record where you were listed as a respondent. We explain below the steps we have taken to investigate and remediate the issue.

**Immediate Steps Taken to Remove Nonpublic Records from Judyrecords**

The owner of judyrecords informed the State Bar that they had intended to index only publicly available State Bar case records, and they were unaware that records intended to be nonpublic had been automatically collected by their computer program, a technique called "scraping." Judyrecords fully cooperated with the State Bar's investigation and: (1) removed all confidential State Bar records from judyrecords by February 26, 2022; (2) provided relevant website logs and analytics logs; and (3) provided a detailed explanation of the scraping method used, which revealed a previously unknown vulnerability in the Odyssey case management software provided by Tyler Technologies, a third-party vendor.

The State Bar verified that this vulnerability allowed judyrecords to scrape both public and nonpublic State Bar attorney discipline case records from the Odyssey Portal. The scraping occurred on or about October 15, 2021.

To determine if a record may have been viewed, the State Bar and Forensics Firm analyzed detailed judyrecords website logs for the month of February 2022, as well as website analytics logs for the period between October 15, 2021, and February 26, 2022, the full period when State Bar records were indexed on the site.

**Data Fields Contained in Your Nonpublic Record**

The nonpublic State Bar records indexed on judyrecords contained basic case information:

- case number;
- file date;
- case type;
- case status;

- respondent name; and
- sometimes complaining witness or other witness names.

For some of these cases, the same information ultimately became public through the course of the State Bar's disciplinary process, including where discipline ultimately was imposed.

Full confidential case documents were not scraped by and were not indexed on judyrecords. That means no complaints, transcripts of hearings, mental health reports, or other documents related to nonpublic attorney discipline proceedings were available or viewed by unauthorized individuals as a result of the Odyssey vulnerability.

The information in your nonpublic record consisted of: your first and last name, case number, file date, case type,[1] case status, and your California Bar number.

**More Information About the State Bar Investigation and Remediation**

The State Bar confirmed that judyrecords has deleted all nonpublic records from the site.

Importantly, the Odyssey vulnerability was only triggered by web scraping; regular searches of the Odyssey Portal did not permit access to nonpublic records. There is no evidence to suggest the Odyssey Portal was scraped by any entity besides judyrecords. The investigation revealed no evidence that scraped State Bar records were on internet archive sites. The State Bar took the Odyssey Portal offline on February 25, 2022, so Tyler Technologies could remediate the vulnerability.

Access to the State Bar's Odyssey Portal was restored on March 15, 2022, after Tyler Technologies had remediated the vulnerability. Thereafter, both the State Bar and the Forensics Firm confirmed that nonpublic records could no longer be scraped.

Our previous posts on this issue can be found here: https://www.calbar.ca.gov/About-Us/News/Data-Breach-Updates.

***

**The State Bar takes the confidentiality of its bar members and community seriously and sincerely regrets that this event occurred. If you have questions that you feel have not been addressed by this notice, please contact questions@CAStateBarOdysseyNotice.com for more information.**

Sincerely,

The State Bar of California

---

[1] The case types at issue here are: 6180/6190, 9.20 Violation – State Bar Court Order, ADP, Agreement in Lieu of Discipline, Conviction Matter, Discipline in Other Jurisdiction, Early Neutral Evaluation Conference, Moral Character, Original Matter, Other, Pre-filing Motion to Quash, Probation, Probation Violation, RA – Insufficient Funds, RA—Insurance Claim, RA – Reversal of Judgment, RA – Sanction Order, Reinstatement, Reproval, Resignation with Charges Pending, Rule 2605 – Vexatious Complainant, Rule. 9.20 – Interim Conviction Matter, Rule 9.20 – Order, Rule 9.20 – Resignation, and Unauthorized Practice of Law – Non-Attorney. Some of these case types reflect internal State Bar coding references.

AG439_v03

To unsubscribe from this list, please click on the following link: Unsubscribe

The State Bar *of California*

## Data Breach Updates

This webpage provides updates and answers questions about a breach of confidential case profile data recently discovered by the State Bar.

### June 3, 2022

As an update to the State Bar's notification plan outlined below, notifications have been sent to Group 1 listed below: the 1,300 complainants, witnesses, or respondents whose names appeared in the 1,034 confidential records that showed evidence of a page view. Notifications to Groups 2, 3, and 4 listed below are in progress, with an expected completion date of June 17.

### May 6, 2022

The State Bar is implementing a notification plan for complainants, witnesses, and respondents whose names appeared in the approximately 322,525 confidential[1] records that were available on judyrecords from approximately October 15, 2021, to February 26, 2022.

Here are highlights of the State Bar's current notification plan:

- **Group 1: Confidential records with page views**

  - The State Bar will notify approximately 1,300 complainants, witnesses, or respondents whose names appeared in the 1,034 confidential records that showed evidence of a page view. Sample witness notice | Sample respondent notice
  - Of these records, 6 contained the case type "Inactive 6007(b)(3) Mental Illness or Substance Abuse." Sample notice
  - Notices to Group 1 will be sent by email, or by postal mail if we do not have email addresses on file.

- **Group 2: Confidential records with no page views, respondents**

  - For respondents whose names appeared in confidential records for which there is no evidence of a page view, notices will be sent by email, or by postal mail if we do not have email addresses on file. Sample notice

- **Group 3: Confidential records with no page views, complainants and witnesses with email addresses**

  - For complainants and witnesses whose names appeared in confidential records for which there is no evidence of a page view, notices will be sent by email if we have email addresses on file.
  - The State Bar has email addresses for approximately 100,000 complainants and witnesses, about 37 percent of those named in unviewed records.

- **Group 4: Confidential records with no page views, complainants and witnesses with only postal addresses**

  - As a last stage of the notification process, complainants and witnesses named in unviewed records for whom we have only a postal address will be sent notices by postal mail.

- The State Bar has contracted with a third-party administrator to send the notices and respond to inquiries.
- Notifications are expected to begin this week, with email distribution expected to take five to seven business days. Postal mail distribution, especially for Group 4, is expected to take two to four weeks.

Although the State Bar is not legally required to do so, it has committed to notifying those whose names or other information appeared in confidential records indexed on judyrecords. "We are taking these steps because we believe it's the right thing to do," said Leah Wilson, Executive Director. "The State Bar is committed to transparency, and maintaining the public's trust in our agency is paramount. That said, we had to balance our commitment to be transparent with considerations of costs, logistics, and fiscal prudence. We believe we have struck the right balance."

**Other updates:** Judyrecords has posted updates here. Tyler Technologies has posted updates here.

### March 15, 2022

Public access to the State Bar Court public records portal has been restored. The portal vulnerability previously identified was remediated by Tyler Technologies, and the results were confirmed both internally and by our third-party IT security team.

**March 14, 2022**

The ongoing investigation by the State Bar's IT incident response team, with assistance from an expert third-party forensic firm, has yielded updated counts of public and confidential[1] State Bar records that were available on the judyrecords website—and which of those records were viewed on that site—during the period between mid-October and late February that the site made those records available. Our initial estimates were based on manual searches performed on the judyrecords site before the State Bar of California data was taken offline. Judyrecords subsequently provided us with a complete copy of the State Bar's data from its site, which enabled us to more accurately inventory both the public and confidential records available and viewed. While our investigation is ongoing, we are providing this update for purposes of transparency.

**Available records (Counts at this time)**

- Public records available: 47,964
- Confidential records available: 322,525
- Of confidential records that were available, 188 included personal information.[2] For example, 159 records pertained to inactive enrollment due to mental illness or substance abuse. One record included a Social Security number.

**Viewed records (Counts at this time)**

- Public records that were viewed: 60
- Confidential records that were viewed: 1,034
- Of confidential records that were viewed, 6 records contained personal information.

The State Bar plans to notify complainants, witnesses, and respondents whose names appeared in the approximately 322,525 confidential records that were available on judyrecords during the period in question, though the current evidence suggests that only 1,034 of those were actually viewed. We continue to investigate this incident and will provide additional details about the notification plan and timeline as soon as possible.

The State Bar takes the data breach seriously and is devoting significant resources to assess the impact and pursue all available remedies. After interviewing several law firms with well-respected privacy and data security practices, the State Bar has retained Cooley LLP to advise on matters related to the data breach. Cooley partners Tiana Demas, Travis LeBlanc, and Michael Rhodes have national reputations in cyber/data/privacy, with California and other government experience that makes them uniquely qualified to represent the State Bar. Reflecting its commitment to public service, Cooley is providing its impressive resources and experience to serve the State Bar at substantially discounted rates. The majority of Cooley's rates and costs will be covered by the State Bar's insurance. The State Bar and its carrier intend to pursue reimbursement from Tyler Technologies.

The State Bar Court public records portal remains unavailable. We are continuing to work with Tyler Technologies to remediate the portal and will provide further updates on the schedule for resuming online operations as they are available. [3/15 update: The portal is back online.]

For more information, Tyler Technologies, the provider of the impacted Odyssey Portal, has published a webpage on the Odyssey Portal data harvesting and its implications for customers.


[1] "Confidential" records are those defined as nonpublic under the Business and Professions Code applicable to State Bar records, including information concerning closed discipline complaints that did not result in charges, and reference to mental health/substance abuse.


[2] Although the State Bar is not bound by California consumer privacy law, for purposes of its review and notice protocol, the State Bar has utilized the definition of personal information contained in that law (Cal. Civ. Code §§ 1798.29 and 1798.82).

**March 10, 2022**

In its initial February 26 news release, the State Bar expressed concerns that its confidential records may have been accessed unlawfully. In that statement, the State Bar did not distinguish between unlawful access and unlawful publication of the records. This was in error. The State Bar does not contend that publication of records acquired lawfully would be unlawful. We thank the First Amendment Coalition for raising these important distinctions with us.

**March 2, 2022**

Correction to our 2/26 news release: The State Bar did not ultimately alert law enforcement, as originally stated. Based on limited information available at the time, which suggested that an unlawful access of the State Bar system may have occurred, we had intended to prepare a law

enforcement referral as part of our effort to respond quickly and responsibly and fulfill any obligations to protect confidential records and those impacted. When it then appeared that the site owner's access of confidential records was inadvertent, we held off on making the law enforcement report. When the site owner was informed that the records are confidential pursuant to statute and of the public policy supporting confidentiality of those records, they voluntarily assisted the State Bar and removed access to the records from the site.

At this time, the State Bar is preparing to report the vulnerability to the Common Vulnerabilities and Exposures Program (CVE), an international, community-driven effort to identify, define, and publicly catalog cybersecurity vulnerabilities. [Update: this report was submitted the week of March 7.]

As of March 1, the site owner of judyrecords has voluntarily disabled all searches of its database, "out of an abundance of caution."

The State Bar Court portal remains unavailable until further notice. We are working with Tyler Technologies to restore public access as soon as possible. [3/15 update: the portal is back online.]

Tyler Technologies has posted an FAQ in its online customer community regarding the underlying technical issues that resulted in the breach of confidential information.

We are continuing to work with the site owner of judyrecords to get specific information about the confidential State Bar records viewed before the site was disabled.

### February 28, 2022

The State Bar has continued its investigation with the help of an IT security firm, and has also been in contact with the owner of the judyrecords site, who has been very responsive and collaborative. It is now the State Bar's belief that there was no malicious "hack" of its system. Instead, it appears that a previously unknown security vulnerability in the Tyler Technologies Odyssey case management portal allowed the nonpublic records to be unintentionally swept up by judyrecords when they attempted to access the public records, using a unique access method. The State Bar is working with Tyler Technologies, the maker of the Odyssey system, to remediate the security vulnerability, which we believe may not be unique to the State Bar's implementation and could impact other users of Odyssey systems.

The State Bar and the owner of the judyrecords site are working together to ensure that nonpublic State Bar records are permanently purged from the site and that State Bar public records can be made available on the site.

"Our obligation and responsibility are to the respondents and witnesses whose nonpublic information may have been shared, and again I apologize to them for this breach," said Leah Wilson, State Bar Executive Director. "We have confirmed that this was not a hack, but rather an access vulnerability problem with our Odyssey system. We thank judyrecords for quickly removing the files and look forward to similarly working expeditiously with Tyler Technologies to take the necessary steps to address this issue."

### February 27, 2022

As of late Saturday night, it appears that all State Bar records, confidential and public, have been removed from the site, with a note confirming this on the site. We are continuing to investigate.

### Background

On February 24, 2022, the State Bar learned that a public website that aggregates nationwide court case records was displaying limited case profile data on about 260,000 nonpublic State Bar attorney discipline case records, along with about 60,000 public State Bar Court case records. [These figures have since been updated on further investigation; please see March 14 update above.] The site also appears to display confidential court records from other jurisdictions. The nonpublic case profile data from the State Bar displayed on this public website included case number, file date, case type, case status, and respondent and complaining witness names. It did not include full case records.

Read our full news release here.

Updates will be added to this webpage as they become available.

### Frequently Asked Questions

### When did the State Bar first learn about the breach of nonpublic information?

On February 24, 2022, the State Bar learned that an external public website that aggregates nationwide court case records was able to access and display limited profile data on about 260,000 nonpublic State Bar attorney discipline case records. The nonpublic records available on the site do not include detailed State Bar case records, but they do display case numbers, file dates, case types, case status, and respondents and complainant names.

The State Bar deeply apologizes to anyone impacted by this breach, and we are doing everything in our power to get to the bottom of it and prevent any future harms.

