# EXHIBIT J





| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**AB-2958 State Bar of California.** (2021-2022)

SHARE THIS:

Date Published: 08/24/2022 09:00 PM

ENROLLED  AUGUST 24, 2022
PASSED  IN  SENATE  AUGUST 17, 2022
PASSED  IN  ASSEMBLY  AUGUST 22, 2022
AMENDED  IN  SENATE  AUGUST 11, 2022
AMENDED  IN  SENATE  JUNE 15, 2022
AMENDED  IN  ASSEMBLY  MAY 04, 2022
AMENDED  IN  ASSEMBLY  APRIL 28, 2022

CALIFORNIA LEGISLATURE— 2021–2022 REGULAR SESSION

## ASSEMBLY BILL                                                                                       NO. 2958

**Introduced by Committee on Judiciary (Assembly Members Stone (Chair), Cunningham (Vice Chair), Kalra, Maienschein, Reyes, and Robert Rivas)**

**March 08, 2022**

An act to amend Sections 6016, 6140.03, 6144.1, 6145, and 6236 of, to amend, repeal, and add Sections 6140.05 and 6141 of, to add and repeal Sections 6034.1 and 6140 of, and to repeal Section 6001.2 of, the Business and Professions Code, and to amend Section 1798.29 of the Civil Code, relating to attorneys, and declaring the urgency thereof, to take effect immediately.

### LEGISLATIVE COUNSEL'S DIGEST

AB 2958, Committee on Judiciary. State Bar of California.

(1) Existing law, the State Bar Act, provides for the licensure and regulation of attorneys by the State Bar of California, a public corporation. Existing law creates within the State Bar a Governance in the Public Interest Task Force, which is required to prepare and submit a report every 3 years that includes recommendations for enhancing the protection of the public and ensuring that protection of the public is the highest priority in the licensing, regulation, and discipline of attorneys, as specified.

This bill would repeal those provisions establishing and imposing duties on the Governance in the Public Interest Task Force.

(2) The State Bar is governed by a board of trustees. Existing law requires the board to consist of 13 members appointed by certain authorities for a term of 4 years, requires appointing authorities to fill vacancies, and limits the reappointment of certain members, as specified.

Under this bill, the time served during the remainder of a midterm vacancy by any member appointed to fill that vacancy would not count toward any term limits for the member filling the vacancy.

(3) Existing law prohibits the practice of law unless the person is an active licensee of the State Bar.

This bill would require an entity of the State Bar exploring a regulatory sandbox or the licensing of nonattorneys as paraprofessionals to take specified actions, including prioritizing protecting individuals, especially those in need of legal assistance, from unscrupulous actors, including those actors seeking to do business in the legal field, above all else. The bill would require the State Bar to provide to the Senate and Assembly Committees on Judiciary by January 15, 2023, a report containing specified information relating to funding spent since 2018 to study the creation of a regulatory sandbox or the licensing of nonattorneys as paraprofessionals. The bill, on January 1, 2025, would repeal the reporting requirement and would limit the application of the other requirements described above to an entity of the State Bar exploring a regulatory sandbox.

(4) Existing law, until January 1, 2023, requires the board to charge an annual license fee for active licensees of up to $395 for 2022. Existing law requires the board to charge an annual license fee for inactive licensees of up to $97.40.

This bill, commencing January 1, 2023, until January 1, 2024, would require the board to charge an annual license fee of up to $390, or $386 if certain conditions are met, for active licensees for 2023. The bill would also decrease, commencing January 1, 2023, the maximum for the annual license fee for inactive licensees to $96.40 if certain conditions are met.

(5) Existing law, until January 1, 2023, requires the board to increase specified annual license fees by an additional $45, to be allocated as specified, unless the licensee elects not to support the specified activities. Existing law would decrease, commencing January 1, 2023, that additional fee from $45 to $40.

This bill would revise the additional license fee so that the fee amount remains at $45 on and after January 1, 2023. The bill would require the board, until December 31, 2024, to allocate $5 of the $45 fee amount to qualified legal services projects or qualified support centers, as defined, to fund law student summer fellowships for purposes of supporting law students interested in pursuing a career in legal services for indigent persons, as described.

(6) Existing law also requires the invoice provided to licensees for the payment of the annual license fee to provide the option to deduct $5 from the annual license fee if the licensee elects not to support lobbying and related activities by the State Bar outside of specified parameters. Existing law provides that the determination of costs for lobbying and related activities by the State Bar includes, but is not limited to, overhead and administrative costs.

This bill would instead provide that at the election of the board, the invoice may provide each licensee the option of adding up to $5 to the annual fee if the licensee elects to support such lobbying and related activities by the State Bar. The bill would remove the provision stating that the determination of costs for lobbying and related activities by the State Bar includes, but is not limited to, overhead and administrative costs. The bill would make conforming changes. The bill would make these changes operative on January 1, 2023.

(7) Existing law requires the net proceeds from the sale of real property, as described, to be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute.

