Lenore L. Albert, Esq. SBN 210876
LAW OFFICES OF LENORE ALBERT
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Email: lenalbert@InteractiveCounsel.com
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of
themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiff, <br> vs. <br><br> THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; KEVAN SCHWITZER; RICK RANKIN; and DOES 4 through 10, inclusive, <br> Defendants. | CASE NO. 22-cv-00983-DFM <br><br> Assigned to Hon. Douglas F. McCormick <br> Complaint filed: 03-18-2022 <br><br> **SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: September 15, 2022 <br> Time: 11:00AM <br> Crtm: 6B |

1

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Lenore Albert, am the attorney for the plaintiffs in the above-captioned matter and am licensed to practice law before the highest court in the state of California, the state of Michigan and the United States Supreme Court. I am a member in good standing in the United States District Court for the Central District of California. If called as a witness, I could testify competently to the following:

1. Attached hereto and fully incorporated herein as **Exhibit 1** is a true and correct copy of legislative analysis of AB 2958 I pulled off the internet.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed this day in Portland, Oregon.

Dated:  September 1, 2022          Respectfully Submitted,
                                  LAW OFFICES OF LENORE ALBERT
                                  /s/ Lenore Albert_____
                                  LENORE L. ALBERT, ESQ.
                                  Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
                                  Jane Roe 2, Jane Roe 3, and John Roe 2, *on
                                  behalf of themselves and all others similarly
                                  situated*

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1968 S Coast Hwy #3960, Laguna Beach, CA 92651
A true and correct copy of the foregoing document entitled:

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR; and **(b)** in the manner stated below:

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):
Pursuant to F.R.Civ.P. on 09-01-2022, I served the following persons and/or entities ECF or email as follows:

X Service information continued on attached page
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09-01-2022 | Lenore Albert | /s/Lenore Albert |
|------------|---------------|------------------|
| *Date* | *Printed Name* | *Signature* |

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*        22-CV-00983-DFM

**SERVICE BY ECF**

**Defendant**

| The State Bar of California | represented by | **Michael G Rhodes** |
| --- | --- | --- |
| | | Cooley LLP |
| | | 3 Embarcadero Center 20th Floor |
| | | San Francisco, CA 94111 |
| | | 415-693-2000 |
| | | Fax: 415-693-2222 |
| | | Email: rhodesmg@cooley.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Barrett J Anderson** |
| | | Cooley LLP |
| | | 4401 Eastgate Mall |
| | | San Diego, CA |
| | | 858-550-6000 |
| | | Fax: 858-550-6420 |
| | | Email: banderson@cooley.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Gregory John Merchant** |
| | | Cooley LLP |
| | | 3175 Hanover Street |
| | | Palo Alto, CA 94304 |
| | | 650-843-5620 |
| | | Email: gmerchant@cooley.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Walter Waidelich** |
| | | Cooley LLP |
| | | 4401 Eastgate Mall |
| | | San Diego, CA 92121 |
| | | 858-550-6000 |
| | | Fax: 858-550-6420 |
| | | Email: cwaidelich@jonesday.com |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

**4**

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

| | | |
|---|---|---|
| **Tyler Technologies, Inc.**<br>*also known as*<br>Doe 1 | represented by | **Jason Nathaniel Haycock**<br>K and L Gates LLP<br>Four Embarcadero Center Suite 1200<br>San Francisco, CA 94111<br>415-882-8200<br>Fax: 415-882-8220<br>Email:<br>jason.haycock@klgates.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Christina N Goodrich**<br>K and L Gates LLP<br>10100 Santa Monica Boulevard 8th Floor<br>Los Angeles, CA 90067<br>310-552-5000<br>Fax: 310-552-5001<br>Email:<br>christina.goodrich@klgates.com<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Kevan Schwitzer** | represented by | **David Belcher**<br>Faegre Drinker Biddle and Reath LLP<br>1800 Century Park East Suite 1500<br>Los Angeles, CA 90067<br>310-203-4000<br>Fax: 310-229-1285<br>Email:<br>david.belcher@faegredrinker.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Peter William Baldwin**<br>Faegre Drinker Bibble and Reath LLP |

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

5

| | | 1177 Avenue of the Americas 41st Floor<br>New York, NY 10036<br>212-248-3140<br>Fax: 212-248-3141<br>Email:<br>peter.baldwin@faegredrinker.com<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| **Defendant** | | **Michael Gold** |
| **Rick Rankin** | | MAG@jmbm.com via Email |

Tiana A. Demas     tdemas@cooley.com

Christina N. Goodrich     klgateseservice@klgates.com, christina.goodrich@klgates.com

Michael Allan Gold     mgold@jmbm.com, cl7@jmbm.com, mastercalendar@jmbm.com

Lenore L Albert     docket@interactivecounsel.com, lenorealbert@msn.com, lenalbert@interactivecounsel.com

Justin Alexander Anderson     learly@jmbm.com, janderson@jmbm.com, mastercalendar@jmbm.com

Michael G Rhodes     mrhodes@cooley.com, john-brocales-7263@ecf.pacerpro.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, rhodesmg@cooley.com, smartinez@cooley.com

Walter Waidelich     cwaidelich@cooley.com, kjones@cooley.com

David Belcher     docketgeneral@faegredrinker.com, shanta.teekah@faegredrinker.com, david.belcher@faegredrinker.com

Beth W. Petronio     beth.petronio@klgates.com

Gregory John Merchant     gmerchant@cooley.com

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*          22-CV-00983-DFM

6

Peter William Baldwin      peter.baldwin@faegredrinker.com,
usacac.criminal@usdoj.gov, peter.baldwin@usdoj.gov

Barrett J Anderson      banderson@cooley.com, mdejesus@cooley.com, efiling-
notice@ecf.pacerpro.com

**SUPPLEMENTAL DECLARATION OF LENORE ALBERT, ESQ. IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Roe v The State Bar of California, et al.*            22-CV-00983-DFM

