# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN ROE 1 et al., | No. SA CV 22-00983-DFM |
| Plaintiffs, | Order re Defendants' Motions to Dismiss (Dkts. 35, 36, 38) |
| v. | |
| THE STATE BAR OF CALIFORNIA et al., | |
| Defendants. | |

Before the Court are Motions to Dismiss filed by Defendants Tyler Technologies, Rick Rankin, and the State Bar of California ("State Bar"). See Dkts. 35, 36, 38. Plaintiffs filed Oppositions. See Dkts. 54-56. Defendants submitted Replies. See Dkts. 67-69.

## I.   FACTUAL ALLEGATIONS

Plaintiffs John Roe 1 and Jane Roe 1 filed confidential complaints with the State Bar. See Dkt. 1-8, First Amended Complaint ("FAC") ¶¶ 1, 2. Plaintiffs Jane Roe 2, Jane Roe 3, and John Roe 2 were licensed by the State Bar and were the subject of confidential investigations or complaints. See id. ¶¶ 3-5. The State Bar is a public corporation. See id. ¶ 6.

All State Bar complaints and investigations are confidential until public Notice of Disciplinary Charges are filed. See id. ¶¶ 13-15. In 2018 or 2019, the State Bar transferred its confidential records to a new Case Management

System called "Odyssey," which it purchased for $3 million dollars from Tyler Technologies. See id. ¶ 16. The "Odyssey Portal," which is accessible from the State Bar's website, allows complainants and respondents to view publicly filed documents from State Bar Court disciplinary proceedings. See id. ¶¶ 17-19.

In February 2022, the State Bar learned that 322,525 nonpublic records related to lawyer disciplinary proceedings had been "harvested" from the Odyssey Portal and posted on a third-party website, JudyRecords.com. See id. ¶¶ 22, 25, 27, 31 32. The records were available on JudyRecords.com from October 15, 2021, to February 24, 2022. See id. ¶ 31. The State Bar has refused to provide Plaintiffs with specific information about the breach. See id. ¶ 36.

Plaintiffs seek to represent a class composed of and defined as:

All California residents identified in the approximately 188 to 322,525 confidential aka "nonpublic" California State Bar records received by Kevan Schwitzer, the owner/operator of https://JudyRecords.com which include both Complainants and Members of the State Bar of California.

Id. ¶¶ 43 (reformatted).

Plaintiffs assert seven claims: violation of the California Information Practices Act of 1977 ("IPA"), two claims for invasion of privacy, two antitrust claims, negligence, and negligence per se. See id. ¶¶ 50-129.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. See Fed. R. Civ. P. 12(b)(6). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In resolving a 12(b)(6) motion under Twombly, the Court follows a two-pronged approach. First, the Court accepts all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court "determine[s] whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III.  DISCUSSION[1]

As discussed at the hearing, the Court focuses on the two federal antitrust claims.

### A.    Sherman Antitrust Act § 2 (State Bar and Tyler Technologies)[2]

Plaintiffs assert that the State Bar and Tyler Technologies violated § 2 of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq. See FAC ¶¶ 81-105.

Section 2 of the Sherman Act makes it an offense to monopolize, attempt to monopolize, or combine or conspire to monopolize any part of the

---

[1] The State Bar's unopposed request for judicial notice ("RJN") of three documents is granted. See Dkt. 39. Plaintiffs also filed a RJN and Supplemental RJN, see Dkts. 57, 70, which the State Bar moved to strike, see Dkt. 84. The Court declines to rule on those motions because the documents were not necessary in resolving the Motion to Dismiss. If Plaintiffs decide to amend, however, they should not request the Court take judicial notice of facts that are subject to reasonable dispute. See FRE 201.

[2] Because the Motions to Dismiss make similar arguments, the Court will exclusively refer to the State Bar's motion.

nation's interstate or foreign commerce. <u>See</u> 15 U.S.C. § 2. Lawsuits brought under § 2 fall into four broad categories: actual monopolization, attempted monopolization, joint monopolization, and incipient conspiracies to monopolize. <u>See</u> William Holmes and Melissa Mangiaracina, <u>Antitrust Law Handbook</u> § 3:2.

Plaintiffs do not specify what theory of liability they are pursuing. The FAC has fragments of all four, alleging that all Defendants "attempted to monopolize," FAC ¶ 84; the State Bar "has monopoly power," <u>id.</u> ¶ 86; and that the State Bar and Tyler Technologies conspired to join "in anticompetitive behavior," <u>id.</u> ¶ 96. Although this is cause for dismissal alone, the Court will focus on joint monopolization, the only category that the Opposition mentions. <u>See</u> Opp'n at 9-12. The elements to establish § 2 conspiracy to monopolize are: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." <u>Paladin Assocs., Inc v. Mont. Power Co.</u>, 328 F.3d 1145, 1158 (9th Cir. 2003).

