

1    UNITED STATES DISTRICT COURT
     CENTRAL DISTRICT OF CALIFORNIA
2    SOUTHERN DIVISION

3

4    JOHN ROE 1, ET AL.,          )
                                  )
5              Plaintiffs,        )
                                  )
6         vs.                     )   Case No.  8:22-CV-00983-DFM
                                  )
7    THE STATE BAR OF             )
     CALIFORNIA, ET AL.,          )
8                                 )   Santa Ana, CA
                                  )   September 15, 2022
9              Defendants.        )
     _____)

10

11

12

13

14                        HEARING

15   BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
           UNITED STATES MAGISTRATE JUDGE

16

17

18   APPEARANCES:              See Next Page

19   COURT REPORTER:           Recorded, AT&T

20   COURTROOM DEPUTY:         Nancy Boehme

21   TRANSCRIBER:              Dorothy Babykin
                               Courthouse Services
22                             1218 Valebrook Place
                               Glendora, California  91740
23                             (626) 963-0566

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2

3    FOR THE PLAINTIFF JOHN ROE I, ET AL.:

4    LAW OFFICES OF LENORE ALBERT
     BY:  LENORE ALBERT
5            ATTORNEY AT LAW
     1968 SOUTH COAST HIGHWAY
6    SUITE 3960
     LAGUNA BEACH, CALIFORNIA 92651
7

8    FOR DEFENDANT STATE BAR OF CALIFORNIA:

9
     COOLEY LLP
10   BY:  BARRETT ANDERSON
             ATTORNEY AT LAW
11   4401 EASTGATE MALL
     SAN DIEGO, CALIFORNIA
12
     COOLEY LLP
13   BY:  TIANA A. DEMAS
             ATTORNEY AT LAW
14   55 HUDSON YARDS
     10001-2157
15   NEW YORK, NEW YORK  10001
     (TELEPHONICALLY)
16
     COOLEY LLP
17   BY:  GREG MERCHANT
             ATTORNEY AT LAW
18   3175 HANOVER STREET
     PALO ALTO, CALIFORNIA  94304
19

20   FOR DEFENDANT TYLER TECHNOLOGIES, INC.:

21    K&L GATES LLP
      BY:  BETH W. PETRONIO
22            ATTORNEY AT LAW
      1717 MAIN STREET
23    SUITE 2800
      DALLAS, TEXAS  75201
24

25

1
APPEARANCES:  (CONTINUED)
2

3    FOR DEFENDANT RICK RANKIN:

4    JEFFER MANGELS BUTLER & MITCHELL LLP
     BY:  MICHAEL ALLEN GOLD
5         ATTORNEY AT LAW
     1900 AVENUE OF THE STARS
6    7TH FLOOR
     LOS ANGELES, CALIFORNIA  90067
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                    I N D E X

3       8:22-CV-00983--DFM                           SEPTEMBER 15, 2022

4       PROCEEDINGS:

5       DEFENDANT TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS;
        DEFENDANT RICK RANKIN'S MOTION TO DISMISS;
6       DEFENDANT THE STATE BAR OF CALIFORNIA'S MOTION TO DISMISS
        FIRST AMENDED COMPLAINT;
7       PLAINTIFFS' MOTION FOR ORDER FOR PROTECTIVE ORDER;
        DEFENDANTS' JOINT MOTION TO STRIKE PLAINTIFFS' REQUESTS FOR
8       JUDICIAL NOTICE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          SANTA ANA, CALIFORNIA; SEPTEMBER 15, 2022.

