Lenore L. Albert, Esq. SBN 210876
LAW OFFICES OF LENORE ALBERT
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Email: lenalbert@InteractiveCounsel.com
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of
themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; KEVAN SCHWITZER; RICK RANKIN; and DOES 4 through 10, inclusive,<br>Defendants. | CASE NO. 22-cv-00983-DFM<br><br>Assigned to the Hon. Douglas F. McCormick Crtm. 6B<br>Complaint filed: 03-18-2022<br><br>**PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT** |

**1**

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    FACTS

On September 15, 2022 this Court held a hearing on the defendant's motion to dismiss the first amended complaint. The court was concerned that defendants' removal was based on the antitrust claims in the case and in order to quickly discern whether the case would have its home in federal court or state court, it gave leave to amend the antitrust claims. There was also leave to add facts to the pleading.

This was all thoroughly discussed at the hearing and a material issue was to resolve this quickly and allow the case to be where it needs to be so it can proceed.

FOR PURPOSES OF JUST EFFICIENCY AND GETTING YOU ALL
WHERE YOU'RE ULTIMATELY GOING TO END UP BEING, IF WE'RE GOING
TO NOT HAVE THE SHERMAN ACT CLAIMS I'D LIKE TO FIND THAT OUT AS
QUICKLY AS POSSIBLE. AND THEN MAKE A FINAL DECISION ON

WHETHER SUPPLEMENTAL JURISDICTION IS APPROPRIATE OR NOT.
AND IF NOT, THEN -- NOT TO SOUND LIKE PEJORATIVE BUT
GET YOU OUT OF HERE AND GET YOU OVER TO WHERE FOLKS IN --
ACROSS THE PLAZA HERE.

RT 19-20

Thereafter the court issued an Order giving plaintiff 21 days to file an amended pleading on two antitrust claims plus additional factual allegations. The defendants were given 14 days to file a motion to dismiss on the amended antitrust claims and plaintiff would have fourteen days to file an opposition. The defendants would have seven days to reply and this matter could be before the court by November 14, 2022.

Defendants are seeking an unreasonably long briefing period for two causes of action.

## II.    LAW

Good cause is required to extend time:

2

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

**(b)** EXTENDING TIME.**(1)***In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:**(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires

Fed. R. Civ. P. 6(b)

## III.    ARGUMENT

Defendants have not provided good cause for the entire relief they are seeking.

First, Plaintiff offered to stipulate with defendants granting them an extra seven days to file their motions to dismiss. (The antitrust claims only pertain to Defendants Tyler Technologies and State Bar of California).

This seemed reasonable and did not conflict with plaintiff's counsel's calendar.

Plaintiff was given 21 days leave to amend and the stipulation would have given the defendants 21 days to file their motion.

The entire point of limiting the amendment of claims to the antitrust claims was to make the resolution quickly. This case will be nearly one year old by the time the Court will have the motion before it on the antitrust claims alone under the Defendant's schedule.

Second, the theories in the antitrust claims were theories defense counsel for Tyler Technologies pointed out at the hearing on the motion to dismiss the first amended complaint.[1]

---

[1] Tyler Tech responded:

WHAT I HEAR AS THE FACTUAL BASIS FOR THE ANTITRUST CLAIM ARE REALLY TWO SORT OF AMORPHOUS FACTUAL THINGS. ONE IS A COMPLAINT ABOUT HOW THE STATE BAR DECIDES WHO AND HOW THEY'RE GOING TO DISCIPLINE PEOPLE, AND THAT THAT'S AN ANTICOMPETITIVE ACT DESIGNED TO ASSIST LARGE FIRMS VERSUS SOLO PRACTITIONERS.
…

**3**

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' counsel described to this Court that contents of the settlement with Schwitzer which was obtained after the pleading was filed could provide factual support as to the conspiracy to obfuscate the data breach along with the notice containing "page views" in it.

The People market and Organizational Client Market anticompetitive behavior was understood in general terms both in the Court's own order and in Tyler Tech's oral argument at the hearing.

Adding facts to support these claims were something this Court granted leave to do. On a motion to dismiss the State Bar and Tyler Tech are not allowed to argue the facts. These well pled facts must be accepted as true. Additionally, during the settlement the defendants were provided the same 900 or so pages from Kevan

---

AND WITH RESPECT TO THE ISSUES ABOUT NOTICE THAT MS. ALBERT REFERENCED, OBVIOUSLY NOTICE WAS GIVEN HERE. IT'S INCORRECT TO SAY THAT THERE WAS NO NOTICE GIVEN. BUT TYLER, AGAIN, IS NOT INVOLVED IN NOTICE. TYLER IS A SOFTWARE COMPANY THAT PROVIDED A RECORD MANAGEMENT SYSTEM. TYLER DOESN'T HAVE THE ADDRESSES OF THE PEOPLE TO GIVE NOTICE TO, WASN'T INVOLVED IN THAT PROCESS, WAS SUPPORTIVE OF THAT PROCESS WITH THE STATE BAR BUT
RT 21

MS. PETRONIO: -- WHERE BASED ON OUR MOTION IT WOULD BE I THINK WISE FOR MS. ALBERT TO TAKE THE OPPORTUNITY TO AMEND NOW THINGS LIKE THE NOTICED PROVISIONS THAT CAME OUT AFTER HER FIRST AMENDED -- THE NOTICES THAT PEOPLE RECEIVED.THERE ARE -- THERE ARE SOME THINGS BEYOND THE ANTITRUST CLAIM THAT I WOULD -- I WOULD JUST PREFER IF SHE'S GOING TO AMEND ON OTHER THINGS THAT SHE DO THAT NOW.
RT 25

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Schwitzer so the material communications in the conspiracy section were not new.
Plaintiff's counsel advised she was going to use these facts to base one of the antitrust
models upon and there was no objection about moving quickly by defense counsel
when she said it:

> AND I DO WANT TO MENTION THAT IF WE WERE ALLOWED TO
> CHANGE THE SECTION 3 TO A SECTION 1 CLAIM, WE ARE
> TALKING ABOUT THE AGREEMENT. AND THAT IS WHERE I
> THINK THAT THE STRONGEST EVIDENCE THAT KEVAN
> SCHWITZER GAVE TO US WHERE HE HAD COMMUNICATIONS
> BETWEEN TYLER TECHNOLOGIES AND THE STATE BAR IS YOU
> CAN SEE THE CONSPIRACY. WE CAN SEE THE AGREEMENT.

> RT 28

   Consequently, the expansion of facts to paragraph 130 should not be that
burdensome.

   There is no other reason why Defendants cannot timely perform. They have
already red lined the pleadings There is no declaration that their expert is needed or
unavailable in order to file their motion on the economic models. There are no
vacations or other trials to attend to. Plaintiff's counsel was able to amend the
pleadings in 21 days while in jury trial in state court. It is not clear from the pleadings
or communications with defense counsel what the precise obstacle exists making it
impractical for three law firms to file a motion to dismiss on two antitrust claims.

   Plaintiff was and is willing to give the defendants an extra seven (7) days.
Leaving the time limit to fourteen days for opposition and seven days for reply.

   The extraordinary delay in the defendants' schedule prejudices plaintiffs'
counsel by selecting dates that plaintiff's counsel is going to be in trial with the State

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Bar on two other matters. It also prejudices the plaintiffs who want to have their case heard and get beyond this stage of the proceedings. It is hard to imagine how the defendants could select two dates in their proposed schedule when plaintiff's counsel has two other matters to attend to with the defendant State Bar. The schedule the defense has proposed undermines this Court's own intent to ordering the antitrust claims amended and impede progress.

## IV.    CONCLUSION

Wherefore the plaintiffs respectfully request that this Court deny the ex parte application for such an unreasonably long extension in filing a motion to dismiss the antitrust claims. (The plaintiffs only oppose in part as a seven day extension is not prejudicial to the parties).

Dated:  October 20, 2022                     Respectfully Submitted,
                                             LAW OFFICES OF LENORE ALBERT
                                             /s/ Lenore Albert_____
                                             LENORE L. ALBERT, ESQ.
                                             Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
                                             Jane Roe 2, Jane Roe 3, and John Roe 2, *on
                                             behalf of themselves and all others similarly
                                             situated*

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*              22-cv-00983-DFM

DECLARATION

I, Lenore Albert, am the attorney for the plaintiffs in the above-captioned matter and am licensed to practice law before the highest court in the state of California, the state of Michigan and the United States Supreme Court. I am a member in good standing in the United States District Court for the Central District of California. If called as a witness, I could testify competently to the following:

1. All parties were provided with the Kevan Schwitzer communications I used in the amended pleading when settlement was entered into in or about April 2022.

2. I have proceedings with the State Bar on December 5, 13, 14, and 21.

3. I also have proceedings with the State Bar on January 23, 24, and 25 (trial).

4. I offered an additional seven day extension to opposing counsel which they rejected. It is in the defendants email exhibits attached to their application.

5. I do not want or need a 60 or 30 day extension.

6. Delay is prejudicial to the plaintiffs because they cannot engage in discovery.

7. I have tried to extend every professional courtesy under the circumstances.

8. Attached hereto and incorporated herein as Exhibit 1 is a true and correct copy of the transcript of proceedings in this case on September 15, 2022.

9. I interpreted the stance was that the sooner the better in determining if the antitrust claims could pass Twombly or not.

10. I am still in my jury trial in Orange County, Ca (Gilbert-Bonnaire v Dana Demerjian, et al) that was called on September 16, 2022 and we started closing arguments today, so I apologize if this is being filed later than normal.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed this day in Irvine, California.

