Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Beth W. Petronio, admitted *pro hac vice*
beth.petronio@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone:  (214) 939-5815
Facsimile:   (214) 939-5849

Attorneys for Defendant
Tyler Technologies, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC., a Delaware corporation; KEVAN SCHWITZER, an individual; RICK RANKIN, an individual; and DOES 4 through 10, inclusive,<br><br>Defendants. | Case No. 8:22-cv-00983-DOC-DFM<br><br>**TYLER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SHERMAN ACT CLAIM IN SECOND AMENDED COMPLAINT**<br><br>[Assigned to Hon. Douglas F. McCormick, Courtroom 6B]<br><br>State Complaint Filed:  March 18, 2022 [Orange County Superior Court Case No. 30-02022-01250695-CU-AT-CXC]<br><br>First Amended Complaint Filed:   April 13, 2022<br><br>Notice of Removal Filed:   May 13, 2022<br><br>Second Amended Complaint Filed:   October 7, 2022<br><br>Hearing Date:   TBD |

NOTICE OF MOTION AND SUPPLEMENTAL MOTION TO DISMISS SHERMAN ACT CLAIM

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Court's October 21, 2022 Scheduling Order for Defendants' Supplemental Motions to Dismiss the Sherman Antitrust Act Claims in the Second Amended Complaint (Dkt. 110), at a time and date to be determined by the clerk of the court, this matter may be heard in Courtroom 6B of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, California 92701. Defendant Tyler Technologies, Inc. ("Tyler") will and hereby does move to dismiss the Sherman Act Section 1 claim in Plaintiffs' Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) (the "Motion").

This Supplemental Motion is made on the grounds that the Roe Plaintiffs have failed to provide a short and plain statement of their claims and have failed to state any claim against Tyler upon which relief can be granted. Tyler is informed and believes that Plaintiffs intend to oppose this Motion.

This Supplemental Motion is based upon this Notice, the attached Memorandum, the Complaint, the First Amended Complaint, the Second Amended Complaint, the complete files and records in this action, and such other and further matters as the Court may deem just and proper to consider this Motion.

**K&L GATES LLP**

Dated: November 21, 2022   By:   /s/ Zachary T. Timm
　　　　　　　　　　　　　　　　　Beth W. Petronio
　　　　　　　　　　　　　　　　　Christina N. Goodrich
　　　　　　　　　　　　　　　　　Zachary T. Timm

　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　TYLER TECHNOLOGIES, INC.

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ................................................................................1

III. ARGUMENT .........................................................................................................4
    A. The SAC Fails to Satisfy the Requirements of Rule 8 ......................... 4
    B. The Roe Plaintiffs Fail to Properly Allege Any Antitrust Claim ....... 5

IV. CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson*,
 355 F.3d 1179 (9th Cir. 2004) ............................................................................. 5

*Alliance Shippers, Inc. v. Southern Pac. Transp. Co.*,
 858 F.2d 567 (9th Cir. 1988) ............................................................................... 6

*Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*,
 190 F.3d 1051 (9th Cir. 1999) ............................................................................. 7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................ 5

*BBD Transp. Co., Inc. v. U.S. Steel Corp.*,
 No. C-74-1178-ACW, 1976 WL 1316 (N.D. Cal., Aug. 25, 1976) .................. 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ....................................................................................... 4, 5

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
 637 F.3d 1047 (9th Cir. 2011) ............................................................................. 4

*California Coal. for Fams. & Child. v. San Diego Cnty. Bar Ass'n*,
 657 F. App'x 675 (9th Cir. 2016) ........................................................................ 4

*Fayer v. Vaughn*,
 649 F.3d 1061 (9th Cir. 2011) ............................................................................. 5

*GTE Sylvania Inc. v. Cont'l T.V., Inc.*,
 537 F.2d 980 (9th Cir. 1976) ............................................................................... 5

*In re Musical Instruments & Equip. Antitrust Litig.*,
 798 F.3d 1186 (9th Cir. 2015) ............................................................................. 6

*Jack Russell Terrier Network v. Am. Kennel Club, Inc.*,
 407 F.3d 1027 (9th Cir. 2005) ............................................................................. 8

*Kaplan v. Burroughs Corp.*,
 611 F.2d 286 (9th Cir. 1979) ............................................................................... 6

