COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
3 Embarcadero Center
20th Floor
San Francisco, CA  94111
Telephone:  (415) 693-2000
Facsimile:   (415) 693-2222

TIANA DEMAS (*pro hac vice*) (tdemas@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL  60606
Telephone: (312) 881-6500
Facsimile:   (312) 881-6598

BARRETT J. ANDERSON (318539) (banderson@cooley.com)
WALTER WAIDELICH (300798) (cwaidelich@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone:  (858) 550-6000
Facsimile:   (858) 550-6420

GREGORY MERCHANT (341287) (gmerchant@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone:  (650) 843-5000
Facsimile:   (650) 849-7400

*Attorneys for Defendant*
THE STATE BAR OF CALIFORNIA

*Counsel continued on following page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; RICK RANKIN; and DOES 4 through 10, inclusive,<br><br>          Defendants. | Case No. 8:22-cv-00983-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE STATE BAR OF CALIFORNIA'S SUPPLEMENTAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Courtroom:  6B<br>Judge:  Hon. Douglas F. McCormick<br>Date:  [The Clerk of Court will<br>Time:  reach out to set a hearing<br>      date, (Dkt. 110)] |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
ELLIN DAVTYAN (238609) (ellin.davtyan@calbar.ca.gov)
General Counsel
ROBERT G. RETANA (148677) (robert.retana@calbar.ca.gov)
Deputy General Counsel
SUZANNE C. GRANDT (304794) (suzanne.grandt@calbar.ca.gov)
Assistant General Counsel
180 Howard Street
San Francisco, CA 94105-1639
Telephone:   (415) 538-2388
Facsimile:    (415) 538-2517

*Attorneys for Defendant*
THE STATE BAR OF CALIFORNIA

Cooley LLP
Attorneys at Law
Los Angeles

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-cv-00983-DFM

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   STATEMENT OF FACTS ............................................................. 2

    A.    The State Bar ....................................................................... 2

    B.    Annual License Fees and Disciplinary Costs ...................... 3

    C.    The Incident ......................................................................... 6

    D.    Plaintiffs Initiate, and Tyler Removes, This Action ........... 7

    E.    The Court Dismisses the FAC's Antitrust Claims .............. 8

    F.    Plaintiffs File the SAC ........................................................ 9

III.  LEGAL STANDARD ................................................................. 10

IV.   ARGUMENT .............................................................................. 10

    A.    The SAC's Antitrust Claims Fail to Satisfy Rule 8 ........... 10

    B.    The State Bar is Immune From Antitrust Liability ............ 12

    C.    The SAC Fails to State a Sherman Act Claim .................... 14

        i.    The SAC fails to state a Section 1 claim .................. 16

            1.    No agreement ................................................. 16

            2.    No unreasonable restraint ............................... 18

            3.    No cognizable causal antitrust injury ............ 19

        ii.   The SAC fails to state a Section 2 claim .................. 21

            1.    The SAC's refusal to deal theory is inapplicable .......... 22

            2.    The SAC does not allege attempted monopolization ..... 23

    D.    Leave to Amend Would Be Futile ...................................... 25

VI.   CONCLUSION ........................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010) ................................................................. 21

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ........................................................... 20, 21

*In re Apple iPod iTunes Antitrust Litig.*,
  796 F. Supp. 2d 1137 (N.D. Cal. 2011) ................................................. 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 10

*In re Attorney Discipline Sys.*,
  19 Cal.4th 582 (Cal. 1998) ....................................................................... 3

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  9 F.4th 1102 (9th Cir. 2021) ................................................................... 18

*Bass v. Cnty. of San Diego*,
  2009 WL 10671992 (S.D. Cal. Aug. 25, 2009) ..................................... 25

*Bates v. State Bar of Az.*,
  433 U.S. 350 (1977) ................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................... 10, 11, 15

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................. 1, 11

*California Coal. for Fams. & Child. v. San Diego Cnty. Bar Ass'n*,
  657 F. App'x 675 (9th Cir. 2016) ........................................................... 11

*Carrico v. City & Cnty. of San Francisco*,
  656 F.3d 1002 (9th Cir. 2011) ................................................................ 25

*Catlin v. Wash. Energy Co.*,
  791 F.2d 1343 (9th Cir. 1986) ................................................................ 23

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021) ................................................................... 20

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) .................................................................... 10

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) ........................................................................... 16, 17

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Ferdik v. Bonzelet*,
  963 F.2d 1258 (9th Cir. 1992), *as amended* (May 22, 1992) ............................ 12

4

5

*Free FreeHand Corp. v. Adobe Sys. Inc.*,
  852 F. Supp. 2d 1171 (N.D. Cal. 2012) ............................................................ 24

6

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) .................................................................... 16, 18

7

8

*Goldfarb v. Virginia State Bar*,
  421 U.S. 773 (1975) ........................................................................................ 14

9

*Hatch v. Reliance Ins. Co.*,
  758 F.2d 409 (9th Cir.1985) ............................................................................ 11

10

11

*Hearns v. San Bernardino Police Dep't*,
  530 F.3d 1124 (9th Cir. 2008) ......................................................................... 12

12

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) .................................................................... 18, 19

13

14

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir.1997) .......................................................................... 24

15

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
  2007 WL 4976364 (C.D. Cal. Oct. 29, 2007), *aff'd*, 323 F. App'x
  571 (9th Cir. 2009) .......................................................................................... 25

16

17

*Lai v. USB-Implementers F., Inc.*,
  2015 WL 12746705 (C.D. Cal. Mar. 11, 2015) ................................................ 25

18

19

*Lasar v. Ford Motor Co.*,
  399 F.3d 1101 (9th Cir. 2005) ......................................................................... 23

20

*LiveUniverse, Inc. v. MySpace, Inc.*,
  304 Fed.Appx. 554 (9th Cir.2008) ................................................................... 22

21

22

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ............................................................... 16, 18, 19

23

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir.1996) ............................................................................ 11

24

25

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ........................................................................................ 17

26

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ......................................................................... 17

27

28

*N.C. State Bd. of Dental Exam'rs v. FTC*,
  574 U.S. 494 (2015) ................................................................................... 12, 13

1
2

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

3
4

*Nevijel v. N. Coast Life Ins. Co.*,
651 F.2d 671 (9th Cir.1981) ........................................................................ 11, 25

5

*Newcal Indus. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) ............................................................................ 19

6
7

*Novation Ventures, LLC v. J.G. Wentworth Co. LLC*,
156 F. Supp. 3d 1094 (C.D. Cal. 2015) ..................................................20, 21, 24

8

*NYNEX Corp. v. Discon, Inc.*,
525 U.S. 128 (1998) ............................................................................................ 18

9
10

*Oltz v. St. Peter's Cmty. Hosp.*,
861 F.2d 1440 (9th Cir. 1988) ............................................................................ 18

11

*Paladin Assocs., Inc v. Mont. Power Co.*,
328 F.3d 1145 (9th Cir. 2003) ............................................................................ 20

12
13

*Parker v. Brown*,
317 U.S. 341 (1943) ....................................................................................*passim*

14

*In re Rose*,
22 Cal. 4th 430 (Cal. 2000) .............................................................................. 2, 5

15
16

*Rosenthal v. Justices of the Sup. Ct. of Cal.*,
910 F.2d 561 (9th Cir. 1990) ................................................................................ 3

17

*Schmidt v. Herrmann*,
614 F.2d 1221 (9th Cir.1980) .............................................................................. 11

