# EXHIBIT D



THE
STATE BAR
OF CALIFORNIA

180 HOWARD STREET
SAN FRANCISCO, CA 94105-1639
TELEPHONE (415) 538-2000
HTTP://WWW.CALBAR.ORG

# BOARD OF GOVERNORS MEETING

## AGENDA

**The State Bar of California**
**180 Howard Street**
**Board Room, 4th Floor**
**San Francisco, CA 94105**
**(415) 538-2000**
**Friday, January 07, 2011**
**1:00 p.m.**

### *OPEN SESSION*

**1 GUEST SECTION**

Patti White - CIC Implementation [special set 1:00 p.m.]

**10 MINUTES**

September 26, 2010 Minutes [regular meeting]
November 19, 2010 Minutes [regular meeting]
December 16, 2010 Minutes [special meeting]

**30 PRESIDENT'S REPORT**

**40 STAFF REPORTS**

**41   Executive Director**

**42   Secretary**

**50 CONSENT AGENDA**

50 - 1        Financial Resolution

**100 REPORTS OF BOARD COMMITTEES**

*110   Board Committee on Operations*

111        Conflict of Interest Code for Designated Employees 2011 re year 2010, Return from Public Comment

*120   Regulation, Admissions and Discipline Oversight Committee*

121        Rules of Professional Conduct Proposed New and Amended, Reconsideration of Proposed Rule 7.5(c) re Restriction on the Name of a Public Officer in a Law Firm Name

122        Adjustment to Cost Assessment Formula - Business and Professions Code Section 6086.10

*130   Member Oversight Committee*

131        Lawyer Assistance Program- Proposed Program Changes

132        Fee Waivers - Proposed Rule Change

*140   Planning, Program Development & Budget*

141        Contract Authorization - Technology

142     Contract Authorization - Oracle Enterprise Data Interface Programming

143     Role of the President Re Contracts to Employ an Executive Director

***150    Volunteer Involvement Committee***

***160    Stakeholder Relations Committee***

161     State Bar Rules, Title 3 (Programs & Services), Division 4 (Consumers), Chapter 3 - Lawyer Referral Services - return from public comment

162     Recommendations re US News and World Report - Law School Rankings

163     Immediate Action Items – Legislative

***170    Task Force on Sections***

Educating Seniors Project, Projection for 2011 - Oral Report

***180    Audit Committee***

181     Contract Authorization - California State Auditor

***190    Governance in the Public Interest Task Force***

Governance in the Public Interest Task Force Update - Oral Report

**700 MISCELLANEOUS**

701     Appointment of Secretary

702     Government Affairs Contract Approval

703     Discipline/CSF Collection Efforts

## *CLOSED SESSION*

**1000 MINUTES**

October 27, 2010 Minutes [special meeting]

November 19, 2010 Minutes [regular meeting]

*(Closed pursuant to Rules Governing Open Meetings, Closed Sessions and Records of the Board of Governors, article 5, section 3(a))*

**6000 APPOINTMENTS**

**6010   Closed Consent**

6011     Committee of Bar Examiners, Interim Appointment of Member

6012     Legal Specialization Council of Past Chairs, Appointment of Members

6013     Law Practice Management and Technology Section Executive Committee, Interim Appointment of Member

**6020   Closed Appointments**

*(Closed pursuant to Business and Professions Code section 6026.5(g))*

\* Closed pursuant to Business and Professions Code § 6026.5 (a). Consult with counsel regarding pending or perspective litigation.

\*\* Closed pursuant to Business and Professions Code § 6026.5 (d). Appointment, Employment or Dismissal of an employee, consultant or officer of the State Bar or to hear complaints or charges brought.

\*\*\* Closed pursuant to Business and Professions Code § 6026.5 (e). Disciplinary Investigations or Proceedings.

**ADJOURN**

# AGENDA ITEM

<u>**JANUARY**</u> **122**

| | |
|---|---|
| **DATE:** | **January 1, 2011** |
| **TO:** | **Members, Regulation, Admissions and Discipline Oversight Members, Board of Governors** |
| **FROM:** | **Robert A. Hawley, Deputy Executive Director** |
| **SUBJECT:** | **Response to State Auditor:  Updating Formula for Assessing Costs of Discipline Proceedings** |

---

## EXECUTIVE SUMMARY

By statute, the State Bar Court assesses against attorneys found culpable of disciplinary violations, costs incurred by the State Bar in successfully prosecuting the proceeding.  These costs are assessed based on a formula that the State Bar has developed with the assistance of expert consultants.  The formula has been periodically updated to address inflationary factors.  In 2009, the California Bureau of State Audits (State Auditor) recommended that the State Bar update the disciplinary cost formula last updated in 2002.  The State Auditor also recommended that the State Bar develop a method for adjusting the cost formula automatically annually to remain current with inflation.  The State Bar reported to the State Auditor that it was retaining the appropriate experts to update the formula and to develop a method to adjust the formula annually to track inflation.  HFH Consultants were retained to undertake this task.  They have reported that the existing cost formula should be adjusted for 2011 by approximately 40%.  They also recommend a methodology be adopted to allow the cost formula to automatically readjust annually tied to indices of the U.S. Department of Labor, Bureau of Labor Statics, blending the Employment Cost Index (ECI) with the Consumer Price Index (CPI).  This is before the Board for approval.  If you have questions, please contact Robert.Hawley@calbar.ca.gov; 415-538-2277.

