Lenore L. Albert, Esq. SBN 210876
LAW OFFICES OF LENORE ALBERT
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Email: lenalbert@InteractiveCounsel.com
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of
themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOHN ROE 1, an individual; JANE ROE 1,
an individual; JANE ROE 2 an individual;
JANE ROE 3, an individual, JOHN ROE 2,
*on behalf of themselves and all others
similarly situated*,

                    Plaintiff,

vs.

THE STATE BAR OF CALIFORNIA;
TYLER TECHNOLOGIES, INC.; KEVAN
SCHWITZER; RICK RANKIN; and DOES
4 through 10, inclusive,

                    Defendants.

CASE NO. 22-cv-00983-DFM

Assigned to the Hon. Douglas F. McCormick
Crtm. 6B
Complaint filed: 03-18-2022

**PLAINTIFFS' OPPOSITION TO THE
DEFENDANT STATE BAR'S MOTION
TO DISMISS THE ANTITRUST
CLAIMS**

i

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**
*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

# TABLE OF CONTENTS

I.  FACTS ...................................................................................................1

II. LAW ....................................................................................................3

III.LEGAL ARGUMENT ........................................................................4

    A.  The Records Are Fake Because They Are Not Public ..................4

    B.  FRCP Standard 8a is Met .............................................................5

    C.  There Is No Parker Immunity .......................................................5

        1.  No Immunity for Covering Up the Data Breach Scandal ...7

        2.  No Immunity for Attempting to Monopolize Federal Court Practice .......................................................................7

        3.  No Immunity for the Price Structure of Disciplinary Costs .................................................................................8

    D.  Four Cause of Action - Section 1 Claims .....................................14

        1.  The Allegations Suggest an Agreement ............................14

        2.  The Restraint Was Unreasonable .....................................16

        3.  Rule of Reason .................................................................18

        4.  Stigma Plus.......................................................................19

        5.  A Single Entity Doesn't Bar A Section 1 Claim...............19

    E.  Fifth Cause of Action - Section 2 Claim.......................................20

        1.  Refusal To Deal & Attempt to Monopolize Practice in Federal Courts ................................................................20

        2.  The Professions Are Given Unique Treatment .................23

    F.  Leave To Amend.........................................................................23

ii

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

IV.    CONCLUSION ..................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Albert-Sheridan v. State Bar of Cal.* (In re Albert-Sheridan) (9th Cir. 2020) 960
    F.3d 1188......................................................................................................... 9

*American Soc. of M. E.'s v. Hydrolevel Corp.* (1982) 456 U.S. 556 .......................... 21, 22

*Bates v. State Bar of Arizona* (1977) 433 U.S. 350 ..................................................... 10, 11

*Bellia v. Bellia* (1984) 150 Cal.App.3d 1036 ..................................................... 22

*Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, 74 ..... 8, 23

*Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977) 549 F.2d 626 .......................... 12

*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 347 ................ 13

*Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct. 3110(1976) ............................ 12, 13

*Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549
    (1977) ............................................................................................................... 19

*Erickson v. Pardus* (2007) 551 U.S. 89, 93-94 ..................................................... 4

*Federal Trade Commission v. Indiana Federation of Dentists* (1986) 476 U.S.
    447 ................................................................................................................... 16, 17

*Federal Trade Commission v. Superior Court Trial Lawyers Ass'n* (1990) 493
    U.S. 411 ........................................................................................................... 17

*Goldfarb v. Virginia State Bar* (1975) 421 U.S. 773 ....................................... 6, 11, 12, 23

*In the Matter of Lenore Albert,* SBC-22-O-30348..............................................*passim.*

*In re McCue* (1930) 211 Cal. 57, 66 ...................................................................... 7

*In re Poole* (9th Cir. 2000) 222 F.3d 618, 622 ...................................................... 20

*In re Rose* (2000) 22 Cal. 4th 430..................................................................... 11

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.* (N.D. Cal. 2018) 313 F.
Supp. 3d 1113, 1127 ................................................................................. 23

*In the Matter of Dale* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 498 .................... 22

*Koefoot v. American College of Surgeons* (N.D. Ill. 1987) 652 F. Supp. 882 ................ 23

*Ling Tie v. Peng Chan* (C.D. Cal., Dec. 12, 2014, CV 14-01211 BRO (RZx))
[pp. 1] ........................................................................................................ 8

*N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n* (2015) 574 U.S. 494 ......... 7, 8

*National Pharmacies, Inc. v. De Melecio* (D.P.R. 1999) 51 F. Supp. 2d 45 .................... 23

*Obbard v. State Bar* (2020) 48 Cal.App.5th 345, 351 ......................................... 12

*Ohio v. Am. Express Co.* (2018) 138 S. Ct. 2274, 2283 ....................................... 14

*Page v. U.S.* (7th Cir. 1989) 884 F.2d 300 ........................................................ 15

*Parker* v. *Brown*, 317 U.S., at 350-352 .............................................................. 6

*R.J. Reynolds Tobacco Co. v. Shewry* (9th Cir. 2004) 423 F.3d 906, 925 ................... 19

*Rodgers v. State Bar* (1989) 48 Cal.3d 300, 315 ................................................. 22

*Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 59–60, 31 S.Ct. 502, 55
L.Ed. 619 (1911) ........................................................................................ 14

*Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322 ...................................... 19, 20

*United States v. Real Estate Boards* (1950) 339 U.S. 485 ...................................... 20

*Wisconsin v. Constantineau* (1971) 400 U.S. 433, 435-37 ..................................... 19

**Statutes**

15 U.S.C. § 1 ................................................................................................ 14

Bus & Prof Code § 6001 .................................................................................. 6

Bus & Prof Code § 6086.10 ............................................................................. 9

Information Practices Act of 1977 ..................................................................... 10

iv

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

**Other Authorities**

98 Ops.Cal.Atty.Gen. 12 (2015) ............................................................................. 9

P. Areeda, Antitrust Law ¶ 1511, p. 429 (1986) ................................................... 16

Carlton & Perloff, Modern Industrial Organization 210-211 (4th ed. 2005) ................... 21