**Who first notified the State Bar about the website?**

A complaining witness brought the website to the attention of an investigator from the Office of Chief Trial Counsel, who in turn alerted their supervisor.

**Was this a hack? And how did this happen?**

As of Monday, February 28, it is the State Bar's belief that there was no malicious "hack" of its system. Instead, it appears that a previously unknown security vulnerability in the Tyler Technologies Odyssey case management portal allowed the nonpublic records to be unintentionally swept up by judyrecords when they attempted to access public records.

**The site owner claims that the State Bar's confidential and public case records were all previously available at a public URL. Is this true?**

The State Bar Court website allows the public to search for publicly available case information. The URL mentioned by the site owner was never used by the public and never intended for public access searches.

The State Bar has continued its investigation with the help of an IT security firm and has also been in contact with the owner of the site. As noted above, it appears that a previously unknown security vulnerability in the Tyler Technologies Odyssey case management portal allowed the nonpublic records to be unintentionally swept up by judyrecords when they attempted to access public records

**How long were the records available?**

Statistics provided by the site owner indicate that State Bar records and information were available on the judyrecords site from October 15, 2021, to February 26, 2022.

**The judyrecords site mentions that the number of affected cases is less than 1,000. What does that mean?**

The comment refers to the site owner's estimate of pageviews of all State Bar case records, public and nonpublic, during entire initial period they were posted. The State Bar is working to confirm this information. [The State Bar has investigated and updated this figure, please see March 14 update, above.]

**What is the State Bar doing about this?**

The State Bar is taking all necessary steps to address and correct this matter. So far, we have:

- Retained a team of IT forensics experts to assist in our investigation.
- Tasked our case management system software vendor, Tyler Technologies, to investigate and remediate any issues in their Odyssey case management software or this specific implementation of it.
- Contacted the website's hosting provider, OVH Hosting, Inc in Montreal, Canada, and domain name registrar godaddy.com requesting that the confidential data be immediately taken down.
- We have been in contact with the site owner and are working with them to permanently purge the nonpublic records so that State Bar public records can again appear on the site.
- We submitted a report on the vulnerability to CVE, an international, community-driven effort to identify, define, and catalog cybersecurity vulnerabilities.
- We engaged cyberlaw experts Cooley LLP to advise the State Bar on strategic follow-up actions.
- We are in the process of notifying those whose names or other information appeared in the confidential records.

**What should anyone concerned that their name appears on this website do?**

As of late Saturday, February 26, all State Bar records appear to have been removed from the site. As of March 1, the site owner disabled all search capabilities on the site, for all records it contains nationwide, "out of an abundance of caution."

**Is the State Bar the only public agency impacted by this?**

We believe the issue is broader than the State Bar, because it appears that confidential records from other jurisdictions are appearing on the site as well. The judyrecords site owner lists what they believe are the affected jurisdictions here. According to this webpage from Tyler Technologies, all potentially affected client Odyssey Portals were repaired as of April 21, 2022.

Copyright © 2022 The State Bar of California



*The State Bar of California*

It Is Not Effectively Managing Its System for
Investigating and Disciplining Attorneys Who
Abuse the Public Trust

*April 2021*

REPORT 2020-030





**CALIFORNIA STATE AUDITOR**
621 Capitol Mall, Suite 1200 | Sacramento | CA | 95814



**916.445.0255** | TTY **916.445.0033**



For complaints of state employee misconduct,
contact us through the **Whistleblower Hotline**:
**1.800.952.5665**

*Don't want to miss any of our reports? Subscribe to our email list at* **auditor.ca.gov**

*For questions regarding the contents of this report, please contact* Margarita Fernández, Chief of Public Affairs, *at* 916.445.0255

This report is also available online at www.auditor.ca.gov | Alternative format reports available upon request | Permission is granted to reproduce reports

**Elaine M. Howle** *State Auditor*



April 29, 2021
*2020-030*

The Governor of California
President pro Tempore of the Senate
Speaker of the Assembly
State Capitol
Sacramento, California 95814

Dear Governor and Legislative Leaders:

As Business and Professions Code section 6145 (b) requires, my office presents this report of our audit of the State Bar of California (State Bar) and our findings that the State Bar's reorganization of its discipline system has neither satisfied its statutory requirements nor improved the efficiency or effectiveness of the discipline system.

In 2016 the State Bar reorganized the staffing for its discipline system in response to a review of the system prompted by a requirement established in state law. However, from 2015 through 2020, case processing times for the investigative phase of attorney discipline cases increased by 56 percent, and the backlog of cases increased by 87 percent. These delays allow attorneys under investigation to continue practicing law while their cases are pending, increasing the potential for harm to the public. Moreover, the State Bar has not effectively monitored the impact of its reorganization because it does not adequately measure the performance of its discipline system staff.

State law also requires the State Bar to publish an annual discipline report describing the performance and condition of the discipline system, including the backlog of cases. However, the State Bar's 2019 discipline report did not present complete or consistent information, limiting stakeholders' ability to evaluate the discipline system's performance. For example, it omitted some types of cases from its reported caseload, and it did not include information for other topics for past years—as state law requires. These omissions indicate that the current oversight provided by the Board of Trustees of the State Bar and the board committee responsible for overseeing the discipline report is inadequate.

Finally, the State Bar did not follow its policies when it contracted for examination software. It entered into a contract to obtain state bar exam software—and later entered into a contract amendment for additional security features necessary to remotely administer the state bar examination in response to the COVID-19 pandemic—collectively worth almost $4 million. However, the State Bar should have assessed and documented that the selected vendor provided the best value, which it did not do.

Respectfully submitted,

*Elaine M. Howle*

ELAINE M. HOWLE, CPA
California State Auditor

## Selected Abbreviations Used in This Report

| | |
|---|---|
| Justice | California Department of Justice |
| trial counsel's office | The Office of Chief Trial Counsel of the State Bar |
| State Bar | The State Bar of California |
| Supreme Court | California Supreme Court |

# CONTENTS

Summary                                                                     1

Introduction                                                                5

The State Bar's Changes to Its Discipline System Have Significantly
Reduced That System's Efficiency                                           11

The State Bar's Discipline Report Does Not Provide All Required
Information, and Its Publishing Date Reduces Its Value to Stakeholders      21

The State Bar Appropriately Administered the Bar Exam During the
COVID-19 Pandemic, but Its Procurement of Exam Software Did Not
Comply With Its Policy                                                      27

Other Areas We Reviewed                                                     31

**Appendix**
Scope and Methodology and Assessment of Data Reliability                    33

**Response to the Audit**
The State Bar of California                                                 35

California State Auditor's Comments on the Response From
the State Bar of California                                                 45

Blank page inserted for reproduction purposes only.

# SUMMARY

Attorneys hold significant responsibility as representatives and advisors of their clients. Their responsibilities include providing clients with an informed understanding of their legal rights and aiding them during certain times of crisis. To ensure that attorneys uphold the trust placed in them, every person admitted and licensed to practice law in California—with limited exceptions—must be a licensee of the State Bar of California (State Bar). The State Bar's core mission is to protect the public from attorneys who would abuse the public's trust. It does so by licensing attorneys, enforcing rules of professional conduct for attorneys, disciplining attorneys when necessary, and supporting greater access to the legal system. The State Bar is also required to issue an Annual Discipline Report (discipline report) that describes the performance and condition of its attorney discipline system. This audit report concludes the following:

### The State Bar's Changes to Its Discipline System Have Significantly Reduced That System's Efficiency

*Page 11*

Beginning in 2016, the State Bar reorganized the staffing of its discipline system, converting its discipline staff from specialists to generalists and promoting its most senior attorneys to full-time supervisors. These actions neither addressed the recommendations and statutory requirements that originally prompted the State Bar's review of its discipline system nor produced measurably positive results. In fact, from 2015 through 2020, case processing times for attorney discipline cases increased 56 percent and the backlog of unresolved cases increased 87 percent. The State Bar has not effectively monitored the impact of its reorganization because it does not effectively measure the performance of its discipline system staff.

### The State Bar's Discipline Report Does Not Provide All Required Information, and Its Publishing Date Reduces Its Value to Stakeholders

*Page 21*

State law requires that each year, the State Bar publish a discipline report describing the performance and condition of its discipline system, including the number of cases in its backlog. However, the State Bar did not present complete or consistent information in its 2019 discipline report, thus limiting stakeholders' ability to evaluate its administration of the discipline system. For example, the State Bar omitted some types of cases from its caseload metrics and did not provide certain past data necessary for year-to-year comparisons, as state law requires. The amount of information missing from the discipline report suggests that the current oversight provided by the

Board of Trustees of the State Bar (board) and the board committee responsible for overseeing the discipline report is inadequate for producing an accurate description of the State Bar's discipline system. Further, the April 30 statutory deadline for submitting the discipline report limits the amount of time the Legislature has to review it before deliberating on legislation that sets the annual license fees the State Bar may charge attorneys (fee bill).

*Page 27*

### The State Bar Appropriately Administered the Bar Exam During the COVID-19 Pandemic, but Its Procurement of Exam Software Did Not Comply With Its Policy

In response to the COVID-19 pandemic, the State Bar effectively implemented orders from the California Supreme Court to create a temporary supervised licensure program and to remotely administer the state bar examination (bar exam) for a limited time. In doing so, the State Bar contracted with a software vendor to obtain security features to help ensure the bar exam's integrity. Although the State Bar's procurement policy provides its contract managers with discretion when selecting vendors for the bar exam, it does require them to assess and document that the selected vendor provides the best value. The State Bar's contract manager ignored these requirements. Instead, the manager entered into a contract and a contract amendment worth nearly $4 million related to bar exams without providing evidence that these agreements represented the best value.

**Summary of Recommendations**

*Legislature*

To ensure it has sufficient time to consider the discipline report before reviewing the annual fee bill, the Legislature should amend the report's publishing date.

*State Bar*

To ensure that it is operating efficiently, the State Bar should assess the impact of its discipline system reorganization, including how the changes have affected its ability to efficiently resolve cases and fulfill its mandate to protect the public.

To ensure that the State Bar's discipline report presents complete and consistent information as state law requires, the board committee responsible for overseeing the discipline report process should review, evaluate, and approve the discipline report before it is issued.

To ensure that it receives the best value for the money it spends, the State Bar should establish documentation standards and templates for contract managers to follow when selecting vendors for the administration of the bar exam.

**Agency Comments**

The State Bar generally agreed to implement our recommendations; however, it disagreed with certain report statements and conclusions. In addition, it provided information on principles it plans to use in revising its case processing goals.

Blank page inserted for reproduction purposes only.

# INTRODUCTION

### Background

The California Constitution establishes three independent branches of state government: the Executive, Legislative, and Judicial. The Judicial Branch is responsible for interpreting the laws of the State and protecting the rights of individuals. The California Supreme Court (Supreme Court) holds the power to admit, disbar, or suspend attorneys, who are considered officers of the court. Attorneys hold significant responsibility as representatives and advisors of their clients. Clients often seek out an attorney during times of crisis, when they are in a particularly vulnerable position, and attorneys are responsible for providing those clients with an informed understanding of their legal rights. To fulfill their role, attorneys are accorded a great degree of trust, as well as certain privileges and responsibilities—they may legally represent their clients, may hold funds on behalf of their clients, and must maintain the confidentiality of the information that their clients provide them.

With limited exceptions, every person who is admitted and licensed to practice law in California must be a member of the State Bar of California (State Bar), which is a public corporation within the Judicial Branch. As the text box shows, state law establishes public protection as the highest priority of the State Bar. The State Bar does this by licensing attorneys, regulating the profession and practice of law, enforcing rules of professional conduct for attorneys, disciplining attorneys who violate rules and laws, and supporting greater access to and inclusion in the legal system. To prevent attorney misconduct, the State Bar encourages ethical conduct through resources such as education programs and a hotline for attorneys seeking guidance on their professional responsibilities.

The State Bar is governed by the 13 member Board of Trustees of the State Bar (board), seven of whom are attorneys appointed by the Supreme Court or the Legislature. As specified in state law, the Legislature and the Governor appoint the remaining six members, who are not attorneys. The board sets out a strategic plan with goals for meeting the State Bar's responsibilities, such as ensuring timely, fair, and appropriately resourced admission, discipline, and regulatory systems for the more than 250,000 lawyers licensed in California. To meet its responsibilities, the board has four committees composed of its own members, including a regulation and discipline committee that oversees the State Bar's management of the attorney discipline process.

---

**The State Bar's Core Mission and Selected Responsibilities**

Core Mission

State law establishes that "Protection of the public . . . shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

Selected Responsibilities

- Formulate and enforce rules of professional conduct for licensees of the State Bar.

- Administer the examination and requirements for admission to the practice of law.

- Establish and administer mandatory continuing legal education.

- Establish and administer a Client Security Fund to relieve or mitigate monetary losses caused by the dishonest conduct of active attorneys.

Source:  State law, the State Bar's 2019 annual discipline report, and the State Bar's website.

**The State Bar's Revenue Sources**

Nearly half of the State Bar's funding comes from mandatory attorney license fees. The Legislature annually passes legislation to set the amount of the State Bar's attorney license fees (fee bill); this license fee revenue funds a large portion of the State Bar's operations, including its discipline system. As Figure 1 shows, the State Bar projected that 47 percent of its revenue in 2020 would come from these licensing fees.

**Figure 1**
**Mandatory License Fees Are the State Bar's Largest Single Source of Revenue**



Source: State law, and the State Bar's 2020 budget.
* *Other Revenue* includes income from leases and interest.