This bill would require the net proceeds from the sale of the State Bar's San Francisco office building, as described, to be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute, except as provided.

(8) Existing law requires the California State Auditor's Office to conduct an independent audit to determine whether the State Bar's attorney complaint and discipline process adequately protects the public from misconduct by licensed attorneys or those who wrongfully hold themselves out as licensed attorneys, as specified. Existing law requires this audit to be submitted by April 15, 2022, to specified persons.

This bill would remove those provisions.

Existing law requires the board to contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations from July 1, 2000, to December 31, 2000, inclusive, as specified. Existing law requires the board, every two years thereafter, to contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations, commencing with January 1, 2022, to December 31, 2002, inclusive.

This bill would, for the 2023 audit required by the provisions described above, require the California State Auditor's Office to conduct an audit, to be submitted to specified bodies by April 15, 2023, that evaluates each program or division of the State Bar receiving support from the annual State Bar licensing fees and other fees required of active and inactive licensees, including by conducting an assessment of how much fee revenue, staff, and resources are currently budgeted and subsequently expended to perform existing tasks and responsibilities, as specified.

(9) Existing law requires the State Bar to actively engage in outreach activities to make licensees, the legal community, and the general public aware of the existence and availability of the Attorney Diversion and Assistance Program.

This bill would require the outreach to include the development and certification of minimum continuing legal education courses relating to behavioral health issues and working in cooperation with organizations that provide services and support to attorneys with issues related to behavioral health.

(10) Existing law, the Information Practices Act of 1977, requires any agency, as defined, that owns or licenses computerized data that includes personal information to disclose any breach of the security of the system following discovery or notification

of the breach in the security of the data, as described. Under that act, any agency that maintains computerized data that includes personal information that the agency does not own is also required to notify the owner or licensee of the information of any breach of the security of the data following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person. Existing law sets forth requirements for the format and contents of the security breach notification.

This bill would require the State Bar to comply with these disclosure requirements.

(11) This bill would incorporate additional changes to Section 1798.29 of the Civil Code proposed by AB 1711 to be operative only if this bill and AB 1711 are enacted and this bill is enacted last.

(12) This bill would declare that it is to take effect immediately as an urgency statute.

Vote: 2/3   Appropriation: no   Fiscal Committee: no   Local Program: no

THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 6001.2 of the Business and Professions Code is repealed.

**SEC. 2.** Section 6016 of the Business and Professions Code is amended to read:

**6016.** (a) The term of office of each attorney member of the board shall be four years. Vacancies shall be filled for the remainder of the term.

(b) The board of trustees may provide by rule for an interim board to act in the place and stead of the board when because of vacancies during terms of office there is less than a quorum of the board.

(c) The time served during the remainder of a midterm vacancy by any member appointed to fill that vacancy shall not count toward any term limits for the member filling the vacancy.

**SEC. 3.** Section 6034.1 is added to the Business and Professions Code, to read:

**6034.1.** (a) Any entity of the State Bar of California exploring a regulatory sandbox or the licensing of nonattorneys as paraprofessionals shall do all of the following:

(1) Prioritize protecting individuals, especially those in need of legal assistance, from unscrupulous actors, including those actors seeking to do business in the legal field, above all else.

(2) Prioritize increasing access to justice for persons who qualify for legal assistance from qualified legal services organizations or from State Department of Social Services-funded immigration legal services.

(3) Exclude corporate ownership of law firms and splitting legal fees with nonlawyers, which has historically been banned by common law and statute due to grave concerns that it could undermine consumer protection by creating conflicts of interests that are difficult to overcome and fundamentally infringe on the basic and paramount obligations of attorneys to their clients.

(4) Adhere to, and not propose any abrogation of, the restrictions on the unauthorized practice of law, including, but not limited to, Sections 13405 and 16951 of the Corporations Code.

(b) This section does not limit the State Bar's ability to provide limited practice licenses to law students and law graduates under certain conditions, and with the supervision of an active State Bar-licensed attorney.

(c) This section does not limit the examination of the use of technology to increase access to justice for persons who qualify for legal assistance from qualified legal services organizations or from State Department of Social Services-funded immigration legal services, low-income individuals, and small businesses, so long as proposals adhere to, and do not propose any abrogation of, the restrictions on the unauthorized practice of law, including, but not limited to, Sections 13405 and 16951 of the Corporations Code.

(d) This section does not preclude the State Bar from seeking feedback from legal services organizations, including organizations that provide legal services in family law and immigration law, community-based organizations, and consumers about options for increasing access to legal services.

(e) The State Bar shall not expend any funds, regardless of the source, on activities that do not meet the requirements of this section.

(f) The State Bar shall report to the Senate and Assembly Committees on Judiciary by January 15, 2023, on the total of all funding spent since 2018 to study the creation of a regulatory sandbox or the licensing of nonattorneys as paraprofessionals. The report shall be disaggregated by year, by source of funding, and by the use of funding, including, but not limited to, salaries, travel, food and beverage, facility rental, and lobbying.