EX 1

Date of Hearing:  May 3, 2022

ASSEMBLY COMMITTEE ON JUDICIARY
Mark Stone, Chair
AB 2958 (Committee on Judiciary) – As Amended April 28, 2022

PROPOSED CONSENT (As Proposed to be Amended)

**SUBJECT**:  STATE BAR OF CALIFORNIA: ATTORNEYS' ANNUAL LICENSE FEES, DISCIPLINE SYSTEM REVIEW, AND GENERAL OVERSIGHT

**KEY ISSUES**:

1)  SHOULD STATE BAR LICENSING FEES FOR 2023 (WHICH WERE RAISED SUBSTANTIALLY IN 2020) REMAIN MOSTLY UNCHANGED, WITH SMALL REDUCTIONS BASED UPON (A) SALE OF THE BAR'S S.F. BUILDING, AND (B) MAKING THE LOBBYING FEE AN OPT-IN INSTEAD OF AN OPT-OUT ASSESSMENT?

2)  GIVEN THE STATE BAR'S ACKNOWLEDGMENT OF DECADES OF MISTAKES IN ITS HANDLING OF COMPLAINTS AGAINST ATTORNEYS AND THE LATEST STATE AUDITOR REPORT SHOWING THAT THE BAR'S "WEAK POLICIES LIMIT ITS ABILITY TO PROTECT THE PUBLIC FROM ATTORNEY MISCONDUCT," SHOULD THE BAR FOCUS MORE OF ITS RESOURCES AND ATTENTION ON ATTORNEY DISCIPLINE?

**SYNOPSIS**

*This is the annual State Bar fees reauthorization and legislative oversight bill. The annual bill allows the Legislature to review the performance and operation of the State Bar in the past year and determine if any statutory changes are needed to improve its functioning, as well as approve annual licensing fees for attorneys in the state. As is often the case, this bill arrives during yet another year of controversy for the State Bar. First, in response to last year's revelations that a well-connected attorney was apparently able to steal millions of dollars from his injured clients over many years while the State Bar did nothing to stop it (despite receiving decades of complaints), the Legislature directed the State Auditor to conduct an independent audit to determine whether the State Bar's attorney complaint and discipline process adequately protects the public from attorney misconduct. That audit, "The State Bar of California's Attorney Discipline Process: Weak Policies Limit Its Ability to Protect the Public From Attorney Misconduct," was released a few weeks ago and revealed numerous lapses in the State Bar's discipline system that allowed dishonest or incompetent attorneys to continue to practice law, endangering the public. Second, a little over a month ago, the Los Angeles Times reported on the efforts of several California attorneys, including two very well-connected ones, to obtain payments from insurance companies to compensate families of Armenian genocide victims, but reportedly failed to compensate many of the victims' families. Instead money collected "was sent to the pet charities of lawyers involved in the case, including their alma mater; and hundreds of thousands of dollars were directed to sham claimants. Less than 8% of claims submitted by Armenians around the world were approved, despite what in many cases was overwhelming evidence that the applicants were rightful heirs." (Matt Hamilton and Harriet Ryan,* Top lawmakers demand investigation of corruption in Armenian genocide victims payments *(April 2,*

*2022) Los Angeles Times.) Some lawyers connected with the case, but not the most influential, were disciplined. Finally, confidential and personal information in the State Bar's discipline automation system, developed by Texas-based Tyler Technologies, was recently accessed through a vulnerability in the system that allowed public access to that information.*

*This year's bill takes some necessary and basic steps to continue operations at the State Bar, but leaves some key questions open for resolution as the bill moves forward in the legislative process. First the bill approves fees at least year's amount, less (1) $5 by making the lobbying fee an opt-in instead of an opt-out, and (2) $4 if the State Bar's San Francisco office building is sold, since that money is directed toward maintenance on the S.F. building. Second, it continues an additional $5 opt-out to support legal services, but directs that money to summer fellowships for law students working at legal services organizations. Finally, as a result of the access to confidential and personal data, it requires the State Bar to comply with breach reporting requirements of the Information Practices Act of 1977. For now, the bill leaves open the question of what the appropriate legislative response to the most recent audit should be.*

**SUMMARY:**  Reauthorizes the State Bar to charge attorneys their annual licensing fees and makes other changes regarding regulation of attorneys. Specifically, **this bill**:

1) Authorizes the Board of Trustees of the State Bar to collect an annual license fee of no more than $390 for active licensees for 2023, a reduction of $5 from 2022. Reduces the fee by $4 if the State Bar has entered into a contract to sell its San Francisco office building by December 31, 2022.

2) Reduces the fee that inactive attorneys must pay by $1, from $97.40 to $96.40 if the State Bar has entered into a contract to sell its San Francisco office building by December 31, 2022.

3) Allows the Board to provide each licensee with the option of adding up to $5 to the annual fee if the licensee elects to support lobbying and related activities by the State Bar, as provided. Prohibits the State Bar from spending more for the support or defense of lobbying and related activities than the amount paid by licensees pursuant to the optional increase for lobbying.

4) Directs, until January 1, 2025, $45 of the annual license fees to legal services purposes unless a member elects not to support those activities. Requires $5 of the $45 fee to be allocated to qualified legal services projects or qualified support centers, as defined, to fund law student summer fellowships for the purpose of supporting law students interested in pursuing a career in legal services. After January 1, 2025, reverts to direct the $45 to legal services purposes, without any funding specified for law student summer fellowships.

5) Provides that any filing of a vacancy on the Board of Trustees mid-term does not count toward the two-term limit for appointments of trustees.

6) Requires that the mandatory State Bar outreach for its Attorney Diversion and Assistance Program include continuing legal education courses addressing behavioral health issues.

7) Notwithstanding any other law, requires the State Bar to comply with the requirement, under the Information Practices Act of 1977, that any agency, as defined, that owns or licenses computerized data that includes personal information must disclose any breach of the

security of the system following discovery or notification of the breach in the security of the data to any resident of California (a) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or (b) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the agency that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable.