## 1.   Immunity from Antitrust Liability

The State Bar argues that it is immune from antitrust liability. <u>See</u> Mot. at 30-32. The Supreme Court in <u>Parker v. Brown</u>, 317 U.S. 350-51 (1943) interpreted the antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity. "A nonsovereign actor controlled by active market participants," such as the State Bar, "enjoys <u>Parker</u> immunity only if it satisfies two requirements: first that the challenged restraint be one clearly articulated and affirmatively expressed as state policy, and second that the policy be actively supervised by the state." <u>North Carolina State Bd. Of Dental Exam'rs v. FTC</u>, 547 U.S. 494, 503-04 (2015) (citations omitted).

The State Bar contends that it is entitled to immunity because it administers the disciplinary process pursuant to state law, and its decisions are subject to final approval from the California Supreme Court. See Mot. at 31 (citing Cal. Bus. & Prof. Code §§ 6001-02). Plaintiffs respond that the "challenged restraints" were not directed by the California Supreme Court. Opp'n at 19.

What makes this issue challenging is it is not clear what "restraints" Plaintiffs are referring to. Typically, a plaintiff will challenge a specific state bar enactment. See, e.g., Hass v. Oregon State Bar, 883 F.2d 1453 (1989) (challenging Oregon State Bar resolution requiring all attorneys to purchase primary malpractice insurance from it); Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975) (challenging fee schedules enforced by the Virginia State Bar). Here, Plaintiffs do the opposite, alleging that the State Bar failed to comply with its own rules of procedure concerning confidentiality. See, e.g., FAC ¶¶ 14-15 (citing State Bar Rules of Procedure concerning confidentiality).

Liberally construed, however, Plaintiffs allege that the State Bar's entire attorney disciplinary system violates the Sherman Act. See id. ¶¶ 86-98. As the Court understands it, Plaintiffs' theory is that the State Bar's disciplinary system is anticompetitive because it disproportionally benefits large law firms and harms solo practitioners. See id.

Federal courts, however, have routinely rejected attempts to bring a Sherman Act cause of action against the disciplinary rules of a state bar or a state Supreme Court. See Bates v. State Bar of Arizona, 433 U.S. 350, 361 (1977) ("Although the State Bar plays a part in the enforcement of the rules, its role is completely defined by the court; the appellee acts as the agent of the court under its continuous supervision."); Foley v. Alabama State Bar, 648 F.2d 355, 359 (5th Cir. 1981) ("The disciplinary rules of the Alabama State Bar are effectively the rules of the Supreme Court of Alabama. Moreover, the Bar

is a component of the Alabama judiciary, subject to the supervision of the Alabama Supreme Court, and thus it acts as an agent of the state when it regulates attorneys. The Bar's activities, therefore, are within the <u>Parker v. Brown</u> exemption.") (internal citations omitted); <u>Otworth v. The Florida Bar</u>, 71 F.Supp.2d 1209, 1220 (M.D. Fla. 1999) ("As the mandate requiring membership in the Florida Bar cannot be divorced from the Florida Supreme Court's sovereign powers, the actions taken by the Florida Bar are exempt from antitrust liability.").

This case is not appreciably distinguishable from this long line of authority. The State Bar is a component of the California judiciary, subject to the supervision of the California Supreme Court. California Business & Professions Code § 6087 states: "Notwithstanding any other provision of law, the Supreme Court may by rule authorize the State Bar to take any action otherwise reserved to the Supreme Court in any matter arising under this chapter or initiated by the Supreme Court; provided, that any action by the State Bar shall be reviewable by the Supreme Court pursuant to such rules as the Supreme Court may prescribe." Section 6076 conditions the State Bar's formulation and enforcement of rules of professional conduct upon the approval of the Supreme Court. And the California Supreme Court has explicitly held that "the judicial power in disciplinary matters remains with this court, and was not delegated to the State Bar." <u>In re Attorney Discipline System</u>, 19 Cal. 4th 582, 600 (1998) (citation omitted). Indeed, "the State Bar is a <u>constitutional</u> entity subject to our expressly reserved power over admission and discipline. The State Bar Act did not delegate to the State Bar . . . our inherent judicial authority over the discipline of attorneys." <u>Id.</u> at 601.; <u>see also</u> <u>In re Rose</u>, 22 Cal. 4th 430, 439 (2000) ("The State Bar may make only recommendations to this court, which undertakes an independent determination whether the attorney should be disciplined as recommended.").