2          THE CLERK:  PLEASE BE SEATED AND COME TO ORDER.

3          THIS UNITED STATES DISTRICT COURT IS NOW IN SESSION.

4          THE HONORABLE DOUGLAS F. MC CORMICK, UNITED STATES

5   MAGISTRATE JUDGE, PRESIDING.

6          WE'RE ON THE RECORD ON CASE 8:22-CV-00983.

7          IT'S JOHN ROE 1, ET AL. VERSUS THE STATE BAR OF

8   CALIFORNIA, ET AL.

9          COUNSEL, YOUR APPEARANCES, PLEASE.

10          MS. ALBERT:  GOOD MORNING, YOUR HONOR

11          LENORE ALBERT ON BEHALF OF THE PLAINTIFFS.

12          MR. ANDERSON:  GOOD MORNING, YOUR HONOR.

13          BARRETT ANDERSON FROM COOLEY LLP ON BEHALF OF THE

14   STATE BAR.

15          MS. PETRONIO:  GOOD MORNING, YOUR HONOR.

16          BETH PETRONIO WITH K&L GATES ON BEHALF OF DEFENDANT

17   TYLER TECHNOLOGIES, INC.

18          MR. GOLD:  MICHAEL GOLD ON BEHALF OF DEFENDANT RICK

19   RANKIN.

20          MR. MERCHANT:  GREGORY MERCHANT ALSO WITH COOLEY

21   LLP ON BEHALF OF THE STATE BAR.

22          THE COURT:  ALL RIGHT.

23          AND COUNSEL ON THE PHONE, PLEASE.

24          MS. DEMAS:  GOOD MORNING, YOUR HONOR.

25          FROM COOLEY LLP REPRESENTING THE STATE BAR, TIANA

1    DEMAS.

2            THE COURT:  ALL RIGHT.  THANK YOU ALL, COUNSEL.

3            GO AHEAD AND HAVE A SEAT.

4            SO, BEFORE THE HEARING I THINK LAST WEEK WE RESOLVED

5    THE MOTION TO DISQUALIFY AND THE MOTION FOR PRELIMINARY

6    INJUNCTION.

7            I'D LIKE TO START THIS MORNING BY DISCUSSING THE

8    DEFENDANTS' MOTIONS TO DISMISS.

9            AND I THINK AS I START MY COMMENTS MAYBE IT WILL

10   BECOME APPARENT WHY I THINK WE SHOULD START THERE.

11           AS WE – AS WE WORKED ON THOSE AND LOOKED AT THE

12   VARIOUS CLAIMS AND THE ARGUMENTS, I BECAME INCREASINGLY

13   CONVINCED THAT THERE WERE GOING TO BE PROBLEMS WITH THE

14   TWO SHERMAN ACT CLAIMS.  AND I'LL EXPLAIN THOSE CONCERNS IN

15   SOME DETAIL IN JUST A MOMENT.

16           BUT AS I REACHED THAT CONCLUSION I STOPPED TO

17   CONSIDER THAT -- TO CONSIDER WHETHER THAT WAS GOING TO BE

18   SOME SORT OF TURNING POINT OR INFLECTION POINT IN THE CASE.

19   BECAUSE THE SHERMAN ACT CLAIMS ARE THE CLAIMS ON -- BASED ON

20   WHICH THE COURT – THE CASE WAS REMOVED TO THIS COURT FROM

21   STATE COURT.

22           AND IF THEY ARE DISMISSED, THEN, THERE IS NO  -- THERE

23   ARE NO FEDERAL CLAIMS REMAINING.

24           SO, I'VE STOPPED AT THAT POINT TO STOP AND THINK TO

25   MYSELF WHETHER I SHOULD CONSIDER WITHOUT THOSE CLAIMS

1   EITHER THE PLAINTIFFS WOULD SEEK TO REMAND OR THAT I WOULD

2   HAVE TO CONSIDER WHETHER I SHOULD EXERCISE SUPPLEMENTAL

3   JURISDICTION OF THE REMAINING STATE LAW CLAIMS.  AND THE

4   POSSIBILITY OF THAT OUTCOME HAS CAUSED ME TO -- TO STOP FOR A

5   MINUTE. BECAUSE IF THIS CASE IS, IN FACT, HEADED BACK TO STATE

6   COURT, THEN, I DON'T KNOW THAT IT'S APPROPRIATE OR PRUDENTIAL

7   FOR ME TO DECIDE WHETHER THOSE NON-FEDERAL CLAIMS  -- THOSE

8   STATE LAW CLAIMS SHOULD GO FORWARD.

9           I THINK THE TRIAL JUDGE  -- THE STATE – THE SUPERIOR

10   COURT JUDGE IF IT'S WHERE THE CASE IS GOING TO GO SHOULD DO

11   THAT.

12           AND THE SAME SHOULD GO WITH WHETHER  -- THE SAME

13   GOES AS TO WHETHER THE PLAINTIFFS SHOULD BE ABLE TO PROCEED

14   ANONYMOUSLY.

15           SO, LET ME STOP AND THEN GO BACK AND EXPAND ON MY

16   THOUGHTS ON THE SHERMAN ACT CLAIMS WHICH IS KIND OF THE

17   JUMPING OFF POINT AS TO WHERE I FIND MYSELF AS TO THE OTHER

18   CLAIMS.

19           AND LET ME START WITH SECTION 3.

20           AS I READ THE STATUTE, SECTION 3 EXTENDS THE

21   PROVISIONS OF SECTION 1 TO ACTIVITY IN THE U.S. TERRITORIES AND

22   DISTRICT OF COLUMBIA.

23           AS I READ THE STATUTE WE'RE HERE IN THE STATE OF

24   CALIFORNIA NOT A TERRITORY LIKE THE AMERICAN SAMOA OR

25   SOMETHING LIKE – OR PUERTO RICO.  SO, I THEREFORE -- I THINK THE

1   SECTION 3 CLAIMS ARE HOPELESS AS A MATTER OF LAW AND THEY

2   SHOULD BE DISMISSED WITHOUT PREJUDICE -- I'M SORRY, WITH

3   PREJUDICE WITHOUT LEAVE TO AMEND.

4     THAT LEAVES THE SECTION 2 CLAIM.  LET ME TELL YOU WHAT

5   I THINK ABOUT THAT.

6     I AGREE WITH DEFENDANTS THAT THE STATE BAR'S

7   DISCIPLINARY RULES ARE LIKELY IMMUNE FROM CHALLENGE UNDER

8   THE FEDERAL ANTITRUST LAWS UNDER THE STATE ACTION EXCEPTION

9   AS SET OUT IN *PARKER VERSUS BROWN* AND AS EXPLAINED BY THE

10  *CALIFORNIA SUPREME COURT IN CASES LIKE* IN RE ATTORNEY

11  *DISCIPLINE SYSTEM* AND *IN RE ROSE.*

12    *THE STATE BAR IS A COMPONENT OF THE CALIFORNIA*

13  *JUDICIARY SUBJECT TO THE SUPERVISION OF THE CALIFORNIA*

14  *SUPREME COURT.  AND THUS, THE TWO REQUIREMENTS FOR PARKER*

15  *IMMUNITY WOULD BE SATISFIED.*

16    I ALSO AGREE WITH THE DEFENDANTS THAT THE F -- THAT

17  THE FIRST AMENDED COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS

18  TO DEMONSTRATE THAT THE STATE BAR HAS A SPECIFIC INTENT TO

19  MONOPOLIZE A RELEVANT MARKET.  THE ONLY FACTS IN THE FAC THAT

20  ARE ALLEGED CONCERN THE STATE BAR'S PURCHASE OF THE

21  ODYSSEY PORTAL, WHICH TO ME DOES NOT SUPPORT A PLAUSIBLE

22  INFERENCE THAT THE STATE BAR ACTED WITH A SPECIFIC INTENT TO

23  MONOPOLIZE.  AND THE REMAINING ALLEGATIONS ARE SIMPLY LEGAL

24  CONCLUSIONS.

25    FINALLY, I ALSO AGREE WITH DEFENDANTS THE SHERMAN 2

1    CLAIMS -- THE SHERMAN 2 CLAIM FAILS FOR LACK OF A COGNIZABLE

2    ANTITRUST INJURY.

3            ANTITRUST INJURY REQUIRES FOUR ELEMENTS --

4    UNLAWFUL CONDUCT, CAUSING AN INJURY TO THE PLAINTIFF THAT

5    FLOWS FROM WHAT MAKES THE CONDUCT UNLAWFUL AND THAT THIS

6    IS THE TYPE OF INJURY THAT ANTILAW -- ANTITRUST LAWS WERE

7    INTENDED TO PREVENT.

8            HERE THE PLAINTIFFS' ALLEGATION IS THAT THE MERE -- THE

9    ENTIRE DISCIPLINARY SYSTEM IS SET UP TO BENEFIT LARGE LAW FIRMS

10    AT THE EXPENSE OF SOLO PRACTITIONERS.  AND THAT ALLEGATION IS

11    ENTIRELY CONCLUSORY.  THERE ARE NO FACTS IN SUPPORT ONLY

12    VAGUE ECONOMIC THEORIES.

13            THEREFORE IT WOULD BE MY CONCLUSION THAT THE

14    PLAINTIFFS HAVE FAILED TO ALLEGE A PLAUSIBLE ANTITRUST INJURY.

15            IN SUM, I THINK THE EFFORT TO TURN THIS DATA BREACHED

16    CASE INTO AN ANTITRUST CASE SEEMS TO ME TO BE AN OVERREACH.

17            THAT SAID, I'M NOT A HUNDRED PERCENT CERTAIN THAT

18    AMENDMENT OF THOSE CLAIMS WOULD BE FUTILE.  SO, I'D BE INCLINED

19    TO OFFER IF PLAINTIFFS' COUNSEL ASKS FOR AN OPPORTUNITY TO

20    AMEND THOSE CLAIMS.

21            SO, LET ME ASK BOTH COUNSEL AT THIS POINT TO COMMENT

22    ON WHAT I'VE SAID THUS FAR.  BECAUSE I KNOW I'VE SAID A LOT.

23            STARTING WITH MS. ALBERT, YOU'RE -- YOU'RE OF COURSE

24    WELCOME TO ADDRESS MY TENTATIVE THOUGHTS ON THE SHERMAN

25    ACT CLAIMS AND TELL ME WHY I'M WRONG.

1     I'M ALSO INTERESTED IN WHETHER YOU'D LIKE AN

2     OPPORTUNITY TO AMEND.

3          AND I'D LIKE YOUR TENTATIVE THOUGHTS ON WHAT SHOULD

4     HAPPEN TO THIS CASE SHOULD THE SHERMAN ACT CLAIMS BE

5     DISMISSED IF THAT'S WHAT ENDS UP HAPPENING.

6          MR. ANDERSON, MR. GOLD, MS. PETRONIO, ANY OTHER

7     DEFENSE COUNSEL, I'D LIKE AT LEAST YOUR TENTATIVE THOUGHTS.

8          WELL, I DON'T IMAGINE YOU'LL QUARREL WITH MY COMMENTS

9     ABOUT THE SHERMAN ACT CLAIMS, BUT I'LL WELCOME ANY RESPONSE