**7**

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Dated:  October 20, 2022

Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT
/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on
behalf of themselves and all others similarly
situated*

**8**

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 1968 S. Coast Hwy #3960, Laguna Beach, CA 92651. On October 20, 2022, I served a copy of the following document(s) described as:

**PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT**

On the interested parties in this action as follows:

**[x] BY E-SERVE and EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth. (Per Covid-19 Order)
**[] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Huntington Beach, California, to the aforementioned addressee(s).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: October 20, 2022

                                          /s/Lenore Albert
                                          Lenore Albert

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*              22-cv-00983-DFM

# SERVICE LIST

**For Defendants State Bar of California**

COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
3 Embarcadero Center
20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
TIANA DEMAS (*pro hac vice*) (tdemas@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
BARRETT J. ANDERSON (318539) (banderson@cooley.com)
WALTER WAIDELICH (300798) (cwaidelich@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420
GREGORY MERCHANT (341287) (gmerchant@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400


VANESSA L. HOLTON (111613)
General Counsel
ROBERT G. RETANA (148677) Deputy General Counsel
SUZANNE C. GRANDT (304794)
Assistant General Counsel
**OFFICE OF GENERAL COUNSEL**
**THE STATE BAR OF CALIFORNIA**
180 Howard Street
San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517
Email: suzanne.grandt@calbar.ca.gov

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

**For Defendant Rick Rankin**
JEFFER MANGELS BUTLER & MITCHELL LLP
MICHAEL A. GOLD (Bar No. 90667)
*mgold@jmbm.com*
JUSTIN ANDERSON (Bar No. 328969)
*Janderson@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567


**For Defendant Tyler Technologies, Inc.**
Christina N. Goodrich (SBN 261722) christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard Seventh Floor Los Angeles, California 90067
Telephone: 310.552.5000 Facsimile: 310.552.5001

Beth W. Petronio, admitted *pro hac vice*
beth.petronio@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Facsimile: (214) 939-5849

## ECF LIST:

Barrett J. Anderson     banderson@cooley.com, efiling-notice@ecf.pacerpro.com,
efilingnotice@cooley.com, mdejesus@cooley.com

Beth W. Petronio     beth.petronio@klgates.com

**11**

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Christina N. Goodrich    christina.goodrich@klgates.com,
klgateseservice@klgates.com

David Belcher    david.belcher@faegredrinker.com,
docketgeneral@faegredrinker.com, shanta.teekah@faegredrinker.com

Gregory John Merchant    gmerchant@cooley.com

Justin Alexander Anderson    janderson@jmbm.com, learly@jmbm.com,
mastercalendar@jmbm.com

Lenore L Albert    lenalbert@interactivecounsel.com, docket@interactivecounsel.com,
lenorealbert@msn.com

Michael Allan Gold    mgold@jmbm.com, cl7@jmbm.com,
mastercalendar@jmbm.com, MGold@jmbm.com

Michael G Rhodes    rhodesmg@cooley.com, efiling-notice@ecf.pacerpro.com,
eFilingNotice@cooley.com, john-brocales-7263@ecf.pacerpro.com,
mrhodes@cooley.com, smartinez@cooley.com

Peter William Baldwin    peter.baldwin@faegredrinker.com, peter.baldwin@usdoj.gov,
USACAC.criminal@usdoj.gov

Robert G Retana    robert.retana@calbar.ca.gov, joan.randolph@calbar.ca.gov

Suzanne Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov

Tiana A. Demas    tdemas@cooley.com, efiling-notice@ecf.pacerpro.com,
efilingnotice@cooley.com

Vanessa L Holton    vanessa.holton@calbar.ca.gov

Walter Waidelich    cwaidelich@cooley.com, kjones@cooley.com

Zachary Thomas Timm    zach.timm@klgates.com, klgateseservice@klgates.com

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S EX PARTE APPLICATION FOR AN
UNREASONABLE EXTENSION OF TIME; DECLARATION OF LENORE ALBERT

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

1

2

3

4     JOHN ROE 1, ET AL.,                    )
                                             )
5                      Plaintiffs,           )
                                             )
6              vs.                           )    Case No.  8:22-CV-00983-DFM
                                             )
7     THE STATE BAR OF                       )
      CALIFORNIA, ET AL.,                    )
8                                            )      Santa Ana, CA
                                             )      September 15, 2022
9                      Defendants.           )
      _____ )

10

11

12

13

14                              HEARING

15     BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
                UNITED STATES MAGISTRATE JUDGE

16

17

18     APPEARANCES:                  See Next Page

19     COURT REPORTER:               Recorded, AT&T

20     COURTROOM DEPUTY:             Nancy Boehme

21     TRANSCRIBER:                  Dorothy Babykin
                                     Courthouse Services
22                                   1218 Valebrook Place
                                     Glendora, California  91740
23                                   (626) 963-0566

24
       PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
25     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2

3    FOR THE PLAINTIFF JOHN ROE I, ET AL.:

4    LAW OFFICES OF LENORE ALBERT
     BY:  LENORE ALBERT
5         ATTORNEY AT LAW
     1968 SOUTH COAST HIGHWAY
6    SUITE 3960
     LAGUNA BEACH, CALIFORNIA 92651

7

8    FOR DEFENDANT STATE BAR OF CALIFORNIA:

9

     COOLEY LLP
10   BY:  BARRETT ANDERSON
          ATTORNEY AT LAW
11   4401 EASTGATE MALL
     SAN DIEGO, CALIFORNIA
12
     COOLEY LLP
13   BY:  TIANA A. DEMAS
          ATTORNEY AT LAW
14   55 HUDSON YARDS
     10001-2157
15   NEW YORK, NEW YORK  10001
     (TELEPHONICALLY)
16
     COOLEY LLP
17   BY:  GREG MERCHANT
          ATTORNEY AT LAW
18   3175 HANOVER STREET
     PALO ALTO, CALIFORNIA  94304
19

20   FOR DEFENDANT TYLER TECHNOLOGIES, INC.:

21    K&L GATES LLP
      BY:  BETH W. PETRONIO
22         ATTORNEY AT LAW
      1717 MAIN STREET
23     SUITE 2800
       DALLAS, TEXAS  75201
24

25

1
APPEARANCES:  (CONTINUED)
2

3    FOR DEFENDANT RICK RANKIN:

4    JEFFER MANGELS BUTLER & MITCHELL LLP
     BY:  MICHAEL ALLEN GOLD
5         ATTORNEY AT LAW
     1900 AVENUE OF THE STARS
6    7TH FLOOR
     LOS ANGELES, CALIFORNIA  90067
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                    I N D E X

3      8:22-CV-00983--DFM                            SEPTEMBER 15, 2022

4      PROCEEDINGS:

5      DEFENDANT TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS;
       DEFENDANT RICK RANKIN'S MOTION TO DISMISS;
6      DEFENDANT THE STATE BAR OF CALIFORNIA'S MOTION TO DISMISS
       FIRST AMENDED COMPLAINT;
7      PLAINTIFFS' MOTION FOR ORDER FOR PROTECTIVE ORDER;
       DEFENDANTS' JOINT MOTION TO STRIKE PLAINTIFFS' REQUESTS FOR
8      JUDICIAL NOTICE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              SANTA ANA, CALIFORNIA; SEPTEMBER 15, 2022.