*Manzareck v. St. Paul Fire & Marine Ins. Co.*,
 519 F.3d 1025 (9th Cir. 2008) ............................................................................. 5

*McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*,
 No. Civ. 08-00080 JMS/BMK, 2008 WL 2437739 (D. Haw. June 17, 2008) ... 7

*McDaniel v. Appraisal Inst.*,
 117 F.3d 421 (9th Cir. 1997) ............................................................................... 6

*McGlinchy v. Shell Chem. Co.*,
 845 F.2d 802 (9th Cir. 1988) ............................................................................... 9

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir.1996) ............................................................................4

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ........................................................................................8

*NCAA v. Bd. of Regents of the Univ. of Okla.*,
  468 U.S. 85 (1984) ..........................................................................................6

*Nevijel v. North Coast Life Ins. Co.*,
  651 F.2d 671 (9th Cir.1981) ............................................................................4

*Newcal Indus. Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) .........................................................................7

*Oltz v. St. Peter's Community Hosp.*,
  861 F.2d 1440 (9th Cir. 1988) .........................................................................6

*Paladin Assocs. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) .........................................................................9

*Papasan v. Allain*,
  478 U.S. 265 (1986) ........................................................................................7

*Saenz v. Univ. Interscholastic League*,
  487 F.2d 1026 (5th Cir. 1973) .......................................................................10

*Sayre v. Google, Inc.*,
  No. C 19-02247, 2019 WL 6036703 (N.D. Cal. Nov. 14, 2019) ....................6

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991) ........................................................................................7

*TP Link USA Corp. v. Careful Shopper LLC*,
  2020 WL 3063956 (C.D. Cal., Mar. 23, 2020) ...............................................8

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ...........................................................................5

**Statutes**

Sherman Act Section 1, 15 U.S.C. § 1 ........................................................3, 5, 6, 7, 9

Sherman Act Section 2, 15 U.S.C. § 2 .............................................................................3

Shermand Act Section 3, 15 U.S.C. § 3 ..........................................................................3

**Rules**

Federal Rule of Civil Procedure 8 .............................................................................1, 4

Federal Rule of Civil Procedure 12(b)(6) .................................................................4, 5, 6

TABLES OF CONTENTS AND AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Roe Plaintiffs' Sherman Act antitrust claim against Tyler Technologies, Inc. ("Tyler") continues to be a fatally deficient effort to push a round peg into a square hole. With the addition of 47 new pages and 169 new paragraphs of allegations, the Roe Plaintiffs' Second Amended Complaint ("SAC") is needlessly long, confusing, repetitive and rambling, making it ripe for dismissal pursuant to Federal Rule of Civil Procedure 8. Moreover, even if the Court could parse through the morass of irrelevant and confusing allegations, the SAC at its core fails to state any sort of antitrust claim. At best, the Roe Plaintiffs appear to be alleging that Defendants, including Tyler, engaged in an anti-competitive conspiracy to "cover up" the alleged data breach by using the term "page views" in notification letters and that this "cover up" had some negative impact on the market for legal services in California (SAC ¶¶ 186-213.) Even if the allegations were true (and they are not), the Roe Plaintiffs' alleged "cover up" is simply not actionable anti-competitive conduct under the Sherman Act.

## II. FACTUAL BACKGROUND[1]

Tyler is a leading provider of technology solutions to schools, courts and other public sector clients at the local, state, and federal level. Among Tyler's many products is a suite of software for state courts, popularly known as "Odyssey." (*See* SAC ¶45 and Exhibit B thereto.) Tyler licensed certain Odyssey case management software to the State Bar of California (the "State Bar"), including a public-facing platform referred to as the "Odyssey Portal" that enabled certain State Bar information to be accessed and

---

[1] For purposes of this Supplemental Memorandum, Tyler has provided a short summary of the factual background. Tyler incorporates in full the more detailed recitation of relevant facts in its June 6, 2022 Motion to Dismiss. (Dkt. 35, pp. 2-5.) Per the Court's October 21, 2022 order (Dkt. No. 110), this Supplemental Memorandum addresses only those portions of the Sherman Act Antitrust claim asserted against Tyler. Tyler continues to assert that, as detailed in its original Motion and Memorandum, that all claims against Tyler should be dismissed.