18
19

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ................................................................... 15, 16, 20

20

*State Oil v. Khan*,
522 U.S. 3 (1997) .......................................................................................... 14, 15

21
22

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
547 F. Supp. 2d 1086 (C.D. Cal. 2007) ............................................................... 25

23

*Summit Health v. Pinhas*,
500 U.S. 322 (1991) ............................................................................................ 16

24
25

*TP Link USA Corp. v. Careful Shopper LLC*,
2020 WL 3063956 (C.D. Cal. Mar. 23, 2020) .................................................... 19

26

*U.S. v. Grinnell Corp.*,
384 U.S. 563 (1966) ............................................................................................ 21

27
28

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ............................................................................................ 22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Viriyapanthu v. State Bar of Cal.*,
  813 Fed. App'x. 312 (9th Cir. 2020) ................................................................ 25

**Statutes**

California Business & Professions Code
  § 6001 ................................................................................................................ 2
  § 6010(a) ........................................................................................................... 17
  § 6010(b) ........................................................................................................... 17
  § 6076 ................................................................................................................ 3
  § 6086.10(a) ...................................................................................................... 4
  § 6086.10(b) ...................................................................................................... 4
  § 6086.10(c) ...................................................................................................... 5
  § 6086.10(d) ...................................................................................................... 6
  § 6087 ................................................................................................................ 3
  § 6140(a) ........................................................................................................... 3
  § 6140.6 ......................................................................................................... 3, 4
  § 6140.7 ......................................................................................................... 4, 5

Sherman Antitrust Act ............................................................................... *passim*
  Section 1 ................................................................................................. *passim*
  Section 2 ................................................................................................. *passim*
  Section 3 ......................................................................................................... 1, 8

**Rules**

Federal Rules of Civil Procedure
  Rule 8 ................................................................................... 1, 10, 11, 12
  Rule 12(b)(6) ...................................................................... 1, 10, 19
  Rule 41(b) ........................................................................... 11, 12

Rules of Procedure of the State Bar of California
  Rule 5.130(A) .................................................................................................. 5
  Rule 5.130(B) .................................................................................................. 5
  Rule 5.130(E) .................................................................................................. 5

California Rules of Court, Rule 9.13(d) ....................................................... 5

C.D. Cal. Civil Local Rule 83-2.1 ............................................................. 23

**Other Authorities**

Assem. B. 2958, 2021–22 Leg., Reg. Sess. (Cal. 2022) ............................. 3

California Constitution Article VI, section 9 ..................................... 2, 17

## I.    INTRODUCTION

The Court previously dismissed the two Sherman Act antitrust claims alleged in Plaintiffs' First Amended Complaint ("FAC") because the State Bar of California is immune from antitrust liability and because the FAC failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court allowed Plaintiffs to attempt to cure those deficiencies by repleading the Section 2 antitrust claim, adding a Section 1 antitrust claim to replace the improperly pleaded Section 3 antitrust claim, and adding factual allegations to support such claims.  (Dkt. 94 ("Dismissal Order") at 9.)  Plaintiffs thereafter filed a 66-page Second Amended Complaint, (Dkt. 100 ("SAC")), that is over three times longer than the FAC and contains nearly 170 new paragraphs of irrelevant, confusing, and nonsensical allegations that do not satisfy the basic tenants of pleading required by Federal Rule of Civil Procedure 8, let alone cure the problems with the antitrust claims the Court previously identified.  The antitrust claims should be dismissed again, this time with prejudice, for three reasons:

*First*, the SAC does not satisfy Rule 8, which requires it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This case arises from an alleged incident where a third party inadvertently harvested certain nonpublic attorney discipline data from the State Bar's online case management system, the Odyssey Portal, which defendant Tyler Technologies, Inc. ("Tyler") created and maintained ("the Incident").  Many of the SAC's 298 paragraphs have nothing to do with the Incident.  Moreover, the vast majority of the lengthy new allegations are incoherent, irrelevant, unsupported by any plausible or pertinent fact, and untethered to an intelligible theory of antitrust liability.  In the Ninth Circuit, a pleading should be dismissed when it is "needlessly long, highly repetitious, or confused, or consist[s] of incomprehensible rambling."  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (cleaned up).  Just so here.

*Second*, insofar as it can be understood, Plaintiffs' core antitrust theory is still barred by the State Bar's immunity under *Parker v. Brown*, 317 U.S. 341, 350 (1943).

The SAC's antitrust allegations squarely target, as did the FAC, "the State Bar's entire disciplinary system," which is "subject to supervision of the California Supreme Court." (Dismissal Order at 5–6.)  The SAC's added allegations about certain State Bar disciplinary costs and fees—which together appear to simply re-aver in different clothing the FAC's deficient claim that "the State Bar's disciplinary system . . . disproportionally benefits large law firms and harms solo practitioners," (Dismissal Order at 5)—do not change the equation.  Those costs and fees are directly controlled by either the state Legislature or state Supreme Court, and thus fall well within the scope of activities protected by *Parker* immunity.

*Third*, the SAC fails to plead the elements required to state a claim under Sections 1 or 2 of the Sherman Act.  At their core, Plaintiffs' inchoate claims still do not fit the paradigm of a federal antitrust case.  Accordingly, the SAC fails for the same reasons the FAC did: the SAC does not plausibly allege that the State Bar had specific intent to monopolize a relevant market or a cognizable causal antitrust injury.  Additionally, the SAC fails to define a relevant market, plead any anticompetitive conduct, or allege that the State Bar entered into a prohibited agreement or conspired to do anything.  The antitrust claims therefore fail at every level.

Plaintiffs had their chance to cure the antitrust claims.  Their failure to do so mandates dismissal of those claims, this time with prejudice.[1]

## II.    STATEMENT OF FACTS

### A.    The State Bar

The State Bar is a constitutional entity, established by article VI, section 9 of the California Constitution, and is an integral part of the judicial function of the State of California.  *See* Cal. Const., art. VI, § 9; Cal. Bus. & Prof. Code, § 6001; *In re Rose*, 22 Cal. 4th 430, 438 (Cal. 2000).  It is a public corporation created as an

---

[1] The State Bar moves to dismiss the SAC's antitrust claims pursuant to the Court's order.  (Dismissal Order at 9.)  However, the State Bar maintains that this entire action should be dismissed for the reasons set forth in in its opening and reply briefs filed in support of its initial motion to dismiss.  (Dkts. 38, 68.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

2

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

administrative arm of the California Supreme Court for the purpose of assisting in matters of attorney admission and discipline. *See In re Attorney Discipline Sys.*, 19 Cal.4th 582, 598–99 (Cal. 1998); *see also Rosenthal v. Justices of the Sup. Ct. of Cal.*, 910 F.2d 561, 566 (9th Cir. 1990). A core part of the State Bar's function is attorney discipline, which includes reviewing and prosecuting, as necessary, ethics complaints against attorneys. *See In re Attorney Discipline Sys.,* 19 Cal.4th at 589.

The California Supreme Court supervises the State Bar as it executes its attorney discipline function. While the Supreme Court is authorized to allow the State Bar to "take any action" necessary in disciplining attorneys, "any such action by the State Bar shall be reviewable by the Supreme Court pursuant to such rules as the Supreme Court may prescribe." Cal. Bus. & Prof. Code § 6087. Further, California Business and Professions Code "Section 6076 conditions the State Bar's formulation and enforcement of rules of professional conduct upon the approval of the Supreme Court." (Dismissal Order at 6.) "[T]he judicial power in disciplinary and admission matters remains with [the Supreme Court], and was not delegated to the State Bar." *In re Attorney Discipline Sys.*, 19 Cal.4th at 600 (citation omitted).