---

## BACKGROUND

In 1986, the Legislature authorized the State Bar to collect costs of disciplinary proceedings from respondent attorneys found culpable of disciplinary offenses.  The Legislature also authorized cost recovery by respondents who were exonerated in State Bar disciplinary proceedings. The State Bar is authorized to recover its administrative and investigatory costs, but not attorneys fees or expert witness costs. [Business & Professions Code §6086.10 (Attachment 1).]   In 1988, the State Bar's Board of Governors established a cost formula for determining the costs to be assessed against

Attachment A

**Exhibit D: Page 3**

respondents.  The formula is based upon the cost of "average" disciplinary proceedings
at various stages of the system, rather than upon the actual costs of a specific
disciplinary case.

At the conclusion of a disciplinary proceeding, the State Bar's Office of the Chief Trial
Counsel (OCTC) prepares and files cost certificates with the State Bar Court based on
the formula.  The respondent attorney has the opportunity to challenge the cost
assessment.  Once approved by the State Bar Court, the cost assessment is
incorporated into the disciplinary order.  Under Business & Professions Code  §6140.7
[Attachment 1],  unpaid disciplinary costs are added to and become a part of a
member's annual licensing fees, which must be paid in order for the license to practice
law to be renewed annually.

In 1996, then Executive Director Herbert Rosenthal, appointed a special task force to
review the 1988 disciplinary cost recovery system and evaluate whether the existing
formula was still efficacious in light of changes that had taken place in the disciplinary
system and inflationary factors since 1988.  This was consistent with the California
Auditor's recommendations at that time.

The State Bar retained the consulting firm of Hilton Farnkopf & Hobson (HFH) to provide
their expertise to the State Bar's task force as it re-examined the cost formula.  As a
result of this review and analysis, a recommendation was made to the Board of
Governors in July 1997 to continue using the formulaic "average costs" model as
opposed to specifically incurred costs and expand the factors included in the overall
calculated average.  As the Board was contemplating adoption of the HFH/Task Force
recommendations, the State Bar's funding authority for 1998 was vetoed by then
Governor Wilson.  Regular business operations of the State Bar of California ceased.
The cost issue was not readdressed until the State Bar was returned to "normal"
operations in 2000 under then Executive Director Judy Johnson.

Due to the passage of time since HFH and the Task Force made its 1997
recommendations, in 2000, HFH was re-retained to review its 1997 recommendations
and update them as appropriate based upon inflationary factors.  As a result, in June
2002, the Board of Governors adopted an updated discipline cost model based upon
the cost study conducted by the task force and HFH.  The State Bar has continued to
operate under the 2002 cost formula until the present time.

The State Bar's efforts to recover the costs of its discipline system from those attorneys
found culpable of disciplinary offenses has been a point of ongoing interest and
comment by the State Auditor.  In its most recent 2009 audit report, the State Auditor
made Recommendation #6, among others not addressed here, which states in pertinent
part:

> "To ensure that it maximizes the amounts that it may recover to defray the
> expenses of disciplining attorneys, the State Bar should update annually its
> formula for billing discipline costs…."

In its response to the State Auditor's recommendation, the State Bar reported that it was retaining experts to examine and update the formula to address inflationary factors since 2002, as well as develop a potential methodology for an annual formula adjustment based upon inflationary factors.  The State Bar retained HFH for this project, the same consultants used in 1997 and 2002, to re-examine and update the cost formula.

## ISSUE

Before the Board for approval and adoption is the HFH recommendation that the existing cost formula be adjusted for 2011 by approximately 40%.  This is approximately the same increase that was recommended in 2002.  [Attachment 3].  They also recommend a methodology be adopted to allow the cost formula to automatically readjust annually tied to indices of the U.S. Department of Labor, Bureau of Labor Statics, and in particular blending, the Employment Cost Index (ECI) with the Consumer Price Index (CPI).  [Attachment 3].

## CONCLUSION

HFH completed its analysis and report in December 2010. It is attached as Attachment 2.  Based upon the data it reviewed, HFH concluded that the formulaic approach to cost assessments that was first developed in 1988, enhanced in 1997 and most recently updated in 2002, remains a viable and efficacious tool for assessing costs. Historically, the use of this formulaic approach has not received any significant challenge.  HFH found, not surprisingly, that significant inflationary factors have occurred since the formula was last adjusted in 2002.

As a result, HFH recommends a significant adjustment for 2011 of approximately 40%.  HFH also recommends that, to minimize such major spikes in periodic adjustments to the formula, the formula be annually adjusted by tying it to indices published by the United States Department of Labor, Bureau of Labor Statistics.  To reach the most appropriate adjustment, HFH recommends that the formula be tied to two indices, the Department of Labor Employment Cost Index (ECI), which tracks labor costs, and the Consumer Price Index (CPI), which tracks overhead or general operating costs.  HFH recommends adjusting the discipline cost formula January 1 of each year based upon blending these two indices, blending them 60% ECI and 40% CPI.  A synopsis of HFH's recommendations is attached as Attachment 3.

## DISCUSSION

See above in Background.

Attachment A

**FISCAL / PERSONNEL IMPACT:**

There is no personnel impact.  There is no negative fiscal impact.  The may be a
potential positive revenue impact based upon the collection of costs under this formula.