Lucy Ricca, Graham Ambrose, The High Highs and Low Lows of Legal Regulatory Reform, Stanford University (Oct. 17, 2022) ...................................................... 17

Lynn Mather, Changing Patterns of Legal Representation in Divorce: From Lawyers to Pro Se, Journal of Law And Society, Vol. 30(1) .............................................. 17

Prof. Bill Henderson, State Supreme Courts & The Challenge of PeopleLaw, Legal Evolution (Feb. 6, 2022)........................................................................ 17, 18

**Rules**

FRCP 15(a) ............................................................................................... 23

State Bar Court Rule 5.130(E) .................................................................... 9

v

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*      22-cv-00983-DFM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS & AUTHORITIES

## I.      FACTS

President Clinton did not have sexual relations with Monica Lewinsky. President Nixon did not tell a lie. There were no tapes and there was no Watergate. If one believes the prior statements, then one could possibly believe that the Second Amended Complaint ("SAC") failed to adequately allege the State Bar of California along with Tyler Technologies covered up the Data Breach leading to anticompetitive harm in a portion of the legal market.

On page one of the State Bar's Motion to Dismiss ("MTD"), the State Bar indicates the data breach was the "alleged incident" surrounding the antitrust claims alleged in the fourth and fifth causes of action.  This mis-states what is in the Second amended complaint ("SAC") which indicates the cover-up of the Data Breach scandal was the incident at issue. [SAC ¶ 92, 100].

By way of background, Defendant Tyler Technologies, Inc.  ("TT") removed this case from the California Superior Court of Orange County with the consent of its Co-Defendants based on the antitrust causes of action at issue. Now, those same defendants want this case dismissed because those same antitrust claims purportedly fail to state a cause of action.

Defendant State Bar of California ("State Bar") had amassed an extraordinary amount of confidential information on its members including confidential State Bar disciplinary investigations. Defendant Tyler Technologies supplied a software platform labeled Odyssey which gave third parties access to the confidential State Bar disciplinary investigations leading to a data breach.

It was discovered on February 24, 2022 that the confidential State Bar disciplinary investigations were freely floating around on the internet and recast as actual disciplinary

**1**

## PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

records by complaining witnesses against the member attorneys, law students or other potential admittees, although most of them never resulted in any actual discipline.

The data breach itself was a violation of the plaintiffs' right to privacy. However, the way the Defendants handled the data breach afterwards with a massive cover-up, led to antitrust injury suffered by the plaintiffs. The motive for this cover-up is alleged to be the Defendant's desire to preserve their reputations (and Tyler – their clients). [SAC ¶ 66, 93, 105].

After the breach, the State Bar and Tyler Technologies obfuscated the depth of the breach and downplayed the injury to others by asserting that only 1,000 or so records were retrieved on a free record search site called judyrecords.com.

Apart from the obvious violation of the plaintiff's right to privacy, plaintiffs have alleged that the defendants' actions or failure to act has resulted in injury caused by the anticompetitive conduct leading to the plaintiffs' fate which the plaintiffs are powerless to control.

In the Fourth Cause of Action, plaintiffs have alleged that the State Bar and Tyler Technologies violated Section 1 of the Sherman Antitrust Act by conspiring to cover up the breach and the structure of the State Bar's fixed fees to defend oneself in its Disciplinary system compounded the antitrust injury to plaintiffs.

The SAC alleged "Defendants State Bar of California, Tyler Technologies and Does 4-10 made an agreement or entered a conspiracy" to cover up the data breach. [SAC ¶ 182] They employed the use of characterizing a breach narrowly to "page views" only on one website – and not on the entire internet or the fact 322,525 confidential records were located on one public website alone. The led to many attorney victims not knowing that their information was breached and on the internet. [ SAC ¶ 186-190]. This cover-up hurt more attorneys in the PeopleLaw market due to the way the State Bar

**2**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

disciplinary system is structured. Future harm includes the lack of trust in handing over confidential information in the future to Bar, which leads to an increase in investigative costs by the Bar which will increase fees that the attorneys must pay. It will also make the market less efficient leading to lesser quality of legal services and some consumers being cut out of the ability to obtain legal services at all, forced to represent themselves if they seek legal redress. [SAC ¶ 189 - 211]

It is all common sense. Although both the State Bar and Tyler Technologies feign their confusion, they can clearly articulate the bases of the allegations in their motions. [SB MTD p. 9:18-21].

This transfer of costs will not be a perfect substitute for voluntary submission of confidential information by members so the State Bar investigations will be less efficient, leading to less protection of the public at the same cost base, too. [SAC ¶ 204]

The SAC alleged that the "State Bar requested a way to message that the breach was very small and agreed with Tyler Technology to use the model developed for Tyler Technologies purposes of having the rest of its customers also publish that there was minimal harm as a result." [SAC ¶ 111] The allegations pointed to specific conversations between Kevan Schwitzer and either E-magined, Tyler Technologies or Rick Rankin of the State Bar after the breach making the allegations of this cover up probable if not possible. [SAC ¶ 106-123].

As such, the State Bar of California, Tyler Technologies, Inc., Rick Rankin and Defendant Does 4 through 10 chose to protect their reputation over the reputation of the victims of the data breach knowing that the breach automatically would generate some sort of reputational harm to the victim aka plaintiffs and putative class. [SAC ¶ 122]

## II.    LAW

**3**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

"A complaint should not be dismissed for failure to state a claim "`unless it appears beyond doubt that the plaintiff can prove not set of facts in support of his claim which would entitle him to relief." *Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977) 549 F.2d 626, 632

> As we interpret the Court, to survive a Sherman Act challenge a particular practice, rule, or regulation of a profession, whether rooted in tradition of the pronouncements of its organizations, must serve the purpose for which the profession exists, *viz.* to serve the public. That is, it must contribute directly to improving service to the public. Those which only suppress competition between practitioners will fail to survive the challenge. This interpretation permits a harmonization of the ends that both the professions and the Sherman Act serve.

*Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977) 549 F.2d 626, 632

"[A]n accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. " *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 563.

"[A] plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"" *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 563 [citations omitted].

*Erickson v. Pardus* (2007) 551 U.S. 89, 93-94

## III.    LEGAL ARGUMENT

### A. The Records Are Fake Because They Are Not Public

The Defendants take task with the fact the SAC characterizes the confidential information floating around the internet as "fake public disciplinary records. (See, e.g., SAC ¶ 123). The records were 'fake' because they were not published.

Not one single attorney was afforded due process prior to the public posting of this embarrassing information that would result in public ridicule. Due process was required

**4**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

because it affects the property right (license of the attorney) of each plaintiff. As such, it is a constitutional violation of the plaintiffs' right under the Stigma plus test.  A profession violating the member's constitutional due process rights in this fashion can be held liable for violating the Sherman Antitrust Act.

## B.  FRCP 8(a) Standard is Met

Defendants argue that the pleading violates FRCP 8. The cause of action meets the FRCP 8a standard because it supports the elements with plausible facts pointing to antitrust injury. The Defendants do not complain of insufficiency as to and the SAC necessarily added allegations of parallel conduct between the State Bar and Tyler Technologies, identify some of the communications, the dates of those communications and the identity of the people speaking to show that the allegation of a conspiracy to cover up the data breach scandal existed.

One simply cannot take the Defendants' complaint at the length because the additional paragraphs in the SAC now meet pleading requirements – to give notice to the Defendants – and get this case moving forward.

As explained in *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 597 which reviewed a motion to dismiss a Sherman Act § 1 claim that repeated the elements without any supporting facts, "the complaint here furnishes no clue as to which of the four ILECs (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place. "

Here, the plaintiffs alleged what Tyler Technologies and the State Bar agreed upon and when their illicit agreement took place. As such, the pleading meets the *Bell Atl. Corp. v Twombly* standard.

## C. There Is No Parker Immunity

**5**

### PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Initially, the State Bar contends[1] that Parker Immunity exists for the Sherman Act Section 1 claim. (SB MTD p. 3). The State Bar was established by Bus & Prof Code § 6001 not the Constitution. (SB MTC p. 17).

However, the State Bar acknowledges that the legislature or state Supreme Court oversight is about making sure the annual licensing fee increases paid by attorneys do not exceed cost increases. These fee increases are annual licensing fee increases which are different from the fixed fees an attorney pays to defend an allegation she violated her ethical obligations.  (SB MTD p. 3). Unlike annual licensing fees, the Second Amended Complaint ("SAC") alleges Defendants are raising <u>Disciplinary costs</u> (costs for an attorney wishing to defend a charge of an ethical violation not annual licensing fees), which the State Bar acknowledges on page three of their motion, is outside the oversight of the legislature and state Supreme Court.

"The threshold inquiry in determining if an anticompetitive activity is state action of the type of the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign. *Parker* v. *Brown*, 317 U.S., at 350-352" *Goldfarb v. Virginia State Bar* (1975) 421 U.S. 773, 790

*Parker* immunity (also referred to as the state action doctrine) applies only after it is determined that both (1) the state actively supervises the precise conduct at issue; and (2) the challenged activity (the restraint – here the increased fixed disciplinary costs to defend one's good name before the State Bar at a hearing) is clearly articulated and affirmatively expresses as a state policy. The United States Supreme Court has held that, under certain circumstances, state licensing entities or boards must prove two elements

---

[1] Doesn't the U.S. Supreme Court categorize this as an affirmative defense the defendant has the burden of proving? (Rhetorical. It does).

**6**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

before they may invoke the state action doctrine: first, the challenged restraint has been adopted pursuant to clearly articulated state policy; and second, the policy is being actively supervised by a state official ( or state agency) that is not a participant in the market that is being regulated. *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n* (2015) 574 U.S. 494, 503-04.

### 1. No Immunity for Covering Up the Data Breach Scandal

The State Bar concedes, or at least has not postulated that the California Supreme Court or the State Legislature oversaw their cover up of the Data Breach scandal with Tyler Technologies. Additionally, they have not pointed out any clearly articulated state policy that has been adopted that a state agency should work with its software provider to cover up a data breach scandal. Consequently, there is no Parker immunity for the State Bar's act of covering up the Data Breach Scandal with Tyler Technologies under the test described in *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n* (2015) 574 U.S. 494, 503-04. (See SAC ¶188).

### 2. No Immunity for Attempting to Monopolize Federal Court Practice

Furthermore, there is no policy or oversight in the State Bar's attempt to monopolize the Federal Bar and Court.

The State Bar has not pointed out any clearly articulated state policy that has been adopted that a state agency should discipline attorneys who are admitted in federal court but not the State Bar. In fact, the State Bar appears to agree that there is no policy to do so. But such conduct has been and is occurring, inconsistent with California Supreme Court precedent demonstrating that there has been no oversight of this activity by the Court, either. (See, e.g. (*In re McCue* (1930) 211 Cal. 57, 66.  "[t]he State Bar Act and other statutes enacted for the purpose of regulating the practice of law in this state **are applicable to our state courts only**." (emphasis added).)

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

"The prohibition against unauthorized law practice is within the state's **police power** and is designed to ensure that those performing legal services do so competently." *Ling Tie v. Peng Chan* (C.D. Cal., Dec. 12, 2014, CV 14-01211 BRO (RZx)) [pp. 1] "More broadly, state law cannot restrict the right of federal courts and agencies to control who practices before them…Once federal admission is secured, a change in circumstances underlying state admission . . . is `wholly negligible' on the right to practice before a federal court"]. *Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, 74 The appellate court in *Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, found that the State Bar violated Benninghoff's right to practice in federal court and ordered the State Bar to return his federal practice files. "Once federal admission is secured, a change in circumstances underlying state admission . . . is `wholly negligible' on the right to practice before a federal court"].) Thus, the court erred by assuming jurisdiction over Benninghoff's federal practice." *Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, 74

*Benninghoff* is, but just one example, demonstrating that the State Bar has attempted to determine who can practice in federal court. The State Bar went so far as to take his federal case files.