**The Attorney Discipline Process**

To protect the public from attorneys who fail to fulfill their professional responsibilities competently, the State Bar administers a discipline system to investigate and prosecute claims of professional misconduct. The State Bar receives complaints from the public by mail or through an online submission form. In addition, the State Bar can initiate inquiries into attorney conduct

based on information it receives from third-party sources. The State Bar may also open cases it calls *reportable actions* based on other information, which includes notifications from banks of insufficient funds related to client trust accounts. The text box identifies some major categories of professional misconduct allegations.

Two of the primary divisions within the State Bar's attorney discipline system are the Office of Chief Trial Counsel of the State Bar (trial counsel's office) and the State Bar Court. For 2020 the State Bar budgeted nearly $77 million for these divisions. As Figure 2 indicates, the State Bar's process for reviewing complaints of alleged attorney misconduct include multiple levels of reviews, and it closes many complaints at the intake level. For those cases that it does not close at the intake phase, the trial counsel's office investigates and, where appropriate, prosecutes attorneys for violations of the State Bar Act or the State Bar's Rules of Professional Conduct, which establish professional and ethical standards for attorneys to follow. The State Bar Court adjudicates the matters that the trial counsel's office files and, if warranted, recommends that the Supreme Court—which has the final authority in attorney discipline—suspend or disbar the attorney in question. The text box identifies some of the possible outcomes of the State Bar's disciplinary cases.

The State Bar has long struggled to process all of the complaints that it receives each year, which has contributed to its backlog of unresolved cases. State law generally defines the State Bar's backlog as discipline cases that, as of every December 31, remain pending beyond six months from the date of receipt. The State Bar must report its backlog of cases annually to the Governor, specified legislative members and committees, and the Supreme Court. However, state law also permits the chief trial counsel to designate certain complaints

---

**Examples of Allegations of Professional Misconduct**

The State Bar receives allegations of attorney misconduct, including the following:

**Untimely Communication:** When an attorney does not promptly inform a client of those decisions or circumstances that require informed consent or disclosure, according to the State Bar Act or the rules of professional conduct.

**Commingling of Funds:** When an attorney holds certain funds received for the benefit of a client in an account that holds the attorney's own funds.

**Unauthorized Practice of Law:** When an individual who is not admitted to the State Bar represents to the public that they are admitted to practice law in California.

Source: State law, the State Bar's Rules of Professional Conduct, and the State Bar's 2019 annual discipline report.

---

**Potential Outcomes of the State Bar's Disciplinary Cases, in Order of Severity**

**Disbarment:** A public disciplinary sanction whereby the Supreme Court orders the attorney's name stricken from the roll of California attorneys and the attorney becomes ineligible to practice law.

**Suspension:** A public disciplinary sanction that generally prohibits a licensee from practicing law or from presenting himself or herself as entitled to practice law for a period of time ordered by the Supreme Court. A suspension can include a period of actual suspension, stayed suspension, or both.

**Reproval:** The lowest level of court imposed discipline, wherein the State Bar Court reprimands the offending attorney for misconduct. Reprovals may include conditions such as making restitution, completing probation, or completing education on subjects such as ethics or the law. Reprovals can be public or private.

**Admonition:** A nondisciplinary sanction that may be issued in cases that do not involve a Client Security Fund or a serious offense, and in which the State Bar Court concludes that violations were not intentional or occurred under mitigating circumstances, and no significant harm resulted.

**Dismissal:** The disposal or closure of a disciplinary matter, for reasons such as insufficient evidence, without a finding of culpability for misconduct by the attorney.

Source: State law, Rules of Procedure of the State Bar, the State Bar's *Intake Procedures Manual*, and the State Bar's 2019 annual discipline report.

**8** | **Report 2020-030** | CALIFORNIA STATE AUDITOR
April 2021

**Figure 2**
**The State Bar's Attorney Discipline Process Includes Multiple Levels of Review**



INTAKE

When the trial counsel's office receives a complaint, it conducts a legal review to determine whether to close it or forward it for investigation.

**64%** of cases were closed during **INTAKE**.

**36%** of cases went to
INVESTIGATION

The trial counsel's office determines if there is sufficient evidence to support the allegation of attorney misconduct. If so, the complaint advances to pre-filing. The trial counsel's office may, at its discretion, close a case without imposing discipline, such as by issuing a warning letter.

**29.8%** of cases were closed during **INVESTIGATION**.

**6.2%** of cases went to
PRE-FILING

The trial counsel's office drafts disciplinary charges for cases that are approved for prosecution in the State Bar Court. Either party may request an early conference before a judge to discuss a settlement.

**2.7%** of cases were closed during **PRE-FILING**.

**3.5%** of cases went to
HEARING AND DISCIPLINE

- The State Bar Court conducts evidentiary hearings and renders a decision with findings and recommendations of discipline. The State Bar Court has the authority to discipline attorneys by reproval, public or private.
- In cases involving serious disciplinary issues—including suspensions or disbarment—the State Bar Court recommends appropriate disciplinary actions to the Supreme Court for review.

**1%** of cases were closed during **HEARING** and **DISCIPLINE** without discipline.

**2.5%** of cases were closed with
FORMAL DISCIPLINE



**0.2%** of cases are closed with **REPROVALS**
**STATE BAR COURT**

**2.3%** of cases are closed with **SUSPENSIONS** and **DISBARMENTS**
**SUPREME COURT**

Source: Analysis of the State Bar's case data, state law, the Rules of Professional Conduct, the Rules of Procedure of the State Bar of California, the State Bar's *Intake Procedures Manual*, and the State Bar's 2019 annual discipline report.

Note: Percentages in this figure are derived from the more than 15,700 cases that the State Bar closed in 2019, which include cases opened in previous years.

as *complicated matters*, and it is the goal and policy of the State Bar to resolve those complaints within 12 months. We discuss this distinction later in the audit report.

### The Discipline Report

State law requires the State Bar to prepare and issue a discipline report by April 30 each year. It must present this report to the Governor, the chief justice of California, and specified legislative members and committees to enable them—and the general public—to evaluate the attorney discipline system. State law requires that the discipline report include certain statistics describing the performance and condition of the discipline system, and the State Bar must present these statistics in a consistent manner for comparison with the previous three years.

### Statutorily Required Audits

State law requires the State Bar to contract with the California State Auditor to audit the State Bar's operations every two years, but it does not specify topics that the audit should address. We have not conducted an in-depth review of the State Bar's attorney discipline system since our 2015 audit, although since that time we have reviewed the State Bar's financial condition, cost control measures, budgeting practices, and funding needs. Therefore, for this audit, we reviewed the State Bar's management of its attorney discipline system by assessing its staffing levels, the timeliness of its investigations, the disposition of its cases, and the level of transparency and accuracy provided by its discipline report. We also reviewed the State Bar's response to the COVID-19 pandemic and its impact on the bar examination and prospective California attorneys. Finally, we reviewed the State Bar's efforts to manage its revenue and expenditures.

Blank page inserted for reproduction purposes only.

# The State Bar's Changes to Its Discipline System Have Significantly Reduced That System's Efficiency

## Key Points

- Beginning in 2016, the State Bar reorganized the staffing for its discipline system, in part by converting its discipline staff from specialists to generalists and promoting some of its most senior attorneys to full-time supervisors. However, these actions did not fully address the audit recommendations and statutory requirements that originally prompted the State Bar to review its discipline system.

- Following the reorganization, the State Bar has experienced longer case processing times and an increasing backlog of discipline cases. In fact, the State Bar's backlog grew by 87 percent from the end of December 2015 to the end of June 2020. This growing backlog allows attorneys who are under investigation more time to continue practicing law while their cases are pending, increasing the risk for potential harm to the public.

- The State Bar has not effectively monitored the impact of its reorganization because it does not adequately track performance benchmarks for its discipline system.

### The State Bar's Restructuring of Its Trial Counsel's Office Has Not Fulfilled the Requirements of State Law or Addressed Our Prior Recommendations

Following a review of its discipline system, the State Bar implemented changes to the staffing of its discipline system in May 2016, including reorganizing the structure of its trial counsel's office, which investigates and prosecutes cases of attorney misconduct. However, this reorganization did not address key elements of the recommendations and statutory requirements that originally motivated the State Bar to review its discipline system. Our June 2015 report titled *State Bar of California: It Has Not Consistently Protected the Public Through Its Attorney Discipline Process and Lacks Accountability*, Report 2015-030, recommended—and a state law that took effect in 2016 required— that the State Bar implement a workforce plan that included the development of an appropriate backlog goal and an assessment of the staffing needed to achieve that goal. In 2016 the State Bar contracted with the National Center for State Courts for a workforce planning study that included recommendations regarding reengineering its business processes. This 2016 workforce plan made numerous recommendations, including that the State Bar reorganize the structure of its trial counsel's office. The plan suggested that the reorganization would help address concerns about unequal distribution of work and improve staff efficiency and development.

Before the reorganization, the teams of investigators and attorneys in the trial counsel's office who investigate and prosecute cases (enforcement teams) specialized in specific categories of cases. However, in response to the 2016 workforce plan, the State Bar

converted its enforcement teams from specialists to generalists who review complaints of all types. The State Bar also promoted some of its most senior attorneys to full-time supervisors and established new supervising attorney positions responsible for managing each team. However, these changes did not originate from our audit recommendations or statutory requirements, and none of them addressed the statutory requirements that the State Bar establish an appropriate performance goal for its discipline system and determine the number of staff needed to meet that goal. In May 2016, the State Bar submitted a report to the Legislature with the staffing levels that it estimated it needed to meet the current statutory backlog goal and two alternative backlog goals. Although the report provided multiple options for the Legislature to consider, the State Bar did not identify which backlog goal it had determined was most appropriate, or recommend or advocate for a specific backlog goal.

As the Introduction describes, the State Bar's backlog is generally defined as discipline cases that remain pending beyond six months from receipt as of every December 31. The State Bar officials with whom we spoke were critical of using this measure. For instance, the chief of mission advancement and accountability (chief) explained that staff cannot control many aspects of case processing, such as the time that it takes a court to provide certified documents. The special assistant to the chief trial counsel (special assistant) added that it typically takes six months or more for the federal government to provide requested immigration records, which the State Bar uses when investigating some cases. Despite these concerns, the special assistant acknowledged that the State Bar has not set a target for the number of cases in the backlog; instead, it continues to track, report, and analyze its staffing needs based on the existing six-month performance measure.

......................................................................................

### The State Bar has not set a target for the number of cases in the backlog.

......................................................................................

Although six months may be insufficient for resolving certain cases, the State Bar may take up to 12 months for more complicated cases. However, it has chosen not to take advantage of this option. State law sets a goal and policy of 12 months for the State Bar to reach specified outcomes regarding complaints that the chief trial counsel designates as *complicated matters*. Although in 2016 the State Bar identified criteria for designating an item as a complicated matter, the special assistant explained that the State Bar discontinued use of this designation sometime before July 2017 because the state law allowing this designation conflicts with other parts of the law. As specified, one section of state law sets a goal and policy of resolving or forwarding a

completed investigation to the State Bar Court within 12 months for complaints designated as *complicated*;[1] however, two other sections of state law set a reporting requirement or goal of six months for certain outcomes regarding all complaints.[2] In addition, these sections of law use differing language for cases that proceed to the State Bar Court, including "filing of a notice of disciplinary charges" and "filing of formal charges." The State Bar could request that the Legislature clarify state law, including ensuring that references to the backlog allow the longer period for complicated matters. Doing so would provide a backlog measure that more appropriately assesses the State Bar's performance in processing those cases with timelines over which it has limited control.

Despite its criticism of the six-month measure, the State Bar continues to use it for assessing its staffing needs because it is the goal currently established in law. However, in 2018 the State Bar reported to its board that according to a workload study, the trial counsel's office needed 58 additional staff to process most cases within six months. In our 2019 report titled *State Bar of California: It Should Balance Fee Increases With Other Actions to Raise Revenue and Decrease Costs*, Report 2018-030, we noted that the State Bar had made several significant changes to its discipline system process and had based its assessment of its staffing needs on a study it conducted before completing these changes. As part of our 2019 report, we recommended a fee increase that would allow the State Bar to hire 19 additional staff, and we recommended that the State Bar analyze performance data to make more informed estimates of its future staffing needs. The special assistant told us that the State Bar hired these 19 staff in 2019 and 2020 and formed them into a new team in September 2020, but it has not yet studied the impact of this new team on caseloads and the backlog.

> **The State Bar hired 19 staff in 2019 and 2020 and formed them into a new team but it has not yet studied the impact of this team on caseloads and the backlog.**

According to the chief, the State Bar plans to conduct another workload study designed to replicate the study it presented to its board in 2018. The chief stated that the new study is intended to inform a discussion with the Legislature on the necessary level of staff. However, he confirmed that the study will be based on the current statutory

---

[1]  Business and Professions Code section 6094.5.

[2]  Business and Professions Code sections 6086.15 and 6140.2.

six-month backlog measure. A study based on a measure that the State Bar does not believe is appropriate or achievable does not fulfill the requirements of state law or our recommendation to determine a staffing level based on an appropriate measure. Further, it is not an effective use of resources. Rather, as we recommended and state law required in 2016, the State Bar must develop and recommend an appropriate backlog goal and then assess the staff needed to achieve that goal.