(g) This section shall remain in effect only until January 1, 2025, and as of that date is repealed.

**SEC. 4.** Section 6034.1 is added to the Business and Professions Code, to read:

6034.1. (a) Any entity of the State Bar of California exploring a regulatory sandbox shall do all of the following:

(1) Prioritize protecting individuals, especially those in need of legal assistance, from unscrupulous actors, including those actors seeking to do business in the legal field, above all else.

(2) Prioritize increasing access to justice for persons who qualify for legal assistance from qualified legal services organizations or from State Department of Social Services-funded immigration legal services.

(3) Exclude corporate ownership of law firms and splitting legal fees with nonlawyers, which has historically been banned by common law and statute due to grave concerns that it could undermine consumer protection by creating conflicts of interests that are difficult to overcome and fundamentally infringe on the basic and paramount obligations of attorneys to their clients.

(4) Adhere to, and not propose any abrogation of, the restrictions on the unauthorized practice of law, including, but not limited to, Sections 13405 and 16951 of the Corporations Code.

(b) This section does not limit the State Bar's ability to provide limited practice licenses to law students and law graduates under certain conditions, and with the supervision of an active State Bar-licensed attorney.

(c) This section does not limit the examination of the use of technology to increase access to justice for persons who qualify for legal assistance from qualified legal services organizations or from State Department of Social Services-funded immigration legal services, low-income individuals, and small businesses, so long as proposals adhere to, and do not propose any abrogation of, the restrictions on the unauthorized practice of law, including, but not limited to, Sections 13405 and 16951 of the Corporations Code.

(d) This section does not preclude the State Bar from seeking feedback from legal services organizations, including organizations that provide legal services in family law and immigration law, community-based organizations, and consumers about options for increasing access to legal services.

(e) The State Bar shall not expend any funds, regardless of the source, on activities that do not meet the requirements of this section.

(f) This section shall become operative on January 1, 2025.

**SEC. 5.** Section 6140 is added to the Business and Professions Code, to read:

6140. (a) The board shall fix the annual license fee for active licensees for 2023 at a sum not exceeding three hundred ninety dollars ($390), except that if the State Bar has entered into a contract to sell its San Francisco office building by October 31, 2022, the sum shall not exceed three hundred eighty-six dollars ($386).

(b) The annual license fee for active licensees is payable on or before the first day of February of each year. If the board finds it appropriate and feasible, it may provide by rule for payment of fees on an installment basis with interest, by credit card, or by other means, and may charge licensees choosing any alternative method of payment an additional fee to defray costs incurred by that election.

(c) This section shall become operative on January 1, 2023. This section shall remain in effect only until January 1, 2024, and as of that date is repealed.

**SEC. 6.** Section 6140.03 of the Business and Professions Code, as added by Section 8 of Chapter 360 of the Statutes of 2020, is amended to read:

6140.03. (a) The board shall increase each of the annual license fees fixed by Sections 6140 and 6141 by an additional forty-five dollars ($45), to be allocated only for the purposes established pursuant to Section 6033 and subdivision (b), except to the extent that a licensee elects not to support those activities.

(b) (1) Five dollars ($5) of the forty-five-dollar ($45) fee shall be allocated to qualified legal services projects or qualified support centers, as defined in Section 6213, to fund law student summer fellowships for the purpose of supporting law students interested in pursuing a career in legal services for indigent persons. The State Bar shall not make any deductions from the five dollars ($5) for any reason, including, but not limited to, administrative fees, costs, or expenses of the State Bar.

(2) Except as provided in paragraphs (4) and (5), funds shall be allocated pursuant to a competitive grant process administered by the Legal Services Trust Fund Commission and not through the formula set forth in Section 6216.

(3) In awarding these grants, preference shall be given to fund proposals for fellowships serving rural or underserved communities and that serve clients regardless of immigration or citizenship status.

(4) Any funds under paragraph (1) not allocated as of January 1, 2025, shall be distributed to qualified legal services projects and support centers pursuant to the formula set forth in Section 6216.

(5) The allocation described in this subdivision shall remain in effect until December 31, 2024, and after that date, the entire forty-five dollars ($45) shall be allocated only for the purposes established pursuant to Section 6033.

(c) The invoice provided to licensees for payment of the annual license fee shall provide each licensee the option of deducting forty-five dollars ($45) from the annual license fee if the licensee elects not to have this amount allocated for the purposes established pursuant to Section 6033.

(d) This section shall become operative on January 1, 2023.

**SEC. 7.** Section 6140.05 of the Business and Professions Code is amended to read:

**6140.05.** (a) The invoice provided to licensees for payment of the annual license fee shall provide each licensee the option of deducting five dollars ($5) from the annual fee if the licensee elects not to support lobbying and related activities by the State Bar outside of the parameters established by the United States Supreme Court in Keller v. State Bar of California (1990) 496 U.S. 1.