**EXISTING LAW:**

1) Requires all attorneys who practice law in California to be licensees of the State Bar and establishes the State Bar for the purpose of regulating the legal profession. Pursuant to the State Bar Act, requires the annual mandatory membership fee set by the Board to pay for discipline and other functions to be ratified by the Legislature. (Business and Professions Code Section 6000 *et seq*. Unless stated otherwise, all further statutory references refer to the Business and Professions Code.)

2) Provides that protection of the public, which includes support for greater access to, and inclusion in, the legal system, is the highest priority of the State Bar and its Board of Trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, provides that the protection of the public shall be paramount. (Section 6001.1.)

3) Authorizes the State Bar to collect up to $395 in annual licensing fees from active members for a total annual fees bill of up to $470 for the year 2021. Provides that the other $75 is pursuant to statutory authorization to assess annually the following fees: $40 for the Client Security Fund; $25 for the disciplinary system; and $10 for the Lawyer Assistance Program. (Sections 6140, 6140.55, 6140.6, 6140.9.)

4) Authorizes the State Bar to collect up to $97.40 in annual membership fees from inactive members for a total annual dues bill of up to $137.40. Provides that the other $40 is pursuant to statutory authorization to assess annually the following fees: $10 for the Client Security Fund; $25 for the disciplinary system; and $5 for the Lawyer Assistance Program. (Sections 6141, 6140.55, 6140.6, 6140.9.)

5) Directs, until January 1, 2023, $45 of the annual license fees to legal services purposes unless a member elects not to support those activities. Requires $5 of the $45 fee to be allocated to qualified legal services projects or qualified support centers, as defined, to hire law school graduates with a temporary provisional license issued by the State Bar, as provided. After January 1, 2023, reverts to direct $40 of the annual license fees to legal services purposes unless a member elects not to support those activities, without the additional $5 to hire law school graduates. (Section 6140.03.)

6) Requires the Board of Trustees to establish and administer the Client Security Fund to relieve or mitigate pecuniary losses caused by dishonest conduct of active licensees of the State Bar, as specified. (Section 6140.5.)

7) Requires the State Bar to contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations every two years. (Section 6145 (b).)

8) Directs the State Auditor to conduct an independent audit to determine whether the State Bar's attorney complaint and discipline process adequately protects the public from misconduct by licensed attorneys or those who wrongfully hold themselves out as licensed attorneys; and specifically provides that the audit analyze whether the State Bar takes reasonable steps to determine the existence and extent of alleged misconduct, if the State Bar has sufficient management controls, including conflict of interest policies, to ensure complaint investigations are not compromised by undue influence, and examine any data trends that could suggest racial or gender inequities in outcomes from the discipline process. Also provides that the audit include consideration of possible options for the State Bar to more proactively protect the public and be submitted no later than April 15, 2022 to the Board of Trustees, the Chief Justice, and the Assembly and Senate Judiciary Committees. (Section 6145 (c).)

9) Provides that the chief trial counsel, with or without the filing or presentation of any complaint, may initiate and conduct investigations of all matters affecting or relating to: (a) the discipline of State Bar licensees; (b) the acts or practices of a person whom the chief trial counsel has reason to believe has violated or is about to violate any provision regarding the unlawful practice of law or unlawful solicitations; (c) and any other matter within the jurisdiction of the State Bar. (Section 6044.)

10) States that it is the goal and policy of the State Bar to dismiss a complaint, admonish the attorney, or forward a completed investigation to the Office of Trial Counsel within six months after receipt of a written complaint. As to complaints designated as complicated matters by the chief trial counsel, states the goal and policy of the State Bar to dismiss, terminate by admonition, or forward those complaints to the Office of Trial Counsel within 12 months. (Section 6094.5 (a).)

11) Requires the State Bar, no later than October 31, 2022, to propose case processing standards for competently, accurately, and timely resolving cases with the Office of Chief Trial Counsel. Sets forth what the case processing standards must be based upon and what they must take into account. Requires the State Bar to provide its analysis to the Legislative Analyst's Office (LAO), and requires the LAO to report to the Senate and Assembly Judiciary Committees on its review of the proposal. States the intent of the Legislature to enact legislation to codify case processing goals. (Section 6094.5 (b).)

12) Requires the State Bar to issue an annual discipline report by October 31 of each year describing the performance and condition of the State Bar discipline system, including all matters that affect public protection. Requires that the annual discipline report include, among other things, the existing backlog of cases in the discipline system; the number of inquiries and complaints and their disposition; the speed of complaint handling and disposition, by type; and a description of the condition of the Client Security Fund. Requires that the report include statistical information presented in a consistent manner for year-to-year comparison and compare the previous five years. (Section 6086.15 (a).)

13) Requires that the mandatory State Bar outreach for its Attorney Diversion and Assistance Program include continuing legal education courses relating to the prevention, detection, and treatment of substance abuse. (Section 6236.)

14) Finds that one of the purposes of the State Bar Act is to expand the availability and improve the quality of existing free legal services in civil matters to indigent persons. (Section 6210.)

15) Requires that the interest and dividends earned on all interest on lawyer trust accounts (IOLTA accounts) be paid to the State Bar to be used to fund civil legal services for indigent persons. (Sections 6211 (a), 6216 (a).)

16) Defines which nonprofit entities are presumed to be eligible for legal services funding administered by the State Bar. (Sections 6213 (a), 6213 (b), 6214, 6214.5, 6215.)

17) Requires, under the Information Practices Act of 1977, that any agency, as defined, that owns or licenses computerized data that includes personal information, as defined, to disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California (a) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or (b) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the agency that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable. Sets forth how the notice is to be provided. (Civil Code Section 1798.29.)

**FISCAL EFFECT**:  As currently in print this bill is keyed non-fiscal.

**COMMENTS**:  This is the annual State Bar fees reauthorization and legislative oversight bill. The annual bill allows the Legislature to review the performance and operation of the State Bar in the past year and determine if any statutory changes are needed to improve its functioning, as well as approve annual licensing fees for attorneys in the state.