At the hearing, Plaintiffs compared this case to Goldfarb, 421 U.S. 773. There, the Supreme Court held that fee schedules enforced by the Virginia State Bar were not entitled to Parker immunity because neither the Virginia Supreme Court nor any Virginia statute required the fee schedule and its enforcement mechanism. See id. at 789-93. Here, by contrast, the State Bar's activity with respect to attorney discipline is defined by and at the behest of the California Supreme Court. See Bates v. State Bar of Az., 433 U.S. at 367 (holding that Parker immunity applied and distinguishing Goldfarb because the challenged disciplinary rule "is the affirmative command of the Arizona Supreme Court," the "ultimate body wielding the State's power over the practice of law.").

### 2. Specific Intent to Monopolize

The State Bar argues that Plaintiffs allege no facts demonstrating that it had the specific intent to monopolize a relevant market. See Mot. at 28-29. Plaintiffs point to their allegations that the State Bar "bought and installed Tyler Technologies Odyssey case management system for approximately $5 million in 2019," that Defendants "attempt[ed] to monopolize to the injury of the Attorney members plaintiffs and the class" and that "Defendant Tyler Technologies chose to act with the State Bar violating the rights of the plaintiffs and the class members." FAC ¶¶ 83-84, 94. The only fact alleged concerns the State Bar's purchase of the Odyssey Portal, which does not support a plausible inference the State Bar acted with the specific intent to monopolize. The remaining allegations are simply legal conclusions.

### 3. Antitrust Injury

The State Bar argues that Plaintiffs' claim fails for lack of a cognizable causal antitrust injury. See Mot. at 30. "[A]ntitrust injury consists of four elements: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type

the antitrust laws were intended to prevent." <u>Somers v. Apple, Inc.</u>, 729 F.3d
953, 963 (9th Cir. 2013) (citation omitted). The inquiry focuses on injury to
"competition not competitors." <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>,
429 U.S. 477, 488 (1977); <u>see also</u> <u>Paladin Assocs., Inc.</u>, 328 F.3d at 1158
("Where the defendant's conduct harms the plaintiff without adversely
affecting competition generally, there is no antitrust injury."). Plaintiffs
respond that the State Bar's failure to act was due to anticompetitive animus,
as the disclosure of confidential information benefited lawyers who did not
have disciplinary records. <u>See</u> Opp'n at 17. But Plaintiffs' allegation that the
entire disciplinary system is set up to benefit large law firms at the expense of
solo practitioners is entirely conclusory. Plaintiffs offer no facts in support,
only vague economic theories. <u>See, e.g.</u>, FAC ¶ 87 ("One theory why solo
practitioners are disciplined more than defense counsel of large firms is that
large corporations hire large firms to defend them and if there is dissatisfaction
in the legal representation, the large corporation merely takes their business
(and money) elsewhere.").

**B.**   **<u>Sherman Act § 3 (State Bar and Tyler Technologies)</u>**

Plaintiffs allege that the State Bar and Tyler Technologies violated § 3 of
the Sherman Act. <u>See</u> FAC ¶¶ 106-11. Section 3 provides:

> Every contract, combination in form of trust or otherwise, or
> conspiracy, in restraint of trade or commerce in any Territory of
> the United States or of the District of Columbia, or in restraint of
> trade or commerce between any such Territory and another, or
> between any such Territory or Territories and any State or States
> or the District of Columbia, or with foreign nations, or between
> the District of Columbia and any State or States or foreign nations,
> is engaged in any such combination or conspiracy, shall be
> deemed guilty of a misdemeanor, and, on conviction thereof, shall

be punished by fine not exceeding fifty thousand dollars, or by
imprisonment not exceeding one year, or by both said
punishments, in the discretion of the court.

15 U.S.C. § 3.

The State Bar correctly points out that the alleged violation in this case
took place in California, which is not a Territory of the United States or the
District of Columbia. See Mot. at 32. Plaintiffs argue that a "Sherman Act § 3
violation is just a Sherman Act § 1 violation that extends to all territories of the
United States including D.C." Opp'n at 14. That is true, but the underlying
point remains: America Samoa is an example of a "Territory of the United
States," California is not.

## IV.   CONCLUSION

IT IS ORDERED THAT the Sherman Act § 2 claim is dismissed with
leave to amend, whereas the § 3 claim is dismissed without leave to amend.

IT IS FURTHER ORDERED THAT Plaintiffs shall file an amended
complaint within twenty-one (21) days. Plaintiffs are given leave to add
additional factual allegations, re-plead the § 2 claim, and add a § 1 claim.
Otherwise, Plaintiffs shall not add new causes of action or parties. Defendants
may file a Supplemental Motion to Dismiss within fourteen (14) days
addressing the Sherman Act claims. Plaintiffs shall file any Supplemental
Opposition within fourteen (14) days. And Defendants shall file any
Supplemental Reply within seven (7) days. The Clerk of Court will reach out
to set a hearing date. When appropriate, the Court will issue further orders
regarding supplemental jurisdiction.

Date: September 16, 2022

DOUGLAS F. McCORMICK
United States Magistrate Judge