10    TO PLAINTIFFS' COUNSEL'S COMMENTS IN A MINUTE AND ALSO ANY

11    THOUGHTS OF YOURS ABOUT WHAT SHOULD HAPPEN IF THE SHERMAN

12    ACT CLAIMS AREN'T ANY LONGER PART OF THE CASE.

13         MS. ALBERT, WITH THAT, LET ME TURN IT OVER TO YOU.

14         MS. ALBERT:  THANK YOU, YOUR HONOR.

15         THE COURT:  AND YOU'RE WELCOME TO SIT THERE OR COME

16    OVER TO THE LECTERN, WHEREVER YOU FEEL MOST COMFORTABLE.

17         MS. ALBERT:  AS TO THE SECTION 3 CLAIM, I BELIEVE THAT

18    ALTHOUGH YOUR HONOR IS CORRECT, ALTHOUGH IT'S LABELED

19    SECTION 3, I BELIEVE THAT IT IS NOT FUTILE BECAUSE IT COULD BE A

20    SECTION 1 CLAIM.  AND I BELIEVE THAT WE ARGUED THAT IN OUR

21    OPPOSITION.

22         BUT I'M GOING TO MOVE BACK TO THE SECTION 2 CLAIM.

23         AND YOU ARE CORRECT THAT PART OF THE CLAIM IS

24    CONCLUSORY SAYING THAT THE DISCIPLINARY SYSTEM THE WAY IT IS

25    SET UP IS SET UP WHERE LARGE FIRMS AREN'T NECESSARILY PART OF

1    THE SYSTEM. BECAUSE IF YOU'RE RETAINED BY AN AGENCY OR A

2    LARGE CORPORATION THE WAY THAT THEY VOTE WITH ATTORNEYS

3    WHETHER THEY LIKE THE CONDUCT OR NOT IS BY MOVING OVER THEIR

4    RETAINER FEE BASICALLY TO ANOTHER FIRM.

5          WHEREAS WHEN WE HAVE SMALL PRACTITIONERS THAT ARE

6    REPRESENTING THE PEOPLE, THE ONLY POWER THE PEOPLE ACTUALLY

7    HAVE IS TO FILE A STATE BAR COMPLAINT, WHETHER IT'S LEGITIMATE

8    OR NOT.

9          OBVIOUSLY, WE SEE BY THE FACTS IN THIS CASE THAT ARE

10   BASICALLY INDISPUTABLE ONLY 3 PERCENT OF ANY KIND OF CLAIM

11   ACTUALLY BECOMES PUBLIC.

12          HOWEVER, IN THIS CASE AS WE HAVE SEEN, THERE WAS NO

13   NOTICE TO THIS CLASS.  IN THIS CLASS WERE PEOPLE WHO EITHER

14   FILED COMPLAINTS OR PEOPLE WHO WERE UNDER INVESTIGATION BY

15   THE OFFICE OF CHIEF TRIAL COUNSEL, WHICH IS UNDER THIS LARGE

16   UMBRELLA OF DISCIPLINARY MATTERS, WHICH INCLUDES MORE THAN

17   WHAT WE TRADITIONALLY THINK OF IN THAT REGARD.

18          BUT I DO BELIEVE THAT WE CAN SEE BY THEIR CONDUCT IN

19   NOT GIVING NOTICE, NOT TAKING IT SERIOUSLY OF THE POTENTIAL

20   HARM TO THIS PARTICULAR CLASS, THAT THE STATE BAR HAS

21   BASICALLY WENT ALONG WITH THIS KIND OF TW0-CLASS SYSTEM.

22          AND IT IS AN ANTICOMPETITIVE INJURY THAT WE ARE TALKING

23   ABOUT HERE.

24          FOR EXAMPLE, IF THE BREACH WAS SOLELY THOSE

25   ATTORNEYS WHO THEN CAME ON  -- WENT ON TO BE JUDGES,  I AM

1    VERY COMFORTABLE IN ARGUING I BELIEVE THAT THE FACTS WOULD

2    SHOW THAT THE STATE BAR WOULD IMMEDIATELY GIVE NOTICE AND

3    VERY CLEAR NOTICE TO THOSE SITTING ON THE BENCH THAT THERE

4    WAS A BREACH.

5          HOWEVER, THE PEOPLE WHO WERE INVESTIGATED, EVEN

6    THOUGH THESE WERE CONFIDENTIAL INVESTIGATIONS MEANING THAT

7    THE STATE BAR DIDN'T EVEN FIND ENOUGH MERIT TO FILE THESE AS

8    PUBLIC CHARGES, THEY WERE OF ANOTHER CLASS WHERE THE STATE

9    BAR DECIDED TO SAY WE DON'T NEED TO BOTHER WITH THEM.  WE

10   DON'T NEED TO GIVE THEM NOTICE.

11         AND THE STATE BAR IS RUN BY LAWYERS.  IT IS RUN BY

12   OTHER ATTORNEYS, ATTORNEYS WHO COME UP THROUGH THE

13   POLITICAL SYSTEM.  THEY ARE NOT OUR PEERS.  THAT CHANGED IN

14   1989 OR 1990.  IT CHANGED DECADES AGO WHERE IT USED TO BE A

15   PEER-TO-PEER SYSTEM.   IT IS NO LONGER THAT ANYMORE.

16         AND THERE ARE CLEAR STATUTES.  IT ISN'T -- IT ISN'T LIKE IT

17   WAS QUESTIONABLE OR OBJECTIVELY REASONABLE TO THINK MAYBE I

18   DON'T HAVE TO GIVE NOTICE.  MAYBE I DON'T HAVE TO GIVE THESE

19   PEOPLE A FAIR CHANCE.

20         THERE ARE MANY STATUTES THAT SAID THAT YOU MUST GIVE

21   NOTICE.  YOU ARE AN AGENCY.  YOU ARE NOT AN AGENCY TO THE

22   CONSTITUTION.

23         ATTORNEYS PRACTICE LAW.  JUDGES WHEN THEY BECOME

24   JUDGES DON'T HAVE THE RIGHT TO PRACTICE LAW ANYMORE.  JUDGES

25   GET IMPEACHED.  ATTORNEYS GET DISBARRED.  THEY ARE

1    COMPLETELY TWO DIFFERENT SYSTEMS.

2    AND -- SO, I BELIEVE THAT ALTHOUGH THE FACTS ALLEGED IN

3    APRIL -- WHICH WAS NOT BASED ON A PRIOR MOTION TO DISMISS BUT IT

4    WAS TO BRING IN OTHER PLAINTIFFS AND TO CHANGE A FEW THINGS --

5    CLEARLY DESERVE A CHANCE NOW THAT WE SEE WHAT KIND OF

6    NOTICE WENT OUT, THAT THEY DIDN'T EVEN START GOING OUT UNTIL

7    MAY 23RD AND WENT OUT TO JULY 11TH.

8    WE HAVE OVER 900 DOCUMENTS NOW SHOWING LITERALLY

9    HOW THE STATE BAR WAS NOT WORKING TO HELP THE PEOPLE OF THE

10    BREACH OR TO GIVE THEM NOTICE.  BUT THEY WERE WORKING WITH

11    TYLER TECHNOLOGIES WHO IS BASICALLY THE LARGEST GAME IN THE

12    UNITED STATES FOR OTHER STATE AGENCIES TO TRY TO CHANGE THE

13    MESSAGE.  THEY WEREN'T REALLY TRYING TO PROTECT ANYBODY OR

14    TO PREVENT ANY HARM.

15    AND THE WHOLE POINT OF THE ANTITRUST SYSTEM IS KIND

16    OF A CONSUMER PROTECTION STATUTE BECAUSE IT'S THERE TO HAVE

17    COMPETITIVE CONDUCT SO THAT CONSUMERS HAVE THEIR CHOICE

18    AND CONSUMERS AREN'T FORCED INTO ONE HOLE.

19    THAT INCLUDES THE PUBLIC.  THAT INCLUDES THE PEOPLE

20    WHO RELY ON ATTORNEYS TO TAKE THEIR SMALL LITTLE DUI CASE,

21    YOU KNOW, TO TAKE THEIR SMALL LITTLE CIVIL CLAIM TO HELP THEM

22    THROUGH A FAMILY DISSOLUTION.

23    AND THESE ARE THE ONLY CLASS OF ATTORNEYS THAT WERE

24    AFFECTED BY THIS BREACH.  AND, OF COURSE, LAW STUDENTS WERE

25    AND PEOPLE WHO HAD MEDICAL PROBLEMS WERE AND PEOPLE WHO

1    MIGHT HAVE HAD SOME MENTAL HEALTH ISSUES OR SUBSTANCES --

2    SUBSTANCE ABUSE PROBLEMS.

3           SO, TO SAY THAT THIS WASN'T ANTICOMPETITIVE, IT DEFIES

4    LOGIC.  I THINK THAT WE COULD AMEND ESPECIALLY NOW HAVING

5    THOSE OTHER 900 DOCUMENTS, WHICH WE DIDN'T HAVE BEFORE, TO

6    CLEARLY SHOW THIS COURT THAT THERE WAS ANTICOMPETITIVE

7    BEHAVIOR GOING ON HERE.

8           AND I CAN ARGUE THE LAW IF YOU WANT.  AND I CAN

9    CONNECT UP THE LEGAL, BUT I THINK THAT MY BRIEF ACTUALLY GIVES

10    THIS COURT WHEN YOU TALK ABOUT STATE ACTION, YOU KNOW, WE

11    HAVE OTHER CASES THAT SHOW EVEN IN -- IT'S USUALLY PRICE FIXING,

12    RIGHT, BUT WE DO SHOW THAT THE U.S. SUPREME COURT SOMETIMES

13    SAYS EVEN WITH STATE BARS THEY ARE TRADE AND PROFESSION.  BUT

14    THEY STILL MUST OBEY THE ANTITRUST LAWS JUST LIKE ANYONE ELSE.

15           AND TYLER TECHNOLOGIES BY FAR IS THE LARGEST.  THIS

16    CLASS ACTION IS NARROW.  IT'S ONLY ON THE STATE BAR.

17           BUT WHAT HAPPENED HERE BY LEAVING THE DOOR OPEN,

18    THEY DIDN'T EVEN PUT A LOCK ON THE DOOR TO ALL THESE FILES.

19    THAT HAPPENED TO DIFFERENT COURTS ALL THROUGHOUT THE

20    UNITED STATES.  IT WASN'T LIMITED TO THE STATE BAR.

21           WE TRIED TO BE VERY TIGHT WITH OUR PLEADING HERE SO

22    THAT WE COULD FOCUS ON THE HARM OF THIS PARTICULAR CLASS TO

23    THIS BREACH.

24           THANK YOU, YOUR HONOR.

25           THE COURT:  ALL RIGHT.

1    NO REACTION OR COMMENTS ABOUT WHAT MIGHT HAPPEN

2    TO THE CASE IF THE SHERMAN ACT CLAIMS ARE DISMISSED?

3    MS. ALBERT:  IF THE SHERMAN ACT CLAIMS ARE DISMISSED,

4    PLAINTIFFS WOULD LIKE IT TO BE REMANDED BACK TO STATE COURT,

5    YOUR HONOR.

6    THE COURT:  ALL RIGHT.

7    DEFENSE COUNSEL, I DON'T WANT YOU GUYS TO KNOCK

8    EACH OTHER OVER.

9    BUT, MR. ANDERSON, YOU'RE ALREADY AT THE TABLE  --

10    (LAUGHTER.)

11    THE COURT:  YOU LET THEM GET TO YOU LIKE THAT.  OKAY.

12    (LAUGHTER.)