2              THE CLERK:  PLEASE BE SEATED AND COME TO ORDER.

3              THIS UNITED STATES DISTRICT COURT IS NOW IN SESSION.

4              THE HONORABLE DOUGLAS F. MC CORMICK, UNITED STATES

5      MAGISTRATE JUDGE, PRESIDING.

6              WE'RE ON THE RECORD ON CASE 8:22-CV-00983.

7              IT'S JOHN ROE 1, ET AL. VERSUS THE STATE BAR OF

8      CALIFORNIA, ET AL.

9              COUNSEL, YOUR APPEARANCES, PLEASE.

10             MS. ALBERT:  GOOD MORNING, YOUR HONOR

11             LENORE ALBERT ON BEHALF OF THE PLAINTIFFS.

12             MR. ANDERSON:  GOOD MORNING, YOUR HONOR.

13             BARRETT ANDERSON FROM COOLEY LLP ON BEHALF OF THE

14     STATE BAR.

15             MS. PETRONIO:  GOOD MORNING, YOUR HONOR.

16             BETH PETRONIO WITH K&L GATES ON BEHALF OF DEFENDANT

17     TYLER TECHNOLOGIES, INC.

18             MR. GOLD:  MICHAEL GOLD ON BEHALF OF DEFENDANT RICK

19     RANKIN.

20             MR. MERCHANT:  GREGORY MERCHANT ALSO WITH COOLEY

21     LLP ON BEHALF OF THE STATE BAR.

22             THE COURT:  ALL RIGHT.

23             AND COUNSEL ON THE PHONE, PLEASE.

24             MS. DEMAS:  GOOD MORNING, YOUR HONOR.

25             FROM COOLEY LLP REPRESENTING THE STATE BAR, TIANA

1    DEMAS.

2            THE COURT:  ALL RIGHT.  THANK YOU ALL, COUNSEL.

3            GO AHEAD AND HAVE A SEAT.

4            SO, BEFORE THE HEARING I THINK LAST WEEK WE RESOLVED

5    THE MOTION TO DISQUALIFY AND THE MOTION FOR PRELIMINARY

6    INJUNCTION.

7            I'D LIKE TO START THIS MORNING BY DISCUSSING THE

8    DEFENDANTS' MOTIONS TO DISMISS.

9            AND I THINK AS I START MY COMMENTS MAYBE IT WILL

10   BECOME APPARENT WHY I THINK WE SHOULD START THERE.

11           AS WE – AS WE WORKED ON THOSE AND LOOKED AT THE

12   VARIOUS CLAIMS AND THE ARGUMENTS, I BECAME INCREASINGLY

13   CONVINCED THAT THERE WERE GOING TO BE PROBLEMS WITH THE

14   TWO SHERMAN ACT CLAIMS.  AND I'LL EXPLAIN THOSE CONCERNS IN

15   SOME DETAIL IN JUST A MOMENT.

16           BUT AS I REACHED THAT CONCLUSION I STOPPED TO

17   CONSIDER THAT -- TO CONSIDER WHETHER THAT WAS GOING TO BE

18   SOME SORT OF TURNING POINT OR INFLECTION POINT IN THE CASE.

19   BECAUSE THE SHERMAN ACT CLAIMS ARE THE CLAIMS ON -- BASED ON

20   WHICH THE COURT – THE CASE WAS REMOVED TO THIS COURT FROM

21   STATE COURT.

22           AND IF THEY ARE DISMISSED, THEN, THERE IS NO  -- THERE

23   ARE NO FEDERAL CLAIMS REMAINING.

24           SO, I'VE STOPPED AT THAT POINT TO STOP AND THINK TO

25   MYSELF WHETHER I SHOULD CONSIDER WITHOUT THOSE CLAIMS

1     EITHER THE PLAINTIFFS WOULD SEEK TO REMAND OR THAT I WOULD

2     HAVE TO CONSIDER WHETHER I SHOULD EXERCISE SUPPLEMENTAL

3     JURISDICTION OF THE REMAINING STATE LAW CLAIMS.  AND THE

4     POSSIBILITY OF THAT OUTCOME HAS CAUSED ME TO -- TO STOP FOR A

5     MINUTE. BECAUSE IF THIS CASE IS, IN FACT, HEADED BACK TO STATE

6     COURT, THEN, I DON'T KNOW THAT IT'S APPROPRIATE OR PRUDENTIAL

7     FOR ME TO DECIDE WHETHER THOSE NON-FEDERAL CLAIMS  -- THOSE

8     STATE LAW CLAIMS SHOULD GO FORWARD.

9          I THINK THE TRIAL JUDGE  -- THE STATE – THE SUPERIOR

10    COURT JUDGE IF IT'S WHERE THE CASE IS GOING TO GO SHOULD DO

11    THAT.

12         AND THE SAME SHOULD GO WITH WHETHER  -- THE SAME

13    GOES AS TO WHETHER THE PLAINTIFFS SHOULD BE ABLE TO PROCEED

14    ANONYMOUSLY.

15         SO, LET ME STOP AND THEN GO BACK AND EXPAND ON MY

16    THOUGHTS ON THE SHERMAN ACT CLAIMS WHICH IS KIND OF THE

17    JUMPING OFF POINT AS TO WHERE I FIND MYSELF AS TO THE OTHER

18    CLAIMS.

19         AND LET ME START WITH SECTION 3.

20         AS I READ THE STATUTE, SECTION 3 EXTENDS THE

21    PROVISIONS OF SECTION 1 TO ACTIVITY IN THE U.S. TERRITORIES AND

22    DISTRICT OF COLUMBIA.

23         AS I READ THE STATUTE WE'RE HERE IN THE STATE OF

24    CALIFORNIA NOT A TERRITORY LIKE THE AMERICAN SAMOA OR

25    SOMETHING LIKE – OR PUERTO RICO.  SO, I THEREFORE -- I THINK THE

1    SECTION 3 CLAIMS ARE HOPELESS AS A MATTER OF LAW AND THEY

2    SHOULD BE DISMISSED WITHOUT PREJUDICE -- I'M SORRY, WITH

3    PREJUDICE WITHOUT LEAVE TO AMEND.

4            THAT LEAVES THE SECTION 2 CLAIM.  LET ME TELL YOU WHAT

5    I THINK ABOUT THAT.

6            I AGREE WITH DEFENDANTS THAT THE STATE BAR'S

7    DISCIPLINARY RULES ARE LIKELY IMMUNE FROM CHALLENGE UNDER

8    THE FEDERAL ANTITRUST LAWS UNDER THE STATE ACTION EXCEPTION

9    AS SET OUT IN *PARKER VERSUS BROWN* *AND AS EXPLAINED BY THE*

10   *CALIFORNIA SUPREME COURT IN CASES LIKE* *IN RE ATTORNEY*

11   *DISCIPLINE SYSTEM* *AND* *IN RE ROSE.*

12           *THE STATE BAR IS A COMPONENT OF THE CALIFORNIA*

13   *JUDICIARY SUBJECT TO THE SUPERVISION OF THE CALIFORNIA*

14   *SUPREME COURT.  AND THUS, THE TWO REQUIREMENTS FOR* *PARKER*

15   *IMMUNITY WOULD BE SATISFIED.*

16           I ALSO AGREE WITH THE DEFENDANTS THAT THE F -- THAT

17   THE FIRST AMENDED COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS

18   TO DEMONSTRATE THAT THE STATE BAR HAS A SPECIFIC INTENT TO

19   MONOPOLIZE A RELEVANT MARKET.  THE ONLY FACTS IN THE FAC THAT

20   ARE ALLEGED CONCERN THE STATE BAR'S PURCHASE OF THE

21   ODYSSEY PORTAL, WHICH TO ME DOES NOT SUPPORT A PLAUSIBLE

22   INFERENCE THAT THE STATE BAR ACTED WITH A SPECIFIC INTENT TO

23   MONOPOLIZE.  AND THE REMAINING ALLEGATIONS ARE SIMPLY LEGAL

24   CONCLUSIONS.

25           FINALLY, I ALSO AGREE WITH DEFENDANTS THE SHERMAN 2

1    CLAIMS -- THE SHERMAN 2 CLAIM FAILS FOR LACK OF A COGNIZABLE

2    ANTITRUST INJURY.

3            ANTITRUST INJURY REQUIRES FOUR ELEMENTS --

4    UNLAWFUL CONDUCT, CAUSING AN INJURY TO THE PLAINTIFF THAT

5    FLOWS FROM WHAT MAKES THE CONDUCT UNLAWFUL AND THAT THIS

6    IS THE TYPE OF INJURY THAT ANTILAW -- ANTITRUST LAWS WERE

7    INTENDED TO PREVENT.

8            HERE THE PLAINTIFFS' ALLEGATION IS THAT THE MERE -- THE

9    ENTIRE DISCIPLINARY SYSTEM IS SET UP TO BENEFIT LARGE LAW FIRMS

10   AT THE EXPENSE OF SOLO PRACTITIONERS.  AND THAT ALLEGATION IS

11   ENTIRELY CONCLUSORY.  THERE ARE NO FACTS IN SUPPORT ONLY

12   VAGUE ECONOMIC THEORIES.

13           THEREFORE IT WOULD BE MY CONCLUSION THAT THE

14   PLAINTIFFS HAVE FAILED TO ALLEGE A PLAUSIBLE ANTITRUST INJURY.

15           IN SUM, I THINK THE EFFORT TO TURN THIS DATA BREACHED

16   CASE INTO AN ANTITRUST CASE SEEMS TO ME TO BE AN OVERREACH.

17           THAT SAID, I'M NOT A HUNDRED PERCENT CERTAIN THAT

18   AMENDMENT OF THOSE CLAIMS WOULD BE FUTILE.  SO, I'D BE INCLINED

19   TO OFFER IF PLAINTIFFS' COUNSEL ASKS FOR AN OPPORTUNITY TO

20   AMEND THOSE CLAIMS.

21           SO, LET ME ASK BOTH COUNSEL AT THIS POINT TO COMMENT

22   ON WHAT I'VE SAID THUS FAR.  BECAUSE I KNOW I'VE SAID A LOT.

23           STARTING WITH MS. ALBERT, YOU'RE -- YOU'RE OF COURSE

24   WELCOME TO ADDRESS MY TENTATIVE THOUGHTS ON THE SHERMAN

25   ACT CLAIMS AND TELL ME WHY  I'M WRONG.

1      I'M ALSO INTERESTED IN WHETHER YOU'D LIKE AN

2    OPPORTUNITY TO AMEND.

3      AND I'D LIKE YOUR TENTATIVE THOUGHTS ON WHAT SHOULD

4    HAPPEN TO THIS CASE SHOULD THE SHERMAN ACT CLAIMS BE

5    DISMISSED IF THAT'S WHAT ENDS UP HAPPENING.

6      MR. ANDERSON, MR. GOLD, MS. PETRONIO, ANY OTHER

7    DEFENSE COUNSEL, I'D LIKE AT LEAST YOUR TENTATIVE THOUGHTS.

8      WELL, I DON'T IMAGINE YOU'LL QUARREL WITH MY COMMENTS