1
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SHERMAN ACT CLAIM

searched via the internet. (*See* SAC ¶¶8, 39-43.)[2]

On February 24, 2022, the State Bar learned that certain nonpublic case information related to lawyer disciplinary proceedings—case number, filing date, case type, case status, and respondent and complaining witness names (the "Case Data")—had been "harvested" from the State Bar's Odyssey Portal and posted on a third-party website, JudyRecords.com. (SAC ¶¶6-7.) By February 26, 2022, at the State Bar's request, JudyRecords.com had removed all Case Data from its website. The State Bar provided various public updates regarding the incident on its website, including answers to certain "Frequently Asked Questions" (the "FAQs"). (SAC ¶75; Ex. A to the June 6, 2022 Motion [*See* Dkt. 35-1, 38-4, 39].) The SAC incorporates these FAQs into the complaint and refers to them multiple times. (SAC ¶¶ 69, 70, 75, 89.)

Among other things, the FAQs made clear that the information harvested from the Odyssey Portal and posted to JudyRecords.com included only the limited Case Data and not any underlying disciplinary complaints, filings or other case documents. During the time the Case Data was publicly available on JudyRecords.com, only 1,034 records were actually viewed by someone. Only six of those 1,034 records included any potentially sensitive information, with those six records stating the case type as "Mental Health/Substance Abuse." (*See generally* Ex. B [Dkt. 35-1, 38-4, 39] at 1-3.)

---

[2] The "Odyssey" software module at issue here is the external public-facing search portal. It is not the internal case management software used by the State Bar to manage and store its own records. The SAC frequently conflates the two, but they are different software systems. Plaintiffs' confusion on this issue is one of numerous technically inaccurate allegations in the SAC. In fact, some of the misstatements in the SAC are so blatantly incorrect that Tyler would be remiss if it did not publicly disavow their accuracy even though they have no bearing on the Sherman Act claim or the merits of this motion. Some of the most blatantly inaccurate statements are the following: (1) "Tyler Technologies failed to implement a basic online security measure called an access control check as part of the Odyssey platform" (SAC ¶50); (2) "Like Uber, Tyler Technologies is a technology company that has collected a vast amount of confidential information stored in the public sector" (SAC ¶95); (3) Tyler has "collected data not only from the State Bar of California, but also from [twelve California] counties" (SAC ¶95); (4) "all of Tyler Technologies [*sic*] Odyssey platforms had missing access control checks throughout the state of California and the United States" (SAC ¶96); and (5) "every federal, state, and local agency using Odyssey from Tyler Technologies had no access control." (SAC ¶100). These statements, among others, are fundamentally wrong and evidence a total lack of understanding regarding the Odyssey suite of software products, Tyler's role as a licensor of software as opposed to a collector of data, and the scope of the harvesting activity relative to Tyler's other Odyssey Portal clients. By citing to the SAC and accepting its well-pleaded allegations as true for purposes of this motion, Tyler is not agreeing that Plaintiffs' allegations are accurate, correct or true.

On March 18, 2022, five unidentified Roe individuals filed a Class Action Complaint in Superior Court in Orange County, California, purporting to represent classes of individuals who had been either the subject of a disciplinary proceeding or complaining witnesses in those proceedings. In their First Amended Complaint ("FAC"), filed on April 13, 2022, the Roe Plaintiffs asserted six causes of action against Tyler. On June 6, 2022, Tyler and the other Defendants each filed motions to dismiss, requesting that the FAC be dismissed pursuant to Rule 12(b)(6).