### B.    Annual License Fees and Disciplinary Costs

To support its constitutional and statutory duties, the State Bar is authorized by the Legislature to collect annual license fees and, when warranted, certain disciplinary costs. All active California-licensed attorneys are required to pay an annual license fee. Most recently, the Legislature ordered that "[t]he board [of the State Bar] shall fix the annual license fee for active licensees for 2022 at a sum not exceeding three hundred ninety-five dollars ($395)." Cal. Bus. & Prof. Code § 6140(a). The Legislature reviews and adjusts the approved fee in an annual fee bill. *See, e.g.*, Assem. B. 2958, 2021–22 Leg., Reg. Sess. (Cal. 2022) (proposing to set "the annual license fee for active licensees for 2023 at a sum not exceeding three hundred ninety dollars ($390)"). The Legislature also authorizes the State Bar to increase the annual license fee in limited situations, such as for "costs of the

disciplinary system." Cal. Bus. & Prof. Code § 6140.6. The State Bar is not empowered to increase the annual license fee outside of the Legislature's bounds.

The Legislature also grants the Supreme Court the authority to assess costs on a California-licensed attorney when that attorney is subject to "any order imposing discipline." Cal. Bus. & Prof. Code. § 6086.10(a). In such cases "the Supreme Court shall include a direction that the licensee shall pay costs." *Id.* Costs are not assessed in disciplinary investigations or prosecutions that do not result in a disciplinary order. When costs are appropriate, they may include the State Bar's expenses for the disciplinary proceeding and "charges determined by the State Bar to be 'reasonable costs' of investigation, hearing, and review." Cal. Bus. & Prof. Code. § 6086.10(b).

The State Bar recommends disciplinary costs to the Supreme Court, which it calculates under an objective formula created by an independent consulting firm, Hilton Farnkopf & Hobson ("HFH"). (Ex. D at 3.)[2] The State Bar retained HFH nearly 30 years ago for the specific purpose of creating a costs formula. (*Id.* at 4.) HFH provided its first costs formula recommendations to the State Bar in 1997, and reviewed and updated the formula in 2000, 2002, and 2011. (*Id.*) HFH's January 2011 report recommended the costs formula be adjusted and updated to automatically account for price changes and overall economic trends based on price indices maintained by the U.S. Department of Labor. (*Id.* at 3.) The State Bar's Board of Governors voted at its January 2011 meeting to "approve[] and adopt[] the updated discipline cost model," (Ex. E at 3 (meeting minutes)), which the State Bar uses today, (*see* SAC, Ex. A (stating disciplinary costs are assessed "[p]ursuant to action by the State Bar's governing board in January 2011 and May 2012")).

If the Supreme Court issues a disciplinary order that suspends an attorney from practicing law and imposes costs, the attorney remains suspended until he or she pays the costs in full, unless they receive an extension. *See* Cal. Bus. & Prof. Code §

---

[2] "Ex." citations refer to the Exhibits attached to the Declaration of Tiana Demas. Page citations to Exhibit D refer to the numbers preceded by "Exhibit D."

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

4

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

6140.7. Payment of disciplinary costs are also a condition of reinstatement for those attorneys who are disbarred or resign with disciplinary charges pending. *See id.*

Attorneys who have been disciplined and are obligated to pay costs have several ways to seek relief. First, they may "challenge the propriety of including items in the certificate of costs or the calculation of properly included costs." Rules of Procedure of the State Bar of California ("State Bar Court Rules"), Rule 5.130(A).[3] More broadly, disciplined attorneys also "may be granted relief, in whole or in part, from an order assessing costs . . . or may be granted an extension of time to pay these costs, in the discretion of the State Bar, upon grounds of hardship, special circumstances, or other good cause." Cal. Bus. & Prof. Code § 6086.10(c); *see also* State Bar Court Rule 5.130(B) (permitting licensees to "move for relief, in whole or in part, from the order assessing costs [or] for an extension of time to pay costs . . . on grounds of hardship, special circumstances, or other good cause"). One basis for seeking relief from costs includes "financial hardship," which simply requires that the motion be "accompanied by the attorney's completed financial statement." *Id.* Attorneys may then appeal the State Bar Court's order on their motion to the California Supreme Court. State Bar Court Rule 5.130(E).

Disciplined attorneys may also appeal the underlying disciplinary order for which they were assessed costs by petitioning the California Supreme Court to review the "decision of the State Bar Court or action of the Board of Trustees of the State Bar." Cal. Rules of Court, Rule 9.13(d); *see also In re Rose*, 22 Cal.4th at 439 ("The State Bar may make only recommendations to this court, which undertakes an independent determination whether the attorney should be disciplined as recommended."). If the Supreme Court reverses the underlying disciplinary order, the attorney is not liable for costs connected with that order. Further, attorneys who are later exonerated for disciplinary offenses are entitled to reimbursement from the

---

[3] The State Bar Court's Rules of Procedure are available at: https://www.statebarcourt.ca.gov/Portals/2/documents/Rules/Rules-of-Procedure.pdf.

Cooley LLP
Attorneys at Law
Los Angeles

5

Memorandum in Support of CA State
Bar's Supp. Motion to Dismiss SAC
Case No. 8:22-cv-00983-DFM

State Bar for assessed costs they paid.  Cal. Bus. & Prof. Code § 6086.10(d).

### C.    The Incident

To carry out its attorney discipline function, the State Bar hired Tyler to create and maintain the Odyssey Portal.  On February 24, 2022, the State Bar learned that certain limited and high-level nonpublic attorney discipline data from the Odyssey Portal—case number, filing date, case type, case status, and respondent and complaining witness names ("Docket Data")—was publicly available on JudyRecords.com, a nationwide database of court case records run by Kevan Schwitzer, a third party.  (SAC ¶ 7.)[4]  Schwitzer obtained the Docket Data using a program he created that automatically collected information from public-facing websites, a technique colloquially known as "scraping," then he indexed the information on JudyRecords.com.  (Ex. B at 3.)

The State Bar and its interim IT Director, Rick Rankin, (SAC ¶ 8), swiftly responded to the Incident.  Among other things, they immediately disabled the Odyssey Portal, contacted the hosting provider and domain name registrar for Judyrecords.com to demand immediate removal of Docket Data, and then worked with Schwitzer to delete Docket Data from the site.  (SAC ¶¶ 103–04; Ex. B at 4.) The State Bar also retained a team of IT forensics experts to investigate, demanded that Tyler remediate all issues in the Odyssey Portal, and submitted a report on the vulnerability to CVE, a website sponsored by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, which identifies, defines, and catalogs cybersecurity vulnerabilities.  (*Id.*)  By February 26, 2022, JudyRecords.com had permanently removed all Docket Data from the site. (*Id.*)

Defendants' investigation revealed a previously unknown security vulnerability in the Odyssey Portal.  (*Id.* at 3.)  Due to that vulnerability, Schwitzer's data-scraping program unintentionally collected both public records and non-public

---

[4]  Plaintiffs initially named Schwitzer as a defendant in this case but voluntarily dismissed him after he provided them an affidavit and documents.  (Dkt. 26.)  The SAC does not reference or explain the import of Schwitzer's affidavit.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

6

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

Docket Data. (*Id.*) Tyler remedied the vulnerability, and the Odyssey Portal was back online by March 15. (*Id.* at 1.) The investigation also revealed the limited scope of the information on JudyRecords.com. (*Id.*) Overall, JudyRecords.com scraped and indexed 322,525 Docket Data records, which would not ordinarily have been viewable by the public on the Odyssey Portal. (*Id.* at 2.) Only 1,034 of the 322,525 Docket Data records showed signs of having been viewed (*i.e.*, a page view). (*Id.*; *see also* SAC ¶ 113 (noting "preliminarily 1100 cases were viewed"); *id.* ¶ 114 (observing "number of affected cases is tentatively < 1,000").) Of these 1,034 Viewed Records, only six contained the case type: "Inactive 6007(b)(3) Mental Illness or Substance Abuse." (Ex. B at 1.) None of the Plaintiffs allege that they were involved in this type of proceeding, none allege that their Docket Data showed evidence of a page view, and none allege that they've ever seen their own Docket Data anywhere on the internet. (*See* SAC ¶¶ 1–5.)