**RULE AMENDMENTS:**

Not Applicable.

**BOARD BOOK IMPACT:**

Not Applicable.

**RECOMMENDATION**

Approval and adoption of the cost formula adjustments is recommended.

**PROPOSED BOARD COMMITTEE RESOLUTION:**

Should the Regulation, Admissions and Discipline Oversight Committee agree with the
above recommendation, the following resolution is suggested:

> **RESOLVED**, that the Regulation, Admissions and Discipline Oversight
> Committee recommends that the Board of Governors approve and adopt the
> updated discipline cost model reflected in Attachment 2 and attached hereto; and
> it is;

> **FURTHER RESOLVED**, that the updated cost model apply to discipline costs
> assessed in all matters in which a notice of disciplinary charges or a pre-notice
> stipulation pursuant to Rules 132 – 135, Rules and Procedure of the State Bar of
> California, is filed on or after the Board's action this date; and it is

> **FURTHER RESOLVED** that commencing January 1, 2012, and each January 1
> thereafter, the discipline cost model be automatically adjusted to address
> inflationary factors by multiplying the then current disciplinary costs by 1 plus the
> sum of 60% of the annual percentage change in the Department of Labor,
> Bureau of Labor Statistics, Employment Cost Index (ECI) and 40% of the annual
> percentage change in the Consumer Price Index (CPI); and it is

> **FURTHER RESOLVED** that the discipline cost model, as adjusted in this way
> each year, apply to discipline costs assessed in all matters in which a notice of
> disciplinary charges or pre-notice stipulation pursuant to Rule 132 -135, Rules of
> Procedure of the State Bar of California, is filed on or after January 1 of that
> same year.

Attachment A

**PROPOSED BOARD RESOLUTION:**

Should the Board concur with the Regulation, Admissions and Discipline Oversight Committee's recommendation, the following resolution is suggested:

> **RESOLVED**, that upon the recommendation of the Regulation, Admissions and Discipline Oversight Committee, the Board of Governors hereby approves and adopts the updated discipline cost model reflected in Attachment 2 and attached hereto; and it is

> **FURTHER RESOLVED**, that the updated cost model apply to discipline costs assessed in all matters in which a notice of disciplinary charges or a pre-notice stipulation pursuant to Rules 132 – 135, Rules and Procedure of the State Bar of California, is filed on or after the Board's action this date; and it is

> **FURTHER RESOLVED** that commencing January 1, 2012, and each January 1 thereafter, the discipline cost model be automatically adjusted to address inflationary factors by multiplying the then current disciplinary costs by 1 plus the sum of 60% of the annual percentage change in the Department of Labor, Bureau of Labor Statistics, Employment Cost Index (ECI) and 40% of the annual percentage change in the Consumer Price Index (CPI); and it is

> **FURTHER RESOLVED** that the discipline cost model, as adjusted in this way each year, apply to discipline costs assessed in all matters in which a notice of disciplinary charges or pre-notice stipulation pursuant to Rule 132 -135, Rules of Procedure of the State Bar of California, is filed on or after January 1 of that same year.

Attachment A

## THE STATE BAR ACT

### § 6086.10     Payment of Cost of Disciplinary Proceedings

(a)   Any order imposing a public reproval on a member of the State Bar shall include a direction that the member shall pay costs. In any order imposing discipline, or accepting a resignation with a disciplinary matter pending, the Supreme Court shall include a direction that the member shall pay costs. An order pursuant to this subdivision is enforceable both as provided in Section 6140.7 and as a money judgment.

(b)   The costs required to be imposed pursuant to this section include all of the following:

   (1)   The actual expense incurred by the State Bar for the original and copies of any reporter's transcript of the State Bar proceedings, and any fee paid for the services of the reporter.

   (2)   All expenses paid by the State Bar which would qualify as taxable costs recoverable in civil proceedings.

   (3)   The charges determined by the State Bar to be "reasonable costs" of investigation, hearing, and review. These amounts shall serve to defray the costs, other than fees for the services of attorneys or experts, of the State Bar in the preparation or hearing of disciplinary proceedings, and costs incurred in the administrative processing of the disciplinary proceeding and in the administration of the Client Security Fund.

(c)   A member may be granted relief, in whole or in part, from an order assessing costs under this section, or may be granted an extension of time to pay these costs, in the discretion of the State Bar, upon grounds of hardship, special circumstances, or other good cause.

(d)   In the event an attorney is exonerated of all charges following a formal hearing, he or she is entitled to reimbursement from the State Bar in an amount determined by the State Bar to be the reasonable expenses, other than fees for attorneys or experts, of preparation for the hearing.

(e)   In addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to Section 6086.13, costs imposed pursuant to this section are penalties, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to protect the public.  This subdivision is declaratory of existing law. (Added by Stats. 1986, ch. 662.  Amended by Stats. 2003, ch. 334.)

### § 6140.7  Disciplinary Costs Added to Membership Fee

Costs assessed against a member publicly reproved or suspended, where suspension is stayed and the member is not actually suspended, shall be added to and become a part of the membership fee of the member, for the next calendar year. Unless time for payment of discipline costs is extended pursuant to subdivision (c) of Section 6086.10, costs assessed against a member who resigns with disciplinary charges pending or by a member who is actually suspended or disbarred shall be paid as a condition of reinstatement of or return to active membership. (Added by Stats. 1986, ch. 662. Amended by Stats. 1996, ch. 1104; Stats. 2004, ch. 529.)