Consequently, there is no Parker immunity for the State Bar's act of covering up the Data Breach Scandal with Tyler Technologies under the test described in *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n* (2015) 574 U.S. 494, 503-04.

### 3.  No Immunity For the Price Structure of the Disciplinary Costs

The State Bar has not pointed to any clearly articulated state policy or statute to support Parker immunity for its anticompetitive price structure.

The active state supervision and clearly articulated state policy requirements are met when the applicable statute or Rule of Court is **so detailed** and prescriptive as to remove the regulatory entity's discretion. The detailed

**legislation or court rule itself articulates the policy** and satisfies the supervision requirement. (98 Ops.Cal.Atty.Gen. 12 (2015).)

Doc. 113-8 p. 6.

The State Bar cost statute at Bus & Prof Code § 6086.10 does not **"detail"** the cost structure. It doesn't even provide notice to the unwary attorney that there is a formula created by the State Bar which makes the attorney pay (and pay even more) to defend and have his or her day in court. Moreover, State Bar Court Rule 5.130(E) does not mandate the State Bar modify or waive the costs. There is no enforcement mechanism and traditionally there is no relief even for attorneys who are debtors in bankruptcy. Many attorneys have even tried to get them discharged through bankruptcy but failed. See, *Albert-Sheridan v. State Bar of Cal.* (In re Albert-Sheridan) (9th Cir. 2020) 960 F.3d 1188 and *Kassas v. State Bar of Cal*. (9th Cir. 2022) 49 F.4th 1158.

The entire cost fixing model was created, instituted, and enforced by the Board at the State Bar alone.

Second, the State Bar's dearth of State Bar records fails to demonstrate that structure of the fixed fee structure created and adopted by the State Bar annually has been adopted pursuant to clearly articulated state policy; and second, the policy is being actively supervised by a state official.

These fee increases are not brought to the Legislature to approve when it comes to the State Bar Disciplinary costs. Those costs are unilaterally raised by the State Bar without oversight.

The State Bar further acknowledges that it operates outside the oversight of the California Supreme court or the legislature. Defendant purports there is lack of oversight by the California supreme court or the state Legislature in terms of responding to the data breach: "not being subject to any statutory notification requirement." (SB MTD p. 6-7).

**9**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Plaintiffs agree that the State Bar was allowed to purchase and install Tyler's Odyssey software platform for State Bar use without any legislative oversight, however, the State Bar still must follow the law following a data breach. The Information Practices Act of 1977 subjected the State Bar and all agencies to a statutory notification requirement, notwithstanding their argument. However, it is important to note that although this statute exists, the State Bar is not submitting itself to oversight in this area as well, and as such, clearly working outside established policy and protocol making Parker immunity wholly irrelevant.

To be clear, Defendant conflates the "annual license fee" with the State Bar "disciplinary costs" that can be found on the State Bar website at: https://www.statebarcourt.ca.gov/Portals/2/documents/2022-Discipline-Costs.pdf

Licensing fees do have oversight and need to obtain legislative approval, but the State Bar disciplinary costs do not .(Doc. 113-1 P. 21)

The precise conduct at issue in this claim is the institution and enforcement of a fixed disciplinary cost sheet which requires attorneys to pay more in costs if they demand an administrative hearing to defend their good name. This payment can run a lawyer anywhere from playing possum $165.00 (resignation) to full defense mode $22,136.00 (review department). This is true even if the most egregious charges are dismissed and only one technical charge is later determine founded. If the attorney wins, on the other hand, then the attorney is not reimbursed their attorney fees or expert witness costs.

The State Bar cites *Bates v. State Bar of Az.* (1977) 433 U.S. 350, 367. (Doc. 113-1 P. 21) to support its position that it enjoys *Parker* immunity. However, *Bates v. State Bar of Az.* (1977) 433 U.S. 350, 367 (1977) is not controlling because *Bates* dealt with whether it would be an antitrust violation where the **Arizona Supreme Court proscribed Rules** making it unethical for attorneys to **advertise**. Here, the issue is not

about any Court Rule or the cost of advertising by lawyers, but the impact of the fixed disciplinary costs imposed by the State Bar upon attorneys who decide to defend themselves. *Bates v. State Bar of Arizona* (1977) 433 U.S. 350, 359-60.

Even if the state legislature and/or state Supreme Court supervised the level but not structure of prices to go to trial for disciplinary measures, it would still afford the State Bar no immunity because it is the pricing structure of having to pay more to defend that is at issue under this claim.(SAC ¶¶216-217).

The fixed disciplinary costs charged to attorneys who seek to have an administrative hearing must pay all the costs even if all of the charges end up dismissed except for one or two technical charges. The disciplinary costs exceed $21,000.00 to defend and seek an administrative hearing whereas if the lawyer stipulates to admitting to the charges at an earlier stage, the lawyer only must pay a fraction of that cost. Like the CTA scenario, a professional is being chilled from his or her own due process rights to defend the charges at a hearing based on the cost of the proceeding being taxed. In such, a scenario there can be no Parker immunity on the grounds that the State sovereign necessarily cannot be said to have supervised or directed the State Bar to do an act that the California Supreme Court has, itself, found to be unconstitutional to do.

The California Supreme Court made clear that attorneys are entitled to the same due process protections as teachers in the case of *In re Rose* (2000) 22 Cal. 4th 430, but it did not discuss the cost structure being imposed by the State Bar Court but it did not have the State Bar disciplinary cost structure before it.("To the extent the charges against the attorney implicate his or her good name, reputation, honor, or integrity, the attorney has a protected liberty interest as well." Id at 456, citing *California Teachers Assn. v. State of California*, *supra*, 20 Cal. 4th at p. 348.).