### The State Bar's Case Processing Times and Backlog of Cases Significantly Increased Following Its Decision to Reorganize Its Trial Counsel's Office

Two related measures point to problems with the reorganization of the State Bar's discipline system. First, the number of cases in the investigation phase increased from fewer than 1,000 cases in January 2015 to more than 4,000 cases in June 2020. Multiple factors have contributed to this dramatic increase, including a reduction in the number of enforcement staff available for case processing and a reduction in the investigative efficiency of the trial counsel's office. In combination, these factors have contributed to longer case processing times and growth in the second measure that indicates that there is a problem with State Bar's discipline system: an increasing backlog of discipline cases. As Figure 3 shows, the State Bar's backlog increased from 1,494 cases at the end of December 2015 to 2,791 cases at the end of June 2020—an increase of 87 percent. These delays allow attorneys under investigation to continue practicing law while their cases are pending, increasing the potential for harm to the public.

**Figure 3**
**The State Bar's Backlog of Cases Increased by 87 Percent From December 2015 Through June 2020**



Source: Analysis of the State Bar's case data.

Note: Although the backlog increased overall, the number of cases in the backlog declined near the end of each year. According to the special assistant, this decline was likely due to a focus on reducing the backlog by the mandated backlog reporting date.

The State Bar's implementation of the 2016 workforce plan's recommendations reduced the number of staff available to review cases. The special assistant explained that the State Bar moved 11 senior attorneys who previously carried full caseloads into supervisor positions, reducing the staff available for case processing. The reorganization also converted teams that were previously specialized by groups of complaint types into generalist teams that accept all types of case assignments. However, research on efficiency generally indicates that job specialization improves productivity by increasing expertise in a specific area. In fact, these changes appear to have increased case processing times. We found the percentage of cases that were in the investigation phase for more than one year steadily increased from 1 percent in 2015 to 11 percent in 2020. Further, as Figure 4 indicates, the average number of days the State Bar took to complete its investigation phase increased by 56 percent from 2015 through 2020, reaching 190 days in 2020. Thus, on average, the cases that progressed through the investigation phase exceeded the six-month requirement and became a part of the backlog.

**Figure 4**
**The Average Duration of the State Bar's Investigations Has Increased by More Than 50 Percent From 2015 Through 2020**



Source: Analysis of the State Bar's data from 2015 through June 2020.

The special assistant suggested that other factors have contributed to the growing backlog of cases and the longer case processing times, including an increase in the number of complaints and the State Bar's implementation of a new case management system in February 2019. However, our analysis suggests it is unlikely these factors account for the increase either in the backlog or in case processing times. First, although we found that the number of

incoming complaints increased by 6 percent from 2017 through 2018, the total number of complaints increased by only 1 percent from 2015 through 2019. Second, our analysis suggests that the new case management system—which, according to the special assistant, slows case processing but captures more information and thus provides the State Bar with a more powerful tool for data analysis and reporting—slowed case processing speeds for only a short period of time after its implementation. According to the special assistant, a State Bar analysis found a 17 percent average decrease in the number of cases staff resolved per month at the intake phase, and our analysis similarly showed that the average time needed for case intake increased by 25 days from 2018 through 2019. However, this trend has since reversed course: through the first half of 2020, the average time a case remained in the intake phase decreased by 27 days. Further, the State Bar's analysis did not include other phases of the enforcement process.

The State Bar created a new prioritization system in March 2018, and the special assistant asserted that one reason for slower case processing times is that since the State Bar began prioritizing higher priority cases, lower-priority cases have taken longer to resolve. However, our analysis indicates that both higher- and lower-priority cases are taking significantly longer to resolve. As the text box shows, the State Bar places first priority on cases that present a high potential for serious harm to the public rather than those that are either included in or at risk of being added to the backlog. However, we found that the length of time the State Bar took to resolve high-priority cases in the investigation phase increased 14 percent from 2018 to 2020, from 187 days to 214 days. The average time it took the State Bar to resolve lower-priority cases in the investigation phase—which may pose less of a threat to the public but that the State Bar is still obliged to resolve in a timely manner—increased 21 percent, from 188 days in 2018 to 228 days as of June 2020. Because processing times for both higher- and lower-priority cases increased, the separation of cases by priority does not explain the increasing time taken to investigate and process cases.

> **The State Bar's Prioritization of Disciplinary Cases**
>
> **High Priority (P1):** Cases that present significant, ongoing, or serious potential harm to the public, including cases involving vulnerable victims, such as immigrants and the aged; unauthorized practice of law; abandonment of clients; a pattern of or continued engagement in abusive or frivolous litigation; and matters that the State Bar concludes—at its discretion—are appropriate for high priority treatment.
>
> **Expedited (P2):** Cases that can be easily resolved or that require rapid investigation to determine if more significant harm is occurring or will occur.
>
> **Standard (P3):** Cases that do not fall within the other two categories and that are not as time-sensitive or do not require as exacting an investigation.
>
> Source:  State law and the State Bar policy directive.

The State Bar is also disciplining attorneys at a dramatically lower rate for reasons it cannot adequately explain. From 2015 through 2019, the total number of cases that resulted in discipline—including reprovals, suspensions, and disbarments—declined by 54 percent. Expressed as a percentage of total cases closed, cases that concluded with discipline decreased from 5 percent in 2015 to only 3 percent in 2019, as Table 1 shows. The special assistant

believes that the decline is consistent with a nationwide decline in attorney discipline. He cited a number of possible reasons for such a decrease, including his belief that an increase in the number of complaints filed using the State Bar's new online complaint portal may be offsetting a decrease in disciplinable consumer complaints. However, he did not provide data to support these assertions. Because the State Bar cannot definitively explain why discipline has decreased, we are concerned that the decline has continued even as the State Bar began prioritizing the processing of more serious cases in 2018.

**Table 1**
**The State Bar's Discipline of Attorneys Declined Significantly From 2015 Through 2019**

| YEAR | TOTAL CASES CLOSED | CASES CLOSED WITH DISCIPLINE | PERCENT OF CASES CLOSED WITH DISCIPLINE |
|------|-------------------|------------------------------|------------------------------------------|
| 2015 | 16,885 | 864 | 5% |
| 2016 | 16,139 | 776 | 5 |
| 2017 | 14,729 | 530 | 4 |
| 2018 | 15,674 | 418 | 3 |
| 2019 | 15,738 | 399 | 3 |

Source:  Analysis of the State Bar's case data from 2015 through 2019.

The increase in the backlog and the time to complete investigations, despite the decline in discipline, indicate that the State Bar's reorganization has not improved its efficiency or effectiveness. Nonetheless, in 2019 the State Bar abandoned a plan to evaluate the results of its reorganization. However, the factors we describe throughout this section—an increase in the average number of cases in the investigation phase, an increase in case processing times, and an increase in the backlog of discipline cases—suggest that unless the State Bar takes steps to address its current process, its backlog will continue to increase.

**The State Bar's Lack of Adequate Monitoring Has Hampered Its Ability to Detect Problems in Its Discipline System**

The State Bar has not effectively measured the performance of its discipline system staff against internal performance benchmarks (benchmarks), which has hampered its ability to determine whether its reorganization has been effective. In our 2019 report, we recommended that the State Bar develop benchmarks for the duration of each step in its investigation process, and in 2020 the State Bar asserted that it had established these benchmarks. For

example, it established a goal of resolving higher-priority cases and lower-priority cases within 30 days and 45 days of obtaining all evidence, respectively. However, the special assistant confirmed that the State Bar does not have the ability to monitor its performance against these benchmarks because its case management system has limited reporting capabilities. Although he hopes to develop additional reports in the near future, the State Bar is not currently assessing whether it is meeting its benchmarks, which could help identify which aspects of its process are taking longer than it expects.

In addition, the State Bar's caseload in the investigations phase— the number of cases per staff member—doubled from January 2015 to June 2020. However, the special assistant told us he does not use a workload benchmark for staff because the State Bar cannot control the number of cases it receives. Although the State Bar has increased the budgeted positions for the trial counsel's office every year from 2016 through 2020, for a total increase of 18 percent, the special assistant asserted that the trial counsel's office does not have enough staff to ensure an optimal workload and reduce the backlog. However, the State Bar must determine two numbers to persuasively advocate for a specific number of additional staff if it believes they are necessary to reduce the backlog. First, it must develop an appropriate backlog goal, as we recommended in our 2015 report, and work with the Legislature to adopt that goal. Second, it must determine the associated staffing level to meet that goal—as we also recommended in our 2015 report—which requires that it determine the workload benchmark for the number of cases each staff member should be able to process. If the State Bar were assessing its staffing against an appropriate goal as state law requires, it could better justify its requests for the additional resources it believes it needs.

## Recommendations

### Legislature

To clarify state law and provide more transparency regarding the nature of the existing backlog of discipline cases, the Legislature should do the following:

- Revise state law to remove Business and Professions Code section 6140.2, which has similar requirements for the State Bar's goals and policies for timely case processing but omits the State Bar's authority to designate *complicated matters*.

- Revise Business and Professions Code section 6086.15, subdivision (a)(1), to require the State Bar to include in its discipline report the number of complicated matters as of the end of the reporting period that were pending beyond 12 months after receipt without dismissal, admonition, or the filing of formal charges by the trial counsel's office.

### State Bar

To ensure that it is operating efficiently, the State Bar should assess the impact of its discipline system reorganization, including determining how the changes have affected its ability to efficiently resolve cases and fulfill its mandate to protect the public. Based on the assessment's results, the State Bar should determine whether additional changes to its organizational structure are warranted.

To determine if the changes to its discipline process have been effective and to help it identify problems in specific phases of its process before they affect the backlog, the State Bar should implement methods to monitor its enforcement process performance, including comparing the trial counsel staff's performance against its benchmarks.

To reduce its backlog of discipline cases and ensure that it has appropriately allocated resources to all phases of its discipline process, the State Bar should do the following:

- Develop and recommend an appropriate backlog measure and goal as required by state law, including the number of days at which a case should be added to the backlog as well as a goal for the number of cases in the backlog.

- Determine the staffing level necessary to achieve that goal, as required by state law.

- Work with the Legislature to establish this backlog measure and goal and to revise its reporting requirements accordingly. If necessary, the State Bar should also request the additional resources required to meet the goal.

Blank page inserted for reproduction purposes only.

# The State Bar's Discipline Report Does Not Provide All Required Information, and Its Publishing Date Reduces Its Value to Stakeholders

## Key Points

- The State Bar does not fully and consistently present required information in its discipline report, limiting the ability of stakeholders to evaluate its administration of its discipline system.

- The deadline established in state law for submitting the annual discipline report limits the amount of time the Legislature has to assess the State Bar's performance before deliberating on the annual fee bill.

### The State Bar's Discipline Report Does Not Fully and Consistently Provide Information About Its Discipline System

As we discuss in the Introduction, state law requires the State Bar to issue a discipline report that enables key stakeholders—the Governor, the chief justice of California, and specified legislative members and committees—to evaluate certain aspects of its discipline system for the previous calendar year. State law requires the State Bar to include statistical information and accurate and complete descriptions for 15 topics related to the performance and condition of its discipline system, including the backlog of cases. The information in the discipline report is particularly important because it is the only comprehensive report that the State Bar submits to the Legislature describing the performance and condition of its entire discipline system.

To ensure that the discipline report contains accurate, complete, and consistent information so that stakeholders may compare it to previous years' reports, state law requires the report to include the following:

- Data for the previous calendar year.

- Similar information for the previous three years.

- Accurate and complete data descriptions.

Information from multiple years is useful for determining how effectively the State Bar has used its resources over time and whether changes to the State Bar's fee bill are warranted. Since the State Bar's disciplinary functions support its mission to protect the public, accurate and complete descriptions of the information within the discipline report allow stakeholders to better understand the information they are reviewing and therefore determine if the State Bar is fulfilling that mission.

Nonetheless, the State Bar failed to include accurate and complete information in its most recent report. As Table 2 shows, the State Bar met all three reporting requirements for only two statutorily required topics, and it did not satisfy any reporting requirements for five of the 15 topics. For example, in June 2018, a California Rule of Court was adopted requiring all California attorneys to be re-fingerprinted, which resulted in the State Bar receiving notifications from the California Department of Justice (Justice) regarding criminal charges and convictions against attorneys that had not been previously reported to the trial counsel's office. This affected the State Bar's reporting on metrics related to matters reported by other sources. The State Bar included metrics about criminal conviction cases in its 2018 discipline report and reported in 2019 that the number of attorneys with criminal conviction cases increased from 210 in 2018 to more than 2,300 in 2019.[3] However, the State Bar left out these new cases when it disclosed the case statuses, average pending times, and outcomes for matters reported by other sources in 2019. The State Bar reported receiving only about 100 cases involving the filing of criminal charges or convictions in 2019; however, the chief confirmed that this number excludes criminal conviction cases reported by Justice.

..............................................................................................

**The State Bar failed to include accurate and complete information in its most recent report.**

..............................................................................................

According to the chief, the State Bar did not include these cases because it interprets state law to require that it only report information it receives from the prosecuting agency involved in a case or from the court where a conviction occurred, and neither apply to the information that Justice provided. However, we disagree. State law specifically requires the State Bar to report on how it handles felony or certain misdemeanor charges and convictions against California attorneys, whether the State Bar receives this information from prosecuting agencies, from courts, or it is procured by the State Bar through other means—such as the information it obtained from Justice.

---

3   Criminal conviction cases can include cases in which an attorney is arrested and prosecuted for committing a crime, such as driving under the influence. Once the trial counsel's office becomes aware of such a case it will monitor the case and, if the attorney is convicted, must submit the criminal conviction report to the State Bar Court. The State Bar Court may impose certain discipline or, if appropriate, recommend serious disciplinary issues to the Supreme Court for review.