(b) For the support or defense of lobbying and related activities conducted by the State Bar on or after January 1, 2000, outside of the parameters of Keller v. State Bar of California, and in support or defense of any litigation arising therefrom, the Board of Trustees of the State Bar shall not expend a sum exceeding the following: the product of the number of licensees paying their annual fees who did not elect the optional deduction multiplied by five dollars ($5).

Money collected pursuant to this section shall not be deemed voluntary fees or funds for the purpose of subdivision (c) of Section 6031.5.

(c) As used in this section, "lobbying and related activities by the State Bar" includes the consideration of measures by the Board of Trustees of the State Bar that are deemed outside the parameters established in Keller v. State Bar, the purview determination, lobbying and the preparation for lobbying of the measures, and any litigation in support or defense of that lobbying. The determination of these costs shall include, but not be limited to, overhead and administrative costs.

(d) This section shall remain in effect only until January 1, 2023, and as of that date is repealed.

**SEC. 8.** Section 6140.05 is added to the Business and Professions Code, to read:

**6140.05.** (a) At the election of the board, the invoice provided to licensees for payment of the annual license fee may provide each licensee the option of adding up to five dollars ($5) to the annual fee if the licensee elects to support lobbying and related activities by the State Bar outside of the parameters established by the United States Supreme Court in Keller v. State Bar of California (1990) 496 U.S. 1.

(b) For the support or defense of lobbying and related activities conducted by the State Bar on or after January 1, 2000, outside of the parameters of Keller v. State Bar of California, and in support or defense of any litigation arising therefrom, the Board of Trustees of the State Bar shall not expend a sum exceeding the amount paid by licensees pursuant to the optional increase for lobbying and related activities, as set forth in subdivision (a).

(c) As used in this section, "lobbying and related activities by the State Bar" includes the consideration of measures by the Board of Trustees of the State Bar that are deemed outside the parameters established in Keller v. State Bar, the purview determination, lobbying and the preparation for lobbying of the measures, and any litigation in support or defense of that lobbying.

(d) This section shall become operative on January 1, 2023.

**SEC. 9.** Section 6141 of the Business and Professions Code is amended to read:

**6141.** (a) On January 1, 2022, and thereafter, the board shall fix the annual license fee for inactive licensees at a sum not exceeding ninety-seven dollars and forty cents ($97.40). The annual license fee for inactive licensees is payable on or before the first day of February of each year.

(b) An inactive licensee shall not be required to pay the annual license fee for inactive licensees for any calendar year following the calendar year in which the licensee attains 70 years of age.

(c) This section shall remain in effect only until January 1, 2023, and as of that date is repealed.

**SEC. 10.** Section 6141 is added to the Business and Professions Code, to read:

**6141.** (a) On January 1, 2022, and thereafter, the board shall fix the annual license fee for inactive licensees at a sum not exceeding ninety-seven dollars and forty cents ($97.40), except that if the State Bar has entered into a contract to sell its

San Francisco office building by October 31, 2022, the sum shall not exceed ninety-six dollars and forty cents ($96.40). The annual license fee for inactive licensees is payable on or before the first day of February of each year.

(b) An inactive licensee shall not be required to pay the annual license fee for inactive licensees for any calendar year following the calendar year in which the licensee attains 70 years of age.

(c) This section shall become operative on January 1, 2023.

**SEC. 11.** Section 6144.1 of the Business and Professions Code is amended to read:

**6144.1.** (a) The net proceeds from the sale of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute. The net proceeds from the lease of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be used by the State Bar for the protection of the public.

(b) Notwithstanding subdivision (a), the net proceeds from the sale of the State Bar's San Francisco office building, after payment of obligations and encumbrances and the minimally reasonable costs of acquiring and relocating its facilities, if any, shall be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute. However, up to 10 percent of the net proceeds may be used every fiscal year for improvement of the State Bar's discipline system. These moneys shall not supplant any funds that are already being spent on the discipline system or that have been planned in the prior fiscal year to spend on the discipline system.

**SEC. 12.** Section 6145 of the Business and Professions Code is amended to read:

**6145.** (a) The board shall engage the services of an independent national or regional public accounting firm with at least five years of experience in governmental auditing for an audit of its financial statement for each fiscal year. The financial statement shall be promptly certified under oath by the chief financial officer of the State Bar, and a copy of the audit and financial statement shall be submitted within 120 days of the close of the fiscal year to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

The audit also shall examine the receipts and expenditures of the State Bar to ensure that the funds collected on behalf of the Conference of Delegates of California Bar Associations as the independent successor entity to the former Conference of Delegates of the State Bar are conveyed to that entity, that the State Bar has been paid or reimbursed for the full cost of any administrative and support services provided to the successor entity, including the collection of fees or donations on its behalf, and that no mandatory fees are being used to fund the activities of the successor entity.