As is often the case, this bill arrives during yet another year of controversy for the State Bar. First, in response to last year's revelations that a well-connected attorney was apparently able to steal millions of dollars from his injured clients over many years while the State Bar did nothing to stop it despite receiving decades of complaints, the Legislature directed the State Auditor to conduct an independent audit to determine whether the State Bar's attorney complaint and discipline process adequately protects the public from attorney misconduct. That audit, "The State Bar of California's Attorney Discipline Process: Weak Policies Limit Its Ability to Protect the Public From Attorney Misconduct," was released a few weeks ago and revealed numerous lapses in the State Bar's discipline system that allowed dishonest or incompetent attorneys to continue to practice law, endangering the public. Second, a little over a month ago, the Los Angeles Times reported on the efforts of several California attorneys, including two very well-connected ones, to obtain payments from insurance companies to compensate families of Armenian genocide victims, but reportedly money collected failed to compensate many of the victims' families and instead "was sent to the pet charities of lawyers involved in the case, including their alma mater; and hundreds of thousands of dollars were directed to sham claimants. Less than 8% of claims submitted by Armenians around the world were approved, despite what in many cases was overwhelming evidence that the applicants were rightful heirs." (Matt Hamilton and Harriet Ryan, *Top lawmakers demand investigation of corruption in Armenian genocide victims payments* (April 2, 2022) Los Angeles Times.) Some lawyers connected with the case, but not the most influential, were disciplined. Finally, confidential and personal information in the State Bar's discipline automation system, developed by Texas-based Tyler Technologies, recently was accessed through a vulnerability in the system that allowed public access to that information.

This year's bill takes some necessary and basic steps to continue operations at the State Bar, but leaves some key questions open for resolution as the bill moves forward in the legislative process. First, the bill approves fees at last year's amount, less (1) $5 by making the lobbying fee an opt-in instead of an opt-out, and (2) $4 if the State Bar's San Francisco office building is sold, since that money is directed toward maintenance on the S.F. building. Second, it continues an additional $5 opt-out to support legal services, but directs that money to summer fellowships for law students working at legal services organizations. Finally, as a result of the access to confidential and personal data, it requires the State Bar to comply with breach reporting requirements of the Information Practices Act of 1977. For now, the bill leaves open the question of what the appropriate legislative response to the most recent audit should be.

**Background on the State Bar.** Attorneys who wish to practice law in California generally must be admitted and licensed in this state by the State Bar. (Cal. Const., Art. VI, Sec. 9.) The State Bar of California is the largest bar in the country, with over 194,000 active licensees and over 71,000 inactive licensees. The total number of State Bar licensees is nearly 285,000, which includes 2,151 judge-licensees and 16,589 licensees who are "not eligible to practice law." (http://members.calbar.ca.gov/search/demographics.aspx.)

The mission of the State Bar is "to protect the public and includes the primary functions of licensing, regulation and discipline of attorneys; the advancement of the ethical and competent practice of law; and support of efforts for greater access to, and inclusion in, the legal system." (http://www.calbar.ca.gov/About-Us/Our-Mission.) Pursuant to statute, "[p]rotection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." (Section 6001.1.)

**Chief Trial Counsel hired, but not yet confirmed.** Last year, the Chief Trial Counsel position at the State Bar, which requires Senate confirmation, had been open for over five years, with an acting person in the position. The Chief Trial Counsel is the top prosecutor in the State Bar's discipline system, which reviews complaints of attorney misconduct and the unauthorized practice of law, conducts investigations, files discipline charges, and prosecutes cases in the State Bar Court, and the Legislature had been very concerned that the long-standing vacancy was negatively impacting the Bar's discipline system. Since then, the State Bar has hired George Cardona, a former Assistance United States Attorney, as its chief trial counsel. Mr. Cardona is currently awaiting Senate confirmation.

**State Bar requests licensing fee increases for a variety of items.** The State Bar has a number of legislation priority requests this year, several having to do with increasing the licensing fee. The Bar is requesting an ongoing annual inflationary adjustment. While the State Bar appears not to have suggested a percentage increase, they point to the 2021 rate of inflation of 4.7 percent and appear to be requesting an *ongoing, automatic* increase pegged to inflation. However, because the Legislature reviews and approves the State Bar's licensing fee every year, there appears to be no reason for providing an automatic inflation adjustment to the licensing fees, when the Legislature could choose to do that annually, should it deem that to be an appropriate choice.

In addition, the State Bar is requesting fee increases for particular projects or issues, including more support for the State Bar's diversion, equity, and inclusion efforts (adding $1 to licensing fees), and efforts to recruit for legal services attorneys (maintaining the additional $5 in legal

services opt-out fees that was set to sunset this year, but directing that to law student summer fellowships). The latter request is included in the bill as recently amended and does not distract from the Bar's primary focus on public protection, since the legal services grants are administered by the Legal Services Trust Fund Commission.

When the State Bar requested an effective doubling of the licensing fee in 2018, the Legislature directed the State Auditor and the Legislative Analyst's Office to review the State Bar's fee increase request, along with its fees, expenses, and performance. The result was a nearly 40 percent increase in the main active attorney licensing fee (increasing from $315 to $438). Three years later, the bar is requesting another significant – and ongoing – fee increase through the inflation adjustment. *It may be appropriate to consider, as the bill moves forward, once again asking the State Auditor to review the State Bar's resources and its use of those resources to determine if an additional fee increase is warranted at this time or if existing resources can be better targeted to the State Bar's priorities.*

***Last year's State Auditor's biennial report on the State Bar's performance, which revealed significant concerns with its discipline program, including an 87 percent increase in the backlog of discipline cases, and revelations about decades of mistakes by the State Bar in the handling of misconduct by a prominent attorney, prompted the Legislature to seek an audit of the State Bar's discipline system.*** As stated above, the State Bar's highest priority is the protection of the public. To the extent that protection of the public means quickly rooting out dishonest or incompetent attorneys, the State Bar has been falling behind in its key mission, according to last year's state audit. The Auditor is required by law to conduct a performance audit every two years of the State Bar's operations. (Section 6145 (b).) In last year's biennial audit, the State Auditor found that changes made to improve the State Bar's discipline system actually significantly reduced its efficiency and that the Bar's annual discipline report does not provide all required information and is of less value to its stakeholders, including the Legislature. (California State Auditor, *The State Bar of California: It Is Not Effectively Managing Its System for Investigating and Disciplining Attorneys Who Abuse the Public Trust* (April 2021).) The State Auditor found:

- Beginning in 2016, the State Bar reorganized the staffing for its discipline system, in part by converting its discipline staff from specialists to generalists and promoting some of its most senior attorneys to full-time supervisors. However, these actions did not fully address the audit recommendations and statutory requirements that originally prompted the State Bar to review its discipline system.