13    MR. ANDERSON:  APOLOGIZE, YOUR HONOR.

14    WE  --

15    MS. PETRONIO:  -- AUTHORITY TO SPEAK FIRST, YOUR HONOR.

16    THE COURT:  OKAY.

17    MR. ANDERSON:  YEAH, WE AGREED I'D GO FIRST.  BUT

18    APOLOGIES FOR HOW QUICKLY I SPRUNG UP THERE.

19    GOOD MORNING.

20    I REPRESENT THE STATE BAR AS YOU KNOW.

21    I WANTED TO ADDRESS A FEW OF THE POINTS RAISED BY

22    PLAINTIFF'S COUNSEL JUST A MOMENT AGO.

23    I'LL SAY AT THE BEGINNING THAT THE STATE BAR AGREES

24    WITH THE COURT'S INCLINATION HERE TO DISMISS THE SECTION 3

25    CLAIM BECAUSE THE ACTIVITY ALLEGED HERE OCCURRED IN

1   CALIFORNIA AND NOT A TERRITORY.

2          THE STATE BAR ALSO AGREES WITH THE COURT'S RULING

3   THAT IT IS IMMUNE FROM ANTITRUST LIABILITY IN THIS PARTICULAR

4   CASE.

5          I DID NOT HEAR ANY SPECIFIC ARGUMENTS FROM PLAINTIFFS'

6   COUNSEL ABOUT IMMUNITY OR WHY THE COURT'S RULING ON THAT

7   MIGHT BE INCORRECT.  SO, I'LL SIMPLY SAY THAT THE TWO ELEMENTS

8   HERE ABOUT WHETHER IMMUNITY APPLIES HAVE BEEN SATISFIED.  AND

9   IT SHOULD APPLY.  AND IN THAT CASE AMENDMENT AS TO THE STATE

10  BAR WOULD BE FUTILE.  AND THAT CLAIM SHOULD BE DISMISSED WITH

11  PREJUDICE.

12         GENERALLY, WITH RESPECT TO THE ANTITRUST CLAIM ON

13  THE MERITS, I WOULD POINT OUT HERE JUST A FEW THINGS THAT

14  PLAINTIFF'S COUNSEL SAID THAT I WANT TO COMMENT ON.

15         THE FIRST ONE IS SHE STARTED WITH THE COMMENT THAT

16  THERE WAS NO NOTICE TO THE CLASS BUT LATER ON ADMITTED THAT

17  THERE HAS, IN FACT, BEEN NOTICE LETTERS SENT TO THE CLASS.

18         AND I'D ALSO POINT OUT THAT IMMEDIATELY AFTER THE --

19  THE INCIDENT WAS DISCOVERED THE STATE BAR WAS ISSUING PRESS

20  RELEASES WAS BEING FULLY TRANSPARENT -- WAS ISSUING

21  FREQUENTLY ASKED QUESTIONS TO KEEP THE PUBLIC UPDATED.

22         AND, IN FACT, THAT'S THE VERY THING THAT INFORMED THE

23  PLAINTIFFS HERE ABOUT THIS INCIDENT AND ALLOWED THEM TO THEN

24  BRING THIS LAWSUIT WITHIN SIX WEEKS OF THAT INCIDENT.

25         SO, NOTICE WAS GIVEN.  THE PLAINTIFFS WERE WELL AWARE

1    OF THE SITUATION AS IT DEVELOPED.  AND ANY IDEA THAT THERE WAS

2    NO NOTICE SHOULD BE DISCOUNTED AS CONTRARY TO THE FACTS

3    ALLEGED IN THAT COMPLAINT.

4            SO, I'LL MOVE ON THEN TO SAY THAT WHAT COUNSEL HAS

5    SAID IS THAT AMENDMENT OF THE SECTION 2 CLAIM COULD

6    POTENTIALLY SAVE IT.

7            BUT THE ONLY ARGUMENT I HEARD IN THAT PARTICULAR

8    AREA IS THAT SOME NEW DOCUMENTS MIGHT EXIST THAT THE

9    PLAINTIFFS DIDN'T POSSESS PRIOR TO APRIL 13TH WHEN THE FIRST

10   AMENDMENT COMPLAINT WAS FILED THAT MIGHT ALLOW PLAINTIFFS TO

11   ALLEGE SOME MORE DETAIL THEY CLAIM WITH RESPECT TO THE

12   INTENT OF THE STATE BAR – NOW -- OR  -- OR OTHER DEFENDANTS

13   HERE.

14           NOW, YOU KNOW, I THINK OUR POSITION ON THE DEFENSE

15   SIDE IS THAT THAT'S UNLIKELY.  WE DON'T BELIEVE THAT'S THE CASE.

16           BUT MOST IMPORTANTLY WITH RESPECT TO THAT, YOUR

17   HONOR, IS THAT NONE OF THOSE DOCUMENTS WOULD HAVE ANY

18   BEARING ON THE COURT'S RULING ABOUT WHETHER OR NOT THERE'S A

19   COGNIZABLE ANTITRUST INJURY IN THIS CASE.  THAT IS SOMETHING

20   THAT WOULD HAVE BEEN WELL AWARE -- THE PLAINTIFFS WOULD HAVE

21   BEEN WELL AWARE OF PRIOR TO APRIL 13TH IF THERE ACTUALLY WAS

22   SOME SORT OF COGNIZABLE INJURY TO THE ENTIRE MARKET.  AND

23   MORE DOCUMENTS ARE NOT GOING TO SHED ADDITIONAL LIGHT ON

24   WHETHER THAT INJURY EXISTS.

25           SO, IN THAT SENSE AMENDMENT WOULD BE FUTILE.  AND WE

1     WOULD ASK THAT THE SECTION 2 CLAIM BE DISMISSED WITH

2     PREJUDICE.

3            NOW, GIVEN OUR POSITION  -- THE STATE BAR'S POSITION ON

4     THOSE TWO CLAIMS, I'LL ADDRESS LASTLY THE COURT'S QUESTION

5     REGARDING WHETHER YOU SHOULD CONTINUE ON TO ADDRESS THE

6     OTHER CLAIMS.

7            I THINK OUR -- THE STATE BAR'S POSITION  -- AND I'LL LET

8     DEFENSE COUNSEL SPEAK FOR THEMSELVES FOR TYLER AND FOR

9     RICK RANKIN  -- BUT THE CLAIMS HERE ARISE FROM THE SAME CORE

10    SET OF OPERATIVE FACTS.

11           AS YOUR HONOR RECOGNIZED, THE FACTS THAT PLAINTIFFS

12    BASE THEIR ANTITRUST CLAIMS ON ALLEGE SOMETHING RELATED TO A

13    DATA BREACH SORT OF CLAIM.  THOSE ARE THE SAME ALLEGED FACTS.

14    AND MANY OF THEM ARE CONCLUSORY AND NOT WELL PLED AND

15    DON'T -- DON'T SATISFY THE CLAIMS AS THE DEFENSE HAS ARGUED IN

16    OUR BRIEFING.  BUT THOSE SAME FACTS SUPPORT THESE OTHER

17    CLAIMS.

18           SO, BECAUSE THEY ARISE FROM THAT SAME CORE OF

19    OPERATIVE FACT, WE THINK SUPPLEMENTAL JURISDICTION IS ENTIRELY

20    APPROPRIATE AND INDEED EFFICIENT FOR THE COURT TO ADDRESS

21    THOSE CLAIMS TO DISMISS THEM ALTOGETHER IN ONE COMPLAINT AND

22    TO ADDRESS ALL OF THE CLAIMS IN THAT SENSE.

23           THE COURT:  SO, LET ME TELL YOU MY CONCERN ABOUT THAT

24    --

25           MR. ANDERSON:  YEAH.

1          THE COURT:   -- WHICH IS THERE MIGHT BE SOME CLAIMS IN

2     THOSE OTHER CLAIMS THAT I WOULD FEEL LESS COMFORTABLE

3     DISMISSING AT THIS EARLY STAGE.

4          AND IF THAT'S THE CASE -- OBVIOUSLY, THIS CASE HAS BEEN