9    ABOUT THE SHERMAN ACT CLAIMS, BUT I'LL WELCOME ANY RESPONSE

10   TO PLAINTIFFS' COUNSEL'S COMMENTS IN A MINUTE AND ALSO ANY

11   THOUGHTS OF YOURS ABOUT WHAT SHOULD HAPPEN IF THE SHERMAN

12   ACT CLAIMS AREN'T ANY LONGER PART OF THE CASE.

13      MS. ALBERT, WITH THAT, LET ME TURN IT OVER TO YOU.

14      MS. ALBERT:  THANK YOU, YOUR HONOR.

15      THE COURT:  AND YOU'RE WELCOME TO SIT THERE OR COME

16   OVER TO THE LECTERN, WHEREVER YOU FEEL MOST COMFORTABLE.

17      MS. ALBERT:  AS TO THE SECTION 3 CLAIM, I BELIEVE THAT

18   ALTHOUGH YOUR HONOR IS CORRECT, ALTHOUGH IT'S LABELED

19   SECTION 3, I BELIEVE THAT IT IS NOT FUTILE BECAUSE IT COULD BE A

20   SECTION 1 CLAIM.  AND I BELIEVE THAT WE ARGUED THAT IN OUR

21   OPPOSITION.

22      BUT I'M GOING TO MOVE BACK TO THE SECTION 2 CLAIM.

23      AND YOU ARE CORRECT THAT PART OF THE CLAIM IS

24   CONCLUSORY SAYING THAT THE DISCIPLINARY SYSTEM THE WAY IT IS

25   SET UP IS SET UP WHERE LARGE FIRMS AREN'T NECESSARILY PART OF

1    THE SYSTEM. BECAUSE IF YOU'RE RETAINED BY AN AGENCY OR A

2    LARGE CORPORATION THE WAY THAT THEY VOTE WITH ATTORNEYS

3    WHETHER THEY LIKE THE CONDUCT OR NOT IS BY MOVING OVER THEIR

4    RETAINER FEE BASICALLY TO ANOTHER FIRM.

5         WHEREAS WHEN WE HAVE SMALL PRACTITIONERS THAT ARE

6    REPRESENTING THE PEOPLE, THE ONLY POWER THE PEOPLE ACTUALLY

7    HAVE IS TO FILE A STATE BAR COMPLAINT, WHETHER IT'S LEGITIMATE

8    OR NOT.

9         OBVIOUSLY, WE SEE BY THE FACTS IN THIS CASE THAT ARE

10   BASICALLY INDISPUTABLE ONLY 3 PERCENT OF ANY KIND OF CLAIM

11   ACTUALLY BECOMES PUBLIC.

12        HOWEVER, IN THIS CASE AS WE HAVE SEEN, THERE WAS NO

13   NOTICE TO THIS CLASS.  IN THIS CLASS WERE PEOPLE WHO EITHER

14   FILED COMPLAINTS OR PEOPLE WHO WERE UNDER INVESTIGATION BY

15   THE OFFICE OF CHIEF TRIAL COUNSEL, WHICH IS UNDER THIS LARGE

16   UMBRELLA OF DISCIPLINARY MATTERS, WHICH INCLUDES MORE THAN

17   WHAT WE TRADITIONALLY THINK OF IN THAT REGARD.

18        BUT I DO BELIEVE THAT WE CAN SEE BY THEIR CONDUCT IN

19   NOT GIVING NOTICE, NOT TAKING IT SERIOUSLY OF THE POTENTIAL

20   HARM TO THIS PARTICULAR CLASS, THAT THE STATE BAR HAS

21   BASICALLY WENT ALONG WITH THIS KIND OF TW0-CLASS SYSTEM.

22        AND IT IS AN ANTICOMPETITIVE INJURY THAT WE ARE TALKING

23   ABOUT HERE.

24        FOR EXAMPLE, IF THE BREACH WAS SOLELY THOSE

25   ATTORNEYS WHO THEN CAME ON  -- WENT ON TO BE JUDGES,  I AM

1    VERY COMFORTABLE IN ARGUING I BELIEVE THAT THE FACTS WOULD

2    SHOW THAT THE STATE BAR WOULD IMMEDIATELY GIVE NOTICE AND

3    VERY CLEAR NOTICE TO THOSE SITTING ON THE BENCH THAT THERE

4    WAS A BREACH.

5         HOWEVER, THE PEOPLE WHO WERE INVESTIGATED, EVEN

6    THOUGH THESE WERE CONFIDENTIAL INVESTIGATIONS MEANING THAT

7    THE STATE BAR DIDN'T EVEN FIND ENOUGH MERIT TO FILE THESE AS

8    PUBLIC CHARGES, THEY WERE OF ANOTHER CLASS WHERE THE STATE

9    BAR DECIDED TO SAY WE DON'T NEED TO BOTHER WITH THEM.  WE

10   DON'T NEED TO GIVE THEM NOTICE.

11        AND THE STATE BAR IS RUN BY LAWYERS.  IT IS RUN BY

12   OTHER ATTORNEYS, ATTORNEYS WHO COME UP THROUGH THE

13   POLITICAL SYSTEM.  THEY ARE NOT OUR PEERS.  THAT CHANGED IN

14   1989 OR 1990.  IT CHANGED DECADES AGO WHERE IT USED TO BE A

15   PEER-TO-PEER SYSTEM.   IT IS NO LONGER THAT ANYMORE.

16        AND THERE ARE CLEAR STATUTES.  IT ISN'T -- IT ISN'T LIKE IT

17   WAS QUESTIONABLE OR OBJECTIVELY REASONABLE TO THINK MAYBE I

18   DON'T HAVE TO GIVE NOTICE.  MAYBE I DON'T HAVE TO GIVE THESE

19   PEOPLE A FAIR CHANCE.

20        THERE ARE MANY STATUTES THAT SAID THAT YOU MUST GIVE

21   NOTICE.  YOU ARE AN AGENCY.  YOU ARE NOT AN AGENCY TO THE

22   CONSTITUTION.

23        ATTORNEYS PRACTICE LAW.  JUDGES WHEN THEY BECOME

24   JUDGES DON'T HAVE THE RIGHT TO PRACTICE LAW ANYMORE.  JUDGES

25   GET IMPEACHED.  ATTORNEYS GET DISBARRED.  THEY ARE

1    COMPLETELY TWO DIFFERENT SYSTEMS.

2              AND -- SO, I BELIEVE THAT ALTHOUGH THE FACTS ALLEGED IN

3    APRIL -- WHICH WAS NOT BASED ON A PRIOR MOTION TO DISMISS BUT IT

4    WAS TO BRING IN OTHER PLAINTIFFS AND TO CHANGE A FEW THINGS --

5    CLEARLY DESERVE A CHANCE NOW THAT WE SEE WHAT KIND OF

6    NOTICE WENT OUT, THAT THEY DIDN'T EVEN START GOING OUT UNTIL

7    MAY 23RD AND WENT OUT TO JULY 11TH.

8              WE HAVE OVER 900 DOCUMENTS NOW SHOWING LITERALLY

9    HOW THE STATE BAR WAS NOT WORKING TO HELP THE PEOPLE OF THE

10   BREACH OR TO GIVE THEM NOTICE.  BUT THEY WERE WORKING WITH

11   TYLER TECHNOLOGIES WHO IS BASICALLY THE LARGEST GAME IN THE

12   UNITED STATES FOR OTHER STATE AGENCIES TO TRY TO CHANGE THE

13   MESSAGE.  THEY WEREN'T REALLY TRYING TO PROTECT ANYBODY OR

14   TO PREVENT ANY HARM.

15             AND THE WHOLE POINT OF THE ANTITRUST SYSTEM IS KIND

16   OF A CONSUMER PROTECTION STATUTE BECAUSE IT'S THERE TO HAVE

17   COMPETITIVE CONDUCT SO THAT CONSUMERS HAVE THEIR CHOICE

18   AND CONSUMERS AREN'T FORCED INTO ONE HOLE.

19             THAT INCLUDES THE PUBLIC.  THAT INCLUDES THE PEOPLE

20   WHO RELY ON ATTORNEYS TO TAKE THEIR SMALL LITTLE DUI CASE,

21   YOU KNOW, TO TAKE THEIR SMALL LITTLE CIVIL CLAIM TO HELP THEM

22   THROUGH A FAMILY DISSOLUTION.

23             AND THESE ARE THE ONLY CLASS OF ATTORNEYS THAT WERE

24   AFFECTED BY THIS BREACH.  AND, OF COURSE, LAW STUDENTS WERE

25   AND PEOPLE WHO HAD MEDICAL PROBLEMS WERE AND PEOPLE WHO

1    MIGHT HAVE HAD SOME MENTAL HEALTH ISSUES OR SUBSTANCES --

2    SUBSTANCE ABUSE PROBLEMS.

3         SO, TO SAY THAT THIS WASN'T ANTICOMPETITIVE, IT DEFIES

4    LOGIC.  I THINK THAT WE COULD AMEND ESPECIALLY NOW HAVING

5    THOSE OTHER 900 DOCUMENTS, WHICH WE DIDN'T HAVE BEFORE, TO

6    CLEARLY SHOW THIS COURT THAT THERE WAS ANTICOMPETITIVE

7    BEHAVIOR GOING ON HERE.

8         AND I CAN ARGUE THE LAW IF YOU WANT.  AND I CAN

9    CONNECT UP THE LEGAL, BUT I THINK THAT MY BRIEF ACTUALLY GIVES

10   THIS COURT WHEN YOU TALK ABOUT STATE ACTION, YOU KNOW, WE

11   HAVE OTHER CASES THAT SHOW EVEN IN -- IT'S USUALLY PRICE FIXING,

12   RIGHT, BUT WE DO SHOW THAT THE U.S. SUPREME COURT SOMETIMES

13   SAYS EVEN WITH STATE BARS THEY ARE TRADE AND PROFESSION.  BUT

14   THEY STILL MUST OBEY THE ANTITRUST LAWS JUST LIKE ANYONE ELSE.

15        AND TYLER TECHNOLOGIES BY FAR IS THE LARGEST.  THIS

16   CLASS ACTION IS NARROW.  IT'S ONLY ON THE STATE BAR.

17        BUT WHAT HAPPENED HERE BY LEAVING THE DOOR OPEN,

18   THEY DIDN'T EVEN PUT A LOCK ON THE DOOR TO ALL THESE FILES.

19   THAT HAPPENED TO DIFFERENT COURTS ALL THROUGHOUT THE

20   UNITED STATES.  IT WASN'T LIMITED TO THE STATE BAR.

21        WE TRIED TO BE VERY TIGHT WITH OUR PLEADING HERE SO

22   THAT WE COULD FOCUS ON THE HARM OF THIS PARTICULAR CLASS TO

23   THIS BREACH.

24        THANK YOU, YOUR HONOR.

25        THE COURT:  ALL RIGHT.

1        NO REACTION OR COMMENTS ABOUT WHAT MIGHT HAPPEN

2   TO THE CASE IF THE SHERMAN ACT CLAIMS ARE DISMISSED?

3        MS. ALBERT:  IF THE SHERMAN ACT CLAIMS ARE DISMISSED,

4   PLAINTIFFS WOULD LIKE IT TO BE REMANDED BACK TO STATE COURT,

5   YOUR HONOR.

6        THE COURT:  ALL RIGHT.

7        DEFENSE COUNSEL, I DON'T WANT YOU GUYS TO KNOCK

8   EACH OTHER OVER.

9        BUT, MR. ANDERSON, YOU'RE ALREADY AT THE TABLE  --

10        (LAUGHTER.)

11        THE COURT:  YOU LET THEM GET TO YOU LIKE THAT.  OKAY.

12        (LAUGHTER.)