At oral argument, the Court expressed concerns regarding the FAC's two Sherman Act antitrust claims and noted that "the effort to turn this data breach[] case into an antitrust case seems to me to be an overreach." (Dkt. 97 at 9:15-16.) On September 19, 2022, the Court issued a written opinion granting Defendants' motions to dismiss the Sherman Act Section 3 claim with prejudice and the Sherman Act Section 2 claim without prejudice. (Dkt. 94 at 8-9.) The Court granted the Roe Plaintiffs leave to amend, limited to the Sherman Act claims, expressly stating that the Roe Plaintiffs could "add additional factual allegations, re-plead the § 2 claim, and add a § 1 claim." (*Id.*)

The Roe Plaintiffs filed the SAC on October 10, 2022. (Dkt. 100.) The SAC was nearly triple the length of the FAC, increasing from 19 to 66 pages and from 129 to 298 paragraphs. In addition to the sheer volume of new allegations, the nature of the allegations changed dramatically, with the focus of the complaint shifting from the alleged data breach to the nature of the State Bar's disciplinary process and to events that occurred after the alleged data breach, including the State Bar's notification of the alleged data breach to impacted individuals. As it relates to Tyler, the SAC purports to assert a new Sherman Act Section 1 claim for "Conspiracy to Restrain Trade by Obfuscating the Data Breach." (SAC ¶¶ 182182; 186-213.)[3] The basic premise of the

---

[3] The SAC makes clear that only that portion of the Sherman Act Section 1 claim related to allegedly obfuscating the data breach is asserted against Tyler. (SAC ¶182.) Neither the Section 2 claim nor that portion of the Section 1 claim related to the price fixing allegations are asserted against Tyler.

Roe Plaintiffs' allegations is that Tyler and the State Bar conspired to "cover up" the data breach in an effort to protect their reputations and that the alleged "cover up" negatively and disproportionately impacted solo practitioners in the California legal services market.

### III. ARGUMENT

For the reasons detailed below, the Court should dismiss the Sherman Act Section 1 claim—the only one pled against Tyler— with prejudice because the Roe Plaintiffs have failed to satisfy the requirements of Federal Rule of Civil Procedure 8 and have failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### A. The SAC Fails to Satisfy the Requirements of Rule 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement" of the claims showing that the plaintiff "is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). "Each allegation must be 'simple, concise, and direct.'" *California Coal. for Fams. & Child. v. San Diego Cnty. Bar Ass'n*, 657 F. App'x 675, 677–78 (9th Cir. 2016) (quoting Fed. R. Civ. P. 8(d)(1)). This requirement is intended to ensure that a complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). Failure to satisfy Rule 8 can justify dismissal, especially where—like here—a complaint is "verbose, confusing and almost entirely conclusory." *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir.1981); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (noting that dismissal is appropriate where a complaint was "needlessly long" and "highly repetitious, or confused, or consisted of incomprehensible rambling") (internal quotation marks and citation omitted); *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming a dismissal because "[p]rolix, confusing complaints . . . impose unfair burdens on litigants and judges").

Here, the SAC contains 47 pages and 168 paragraphs of new allegations purporting to relate to the Sherman Act claims. In addition to their verbosity, the

allegations are confusing, repetitious, needlessly long, incomprehensible and conclusory. And, despite its length, the SAC fails to articulate any coherent theory of antitrust liability against Tyler. Instead, the SAC includes lengthy allegations about the State Bar's disciplinary procedures, pages of citations to purported emails discussing information harvested from other jurisdictions, discussions about solo practitioners versus lawyers in "large law firms," allegations of "fake disciplinary records"[4] and other irrelevant and wholly speculative assertions. Because the SAC fails to satisfy Rule 8's requirement of a "short and plain statement" of the claim, the Sherman Act claim against Tyler should be dismissed.

### B. The Roe Plaintiffs Fail to Properly Allege Any Antitrust Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzareck v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Fayer*, 649 F.3d at 1064, (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The purpose of the Sherman Act is "the promotion of consumer welfare." *GTE Sylvania Inc. v. Cont'l T.V., Inc.*, 537 F.2d 980, 1003 (9th Cir. 1976). Therefore, the Act seeks "to preserve competition for the benefit of consumers." *Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Section 1 of the Sherman

---

[4] The Roe Plaintiffs' discussion of "fake disciplinary records" (*see, e.g.,* SAC ¶207) is surprising given that their data breach claims would necessarily have to be based on an allegation that *real* disciplinary records of the Roe Plaintiffs were actually released publicly.

Act prohibits "[e]very contract, combination. . .or conspiracy in restraint of trade." 15 U.S.C. § 1. The Supreme Court has interpreted this language to "prohibit only *unreasonable* restraints of trade." *NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 98 (1984) (emphasis added). Section 1 "prohibits agreements that unreasonably restrain trade by restricting production, raising prices, or otherwise manipulating markets to the detriment of consumers." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).