The State Bar promptly and transparently informed the public about the Incident by immediately issuing a press release and providing regular updates on a dedicated webpage. (*See* Exs. A, B.) The State Bar also began the process of notifying the individuals associated with the 322,525 Docket Data records involved in the Incident, despite not being subject to any statutory notification requirement. The State Bar completed sending notices to all affected individuals for whom it had contact information by July 11, 2022. (Ex. B at 1.)

### D.    Plaintiffs Initiate, and Tyler Removes, This Action

Plaintiffs are five anonymous individuals who allege that the State Bar maintains records that include their information in some way. (SAC ¶¶ 1–5.) Plaintiffs originally filed this lawsuit in California state court on March 18, 2022, amended it several times, and ultimately filed the FAC on April 13. (Dkt. 1 ¶¶ 1, 10.) The FAC alleged various claims purportedly arising from the Incident, including two causes of action against the State Bar and Tyler for federal antitrust violations. (Dkt. 1, Ex. H ¶¶ 81–111.) "Liberally construed, . . . Plaintiffs allege [in the FAC]

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

7

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

that the State Bar's entire attorney disciplinary system violates the Sherman Act."
(Dismissal Order at 5.)   Tyler, with the consent of all Defendants, removed the
lawsuit to this Court on May 13.  (Dkt. 1.)

### E.    The Court Dismisses the FAC's Antitrust Claims

Defendants each filed a motion to dismiss on June 6, 2022.  (Dkts. 35, 36, 38.)
The parties fully briefed those motions and the Court heard oral argument on
September 15, 2022.  (Dkt. 93.)  At oral argument, the Court focused on the FAC's
two Sherman Antitrust Act claims, expressing that the "Section 3 claims are hopeless
as a matter of law and they should be dismissed with[] prejudice."  (Dkt. 97 at 8:1–
3.)  With respect to the Section 2 claim, the Court stated: "the State Bar's disciplinary
rules are likely immune from challenge"; "the First Amended Complaint does not
allege sufficient facts to demonstrate that the State Bar has a specific intent to
monopolize a relevant market"; and "Plaintiffs have failed to allege a plausible
antitrust injury."  (Dkt. 97 at 8:6–7, 8:17–19, 9:14.)  The Court thus opined that "[i]n
sum, I think the effort to turn this data breach[] case into an antitrust case seems to
me to be an overreach."  (*Id.* at 9:15–16.)   The Court indicated it would likely allow
Plaintiffs to amend, but only as to the Sherman Act claims.  (*Id.* at 23:4–5.)  Plaintiffs'
counsel agreed to "limit [the amendment] to those two claims."  (*Id.* at 32:13.)

On September 19, 2022, the Court issued a written order granting Defendants'
motions to dismiss with respect to the FAC's two Sherman Act claims. (Dkt. 94 at 9.)
The Court first dismissed the Section 3 claim with prejudice, ruling that Section 3
only applies to alleged violations that take place in a federal territory, which
California is not.  (*Id.* at 8–9.)  The Court also dismissed the Section 2 claim, ruling
that the State Bar was immune from antitrust liability and that Plaintiffs had failed to
allege either specific intent to monopolize or cognizable antitrust injury.  (*Id.* at 4–
8.)  The Court granted Plaintiffs narrow leeway "to add additional factual allegations,
re-plead the § 2 claim, and add a § 1 claim" (also under the Sherman Act).  (*Id.*)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

8

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

### F.    Plaintiffs File the SAC

Plaintiffs filed the operative version of the SAC on October 10, 2022.  (Dkt. 100.)   The SAC contains 298 paragraphs of allegations and is 66 pages long, compared to the FAC's 129 paragraphs and 19 pages.  The SAC also includes two new exhibits, and it quotes from and references many other documents, including email communications that are neither to nor from the State Bar.  Many of the SAC's voluminous new allegations have nothing to do with the Incident, even though it purportedly gave rise to this case.

Further, although the Court had ordered Plaintiffs to limit their amended pleading to the antitrust claims and not to add parties, the SAC nevertheless contains substantial new details about Plaintiffs, (*id.* ¶¶ 1–5), and adds three new individuals: "Complainant CX," "Attorney DE," and "putative class member NZ."  (*Id.* ¶¶ 2, 4–5, 101.)  Despite these new expanded allegations, Plaintiffs still do not allege that their Docket Data was affected in any way by the Incident or that they received notice letters from the State Bar stating that their Docket Data was viewed by anyone.

One thing has not changed: the SAC's antitrust theory, while much longer, is no clearer than the FAC's.  The SAC purports to allege violations of Sections 1 and 2 of the Sherman Act.  For Section 1, Plaintiffs allege a "conspiracy to restrain trade by obfuscating the data breach," which purportedly arises from efforts by the State Bar and Tyler to "cover up" the Incident by "recasting the breach as 'page views'" to "preserve the reputation of the State Bar and Tyler."  (*Id.* ¶ 186.)  However, the Section 1 claim embraces a far broader set of disjointed allegations, including that the Incident released allegedly "fake disciplinary records," (*id.* ¶¶ 189, 207, 229, 235–38); that "[t]he Board of the State Bar" established disciplinary costs that "fall[] more heavily on" solo practitioners, (*id.* ¶¶ 214, 218); and that hypothetical third parties could decide to use the State Bar's disciplinary system to "pile on" complaints against attorneys, (*id.* ¶¶ 234–40).  The SAC does not allege any well-pled fact showing how this jumble of speculative and irrelevant assertions is related.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

9

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

For the Section 2 claim, Plaintiffs allege that the State Bar's assessment of approved disciplinary costs amounts to a "refusal to deal" with Plaintiffs (several of whom are not attorneys) because hypothetical assessed costs are "too high in this monopoly environment," are unreasonable insofar as a "while the plaintiff's license is suspended[,] the plaintiff cannot earn money to pay the cost," or otherwise "deter the right to go to trial." (*Id.* ¶¶ 244–26.)  Plaintiffs also allege that the State Bar is violating antitrust law by "attempting to control who could practice in federal court." (*Id.* ¶ 249.)  The SAC does not explain how any of these baseless allegations are related to the Incident, nor does it support its allegations with any well-pled fact.

As explained below, the Court should dismiss both antitrust claims.