Attachment A



# State Bar of California
# Updated Disciplinary Cost Study



December 10, 2010



**HF&H Consultants, LLC**

Attachment A

The State Bar of California                                    Table of Contents
                                                    Updated Disciplinary Cost Study

# TABLE OF CONTENTS

**SECTION 1:  EXECUTIVE SUMMARY** ........................................................... 1
  Purpose of This Study ......................................................................... 1
  Findings .............................................................................................. 1
  Variance Analysis (Updated Costs vs. Current Costs) ........................ 1
  Method for Annual Updates ................................................................ 3
  Other Findings and Recommendations ............................................... 3

**SECTION 2:  DISCIPLINE COST CALCULATION METHODOLOGY** ........................ 5
  Overview............................................................................................. 5
  Overhead Costs .................................................................................. 7
  Labor Costs ........................................................................................ 8
  Staff .................................................................................................... 8
  State Bar Court Time Records ............................................................ 9
  State Bar Court File Review .............................................................. 10
  State Bar Court Cost ......................................................................... 11
  Enforcement Time Records ............................................................... 11
  Enforcement File Review................................................................... 12
  Enforcement Cost ............................................................................. 13
  Resignation Cost .............................................................................. 13
  Consolidations .................................................................................. 14
  OCTC Costs ...................................................................................... 14
  Discipline Cost .................................................................................. 14

# TABLE OF FIGURES

Figure 1: Updated Disciplinary Costs (Including Direct and Indirect Overhead)............. 1
Figure 2: Current Disciplinary Costs (established in 2002) ............................................ 2
Figure 3: Percent Change In Disciplinary Costs (Updated vs. Current) ........................ 2
Figure 4: Model Overview ............................................................................................. 6

# APPENDICES

Appendix 1A: Overhead Costs

Appendix 1B: Labor Costs

Appendix 1C: Staff

Appendix 1D: State Bar Court Time Records

Appendix 1E: State Bar Court File Review

Appendix 1F: State Bar Court Cost

Appendix 1G: Enforcement Time Records

Appendix 1H: Enforcement File Review

Appendix 1I: Enforcement Cost

Appendix 1J: Resignation Cost

Appendix 2A: March 2010 Time Tracking Study Tool – Enforcement Support Staff

Appendix 2B: 2010 Time Tracking Study Tool – Enforcement Professional/Technical Staff

Appendix 2C: 2010 Time Tracking Study Tool – State Bar Court (All Staff)

# SECTION 1:  EXECUTIVE SUMMARY

## Purpose of This Study

Pursuant to our consulting services agreement dated November 20, 2009, HF&H Consultants, LLC (HF&H) was hired by the State Bar of California (State Bar) to perform analyses required to update its discipline cost program.  In a report issued July 3, 1997 (and subsequently updated on April 2, 2002), HF&H developed a Disciplinary Fee Model to allow the State Bar to accurately recover expenses resulting from disciplinary actions taken against its members based on case type and settlement level.

The purpose of this study was to: 1) update the Disciplinary Fee Model to reflect increases in salaries and overhead expenses in the State Bar Court, Enforcement, Executive Offices, and Administration & Finance cost centers and changes in the disciplinary system since 2002; and 2), develop an annual adjustment methodology.

## Findings

The updated costs are summarized below in Figure 1.  The costs distinguish between four case types ranging from one to six levels.  The costs include direct and indirect overhead with the exception of lawyers' and experts' expenses.  Where assumptions were required to determine lawyer and expert expenses, the standard that was followed was to err in favor of the respondent.  In our opinion, the updated costs are reasonable and in keeping with the authorizing legislation.

**Figure 1: <u>Updated</u> Disciplinary Costs**
**(Including Direct and Indirect Overhead)**

| Case Type | Default | Level 1 | Level 2 | Level 3 | Level 4 | Level 5 | Level 6 |
|---|---|---|---|---|---|---|---|
| | | | *Settlement Level* | | | | |
| Original | $ 4,060 | $ 2,797 | $ 3,269 | $ 5,182 | $ 6,779 | $ 15,287 | $ 18,700 |
| Conviction | $ 2,739 | | $ 2,287 | $ 4,906 | $ 6,440 | $ 11,726 | $ 16,762 |
| Prob Revoc | | $ 2,191 | | | | | |
| Rule 955 | | $ 2,325 | | | | | |

+Investigation   $ 892   for each investigation over one.

+Resignation   $ 125   for each resignation.
(added to all other applicable costs)

## Variance Analysis (Updated Costs vs. Current Costs)

Figure 2 and 3 below summarize the current disciplinary costs (established in 2002) and the percent increase between the updated costs and current costs for each case type and level.

**Figure 2: Current Disciplinary Costs (established in 2002)**

| Case Type | Settlement Level | | | | | | |
|---|---|---|---|---|---|---|---|
| | Default | Level 1 | Level 2 | Level 3 | Level 4 | Level 5 | Level 6 |
| Original | $ 2,918 | $ 1,983 | $ 2,296 | $ 3,654 | $ 4,920 | $ 11,107 | $ 13,463 |
| Conviction | $ 1,987 | | $ 1,636 | $ 3,530 | $ 4,569 | $ 8,479 | $ 12,398 |
| Prob Revoc | | $ 1,564 | | | | | |
| Rule 955 | | $ 1,641 | | | | | |

+Investigation  $ 619  for each investigation over one.