Like *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975), the California State Bar "is not entitled to *Parker* immunity because neither the [California] Supreme Court nor

**11**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

any [California] statute required the fee schedule and its enforcement mechanism."
(Dismissal Order at 7 (citing 421 U.S. at 789–93).)

The State Bar also attaches the Court's policy about reviewing Antitrust issues.
However, Suzanne Grandt, of the Office of General Counsel summarily rejected
Plaintiffs' claims which included the antitrust issue. The State Bar policy is a red herring
because it does not compel the State to do anything at. It doesn't even reach a Court. As
explained in *Goldfarb*, it is not enough that the state may prompt such action, the
California State Bar must be *compelled* by the direction of the State acting as a sovereign
to charge the attorneys more if they want to defend against a disciplinary charge by the
State Bar. *Goldfarb v. Virginia State Bar* (1975) 421 U.S. 773, 790-91.

The State Bar is merely a regulatory agency with three limited powers. The
California Supreme Court explained the State Bar is only authorized to deal with three
specific *technical issues*. "The proper definition[s cited in case law or statutes] [are] not a
technical issue within the State Bar's area of expertise. (citation) [State Bar has
"licensing, regulatory, and disciplinary functions"].)" *Obbard v. State Bar* (2020) 48
Cal.App.5th 345, 351

It is a regulatory agency. In *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct.
3110, 49 L.Ed.2d 1141 (1976) the U.S. Supreme Court did not find Parker immunity for
a utility company that created rates even though those fixed rates were reviewed and
approved by a state agency. "The involvement of the state through its regulation of the
practice afforded no immunity." *Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977)
549 F.2d 626, 631-32. To oversimply it, Detroit Edison (private company) filed its tariffs
with the state regulatory commission and claimed immunity on that basis. Furthermore,
the Supreme Court stated that unlawful conduct has not been pronounced to be immune
simply because "it was permitted or required by state law" which means even if this
Court found immunity for the State Bar (and it should not), it does not mean Tyler

**12**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Technology shares in that immunity. *Cantor v. Detroit Edison Co.* (1976) 428 U.S. 579, 600

In fact, this Court should easily conclude the California Supreme Court did not supervise this policy of the disciplinary cost structure like it could not have supervised the State Bar's conduct of monopolizing participation in federal court because it is *inconsistent* with the California Supreme Court's decision in *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 347 (CTA). In CTA, the California Supreme Court considered a facial due process challenge to a statute that required a teacher who requested a hearing regarding a suspension or termination, but was ultimately unsuccessful, to pay one-half of the cost of the administrative hearing. The court found the statute facially invalid because it was an exception to the general rule that unsuccessful litigants do not pay the cost of administrative hearings, it impermissibly chilled the teachers' exercise of their due process right to a hearing, and it could not be justified as deterring frivolous litigation. (*Id.* at pp. 339-342.).

In sum, there has been no active supervision by the California Supreme Court. The California Supreme Court was not provided the information necessary for a proper evaluation of the action approved by the regulatory entity, per the Defendant's own Exhibit showing that **only the State Bar Board approved of the action at issue**. Additionally, there is no allegation or evidence that the California Supreme Court has evaluated the substantive merits of the State Bar's action and assessed whether it comports with the standards established by the Supreme Court or the Legislature. If it had, it surely would have ruled it unconstitutional to be consistent with its decision in CTA. Finally, the California Supreme Court has not issued a written decision approving, modifying, or disapproving the State Bar's action and explaining the reasons and rationale for such decision. As noted by the attachment to the State Bar's own motion,

As for the Sherman Act Section 2 claim, other than the federal court monopolization issue discussed above, there is no Parker immunity because even if the state legislature and/or state Supreme Court supervised the level of the disciplinary costs (they do not, but even if they did), the legislature and/or California Supreme Court do not supervise the price structure. (SAC ¶¶216-217). It is the price structure of the Disciplinary Costs at issue under this claim.

For all the foregoing reasons, the California State Bar was acting like a private entity performing a commercial function by raising funds in its disciplinary system without supervision so there is no Parker immunity in this case against the California State Bar.

### D. **Fourth Cause Of Action - Section 1 Claims**

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. This Court has long recognized that, "[i]n view of the common law and the law in this country" when the Sherman Act was passed, the phrase "restraint of trade" is best read to mean "undue restraint." *Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 59–60, 31 S.Ct. 502, 55 L.Ed. 619 (1911). T

*Ohio v. Am. Express Co.* (2018) 138 S. Ct. 2274, 2283

Plaintiff had two claims within the Fourth cause of action. First plaintiffs alleged that the Cover up of the Data Breach Scandal by Tyler Technologies and the State Bar caused injury. Second, the plaintiffs alleged that the anticompetitive behavior of the State Bar's Disciplinary Fixed Cost Structure caused injury to the plaintiffs which was exacerbated even further by the Data Breach. The State Bar dealt with both claims as one and only found three issues to attack in support of their motion to dismiss. Each issue easily resolves in Plaintiff's favor.

### 1.  The Allegations Suggest an Agreement

14

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

The State Bar claims there was no agreement between the State Bar and Tyler to cover up the breach. (SB MTD p. 16). The SAC included email threads obtained from Kevan Schwitzer demonstrating a conspiracy to cover up the data breach between Tyler Technologies and the State Bar was plausible. The emails do not have to be directly between the State Bar and Tyler Technologies (nor would they be since these are from Schwitzer) to meet *Twombly* pleading standards. The emails clearly show Schwitzer, and Tyler Technologies are working with the State Bar to get the numbers down on the level of breach. The fact that both the emails refer to "page views" and the later email notices about the State Bar also use the specific phrase "page views" demonstrates an agreement was made that they would use "page views" to obfuscate the breach – belatedly months after not giving any notice at all. It is plausible that such a conspiracy existed when reading the emails and observing the conduct of both Tyler and the State Bar.

The delay by the State Bar and Tyler Technologies show they were working together. Economics provides some insight in the form of the famous "prisoner's dilemma" scenario.[2] Unless two guilty suspects can reach an agreement to withhold information, both will admit their guilt. The fact that they both attempted to cover up the breach, when they could have come clean at the expense of the other party, gives a reason to presume there was a meeting of the minds if not outright agreement.