**Table 2**
**The State Bar's 2019 Discipline Report Omitted Required Information About Its Discipline System**

| STATUTORILY REQUIRED TOPICS | REPORTING REQUIREMENTS | | | NUMBER OF REQUIREMENTS MET |
|---|---|---|---|---|
| | DATA FOR THE PREVIOUS CALENDAR YEAR* | SIMILAR INFORMATION FOR THE PREVIOUS THREE YEARS* | ACCURATE AND COMPLETE DATA DESCRIPTIONS* | |
| Backlog of cases within the discipline system | X | X | X | 0 |
| Number of inquiries and complaints and their disposition | X | X | X | 0 |
| Matters self-reported by licensees | ✓ | ✓ | X | 2 |
| Matters reported by other sources, including outside organizations | X | X | X | 0 |
| Complaint handling and disposition processing times as specified | X | X | X | 0 |
| Disciplinary charges and formal disciplinary outcomes | X | X | X | 0 |
| Other matters, such as interim suspensions, admonitions, and agreements in lieu of discipline | ✓ | ✓ | X | 2 |
| Former attorneys engaged in the unauthorized practice of law | X | ✓ | X | 1 |
| Non-attorneys engaged in the unauthorized practice of law | X | ✓ | X | 1 |
| Client Security Fund's condition and payouts | ✓ | X | ✓ | 2 |
| Accounting of the discipline system cost by function | ✓ | X | ✓ | 2 |
| Disposition of attorney felony allegations† | X | ✓ | X | 1 |
| Investigations of improper demand letters related to construction-related accessibility claims† | ✓ | ✓ | ✓ | 3 |
| Insurance fraud investigations† | ✓ | ✓ | ✓ | 3 |
| Alleged violations of requirements related to lawyers selling financial products to elders and dependent adults† | ✓ | ✓ | X | 2 |
| **Number of topics that met this requirement** | **7 out of 15** | **8 out of 15** | **4 out of 15** | |

Source: State law, the State Bar's 2018 and 2019 discipline reports, and interviews with State Bar staff.

\* State law requires the State Bar to include multiple metrics or measures for many of the discipline report topics. If the State Bar failed to meet the reporting requirement for any of the metrics or measures, we designated it as not having met the requirement for the related topic.

† State law does not establish that the discipline report must include similar information for the previous three years or accurate and complete data descriptions for these topics. Nevertheless, these requirements represent best practices, and for that reason, we assessed whether the State Bar's discipline report included this information.

State law also requires that for 11 topics, the State Bar must include in the discipline report similar information for the previous three years to allow for year-to-year comparisons, and we used this criteria as a best practice to assess four other topics in the report as well. However, the State Bar included three years of information for only eight of the 15 topics. For example, the State Bar reported only one year's worth of information for the two financial metrics that Table 2 lists—the Client Security Fund's condition and payouts, and the discipline system costs. According to the chief, the State Bar does not include previous years' information for these financial topics because it interprets state law to require only three years of information for statistical information and it does not consider these specific financial topics to be "statistical." However, state law does not differentiate between reporting financial and other statistical information, and therefore the State Bar should provide the previous three years of information for all topics required by the law. Further, without financial information from prior years, it is more difficult for stakeholders to compare changes in spending to changes in the performance and condition of the discipline system.

........................................................................................................

**The State Bar's lack of adequate oversight over the discipline report approval process may explain why the report has not consistently met statutory requirements.**

........................................................................................................

The State Bar's lack of adequate oversight over the discipline report approval process may explain why the report has not consistently met statutory requirements. Our 2015 audit report also identified issues with the discipline report, and we recommended that the State Bar improve its oversight, in part by conducting a review of both the discipline report and the underlying discipline statistics. In response, the State Bar amended a board committee's responsibilities in 2016 to include overseeing the discipline report process. However, the committee reviewed only one of the four reports the State Bar published after 2016. Although the board and its executive committee approved the discipline reports in the other three years, the numerous issues described above clearly illustrate that the board's review of the 2019 report was deficient. Further, the State Bar has not adopted policies or procedures outlining how it will compile or review the report to ensure that the information is consistent with state law. The board's policy clearly assigns the committee the responsibility to oversee the report process and the underlying discipline statistics. However, whether the committee or the board itself reviews the report, the amount of information missing from the 2019 report suggests that the current oversight is inadequate for producing an accurate and complete description of the State Bar's discipline system.

**Revising the Publishing Date for the Discipline Report Would Provide the Legislature More Time to Evaluate the State Bar's Performance**

State law requires the State Bar to issue its discipline report to the Legislature and other stakeholders by April 30 each year. However, that date hampers the Legislature's ability to review the State Bar's performance before it introduces the annual fee bill. As the Introduction describes, the Legislature is responsible for setting attorneys' annual license fees through this bill. These fees are particularly important because they represent nearly half of the State Bar's annual revenue and they fund the discipline system. However, the Legislature typically introduces and begins deliberating on the fee bill before it receives the discipline report. For example, in 2019 the Legislature introduced the 2020 fee bill in January and began reviewing the bill in March. Consequently, it had already introduced and begun discussing the fee bill before the State Bar published its discipline report on April 30.

Because the discipline report is the only report describing the performance and condition of the State Bar's entire discipline system, the Legislature should consider changing the report's deadline to give itself additional time for review before addressing the fee bill. If the State Bar submitted the discipline report annually in October, the Legislature would have time to more thoroughly review its contents before introducing the fee bill in January. For the State Bar to submit a report in October, the Legislature would need to alter the requirement that the report contain information from the prior *calendar* year. Requiring the report to include information for a period from July 1 through June 30, aligned with the state fiscal year, would provide the State Bar with the same amount of time to compile the report as it currently has while providing the Legislature with more time to review the State Bar's performance before introducing the fee bill.

**Recommendations**

*Legislature*

To provide itself sufficient time to review the discipline report before considering the annual fee bill, the Legislature should do the following:

• Amend state law to require the State Bar's discipline report to cover the 12 months from July 1 through June 30 of the previous year and to require that the State Bar submit the discipline report annually by October 31.

- In the year in which it amends the discipline report's time period, require the State Bar to report information for both the prior calendar year and the newly defined period to ensure that stakeholders can compare the information for the newly defined period to prior years.

***State Bar***

To ensure that the State Bar's discipline report presents accurate, complete, and consistent information as state law requires, the board should require the designated committee to review, evaluate, and approve the discipline report before submitting it to the board. Additionally, the committee should develop procedures outlining how the State Bar should compile the report in accordance with statutory requirements. The committee should approve these procedures for the State Bar's use before finalizing its 2021 discipline report.

To ensure that users of the discipline report can compare information from year to year, the State Bar should describe in each discipline report any changes it makes to its approach to calculating metrics and, for that year, provide information calculated under both its old and new methods.

# The State Bar Appropriately Administered the Bar Exam During the COVID-19 Pandemic, but Its Procurement of Exam Software Did Not Comply With Its Policy

## Key Points

- At the direction of the Supreme Court, the State Bar developed a provisional licensure program for recent law school graduates who were negatively affected by bar exam delays caused by the COVID-19 pandemic. In addition, to avoid the risks associated with in-person contact during the pandemic, the State Bar modified how it administered the bar exam, allowing applicants to take the October 2020 bar exam remotely.

- The State Bar did not follow its contracting policy when it entered into software agreements worth nearly $4 million related to the bar exam. As a result, it did not verify that it was using its resources responsibly.

### The State Bar Effectively Implemented the Supreme Court's Directive to Modify Its Admission Practices and Its Administration of the Bar Exam in Response to the COVID-19 Pandemic

The Supreme Court directed the State Bar to delay offering the bar exam multiple times because of the COVID-19 pandemic. In order to practice law in California, an applicant must pass the bar exam, which state law allows an applicant to take twice a year, and maintain an active license. Consequently, the bar exam delays prevented recent law school graduates from becoming attorneys. When the Supreme Court postponed the July 2020 bar exam for a second time, it required the State Bar to mitigate the impact the postponement would have on these graduates' employment prospects and livelihoods. Specifically, it directed the State Bar to implement a temporary supervised provisional licensure program (temporary licensure program) and arrange to administer the bar exam remotely.

In October 2020, the Supreme Court authorized the State Bar to administer its proposed temporary licensure program for eligible 2020 law school graduates beginning in November 2020. The program allows a provisionally licensed lawyer to provide legal services under the direction of a supervising lawyer. The supervising lawyers must be licensees in good standing with the State Bar, among other things, and they must agree to assume professional responsibility for the work of the provisionally licensed lawyers. Applicants must meet a number of criteria, including having been eligible to sit for the bar exam at some point from December 2019 through December 2020, and they must have submitted a complete application for determination of moral character to the State Bar. According to the State Bar, it had received about 1,500 applications for a provisional license as of February 2021, and it had approved about 700 of these applications. The remainder consisted primarily of incomplete applications. The State Bar will terminate

approved applicants' provisional licenses under certain circumstances, such as if it sanctions the applicants for misconduct, if the applicants are admitted to the State Bar, and when the program ends in June 2022.

In addition, following the Supreme Court's August 2020 order modifying how and when it should administer the bar exam, the State Bar amended an existing contract with its software vendor, ExamSoft, to obtain remote proctoring services for the October 2020 exam. The State Bar had previously signed a five-year, $3 million contract with ExamSoft in May 2020 providing it with software that applicants install on their personal computers or use on the State Bar's computers in order to take the exam.[4] This contract provided the software for 10 bar exam dates expected to occur from July 2020 through February 2025.[5] The State Bar amended this contract in August 2020 to include ExamSoft's verifying applicants' identity, recording applicants for the duration of the exam, and reviewing the recordings to identify suspicious behavior. This amendment was exclusive to the October 2020 bar exam and cost the State Bar an additional $830,000.

> **The amendment to obtain remote proctoring services was exclusive to the October 2020 bar exam and cost the State Bar an additional $830,000.**

According to the State Bar, about 8,900 applicants of the 9,300 applicants who took the exam in October 2020 did so remotely.[6] Subsequently, the State Bar reviewed nearly 3,200 videos that the software and human review had flagged for possible violations, such as the applicants' leaving the camera's view or using other electronic devices, and it ultimately found fewer than 50 violations of examination rules and policies. The State Bar signed another contract amendment with ExamSoft in January 2021 for an additional $1.3 million to obtain

---

4    The records that the State Bar provided indicate that it has contracted with ExamSoft since at least 2003 to provide software for bar exams.

5    The State Bar pays ExamSoft according to the total number of individuals who register to take the bar exam; therefore, the actual amount the State Bar pays may be more or less than the original contract amount.

6    The State Bar provided in-person examinations on a case-by-case basis to applicants requesting certain testing accommodations and to applicants who indicated they lacked a testing environment conducive to taking the exam.

remote proctoring services for the February 2021 exam after the Supreme Court issued an order in November 2020 directing it to also administer that bar exam remotely.

The State Bar's actions effectively implemented the Supreme Court's orders related to the temporary licensure program and the remote administration of the October 2020 bar exam. Its actions provided eligible graduates an opportunity to practice law in California under the supervision of an eligible California attorney while waiting to take the bar exam. Further, the State Bar administered the bar exam remotely for the first time while taking steps to preserve the bar exam's integrity through the acquisition of additional services to verify applicants' identity and to monitor for suspicious behavior. However, as we describe in the next section, the State Bar should have documented that it received the best value when contracting for these services.

### The State Bar Entered Into Multimillion Dollar Agreements Without Adequately Justifying the Vendor It Selected

The State Bar's procurement policy provides its staff with significant levels of discretion when selecting vendors for the administration of the bar exam. However, the State Bar did not follow its contracting policy when it entered into software agreements related to the bar exam. Although state law requires the State Bar to use formal competitive bidding procedures and obtain at least three competitive bids or proposals for information technology-related goods and services in excess of $100,000, it provides an exception from competitive bidding for contracts related to licensing or proficiency testing examinations, such as the bar exam (exam exemption). In these instances, the State Bar's procurement manual gives contract managers the authority to select the vendor to provide the required goods or services, rather than requiring competitive bidding. The State Bar used the exam exemption to approve both the five-year, $3 million contract with ExamSoft and the $830,000 contract amendment we describe in the previous section.

However, the State Bar entered into these contracts without meeting its own requirement to evaluate whether it would receive the best value for the money that it spent. According to the State Bar's procurement manual, when using a bidding exemption—such as the exam exemption—contract managers must use some type of evaluation to select a vendor that provides the State Bar with the best value, as the text box

**Selected Best Value Evaluation Strategies and Documentation Requirements**

Contract managers who use the competitive bidding exemption must document their efforts taken to determine best value, including the following:

- Vendors solicited

- Evaluation criteria

- Manager's determination and reasoning

The State Bar's procurement manual outlines the type of evaluations that contract managers can use to select a vendor that provides the best value, including the following:

- Conduct online price checks

- Review a third-party analysis

- Compare the vendor's products or services to other similar solutions

Source:  State law, the *State Contracting Manual*, and the State Bar's *General Procurement Manual*.

describes. Further, contract managers must document their efforts to determine the best value for a contract and must maintain these records within their department.