In selecting the accounting firm, the board shall consider the value of continuity, along with the risk that continued long-term engagements of an accounting firm may affect the independence of that firm.

(b) The board shall contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations from July 1, 2000, to December 31, 2000, inclusive. A copy of the performance audit shall be submitted by May 1, 2001, to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

Every two years thereafter, the board shall contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations for the respective fiscal year, commencing with January 1, 2002, to December 31, 2002, inclusive. A copy of the performance audit shall be submitted within 120 days of the close of the fiscal year for which the audit was performed to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

For the purposes of this subdivision, the California State Auditor's Office may contract with a third party to conduct the performance audit. This subdivision is not intended to reduce the number of audits the California State Auditor's Office may otherwise be able to conduct.

(c) (1) For the 2023 audit required pursuant to subdivision (b), the California State Auditor's Office shall conduct a performance audit of the State Bar as set forth in this subdivision. The State Bar shall provide technical assistance, data, or information as requested by the California State Auditor. It is the intent of the Legislature that this audit may be reviewed in conjunction with the legislation that authorizes the State Bar's licensing fee in 2023.

(2) The audit shall evaluate each program or division of the State Bar receiving support from the annual State Bar licensing fees and other fees required of active and inactive licensees.

(3) The audit shall, at minimum, include all of the following for each program or division described by paragraph (2):

(A) An assessment of how much fee revenue, staff, and resources are currently budgeted and subsequently expended to perform existing tasks and responsibilities.

(B) An assessment of whether the State Bar has appropriate program performance measures in place and how these measures are used for budgeting purposes.

(C) An assessment of the usage of any real property sold by the State Bar.

(D) A review of the State Bar's cost allocation plan used to allocate administrative costs.

(E) A review of any proposals for additional funding or resources requested by the State Bar to determine whether these proposals are necessary to meet the State Bar's public protection function, as well as the accuracy of identified associated funding needs, after reviewing how existing resources are used.

(F) A calculation of how much fee revenue would be needed from each State Bar active and inactive licensee to fully offset State Bar costs to perform existing tasks and responsibilities and to support additional proposed expenditures determined to be necessary to meet the State Bar's public protection function. This calculation shall take into account any proposed business process reengineering, reallocations, or efficiencies identified by the California State Auditor.

(4) The audit shall include an evaluation of how the State Bar administers discipline cases that require an outside investigator or prosecutor and how that process can be improved, including the cost-effectiveness and timeliness of such investigations and prosecutions.

(5) The audit required by this subdivision shall be submitted by April 15, 2023, to the board of trustees, the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

(6) The State Bar shall use existing resources to reimburse the California State Auditor's Office for the costs of conducting the audit required by this subdivision.

**SEC. 13.** Section 6236 of the Business and Professions Code is amended to read:

**6236.** The State Bar shall actively engage in outreach activities to make licensees, the legal community, and the general public aware of the existence and availability of the Attorney Diversion and Assistance Program. Outreach shall include, but not be limited to, the development and certification of minimum continuing legal education courses relating to behavioral health issues and the prevention, detection, and treatment of substance abuse, including no-cost and low-cost programs and materials pursuant to subdivision (d) of Section 6070, informing all licensees of the State Bar of the program's existence and benefits through both direct communication and targeted advertising, working in coordination with the judicial branch to inform the state's judges of the program's existence and availability as a disciplinary option, and working in cooperation with organizations that provide services and support to attorneys with issues related to behavioral health or substance abuse.

**SEC. 14.** Section 1798.29 of the Civil Code is amended to read:

**1798.29.** (a) Any agency that owns or licenses computerized data that includes personal information shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the agency that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

(b) Any agency that maintains computerized data that includes personal information that the agency does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

(c) The notification required by this section may be delayed if a law enforcement agency determines that the notification will impede a criminal investigation. The notification required by this section shall be made after the law enforcement agency determines that it will not compromise the investigation.

(d) Any agency that is required to issue a security breach notification pursuant to this section shall meet all of the following requirements:

(1) The security breach notification shall be written in plain language, shall be titled "Notice of Data Breach," and shall present the information described in paragraph (2) under the following headings: "What Happened," "What Information Was Involved," "What We Are Doing," "What You Can Do," and "For More Information." Additional information may be provided as a supplement to the notice.

(A) The format of the notice shall be designed to call attention to the nature and significance of the information it contains.

(B) The title and headings in the notice shall be clearly and conspicuously displayed.

(C) The text of the notice and any other notice provided pursuant to this section shall be no smaller than 10-point type.

(D) For a written notice described in paragraph (1) of subdivision (i), use of the model security breach notification form prescribed below or use of the headings described in this paragraph with the information described in paragraph (2), written in plain language, shall be deemed to be in compliance with this subdivision.

| | |
|---|---|
| [NAME OF INSTITUTION / LOGO] _____ _____ Date: [Insert date] | |
| **NOTICE OF DATA BREACH** | |
| What Happened? | |
| What Information Was Involved? | |
| What We Are Doing. | |
| What You Can Do. | |
| Other Important Information.<br>[Insert other important information] | |
| For More Information. | Call [telephone number] or go to [Internet website] |

(E) For an electronic notice described in paragraph (2) of subdivision (i), use of the headings described in this paragraph with the information described in paragraph (2), written in plain language, shall be deemed to be in compliance with this subdivision.