- Following the reorganization, the State Bar experienced longer case processing times and an increasing backlog of discipline cases [generally cases that remain pending six months from receipt]. In fact, the State Bar's backlog grew by 87 percent from the end of December 2015 to the end of June 2020. This growing backlog allowed attorneys who were under investigation more time to continue practicing law while their cases were pending, increasing the risk for potential harm to the public.

- The State Bar has not effectively monitored the impact of its reorganization because it does not adequately track performance benchmarks for its discipline system. (*Id.* at 11.)

In addition, a Los Angeles Times' investigative series revealed that Thomas Girardi, a very well connected attorney in Los Angeles, and his firm had been sued at least 45 times for malpractice

or misappropriation of client funds, but the State Bar did nothing. The Times article speculated that this may have been because Mr. Girardi maintained very close relationships with senior State Bar employees and board members. A confidential (but later made public) investigation of the Bar performed by the law firm Munger, Tolles & Olsen, in response to a complaint by the Bar's then Chief Trial Council Jayne Kim, alleging improper activities by Joe Dunn and Tom Layton, among others, found that "[a]lthough we have not uncovered instances of any sort of misconduct involving or untoward influence exerted by Tom Girardi or his firm, the closeness of the relationship between some senior managers and that firm does raise potentially troubling perceptions that the Board should take action to rectify going forward." (Mark Helm and Bart Williams, *Independent Investigation for the State Bar of California: Summary of Findings and Recommendations* (undated, but completed in 2014), p. 20.)

As a result, the Legislature last year directed the State Auditor to conduct an independent review of the attorney complaint and discipline process to determine if it adequately protects the public from attorney misconduct. That audit came out a few weeks ago.

***The most recent audit of the State Bar's discipline system finds that "weak policies limits its ability to protect the public from attorney misconduct."*** The State Auditor's report on the State Bar revealed numerous lapses in the discipline system that allowed dishonest or incompetent attorneys to continue to practice law, endangering the public. (California State Auditor, *The State Bar of California's Attorney Discipline Process: Weak Policies Limit Its Ability to Protect the Public From Attorney Misconduct,* Report 2022-030 (April 14, 2022).) Some of the key findings were:

- Most cases (64.5 percent) are closed during the State Bar's intake process, another 22.2 percent are closed during the investigation process, and only 5.3 of cases receive formal discipline, which can include formal, private discipline. (*Id.* at 11.)

- Too many cases appear to be closed with private discipline and without further investigation, failing to deter some attorneys from future misconduct and allowing some of these attorneys to commit further misconduct:

  The State Bar's data indicate that the use of nonpublic measures is not providing reasonable protection against future misconduct, as its policy requires. A State Bar study from July 2021 showed that a significant number of attorneys were investigated for misconduct within two years after being disciplined. *It also showed that nearly 26 percent of attorneys whose cases were closed with a warning letter in 2019 had a new complaint about their professional conduct investigated by the State Bar within two years of the original case being closed.* The State Bar's executive director indicated that the State Bar has taken steps to address repeated misconduct, including issuing a new policy addressing alternatives to discipline and adding information to the closing letters for reportable actions that it sends to attorneys, but its efforts to reduce recidivism are centered around a redesign of its probation process for attorneys convicted of misconduct.

  Notwithstanding these steps, patterns of attorney misconduct suggest that the State Bar is overusing nonpublic measures. From 2010 to 2021, the State Bar closed more cases through nonpublic measures—a total of 22,600, or 10 percent of all case closures— than it did through public discipline, which totaled 11,200, or 5 percent of

all case closures. During the same period, more than 700 attorneys each had four or more cases that the State Bar closed through nonpublic measures. Our review of a selection of cases associated with five of these attorneys determined that *State Bar staff closed cases through nonpublic measures despite indications in its case files that further investigation or actual discipline may have been warranted.* Of the five attorneys, four had at least one previous complaint for similar misconduct that was closed through nonpublic measures. (*Id.* at 14 [emphasis added].)

The Auditor provided a clear example of the problem with using private discipline:

An attorney exhibited a pattern of failing to provide settlement payments or to provide files to clients until the client complained. The State Bar closed cases against this attorney 28 times over 16 years using nonpublic measures and all of the other closed cases were closed outright. However, complaints against the attorney continued to increase. *From 2014 to 2021, the attorney was the subject of 165 complaints. Despite the high number of complaints, many for similar matters, the State Bar has imposed no discipline, and the attorney still maintains an active license.* In one early case, the State Bar issued a warning letter to the attorney for failing to release a client's case file for nearly a year. However, the attorney has continued to generate complaints from other clients for this same issue. In the 11 years since the State Bar issued that warning letter, complaints have led the State Bar to issue 11 directional letters requiring the attorney to return client files. (*Id.* at 17 (emphasis added).)