5     WITH ME.  IT'S BEEN IN THIS COURT FOR A VERY SHORT TIME.  IT'S BEEN

6     WITH ME FOR EVEN A SHORTER TIME.  IT -- IT SEEMS TO ME TO BE THE

7     KIND OF MATTER THAT IS A -- IT'S A -- IT WOULD -- WITHOUT THE

8     SHERMAN ACT CLAIMS IT WOULD INVOLVE STRICTLY STATE LAW

9     CLAIMS.

10          MS. ALBERT'S CLASS OF POTENTIAL DEFENDANTS IS -- I'LL

11     SAY LARGELY CALIFORNIA RESIDENTS.  AND THERE ARE MATTERS OF

12     STATE LAW FOR THINGS THAT HAPPEN WITHIN THE STATE OF

13     CALIFORNIA.

14          MY COLLEAGUES OVER IN THE SUPERIOR COURT WOULD BE

15     HAPPY TO HAVE THAT KIND OF LITIGATION.  AND THAT'S THE KIND OF

16     LITIGATION THAT I THINK WOULD BE -- WHERE THE PARTIES MIGHT BE

17     WELL SERVED TO BE OVER THERE RATHER THAN OVER HERE.

18          AND I GUESS I DON'T KNOW WHAT -- YOU KNOW, ME WADING

19     INTO WHETHER THE IPA CLAIM OR THE CTCA THIS OR THAT, YOU KNOW,

20     ALL THESE ISSUES OF CALIFORNIA LAW, I DON'T KNOW IF ME WADING

21     INTO THAT MURK AT THIS STAGE WOULD BE HELPFUL TO ANYONE.

22          FOR PURPOSES OF JUST EFFICIENCY AND GETTING YOU ALL

23     WHERE YOU'RE ULTIMATELY GOING TO END UP BEING, IF WE'RE GOING

24     TO NOT HAVE THE SHERMAN ACT CLAIMS I'D LIKE TO FIND THAT OUT AS

25     QUICKLY AS POSSIBLE.  AND THEN MAKE A FINAL DECISION ON

1    WHETHER SUPPLEMENTAL JURISDICTION IS APPROPRIATE OR NOT.

2        AND IF NOT, THEN -- NOT TO SOUND LIKE PEJORATIVE BUT

3    GET YOU OUT OF HERE AND GET YOU OVER TO WHERE FOLKS IN --

4    ACROSS THE PLAZA HERE.

5        REACTION TO THAT.  AND THEN I'LL LET YOU TURN THINGS

6    OVER TO YOUR CO-COUNSEL.

7        MR. ANDERSON:  YES, YOUR HONOR.

8        I THINK -- YOU KNOW, THE POSITION I HAD GIVEN YOU RIGHT

9    NOW IS OBVIOUSLY ONE THAT WE HAVEN'T FULLY CONSIDERED.  WE

10   HAVEN'T FULLY LOOKED AT ALL OF IT.  AND, SO, IF YOUR HONOR IS

11   INCLINED TO GRANT THE PLAINTIFFS A CHANCE TO AMEND, ALTHOUGH,

12   YOU KNOW, WE BELIEVE THAT IT WOULD BE FUTILE TO DO SO, THE

13   PARTIES -- THE DEFENSE WOULD BE HAPPY TO SUBMIT SUPPLEMENTAL

14   BRIEFING ON WHETHER OR NOT SUPPLEMENTAL JURISDICTION IS

15   APPROPRIATE HERE.

16       THE COURT:  OKAY.

17       ALL RIGHT.  LET ME ASK YOUR COUNSEL -- YOUR

18   CO-COUNSEL TO COMMENT.

19       AND MS. PETRONIO, YOU'RE CLOSEST TO -- YOU APPEAR TO

20   BE SITTING IN ORDER SO THAT'S GREAT.

21       MS. PETRONIO:  THANK YOU, YOUR HONOR.

22       LET ME JUST CONCUR WITH EVERYTHING THAT

23   MR. ANDERSON HAS SAID ON BEHALF OF THE STATE BAR.

24       WE AGREE OBVIOUSLY WITH YOUR HONOR'S STATEMENTS

25   ABOUT THE INVALIDITY OF THE ANTITRUST CLAIMS.  I'M GOING TO

1    FOCUS JUST ON A COUPLE OF THINGS THAT I THINK ARE SPECIFIC TO

2    TYLER AND THAT I THINK MAKE IT CLEAR THAT LEAVE TO AMEND

3    WOULD BE FUTILE WITH RESPECT TO TYLER.

4            OBVIOUSLY, YOUR HONOR IS AWARE FROM THE PLEADINGS

5    TYLER TECHNOLOGIES SOLD AN ODYSSEY SYSTEM TO THE STATE BAR

6    OF CALIFORNIA.

7            WHAT I HEAR AS THE FACTUAL BASIS FOR THE ANTITRUST

8    CLAIM ARE REALLY TWO SORT OF AMORPHOUS FACTUAL THINGS.  ONE

9    IS A COMPLAINT ABOUT HOW THE STATE BAR DECIDES WHO AND HOW

10   THEY'RE GOING TO DISCIPLINE PEOPLE, AND THAT THAT'S AN

11   ANTICOMPETITIVE ACT DESIGNED TO ASSIST LARGE FIRMS VERSUS

12   SOLO PRACTITIONERS.

13           TYLER HAS NOTHING WHATSOEVER TO DO WITH THE STATE

14   BAR'S DISCIPLINARY PROCEDURE.  THEY MERELY PROVIDE A RECORDS

15   MANAGEMENT SYSTEM TO THE STATE BAR.

16           AND WITH RESPECT TO THE ISSUES ABOUT NOTICE THAT

17   MS. ALBERT REFERENCED, OBVIOUSLY NOTICE WAS GIVEN HERE.  IT'S

18   INCORRECT TO SAY THAT THERE WAS NO NOTICE GIVEN.

19           BUT TYLER, AGAIN, IS NOT INVOLVED IN NOTICE.  TYLER IS A

20   SOFTWARE COMPANY THAT PROVIDED A RECORD MANAGEMENT

21   SYSTEM.  TYLER DOESN'T HAVE THE ADDRESSES OF THE PEOPLE TO

22   GIVE NOTICE TO, WASN'T INVOLVED IN THAT PROCESS, WAS

23   SUPPORTIVE OF THAT PROCESS WITH THE STATE BAR BUT, YOU KNOW,

24   WASN'T NECESSARILY INVOLVED.

25           SO, I DON'T THINK BASED ON THE SORT OF AMORPHOUS

1    FACTS THAT MS. ALBERT IS TALKING ABOUT THAT SHE BELIEVES SHE

2    CAN PUT IN AN AMENDMENT THAT THERE'S ANY WAY TO STATE A CLAIM

3    AGAINST TYLER TECHNOLOGIES FOR ANTITRUST. I DON'T THINK

4    THERE'S A WAY FOR HER TO STATE A CLAIM FOR ANTITRUST AGAINST

5    ANY OF THE DEFENDANTS HERE.

6            AND I DON'T THINK YOU HEARD ANY SPECIFIC RESPONSE TO

7    THE ACTUAL LEGAL ISSUES, INCLUDING THE IMMUNITY ISSUE YOU

8    RAISED AND INCLUDING THE ANTITRUST DAMAGES ISSUES YOU RAISED.

9    SO, I THINK IT WOULD BE FUTILE.

10           I WOULD SAY WITH RESPECT TO THE ISSUE OF REMAND. IF

11   YOUR HONOR IS INCLINED FOR -- IS INCLINED -- AND I WOULD CONCUR

12   WITH MR. ANDERSON. IF YOU'RE AT ALL INCLINED TO REMAND – NOT

13   PROVIDE LEAVE ON THE ANTITRUST CLAIMS AND THEN REMAND, I THINK

14   IT WOULD BE OUR POSITION THAT WE SHOULD BE ABLE TO SUBMIT

15   SOME ADDITIONAL BRIEFING ON THE DISCRETIONARY SUPPLEMENTAL

16   JURISDICTION ISSUE.

17           IF YOU DO NOT ALLOW HER LEAVE TO AMEND THE ANTITRUST