13        MR. ANDERSON:  APOLOGIZE, YOUR HONOR.

14        WE  --

15        MS. PETRONIO:  -- AUTHORITY TO SPEAK FIRST, YOUR HONOR.

16        THE COURT:  OKAY.

17        MR. ANDERSON:  YEAH, WE AGREED I'D GO FIRST.  BUT

18   APOLOGIES FOR HOW QUICKLY I SPRUNG UP THERE.

19        GOOD MORNING.

20        I REPRESENT THE STATE BAR AS YOU KNOW.

21        I WANTED TO ADDRESS A FEW OF THE POINTS RAISED BY

22   PLAINTIFF'S COUNSEL JUST A MOMENT AGO.

23        I'LL SAY AT THE BEGINNING THAT THE STATE BAR AGREES

24   WITH THE COURT'S INCLINATION HERE TO DISMISS THE SECTION 3

25   CLAIM BECAUSE THE ACTIVITY ALLEGED HERE OCCURRED IN

1    CALIFORNIA AND NOT A TERRITORY.

2            THE STATE BAR ALSO AGREES WITH THE COURT'S RULING

3    THAT IT IS IMMUNE FROM ANTITRUST LIABILITY IN THIS PARTICULAR

4    CASE.

5            I DID NOT HEAR ANY SPECIFIC ARGUMENTS FROM PLAINTIFFS'

6    COUNSEL ABOUT IMMUNITY OR WHY THE COURT'S RULING ON THAT

7    MIGHT BE INCORRECT.  SO, I'LL SIMPLY SAY THAT THE TWO ELEMENTS

8    HERE ABOUT WHETHER IMMUNITY APPLIES HAVE BEEN SATISFIED.  AND

9    IT SHOULD APPLY.  AND IN THAT CASE AMENDMENT AS TO THE STATE

10   BAR WOULD BE FUTILE.  AND THAT CLAIM SHOULD BE DISMISSED WITH

11   PREJUDICE.

12           GENERALLY, WITH RESPECT TO THE ANTITRUST CLAIM ON

13   THE MERITS, I WOULD POINT OUT HERE JUST A FEW THINGS THAT

14   PLAINTIFF'S COUNSEL SAID THAT I WANT TO COMMENT ON.

15           THE FIRST ONE IS SHE STARTED WITH THE COMMENT THAT

16   THERE WAS NO NOTICE TO THE CLASS BUT LATER ON ADMITTED THAT

17   THERE HAS, IN FACT, BEEN NOTICE LETTERS SENT TO THE CLASS.

18           AND I'D ALSO POINT OUT THAT IMMEDIATELY AFTER THE --

19   THE INCIDENT WAS DISCOVERED THE STATE BAR WAS ISSUING PRESS

20   RELEASES WAS BEING FULLY TRANSPARENT -- WAS ISSUING

21   FREQUENTLY ASKED QUESTIONS TO KEEP THE PUBLIC UPDATED.

22           AND, IN FACT, THAT'S THE VERY THING THAT INFORMED THE

23   PLAINTIFFS HERE ABOUT THIS INCIDENT AND ALLOWED THEM TO THEN

24   BRING THIS LAWSUIT WITHIN SIX WEEKS OF THAT INCIDENT.

25           SO, NOTICE WAS GIVEN.  THE PLAINTIFFS WERE WELL AWARE

1    OF THE SITUATION AS IT DEVELOPED.  AND ANY IDEA THAT THERE WAS

2    NO NOTICE SHOULD BE DISCOUNTED AS CONTRARY TO THE FACTS

3    ALLEGED IN THAT COMPLAINT.

4            SO, I'LL MOVE ON THEN TO SAY THAT WHAT COUNSEL HAS

5    SAID IS THAT AMENDMENT OF THE SECTION 2 CLAIM COULD

6    POTENTIALLY SAVE IT.

7            BUT THE ONLY ARGUMENT I HEARD IN THAT PARTICULAR

8    AREA IS THAT SOME NEW DOCUMENTS MIGHT EXIST THAT THE

9    PLAINTIFFS DIDN'T POSSESS PRIOR TO APRIL 13TH WHEN THE FIRST

10   AMENDMENT COMPLAINT WAS FILED THAT MIGHT ALLOW PLAINTIFFS TO

11   ALLEGE SOME MORE DETAIL THEY CLAIM WITH RESPECT TO THE

12   INTENT OF THE STATE BAR – NOW -- OR  -- OR OTHER DEFENDANTS

13   HERE.

14           NOW, YOU KNOW, I THINK OUR POSITION ON THE DEFENSE

15   SIDE IS THAT THAT'S UNLIKELY.  WE DON'T BELIEVE THAT'S THE CASE.

16           BUT MOST IMPORTANTLY WITH RESPECT TO THAT, YOUR

17   HONOR, IS THAT NONE OF THOSE DOCUMENTS WOULD HAVE ANY

18   BEARING ON THE COURT'S RULING ABOUT WHETHER OR NOT THERE'S A

19   COGNIZABLE ANTITRUST INJURY IN THIS CASE.  THAT IS SOMETHING

20   THAT WOULD HAVE BEEN WELL AWARE -- THE PLAINTIFFS WOULD HAVE

21   BEEN WELL AWARE OF PRIOR TO APRIL 13TH IF THERE ACTUALLY WAS

22   SOME SORT OF COGNIZABLE INJURY TO THE ENTIRE MARKET.  AND

23   MORE DOCUMENTS ARE NOT GOING TO SHED ADDITIONAL LIGHT ON

24   WHETHER THAT INJURY EXISTS.

25           SO, IN THAT SENSE AMENDMENT WOULD BE FUTILE.  AND WE

1    WOULD ASK THAT THE SECTION 2 CLAIM BE DISMISSED WITH

2    PREJUDICE.

3            NOW, GIVEN OUR POSITION  -- THE STATE BAR'S POSITION ON

4    THOSE TWO CLAIMS, I'LL ADDRESS LASTLY THE COURT'S QUESTION

5    REGARDING WHETHER YOU SHOULD CONTINUE ON TO ADDRESS THE

6    OTHER CLAIMS.

7            I THINK OUR -- THE STATE BAR'S POSITION  -- AND I'LL LET

8    DEFENSE COUNSEL SPEAK FOR THEMSELVES FOR TYLER AND FOR

9    RICK RANKIN  -- BUT THE CLAIMS HERE ARISE FROM THE SAME CORE

10   SET OF OPERATIVE FACTS.

11           AS YOUR HONOR RECOGNIZED, THE FACTS THAT PLAINTIFFS

12   BASE THEIR ANTITRUST CLAIMS ON ALLEGE SOMETHING RELATED TO A

13   DATA BREACH SORT OF CLAIM.  THOSE ARE THE SAME ALLEGED FACTS.

14   AND MANY OF THEM ARE CONCLUSORY AND NOT WELL PLED AND

15   DON'T -- DON'T SATISFY THE CLAIMS AS THE DEFENSE HAS ARGUED IN

16   OUR BRIEFING.  BUT THOSE SAME FACTS SUPPORT THESE OTHER

17   CLAIMS.

18           SO, BECAUSE THEY ARISE FROM THAT SAME CORE OF

19   OPERATIVE FACT, WE THINK SUPPLEMENTAL JURISDICTION IS ENTIRELY

20   APPROPRIATE AND INDEED EFFICIENT FOR THE COURT TO ADDRESS

21   THOSE CLAIMS TO DISMISS THEM ALTOGETHER IN ONE COMPLAINT AND

22   TO ADDRESS ALL OF THE CLAIMS IN THAT SENSE.

23           THE COURT:  SO, LET ME TELL YOU MY CONCERN ABOUT THAT

24   --

25           MR. ANDERSON:  YEAH.

1          THE COURT:   -- WHICH IS THERE MIGHT BE SOME CLAIMS IN

2    THOSE OTHER CLAIMS THAT I WOULD FEEL LESS COMFORTABLE

3    DISMISSING AT THIS EARLY STAGE.

4          AND IF THAT'S THE CASE – OBVIOUSLY, THIS CASE HAS BEEN

5    WITH ME.  IT'S BEEN IN THIS COURT FOR A VERY SHORT TIME.  IT'S BEEN

6    WITH ME FOR EVEN A SHORTER TIME.  IT  -- IT SEEMS TO ME TO BE THE

7    KIND OF MATTER THAT IS A  -- IT'S A  -- IT WOULD  -- WITHOUT THE

8    SHERMAN ACT CLAIMS IT WOULD INVOLVE STRICTLY STATE LAW

9    CLAIMS.

10         MS. ALBERT'S CLASS OF POTENTIAL DEFENDANTS IS  -- I'LL

11   SAY LARGELY CALIFORNIA RESIDENTS.  AND THERE ARE MATTERS OF

12   STATE LAW FOR THINGS THAT HAPPEN WITHIN THE STATE OF

13   CALIFORNIA.

14         MY COLLEAGUES OVER IN THE SUPERIOR COURT WOULD BE

15   HAPPY TO HAVE THAT KIND OF LITIGATION.  AND THAT'S THE KIND OF

16   LITIGATION THAT I THINK WOULD BE -- WHERE THE PARTIES MIGHT BE

17   WELL SERVED TO BE OVER THERE RATHER THAN OVER HERE.

18         AND I GUESS I DON'T KNOW WHAT – YOU KNOW, ME WADING

19   INTO WHETHER THE IPA CLAIM OR THE CTCA THIS OR THAT, YOU KNOW,

20   ALL THESE ISSUES OF CALIFORNIA LAW, I DON'T KNOW IF ME WADING

21   INTO THAT MURK AT THIS STAGE WOULD BE HELPFUL TO ANYONE.

22         FOR PURPOSES OF JUST EFFICIENCY AND GETTING YOU ALL

23   WHERE YOU'RE ULTIMATELY GOING TO END UP BEING, IF WE'RE GOING

24   TO NOT HAVE THE SHERMAN ACT CLAIMS I'D LIKE TO FIND THAT OUT AS

25   QUICKLY AS POSSIBLE.  AND THEN MAKE A FINAL DECISION ON

1    WHETHER SUPPLEMENTAL JURISDICTION IS APPROPRIATE OR NOT.

2          AND IF NOT, THEN -- NOT TO SOUND LIKE PEJORATIVE BUT

3    GET YOU OUT OF HERE AND GET YOU OVER TO WHERE FOLKS IN --

4    ACROSS THE PLAZA HERE.

5          REACTION TO THAT.  AND THEN I'LL LET YOU TURN THINGS

6    OVER TO YOUR CO-COUNSEL.

7          MR. ANDERSON:  YES, YOUR HONOR.

8          I THINK  -- YOU KNOW, THE POSITION I HAD GIVEN YOU RIGHT

9    NOW IS OBVIOUSLY ONE THAT WE HAVEN'T FULLY CONSIDERED.  WE

10    HAVEN'T FULLY LOOKED AT ALL OF IT.  AND, SO, IF YOUR HONOR IS

11    INCLINED TO GRANT THE PLAINTIFFS A CHANCE TO AMEND, ALTHOUGH,

12    YOU KNOW, WE BELIEVE THAT IT WOULD BE FUTILE TO DO SO, THE

13    PARTIES  -- THE DEFENSE WOULD BE HAPPY TO SUBMIT SUPPLEMENTAL

14    BRIEFING ON WHETHER OR NOT SUPPLEMENTAL JURISDICTION IS

15    APPROPRIATE HERE.

16          THE COURT:  OKAY.

17          ALL RIGHT.  LET ME ASK YOUR COUNSEL  -- YOUR

18    CO-COUNSEL TO COMMENT.

19          AND MS. PETRONIO, YOU'RE CLOSEST TO  -- YOU APPEAR TO

20    BE SITTING IN ORDER SO THAT'S GREAT.

21          MS. PETRONIO:  THANK YOU, YOUR HONOR.

22          LET ME JUST CONCUR WITH EVERYTHING THAT

23    MR. ANDERSON HAS SAID ON BEHALF OF THE STATE BAR.

24          WE AGREE OBVIOUSLY WITH YOUR HONOR'S STATEMENTS