The reasonableness of an agreement to restrain trade is analyzed under either a *per se* rule of illegality or a rule of reason analysis. *McDaniel v. Appraisal Inst.*, 117 F.3d 421, 422 (9th Cir. 1997). The *per se* rule applies only where the practice at issue "facially appears to be one that would always or almost always tend to restrict competition and decrease output." *NCAA*, 468 U.S. at 100. Because the Roe Plaintiffs' allegations do not assert a *per se* illegality, the SAC must be evaluated under the rule of reason analysis.

A Section 1 "rule of reason" analysis requires a plaintiff to show "(1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually restrains competition." *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988). "An essential element of a Section 1 violation under the rule of reason is injury to competition in the relevant market." *Alliance Shippers, Inc. v. Southern Pac. Transp. Co.*, 858 F.2d 567, 570 (9th Cir. 1988). Here, the Roe Plaintiffs have not sufficiently alleged any of the required elements.

First, as a threshold matter, the Roe Plaintiffs have failed to properly plead a relevant market. Typically, "a 'relevant market' encompasses notions of geography along with product use, quality and description." *Sayre v. Google, Inc.*, No. C 19-02247, 2019 WL 6036703, at *2 (N.D. Cal. Nov. 14, 2019), (citing *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 292 (9th Cir. 1979)). Although a relevant market is typically a factual element, a complaint may still be "dismissed under Rule 12(b)(6) if the

complaint's 'relevant market' definition is facially unsustainable." *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008). The Roe Plaintiffs must support their allegation of a relevant market with factual allegations that support the market, and a mere "legal conclusion couched as a factual allegation" will not suffice. *McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*, No. Civ. 08-00080 JMS/BMK, 2008 WL 2437739, at *7 (D. Haw. June 17, 2008), (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, the Roe Plaintiffs are apparently attempting to allege that the relevant market is the practice of law in the State of California. (*See, e.g.,* SAC ¶191 (alleging that the State Bar "legally acquired market power over the members who can practice law in the State of California.")) The SAC arbitrarily divides the legal market into the "PeopleLaw Market," which the SAC contends "consists of mainly solo practitioners" and the "Organizational Clients Market," which the SAC defines as lawyers who "work in large firms representing large organizations." (SAC ¶192.) The SAC's allegations in this regard, however, are entirely conclusory and speculative, which is not sufficient. Even if it were, the allegation makes no sense in the context of the Roe Plaintiffs' Section 1 claim. This is especially true because Tyler does not compete in the professional legal practice market. Instead, Tyler develops, licenses, implements, and supports software solutions for the public sector.[5]

Second, the Roe Plaintiffs have failed to sufficiently allege an agreement or conspiracy between the State Bar and Tyler. The "essence of any violation of § 1 is the illegal agreement itself." *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991). The SAC only includes the conclusory allegation that "Defendants State Bar of California and Tyler Technologies entered into a conspiracy to minimize the data breach in order to preserve their reputation." (SAC ¶92; *see also* ¶¶66, 186). Without more, this allegation is not sufficient. The Roe Plaintiffs are required to alleged "a conscious

---

[5] Roe Plaintiffs do allege that Tyler has "market power" in the public sector software licensing space (SAC ¶200), but that "market power" is entirely irrelevant to the alleged Sherman Act claim. Roe Plaintiffs are not alleging that Tyler took steps to harm competition in its own market.

1  commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).  The SAC does not include any allegations whatsoever about a conscious commitment to a common scheme or agreement to any unlawful objective between Tyler and the State Bar.  Not one of the multiple pages of emails cited by the Roe Plaintiffs in discussing the alleged data breach (*see* SAC ¶¶103-118) is a communication between the State Bar and Tyler—in fact, they are communications between Tyler and the operator of JudyRecords.com, whom the Roe Plaintiffs have voluntarily dismissed from their lawsuit.  Nor does the SAC allege anywhere that Tyler and the State Bar had any communication regarding the form and substance of the notice or the use of the term "page view" in that notice, which the Roe Plaintiffs apparently find objectionable.  (*See, e.g.,* SAC ¶130.)  And, even if the Roe Plaintiffs could allege (which they cannot) that Tyler and the State Bar discussed and intentionally decided to use the term "page view," the SAC still does not allege that they did so for an unlawful objective.  Indeed, the SAC asserts that the notifications were required by law.  (*See, e.g.,* ¶284.)