## III.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Such factual allegations must suffice to create "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and thereby "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  In other words, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  Although a court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff, the "court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

## IV.  ARGUMENT

### A.    The SAC's Antitrust Claims Fail to Satisfy Rule 8

A complaint in federal court must contain "a short and plain statement" of its claims showing that the plaintiff "is entitled to relief."  Fed. R. Civil Proc. 8(a)(2).  Under Rule 8, "[e]ach allegation must be 'simple, concise, and direct.'"  *California*

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

*Coal. for Fams. & Child. v. San Diego Cnty. Bar Ass'n*, 657 F. App'x 675, 677–78 (9th Cir. 2016) (quoting Fed. R. Civ. Proc. 8(d)(1)).  This requirement is intended to ensure that a complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Failure to satisfy Rule 8 is cause for dismissal.  *See McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming dismissal under Rule 8 and ruling that "[p]rolix, confusing complaints . . . impose unfair burdens on litigants and judges"); Fed. R. Civil Proc. 41(b).

In the Ninth Circuit, dismissal under Rule 8 is warranted "'by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.'"  *Cafasso*, 637 F.3d at 1059 (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed. 2010)).  Complaints that are "verbose, confusing and almost entirely conclusory" also fail.  *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir.1981); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir.1985) (affirming dismissal of complaint that "exceeded 70 pages in length, [and was] confusing and conclusory"); *Schmidt v. Herrmann*, 614 F.2d 1221, 1224 (9th Cir.1980) (affirming dismissal of "confusing, distracting, ambiguous, and unintelligible pleadings").

The SAC plainly fails to clear the Rule 8 threshold.  As this Court already observed, "Plaintiffs' theory of antitrust liability has blossomed," exploding "from 19 to 66 pages (with two new exhibits) and from 129 to 298 paragraphs of allegations." (Dkt. 109 at 1.)  Moreover, these new, extensive allegations are also conclusory, irrelevant, or both.  Despite the SAC's tripled length, at no point does it articulate a coherent theory of antitrust liability.  Instead, it is complex and confusing, jumping haphazardly between the State Bar disciplinary system, Tyler's efforts to remediate the Incident for other of its customers, various reports about legal services markets that have no connection to the Incident or disciplinary costs, and the speculative and wholly baseless claim that the State Bar is attempting to monopolize

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

11

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

access to the federal courts. The Incident—the precipitating event from which this case arises—is hardly mentioned in the SAC's sprawling antitrust fantasy.

Even taken one by one, the new allegations are confusing and unintelligible. For example, the SAC repeatedly describes some disciplinary records as "fake" without support or explanation, let alone any suggestion that the State Bar was involve in creating any such "fake" documents. (SAC ¶¶ 189, 207, 229, 235–38.) The SAC also references outside documents that plainly do not support its bald assertions. For example, Plaintiffs allege the "2020 State Bar Annual Discipline Report" "acknowledged that the Disciplinary System is slanted toward the small practitioner." (*Id.* ¶ 17.) But the quote Plaintiffs cite from the report says nothing of the kind. Rather, it reviews current legal trends and simply concludes that "fewer complaints pre attorney [are] being filed with the State Bar." (*Id.*) Such confusing, conclusory, and contradictory allegations fail under Rule 8. Dismissal of the SAC with prejudice is proper. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1129 (9th Cir. 2008) ("Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a complaint with prejudice for failure to comply with Rule 8(a)."). [5]

## B.    The State Bar is Immune From Antitrust Liability

As this Court recognized in dismissing the FAC's Sherman Act claims, state entities acting in their sovereign capacity are immune from antitrust liability under *Parker v. Brown*, 317 U.S. 341 (1943). "A nonsovereign actor controlled by active market participants . . . enjoys *Parker* immunity only if it satisfies two requirements: first that the challenged restraint be one clearly articulated and affirmatively expressed as state policy, and second that the policy be actively . . . supervised by the state." *N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 503–04 (2015) (citations omitted). In 2017, the California Supreme Court adopted the State Bar

---

[5] Plaintiffs are represented by an attorney, so this case is not an instance of a *pro se* plaintiff navigating the legal system for the first time and in need of the Court's assistance. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992) (noting "Supreme Court precedent that instructs federal courts liberally to construe the 'inartful pleading' of pro se litigants").

Antitrust Policy, which specifies that "[t]he Supreme Court's authority over the State Bar includes the authority to review State Bar actions for antitrust issues and impacts on competition," including those under "the Sherman Act." (Ex. F at 1.)

The State Bar's alleged conduct in this case meets the two *Dental Examiners* requirements. The Court dismissed the FAC's antitrust causes of action because it found the State Bar is immune from claims that "the State Bar's entire attorney disciplinary system violates the Sherman Act." (Dismissal Order at 5.) While the SAC's antitrust allegations are substantially longer—and involve a far more complicated and incoherent theory—the core premise is unchanged: Plaintiffs still assert that the "State Bar's disciplinary system is anticompetitive because it disproportionally benefits large law firms and harms solo practitioners." (*Id.*)

For example, the SAC attempts to divide the legal field into two markets: for "PeopleLaw" and "Organizational Clients," which, though undefined, appear to refer to solo practitioners versus law firms. (SAC ¶ 192.) Setting aside whether those are cognizable or relevant markets for antitrust purposes (they are not), the alleged division of the market in this way reveals that Plaintiffs' core antitrust theory is still animated by perceived (but unsupported) claims that the State Bar disciplinary system disadvantages solo practitioners. For example, Plaintiffs allege for their Section 1 claim that the State Bar's purported conduct "hurts solo practitioners," creates "a barrier to reentry for those lawyers who are solo practitioners," and "makes the PeopleLaw Market cost more" while "tak[ing] pressure off the Organizational Client Market in keeping their prices lower." (*Id.* ¶¶ 198, 219, 235.) And they allege for their Section 2 claim that the State Bar's conduct constitutes a "refusal to deal" with solo practitioners or deprive them of access to federal courts. (*Id.* ¶¶ 244–47, 252.) The SAC's antitrust theory thus rests on the same deficient foundation as the FAC's and, given that the State Bar is immune from such claims under *Parker*, should be dismissed for the same reason.

In finding the State Bar immune from the FAC's antitrust claims, the Court

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

13

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

noted that typical antitrust claims "challenge a specific state bar enactment," but that "it [wa]s not clear what 'restraints' Plaintiffs [we]re referring to." (Dismissal Order at 5.)  The SAC contains only one possible "specific state bar enactment": the State Bar's annual license fees and disciplinary costs.  (SAC ¶¶ 18–29, 42, 183, 214–33, 237, 244–47, 258, 262.)  But annual license fees are directly controlled by the Legislature, and disciplinary costs are both specifically ordered by the Supreme Court in each disciplinary order and are reviewable in various ways.  (*See* Section II.B, *supra*.)  These enactments are thus pursuant to clearly articulated policy and actively supervised by the state, fitting well within the ambit of *Parker* immunity.

That context also distinguishes this case from *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975).  *Goldfarb*, as this Court observed, involved a price fixing scheme based on "fee schedules enforced by the Virginia State Bar [that] were not entitled to *Parker* immunity because neither the Virginia Supreme Court nor any Virginia statute required the fee schedule and its enforcement mechanism." (Dismissal Order at 7 (citing 421 U.S. at 789–93).)  By contrast, the State Bar's fees and costs are set at the direction, authorization, and supervision of the Legislature and Supreme Court.  *See e.g.*, *Bates v. State Bar of Az.*, 433 U.S. 350, 367 (1977) (applying *Parker* immunity and distinguishing *Goldfarb* where state supreme court issued "affirmative command").  Indeed, Plaintiffs' counsel conceded that *Goldfarb* is inapt when she represented at oral argument on Defendants' motions to dismiss the FAC that "the facts [of *Goldfarb*] are inapposite."  (Dkt. 97 at 27:15–28:4.)