+Resignation  $ 89  for each resignation.
(added to all other applicable costs)

**Figure 3: Percent Change In Disciplinary Costs
(Updated vs. Current)**

| Case Type | Settlement Level | | | | | | |
|---|---|---|---|---|---|---|---|
| | Default | Level 1 | Level 2 | Level 3 | Level 4 | Level 5 | Level 6 |
| Original | 39% | 41% | 42% | 42% | 38% | 38% | 39% |
| Conviction | 38% | | 40% | 39% | 41% | 38% | 35% |
| Prob Revoc | | 40% | | | | | |
| Rule 955 | | 42% | | | | | |

+Investigation  44%  for each investigation over one.

+Resignation  40%  for each resignation.
(added to all other applicable costs)

The increases in Disciplinary Costs are primarily the combined result of three factors: 1) the increase in the hourly rates of non-attorney employees; 2) the increase in employee benefits (primarily health care costs); and 3) the increase in overhead costs.

The average hourly rate of non-attorney employees increased 32.2% between 2001 and 2009, which is an annual average increase of 4.0%.

The average employee benefits (primarily health care costs) increased 148.5% between 2001 and 2009, which is an annual average increase of 18.6%.

Overhead costs (i.e., central administration, human resources department, financial planning and analysis, membership billing, computer services/support, etc.) increased 29.28% between 2001 and 2009, which is an annual average increase of 3.7%.

## Method for Annual Updates

As illustrated above, the cost to administer the disciplinary actions taken against its members increase over time as the cost of labor and overhead expenses increase.  The infrequent periodic update of this fee structure has resulted in significant increases after years of no increases.  To minimize the sudden spikes, we recommend annual increased tied to indices published by the United States' Department of Labor – Bureau of Labor Statistics.  During our review of the tasks being conducted and the costs related to such tasks, we have determined the calculated fees can be broken down into two components: 1) direct labor costs (which make up approximately 60% of the total fees) and 2) indirect overhead costs (which make up approximately 40% of the total fees).  As such, we recommend the fees be adjusted annually (effective January 1 of each year), as follows:

Each Disciplinary Fee for the coming Year shall be calculated by multiplying the then-current Disciplinary Fee by one plus the sum of: 1) 60% of the annual percentage change in the Employment Cost Index (ECI; as detailed below) and 2) 40% of the annual percentage change in the Consumer Price Index (CPI; as detailed below).

|  | ECI | CPI |
|---|---|---|
| Description | Employment Cost Index – Total Compensation | Consumer Price Index - All Urban Consumers |
| Series ID | CIU2010000100000I | CUURA422SA0 |
| Adjusted | Not seasonally adjusted | Not seasonally adjusted |
| Industry/Group | Management, professional, and related | San Francisco-Oakland-San Jose Metropolitan Area |
| Sector/Item | Private Industry | All items |
| Base Period | 1982-84=100 | 1982-84=100 |
| Periodicity | Quarterly | Bi-monthly |

## Other Findings and Recommendations

Our analysis was limited to updating the existing Disciplinary Fee Model to reflect current costs (i.e., direct labor costs and administrative overhead costs), as the model was last updated in 2002.  We reviewed data from a time study conducted for four weeks in March 2010 to determine if material changes to the identified tasks, time and employee classifications was warranted to maintain the validity of the model.  We concluded that while changes had occurred between 2002 and the current time, the changes were not sufficient to invalidate the 2002 study data upon which the model is based.  We made limited changes to the number of times each task was performed, the average time to complete each task, or the employee class of the employee who performed the task from the existing Disciplinary Fee Model based upon the data gathered by State Bar staff in the March 2010 study, noting some consolidation of tasks and classification changes.  We worked with State Bar staff to develop data gathering spreadsheets to be completed by State Bar employees to document the case being worked on, the tasks performed, and the duration of such tasks.  For future updates of the Disciplinary Fee

The State Bar of California                          Section 1:  Executive Summary
                                                     Updated Disciplinary Cost Study

Model, we recommend State Bar staff utilize the data gathering spreadsheets which have been developed from the March 2010 study and gather more task statistics over a period of at least six months to be used to revalidate the model going forward.  For our purposes here, however, we are satisfied that the fee model is currently valid and is appropriately used as the basis for the update recommendations provided here.

# SECTION 2:  DISCIPLINE COST CALCULATION METHODOLOGY

## Overview

An overview of the model is shown in Figure 4 and the detailed schedules are included in Appendices 1 and 2.  The model currently calculates the discipline cost for each case type and settlement level as the sum of:

- The number of times a task is performed;

- The average time it takes to perform the task; and

- The burdened hourly rate of the staff that performs the task.