---

[2] "Students of strategy and bargaining cut their teeth on the game of Prisoners' Dilemma. Two prisoners, unable to confer with one another, must decide whether to take the prosecutor's offer: confess, inculpate the other, and serve a year in jail, or keep silent and serve five years. If the prisoners could make a (binding) bargain with each other, they would keep silent and both would go free. But they can't communicate, and each fears that the other will talk. So, both confess. Studying Prisoners' Dilemma has led to many insights about strategic interactions." *Page v. U.S.* (7th Cir. 1989) 884 F.2d 300, 301

**15**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Put differently:  Both would face liability for actions that were "illegal and/or violated policies, procedures or best practices" (SAC ¶187).  In the absence of a conspiracy or agreement, economic theory implies they would have individually acted sooner.

### 2.  The Restraint Was Unreasonable.

The State Bar asserts that the SAC failed to allege harm or restraint to competition for the Sherman Act Section 1 claim, including a geographic market. A geographical market is not required in the professions.

The purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition, "proof of actual detrimental effect, such as a reduction of output," can obviate the need for an inquiry into market power, which is but a "surrogate for detrimental effect." 7 P. Areeda, Antitrust Law ¶ 1511, p. 429 (1986).

> the finding of actual, sustained adverse effects on competition in those areas where IFD dentists predominated, viewed in light of the reality that markets for dental services tend to be relatively localized, is legally sufficient to support a finding that the challenged restraint was unreasonable even in the absence of elaborate market analysis.
>
> *Federal Trade Commission v. Indiana Federation of Dentists* (1986) 476 U.S. 447, 461

SAC ¶196 cites evidence that decline in solo practitioners resulted in more people self-representing in court, which reflects a reduction in output.  The challenged conduct raises cost of investigation (SAC ¶¶199, 201-205), which disproportionately would fall on solo practitioners (SAS ¶195).

The Sherman Act reflects a legislative judgment that competition will produce better legal services if competition is not constrained.

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

As we have remarked before, the "Sherman Act reflects a legislative judgment that ultimately competition will produce not only lower prices, but also better goods and services... **That is equally so when the quality of legal advocacy**, rather than engineering design, is at issue.

*Federal Trade Commission v. Superior Court Trial Lawyers Ass'n* (1990) 493 U.S. 411, 423-24 (Bold added). (citations omitted).

Academic research has confirmed the economic implication that the cost of hiring an attorney is related to the likelihood of self-representation (as presented in SAC ¶205).  For example, "Lacking funds to hire an attorney, those with lower incomes are significantly more likely to represent themselves."  Lynn Mather, Changing Patterns of Legal Representation in Divorce: From Lawyers to Pro Se, JOURNAL OF LAW AND SOCIETY, Vol. 30(1), at 148.

The PeopleLaw Market is a recognized market in the legal sector. See, "The High Highs and Low Lows of Legal Regulatory Reform" written by Stanford University, where it is noted " the PeopleLaw sector has experienced significant stress and decline within the traditional regulatory landscape." Id. The article can be found on the internet at: https://law.stanford.edu/2022/10/17/the-high-highs-and-low-lows-of-legal-regulatory-reform-333-2/ ( Lucy Ricca, Graham Ambrose, The High Highs and Low Lows of Legal Regulatory Reform, Stanford University (Oct. 17, 2022).  See also,  State Supreme Courts & The Challenge of PeopleLaw which can be found on the internet at: https://www.legalevolution.org/2022/02/state-supreme-courts-and-the-challenges-of-peoplelaw-287/ (Prof. Bill Henderson, State Supreme Courts & The Challenge of PeopleLaw, Legal Evolution (Feb. 6, 2022).).

Professor Bill Henderson described how the market structure is developed:

Market Structure.  Through the adoption of ethics rules, state supreme courts were making decisions on the structure of the legal services market, deciding sources of capital and ownership structure (MR 5.4),

**17**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

who can provide legal advice (<u>MR 5.5</u>), incentives to innovate (<u>MR
5.6</u>'s ban on non-compete agreements), and how legal service
providers and can market their services and acquire clients (<u>MR 7.2</u>–
<u>7.3</u>).

Prof. Bill Henderson, <u>State Supreme Courts & The Challenge of PeopleLaw</u>, Legal
Evolution (Feb. 6, 2022)

The state bar's own reports (e.g., 2020 Annual Discipline Report) show that the
State Bar is aware that the PeopleLaw market is more likely to receive
complaints.  Logically, the State Bar could expect that a data breach of those complaints
would harm PeopleLaw practitioners relatively more (and therefore harm competition by
affecting lower-cost providers of legal services more?).  Similarly, it would know the
cost structure is regressive and hurts PeopleLaw practitioners relatively more (SAC
¶219). Does this show intent?

Consequently, the reality of actual harm negates the need for in depth market
analysis and the motion should be denied.

### 3.  Antitrust Injury

The State Bar alleges there is no causal antitrust injury. (SB MTD p. 19).

The SAC alleged evidence from a survey suggested the cost of investigations will
be increasing because lawyers are not as willing to cooperate in a confidential
investigation by the State Bar after the data breach. (SAC ¶¶199, 201-205).

Numerous other avenues for antitrust injury were alleged in the SAC, also. (e.g.,
¶¶189, 207-208, 211, 235-238).

The State Bar had no other complaints about the adequacy of the claims laid out in
the SAC, consequently, the Court should not dismiss the Fourth Cause of Action.

### 4.  Rule of Reason

Most restraints are analyzed under the traditional "rule of reason." *Continental
T.V., Inc. v. GTE Sylvania Inc.,* <u>433 U.S. 36, 49</u>, <u>97 S.Ct. 2549, 2557</u>, <u>53 L.Ed.2d</u>

18

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

568 (1977). The rule of reason requires the factfinder to "weigh all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Id.*

The Defendants make a big deal that this is not per se, however, plaintiffs never alleged this was a per se violation. This is a Professions case needing a totality of the circumstances analyses under the Rule of Reason or a quick look test.