The State Bar's ExamSoft contract manager stated that she did not document how she determined that ExamSoft provided the best value before submitting the April 2020 contract or the August 2020 amendment. She also stated that she did not perform a best-value analysis, in part because the State Bar was not sure whether any other vendor could meet its technical needs. However, she could not provide any documentary support for this conclusion either. The chief administrative officer (administrative officer) confirmed that for the ExamSoft agreements, the State Bar did not enforce its procurement policies related to documenting the best value because of its knowledge about and history of contracting with ExamSoft. In response to our concerns, he stated that the State Bar developed policies requiring that contract managers submit to its procurement unit descriptions of their justification for using a competitive bidding exemption and of their best-value analysis. Until it enforces these policies, the State Bar risks engaging in the kinds of practices that its general procurement manual is meant to prevent, such as failing to determine whether more cost-effective alternatives exist.

**Recommendation**

*State Bar*

To ensure that it receives the best value for the money it spends, the State Bar should establish documentation standards and templates for contract mangers to follow when using the exam exemption.

# Other Areas We Reviewed

To address the audit objectives, we also reviewed the State Bar's efforts to manage its revenue and expenditures in a manner that fully supports its mission of protecting the public.

### The State Bar's General Fund

The State Bar uses its general fund to maintain, operate, and support its attorney discipline system. It had a general fund surplus for 2020, and it has taken steps to maintain its general fund reserve level. It has an ongoing policy requiring it to maintain a minimum reserve level in its general fund that equates to two months (or 17 percent) of its operating expenses. In its 2021 adopted budget, the State Bar projected that its general fund revenue would exceed its expenses by nearly $6 million in 2020, increasing its operating reserve to a projected $18.5 million. This amount equals about 21 percent of its expenses, which is above its minimum reserve requirement. The State Bar's chief financial officer attributed the 2020 surplus to decreases in personnel expenses, supplies costs, and equipment costs, all of which were because of the COVID-19 pandemic. For example, the State Bar projected that in 2020 it spent 11 percent less than budgeted for personnel costs. The State Bar projects a general fund reserve balance level of 19 percent for 2021, which is more than its 17 percent minimum and less than its 30 percent maximum reserve-level requirements.

### Potential Revenue From the State Bar's Real Estate

The State Bar has made some efforts to increase revenue and reduce costs associated with its real estate properties. In October 2020, the State Bar refinanced the loan on its Los Angeles building and thereby reduced its annual debt service through 2027 by $1.2 million. Further, the State Bar commissioned a space usage study of its San Francisco office in 2020 to determine how it can more effectively occupy this building and how it can increase revenue by vacating unneeded space that it can then lease to tenants. The study identified a 20 percent vacancy rate for its staff's workspace and a low usage rate for many of its conference rooms.

According to the State Bar's administrative officer, the COVID-19 pandemic has created uncertainty about the demand for the space it leases to tenants. Further, the administrative officer explained that the State Bar will need to assess the extent to which teleworking will continue in the long term in order to plan for its future space needs. The State Bar's interim executive director also explained that due to the challenges and uncertainties associated with the COVID-19 pandemic, the State Bar does not currently know how successful it will be in leasing existing vacant tenant space, or when it will make decisions regarding any underutilized space that it currently occupies itself.

We conducted this audit under the authority vested in the California State Auditor by Government Code sections 8543 et seq. and according to generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives specified in the Scope and Methodology section of the report. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

Respectfully submitted,

*Elaine M. Howle*

ELAINE M. HOWLE, CPA
California State Auditor

April 29, 2021

# APPENDIX

### Scope and Methodology

We conducted this audit pursuant to the audit requirements contained in the Business and Professions Code. For this audit, we assessed the State Bar's management of its attorney discipline system by reviewing its staffing levels, the timeliness of its investigations, and its disposition of cases, as well as the transparency of the information it provides to stakeholders in its discipline report. We also reviewed the State Bar's response to the COVID-19 pandemic and its impact on the state bar examination and on prospective California attorneys. The following table lists the audit objectives and the methods we used to address them.

### Audit Objectives and the Methods Used to Address Them

| | AUDIT OBJECTIVE | METHOD |
|---|---|---|
| 1 | Review and evaluate the laws, rules, and regulations significant to the State Bar's operations. | Reviewed relevant laws, regulations, and other background materials. |
| 2 | Evaluate the State Bar's management of its attorney discipline system, including but not limited to the following:<br><br>a. The resources, including the level of staff devoted to the attorney discipline system.<br><br>b. The timeliness of its investigations and disposition of cases.<br><br>c. The effectiveness of this system in protecting the public from attorneys who engage in inappropriate conduct.<br><br>d. The level of transparency the State Bar provides in its reports to the Legislature that provide various measures of its discipline process. | • Reviewed the State Bar's policies and interviewed staff regarding its processes for investigating and disciplining attorneys accused of misconduct, including its reorganization of its trial counsel's office beginning in 2016, its implementation of a new case prioritization process in 2018, and its implementation of the new case management system in 2019.<br><br>• Assessed the total backlogged cases for each month of the audit period and interviewed staff to determine reasons for the increasing backlog and case processing times.<br><br>• Calculated the average number of case processing days by phase and case priority level, and the number of pending cases per month by phase to determine correlations between timeliness and staff workload.<br><br>• Determined the outcomes of closed cases and calculated the percentage of closed cases that involved disciplinary actions.<br><br>• Evaluated internal benchmarks and performance metrics for the trial counsel's office and reviewed a selection of 10 backlog cases that the State bar processed during 2018 and 2019. We could not test the majority of the cases processed in 2018 against the State Bar's internal benchmarks because its case management system did not contain the information necessary, such as when an initial interview was conducted. We tested five cases processed in 2019 and found that three did not meet at least one of the internal benchmarks. However, the State Bar could not provide specific reasons for these delays, and stated that it had suspended some internal benchmarks to alleviate increased staff workload due to an increase in complaints and changes made in anticipation of its new case management system.<br><br>• Reviewed and analyzed the State Bar's discipline reports and interviewed staff to determine if the reports included accurate, consistent, and sufficient data regarding the attorney discipline system. |

| AUDIT OBJECTIVE | METHOD |
|---|---|
| 3    Summarize and evaluate the State Bar's recent efforts to manage its revenue reserves and expenditures to fully support its public protection mission. | • Reviewed the State Bar's general fund revenues, expenditures, and reserve balance from 2015 through 2020 and documented changes that led to a 2020 general fund surplus.<br><br>• Compared a selection of the State Bar's travel and reimbursement policies against California Department of Human Resource's requirements and found no material differences. We also assessed the State Bar's process for using its real property based on our previous audit recommendations. |
| 4    Identify the impact of the COVID-19 pandemic on the bar exam and on prospective California attorneys by determining the following:<br><br>a.  The State Bar's response to the pandemic and its work with stakeholders to administer the exam safely, responsibly, and in a timely manner.<br><br>b.  Best practices of other state bars to administer their respective exams. | • Reviewed Supreme Court letters and decisions involving changes to the 2020 bar exam and approval of a provisional licensure program as a result of the COVID-19 pandemic.<br><br>• Reviewed and analyzed the State Bar's policies and documents and interviewed staff to identify how the State Bar planned, implemented, and administered the October 2020 bar exam and the provisional licensure program.<br><br>• Reviewed and assessed New York's, Oregon's, and Texas's responses to the COVID-19 pandemic and compared their actions to the steps California took to modify its admission practices and its administration of the bar exam in response to the pandemic. We found California took steps similar to those taken by these states.<br><br>• Reviewed the 2018 and 2019 statements of economic interests filed by the board, the Committee of Bar Examiners, and the State Bar's executive management and admissions division staff. We determined that none of these individuals disclosed a financial interest in ExamSoft. |
| 5    Review and assess any other issues that are significant to the audit. | Reviewed and analyzed the State Bar's procurement manual and interviewed the State Bar's staff to determine its process for evaluating vendors and entering into contracts for the bar exam, including requirements associated with competitive bidding exemptions. |

Source:  Analysis of state law and audit workpapers.

## Assessment of Data Reliability

The U.S. Government Accountability Office, whose standards we are statutorily required to follow, requires us to assess the sufficiency and appropriateness of the computer-processed information that we use to support our findings, conclusions, or recommendations. In performing this audit, we relied on the State Bar's case management data. To evaluate these data, we reviewed existing information about the data, interviewed staff knowledgeable about the data, performed electronic testing of the data, and traced a sample of the data to supporting documents. We found that these data were sufficiently reliable for the purposes of this audit.



## The State Bar of California

**OFFICE OF THE EXECUTIVE DIRECTOR**

845 S. Figueroa Street, Los Angeles, CA 90017

donna.hershkowitz@calbar.ca.gov
213-765-1356

SENT VIA ENCRYPTED EMAIL

April 9, 2021

Ms. Elaine M. Howle *
California State Auditor
620 Capital Mall, Suite 1200
Sacramento, CA 95814

RE: State Bar of California Response to Audit Report 2020-030, for the period of January 1, 2019, to December 31, 2020

Dear Ms. Howle:

The State Bar welcomes suggestions for positive change, and audits provide a unique opportunity to re-examine the State Bar's processes and procedures, and its compliance with those processes and procedures as well as state law. Having an independent set of eyes review our work can bring clarity and fresh ideas. Audits such as this one also serve to push us forward in bringing resolution to proposals and plans that we have been working on for some time and help to identify areas for further improvement. We are in general agreement with the recommendations for improvement and will implement virtually all of them, perhaps with some modifications discussed below and as further study indicates. We strongly disagree with some of the statements in the remainder of the text, but believe it is more productive to focus on the recommendations and how the State Bar will implement the auditor's recommendations.

## STATE BAR RESPONSE TO AUDIT RECOMMENDATIONS

### RECOMMENDATIONS FOR THE LEGISLATURE

*Recommendation:* To clarify state law and provide more transparency regarding the nature of the existing backlog of discipline cases, the Legislature should:
- Revise state law to remove Business and Professions Code section 6140.2, which has similar requirements for the State Bar's goals and policies for timely case processing but omits the State Bar's authority to designate *complicated matters*.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

\*   California State Auditor's comment begin on page 45.

Elaine M. Howle
April 9, 2021
Page 2

- Revise Business and Professions Code Section 6086.15, subdivision (a)(1), to require the State Bar to report in the Annual Discipline Report the number of complicated matters as of the end of the reporting period that were pending beyond 12 months after receipt without dismissal, admonition, or the filing of formal charges by the trial counsel's office.

*Response*: The State Bar agrees that reform of the metrics used to measure how the State Bar performs its mission of protecting the public from the malfeasance or misfeasance of attorneys is needed. In 2016, the State Bar proposed such changes to the Legislature in a report entitled, *State Bar Backlog*, submitted pursuant to Business and Professions Code section 6140.16. The State Bar has refined its thinking on this issue over the years and has shared with the auditor a proposed revised approach to measure the effectiveness of the State Bar in managing its discipline system and protecting the public. This revised approach places the focus and priority on the cases that pose the most harm to the public, as opposed to those that are simply the oldest, as the current statutory backlog measure does. These new principles for case processing goals are included in the supplemental information section below. The State Bar will be working with the Legislature to more fully develop these principles and agree upon appropriate measures. Adoption of these changes would render this recommendation moot.

①

*Recommendation*: To provide the Legislature sufficient time to consider the discipline report before reviewing the annual fee bill, [the Legislature] should:
- Amend state law to require the State Bar's discipline report to cover the 12 months of July 1 through June 30 of the previous year[sic], and require that the State Bar submit the discipline report annually by October 31.
- In the year that the discipline report's time period is amended, require the State Bar to report information for both the prior calendar year and the newly defined period to ensure that stakeholders can compare the information for the newly defined period to prior years.

*Response*: The State Bar has no concerns with this proposal.

**RECOMMENDATIONS FOR THE STATE BAR**

*Recommendation*: To ensure that it is operating efficiently, the State Bar should assess the impact of its discipline system reorganization, including how the changes have affected its ability to efficiently resolve cases and fulfill its mandate to protect the public. Based on the assessment's results, the State Bar should determine whether additional changes to its organizational structure are warranted.

*Response*: The State Bar agrees with the recommendation to conduct an assessment to determine whether and, if so, how the restructuring of the Office of Chief Trial Counsel (OCTC) impacted the office's ability to resolve cases and fulfill its public protection mandate.

Elaine M. Howle
April 9, 2021
Page 3

Based on currently available information, the State Bar believes that the reorganization was a positive move. These structural changes were implemented based on recommendations from the National Center for State Courts (NCSC) as part of its workforce planning report. The State Bar contracted with NCSC to conduct the workforce planning review directed by Business and Professions Code section 6140.16. The reorganization yielded positive changes in several ways, including the elimination of redundant levels of review. And while the State Bar was not authorized to impose a licensing fee increase until 2020, the State Bar nonetheless allocated discrete resources to OCTC to increase the office's total number of staff.    ②

The State Bar believes that a comprehensive assessment of the reorganization will reveal that factors other than the reorganization explain some of the statistical trends noted in the Auditor's report. OCTC's work is largely complaint driven and as a result, the rate at which complaints are submitted drives OCTC's workload. Starting in July 2018, complaints increased substantially. In October 2018, when the State Bar launched an online complaint portal, which allowed people to file a complaint online for the first time, complaints rose yet further. Overall, in 2018 and 2019, the number of complaints increased by four and five percent respectively, and OCTC managed that increased volume with largely the same resources it had before the increase. The rate of complaints subsequently decreased, which explains the Auditor's note that the number of complaints rose only one percent between 2015 and 2019. However, that one percent figure obscures the surge in case volume that OCTC managed in 2018 and 2019, which was a significant contributor to the increased case processing times noted in the report.    ③

In addition, in February 2019, the State Bar fully launched a new case management system, moving from a legacy computer system and largely paper-based process paper-based computer system to a modern electronic, paperless system. While the change was past due and will generate long-term benefits, the transition negatively impacted OCTC's productivity in the short term. In addition, the impact of the COVID-19 pandemic on 2020 cannot be overlooked. Besides the challenge of launching remote work for hundreds of staff almost overnight, delays arose because those entities on which OCTC relies for evidence (e.g., banks and courts) were slow to respond to requests for information, and the State Bar Court temporarily halted proceedings.    ④

Finally, while the 2020 fee increase allowed the hiring of staff to form a new OCTC team in the Los Angeles office, the pandemic impacted the ability to onboard and train those staff as quickly as desired. The staff were onboarded over the course of the year, with the new team formally constituted in September 2020. Most new staff to the office take six months to a year to develop sufficient expertise to carry a full caseload. Thus, the full benefit of the new resources will not be realized until later in 2021.