(2) The security breach notification described in paragraph (1) shall include, at a minimum, the following information:

   (A) The name and contact information of the reporting agency subject to this section.

   (B) A list of the types of personal information that were or are reasonably believed to have been the subject of a breach.

   (C) If the information is possible to determine at the time the notice is provided, then any of the following: (i) the date of the breach, (ii) the estimated date of the breach, or (iii) the date range within which the breach occurred. The notification shall also include the date of the notice.

   (D) Whether the notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.

   (E) A general description of the breach incident, if that information is possible to determine at the time the notice is provided.

   (F) The toll-free telephone numbers and addresses of the major credit reporting agencies, if the breach exposed a social security number or a driver's license or California identification card number.

  (3) At the discretion of the agency, the security breach notification may also include any of the following:

   (A) Information about what the agency has done to protect individuals whose information has been breached.

   (B) Advice on steps that people whose information has been breached may take to protect themselves.

(e) Any agency that is required to issue a security breach notification pursuant to this section to more than 500 California residents as a result of a single breach of the security system shall electronically submit a single sample copy of that security breach notification, excluding any personally identifiable information, to the Attorney General. A single sample copy of a security breach notification shall not be deemed to be within Article 1 (commencing with Section 7923.600) of Chapter 1 of Part 5 of Division 10 of Title 1 of the Government Code.

(f) For purposes of this section, "breach of the security of the system" means unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the agency. Good faith acquisition of personal information by an employee or agent of the agency for the purposes of the agency is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosure.

(g) For purposes of this section, "personal information" means either of the following:

  (1) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted:

   (A) Social security number.

   (B) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.

   (C) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.

   (D) Medical information.

   (E) Health insurance information.

   (F) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes.

   (G) Information or data collected through the use or operation of an automated license plate recognition system, as defined in Section 1798.90.5.

   (H) Genetic data.

  (2) A username or email address, in combination with a password or security question and answer that would permit access to an online account.

(h) (1) For purposes of this section, "personal information" does not include publicly available information that is lawfully made available to the general public from federal, state, or local government records.

  (2) For purposes of this section, "medical information" means any information regarding an individual's medical history, mental or physical condition, or medical treatment or diagnosis by a health care professional.

  (3) For purposes of this section, "health insurance information" means an individual's health insurance policy number or subscriber identification number, any unique identifier used by a health insurer to identify the individual, or any information in an individual's application and claims history, including any appeals records.

(4) For purposes of this section, "encrypted" means rendered unusable, unreadable, or indecipherable to an unauthorized person through a security technology or methodology generally accepted in the field of information security.

(5) For purposes of this section, "genetic data" means any data, regardless of its format, that results from the analysis of a biological sample of an individual, or from another source enabling equivalent information to be obtained, and concerns genetic material. Genetic material includes, but is not limited to, deoxyribonucleic acids (DNA), ribonucleic acids (RNA), genes, chromosomes, alleles, genomes, alterations or modifications to DNA or RNA, single nucleotide polymorphisms (SNPs), uninterpreted data that results from analysis of the biological sample or other source, and any information extrapolated, derived, or inferred therefrom.

(i) For purposes of this section, "notice" may be provided by one of the following methods:

(1) Written notice.

(2) Electronic notice, if the notice provided is consistent with the provisions regarding electronic records and signatures set forth in Section 7001 of Title 15 of the United States Code.

(3) Substitute notice, if the agency demonstrates that the cost of providing notice would exceed two hundred fifty thousand dollars ($250,000), or that the affected class of subject persons to be notified exceeds 500,000, or the agency does not have sufficient contact information. Substitute notice shall consist of all of the following:

(A) Email notice when the agency has an email address for the subject persons.

(B) Conspicuous posting, for a minimum of 30 days, of the notice on the agency's internet website, if the agency maintains one. For purposes of this subparagraph, conspicuous posting on the agency's internet website means providing a link to the notice on the home page or first significant page after entering the internet website that is in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the link.

(C) Notification to major statewide media and the Office of Information Security within the Department of Technology.

(4) In the case of a breach of the security of the system involving personal information defined in paragraph (2) of subdivision (g) for an online account, and no other personal information defined in paragraph (1) of subdivision (g), the agency may comply with this section by providing the security breach notification in electronic or other form that directs the person whose personal information has been breached to promptly change the person's password and security question or answer, as applicable, or to take other steps appropriate to protect the online account with the agency and all other online accounts for which the person uses the same username or email address and password or security question or answer.