- The Bar has, until results of the audit were made clear, closed cases when complainants withdrew their complaints, a method used repeatedly by Mr. Girardi when settling cases after a complaint had been filed. This may help an individual client, but does not protect the public in the long run. The example below makes clear why this is not an effective public protection tactic when discussing the Bar's handling of complaints against a different attorney:

The State Bar closed multiple complaints that were made against an attorney over the course of about 18 months, each alleging that the attorney had failed to pay clients their settlement funds. Generally, the State Bar closed each complaint after the attorney finally paid the client, noting either that the matter was resolved between the attorney and the complainant after the client withdrew their complaint or that there was insufficient evidence to support that the attorney's conduct warranted discipline. A pattern was discernible from five complaints the State Bar received within one year alleging that the attorney's clients were not receiving settlement payments. However, *the State Bar did not identify the need to examine the attorney's bank records until it had received more than 10 complaints over two years. It did not examine the records for another six months, during which time the State Bar continued to receive similar complaints.*

When the State Bar finally examined the client trust account, it found that the attorney had misappropriated nearly $41,000 in total from several clients. The State Bar ultimately filed charges against the attorney stemming from these more recent complaints. After the State Bar questioned the attorney about discrepancies in the

client trust account, the attorney admitted to using client funds for personal reasons. (*Id.* at 18 [emphasis added].)

- The State Bar's focus on reducing the backlog caused it to make bad choices that endangered the public and created additional work for the State Bar, so the focus on the backlog is neither effective at deterring bad behavior by attorneys, nor good for public protection.

  [T]he State Bar is generally focused on closing cases expeditiously. This emphasis on closing cases quickly appears to be in response to criticism the State Bar has faced for the amount of time it has taken to close some cases.

  The State Bar has long struggled to process all of the complaints that it receives each year. Audits our office issued in April 2019 and in April 2021 identified concerns about the backlog of unclosed cases. According to its executive director, addressing the complaint backlog has been the most significant driving factor in the State Bar's development of performance measures and processes, in part because of the focus of our office and the Legislature on the backlog. Nevertheless, the patterns we observed suggest that staff following some of the State Bar's policies may be contributing to the large number of complaints it must address. As Case Examples 1 and 2 illustrate, *the State Bar's actions have failed to prevent additional misconduct of a similar nature, leading to an increase in the volume of subsequent complaints about a specific attorney for the same misconduct. In turn, this has increased the State Bar's workload, which makes it more difficult for it to address its backlog and fulfill its primary mission of protecting the public.* (*Id.* at 18-19 [footnote omitted, emphasis added].)

- The State Bar fails to proactively identify misconduct by California licensed attorneys conducted in other jurisdictions:

  The State Bar does not proactively seek out information regarding disciplinary actions against attorneys in other jurisdictions; instead it relies on the attorneys themselves or the other jurisdictions to report the discipline to the State Bar. However, we found several examples of discipline imposed by other jurisdictions that were not communicated to the State Bar for one year or more. . . . *Although state law clearly sets forth expectations regarding discipline for attorneys who have committed misconduct in other jurisdictions, the State Bar's implementation of this law has not protected the public in some instances and has led to significant delays in identifying some cases of attorney discipline imposed on California attorneys in other jurisdictions.* (*Id.* at 1, 19 [emphasis added].)

- The Bar limits the ability of staff to identify patterns of complaints and patterns of misconduct, which has resulted in delays identifying and preventing future misconduct:

  The patterns of complaints against some attorneys suggest that the State Bar's responses to those complaints did not influence the attorneys' subsequent behavior.  . . . . *Had the State Bar considered the pattern of past conduct, it might have conducted further investigation, which could have resulted in more severe corrective action and discouraged the attorney from continuing this conduct.* (*Id.* at 25 [emphasis added].)

- Although nearly a quarter of all attorney complaints involve client trust accounts, the State Bar closes many cases because the amounts involved are de minimis, sometimes even without notifying the attorneys involved, even if those closures are not in the best interest of the public:

    Our review identified that the State Bar closed many client trust account complaints using nonpublic measures, sometimes without even notifying the attorney about the complaint, and that an attorney's prior history of allegations did not appear to affect the State Bar's decision to close certain client trust account cases. For example, for one attorney we reviewed, the State Bar closed 87 complaints spanning 20 years, some through nonpublic measures and some through a policy that allowed it to close certain cases without contacting the attorney for additional information because the monetary amounts involved were relatively low (a de minimis closing). However, the State Bar eventually sought disbarment based on this attorney's conviction in federal court for money laundering through client trust accounts. (*Id.* at 2.)

- The State Bar's external review of its discipline system lacks independence, and therefore lacks effectiveness. Among the problems identified are the following:

    A key aspect of a properly designed external review is its independence, but several aspects of the State Bar's external review process call into question whether it is truly independent. For example, best practices state that a long association between the external reviewer and the entity can represent a threat to independence. For this reason, the external reviewer should be rotated to ensure that the reviewer does not become too familiar with the entity, which could affect the reviewer's objectivity. However, the State Bar contracted with a former employee as its external reviewer in 2012, and that same individual has conducted reviews for the State Bar since then. Although the executive director indicated that it is very difficult to find qualified people willing to perform this work, if the external review is not objective and independent, it may be providing a false sense of assurance.

    Second, interfering with an external reviewer's selection of items to be examined or the procedures they use is considered to be an undue influence and a threat to the reviewer's independence. . . . However, according to the current policy, the State Bar selects each of the cases for the external reviewer. Not allowing the external reviewer to select the cases introduces the risk that the State Bar could withhold from review cases for which its staff did not follow prescribed policies. (*Id.* at 39.)

As a result, the State Auditor has recommended a series of changes to the Bar's operation of its discipline system, including:

- For the Legislature:

    o Improve the independence of the Bar's external review of its discipline system; and

    o Assess the Bar's compliance with this audit before the end of the year.

- For the State Bar:

- o Revise its policies to define specific criteria that describe which cases are eligible to be closed using nonpublic measures and which are not eligible.

- o Begin monitoring compliance with its new policy for identifying the circumstances in which investigators should continue to investigate even if the complainant withdraws the complaint.

- o Notify the public on its website when other jurisdictions have determined that an attorney who is also licensed in California presents a substantial threat of harm to the public.

- o Begin using its general complaint type categorizations when determining whether to investigate a complaint.

- o Create a formal process for determining whether it is able to objectively assess whether such a complaint should be closed or whether the decision should be made by an independent administrator.