18   CLAIMS -- I'M SORRY, IF YOU DO ALLOW HER TO -- LEAVE TO AMEND

19   THE ANTITRUST CLAIMS I WOULD JUST SAY I THINK THERE IS

20   INEFFICIENCY BRED INTO THAT PROCESS. I UNDERSTAND THE COURT

21   HAS ITS --

22           THE COURT: I WANT TO TALK ABOUT THAT IF WE'RE GOING TO

23   GO THAT WAY. AND HOW TO DO THAT IN A WAY THAT DOES NOT

24   CREATE SOME OF THOSE INEFFICIENCIES. BECAUSE I DO NOT WANT

25   THE PARTIES TO SPIN THEIR WHEELS DOING A BUNCH OF STUFF. THAT

1  WOULD NOT BE HELPFUL TO ME IN TERMS OF ADVANCING THE BALL ON

2  THAT.

3          IF WE'RE GOING TO AMEND, I WILL DISCUSS WITH MS. ALBERT

4  THAT THEN THE AMENDMENT SHOULD BE LIMITED TO THE SHERMAN

5  ACT CLAIMS.

6          AND THAT, YOU KNOW, IF THE CASE IS GOING TO PROCEED

7  HERE IN SOME WAY, SHAPE OR FASHION, WE'LL FIGURE OUT SOME WAY

8  TO GET YOU A RULING ON THE MOTIONS TO DISMISS THAT YOU'VE

9  BROUGHT AS TO THE STATE LAW CLAIMS WITHOUT REQUIRING YOU TO

10  ENTIRELY BRIEF THOSE AGAIN FROM SCRATCH.

11          IF THERE ARE OTHER INEFFICIENCIES THAT YOU'RE

12  CONCERNED ABOUT, TELL ME ABOUT THOSE BECAUSE I WANT TO MAKE

13  SURE THAT WE HAVE A PROCESS FOR THAT.

14          MS. PETRONIO:  NO, YOUR HONOR.  YOU'VE HIT ON WHAT

15  CONCERNS ME IS THAT I THINK THERE ARE SOME OTHER ASPECTS OF

16  THE MOTIONS TO DISMISS THAT CLEARLY ON THEIR FACE SHOULD BE

17  GRANTED AND MIGHT LEAD TO ANOTHER LEAVE TO AMEND.

18          SO, WHAT I'M REALLY TRYING TO AVOID IS SHE GETS LEAVE

19  TO AMEND.  WE FILE ANOTHER MOTION TO DISMISS.  THEN, WE GO TO

20  STATE COURT AND --

21          THE COURT:  I HAVE SOME OF THOSE CONCERNS TOO.  AT

22  THE SAME TIME I, YOU KNOW -- I'LL CONFESS TO YOU.  MAYBE YOU

23  DON'T -- MAYBE YOU DO OR DON'T KNOW ABOUT ME.  I DON'T – YOU ALL

24  CONSENTED TO ME.  I DON'T KNOW WHY THAT HAPPENED OR HOW

25  THAT HAPPENED.  BUT, YOU KNOW, I'VE PRACTICED IN THIS

1   COURT HOUSE FOR 22 YEARS, WHICH, YOU KNOW, I'M NOT THAT OLD.

2   SO, THAT'S THE MAJORITY OF MY CAREER.

3        I HAVEN'T SET FOOT IN THE STATE COURT HOUSE IN A LONG,

4   LONG, LONG TIME.  SO, I DON'T – YOU KNOW, I KNOW THEY HAVE

5   DIFFERENT PROCEDURES AND THINGS LIKE THAT.  AND I DON'T KNOW

6   WHETHER THEIR STANDARD FOR A DEMURRER IS THE SAME AS THE

7   FEDERAL STANDARD FOR A 12(B)(6).  IT'S BEEN A QUARTER CENTURY.

8        (LAUGHTER.)

9        THE COURT:  SO, I DON'T -- AND, SO, I DON'T KNOW WHETHER I

10  SHOULD BE DISMISSING ON 12(B)(6) CLAIMS THAT MIGHT SURVIVE

11  UNDER THE STATE CODE OF CIVIL PROCEDURE.

12        AND I'M RETICENT TO DO SOMETHING LIKE THAT. AND JUST

13  BECAUSE AS I SORT OF SAID AT THE OUTSET I WANT TO BE MINDFUL OF

14  WHERE THIS CASE ULTIMATELY -- THIS CASE IS ULTIMATELY GOING TO

15  END UP.  AND THE TRIAL JUDGE WHO MAY HAVE IT MAY NOT BE ME, SO.

16        MS. PETRONIO:  I UNDERSTAND, YOUR HONOR.

17        I GUESS WE'RE PROBABLY JUST TRYING TO AVOID SORT OF

18  FOUR ROUNDS OF BRIEFING ON A MOTION TO DISMISS.  AND --

19        THE COURT:  AND I WANT TO MAKE SURE -- THAT'S MY POINT.

20  I WANT TO MAKE SURE THAT WE DON'T HAVE EXTRA ROUNDS HERE.

21        MS. PETRONIO:  YEAH.

22        THE COURT:  IF WE'RE GOING TO END UP OVER THERE, I

23  DON'T WANT THERE TO BE EXTRA ROUNDS.

24        MS. PETRONIO:  ONE SUGGESTION I MIGHT MAKE IS I THINK

25  THERE ARE SOME CLEAR AREAS WHERE -- THAT RELATE TO THE

1    NON-ANTITRUST CLAIMS WHERE --

2        (AUDIO INTERFERENCE.)

3        THE COURT:  CAN'T FIGURE OUT HOW TO MAKE THAT STOP.

4        GO AHEAD.

5        MS. PETRONIO:  -- WHERE BASED ON OUR MOTION IT WOULD

6    BE I THINK WISE FOR MS. ALBERT TO TAKE THE OPPORTUNITY TO

7    AMEND NOW THINGS LIKE THE NOTICED PROVISIONS THAT CAME OUT

8    AFTER HER FIRST AMENDED  -- THE NOTICES THAT PEOPLE RECEIVED.

9        THERE ARE  -- THERE ARE SOME THINGS BEYOND THE

10   ANTITRUST CLAIM THAT I WOULD -- I WOULD JUST PREFER IF SHE'S

11   GOING TO AMEND ON OTHER THINGS THAT SHE DO THAT NOW.

12       IT MAY ULTIMATELY NOT BE SUBJECT TO A MOTION TO

13   DISMISS BEFORE THIS COURT.  BUT IT MIGHT RESOLVE SOME ISSUES

14   THAT WOULD ARISE IN LATER BRIEFING IF SHE WERE ABLE TO ADDRESS

15   SOME OF THE OTHER ISSUES BY AMENDING OUTSIDE THE CONTEXT OF

16   JUST THE ANTITRUST CLAIMS IF SHE'S GIVEN LEAVE TO AMEND THOSE.

17       THE COURT:  OKAY.  THANK YOU.

18       MR. GOLD.

19       SOMETIMES WHEN YOU CHOOSE TO SPEAK LAST, YOU GET TO

20   SPEAK LESS.  SOMETIMES YOU HAVE TO SPEAK MORE.

21       MR. GOLD:  RIGHT.

22       THE COURT:  YOU NEVER KNOW.

23       MR. GOLD:  VERY -- VERY BRIEFLY, YOUR HONOR.

24       MY CLIENT MR. RANKIN IS NOT NAMED IN THE ANTITRUST

25   CLAIMS.  AND, THEREFORE, I HAVE NO -- I HAVE NO COMMENT ON THAT.

1    ALTHOUGH, I DO WANT TO REITERATE AND EMPHASIZE THAT

2    MY CLIENT HAS A VERY SIGNIFICANT INTEREST IN THE COURT'S

3    EXERCISE OF ITS SUPPLEMENTAL JURISDICTION.

4        AND SO --

5        THE COURT:  WHY IS THAT?

6        MR. GOLD:  TO --

7        THE COURT:  WE MAY PUT THAT  -- WE MAY BE PUTTING THAT

8    -- THIS DISCUSSION BEFORE THE SUPPLEMENTAL JURISDICTION HORSE.