25    ABOUT THE INVALIDITY OF THE ANTITRUST CLAIMS.  I'M GOING TO

1  FOCUS JUST ON A COUPLE OF THINGS THAT I THINK ARE SPECIFIC TO

2  TYLER AND THAT I THINK MAKE IT CLEAR THAT LEAVE TO AMEND

3  WOULD BE FUTILE WITH RESPECT TO TYLER.

4          OBVIOUSLY, YOUR HONOR IS AWARE FROM THE PLEADINGS

5  TYLER TECHNOLOGIES SOLD AN ODYSSEY SYSTEM TO THE STATE BAR

6  OF CALIFORNIA.

7          WHAT I HEAR AS THE FACTUAL BASIS FOR THE ANTITRUST

8  CLAIM ARE REALLY TWO SORT OF AMORPHOUS FACTUAL THINGS.  ONE

9  IS A COMPLAINT ABOUT HOW THE STATE BAR DECIDES WHO AND HOW

10  THEY'RE GOING TO DISCIPLINE PEOPLE, AND THAT THAT'S AN

11  ANTICOMPETITIVE ACT DESIGNED TO ASSIST LARGE FIRMS VERSUS

12  SOLO PRACTITIONERS.

13          TYLER HAS NOTHING WHATSOEVER TO DO WITH THE STATE

14  BAR'S DISCIPLINARY PROCEDURE.  THEY MERELY PROVIDE A RECORDS

15  MANAGEMENT SYSTEM TO THE STATE BAR.

16          AND WITH RESPECT TO THE ISSUES ABOUT NOTICE THAT

17  MS. ALBERT REFERENCED, OBVIOUSLY NOTICE WAS GIVEN HERE.  IT'S

18  INCORRECT TO SAY THAT THERE WAS NO NOTICE GIVEN.

19          BUT TYLER, AGAIN, IS NOT INVOLVED IN NOTICE.  TYLER IS A

20  SOFTWARE COMPANY THAT PROVIDED A RECORD MANAGEMENT

21  SYSTEM.  TYLER DOESN'T HAVE THE ADDRESSES OF THE PEOPLE TO

22  GIVE NOTICE TO, WASN'T INVOLVED IN THAT PROCESS, WAS

23  SUPPORTIVE OF THAT PROCESS WITH THE STATE BAR BUT, YOU KNOW,

24  WASN'T NECESSARILY INVOLVED.

25          SO, I DON'T THINK BASED ON THE SORT OF AMORPHOUS

1    FACTS THAT MS. ALBERT IS TALKING ABOUT THAT SHE BELIEVES SHE

2    CAN PUT IN AN AMENDMENT THAT THERE'S ANY WAY TO STATE A CLAIM

3    AGAINST TYLER TECHNOLOGIES FOR ANTITRUST. I DON'T THINK

4    THERE'S A WAY FOR HER TO STATE A CLAIM FOR ANTITRUST AGAINST

5    ANY OF THE DEFENDANTS HERE.

6            AND I DON'T THINK YOU HEARD ANY SPECIFIC RESPONSE TO

7    THE ACTUAL LEGAL ISSUES, INCLUDING THE IMMUNITY ISSUE YOU

8    RAISED AND INCLUDING THE ANTITRUST DAMAGES ISSUES YOU RAISED.

9    SO, I THINK IT WOULD BE FUTILE.

10           I WOULD SAY WITH RESPECT TO THE ISSUE OF REMAND. IF

11   YOUR HONOR IS INCLINED FOR -- IS INCLINED -- AND I WOULD CONCUR

12   WITH MR. ANDERSON. IF YOU'RE AT ALL INCLINED TO REMAND – NOT

13   PROVIDE LEAVE ON THE ANTITRUST CLAIMS AND THEN REMAND, I THINK

14   IT WOULD BE OUR POSITION THAT WE SHOULD BE ABLE TO SUBMIT

15   SOME ADDITIONAL BRIEFING ON THE DISCRETIONARY SUPPLEMENTAL

16   JURISDICTION ISSUE.

17           IF YOU DO NOT ALLOW HER LEAVE TO AMEND THE ANTITRUST

18   CLAIMS -- I'M SORRY, IF YOU DO ALLOW HER TO -- LEAVE TO AMEND

19   THE ANTITRUST CLAIMS I WOULD JUST SAY I THINK THERE IS

20   INEFFICIENCY BRED INTO THAT PROCESS. I UNDERSTAND THE COURT

21   HAS ITS --

22           THE COURT: I WANT TO TALK ABOUT THAT IF WE'RE GOING TO

23   GO THAT WAY. AND HOW TO DO THAT IN A WAY THAT DOES NOT

24   CREATE SOME OF THOSE INEFFICIENCIES. BECAUSE I DO NOT WANT

25   THE PARTIES TO SPIN THEIR WHEELS DOING A BUNCH OF STUFF. THAT

1    WOULD NOT BE HELPFUL TO ME IN TERMS OF ADVANCING THE BALL ON

2    THAT.

3         IF WE'RE GOING TO AMEND, I WILL DISCUSS WITH MS. ALBERT

4    THAT THEN THE AMENDMENT SHOULD BE LIMITED TO THE SHERMAN

5    ACT CLAIMS.

6         AND THAT, YOU KNOW, IF THE CASE IS GOING TO PROCEED

7    HERE IN SOME WAY, SHAPE OR FASHION, WE'LL FIGURE OUT SOME WAY

8    TO GET YOU A RULING ON THE MOTIONS TO DISMISS THAT YOU'VE

9    BROUGHT AS TO THE STATE LAW CLAIMS WITHOUT REQUIRING YOU TO

10   ENTIRELY BRIEF THOSE AGAIN FROM SCRATCH.

11        IF THERE ARE OTHER INEFFICIENCIES THAT YOU'RE

12   CONCERNED ABOUT, TELL ME ABOUT THOSE BECAUSE I WANT TO MAKE

13   SURE THAT WE HAVE A PROCESS FOR THAT.

14        MS. PETRONIO:  NO, YOUR HONOR.  YOU'VE HIT ON WHAT

15   CONCERNS ME IS THAT I THINK THERE ARE SOME OTHER ASPECTS OF

16   THE MOTIONS TO DISMISS THAT CLEARLY ON THEIR FACE SHOULD BE

17   GRANTED AND MIGHT LEAD TO ANOTHER LEAVE TO AMEND.

18        SO, WHAT I'M REALLY TRYING TO AVOID IS SHE GETS LEAVE

19   TO AMEND.  WE FILE ANOTHER MOTION TO DISMISS.  THEN, WE GO TO

20   STATE COURT AND --

21        THE COURT:  I HAVE SOME OF THOSE CONCERNS TOO.  AT

22   THE SAME TIME I, YOU KNOW -- I'LL CONFESS TO YOU.  MAYBE YOU

23   DON'T -- MAYBE YOU DO OR DON'T KNOW ABOUT ME.  I DON'T – YOU ALL

24   CONSENTED TO ME.  I DON'T KNOW WHY THAT HAPPENED OR HOW

25   THAT HAPPENED.  BUT, YOU KNOW, I'VE PRACTICED IN THIS

1    COURT HOUSE FOR 22 YEARS, WHICH, YOU KNOW, I'M NOT THAT OLD.

2    SO, THAT'S THE MAJORITY OF MY CAREER.

3            I HAVEN'T SET FOOT IN THE STATE COURT HOUSE IN A LONG,

4    LONG, LONG TIME.  SO, I DON'T – YOU KNOW, I KNOW THEY HAVE

5    DIFFERENT PROCEDURES AND THINGS LIKE THAT.  AND I DON'T KNOW

6    WHETHER THEIR STANDARD FOR A DEMURRER IS THE SAME AS THE

7    FEDERAL STANDARD FOR A 12(B)(6).  IT'S BEEN A QUARTER CENTURY.

8            (LAUGHTER.)

9            THE COURT:  SO, I DON'T -- AND, SO, I DON'T KNOW WHETHER I

10   SHOULD BE DISMISSING ON 12(B)(6) CLAIMS THAT MIGHT SURVIVE

11   UNDER THE STATE CODE OF CIVIL PROCEDURE.

12            AND I'M RETICENT TO DO SOMETHING LIKE THAT. AND JUST

13   BECAUSE AS I SORT OF SAID AT THE OUTSET I WANT TO BE MINDFUL OF

14   WHERE THIS CASE ULTIMATELY -- THIS CASE IS ULTIMATELY GOING TO

15   END UP.  AND THE TRIAL JUDGE WHO MAY HAVE IT MAY NOT BE ME, SO.

16            MS. PETRONIO:  I UNDERSTAND, YOUR HONOR.

17            I GUESS WE'RE PROBABLY JUST TRYING TO AVOID SORT OF

18   FOUR ROUNDS OF BRIEFING ON A MOTION TO DISMISS.  AND  --

19            THE COURT:  AND I WANT TO MAKE SURE -- THAT'S MY POINT.

20   I WANT TO MAKE SURE THAT WE DON'T HAVE EXTRA ROUNDS HERE.

21            MS. PETRONIO:  YEAH.

22            THE COURT:  IF WE'RE GOING TO END UP OVER THERE, I

23   DON'T WANT THERE TO BE EXTRA ROUNDS.

24            MS. PETRONIO:  ONE SUGGESTION I MIGHT MAKE IS I THINK

25   THERE ARE SOME CLEAR AREAS WHERE -- THAT RELATE TO THE

1    NON-ANTITRUST CLAIMS WHERE --

2            (AUDIO INTERFERENCE.)

3            THE COURT:  CAN'T FIGURE OUT HOW TO MAKE THAT STOP.

4            GO AHEAD.

5            MS. PETRONIO:  -- WHERE BASED ON OUR MOTION IT WOULD

6    BE I THINK WISE FOR MS. ALBERT TO TAKE THE OPPORTUNITY TO

7    AMEND NOW THINGS LIKE THE NOTICED PROVISIONS THAT CAME OUT

8    AFTER HER FIRST AMENDED  -- THE NOTICES THAT PEOPLE RECEIVED.

9            THERE ARE  -- THERE ARE SOME THINGS BEYOND THE

10    ANTITRUST CLAIM THAT I WOULD -- I WOULD JUST PREFER IF SHE'S

11    GOING TO AMEND ON OTHER THINGS THAT SHE DO THAT NOW.

12            IT MAY ULTIMATELY NOT BE SUBJECT TO A MOTION TO

13    DISMISS BEFORE THIS COURT.  BUT IT MIGHT RESOLVE SOME ISSUES

14    THAT WOULD ARISE IN LATER BRIEFING IF SHE WERE ABLE TO ADDRESS

15    SOME OF THE OTHER ISSUES BY AMENDING OUTSIDE THE CONTEXT OF

16    JUST THE ANTITRUST CLAIMS IF SHE'S GIVEN LEAVE TO AMEND THOSE.

17            THE COURT:  OKAY.  THANK YOU.

18            MR. GOLD.

19            SOMETIMES WHEN YOU CHOOSE TO SPEAK LAST, YOU GET TO

20    SPEAK LESS.  SOMETIMES YOU HAVE TO SPEAK MORE.

21            MR. GOLD:  RIGHT.

22            THE COURT:  YOU NEVER KNOW.

23            MR. GOLD:  VERY -- VERY BRIEFLY, YOUR HONOR.

24            MY CLIENT MR. RANKIN IS NOT NAMED IN THE ANTITRUST

25    CLAIMS.  AND, THEREFORE, I HAVE NO -- I HAVE NO COMMENT ON THAT.

1           ALTHOUGH, I DO WANT TO REITERATE AND EMPHASIZE THAT

2     MY CLIENT HAS A VERY SIGNIFICANT INTEREST IN THE COURT'S

3     EXERCISE OF ITS SUPPLEMENTAL JURISDICTION.

4           AND SO --

5           THE COURT:  WHY IS THAT?

6           MR. GOLD:  TO --

7           THE COURT:  WE MAY PUT THAT  -- WE MAY BE PUTTING THAT

8     -- THIS DISCUSSION BEFORE THE SUPPLEMENTAL JURISDICTION HORSE.