Third, even if there were non-conclusory allegations establishing an agreement to "obfuscate" or "cover up" the alleged data breach, the SAC's only argument on the reason for the alleged agreement was to "preserve [the State Bar's and Tyler's] reputation."  (SAC ¶186.)  Nowhere in the SAC is there any allegation that Tyler and the State Bar made an agreement *to harm or restrain competition.*  If anything, the SAC seems to be alleging that the Defendants' actions in "preserving their own reputation" had the incidental impact of "also adversely affect[ing] competition generally by decreasing the client's ability to freely choose amongst members of the Bar."  (SAC ¶189)  The SAC does not contain any allegations that the State Bar and Tyler intended to curb competition the legal market.  The SAC does not (and cannot) even allege that the State Bar and Tyler are "actual or potential competitors" with one another or in the legal services market.  *See Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005); *TP Link USA Corp. v. Careful Shopper LLC*, 2020 WL

3063956, at *10 (C.D. Cal., Mar. 23, 2020) (dismissing Section 1 claim for *inter alia* "fail[ure] to adequately allege a conspiracy consummated by actual or potential competitors"). Nowhere in the SAC do the Roe Plaintiffs allege why or how Tyler, a software company, allegedly entered into an agreement to impact the legal services market in California. Nor is there any cogent explanation for why or how Tyler entered into a conspiracy with the State Bar to favor large law firm lawyers over solo practitioners. The Roe Plaintiffs have simply failed to plead an "intent to harm or restrain competition."

Fourth, the SAC has not properly alleged any conduct that "actually restrained competition" and resulted in an antitrust injury. An antitrust injury is "injury to the market or to competition in general, not merely injury to individuals." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988). "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). Here, at most, Roe Plaintiffs have alleged speculative, uncertain and potentially negative impacts on certain individual attorneys. (*See, e.g.,* SAC ¶ 211.) This allegation does not rise to the level of an antitrust injury.

None of the Roe Plaintiffs' other allegations about the impact of the alleged data breach on the legal services market state an antitrust injury. For example, the allegation that Tyler's conduct "decrease[s] the client's ability to freely choose amongst members of the Bar" (SAC ¶ 189) is not supported by any actual factual allegations supporting the suggestion that Tyler's actions impacted any specific client/attorney relationship. Nor is there any credible allegation to support the bare speculation that Tyler's alleged conduct will "increase costs for investigations and decrease public protection of accurately filtering the bad attorneys out." (SAC ¶ 199.) Put simply, the SAC does not allege that any conduct by Tyler actually restrained trade or caused an antitrust injury.

///

///

Finally, because the State Bar is immune from antitrust liability under these circumstances,[6] the claim against Tyler must also be dismissed. "[A]n actionable wrong under section 1 can be committed only by two or more parties acting in concert." *Saenz v. Univ. Interscholastic League*, 487 F.2d 1026, 1028 (5th Cir. 1973). Where one alleged co-conspirator is immune from suit, there can be no cause of action against another. *Id.; see also BBD Transp. Co., Inc. v. U.S. Steel Corp.*, No. C-74-1178-ACW, 1976 WL 1316, at *6 (N.D. Cal., Aug. 25, 1976) (finding alleged co-conspirator would "also be immune…because the railroads' immunity eliminates the possibility of actionable concerted action.").

## IV. CONCLUSION

In light of the foregoing, Tyler respectfully requests that the Court grant this motion, dismiss all of the Roe Plaintiffs' claims against Tyler, and grant Tyler such other and further relief to which it may be entitled.

**K&L GATES LLP**

Dated: November 21, 2022

By: */s/ Zachary T. Timm*
Beth W. Petronio
Christina N. Goodrich
Zachary T. Timm

Attorneys for Defendant
TYLER TECHNOLOGIES, INC.

---

[6] *See* Memorandum of Points and Authorities in Support of the State Bar of California's Supplemental Motion to Dismiss Plaintiffs' Second Amended Complaint.