As the Court recognized in dismissing the FAC's antitrust claims, "[f]ederal courts . . . have routinely rejected attempts to bring a Sherman Act cause of action against the disciplinary rules of a state bar or state Supreme Court." (Dismissal Order at 5 (collecting cases).)  The Court should likewise reject Plaintiffs' effort to plead around the State Bar's immunity and dismiss both antitrust claims with prejudice.

## C.    The SAC Fails to State a Sherman Act Claim

"[T]he primary purpose of the antitrust laws is to protect interbrand

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

14

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

competition." *State Oil v. Khan*, 522 U.S. 3, 15 (1997). Nothing in the SAC's confusing and conclusory allegations fits the rubric of an antitrust claim. The core theory, if there is one, seems to be that the State Bar and Tyler "conspired to cover up the lack of security of plaintiffs' confidential information and/or minimize the data breach" as part of a secret plot to harm solo practitioners in favor of lawyers who represent organizations rather than individuals. (SAC ¶ 186.) That is pure hokum, unsupported by factual allegations and undermined by common sense. Despite another bite at the pleading apple, Plaintiffs have still provided no reason the State Bar—a constitutional entity created and governed by the California Supreme Court—would conspire with Tyler or seek to hurt solo practitioners.[6] The Court should reject this baseless conspiracy theory.

Under the governing standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiffs must allege *facts* showing that their claims are plausible. The SAC fails this basic test; when the "labels and conclusions" are removed, nothing it contains "raise[s] a right to relief above the speculative level." *Id.* at 555. Instead, the only non-conclusory facts the SAC alleges about the Incident show that Defendants acted promptly to remediate it as soon as they learned of it and regularly updated the public about their efforts through general publications and notices to affected individuals. (*See, e.g.*, SAC ¶ 104; Ex. A; Ex. B.) And the SAC's other various factual assertions—such as those involving State Bar disciplinary costs—are entirely unrelated to the Incident or innocuous or both; nothing about them demonstrates an antitrust problem. When alleged antitrust violations have an "obvious alternative explanation," such as those in the SAC, they do not state a claim. *Twombly*, 550 U.S. at 567; *see also Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th

---

[6] Plaintiffs' wild conspiracy theory is even more difficult to comprehend where only one of the five anonymous Plaintiffs—John Roe 2—alleges that he is a solo practitioner, and he admittedly has a public disciplinary record showing that he "has been disciplined repeatedly." (SAC ¶ 5). Plaintiffs do not explain how any purported "conspiracy to cover up the lack of security of their confidential information and/or minimize the data breach" would harm solo practitioners any more than other lawyers (or non-lawyers, such as Plaintiffs John Roe 1 and Jane Roe 1).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

15

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

Cir. 2013) (finding antitrust theory deficient because of "obvious alternative explanations" (cleaned up)).  The antitrust claims fail for that reason, too.

Furthermore, the antitrust claims are deficient because they do not satisfy the required elements of a Section 1 or Section 2 cause of action, as follows.

### i.     The SAC fails to state a Section 1 claim

Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade."  15 U.S.C. § 1.  Therefore, "[t]o establish liability under § 1, a plaintiff must prove (1) the existence of an agreement, and (2) that the agreement was in *unreasonable* restraint of trade."  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 988–89 (9th Cir. 2020) (internal quotation marks omitted).   Additionally, Plaintiffs must adequately plead that the agreement "actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).  Here, the SAC alleges the State Bar violated Section 1 either by conspiring with Tyler to "cover up" or "minimize" the Incident, (SAC ¶¶ 186), or that the State Bar's "Governing Board" established disciplinary costs that disproportionately targets solo practitioners, (*id.* ¶¶ 214).  Neither theory states the required elements of a Section 1 claim.

### 1.     No agreement

Plaintiffs must first allege the existence of a conspiracy or agreement; "the essence of any violation of § 1 is the illegal agreement itself."  *Summit Health v. Pinhas*, 500 U.S. 322, 330 (1991).  Plaintiffs fail to allege anything of the sort.

For starters, Plaintiffs' theory that the State Bar's "Governing Board . . . agreed to create a fixed Disciplinary Cost sheet," (SAC ¶ 214), fails because the State Bar cannot conspire with itself.  Section 1 only applies to allegedly unreasonable restraints of trade "between *separate* entities."  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984).  "It does not reach conduct that is wholly unilateral"—for example, "officers or employees of the same firm do not provide the

16

plurality of actors imperative for a § 1 conspiracy." *Id.* at 768–69 (internal quotation marks omitted). The State Bar's board thus could not have conspired with itself. Furthermore, the board could not have conspired with the State Bar because they are the same entity. "The State Bar is governed by a board known as the board of trustees of the State Bar," also known as the "board of governors." California Business and & Professions Code § 6010(a), (b). Again, no Section 1 claim can stand here.

Plaintiffs' other theory—that the State Bar and Tyler conspired to cover up the Incident—also misses the mark. In analyzing alleged agreements under Section 1, "the Supreme Court has distinguished between agreements made up and down a supply chain, such as between a manufacturer and a retailer ('vertical agreements'), and agreements made among competitors ('horizontal agreements')." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015). The SAC asserts neither. The State Bar is a public entity established under the California Constitution mandated with regulating the practice of law in California. Cal. Const., art. VI, § 9. Tyler is a public, for-profit corporation that develops and licenses software applications. (SAC ¶ 9.) The State Bar and Tyler are not in the same supply chain and are not competitors, and thus Plaintiffs fail to allege an agreement that fits the paradigm of an antitrust claim.

Even if either of these alleged conspiracies was legally cognizable, the SAC contains no well-pled fact showing that either existed. Plaintiffs must allege plausible facts showing "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citation omitted). But the SAC contains only speculation and conclusions. And even though Plaintiffs allegedly obtained communications involving the State Bar and Tyler following the Incident, (*see, e.g.*, SAC ¶¶ 103–119), none are between the State Bar and Tyler, none plausibly show any agreement between Defendants to cover up the Incident, and none involve State Bar disciplinary costs. Consequently, Plaintiffs fail to allege a plausible agreement under Section 1.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

17

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1

### 2.    No unreasonable restraint

2    Plaintiffs also do not allege an unreasonable restraint on trade as required by

3 Section 1.  Courts "employ two different standards to determine whether a particular

4 restraint is unreasonable": (1) the *per se* rule and (2) the rule of reason.  *Aya*

5 *Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1108 (9th Cir. 2021).

6 The Section 1 claim fails under both standards.

7    *First*, neither of Plaintiffs' theories fall within the "small group of restraints

8 [that] are unreasonable *per se*."  *Id.*  Courts only apply the *per se* rule to "certain

9 kinds of agreements" that are "so harmful to competition and so rarely prove justified

10 that the antitrust laws do not require proof that an agreement of that kind is, in fact,

11 anticompetitive in the particular circumstances." *NYNEX Corp. v. Discon, Inc.*, 525

12 U.S. 128, 133 (1998).  Such agreements include those to horizontally or vertically fix

13 prices.  *Id.* (collecting cases).  Because the SAC does not allege a cognizable or

14 plausible agreement, let alone a type that has been recognized to deserve scrutiny

15 under the *per se* rule, this standard does not apply here.