The levels of each of the four types of cases are explained below:

Original Disciplinary Matters

(a) Default cases
(b) Level One:  Settlement prior to filing of a Notice of Disciplinary Charges
(c) Level Two:  Settlement during first 120 days of proceeding
(d) Level Three:  Settlement before Pretrial Statement is filed
(e) Level Four:  Settlement before trial but after Pretrial Statement is filed or a one-day trial
(f) Level Five:  Multi-day trial
(g) Level Six:  Review Department proceedings

Conviction Referral Proceedings

(a) Default cases
(b) Level One:  Does not apply
(c) Level Two:  Settlement during first 120 days of proceeding
(d) Level Three:  Settlement before Pretrial Statement is filed
(e) Level Four:  Settlement before trial but after Pretrial Statement is filed or a one-day trial
(f) Level Five:  Multi-day trial
(g) Level Six:  Review Department proceedings

Rule 955 Proceedings

Probation Revocation Proceedings

We developed the model to allow the State Bar to periodically update the underlying data (salaries, overhead, average time per task, etc.) and calculate new discipline costs.

The State Bar of California

Section 2:  Discipline Cost Calculation Methodology
Updated Disciplinary Cost Study

For each model component, we describe below the data source, the data preparation, if any, and the data analysis performed.

## Figure 4: Model Overview



Attachment A

## Overhead Costs

### Data Source

We conferred with the staff of the State Bar Office of Finance to discuss the State Bar's organizational structure and accounting methods.  As was determined during our development of the Discipline Fee Model all or part of the cost centers in the Executive Offices, Administration and Finance, Enforcement and State Bar Court were entirely or partially recoverable.  We used fiscal year 2009 actual operating results, for the above-mentioned cost centers, to determine the amount of overhead to be recovered through discipline cost assessments.

### Data Preparation

The fiscal year 2009 actual operating results included the revenue collected through discipline cost assessments, which had the effect of reducing the gross cost of operations.  We calculated the gross cost for each cost center by adding back to the net operating results all discipline reimbursements.

### Data Analysis

We first separated the overhead costs into two major categories: (1) indirect overhead (the Executive Offices and Administration and Finance), and (2) direct overhead (Enforcement and State Bar Court).  We next figured the "recoverable percentage" (that portion of each cost center that could be considered recoverable under current State law and Rules of Procedure of the State Bar) with the staff of the Department of Finance.

For indirect overhead, we allocated overhead to discipline cost based on the ratio of the estimated gross payroll for recoverable employees to the total gross payroll for all General Fund employees.

For direct overhead, we eliminated the labor cost for lawyers, managers, and judges, including employee benefits, from the recoverable overhead pool, because such costs are expressly prohibited as recoverable costs under State law.

The gross recoverable overhead cost was then reduced by the amount of the overhead attributable to the non-recoverable employees based on the ratio of the estimated gross payroll for recoverable employees to the total gross payroll for all employees.  This "net" recoverable overhead cost was then divided by the estimated gross payroll for recoverable employees to develop an overhead factor to be applied to the employees' hourly salary cost.

Refer to Appendix 1A for the completed spreadsheet module.

**Exhibit D: Page 19**

## Labor Costs

### Data Source

The State Bar Office of Finance provided a spreadsheet file containing monthly salary information by employee for all Enforcement and State Bar Court employees.  These data were sorted by employee classification (e.g., General Clerk III, Case Administrator, Investigator, etc.).

### Data Preparation

We grouped the employees into general classifications (Intake, Investigation, Paralegal, Case Coordinator, Legal Secretary) that correspond to the tasks performed.  We reviewed the general classifications with the staff of the State Bar's Finance Office and Office of Human Resources and modified the classifications to better reflect the class of employees that perform the various tasks.

### Data Analysis

Using the monthly salary information, HF&H calculated the employees' hourly rate by multiplying the month salary by 12 months and dividing by 1,885 hours (available hours net of vacation, sick, holidays, etc.).  Using the calculated hourly salary information and the groupings discussed above, we calculated the average hourly salary for each class of employees.  An average had to be calculated because individual tasks might be performed by employees from different classes on any given disciplinary proceeding.  We then applied the overhead factor described above to the hourly salary cost for each classification.

Refer to Appendix 1B for the completed spreadsheet module.

## Staff

We did not materially revise the class of employees responsible for each of the tasks performed during a disciplinary proceeding from the existing Disciplinary Fee Model.  Based on the March 2010 time study data, we validated the existing model as the basis for this update.  We describe the methodology used in the existing Disciplinary Fee Model below.

### Data Source

Key members of the State Bar staff identified the class of employees responsible for each of the tasks performed during a disciplinary proceeding.

### Data Preparation

HF&H prepared a spreadsheet assigning an employee class to each task performed during a disciplinary proceeding.  For purposes of our model, detailed employee classes were combined as described above for Labor Cost.  For example, Complaint Analyst, Lead Data Analyst, and

Coordinator Records Administrator II were combined into the classification "Intake," because any of those employees may perform the same task in a disciplinary proceeding.

## Data Analysis

No data analysis was necessary for this component of the model.

Refer to Appendix 1C for the completed spreadsheet module.

## State Bar Court Time Records

We did not materially revise the average time in hours to complete each task from the existing Disciplinary Fee Model.  We did validate the existing model using the March 2010 time study data.  We describe the methodology used in the existing Disciplinary Fee Model below.

## Data Source

To support the existing model, for a two-week period, State Bar Court employees in San Francisco and Los Angeles recorded the actual time spent on pre-defined tasks using a timesheet.   The employees were asked to record the task number, case number and actual time spent in hours and minutes.  In total, 148 timesheets (containing multiple tasks per timesheet) were prepared during this period.  Refer to Appendix 2A for a sample data collection form.  In March 2010, 250 employees in the discipline system recorded time on these same tasks as updated.  A review of this data confirmed that the existing model remained valid for this update.