### 5. Stigma Plus

The State Bar claims that they are the arm of the state so they cannot be used. However, in Wisconsin, a law enforcement agency was sued even though it was an arm of the state because before the state can take action to harm the reputation of a person, it has to give that victim due process – regardless of if the posting that caused reputational harm was intentional or not. There is no difference here. "It would be naive not to recognize that such `posting' or characterization of an individual will expose him to public embarrassment and ridicule." *Wisconsin v. Constantineau* (1971) 400 U.S. 433, 435-37 (See also, *R.J. Reynolds Tobacco Co. v. Shewry* (9th Cir. 2004) 423 F.3d 906, 925).

### 6. A Single Entity Acting Alone Does Not Bar a Section 1 Claim

The State Bar argues it cannot be liable because it is a single entity. However, it has a Board of 13 members, a majority of which are attorneys. The United States Supreme Court has "repeatedly found instances in which members of a legally single entity violated § 1 when the entity was controlled by a group of competitors and served, in essence, as a vehicle for ongoing concerted activity." *American Needle v. National Football League* (2010) 560 U.S. 183, 191.

**19**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Under 15 U.S.C. § 1, "Plaintiffs "need not allege, or prove, an actual effect on interstate commerce to support federal jurisdiction." *Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322, 330-31.

Like *Summit Health, Ltd*, "the case is necessarily more significant than the fate of "just one [attorney] whose business is so small that his destruction makes little difference to the economy." [citation]. The case involves an alleged restraint on the practice of [legal] services. The restraint was accomplished by an alleged misuse of a [State Bar] process, which [is] the gateway that controls access to the market for [legal] services. [] The competitive significance of respondent's exclusion from the market must be measured not just by a particularized evaluation of his own practice, but rather by a general evaluation of the impact of the restraint on other participants and potential participants in the market from which he has been excluded." *Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322, 332

Like *Summit Health*, the FAC alleges that the State Bar "conspired with others to abuse that process" which was unlawful under the IPA and Business & Professions Code in California to support a cause of action under the Sherman Act. *Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322, 333. [FAC ¶106-111]

*In the, United States v. Real Estate Boards* (1950) 339 U.S. 485, 490, the U.S. Supreme Court found that controlling a market by suppression of competition, even by a Real Estate Board through price fixing was illegal.

As such, the pricing fixing claim should not be dismissed.

**E. Fifth Cause of Action - Section 2 Claim**

**1. Refusal To Deal & Attempt to Monopolize Practice In Federal Courts**

Kicking an attorney out of federal court based on a state bar suspension would be objectionable and invalid. *Theard v. United States,* 354 U.S. 278 (1957). See also, *In re*

**20**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

*Poole* (9th Cir. 2000) 222 F.3d 618, 622. But it has not stopped the State Bar from disciplining members for practicing when admitted to federal court.

The SAC adequately alleges the harm or restraint to competition for Sherman Act Section 2 claim. The State Bar's actions were to attempt to exclude suppliers (attorneys).  Economic theory indicates that a reduction in the number of competitors would directly reduce output and raise prices.  CARLTON & PERLOFF, MODERN INDUSTRIAL ORGANIZATION 210-211 (4th ed. 2005) (Example 7.2 describes how the entry of new firms was "very likely responsible" for significant airline prices decreasing "as much as 70 percent"); Id. at 244 ("Theories on competitive and noncompetitive markets hold that the less competition a firm faces, the greater its market power: the ability to set price profitably above marginal cost.") (emphasis in original).

The threshold inquiry in antitrust analysis is whether an action has an effect that could impact competition or could be an unreasonable restraint of trade in the market for legal services. Unreasonable restraints on trade generally: raise prices; reduce output; diminish quality; limit choice; or create, maintain, or enhance market power. Anticompetitive practices may arise when a state empowers a group of active market participants to decide who can participate in its market and on what terms.

First, the State Bar fails to recognize the United States Supreme Court has repeatedly advised that "the antitrust laws need not be applied to professional organizations in precisely the same manner as they are applied to commercial enterprises." *American Soc. of M. E.'s v. Hydrolevel Corp.* (1982) 456 U.S. 556, 580

The "antitrust private cause of action [is meant] to be at least as broad as a plaintiff's right to sue for analogous torts, absent indications that the antitrust laws are not intended to reach so far. " *American Soc. of M. E.'s v. Hydrolevel Corp.* (1982) 456 U.S. 556, 569.

21

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

When it cloaks its subcommittee officials with **the authority of its reputation**, ASME permits those agents to **affect the destinies of businesses** and thus gives them the power to frustrate competition in the marketplace.

*American Soc. of M. E.'s v. Hydrolevel Corp.* (1982) 456 U.S. 556, 570-71

"[A] standard-setting organization like [the State Bar] can be rife with opportunities for anticompetitive activity…the less altruistic of [the State Bar's] agents have an opportunity to harm their employers' competitors through manipulation of [State Bar's] codes [of ethical conduct]." *American Soc. of M. E.'s v. Hydrolevel Corp.* (1982) 456 U.S. 556, 571

"Thus, a rule that imposes liability on the standard-setting organization — which is best situated to prevent antitrust violations through the abuse of its reputation — is most faithful to the congressional intent that the private right of action deter antitrust violations." *American Soc. of M. E.'s v. Hydrolevel Corp.* (1982) 456 U.S. 556, 572-73

Here, the SAC alleges that the State Bar has been attempting to monopolize the federal courts. The State Bar counsel is deceiving this Court by arguing that it is not doing so and has no reason to do so. It did so to subvert this Court's power to decide this case by going after Plaintiff's counsel in a federal case UPL proceeding that just ended which opposing counsel has knowledge of. (See RJN). An attorney is required to refrain from misleading and deceptive acts without qualification. (Rodgers v. State Bar (1989) 48 Cal.3d 300, 315.) This obligation requires an attorney to render complete and candid disclosures — not merely relate only those facts which the attorney deems to be helpful to him or the cause for which he or she is retained. (Bellia v. Bellia (1984) 150 Cal.App.3d 1036,1039. Even if a statement is facially true, it can be misleading and

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

dishonest by the concealment of material facts, or by half-truths. (See e.g. In the Matter of Dale (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 498, 808).