Elaine M. Howle
April 9, 2021
Page 4

*Recommendation:* To determine if the changes to its discipline process have been effective and to help it identify problems in specific phases of its process before they affect the backlog, the State Bar should implement methods to monitor its enforcement process performance, including comparing the trial counsel staff's performance against internal case processing benchmarks.

⑤ *Response*: The State Bar agrees with the recommendation. The State Bar had already begun to implement such changes prior to the audit. Staff have developed a wide range of customized management and operational reports that were not included in the new case management system when it launched. These new reports will provide the State Bar and its Board of Trustees a more detailed view of the inventory, individual performance, and the performance of the office overall.  As recently as December 2020, several key reports were launched that reflect current inventory, number of newly assigned cases, and the number of dispositions by individual attorneys and investigators as well as by teams.

The State Bar continues to develop additional reports, including one to determine whether OCTC team members are able to accomplish relevant investigative tasks consistent with interim case-processing benchmarks. These benchmarks set time frames for interim steps in an investigation and are intended to encourage the prompt disposition of discipline matters as a whole. The report is expected to be in production soon and will be used to evaluate case processing and determine whether the benchmarks are reasonable in light of current resources.

*Recommendation:* To reduce its backlog of discipline cases and ensure that it has appropriately allocated resources to all phases of its discipline process, [the] State Bar should do the following:

- Develop and recommend an appropriate backlog measure and goal as required by state law – including the number of days at which a case should be added to the backlog as well as a goal for the number of cases in backlog.
- Determine the staffing level necessary to achieve that goal, as required by state law.
- Work with the Legislature to establish this backlog measure and goal, and revise its reporting requirements accordingly. If necessary, it should also request the additional resources required to meet the goal.

*Response*: As described above, in 2016 the State Bar proposed to the Legislature new metrics which would supersede the current statutory backlog measure. Since that time, recognizing that the focus on backlog inadvertently creates incentives to work cases in the order in which they arrive, regardless of their severity, OCTC adopted a case prioritization method. The fundamental purpose of this approach is to protect the public from misconduct that poses the greatest threat to the public while attempting to process all cases as expeditiously as current resources permit. The approach formed the basis of the ⑥ State Bar's recently developed principles for measuring our effectiveness in protecting the

Elaine M. Howle
April 9, 2021
Page 5

public. We believe these principles are superior to the current backlog measure. We look forward to working with the Legislature to continue to formulate and implement these improved measures to monitor and improve the effectiveness of the State Bar in protecting the public.

*Recommendation*: To ensure that the State Bar's discipline report presents accurate, complete, and consistent information, as state law requires, the board should require the designated committee to review, evaluate, and approve the annual discipline report before submitting the report to the Board. Additionally, the committee should develop procedures outlining how the State Bar should compile the report in accordance with statutory requirements. The committee should approve these procedures for the State Bar's use before finalizing its 2021 discipline report.

*Response*: As the audit report notes, each Annual Discipline Report discussed in the audit was reviewed either by the Board of Trustees itself, the Executive Committee based on its delegated authority from the Board, or the Board's Regulation and Discipline Committee.

Because the Regulation and Discipline Committee includes nearly all Board members, in several years the Board determined that it would be more efficient and enable the most comprehensive review to have the full Board review the report in the first instance. Requiring review first by the Regulation and Discipline Committee, followed by the entire Board, would have been redundant and inefficient, because both bodies include essentially the same people. The Board will consider whether to revise its formal procedures in light of the Auditor's recommendations.    ⑦

The State Bar agrees with the Auditor that guidelines should be adopted for the review process to create a quality-control check and ensure that the Board review is as effective as possible.

*Recommendation:* To ensure that users of the discipline report can compare information from year to year, whenever the State Bar changes how it calculates a metric, it should describe the change in the discipline report and, for that year, provide information calculated under both its old and new methods.

*Response*: The State Bar agrees with this recommendation. The State Bar strives to adhere to this practice by noting when changes are made to how the data is reported. The State Bar notes that the Annual Discipline Report provides extensive, detailed information on the discipline system. The report is a lengthy and complicated document. Last year, it was nearly 100 pages long and included 18 statutorily mandated tables, 7 comparative figures, and countless other calculations and statistical analyses, along with other information. The Auditor notes instances in which some data points among the hundreds reported did not comply precisely with each requirement for presentation, in many instances because the Auditor interpreted a particular statutory requirement differently than the State Bar. In

Elaine M. Howle
April 9, 2021
Page 6

each case of such disagreement over the statutory interpretation, the State Bar is happy to adopt the Auditor's preferred statutory interpretation.

*Recommendation:* To ensure that it receives the best value for the money it spends, the State Bar should establish documentation standards and templates for contract managers to follow when selecting vendors for the administration of the bar exam.

⑧    *Response*: The State Bar agrees with this recommendation and has already implemented it. The procurement policy regarding competitive bidding exemptions has been updated to require that a best value analysis be documented in a new Best Value Memo template which must be submitted with the procurement requisition. Procurement requisitions submitted without the required documentation will be rejected. The memo will be reviewed by Procurement staff to verify that the analysis is sufficient and justified. Office directors have been instructed to ensure that contract managers and other staff members involved in the procurement of goods and services are aware of this policy change, and the written instructions for completing procurement requisitions in the Oracle system have also been updated.

⑨    The State Bar notes that the recent ExamSoft situation was unique because, due to industry consolidation and the last-minute need to adopt a remote, online exam, ultimately ExamSoft was the only vendor available for recent online administrations of the bar exam. Nonetheless, the Auditor is correct that best practices must be followed at all times.

          *  *  *

Elaine M. Howle
April 9, 2021
Page 7

## SUPPLEMENTAL INFORMATION

### MEASURING THE STATE BAR'S EFFORTS TO PROTECT THE PUBLIC

As briefly mentioned above, OCTC continues to identify and prioritize the cases that represent the greatest danger to the public using a case prioritization system developed in 2018. The purpose of case prioritization is to marshal resources in a way that best protects the public from attorneys who pose the greatest threat. Highest priority cases include those that present significant, ongoing, or serious potential harm to the public; cases involving vulnerable victims including immigrants and seniors; cases of client abandonment; abusive or frivolous litigants; and, cases involving engaging in or abetting the unauthorized practice of law. OCTC devotes the most investigative and prosecutorial resources to pursuing these cases.

Given the increase in complaints filed during 2018 and 2019 and the numbers of criminal conviction matters opened in 2019 following the refingerprinting of all attorneys, the case prioritization system has proven to be an invaluable tool for protecting the public from misconduct that poses the greatest threat of harm. OCTC's focused implementation of case prioritization has demonstrated results: In 2020, for every 100 new highest priority cases received, OCTC resolved 146, up from 136 per 100 cases in 2019, and 126 per 100 cases in 2018. In other words, in 2018 and 2019 OCTC resolved 26 percent and 36 percent more high-priority cases than it received, and in 2020 it resolved 46 percent more cases than it received. At the same time, OCTC also improved its caseload clearance for lower priority cases—resolving 113 for every 100 new cases received in 2020, compared to 97 per 100 in 2019 and 94 per 100 in 2018.

⑩

As described above, the State Bar has refined its thinking on the statutory backlog measure over the years and has recently formulated principles for creating case-processing goals and measuring the State Bar's effectiveness in protecting the public. The *Principles for Revised Case-Processing Goals for the State Bar's Office of Chief Trial Counsel*, shared with the auditor and briefly with legislative staff, are included as Attachment A.

In recent years the State Bar has initiated extensive and continuing efforts to evaluate the fairness and effectiveness of the discipline system. Just a few examples include:

- In 2019 the State Bar initiated a study to determine if there is disparity by race, ethnicity, or gender in the State Bar's discipline system. Subsequently the Board of Trustees directed action to address the higher number of complaints made against African American male attorneys and their greater likelihood of being unrepresented, factors that resulted in more frequent and severe discipline for that demographic.
- In 2020 OCTC began issuing quarterly goals for case processing, to ensure consistent year-round efforts to resolve cases expeditiously.

Elaine M. Howle
April 9, 2021
Page 8

- In September 2020, the Board of Trustees approved the creation of a new Ad Hoc Commission on the Discipline System to conduct an intensive study of the overall operation of the discipline system, building on reforms implemented since 2016. The commission will be looking to ensure a fair and effective discipline system by evaluating processes, policies, and procedures to ensure that they have had their intended effect, do not create inequity, and further the State Bar's public protection mission and goals.
- In 2018, the State Bar launched an online complaint portal for both attorney misconduct and unauthorized process of law complaints in English and Spanish to make it easier to file complaints and provide greater access to the discipline system. In 2019 the system was expanded to four additional languages: Chinese, Korean, Russian, and Vietnamese.
- The State Bar refined reports and metrics presented every other month to the Regulation and Discipline Committee to provide more meaningful tools for the committee to exercise its oversight and assess the health and efficacy of the discipline system in protecting the public.

We look forward to incorporating the audit report's suggestions into our ongoing evaluations of the fairness and effectiveness of the discipline system and otherwise making the changes noted above as part of our efforts toward continuous improvement.

Sincerely,

Donna S. Hershkowitz
Interim Executive Director

**ATTACHMENT A**

**Principles for Revised Case-Processing Goals for the State Bar's Office of Chief Trial Counsel[1]**

**Purpose**: To provide a more meaningful rubric to examine the performance of the State Bar in carrying out its mission to protect the public through its handling of attorney misconduct matters

**Key Principles**:
- Consistent with Standard of Judicial Administration 2.2(b) regarding trial court delay-reduction measures, the State Bar's goals of the Office of Chief Trial Counsel (OCTC) for case processing and disposition times are intended to encourage the prompt disposition of the matters submitted to the Office of Chief Trial Counsel. The goals apply to the overall inventory and are not meant to create deadlines for individual cases. The goals should be applied in a fair, practical, and flexible manner.
- Because many attorneys in the system have multiple complaints against them, the measure of whether the State Bar is protecting the public is whether an attorney has been disciplined, not how many cases have been disciplined.
- The best measure of OCTC's efforts to protect the public should distinguish between attorneys who are eligible to practice law and those who are not. Attorneys who are not eligible to practice law do not pose the same risk to the public.
- Case-processing and case-disposition goals should not be tied only to what has been accomplished as of December 31 of a given year. Case-processing and case-disposition timelines are important year-round.

**Goals**:
- OCTC's goals for case processing and disposition should set time frames to encourage effective case management, following the same model established for civil case dispositions, i.e.:
  ○ X% of cases disposed by ## months
  ○ Y% of cases disposed by ## months
  ○ Z% of cases disposed by ## months[2]
- Timelines and/or goals for percent of cases disposed within those times will differ by priority level.
- The State Bar will establish goals for different case types—such as those initiated from client complaints, those initiated from bank reports of overdrawn client trust accounts, etc.

⑥

---

[1] Minor edits were made to this document following submission to the State Auditor and legislative staff for clarification purposes.

[2] To provide greater context, the goal for managing unlimited civil cases is that 75 percent are disposed of within 12 months, 85 percent are disposed of within 18 months, and 100 percent are disposed of within 24 months. More ambitious goals are set for limited civil cases. See Standard of Judicial Administration 2.2(f).

Blank page inserted for reproduction purposes only.

# COMMENTS

## CALIFORNIA STATE AUDITOR'S COMMENTS ON THE RESPONSE FROM THE STATE BAR OF CALIFORNIA

To provide clarity and perspective, we are commenting on the response to our audit from the State Bar. The numbers below correspond to the numbers we have placed in the margin of the State Bar's response.

The State Bar's suggestion that our legislative recommendation is moot is premature. Whether or not the Legislature adopts the State Bar's proposed changes to the backlog measure, the Legislature will still need to ensure that the various sections of the Business and Professions Code are consistent with each other.    ①

The State Bar's assertion that its reorganization was a "positive move," resulting in "positive changes," is not supported by demonstrably positive results. The State Bar indicates that the reorganization eliminated redundant levels of review. However, the dramatic increase in the backlog of attorney discipline cases and in the time to complete investigations indicate that the State Bar's reorganization has not improved the efficiency or effectiveness of its discipline system. We look forward to reviewing the results of the State Bar's assessment of the reorganization as part of our post-audit review process.    ②

The State Bar's focus on the 2018 and 2019 time period distorts the overall trend in complaints. Because the reorganization began in early 2016, the starting point of a relevant comparison period would begin at the end of 2015. As we state on page 16, the number of complaints increased by only 1 percent from 2015 through 2019. Thus, the number of complaints received in 2019 is not significantly different than the number of complaints received in 2015, prior to the reorganization, and we stand by our conclusion that it is unlikely the change in the number of complaints during 2018 or 2019 accounts for the increase in either the backlog or case processing times.    ③

The State's Bar's discussion of the impact of the COVID-19 pandemic on its operations in 2020 is irrelevant to the report's conclusions and recommendations. The backlog and case processing times were steadily increasing well before 2020, as Figure 3 on page 14 and Figure 4 on page 15 show.    ④

⑤ The State Bar's discussion of the wide range of customized management and operational reports it has developed is not relevant to our recommendation. According to the State Bar, these reports are not related to the performance of its discipline system staff in meeting the internal benchmarks it has established. As we describe on page 18, the special assistant confirmed that the State Bar does not monitor its staff's performance against its internal benchmarks because it has not yet developed the reports necessary to do so. As a result, the State Bar is not currently assessing whether it is meeting its benchmarks, which has hampered its ability to determine whether its reorganization has been effective.

⑥ The State Bar's principles for revised case-processing goals do not contain sufficient information to accurately assess how they would be implemented. As we recommend on page 19, the State Bar should develop and recommend an appropriate backlog measure and goal, including the number of days at which a case should be added to the backlog as well as a goal for the number of cases in the backlog. However, the number of goals and factors that the State Bar describes suggest that it anticipates creating multiple backlog measures. Such an approach increases the difficulty of assessing the State Bar's overall case management. Although different time frames may be appropriate for different types of cases, a single backlog figure that can be compared to prior periods helps ensure that stakeholders can easily understand the overall health of the discipline system.

⑦ If the board believes the regulation and discipline committee's review is redundant or unnecessary, it should revise its policies. However, based on the number of errors we identified in the 2019 discipline report, as Table 2 on page 23 shows, the board's current review process is not sufficient to ensure an accurate description of the discipline system's performance.

⑧ We did not assess the policies and documents to which the State Bar refers. The State Bar provided this information after we had completed our fieldwork, and we did not have the opportunity to review them. However, as we state on page 30, until it enforces these policies, the State Bar risks engaging in the kinds of practices that its procurement manual is meant to prevent, such as failing to determine whether more cost-effective alternatives exist. We look forward to reviewing the updated policy and documents as part of our post-audit review process.

The State Bar's focus on its contract amendment with ExamSoft misrepresents the nature of its practices. When it entered into the $3 million contract with ExamSoft there was no last-minute need to adopt a remote, online exam. Nor, from the information we reviewed, was ExamSoft the only vendor available. However, as we describe on page 30, the State Bar ignored its exam exemption requirement for assessing whether it was receiving the best value for both the initial ExamSoft contract and the contract amendment. Because the requirement that it determine the best value is the only requirement established for contracts under the exam exemption, the State Bar effectively bypassed all of its contracting safeguards when entering into the ExamSoft contract and amendment.

⑨

We do not have sufficient data to address the statistics the State Bar presents for cases resolved during all of 2020. The data we obtained contained records for case activity through September 2020, and we limited our analysis to case activity through June 2020. Nevertheless, our analysis indicates that during the period we reviewed the backlog grew and both higher- and lower-priority cases took longer to resolve.

⑩

Slowing case volume enabled the State Bar to reduce its inventory

The Office of Chief Trial Counsel (OCTC) continues to increase its efficiency and effectiveness by leveraging lessons learned from audits, appeals, and other sources. Staffing increases begun in 2020—enabled by the first licensing fee increase in over 20 years—paired with the lower incoming case volume enabled the office to reduce its total inventory by 5 percent in 2021.

**Total inventory:** Number of cases pending at the end of each month in 2021.*



*Total inventory includes approximately 1,000 "U" cases, which are cases where evidence of misconduct is very limited and that may remain in Intake-Tracking status long term.

### Case prioritization works to reduce harm to the public

Fully implemented in 2019, OCTC's case prioritization protocol shifted the focus from working the oldest cases first to prioritizing cases with the greatest potential for public harm. This effort has profoundly reformed the State Bar's management of its disciplinary caseload.

**Statutory backlog:** Cases that as of December 31, 2021, had not been closed or resulted in a State Bar Court filing within six months of initial complaint date.

OCTC reduced the total backlog by 8 percent between 2020 and 2021. While the backlog of Priority 1 cases increased, only 24 percent of the total backlog were highest priority cases. The increase in Priority 1 backlog was due to a redirection of resources to address cases that had been pending for significantly longer periods of time.



**Priority 1 cases** are those that present significant, ongoing, or serious potential harm to the public, including those that involve vulnerable victims such as immigrants and seniors; client abandonment; abusive or frivolous litigants; and those involving the unauthorized practice of law.

**Slowing case volume enabled the State Bar to reduce its inventory**

The Office of Chief Trial Counsel (OCTC) continues to increase its efficiency and effectiveness by leveraging lessons learned from audits, appeals, and other sources. Staffing increases begun in 2020—enabled by the first licensing fee increase in over 20 years—paired with the lower incoming case volume enabled the office to reduce its total inventory by 5 percent in 2021.

**Total inventory:** Number of cases pending at the end of each month in 2021.*



*Total inventory includes approximately 1,000 "U" cases, which are cases where evidence of misconduct is very limited and that may remain in Intake-Tracking status long term.

### Case prioritization works to reduce harm to the public

Fully implemented in 2019, OCTC's case prioritization protocol shifted the focus from working the oldest cases first to prioritizing cases with the greatest potential for public harm. This effort has profoundly reformed the State Bar's management of its disciplinary caseload.

**Statutory backlog:** Cases that as of December 31, 2021, had not been closed or resulted in a State Bar Court filing within six months of initial complaint date.

OCTC reduced the total backlog by 8 percent between 2020 and 2021. While the backlog of Priority 1 cases increased, only 24 percent of the total backlog were highest priority cases. The increase in Priority 1 backlog was due to a redirection of resources to address cases that had been pending for significantly longer periods of time.



**Priority 1 cases** are those that present significant, ongoing, or serious potential harm to the public, including those that involve vulnerable victims such as immigrants and seniors; client abandonment; abusive or frivolous litigants; and those involving the unauthorized practice of law.

Slowing case volume enabled the State Bar to reduce its inventory

The Office of Chief Trial Counsel (OCTC) continues to increase its efficiency and effectiveness by leveraging lessons learned from audits, appeals, and other sources. Staffing increases begun in 2020—enabled by the first licensing fee increase in over 20 years—paired with the lower incoming case volume enabled the office to reduce its total inventory by 5 percent in 2021.

**Total inventory:** Number of cases pending at the end of each month in 2021.*



*Total inventory includes approximately 1,000 "U" cases, which are cases where evidence of misconduct is very limited and that may remain in Intake-Tracking status long term.

### Case prioritization works to reduce harm to the public

Fully implemented in 2019, OCTC's case prioritization protocol shifted the focus from working the oldest cases first to prioritizing cases with the greatest potential for public harm. This effort has profoundly reformed the State Bar's management of its disciplinary caseload.

**Statutory backlog:** Cases that as of December 31, 2021, had not been closed or resulted in a State Bar Court filing within six months of initial complaint date.

OCTC reduced the total backlog by 8 percent between 2020 and 2021. While the backlog of Priority 1 cases increased, only 24 percent of the total backlog were highest priority cases. The increase in Priority 1 backlog was due to a redirection of resources to address cases that had been pending for significantly longer periods of time.



**Priority 1 cases** are those that present significant, ongoing, or serious potential harm to the public, including those that involve vulnerable victims such as immigrants and seniors; client abandonment; abusive or frivolous litigants; and those involving the unauthorized practice of law.

Slowing case volume enabled the State Bar to reduce its inventory

The Office of Chief Trial Counsel (OCTC) continues to increase its
efficiency and effectiveness by leveraging lessons learned from audits,
appeals, and other sources. Staffing increases begun in 2020—enabled by
the first licensing fee increase in over 20 years—paired with the lower
incoming case volume enabled the office to reduce its total inventory by 5
percent in 2021.

**Total inventory:** Number of cases pending at the end of each month in 2021.*



*Total inventory includes approximately 1,000 "U" cases, which are cases where
evidence of misconduct is very limited and that may remain in Intake-Tracking status
long term.

### Case prioritization works to reduce harm to the public

Fully implemented in 2019, OCTC's case prioritization protocol shifted the focus from
working the oldest cases first to prioritizing cases with the greatest potential for public
harm. This effort has profoundly reformed the State Bar's management of its
disciplinary caseload.

**Statutory backlog:** Cases that as of December 31, 2021, had not been closed or
resulted in a State Bar Court filing within six months of initial complaint date.

OCTC reduced the total backlog by 8 percent between 2020 and 2021. While the
backlog of Priority 1 cases increased, only 24 percent of the total backlog were
highest priority cases. The increase in Priority 1 backlog was due to a redirection of
resources to address cases that had been pending for significantly longer periods of
time.



**Priority 1 cases** are those that
present significant, ongoing, or
serious potential harm to the
public, including those that
involve vulnerable victims such
as immigrants and seniors; client
abandonment; abusive or
frivolous litigants; and those
involving the unauthorized
practice of law.

Slowing case volume enabled the State Bar to cut its inventory

The Office of Chief Trial Counsel (OCTC) continues to increase its
efficiency and effectiveness by leveraging lessons learned from audits,
appeals, and other sources. Staffing increases begun in 2020—enabled by
the first licensing fee increase in over 20 years—paired with the lower
incoming case volume enabled the office to reduce its total inventory by 5
percent in 2021.

**Total inventory:** Number of cases pending at the end of each month in 2021.*



*Total inventory includes approximately 1,000 "U" cases, which are cases where
evidence of misconduct is very limited and that may remain in Intake-Tracking status
long term.

### Case prioritization works to reduce harm to the public

Fully implemented in 2019, OCTC's case prioritization protocol shifted the focus from
working the oldest cases first to prioritizing cases with the greatest potential for public
harm. This effort has profoundly reformed the State Bar's management of its
disciplinary caseload.

**Statutory backlog:** Cases that as of December 31, 2021, had not been closed or
resulted in a State Bar Court filing within six months of initial complaint date.

OCTC reduced the total backlog by 8 percent between 2020 and 2021. While the
backlog of Priority 1 cases increased, only 24 percent of the total backlog were
highest priority cases. The increase in Priority 1 backlog was due to a redirection of
resources to address cases that had been pending for significantly longer periods of
time.



**Priority 1 cases** are those that
present significant, ongoing, or
serious potential harm to the
public, including those that
involve vulnerable victims such
as immigrants and seniors; client
abandonment; abusive or
frivolous litigants; and those
involving the unauthorized
practice of law.

Slowing case volume enabled the State Bar to reduce inventory

The Office of Chief Trial Counsel (OCTC) continues to increase its efficiency and effectiveness by leveraging lessons learned from audits, appeals, and other sources. Staffing increases begun in 2020—enabled by the first licensing fee increase in over 20 years—paired with the lower incoming case volume enabled the office to reduce its total inventory by 5 percent in 2021.

**Total inventory:** Number of cases pending at the end of each month in 2021.*



*Total inventory includes approximately 1,000 "U" cases, which are cases where evidence of misconduct is very limited and that may remain in Intake-Tracking status long term.

## Case prioritization works to reduce harm to the public

Fully implemented in 2019, OCTC's case prioritization protocol shifted the focus from working the oldest cases first to prioritizing cases with the greatest potential for public harm. This effort has profoundly reformed the State Bar's management of its disciplinary caseload.

**Statutory backlog:** Cases that as of December 31, 2021, had not been closed or resulted in a State Bar Court filing within six months of initial complaint date.

OCTC reduced the total backlog by 8 percent between 2020 and 2021. While the backlog of Priority 1 cases increased, only 24 percent of the total backlog were highest priority cases. The increase in Priority 1 backlog was due to a redirection of resources to address cases that had been pending for significantly longer periods of time.



**Priority 1 cases** are those that present significant, ongoing, or serious potential harm to the public, including those that involve vulnerable victims such as immigrants and seniors; client abandonment; abusive or frivolous litigants; and those involving the unauthorized practice of law.

**Slowing case volume enabled the State Bar to reduce its inventory**

The Office of Chief Trial Counsel (OCTC) continues to increase its efficiency and effectiveness by leveraging lessons learned from audits, appeals, and other sources. Staffing increases begun in 2020—enabled by the first licensing fee increase in over 20 years—paired with the lower incoming case volume enabled the office to reduce its total inventory by 5 percent in 2021.

**Total inventory:** Number of cases pending at the end of each month in 2021.*



*Total inventory includes approximately 1,000 "U" cases, which are cases where evidence of misconduct is very limited and that may remain in Intake-Tracking status long term.

### Case prioritization works to reduce harm to the public

Fully implemented in 2019, OCTC's case prioritization protocol shifted the focus from working the oldest cases first to prioritizing cases with the greatest potential for public harm. This effort has profoundly reformed the State Bar's management of its disciplinary caseload.

**Statutory backlog:** Cases that as of December 31, 2021, had not been closed or resulted in a State Bar Court filing within six months of initial complaint date.

OCTC reduced the total backlog by 8 percent between 2020 and 2021. While the backlog of Priority 1 cases increased, only 24 percent of the total backlog were highest priority cases. The increase in Priority 1 backlog was due to a redirection of resources to address cases that had been pending for significantly longer periods of time.



**Priority 1 cases** are those that present significant, ongoing, or serious potential harm to the public, including those that involve vulnerable victims such as immigrants and seniors; client abandonment; abusive or frivolous litigants; and those involving the unauthorized practice of law.