(5) In the case of a breach of the security of the system involving personal information defined in paragraph (2) of subdivision (g) for login credentials of an email account furnished by the agency, the agency shall not comply with this section by providing the security breach notification to that email address, but may, instead, comply with this section by providing notice by another method described in this subdivision or by clear and conspicuous notice delivered to the resident online when the resident is connected to the online account from an Internet Protocol address or online location from which the agency knows the resident customarily accesses the account.

(j) Notwithstanding subdivision (i), an agency that maintains its own notification procedures as part of an information security policy for the treatment of personal information and is otherwise consistent with the timing requirements of this part shall be deemed to be in compliance with the notification requirements of this section if it notifies subject persons in accordance with its policies in the event of a breach of security of the system.

(k) Notwithstanding the exception specified in paragraph (4) of subdivision (b) of Section 1798.3, for purposes of this section, "agency" includes a local agency, as defined in Section 7920.510 of the Government Code.

(l) For purposes of this section, "encryption key" and "security credential" mean the confidential key or process designed to render the data usable, readable, and decipherable.

(m) Notwithstanding any other law, the State Bar of California shall comply with this section. This subdivision shall not be construed to apply other provisions of this chapter to the State Bar.

**SEC. 14.5.** Section 1798.29 of the Civil Code is amended to read:

**1798.29.** (a) Any agency that owns or licenses computerized data that includes personal information shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the agency that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law

enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

(b) (1) Any agency that maintains computerized data that includes personal information that the agency does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

(2) When a person or business operating a system on behalf of an agency is required to disclose a breach of that system pursuant to this section or to Section 1798.82, the agency shall also disclose the breach by conspicuously posting, for a minimum of 30 days, the notice provided by the person or business pursuant to this section or Section 1798.82 on the agency's internet website, if the agency maintains one. The disclosure shall be posted in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system. For purposes of this paragraph, conspicuously posting on the agency's internet website means providing a link to the notice on the home page or first significant page after entering the internet website that is in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the link.

(c) The notification required by this section may be delayed if a law enforcement agency determines that the notification will impede a criminal investigation. The notification required by this section shall be made after the law enforcement agency determines that it will not compromise the investigation.

(d) Any agency that is required to issue a security breach notification pursuant to this section shall meet all of the following requirements:

(1) The security breach notification shall be written in plain language, shall be titled "Notice of Data Breach," and shall present the information described in paragraph (2) under the following headings: "What Happened," "What Information Was Involved," "What We Are Doing," "What You Can Do," and "For More Information." Additional information may be provided as a supplement to the notice.

(A) The format of the notice shall be designed to call attention to the nature and significance of the information it contains.

(B) The title and headings in the notice shall be clearly and conspicuously displayed.

(C) The text of the notice and any other notice provided pursuant to this section shall be no smaller than 10-point type.

(D) For a written notice described in paragraph (1) of subdivision (i), use of the model security breach notification form prescribed below or use of the headings described in this paragraph with the information described in paragraph (2), written in plain language, shall be deemed to be in compliance with this subdivision.

| [NAME OF INSTITUTION / LOGO] _____ Date: [Insert date] |  |
|---|---|
| NOTICE OF DATA BREACH |  |
| What Happened? |  |
| What Information Was Involved? |  |
| What We Are Doing. |  |

| | |
|---|---|
| What You Can Do. | |
| Other Important Information. [Insert other Important Information] | |
| For More Information. | Call [telephone number] or go to [Internet website] |

(E) For an electronic notice described in paragraph (2) of subdivision (i), use of the headings described in this paragraph with the information described in paragraph (2), written in plain language, shall be deemed to be in compliance with this subdivision.

(2) The security breach notification described in paragraph (1) shall include, at a minimum, the following information:

(A) The name and contact information of the reporting agency subject to this section.

(B) A list of the types of personal information that were or are reasonably believed to have been the subject of a breach.

(C) If the information is possible to determine at the time the notice is provided, then any of the following: (i) the date of the breach, (ii) the estimated date of the breach, or (iii) the date range within which the breach occurred. The notification shall also include the date of the notice.

(D) Whether the notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.

(E) A general description of the breach incident, if that information is possible to determine at the time the notice is provided.

(F) The toll-free telephone numbers and addresses of the major credit reporting agencies, if the breach exposed a social security number or a driver's license or California identification card number.

(3) At the discretion of the agency, the security breach notification may also include any of the following:

(A) Information about what the agency has done to protect individuals whose information has been breached.

(B) Advice on steps that people whose information has been breached may take to protect themselves.

(e) Any agency that is required to issue a security breach notification pursuant to this section to more than 500 California residents as a result of a single breach of the security system shall electronically submit a single sample copy of that security breach notification, excluding any personally identifiable information, to the Attorney General. A single sample copy of a security breach notification shall not be deemed to be within Article 1 (commencing with Section 7923.600) of Chapter 1 of Part 5 of Division 10 of Title 1 of the Government Code.

(f) For purposes of this section, "breach of the security of the system" means unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the agency. Good faith acquisition of personal information by an employee or agent of the agency for the purposes of the agency is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosure.

(g) For purposes of this section, "personal information" means either of the following:

(1) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted:

(A) Social security number.

(B) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.

(C) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.

(D) Medical information.

(E) Health insurance information.

(F) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes.

(G) Information or data collected through the use or operation of an automated license plate recognition system, as defined in Section 1798.90.5.

(H) Genetic data.

(2) A username or email address, in combination with a password or security question and answer that would permit access to an online account.

(h) (1) For purposes of this section, "personal information" does not include publicly available information that is lawfully made available to the general public from federal, state, or local government records.

(2) For purposes of this section, "medical information" means any information regarding an individual's medical history, mental or physical condition, or medical treatment or diagnosis by a health care professional.

(3) For purposes of this section, "health insurance information" means an individual's health insurance policy number or subscriber identification number, any unique identifier used by a health insurer to identify the individual, or any information in an individual's application and claims history, including any appeals records.

(4) For purposes of this section, "encrypted" means rendered unusable, unreadable, or indecipherable to an unauthorized person through a security technology or methodology generally accepted in the field of information security.

(5) For purposes of this section, "genetic data" means any data, regardless of its format, that results from the analysis of a biological sample of an individual, or from another source enabling equivalent information to be obtained, and concerns genetic material. Genetic material includes, but is not limited to, deoxyribonucleic acids (DNA), ribonucleic acids (RNA), genes, chromosomes, alleles, genomes, alterations or modifications to DNA or RNA, single nucleotide polymorphisms (SNPs), uninterpreted data that results from analysis of the biological sample or other source, and any information extrapolated, derived, or inferred therefrom.

(i) For purposes of this section, "notice" may be provided by one of the following methods:

(1) Written notice.

(2) Electronic notice, if the notice provided is consistent with the provisions regarding electronic records and signatures set forth in Section 7001 of Title 15 of the United States Code.

(3) Substitute notice, if the agency demonstrates that the cost of providing notice would exceed two hundred fifty thousand dollars ($250,000), or that the affected class of subject persons to be notified exceeds 500,000, or the agency does not have sufficient contact information. Substitute notice shall consist of all of the following:

(A) Email notice when the agency has an email address for the subject persons.

(B) Conspicuous posting, for a minimum of 30 days, of the notice on the agency's internet website, if the agency maintains one. For purposes of this subparagraph, conspicuous posting on the agency's internet website means providing a link to the notice on the home page or first significant page after entering the internet website that is in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the link.

(C) Notification to major statewide media and the Office of Information Security within the Department of Technology.

(4) In the case of a breach of the security of the system involving personal information defined in paragraph (2) of subdivision (g) for an online account, and no other personal information defined in paragraph (1) of subdivision (g), the

agency may comply with this section by providing the security breach notification in electronic or other form that directs the person whose personal information has been breached to promptly change the person's password and security question or answer, as applicable, or to take other steps appropriate to protect the online account with the agency and all other online accounts for which the person uses the same username or email address and password or security question or answer.

(5) In the case of a breach of the security of the system involving personal information defined in paragraph (2) of subdivision (g) for login credentials of an email account furnished by the agency, the agency shall not comply with this section by providing the security breach notification to that email address, but may, instead, comply with this section by providing notice by another method described in this subdivision or by clear and conspicuous notice delivered to the resident online when the resident is connected to the online account from an Internet Protocol address or online location from which the agency knows the resident customarily accesses the account.

(j) Notwithstanding subdivision (i), an agency that maintains its own notification procedures as part of an information security policy for the treatment of personal information and is otherwise consistent with the timing requirements of this part shall be deemed to be in compliance with the notification requirements of this section if it notifies subject persons in accordance with its policies in the event of a breach of security of the system.

(k) Notwithstanding the exception specified in paragraph (4) of subdivision (b) of Section 1798.3, for purposes of this section, "agency" includes a local agency, as defined in Section 7920.510 of the Government Code.

(l) For purposes of this section, "encryption key" and "security credential" mean the confidential key or process designed to render the data usable, readable, and decipherable.

(m) Notwithstanding any other law, the State Bar of California shall comply with this section. This subdivision shall not be construed to apply other provisions of this chapter to the State Bar.

**SEC. 15.** Section 14.5 of this bill incorporates amendments to Section 1798.29 of the Civil Code proposed by both this bill and Assembly Bill 1711. That section of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 1798.29 of the Civil Code, and (3) this bill is enacted after Assembly Bill 1711, in which case Section 1798.29 of the Civil Code, as amended by Section 14 of this bill, shall remain operative only until the operative date of Assembly Bill 1711, at which time Section 14.5 of this bill shall become operative.

**SEC. 18.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to ensure the State Bar immediately prioritizes the improvement of its system for disciplining attorneys and the administration of the State Bar, it is necessary that this act take effect immediately.