- o Amend its policies to require its external reviewer to select the cases for the semiannual review and establish formal oversight to ensure that it follows up and addresses the external reviewer's findings.

- o Discontinue the use of informal guidance for review of bank reportable actions and direct all staff to follow the established policies and revise its intake manual to disallow de minimis closures if the attorney has a pending or prior bank reportable action or case alleging a client trust account violation. When investigating client trust account-related cases and bank reportable actions not closed de minimis, require its staff to obtain both the bank statements and the attorney's contemporaneous reconciliations of the client trust account, and determine if the relevant transactions are appropriate. (*Id.* at 5-7.)

The State Bar agrees with most of the recommendations by the State Auditor – and in fact began implementing some of the recommendations during the audit, recognizing the significance of its long-standing failures to properly protect the public from attorney misconduct. However, the State Bar states that in order to implement most of the State Auditor's recommendations, it will need a significant increase in resources, which would mean a significant increase in attorney licensing fees. The Chair of the State Bar's Board of Trustee sums up the Bar's historical failure to properly protect the public as follows: "it is undeniable that there is much work to do to address challenges that have been decades in the making and are reflective of a complex and unproductive cycle of insufficient funding, poor outcomes, and low morale." (Letter from State Bar Board Chair Ruben Duran to the State Auditor (April 1, 2022) in California State Auditor, *The State Bar of California's Attorney Discipline Process, supra,* p. 63.) The Chair goes on to state that he is "confident that the Board will continue to both demand and support meaningful improvement in all areas of OCTC's operations." (*Ibid.*) However, the comment reflects a possible continued lack of accountability, particularly if no new funding is provided.

The State Auditor adamantly disagrees about the need for most of the additional resources that the State Bar says it requires to implement the recommendations, with many of its responses set forth as follows:

- The resources the State Bar asserts that it needs to implement our recommendations appear to be significantly inflated and based on questionable estimates. (*Id.* at 67)

- The State Bar also asserts that it would need contractual resources to develop a platform for the automated transmittal of bank and attorney records, as well as personnel to maintain that platform. However, it already maintains an electronic case management system that documents records of the type that it would collect pursuant to our recommendation. Thus, we question why the State Bar believes that it needs a new platform for the collection of such information. (*Id.* at 67)

- [T]he State Bar overstates the level of review we recommend, thereby inflating its estimate of the resources it would need to investigate client trust account complaints. (*Id.* at 67)

- [W]e question whether the State Bar's estimated resource needs are accurate, given the nature of the changes it has implemented since it conducted the staffing study it used as the basis for those estimates. (*Id.* at 68)

- We question why the State Bar is proposing a new system of proactively monitoring attorney client trust accounts when it is not yet effectively responding to the risks represented by bank reportable actions and complaints. . . . It is not clear why the State Bar believes that random reviews of attorney client trust accounts would be a more effective method of identifying client trust account violations than thoroughly reviewing the complaints it receives regarding specific attorneys. Further, the State Bar's proposed new program may be more expensive than its estimates of the costs to implement our recommendations—which it describes as unreasonable. In its presentation to its board, the State Bar estimated that its program would cost $500,000 initially and $3.35 million annually. (*Id.* at 68-69.)

***What action is appropriate for the Legislature to take to ensure the State Bar complies with the Auditor's recommendations and, finally after repeated legislative efforts encouraging them to do so, improve its discipline system?*** The State Auditor has raised very significant concerns about the State Bar's discipline system; and the State Bar itself has acknowledged those and other long-standing problems with its discipline system. The State Bar has said it needs significant additional resources to implement many of the State Auditor's recommendations, but, for the most part, the State Auditor disagrees with that assessment. The State Auditor is slated to conduct its biennial performance audit of the State Bar shortly, with the result due to the Legislature approximately on May 1, 2023. *Given the need to ensure that the State Bar implements the Auditor's recommendations and given the Bar's request for additional funds to do so, along with the Bar's request for additional funds generally, as discussed above, it may be appropriate, as the bill moves forward, to direct the 2022-23 State Bar audit to focus on the Bar's key priorities, in particular the discipline system, and determine what, if any additional funding is needed for those key priorities, and, if additional funding is needed for the discipline system, are there lower priority projects within the State Bar that could be delayed or ended to support the additional discipline funding needs, if any.*

**Another year, another scandal involving the State Bar as reported by the Los Angeles Times.** Last year, the Girardi case—and the Bar's failure to take disciplinary action against him—as detailed in multiple stories featured in the Los Angeles time, shocked the state. Then, a little over

a month ago, the Los Angeles Times reported on the efforts of some California attorneys to obtain payments from insurance companies for those killed in the Armenian genocide in the early 20th century. (Harriet Ryan and Matt Hamilton, *A 'blood money' betrayal: How corruption spoiled reparations for Armenian genocide victims* (March 23, 2022) Los Angeles Times.) A subsequent article summed up their findings:

> Three Armenian American attorneys from Los Angeles, including [two very] prominent lawyers . . . , secured the settlement with the French insurance company AXA a decade and a half ago. The funds were supposed to compensate the families of genocide victims with unpaid insurance policies and support Armenian charities selected by a French nonprofit.

> The Times investigation found that that the French nonprofit was never established; some of the money was sent to the pet charities of lawyers involved in the case, including their alma mater; and hundreds of thousands of dollars were directed to sham claimants. Less than 8% of claims submitted by Armenians around the world were approved, despite what in many cases was overwhelming evidence that the applicants were rightful heirs. (Matt Hamilton and Harriet Ryan, *Top lawmakers demand investigation of corruption in Armenian genocide victims payments* (April 2, 2022) Los Angeles Times.)

The State Bar took action against some of the attorneys involved in the case, but took "no action against the prominent and well-connected, with a bar supervisor telling one alleged victim that "suspicion is not a basis for investigation.'" (Harriet Ryan and Matt Hamilton, *A 'blood money' betrayal, supra.*)

While the influential attorneys, both descendants of survivors of the genocide, have denied any wrongdoing, coming on the heels of the decades of the Bar's acknowledged mistakes with respect to another very prominent California attorney – Mr. Girardi – this investigative report again raised questions about the State Bar's discipline system broadly and the Bar's handling of complaints against well-connected attorneys specifically.

***The State Bar has continued to put significant time, resources, and attention in work groups to expand the practice of law, raising concerns with the Legislature.*** In 2020, the State Bar created two work groups to look at expanding the practice of law to different groups and using different models of service delivery. The Closing the Justice Gap Working Group (CTJG) is charged with "exploring the development of a regulatory sandbox to encourage the development of innovative legal service delivery models serving clients at all income levels through the collaboration of lawyers, law firms, technologists, entrepreneurs, and others." (State Bar, of California, Closing the Justice Gap Working Group, *available* at https://www.calbar.ca.gov/About-Us/Who-We-Are/Committees/Closing-the-Justice-Gap-Working-Group.) The California Paraprofessional Program Working Group is charged with creating a "paraprofessional licensure/certification program to increase access to legal services in California." (State Bar, California Paraprofessional Program Working Group, *available at* https://www.calbar.ca.gov/About-Us/Who-We-Are/Committees/California-Paraprofessional-Program-Working-Group.) Both groups were directed to balance the dual goals of ensuring public protection and increasing access to legal services.

Significant concerns were raised about both of the working groups, including about the memberships of the groups and the direction of possible recommendations, but the working groups pushed ahead under the direction of the now-Executive Director of the Bar. Earlier this year, the chairs of this Committee and the Senate Judiciary Committee raised concerns about the

working groups and the Bar's misuse of scarce resources, particularly given its long-standing lack of attention to the discipline system:

> Unfortunately, it appears that the State Bar has chosen to divert its attention from its core mission of protecting the public and addressing the critical issues affecting the discipline system. Instead, the State Bar has used a substantial amount of its resources for the CTJG, as well as the Paraprofessional Program Working Group, apparently utilizing hundreds of hours of staff time and an unknown amount of other State Bar resources.  . . .

> The CTJG has been exploring a proposed regulatory sandbox and proposals that would recommend allowing a participant in the sandbox who is not a licensed attorney to be exempt from existing statutory laws regarding the practice of law and rules of professional conduct. Our Committees have prioritized protecting consumers from unscrupulous actors, including those seeking to do business in the legal field. Corporate ownership of law firms and splitting legal fees with non-lawyers has been banned by common law and statute due to grave concerns that it could undermine consumer protection by creating conflicts of interests that are difficult to overcome and fundamentally infringe on the basic and paramount obligations of attorneys to their clients.

> Corporations are driven by profits and demands for returns to shareholders, and do not have the same ethical duties and are not subject to the same regulatory oversight as attorneys. The regulatory sandbox could become an open invitation for profit-driven corporations, hedge funds, or others to offer legal services or directly practice law without appropriate legal training, regulatory oversight, protections inherent in the attorney-client relationship, or adequate discipline to the detriment of Californians in need of legal assistance. Any proposal that would materially change current consumer protections for clients receiving legal services and fundamentally alter the sacrosanct principles of the attorney-client relationship would be heavily scrutinized by our Committees.

Since receipt of the letter, the State Bar reformed the CTJG to minimize out-of-state members and directed that recommendations be delivered to the Board of Trustees by May 2023. The recommendations of the Paraprofessional Working Group received public comment, over 70 percent of which was opposed to the proposals, and has continued working to refine its proposals. *Given the concerns that have been raised about these work groups and the Legislature's direction to focus on the core mission of the Bar, it is worth considering, as the bill moves forward, whether more statutory direction should be provided to the State Bar regarding some of the issues being discussed by the work groups, or whether such legislative direction should wait until final recommendations are approved by the Bar's Board.*

**Data breach of confidential State Bar discipline records.** On February 26, 2022, the State Bar announced that there had been a breach of its confidential attorney discipline case data and that thousands of its records had been posted on a public website that aggregates court records nationwide. (State Bar press release, *State Bar of California Addresses Breach of Confidential Data* (Feb. 26, 2022), *available at* https://www.calbar.ca.gov/About-Us/News/News-Releases/state-bar-of-california-addresses-breach-of-confidential-data.) It appears that a vulnerability in the Texas-based Tyler Technology automation system used by the State Bar (and most of California's superior courts) exposed the confidential data, which resulted in its being published on a third-party public website. (Confidential data from California court records was also accessed and published.) As of March 14, 2022, the State Bar reported that 322,525

confidential records were made available to the public, of which 188 included personal information. It appears that 1,034 of the confidential records were viewed by the public. (State Bar, *Data Breach Updates, available at* https://www.calbar.ca.gov/About-Us/News/Data-Breach-Updates.)

The State Bar has been forthcoming about the data breach and responsive to legislative and press inquiries and should be commended for its actions. It has also agreed to notify all persons whose confidential data was compromised, even though current law does not require such notification. While state agencies are required to comply with the Information Practices Act (Act), the State Bar is located in the judicial branch and judicial branch entities are exempted from the Act. (*See* Civil Code Section 1798.3 (b)(2).) However, for purposes of the Act, the State Bar is much more akin to the regulatory agencies under the Department of Consumer Affairs (and hence subject to the Act) than it is similar to courts. This bill, as recently amended, would make the State Bar subject to the data breach reporting requirements of the Act.

***Amendment to clarify use of legal services funds for law student fellowships.*** To ensure that the funds to support legal services summer fellowships for law student prioritize organizations that help all low-income Californians, the Committee proposes to amend the bill to ensure that services are not dependent on immigration or citizenship status:

Amend Business & Professions Code Section 6140.03 (b)(3) as follows.

(3) In awarding these grants, preference shall be given to fund proposals for fellowships serving rural or underserved communities ***and that serve clients regardless of immigration or citizenship status***.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

None on file

**Opposition**

None on file

**Analysis Prepared by**:  Leora Gershenzon / JUD. / (916) 319-2334