9    BUT  -- BUT EXPLAIN THAT TO ME.

10        MR. GOLD:  YEAH, I SUPPOSE.  I MEAN, I WAS  -- I WAS  -- I WAS

11    SIMPLY ECHOING WHAT MY OTHER DEFENSE COUNSEL WERE SAYING.

12        I DIDN'T MAKE THE COMMENT TO  -- NECESSARILY TO ENGAGE

13    THE COURT IN AN EXTENSIVE BACK AND FORTH ON THE SUBJECT.  I

14    JUST WANTED TO LET THE COURT KNOW THAT MY CLIENT DOES HAVE

15    AN INTEREST IN THE SUBJECT.

16        THE COURT:  WELL, AND IT MAY BE THAT YOU ALL DIDN'T

17    COME TODAY EXPECTING TO TALK ABOUT SUPPLEMENTAL

18    JURISDICTION.  AND I RESPECT THAT.

19        I THINK WE  -- WE WERE  -- WE'VE HAD TO ROLL UP OUR

20    SLEEVES AND WORKED ON THE MOTIONS FOR SEVERAL DAYS BEFORE

21    WE KIND OF REALIZED THAT IT MIGHT BE A  -- LOOKING AROUND THE

22    CORNER AN ISSUE THAT MIGHT BE OUT THERE.

23        SO, I UNDERSTAND THAT.

24        ALL RIGHT.  MS. ALBERT, LET ME ASK YOU.

25        OH, SORRY.  AND DO ANY OF THE COUNSEL ON THE PHONE  --

1    YOUR COLLEAGUES ON THE PHONE, MR. ANDERSON, WANT -- WANT TO

2    ADD ANYTHING?

3            MR. ANDERSON:  I DON'T BELIEVE SO.

4            BUT I'LL LET TIANA SPEAK IF SHE IS --

5            THE COURT:  ALL RIGHT.  MS. DEMAS.

6            MS. DEMAS:  NO, YOUR HONOR.  IT'S BEEN WELL COVERED.

7            THANK YOU.

8            THE COURT:  ALL RIGHT.

9            MS. ALBERT, LET ME ASK YOU TO HAVE THE FINAL WORD.

10            AND THEN I WANT TO JUST BOUNCE A COUPLE OF THINGS

11    OFF COUNSEL IN TERMS OF HOW WE MIGHT HANDLE THINGS.

12            MS. ALBERT:  IT'S -- THE U.S. SUPREME COURT CASE WHICH I

13    HAD BRIEFED WAS <u>GOLDFARB VERSUS VIRGINIA STATE BAR</u>.

14            THE COURT:  OKAY.

15            MS. ALBERT:  AND IN THAT CASE THEY SPECIFICALLY FOUND

16    THAT PARKER IMMUNITY DID NOT EXIST FOR THE STATE BAR OF

17    VIRGINIA UNDER AN ANTITRUST CLAIM.

18            THE FACTS ARE INAPPOSITE.  THERE THEY HAD A COST

19    SHEET IF YOU DEALT WITH REAL ESTATE MATTERS AND THAT STATE IN

20    VIRGINIA YOU NEED TO HAVE A LICENSED ATTORNEY TO HELP YOU IF

21    YOU WANTED TO GO THROUGH ESCROW.  AND THEY HAD A COST

22    SHEET THAT WAS ATTACHED TO THAT.

23            AND, SO, THE U.S. SUPREME COURT SAID THE STATE BAR IS

24    NOT IMMUNE BY LAYING OUT A PRICE THAT ATTORNEYS NEEDED TO

25    CHARGE AND THAT THE ANTITRUST CLAIMS COULD GO FORWARD.

1    THAT WAS <u>GOLDFARB VERSUS VIRGINIA STATE BAR</u>.  AND THEY DID

2    FIND THAT THAT WAS AN ANTITRUST INJURY.

3         OBVIOUSLY, WE ARE NOT PLEADING A PRICE-FIXING CASE

4    HERE.

5         AND I DO WANT TO MENTION THAT IF WE WERE ALLOWED TO

6    CHANGE THE SECTION 3 TO A SECTION 1 CLAIM, WE ARE TALKING

7    ABOUT THE AGREEMENT.

8         AND THAT IS WHERE I THINK THAT THE STRONGEST EVIDENCE

9    THAT KEVAN SCHWITZER GAVE TO US WHERE HE HAD

10   COMMUNICATIONS BETWEEN TYLER TECHNOLOGIES AND THE STATE

11   BAR IS YOU CAN SEE THE CONSPIRACY.  WE CAN SEE THE AGREEMENT.

12        AND WE COULD SEE THE AGREEMENT ON WHAT THEY'RE

13   CALLING THE ACTIONS THAT THEY TOOK OR THE ACTIONS THAT THEY

14   DECIDED TO TAKE INSTEAD OF THE ACTIONS THAT STATE LAW

15   REQUIRES.

16        SO, IF THEY TOOK ACTIONS THAT STATE LAW DIDN'T REQUIRE

17   BECAUSE THEY THOUGHT IT WAS GOING TO BENEFIT TYLER

18   TECHNOLOGIES AND THE STATE BAR, WHO BOTH IN THEIR OWN RIGHT

19   HAVE MONOPOLIES ON EACH SIDE OF THE COIN HERE.  AND THAT IS

20   ILLEGAL BECAUSE IT WAS UNLAWFUL WHAT THEY DID.  THAT IS AN

21   ANTITRUST VIOLATION BY DEFINITION.  IT'S A VERY SIMPLE ONE.  BUT IT

22   IS ANTITRUST VIOLATION.

23        IT ALSO IS FRAUD.  BUT YOU DON'T NECESSARILY GET THAT.

24   AND YOU DON'T NECESSARILY GET THOSE COMMUNICATIONS.  THIS IS

25   THE EXACT REASON WHY WE SETTLED WITH KEVAN SCHWITZER.  AND

1   HE IS NOT SITTING THERE ON THE DEFENSE DESK RIGHT NOW IS

2   BECAUSE HE TURNED OVER THAT KIND OF INFORMATION TO US WHICH

3   IS VALUABLE BECAUSE WE UNDERSTOOD WE HAD AN UPHILL BATTLE.

4           AND GOING TO THE NOTICE ISSUE, IT IS THAT THEY ALL

5   AGREED ON THIS KIND OF, QUOTE, UNQUOTE, NOTICE.

6           WHEN WE FILED THIS CASE THERE WAS NO NOTICE.  AND I

7   STILL CONTEND THERE IS NO NOTICE TODAY TALKING ABOUT WHETHER

8   THERE'S PAGE VIEWS OR NOT PAGE VIEWS BY A GOOGLE ANALYTICS

9   WHEN WE DON'T EVEN KNOW HOW MANY THEY TESTED  -- MAYBE 30,000

10  INSTEAD OF 322,000.

11          TAKE THAT SOCIAL SECURITY NUMBER ALONE THAT THE

12  DEFENDANTS ADMITTED IN THEIR, QUOTE, UNQUOTE, NOTICE.  A

13  SOCIAL SECURITY NUMBER IS NOT A CASE NUMBER.  IT IS NOT A

14  DOCKET NUMBER.  IT IS  -- IT IS NOT THE NAME OF AN ATTORNEY.  AND

15  IT IS NOT THE NAME OF A WITNESS.  BUT YET THEY'VE AT LEAST

16  ADMITTED THAT WAS THERE.

17          IF THEY TESTED 30,000 DOCUMENTS OVER 322,000

18  DOCUMENTS, THAT MEANS THAT 10 OTHER SOCIAL SECURITY NUMBERS

19  EXIST.

20          WHEN YOU'RE TALKING ABOUT ACCESS-CONTROLLED CHECK

21  -- AND I WANT TO MAKE SURE I MAKE THIS VERY CLEAR  -- IF WE WERE

22  SITTING HERE AND WE HAD FILES -- LITERAL PHYSICAL FILES.  AND WE

23  PUT THEM IN A FILE ROOM AND WE CLOSED THE DOOR AND WE LOCK

24  THAT DOOR. ON THE INTERNET ACCESS-CONTROLLED CHECK SAYS

25  THIS IS A DOOR.  AND IF YOU HAVE THE KEY TO OPEN UP THIS DOOR

1    YOU OPEN IT.  YOU CAN GO IN AND GET THE FILES.  THERE WAS NO

2    ACCESS-CONTROL CHECK.  THEY DIDN'T PUT THAT DOOR ON THESE

3    FILES.

4            IF AN ATTORNEY SAT HERE AND SOMEONE COMPLAINED THAT

5    -- THAT FILES WERE TAKEN BECAUSE THE ATTORNEY JUST HAD FILES

6    SITTING OUT IN AN UNLOCKED DOOR WHERE ANYONE COULD GO

7    WITHOUT IT BEING CHECKED ARE YOU AUTHORIZED TO GO IN, THAT

8    ATTORNEY COULD BE SUSPENDED OR DISBARRED.  THAT'S A

9    BLACK-AND-WHITE LETTER RULE.

10           THE STATE BAR DIDN'T CHECK IF THEY HAD A DOOR WITH AN

11   ACCESS-CONTROL CHECK WITH A KEY.  TYLER TECHNOLOGIES WHO

12   CREATED THE SOFTWARE DIDN'T CHECK TO SEE IF THERE WAS A DOOR

13   WITH A KEY.  AND RICK RANKIN, THE I.T. DIRECTOR, WHO WAS THE

14   INTERIM I.T. DIRECTOR DID NOT CHECK TO SEE IF THERE WAS A DOOR

15   WITH A KEY.

16           AND IT'S NOT FROM OCTOBER 15TH.  THAT'S JUST WHEN

17   KEVAN SCHWETZER TOOK THOSE RECORDS, A THIRD PARTY.

18           THIS HAPPENED WHEN IT WAS IMPLEMENTED IN 2018.  THOSE

19   RECORDS HAVE BEEN SITTING OUT THERE FOR ANYONE TO TAKE,

20   GOOGLE INDEX AND PUT ON THE DARK WEB FOR NEARLY THREE

21   YEARS.

22           SO, I JUST WANT TO MAKE THE CONCEPT CLEAR TO

23   EVERYBODY IN THE ROOM WHAT AN ACCESS-CONTROL CHECK REALLY

24   MEANS.

25           IT'S – IT'S  -- IT'S A LOT MORE LARGER AND MORE DANGEROUS

1    THAN IT SOUNDS.  AND WHEN OTHER PEOPLE FIND OUT -- THEY THINK

2    THAT THERE WAS A CASE AGAINST SOMEONE, IT COULD  -- ANYONE

3    COULD CLAIM ABOUT ANYTHING.

4          DURING DIVORCE CASES A LOT OF TIMES A SPOUSE WILL

5    COMPLAIN THAT THE OTHER SPOUSE MOLESTED THEIR CHILD IN A

6    CHILD DISPUTE -- ALTHOUGH IT'S COMPLETELY WRONG.

7          THAT'S WHY THOSE CASES ARE MEANT TO BE CONFIDENTIAL.

8    IT DOESN'T MEAN THAT THEY WERE LEGITIMATE.

9          WE HAD 322,000 CASES – WHICH IS MORE THAN THE ACTIVE

10   ATTORNEY MEMBERS IN THE STATE OF CALIFORNIA OUT THERE ON THE

11   INTERNET FOR UP TO THREE YEARS FOR ANYONE TO TAKE AND FOR

12   ANYONE TO USE.  AND ONCE THAT REPUTATION IS GONE, IT'S TAINTED.

13   IT TAINTS THAT ATTORNEY.

14          AND FOR A COMPLAINING WITNESS, WHAT IF THEY WERE

15   COMPLAINING ABOUT THEIR SUPERVISOR.  AND THOSE THINGS

16   HAPPEN.

17          IT ALL IS  -- TAINTS THAT EMPLOYEE FOREVER.  IT TAINTS

18   THAT WITNESS, THAT PERSON WHO MIGHT NEED LEGAL HELP KNOWING

19   THAT THEY WERE A COMPLAINING WITNESS.  THIS HARMS A LOT OF

20   PEOPLE.  AND ONCE IT'S OUT ON THE INTERNET, YOU CAN'T GET IT

21   BACK.

22          KEVAN SCHWITZER WAS ABLE TO TAKE IT OFF HIS WEBSITE.

23   NO ONE CAN TAKE IT OFF THE DARK WEB.  MAYBE YOU CAN GET

24   GOOGLE TO UNINDEX THEM.  BUT FOR THE PAST THREE YEAR IT'S OUT

25   THERE IN A LOT OF PLACES.

1          SO, WHEN YOU TAKE THAT INTO CONTEXT, AND THEN YOU

2     LOOK AT THE REACTION OF THE STATE BAR AND THE REACTION AT

3     TYLER TECHNOLOGIES  -- TWO LARGE ORGANIZATIONS THAT HAVE

4     PLENTY OF RESOURCES TO TRY TO STOP THIS HARM, TRY TO PROTECT

5     THE PEOPLE, TRY TO NOTIFY THE VICTIMS AND TELL THEM YOUR

6     RECORD WAS OUT THERE ON THE INTERNET.  THEY NEVER DID THAT.

7     THEY SAID WE DON'T SEE ANY EVIDENCE OF YOUR PAGE VIEWS.

8          WELL, THEY HAVE EVERY INCENTIVE TO LOWER THAT

9     NUMBER TO SAY HOW MANY PEOPLE HAD PAGE VIEWS INSTEAD OF

10    SAYING THAT THIS WAS 322,525 RECORDS THAT WERE OUT THERE.

11         SO, YOUR HONOR, I DO REQUEST LEAVE TO AMEND.  I

12    UNDERSTAND THE INEFFICIENCIES.  WE CAN CREATE OUR OWN

13    PROCEDURE HERE.  YOU KNOW, LIMIT IT TO THOSE TWO CLAIMS.

14         I DO AGREE WITH MS. PETRONIO BECAUSE MORE IS KNOWN

15    NOW THAN WAS IN APRIL THAT THERE ARE SOME THINGS THAT LEAVE

16    TO AMEND -- FOR EXAMPLE, THE PERSON WHO ACTUALLY NOTIFIED THE

17    STATE BAR DID NOT NOTIFY HIM ON FEBRUARY 24TH LIKE THE STATE

18    BAR SAID.  THEY WERE NOTIFIED ON FEBRUARY 21ST.  I KNOW THAT

19    BECAUSE THAT PERSON CONTACTED ME.

20         MENTAL AND HEALTH ISSUES, THAT PERSON CONTACTED ME,

21    TOO.

22         THE  -- THERE ARE LAW STUDENTS WHO WERE A PART OF

23    THIS BREACH FOR MORAL CHARACTER.  THERE WERE PEOPLE, YOU

24    KNOW, ATTEMPTING TO BECOME A LAWYER HERE.

25         THERE ARE OBVIOUSLY PEOPLE WHO WERE UNDER

1   INVESTIGATION BUT HAVE NEVER BEEN DISCIPLINED.  SO, THEIR

2   RECORD LOOKS PRISTINE.

3        THIS BREACH WAS A LOT LARGER THAN WHAT WAS

4   REPRESENTED BY THE PEOPLE WHO HAVE SENT ME NOTICES AND

5   TOLD ME WHAT THEY KNEW THAT THE STATE BAR KNEW ABOUT THEM.

6        BUT YET THE STATE BAR DID NOTHING AT LEAST UNTIL MAY

7   23RD TO JULY 11TH.  AND THEY KNEW ABOUT THIS IN FEBRUARY.

8        UNDER THE STATE STANDARD 10 BUSINESS DAYS IS WHEN

9   YOU'RE SUPPOSED TO GIVE NOTICE.  THEY STILL HAVEN'T OFFERED

10  ANYTHING IN A NORMAL DATA BREACH CASE LIKE WE WILL MONITOR,

11  YOU KNOW, WHAT'S GOING ON.  WE WILL GIVE YOU FREE  -- FREE

12  CREDIT MONITORING.  WE WILL DO A.  WE WILL DO B.

13       I'M GETTING COMPLAINTS FROM SOME PLAINTIFFS WHICH I

14  CAN NOW ADD IN TO THE COMPLAINT ON SPECIFIC HARMS WHICH I

15  DIDN'T HAVE BEFORE.

16       SO, I REQUEST -- THIS IS THE FIRST TIME WE'VE ACTUALLY

17  HAD A JUDGE TO WEIGH IN ON OUR CASE, THAT WE HAD  -- BE GIVEN

18  SOME LENIENCY ON LEAVE TO AMEND.

19       THANK YOU.

20       THE COURT:  ALL RIGHT.  COUNSEL, THIS IS A LOT OF INPUT

21  FOR ME TO CHEW ON.  SO, LET ME DO THAT.

22       AND THEN WE'LL HAVE AN ORDER FOR YOU.

23       I WANT TO GIVE SOME THOUGHT TO SOME OF THE THINGS

24  THAT I STARTED OUT WITH AND ALSO SOME OF THE COMMENTS THAT

25  YOU'VE MADE.  BUT WE'LL HAVE SOMETHING SHORTLY FOR YOU.

1    AND I'M -- I WOULD SAY I'M HIGHLY UNLIKELY THAT I'M GOING

2   TO GRANT MOTIONS TO DISMISS OF SIGNIFICANT PORTIONS OF THE

3   PLAINTIFF'S CASE WITHOUT LEAVE TO AMEND GIVEN THAT THERE

4   HASN'T BEEN A PREVIOUS SUBSTANTIVE AMENDMENT, YOU KNOW,

5   AFTER A MOTION TO DISMISS BEFORE. I'LL SAY THE QUIET PART OUT

6   LOUD. THE NINTH CIRCUIT DOESN'T LIKE THAT. AND, SO, I'M

7   DISINCLINED TO DO IT.

8    SO -- BUT WE'LL DO SOMETHING SHORTLY. AND WE'LL TRY

9   TO KEEP IN MIND EVERYONE'S CONCERNS ABOUT EFFICIENCY AND

10   BALANCE – THOSE AGAINST MY CONCERNS ABOUT NOT -- NOT -- NOT

11   BEING -- BEING -- NOT STEPPING ON THE TOES OF WHAT MIGHT BE A

12   DIFFERENT JUDGE SOMEDAY IF THAT ENDS UP BEING WHAT'S

13   HAPPENED.

14    ALL RIGHT. WE'LL HOPEFULLY HAVE SOMETHING OUT

15   SHORTLY.

16    AND I'M GOING TO HOLD THEN OFF ON BOTH -- I THINK FOR

17   THE TIME BEING ON BOTH THE ANONYMITY PROTECTIVE ORDER ISSUES

18   AS WELL AS THE SCHEDULING ORDER.

19    I DON'T WANT TO SET DATES HERE TO HAVE THOSE BECOME

20   IMPOSSIBLE AT SOME FUTURE TIME. BUT WE HAVE THOSE -- BOTH

21   THOSE ISSUES IN MIND. AND WE WON'T LET THEM SLIP.

22    AND WE HAVE TO HAVE YOU BACK IN, YOU KNOW, A SHORT

23   PERIOD OF TIME OR AFTER WE GET SOME AMENDMENT MADE OR

24   WHATEVER WE DO. I HAVE TO GET THAT DONE. WE'LL DO THAT.

25   WHETHER IT BE IN PERSON OR IN SOME SORT OF OTHER SETTING.

1          OKAY.

2          MS. BOEHME.

3          THE CLERK:  THIS COURT IS NOW ADJOURNED.

4          (PROCEEDINGS ADJOURNED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place  •  Glendora, CA 91740  •  626.963.0566  •  dotnisbet@aol.com

1

2

3                          TRANSCRIBER'S CERTIFICATE

4

5                                  DISCLAIMER

6        THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

7               DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

8

9            I, Dorothy Babykin, attest that the foregoing proceedings provided to

10   me electronically were transcribed by me to the best of my ability.

11

12                          /s/  *Dorothy Babykin*

13                          Dorothy Babykin

14

   Date:  9/28/22

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com