9     BUT  -- BUT EXPLAIN THAT TO ME.

10          MR. GOLD:  YEAH, I SUPPOSE.  I MEAN, I WAS  -- I WAS  -- I WAS

11    SIMPLY ECHOING WHAT MY OTHER DEFENSE COUNSEL WERE SAYING.

12          I DIDN'T MAKE THE COMMENT TO  -- NECESSARILY TO ENGAGE

13    THE COURT IN AN EXTENSIVE BACK AND FORTH ON THE SUBJECT.  I

14    JUST WANTED TO LET THE COURT KNOW THAT MY CLIENT DOES HAVE

15    AN INTEREST IN THE SUBJECT.

16          THE COURT:  WELL, AND IT MAY BE THAT YOU ALL DIDN'T

17    COME TODAY EXPECTING TO TALK ABOUT SUPPLEMENTAL

18    JURISDICTION.  AND I RESPECT THAT.

19          I THINK WE  -- WE WERE  -- WE'VE HAD TO ROLL UP OUR

20    SLEEVES AND WORKED ON THE MOTIONS FOR SEVERAL DAYS BEFORE

21    WE KIND OF REALIZED THAT IT MIGHT BE A  -- LOOKING AROUND THE

22    CORNER AN ISSUE THAT MIGHT BE OUT THERE.

23          SO, I UNDERSTAND THAT.

24          ALL RIGHT.  MS. ALBERT, LET ME ASK YOU.

25          OH, SORRY.  AND DO ANY OF THE COUNSEL ON THE PHONE  --

1    YOUR COLLEAGUES ON THE PHONE, MR. ANDERSON, WANT -- WANT TO

2    ADD ANYTHING?

3            MR. ANDERSON:  I DON'T BELIEVE SO.

4            BUT I'LL LET TIANA SPEAK IF SHE IS  --

5            THE COURT:  ALL RIGHT.  MS. DEMAS.

6            MS. DEMAS:  NO, YOUR HONOR.  IT'S BEEN WELL COVERED.

7            THANK YOU.

8            THE COURT:  ALL RIGHT.

9            MS. ALBERT, LET ME ASK YOU TO HAVE THE FINAL WORD.

10           AND THEN I WANT TO JUST BOUNCE A COUPLE OF THINGS

11   OFF COUNSEL IN TERMS OF HOW WE MIGHT HANDLE THINGS.

12            MS. ALBERT:  IT'S -- THE U.S. SUPREME COURT CASE WHICH I

13   HAD BRIEFED WAS <u>GOLDFARB VERSUS VIRGINIA STATE BAR</u>.

14           THE COURT:  OKAY.

15           MS. ALBERT:  AND IN THAT CASE THEY SPECIFICALLY FOUND

16   THAT PARKER IMMUNITY DID NOT EXIST FOR THE STATE BAR OF

17   VIRGINIA UNDER AN ANTITRUST CLAIM.

18           THE FACTS ARE INAPPOSITE.  THERE THEY HAD A COST

19   SHEET IF YOU DEALT WITH REAL ESTATE MATTERS AND THAT STATE IN

20   VIRGINIA YOU NEED TO HAVE A LICENSED ATTORNEY TO HELP YOU IF

21   YOU WANTED TO GO THROUGH ESCROW.  AND THEY HAD A COST

22   SHEET THAT WAS ATTACHED TO THAT.

23           AND, SO, THE U.S. SUPREME COURT SAID THE STATE BAR IS

24   NOT IMMUNE BY LAYING OUT A PRICE THAT ATTORNEYS NEEDED TO

25   CHARGE AND THAT THE ANTITRUST CLAIMS COULD GO FORWARD.

 1    THAT WAS GOLDFARB VERSUS VIRGINIA STATE BAR.  AND THEY DID

 2    FIND THAT THAT WAS AN ANTITRUST INJURY.

 3          OBVIOUSLY, WE ARE NOT PLEADING A PRICE-FIXING CASE

 4    HERE.

 5          AND I DO WANT TO MENTION THAT IF WE WERE ALLOWED TO

 6    CHANGE THE SECTION 3 TO A SECTION 1 CLAIM, WE ARE TALKING

 7    ABOUT THE AGREEMENT.

 8          AND THAT IS WHERE I THINK THAT THE STRONGEST EVIDENCE

 9    THAT KEVAN SCHWITZER GAVE TO US WHERE HE HAD

10    COMMUNICATIONS BETWEEN TYLER TECHNOLOGIES AND THE STATE

11    BAR IS YOU CAN SEE THE CONSPIRACY.  WE CAN SEE THE AGREEMENT.

12          AND WE COULD SEE THE AGREEMENT ON WHAT THEY'RE

13    CALLING THE ACTIONS THAT THEY TOOK OR THE ACTIONS THAT THEY

14    DECIDED TO TAKE INSTEAD OF THE ACTIONS THAT STATE LAW

15    REQUIRES.

16          SO, IF THEY TOOK ACTIONS THAT STATE LAW DIDN'T REQUIRE

17    BECAUSE THEY THOUGHT IT WAS GOING TO BENEFIT TYLER

18    TECHNOLOGIES AND THE STATE BAR, WHO BOTH IN THEIR OWN RIGHT

19    HAVE MONOPOLIES ON EACH SIDE OF THE COIN HERE.  AND THAT IS

20    ILLEGAL BECAUSE IT WAS UNLAWFUL WHAT THEY DID.  THAT IS AN

21    ANTITRUST VIOLATION BY DEFINITION.  IT'S A VERY SIMPLE ONE.  BUT IT

22    IS ANTITRUST VIOLATION.

23          IT ALSO IS FRAUD.  BUT YOU DON'T NECESSARILY GET THAT.

24    AND YOU DON'T NECESSARILY GET THOSE COMMUNICATIONS.  THIS IS

25    THE EXACT REASON WHY WE SETTLED WITH KEVAN SCHWITZER.  AND

1    HE IS NOT SITTING THERE ON THE DEFENSE DESK RIGHT NOW IS

2    BECAUSE HE TURNED OVER THAT KIND OF INFORMATION TO US WHICH

3    IS VALUABLE BECAUSE WE UNDERSTOOD WE HAD AN UPHILL BATTLE.

4            AND GOING TO THE NOTICE ISSUE, IT IS THAT THEY ALL

5    AGREED ON THIS KIND OF, QUOTE, UNQUOTE, NOTICE.

6            WHEN WE FILED THIS CASE THERE WAS NO NOTICE.  AND I

7    STILL CONTEND THERE IS NO NOTICE TODAY TALKING ABOUT WHETHER

8    THERE'S PAGE VIEWS OR NOT PAGE VIEWS BY A GOOGLE ANALYTICS

9    WHEN WE DON'T EVEN KNOW HOW MANY THEY TESTED  -- MAYBE 30,000

10   INSTEAD OF 322,000.

11           TAKE THAT SOCIAL SECURITY NUMBER ALONE THAT THE

12   DEFENDANTS ADMITTED IN THEIR, QUOTE, UNQUOTE, NOTICE.  A

13   SOCIAL SECURITY NUMBER IS NOT A CASE NUMBER.  IT IS NOT A

14   DOCKET NUMBER.  IT IS  -- IT IS NOT THE NAME OF AN ATTORNEY.  AND

15   IT IS NOT THE NAME OF A WITNESS.  BUT YET THEY'VE AT LEAST

16   ADMITTED THAT WAS THERE.

17           IF THEY TESTED 30,000 DOCUMENTS OVER 322,000

18   DOCUMENTS, THAT MEANS THAT 10 OTHER SOCIAL SECURITY NUMBERS

19   EXIST.

20           WHEN YOU'RE TALKING ABOUT ACCESS-CONTROLLED CHECK

21   -- AND I WANT TO MAKE SURE I MAKE THIS VERY CLEAR  -- IF WE WERE

22   SITTING HERE AND WE HAD FILES -- LITERAL PHYSICAL FILES.  AND WE

23   PUT THEM IN A FILE ROOM AND WE CLOSED THE DOOR AND WE LOCK

24   THAT DOOR. ON THE INTERNET ACCESS-CONTROLLED CHECK SAYS

25   THIS IS A DOOR.  AND IF YOU HAVE THE KEY TO OPEN UP THIS DOOR

1    YOU OPEN IT.  YOU CAN GO IN AND GET THE FILES.  THERE WAS NO

2    ACCESS-CONTROL CHECK.  THEY DIDN'T PUT THAT DOOR ON THESE

3    FILES.

4              IF AN ATTORNEY SAT HERE AND SOMEONE COMPLAINED THAT

5    -- THAT FILES WERE TAKEN BECAUSE THE ATTORNEY JUST HAD FILES

6    SITTING OUT IN AN UNLOCKED DOOR WHERE ANYONE COULD GO

7    WITHOUT IT BEING CHECKED ARE YOU AUTHORIZED TO GO IN, THAT

8    ATTORNEY COULD BE SUSPENDED OR DISBARRED.  THAT'S A

9    BLACK-AND-WHITE LETTER RULE.

10              THE STATE BAR DIDN'T CHECK IF THEY HAD A DOOR WITH AN

11    ACCESS-CONTROL CHECK WITH A KEY.  TYLER TECHNOLOGIES WHO

12    CREATED THE SOFTWARE DIDN'T CHECK TO SEE IF THERE WAS A DOOR

13    WITH A KEY.  AND RICK RANKIN, THE I.T. DIRECTOR, WHO WAS THE

14    INTERIM I.T. DIRECTOR DID NOT CHECK TO SEE IF THERE WAS A DOOR

15    WITH A KEY.

16              AND IT'S NOT FROM OCTOBER 15TH.  THAT'S JUST WHEN

17    KEVAN SCHWETZER TOOK THOSE RECORDS, A THIRD PARTY.

18              THIS HAPPENED WHEN IT WAS IMPLEMENTED IN 2018.  THOSE

19    RECORDS HAVE BEEN SITTING OUT THERE FOR ANYONE TO TAKE,

20    GOOGLE INDEX AND PUT ON THE DARK WEB FOR NEARLY THREE

21    YEARS.

22              SO, I JUST WANT TO MAKE THE CONCEPT CLEAR TO

23    EVERYBODY IN THE ROOM WHAT AN ACCESS-CONTROL CHECK REALLY

24    MEANS.

25              IT'S – IT'S  -- IT'S A LOT MORE LARGER AND MORE DANGEROUS

1    THAN IT SOUNDS.  AND WHEN OTHER PEOPLE FIND OUT -- THEY THINK

2    THAT THERE WAS A CASE AGAINST SOMEONE, IT COULD  -- ANYONE

3    COULD CLAIM ABOUT ANYTHING.

4            DURING DIVORCE CASES A LOT OF TIMES A SPOUSE WILL

5    COMPLAIN THAT THE OTHER SPOUSE MOLESTED THEIR CHILD IN A

6    CHILD DISPUTE -- ALTHOUGH IT'S COMPLETELY WRONG.

7            THAT'S WHY THOSE CASES ARE MEANT TO BE CONFIDENTIAL.

8    IT DOESN'T MEAN THAT THEY WERE LEGITIMATE.

9            WE HAD 322,000 CASES – WHICH IS MORE THAN THE ACTIVE

10   ATTORNEY MEMBERS IN THE STATE OF CALIFORNIA OUT THERE ON THE

11   INTERNET FOR UP TO THREE YEARS FOR ANYONE TO TAKE AND FOR

12   ANYONE TO USE.  AND ONCE THAT REPUTATION IS GONE, IT'S TAINTED.

13   IT TAINTS THAT ATTORNEY.

14           AND FOR A COMPLAINING WITNESS, WHAT IF THEY WERE

15   COMPLAINING ABOUT THEIR SUPERVISOR.  AND THOSE THINGS

16   HAPPEN.

17           IT ALL IS  -- TAINTS THAT EMPLOYEE FOREVER.  IT TAINTS

18   THAT WITNESS, THAT PERSON WHO MIGHT NEED LEGAL HELP KNOWING

19   THAT THEY WERE A COMPLAINING WITNESS.  THIS HARMS A LOT OF

20   PEOPLE.  AND ONCE IT'S OUT ON THE INTERNET, YOU CAN'T GET IT

21   BACK.

22           KEVAN SCHWITZER WAS ABLE TO TAKE IT OFF HIS WEBSITE.

23   NO ONE CAN TAKE IT OFF THE DARK WEB.  MAYBE YOU CAN GET

24   GOOGLE TO UNINDEX THEM.  BUT FOR THE PAST THREE YEAR IT'S OUT

25   THERE IN A LOT OF PLACES.

1    SO, WHEN YOU TAKE THAT INTO CONTEXT, AND THEN YOU

2    LOOK AT THE REACTION OF THE STATE BAR AND THE REACTION AT

3    TYLER TECHNOLOGIES  -- TWO LARGE ORGANIZATIONS THAT HAVE

4    PLENTY OF RESOURCES TO TRY TO STOP THIS HARM, TRY TO PROTECT

5    THE PEOPLE, TRY TO NOTIFY THE VICTIMS AND TELL THEM YOUR

6    RECORD WAS OUT THERE ON THE INTERNET.  THEY NEVER DID THAT.

7    THEY SAID WE DON'T SEE ANY EVIDENCE OF YOUR PAGE VIEWS.

8    WELL, THEY HAVE EVERY INCENTIVE TO LOWER THAT

9    NUMBER TO SAY HOW MANY PEOPLE HAD PAGE VIEWS INSTEAD OF

10    SAYING THAT THIS WAS 322,525 RECORDS THAT WERE OUT THERE.

11    SO, YOUR HONOR, I DO REQUEST LEAVE TO AMEND.  I

12    UNDERSTAND THE INEFFICIENCIES.  WE CAN CREATE OUR OWN

13    PROCEDURE HERE.  YOU KNOW, LIMIT IT TO THOSE TWO CLAIMS.

14    I DO AGREE WITH MS. PETRONIO BECAUSE MORE IS KNOWN

15    NOW THAN WAS IN APRIL THAT THERE ARE SOME THINGS THAT LEAVE

16    TO AMEND -- FOR EXAMPLE, THE PERSON WHO ACTUALLY NOTIFIED THE

17    STATE BAR DID NOT NOTIFY HIM ON FEBRUARY 24TH LIKE THE STATE

18    BAR SAID.  THEY WERE NOTIFIED ON FEBRUARY 21ST.  I KNOW THAT

19    BECAUSE THAT PERSON CONTACTED ME.

20    MENTAL AND HEALTH ISSUES, THAT PERSON CONTACTED ME,

21    TOO.

22    THE  -- THERE ARE LAW STUDENTS WHO WERE A PART OF

23    THIS BREACH FOR MORAL CHARACTER.  THERE WERE PEOPLE, YOU

24    KNOW, ATTEMPTING TO BECOME A LAWYER HERE.

25    THERE ARE OBVIOUSLY PEOPLE WHO WERE UNDER

1    INVESTIGATION BUT HAVE NEVER BEEN DISCIPLINED.  SO, THEIR

2    RECORD LOOKS PRISTINE.

3         THIS BREACH WAS A LOT LARGER THAN WHAT WAS

4    REPRESENTED BY THE PEOPLE WHO HAVE SENT ME NOTICES AND

5    TOLD ME WHAT THEY KNEW THAT THE STATE BAR KNEW ABOUT THEM.

6         BUT YET THE STATE BAR DID NOTHING AT LEAST UNTIL MAY

7    23RD TO JULY 11TH.  AND THEY KNEW ABOUT THIS IN FEBRUARY.

8         UNDER THE STATE STANDARD 10 BUSINESS DAYS IS WHEN

9    YOU'RE SUPPOSED TO GIVE NOTICE.  THEY STILL HAVEN'T OFFERED

10   ANYTHING IN A NORMAL DATA BREACH CASE LIKE WE WILL MONITOR,

11   YOU KNOW, WHAT'S GOING ON.  WE WILL GIVE YOU FREE  -- FREE

12   CREDIT MONITORING.  WE WILL DO A.  WE WILL DO B.

13        I'M GETTING COMPLAINTS FROM SOME PLAINTIFFS WHICH I

14   CAN NOW ADD IN TO THE COMPLAINT ON SPECIFIC HARMS WHICH I

15   DIDN'T HAVE BEFORE.

16        SO, I REQUEST -- THIS IS THE FIRST TIME WE'VE ACTUALLY

17   HAD A JUDGE TO WEIGH IN ON OUR CASE, THAT WE HAD  -- BE GIVEN

18   SOME LENIENCY ON LEAVE TO AMEND.

19        THANK YOU.

20        THE COURT:  ALL RIGHT.  COUNSEL, THIS IS A LOT OF INPUT

21   FOR ME TO CHEW ON.  SO, LET ME DO THAT.

22        AND THEN WE'LL HAVE AN ORDER FOR YOU.

23        I WANT TO GIVE SOME THOUGHT TO SOME OF THE THINGS

24   THAT I STARTED OUT WITH AND ALSO SOME OF THE COMMENTS THAT

25   YOU'VE MADE.  BUT WE'LL HAVE SOMETHING SHORTLY FOR YOU.

1       AND I'M  --  I WOULD SAY I'M HIGHLY UNLIKELY THAT I'M GOING

2    TO GRANT MOTIONS TO DISMISS OF SIGNIFICANT PORTIONS OF THE

3    PLAINTIFF'S CASE WITHOUT LEAVE TO AMEND GIVEN THAT THERE

4    HASN'T BEEN A PREVIOUS SUBSTANTIVE AMENDMENT, YOU KNOW,

5    AFTER A MOTION TO DISMISS BEFORE.  I'LL SAY THE QUIET PART OUT

6    LOUD.  THE NINTH CIRCUIT DOESN'T LIKE THAT.  AND, SO, I'M

7    DISINCLINED TO DO IT.

8       SO  --  BUT WE'LL DO SOMETHING SHORTLY.  AND WE'LL TRY

9    TO KEEP IN MIND EVERYONE'S CONCERNS ABOUT EFFICIENCY AND

10    BALANCE – THOSE AGAINST MY CONCERNS ABOUT NOT  --  NOT  --  NOT

11    BEING  --  BEING  --  NOT STEPPING ON THE TOES OF WHAT MIGHT BE A

12    DIFFERENT JUDGE SOMEDAY IF THAT ENDS UP BEING WHAT'S

13    HAPPENED.

14       ALL RIGHT.  WE'LL HOPEFULLY HAVE SOMETHING OUT

15    SHORTLY.

16       AND I'M GOING TO HOLD THEN OFF ON BOTH  --  I THINK FOR

17    THE TIME BEING ON BOTH THE ANONYMITY PROTECTIVE ORDER ISSUES

18    AS WELL AS THE SCHEDULING ORDER.

19       I DON'T WANT TO SET DATES HERE TO HAVE THOSE BECOME

20    IMPOSSIBLE AT SOME FUTURE TIME.  BUT WE HAVE THOSE  --  BOTH

21    THOSE ISSUES IN MIND.  AND WE WON'T LET THEM SLIP.

22       AND WE HAVE TO HAVE YOU BACK IN, YOU KNOW, A SHORT

23    PERIOD OF TIME OR AFTER WE GET SOME AMENDMENT MADE OR

24    WHATEVER WE DO.  I HAVE TO GET THAT DONE.  WE'LL DO THAT.

25    WHETHER IT BE IN PERSON OR IN SOME SORT OF OTHER SETTING.

1          OKAY.

2          MS. BOEHME.

3          THE CLERK:  THIS COURT IS NOW ADJOURNED.

4          (PROCEEDINGS ADJOURNED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                         TRANSCRIBER'S CERTIFICATE

4

5                                DISCLAIMER

6        THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

7              DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

8

9              I, Dorothy Babykin, attest that the foregoing proceedings provided to

10   me electronically were transcribed by me to the best of my ability.

11

12                              /s/  *Dorothy Babykin*

13                              Dorothy Babykin

14   Date:  9/28/22

15

16

17

18

19

20

21

22

23

24

25