16    *Second*, Plaintiffs fail to allege an unreasonable restraint of trade under the rule

17 of reason, "which is a case-by-case study in which the fact finder weighs all of the

18 circumstances of a case."  *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1445 (9th

19 Cir. 1988) (internal quotation marks omitted).  "The rule of reason requires courts to

20 conduct a fact-specific assessment of market power and market structure to assess

21 the restraint's *actual* effect on competition." *Qualcomm*, 969 F.3d at 989 (cleaned

22 up).  Among other things, to state a claim under the rule of reason, a plaintiff must

23 allege an agreement "which is intended to harm or unreasonably restrain

24 competition."  *McGlinchy*, 845 F.2d at 811.  Plaintiffs' Section 1 claim misses the

25 mark on all fronts.

26    As a threshold matter, "[c]ourts usually cannot properly apply the rule of

27 reason without an accurate definition of the relevant market," which is "the area of

28 effective competition." *Qualcomm*, 969 F.3d at 992.  "The relevant market must

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

18

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

include both a geographic market and a product market." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Further, if an alleged market definition is "facially unsustainable," an antitrust claim may be "dismissed under Rule 12(b)(6)." *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). The only markets alleged in the SAC—those for "PeopleLaw" and "Organizational Clients" lawyers, (SAC ¶ 192)—are not geographic or product markets.[7] They also are nonsensical; as defined in the SAC, attorneys in these two markets do not compete with each other, and thus Plaintiffs "fail[] to adequately allege a conspiracy consummated by actual or potential competitors." *TP Link USA Corp. v. Careful Shopper LLC*, 2020 WL 3063956, at *10 (C.D. Cal. Mar. 23, 2020) (dismissing Section 1 claim). Additionally, the State Bar is a licensing body that does not provide legal services to any entity except for the State Bar; it does not compete with the lawyers it licenses. *Id.* Plaintiffs' alleged markets do not satisfy the Sherman Act.

Additionally, Plaintiffs' Section 1 claim lacks any plausible allegation that the State Bar "intend[ed] to harm or unreasonably restrain competition." *McGlinchy*, 845 F.2d at 811. The SAC speculatively avers that the State Bar and Tyler allegedly conspired "to preserve [their] reputation[s]." (SAC ¶ 186; *see also id.* ¶¶ 187–88, 208.) Assuming that bare assertion is true (and it is not), such a motive does not demonstrate that the State Bar intended to harm solo practitioners specifically or competition generally. And the accusation that the State Bar's Board of Governors "agreed" to establish disciplinary costs, (SAC ¶ 214), is both conclusory and, even if credited, also fails to show an intent to harm competition.

### 3.    No cognizable causal antitrust injury

"To establish antitrust injury, the Ninth Circuit has held that a plaintiff must establish four elements: '(1) unlawful conduct, (2) causing an injury to the plaintiff,

---

[7] Plaintiffs' alleged "PeopleLaw" and "Organizational Clients" markets appear to originate from the Legal Market Landscape Report. (SAC ¶ 192.) That report does not analyze or even mention the State Bar's disciplinary costs and does not conclude that such costs are "too high" for solo practitioners. (*Id.* ¶ 244.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

19

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

(3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.'" *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, 156 F. Supp. 3d 1094, 1101 (C.D. Cal. 2015) (quoting *Somers*, 729 F.3d at 963). "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs., Inc v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)); *see also McGlinchy*, 845 F.2d at 812 (ruling antitrust injury is "injury to the market or to competition in general, not merely injury to individuals").

Although the SAC's theory of antitrust injury is a moving target, under any possible interpretation it does not pass muster. At core, Plaintiffs allege that the Incident "decrease[d] the client's ability to freely choose amongst members of the Bar." (SAC ¶ 189.) Separately, they also aver that State Bar disciplinary costs operate as a "barrier to [disciplined attorneys] re-enter[ing] the PeopleLaw Market thus decreasing the supply of PeopleLaw Market attorneys for consumers to choose from," which allegedly "increase[es] the costs of legal services the sector." (*Id.* ¶ 230.) The SAC does not put forth a single credible factual allegation supporting these assertions which are, in any event, a far cry from a cognizable antitrust injury.

Particularly lacking are the SAC's allegations of causation. The causation inquiry "looks to whether [the plaintiff's] alleged injury was the direct result of [the defendant's] allegedly anticompetitive conduct." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1058 (9th Cir. 1999). This factor assesses "the chain of causation between [the plaintiff's] injury and the alleged restraint of trade." *Id.* "The harm may not be derivative and indirect or secondary, consequential, or remote." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 458 (9th Cir. 2021) (cleaned up). Plaintiffs allege no non-conclusory fact showing that any attorney has lost business or was unable to practice law, or that any non-attorney has been unable to find or retain an attorney, because any of the conduct alleged in the SAC. Hypothetical allegations such as that "Plaintiff attorneys and that Class have and/or will suffer

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

20

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

harm in the form of . . . possibly fewer clients" are wholly insufficient. (SAC ¶ 211; *see also id.* ¶¶ 201–207 (alleging speculative theory that attorneys are less likely to cooperate with State Bar investigations because of the Incident, which supposedly drives up investigative costs that the State Bar purportedly passes on to solo practitioners and their clients). Further, vague assertions that State Bar disciplinary costs are "too high," (*id.* ¶ 244), are likewise inadequate, especially without well-pled facts demonstrating that any such costs prevented any Plaintiff from finding clients or practicing law.

Plaintiffs also fall short of alleging the other required elements of a cognizable causal antitrust injury. The SAC does not allege any "unlawful conduct" because it fails to plead an antitrust violation and "[w]ithout a violation of the antitrust laws, there can be no antitrust injury." *Am. Ad Mgmt., Inc.*, 190 F.3d at 1057. The SAC also does not show that any alleged inability to find attorneys or clients, or increased costs, flows from any unlawful conduct by the State Bar. And, finally, the litany of theoretical injuries that Plaintiffs assert in the SAC—such as "increased State Bar costs, possibly fewer clients, reputational harm, paranoia, anxiety, emotional distress," and more, (SAC ¶ 211)—are not injuries of "the type the antitrust laws were intended to prevent." *Novation Ventures*, 156 F. Supp. at 1100–01. There is no fact in the SAC connecting these hypothetical harms to any anticompetitive effect. Consequently, the Court should dismiss the Section 1 claim with prejudice.

### ii.    The SAC fails to state a Section 2 claim

A claim under Section 2 of the Sherman Act requires three elements: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal anti-trust injury." *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010); *see also U.S. v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). As an initial matter, a claim under Section 2 requires a plaintiff to plead several of the same elements as a Section 1 claim. Because the SAC fails to plead those elements for its Section 1

claim, its claim under Section 2 should be dismissed for the same deficiencies. Namely, the SAC does not adequately allege a relevant market, that the State Bar acted with the intent to restrain trade, or a cognizable causal antitrust injury. (*See* Section IV.C.i.2–3, *supra*.) Each of these failings, standing alone, warrants dismissal of Plaintiff's Sherman 2 claim. For example, the Court dismissed the FAC's Section 2 claim in part because Plaintiffs failed to allege antitrust injury. The Court recognized that "Plaintiffs' allegation that the entire disciplinary system is set up to benefit large law firms at the expense of solo practitioners is entirely conclusory." (Dismissal Order at 8.) The Court also found that "Plaintiffs offer no facts in support, only vague economic theories." (*Id.*) The SAC's Section 2 claim suffers the same defects as the FAC's and should be dismissed for the same reasons.

The Section 2 claim fails for other reasons, too. Plaintiffs advance two theories: that (1) State Bar disciplinary costs are "too high" such that they amount to a refusal to deal, (SAC ¶ 244); and (2) the State Bar is attempting to monopolize "who could practice in federal court," (*id.* ¶ 249). Both theories fail to satisfy any of the required elements to state a Section 2 claim.

### 1.    The SAC's refusal to deal theory is inapplicable

A refusal to deal theory applies where a defendant "refus[es] to cooperate with rivals." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). To adequately plead a refusal to deal, the Ninth Circuit "requires the 'unilateral termination of a voluntary and profitable course of dealing' between competitors." *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1145 (N.D. Cal. 2011) (quoting *LiveUniverse, Inc. v. MySpace, Inc.,* 304 Fed.Appx. 554, 556 (9th Cir.2008)). The SAC alleges that the State Bar is refusing to deal with solo practitioners who have been subject to discipline. (SAC ¶ 244.) But the State Bar does not provide legal services or compete with lawyers, nor did the State Bar "unilateral[ly] terminat[e]" a prior "course of dealing" with those attorneys. *LiveUniverse*, 304 Fed.Appx. at 556. Plaintiffs' refusal to deal theory thus falls flat.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

22

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

### 2.    The SAC does not allege attempted monopolization

A claim for attempted monopolization under Section 2 requires that a plaintiff allege "(1) a specific intent to monopolize a relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of success." *Catlin v. Wash. Energy Co.*, 791 F.2d 1343, 1348 (9th Cir. 1986).  Here, the SAC's other Section 2 theory is so fantastical it beggars belief: Plaintiffs contend that the State Bar "has attempted a monopoly over who can practice in federal court."  (SAC ¶ 254.)

The attempted monopolization claim fails on numerous levels.  For one thing, Plaintiffs offer no fact, plausible or otherwise, in support of their fanciful theory, nor could they: the State Bar has no conceivable motive for controlling the practice of law before the federal judiciary.  Additionally, Plaintiffs do not plead plausible facts showing *how* the State Bar could possibly control practice in federal court, especially given that "a federal court has the power to control admission to its bar."  *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1118 (9th Cir. 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see also* C.D. Cal. Civ. L. Rule 83-2.1 (setting forth requirements for appearing before and being admitted to District Court for the Central District of California).  The SAC contains no allegations averring that the State Bar has interfered with the federal court's inherent power to control its admission.

The attempted monopolization claim also is legally deficient.  The ability to practice law in federal court is not a cognizable market for antitrust purposes; it is neither a geographic or product market and is not a relevant area of competition.  (*See* Section IV.C.i.2, *supra*.)  The SAC also merely concludes without explanation or factual support that, "[b]ecause there is no oversight, there is a dangerous probability of success."  (SAC ¶ 278.)  As with the previously-dismissed Section 2 claim, the SAC's Section 2 claim is utterly devoid of facts that would "support a plausible inference the State Bar acted with specific intent to monopolize."  (Dismissal Order at 7.)  The SAC pleads no facts showing the State Bar had designs on controlling access to federal courts, let alone to do so through its response to the Incident or its

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

23

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

disciplinary costs; rather, it merely alleges that the State Bar "had a specific intent to monopolize using predatory or anticompetitive conduct directed at accomplishing the unlawful purpose of attempting to control who could practice in federal court." (SAC ¶ 249.) This bald legal conclusion, bereft of any supporting factual allegation, is not enough to satisfy Section 2's specific intent requirement. *See Novation Ventures*, 156 F. Supp. at 1104 (dismissing Section 2 claim because "Plaintiff has still failed to allege *facts* supporting Plaintiff's conclusory allegation of such a scheme").

But there is more: the SAC's Section 2 claim also fails to adequately allege anticompetitive conduct, which requires a plaintiff show "the use of monopoly power to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Image Tech. Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1208 (9th Cir.1997) (internal quotation marks omitted). Typical allegations of anticompetitive conduct include "(1) charging monopolist prices; (2) discontinuing support for and development of [acquired products; and] (3) bundling [products to further enhance marketshare]." *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012). Nothing alleged in the SAC remotely resembles these well-established categories.

Rather, the SAC asserts that the State Bar's disciplinary costs are anticompetitive because they "fall[] more heavily on lawyers in the People market much more than lawyers in the Organizational Clients Market." (SAC ¶ 20; *see also id.* ¶ 218.) This alleged conduct cannot be anticompetitive because lawyers in these two markets *do not compete*; the markets as alleged in the SAC do not overlap because solo practitioners and attorneys who tend to represent organizations operate in *different* markets and serve *different* clientele. (SAC ¶¶ 192–94.) In any event, the SAC contains no plausible allegation that disciplinary costs disproportionately affect solo practitioners; it does not allege, for example, a well-pled fact showing that solo practitioners subject to discipline pay higher or unequal costs. Nor could it, for disciplinary costs are assessed using an objective costs formula without regard for

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

24

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

the nature of an individual attorney's practice.  (*See generally* Ex. D.)

Given these manifest and incurable problems, the Section 2 claim should be dismissed with prejudice.  *See Viriyapanthu v. State Bar of Cal.*, 813 Fed. App'x. 312, 313 (9th Cir. 2020) (holding that conclusory accusations of conspiracy against the State Bar of California were properly dismissed for failure to state a claim).

### D.    Leave to Amend Would Be Futile

Leave to amend is "properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). "When a party has already been given leave to amend its complaint, the district court may exercise its discretion more broadly to find that further amendment would be futile." *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, 2007 WL 4976364, at *15 (C.D. Cal. Oct. 29, 2007), *aff'd,* 323 F. App'x 571 (9th Cir. 2009) (dismissing complaint with prejudice where it failed "to allege something more than a conclusory violation of the Sherman Act"); *see also Lai v. USB-Implementers F., Inc.*, 2015 WL 12746705, at *8 (C.D. Cal. Mar. 11, 2015) (dismissing antitrust claim with prejudice when "Court's prior order addressed the defects in Plaintiff's initial Complaint at length" but plaintiff "failed to allege sufficient facts to cure those defects").

Here, the Court provided Plaintiffs the chance to cure the pleading deficiencies in the antitrust claims.  Plaintiffs fell far short.  "No additional pleading or discovery will alter this reality." *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1098 (C.D. Cal. 2007) (dismissing Sherman Act claims with prejudice). The Court should dismiss the antitrust claims with prejudice.  *Bass v. Cnty. of San Diego*, 2009 WL 10671992, at *4 (S.D. Cal. Aug. 25, 2009) (dismissing Sherman Act claim with prejudice under *Parker* immunity); *Nevijel*, 651 F.2d at 674 (affirming dismissal with prejudice of amended complaint under Rule 8).

## V.    CONCLUSION

For the foregoing reasons, the State Bar respectfully requests that the Court grant its motion and dismiss the SAC's Sherman Act claims with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

25

MEMORANDUM IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1    Dated:  November 21, 2022          COOLEY LLP

2

3                                      /s/ Tiana Demas
                                       Tiana Demas
4
                                       Attorneys for Defendant
5                                      THE STATE BAR OF CALIFORNIA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28