## Data Preparation

Key members of the State Bar staff reviewed time data for accuracy and consistency, correcting errors, allocating time among tasks for which time had been recorded on a combined basis, and eliminating tasks and cases that were not applicable to the study.  Staff of the State Bar Office of Human Resources input this data into spreadsheets, sorted it by task number and calculated the average time in minutes to complete each task.  The data from March 2010 was compared to the earlier data to validate the existing model for this update.

## Data Analysis

We converted the time data from minutes to hours for use in the model.  On a sample basis, we reviewed the timesheets, testing the time allocation calculation and looking for apparent anomalies in the data.

We noted that in some cases, certain tasks were not performed during the study period.  We reviewed these "data gaps" with members of the staff, who provided estimates of the time to perform these tasks.  Based on our review of the data supporting the existing model and the data from the March 2010 study, we believe that the calculated average time data are reasonable and accurately reflect the time recorded by the employees.

Refer to Appendix 1D for the completed spreadsheet module.

## State Bar Court File Review

We did not materially revise the number of times each task was performed and the employee class of the employee who performed the task from the existing Disciplinary Fee Model. We did validate the existing model for this update using the March 2010 study data. We describe the methodology used in the existing Disciplinary Fee Model below.

### Data Source

To create the current model, State Bar Court employees reviewed the case files for 145 disciplinary proceedings and recorded (1) the number of times each of the 100 State Bar Court tasks was performed, and (2) the employee class of the employee who performed the task from documentary evidence contained in each file. These data were input into spreadsheet files by staff from the State Bar Office of Financial Planning & Analysis and the accounting firm Deloitte & Touche. In March 2010, 75 cases were reviewed to correlate to the time keeping data. This review served to validate the existing model for this update. Refer to Appendix 2B for a sample data collection form.

### Data Preparation

For the original model we obtained the original case review summaries for each case and sorted the summaries by case type and settlement level. We verified that all cases had been entered once into a spreadsheet file.

We also compared the case number and settlement level of the 145 disciplinary proceedings reviewed by State Bar Court employees to the 133 disciplinary proceedings reviewed by Enforcement employees, as discussed below. We found that many disciplinary proceedings were reviewed by either State Bar Court or by Enforcement, but not both. Because the purpose of the case review was to establish the average number of tasks performed by State Bar Court and Enforcement, and because the tasks performed by the one are independent of the other, we do not believe that it is necessary that the same cases be reviewed. However, we also found that State Bar Court and Enforcement classified the same cases at different settlement levels. Members of the State Bar staff reviewed each of these cases a second time and agreed upon a common settlement level. In March 2010, 75 cases were reviewed by staff in State Bar Court and Enforcement separately as part of the time study. This data served to validate the use of the existing model for this update.

### Data Analysis

We consolidated the spreadsheet files containing each of the individual case review summaries into spreadsheets by case type and settlement level that calculated the average number of times each task was performed. We reviewed the results with members of the staff for reasonableness. The data were corrected for known errors (e.g., some case files did not reflect tasks that, by definition, are performed in every case). Based on our review of the March 2010 study data, we believe that

the calculated average task data from the existing model are reasonable and accurately reflect the tasks performed by the employees.

Refer to Appendix 1E for the completed spreadsheet module.

## State Bar Court Cost

### Data Source

The spreadsheet labeled SBCTask$ calculates the State Bar Court cost by case type and settlement level utilizing data from the components described above.  Specifically, it uses the labor and overhead cost by staff, time to perform each task and the number of times each task is performed to calculate the cost of each task, and accumulates all costs by case type and settlement level.

### Data Preparation

No data preparation was required for this model component.

### Data Analysis

After creating the formulas to calculate the State Bar Court cost, we manually tested numerous random formulas to ensure their accuracy.  We also compared the data supporting the existing model to the March 2010 data to validate the use of the existing model for this update.

Refer to Appendix 1F for the completed spreadsheet module.

## Enforcement Time Records

We did not materially revise the average time in hours to complete each task from the existing Disciplinary Fee Model.  We did validate the existing model using the March 2010 time study data.  We describe the methodology used in the existing Disciplinary Fee Model below.

### Data Source

To support the existing model, for a two-week period, Enforcement employees in San Francisco and Los Angeles recorded the actual time spent on pre-defined tasks using a timesheet.  The employees were asked to identify the task performed, case number and actual time spent in hours and minutes.  In total, over 1,700 timesheets were prepared during this period.  Refer to Appendix 2C for a sample data collection form.  In March 2010 250 employees in the discipline system recorded time on those same tasks as updated.  A review of this data confirmed that the existing model remained valid for this update.

## Data Preparation

Key members of the State Bar staff reviewed the time data for accuracy and consistency, correcting errors or eliminating timesheets that were problematic (e.g., timesheets that contained more than one task for the time recorded).  Staff of the State Bar Office of Human Resources input these data into a spreadsheet, sorted it by task, and calculated the average time in minutes to complete each task.  The data from March 2010 was compared to the earlier data to validate the existing model for this update.

## Data Analysis

We converted the time data from minutes to hours for use in the model.  On a sample basis, we reviewed the timesheets, looking for apparent anomalies in the data.

We reviewed "data gaps" with members of the staff, who provided estimates of the time to perform tasks based on discussions with the employees.  Based on our review of the data supporting the existing model and the data from the March 2010 study, we believe that the calculated average time data is reasonable and accurately reflects the time recorded by the employees.

Refer to Appendix 1G for the completed spreadsheet module.

## Enforcement File Review

We did not materially revise the number of times each task was performed and the employee class of the employee who performed the task from the existing Disciplinary Fee Model.  We did validate the existing model for this update using the March 2010 study data.  We describe the methodology used in the existing Disciplinary Fee Model below.

## Data Source

To support the existing model, Enforcement employees reviewed the case files for 133 disciplinary proceedings and recorded the number of times each of the approximately 50 Enforcement tasks was performed from documentary evidence contained in each file.  These data were input into spreadsheet files by staff.  The staff then sorted the data by case type and settlement level and computed the average number of tasks performed at each level.  In March 2010, 75 cases were reviewed by Enforcement staff as part of the time study.  This data served to validate the use of the existing model for this update.  Refer to Appendix 2D for a sample data collection form.

## Data Preparation

To support the existing model, we obtained the original case review summaries for each case and sorted the summaries by case type and settlement level.  We verified that all cases had been entered once into a spreadsheet file.  As noted above, we asked members of staff to review cases for which the settlement levels differed from those assigned by State Bar Court.  This data was compared to the March 2010 data to validate use of the existing model for this update.

## Data Analysis

We reviewed the average number of times each task was performed with members of the staff for reasonableness.  The data were corrected for known errors.  Based on our review of the March 2010 data, we believe that the calculated average task data from the existing model are reasonable and accurately reflect the tasks performed by the employees.

Refer to Appendix 1H for the completed spreadsheet module.

## Enforcement Cost

### Data Source

The spreadsheet labeled EnfTask$ calculates the Enforcement cost by case type and settlement level utilizing data from the components described above.  Specifically, it uses the labor and overhead cost by staff, time to perform each task and the number of times each task is performed to calculate the cost of each task, and accumulates all costs by case type and settlement level.

### Data Preparation

No data preparation was required for this model component.

### Data Analysis

After creating the formulas to calculate the Enforcement cost, we manually tested numerous random formulas to ensure their accuracy.  Our review of the March 2010 data validates the use of the existing model for this update.

Refer to Appendix 1I for the completed spreadsheet module.

## Resignation Cost

We did not materially revise the list of tasks performed by State Bar Court employees in processing resignations of lawyers from the practice of law, the employee class that performs the tasks, and an estimate of the time it takes to perform each task from the existing Disciplinary Fee Model.  We did validate the existing model using the 2010 time study data.  We describe the methodology used in the existing Disciplinary Fee Model below.

### Data Source

To support the existing model, the State Bar staff provided a list of tasks performed by State Bar Court employees in processing resignations of lawyers from the practice of law, the employee class that performs the tasks and an estimate of the time it takes to perform each task.  The March 2010 date validated the continued use of the existing model for this update.

## Data Preparation

No data preparation was required for this model component.

## Data Analysis

We prepared a spreadsheet to calculate the cost of each task, using data from other components of the model discussed above. Based on our review of the data supporting the existing model and the data from the March 2010 study we believe that the calculated average time data are reasonable.

Refer to Appendix 1J for the completed spreadsheet module.

## Consolidations

Consolidations occur when a respondent is charged with multiple disciplinary actions. By consolidating the actions, the State Bar is saved the expense of pursuing the actions separately. However, the State Bar does incur some cost prior to the consolidation and in effecting the consolidation. No separate case file reviews or time studies were conducted to determine this minimal cost. We recommend that the cost of consolidations should equal the minimum cost that would have been charged had no consolidation occurred. In other words, the consolidation cost for an original case type should equal the level one cost. For a conviction case type, it should equal the level two cost (there are no level one conviction case types). Probation revocations and Rule 955 cases would equal their respective level one costs (level one being the only level for these case types). We continue this recommendation based on our current data review and analysis

## OCTC Costs

Office of Chief Trial Counsel (OCTC) costs are direct costs paid by the State Bar for outside services related to preparing transcripts of hearings. In addition, there are direct, taxable costs associated with witness fees, court reporters, and depositions. These expenses are accounted for by the State Bar and directly billed to the respondent on a case-by-case basis.

## Discipline Cost

## Data Source

The cost data computed in other model components described above is used in calculating the total discipline cost by case type and settlement level.

## Data Preparation

No data preparation was required for this model component.

Data Analysis

The total discipline cost for each case type and settlement level is equal to the sum of the Enforcement cost and the State Bar Court cost.  The Enforcement cost for Original Proceedings includes the cost of one investigation; the cost of additional investigations is shown separately.  In addition, the cost of resignations is also shown separately and should be added to the cost of the disciplinary proceeding based on the case type and settlement level at which the resignation occurred.

We reviewed the overall cost by case type and settlement level with key members of the staff to determine whether the relationships among settlement levels and case types were logical and reasonable.  Based on that review, we believe that the final discipline costs are reasonable, defensible, and easy to understand and administer.  Our review of the March 2010 study data also leads us to validate the existing model for this update.

Refer to Figure 1 for the completed spreadsheet module.