In Benninghoff, the State Bar took all of the attorney's federal case files and eventually disbarred the attorney. The attorney sought relief from the Court appeal. The Court of appeal forced the State Bar to return his federal case files. This is an example to show that the State Bar indeed refuses to follow the California Supreme Court or law by using the UPL statute to control who can practice in federal court, beyond the State Bar's attempt to shut down this putative class action by using the same method to subvert justice. *Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, 74

*Benninghoff* is, but just one example. This being the only complaint about the allegations in the Section 2 claim, the Court should not dismiss the claim.

### 1. The Professions Are Given Unique Treatment

Many defendants cases are inapposite because the Professions like lawyers are given unique treatment tailored to their profession. "The fact that a restraint operates upon a profession as distinguished from a business is, of course, relevant in determining whether that particular restraint violates the Sherman Act." *Koefoot v. American College of Surgeons* (N.D. Ill. 1987) 652 F. Supp. 882, 887, citing *Goldfarb*.

For example, in "the Sherman Act antitrust context, the professions are considered a part of interstate commerce." *National Pharmacies, Inc. v. De Melecio* (D.P.R. 1999) 51 F. Supp. 2d 45, 55 (collecting cases).

### F. Leave to Amend

If the Court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities."

23

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.* (N.D. Cal. 2018) 313 F.
Supp. 3d 1113, 1127 (FRCP 15(a)).

Plaintiff requests leave to amend if the Court is declined to dismiss on any basis
provided by the Defendant because such dismissal would be a mere technicality that
Plaintiff will be able to correct.

## IV.    CONCLUSION

Wherefore plaintiff respectfully requests this Court deny Defendant State Bar's
motion to dismiss and Order the Defendant to Answer the Second Amended Complaint.

Dated:  January 9, 2023

Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT
/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on
behalf of themselves and all others similarly
situated*

`

**24**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 1968 S. Coast Hwy #3960, Laguna Beach, CA 92651. On January 9, 2023, I served a copy of the following document(s) described as:

**PLAINTIFFS' OPPOSITION TO THE DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

On the interested parties in this action as follows:

**[x] BY E-SERVE and EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth. (Per Covid-19 Order)

**[] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Huntington Beach, California, to the aforementioned addressee(s).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: January 9, 2023

_/s/Lenore Albert_
Lenore Albert

**25**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

# SERVICE LIST

**For Defendants State Bar of California**
COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
3 Embarcadero Center
20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
TIANA DEMAS (*pro hac vice*) (tdemas@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
BARRETT J. ANDERSON (318539) (banderson@cooley.com)
WALTER WAIDELICH (300798) (cwaidelich@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420
GREGORY MERCHANT (341287) (gmerchant@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400


 VANESSA L. HOLTON (111613)
General Counsel
ROBERT G. RETANA (148677) Deputy General Counsel
SUZANNE C. GRANDT (304794)
Assistant General Counsel
**OFFICE OF GENERAL COUNSEL**
**THE STATE BAR OF CALIFORNIA**
180 Howard Street
San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517
Email: suzanne.grandt@calbar.ca.gov

26

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**
*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

**For Defendant Rick Rankin**
JEFFER MANGELS BUTLER & MITCHELL LLP
MICHAEL A. GOLD (Bar No. 90667)
*mgold@jmbm.com*
JUSTIN ANDERSON (Bar No. 328969)
*Janderson@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567


**For Defendant Tyler Technologies, Inc.**
Christina N. Goodrich (SBN 261722) christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard Seventh Floor Los Angeles, California 90067
Telephone: 310.552.5000 Facsimile: 310.552.5001

Beth W. Petronio, admitted *pro hac vice*
beth.petronio@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Facsimile: (214) 939-5849

## ECF LIST:

Barrett J. Anderson      banderson@cooley.com, efiling-notice@ecf.pacerpro.com,
efilingnotice@cooley.com, mdejesus@cooley.com

Beth W. Petronio      beth.petronio@klgates.com

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO
DISMISS THE ANTITRUST CLAIMS**
*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Christina N. Goodrich    christina.goodrich@klgates.com, klgateseservice@klgates.com

David Belcher    david.belcher@faegredrinker.com, docketgeneral@faegredrinker.com, shanta.teekah@faegredrinker.com

Gregory John Merchant    gmerchant@cooley.com

Justin Alexander Anderson    janderson@jmbm.com, learly@jmbm.com, mastercalendar@jmbm.com

Lenore L Albert    lenalbert@interactivecounsel.com, docket@interactivecounsel.com, lenorealbert@msn.com

Michael Allan Gold    mgold@jmbm.com, cl7@jmbm.com, mastercalendar@jmbm.com, MGold@jmbm.com

Michael G Rhodes    rhodesmg@cooley.com, efiling-notice@ecf.pacerpro.com, eFilingNotice@cooley.com, john-brocales-7263@ecf.pacerpro.com, mrhodes@cooley.com, smartinez@cooley.com

Peter William Baldwin    peter.baldwin@faegredrinker.com, peter.baldwin@usdoj.gov, USACAC.criminal@usdoj.gov

Robert G Retana    robert.retana@calbar.ca.gov, joan.randolph@calbar.ca.gov

Suzanne Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov

Tiana A. Demas    tdemas@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com

Vanessa L Holton    vanessa.holton@calbar.ca.gov

Walter Waidelich    cwaidelich@cooley.com, kjones@cooley.com

Zachary Thomas Timm    zach.timm@klgates.com, klgateseservice@klgates.com

**28**

**PLAINTIFFS' OPPOSITION DEFENDANT STATE BAR'S MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM
