Lenore L. Albert, Esq. SBN 210876
LAW OFFICES OF LENORE ALBERT
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Email: lenalbert@InteractiveCounsel.com
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of
themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; KEVAN SCHWITZER; RICK RANKIN; and DOES 4 through 10, inclusive, <br> Defendants. | CASE NO. 22-cv-00983-DFM <br><br> Assigned to the Hon. Douglas F. McCormick Crtm. 6B <br> Complaint filed: 03-18-2022 <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS** |

**i**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

# TABLE OF CONTENTS

I.  FACTS .................................................................................................1

II. LAW ...................................................................................................5

III.LEGAL ARGUMENT ........................................................................6

    A. The Records Are Fake Because They Are Not Public ..................6

    B. FRCP Standard 8a is Met.............................................................6

    C. There Is No Parker Immunity ......................................................7

    D. Four Cause of Action - Section 1 Claims ....................................9

        i.  The Allegations Suggest an Agreement .............................10

        ii.  The Restraint Was Unreasonable........................................11

        iii.  Antitrust Injury ..................................................................14

        iv.  The Professions Are Given Unique Treatment....................15

    E. Leave To Amend.........................................................................15

IV.    CONCLUSION ...............................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977) 549 F.2d 626 .............................8

*Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976) ..........................................................................................8

*Continental T.V., Inc. v. GTE Sylvania Inc.,*433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977) ...................................................... 14

*Erickson v. Pardus* (2007) 551 U.S. 89, 93-94.........................................6

*Federal Trade Commission v. Indiana Federation of Dentists* (1986) 476 U.S. 447 ........................................................................................ 12

ii

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*       22-cv-00983-DFM

*Federal Trade Commission v. Superior Court Trial Lawyers Ass'n* (1990) 493 U.S. 411 ........................................................................................................ 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.* (N.D. Cal. 2018) 313 F. Supp. 3d 1113, 1127 ........................................................................................ 16

*Koefoot v. American College of Surgeons* (N.D. Ill. 1987) 652 F. Supp. 882 ................. 15

*National Pharmacies, Inc. v. De Melecio* (D.P.R. 1999) 51 F. Supp. 2d 45 .................... 15

*Northern Securities Co.* v. *United States*, 193 U.S. 197, 332, 344-47 .............................. 8

*Ohio v. Am. Express Co.* (2018) 138 S. Ct. 2274, 2283 ................................................ 9

*Page v. U.S.* (7th Cir. 1989) 884 F.2d 300 ........................................................... 11

*Parker v. Brown* (1943) 317 U.S. 341 ...................................................................... 8

*Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 59–60, 31 S.Ct. 502, 55 L.Ed. 619 (1911) .................................................................................................... 9

*Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322 .................................................. 14, 15

*U.S. v Rodriguez* (9th Cir. 2004) 360 F.3d 949 ......................................................... 9

*United States v. Real Estate Boards* (1950) 339 U.S. 485 ............................................ 15

**Statutes**

15 U.S.C. § 1 ............................................................................................................. 9

**Other Authorities**

P. Areeda, Antitrust Law ¶ 1511, p. 429 (1986) .......................................................... 12

Lucy Ricca, Graham Ambrose, The High Highs and Low Lows of Legal Regulatory Reform, Stanford University (Oct. 17, 2022) .......................................................... 13

Lynn Mather, Changing Patterns of Legal Representation in Divorce: From Lawyers to Pro Se, JOURNAL OF LAW AND SOCIETY, Vol. 30(1) .......................................... 13

iii

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Prof. Bill Henderson, <u>State Supreme Courts & The Challenge of PeopleLaw</u>, Legal Evolution (Feb. 6, 2022)................................................................................ 13

**Rules**

FRCP 15(a) ................................................................................................ 16

iv

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

## MEMORANDUM OF POINTS & AUTHORITIES

## I.     FACTS

Defendant Tyler Technologies supplied a software platform labeled Odyssey which gave third parties access to the confidential State Bar disciplinary investigations – aka a data breach.

It was discovered on February 24, 2022 that the confidential State Bar disciplinary investigations were freely floating around on the internet and recast as actual disciplinary records by complaining witnesses against the member attorneys, law students or other potential admittees, although most of them never resulted in any actual discipline.

The data breach itself was a violation of the plaintiffs' right to privacy. However, the way the Defendants handled the data breach afterwards, led to antitrust injury suffered by the plaintiffs.

After the breach, the State Bar and Tyler Technologies obfuscated the depth of the breach and downplay the injury to others by asserting that only 1,000 or so records were actually retrieved on a free record search site called judyrecords.com.

Defendants State Bar of California, Tyler Technologies and Does 4-10 made an agreement or entered a conspiracy resulting in an unreasonable restraint of trade, and causing antitrust injury as specifically alleged below in the Conspiracy to Restrain Trade by Obfuscating the Data Breach Section. [SAC ¶ 182]

Defendants State Bar of California, Tyler Technologies, Inc. and Does 4 through 10 violated §1 of the Sherman Antitrust Act when they conspired to cover up the lack of security of plaintiffs' confidential information and/or minimize the data breach by recasting the breach as "page views" when the Defendants actually knew that 322,525 confidential disciplinary investigations from the State Bar were open on the internet as more fully alleged above. The motive was to preserve the reputation of the State Bar,

**1**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Tyler Technologies and Does 4-10 by obfuscating the same breach involving other agencies over 30 different jurisdictions including a dozen or so counties in California. [SAC ¶ 186]

The conspiracy to cover this up in order to preserve their own reputations was illegal and/or violated policies, procedures or best practices when it comes to notifying victims as quickly as possible in order to mitigate any future harm that could be caused by the breach. [SAC ¶ 187]

Neither the California Supreme Court acting legislatively nor the state legislature has articulated a clear policy to allow this anticompetitive conduct which was an abuse or misuse of their power and even if it did, the state is not actively supervising this anticompetitive conduct of the State Bar and Tyler Technologies in downplaying, concealing, obfuscating, or covering up the data breach by sending confusing "notices" to plaintiffs and all Class members about "page views;" or not revealing the data breach connection with the other agencies to the plaintiffs and all Class members; or concealing there was evidence the records were found indexed on Google; or delaying the notices to the plaintiffs and all Class members so this page view model could be used for messaging to protect the Defendants' reputations and downplay the size of the breach which confused the plaintiffs and class, if they received any notice at all. [SAC ¶ 188]

Plaintiffs allege the defendant's conduct not only harmed the plaintiff attorneys but also adversely affected competition generally by decreasing the client's ability to freely choose amongst members of the Bar by improperly tainting the plaintiffs and putative class in this pool with fake disciplinary dockets floating around the internet about the member attorneys, thus causing an antitrust injury. It has also exploited a section of the Bar leaving them open to exploitation by the Organization Clients sector. [ SAC ¶ 189]

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

The State Bar of California and other agencies continues to Tyler Technologies, Inc. Odyssey and related software programs and APIs due to Tyler Technologies' own market power in the public sector that is currently increasing. PeopleLaw Market members are not as willing to volunteer confidential information anymore to the State Bar which reduces efficiency in the market because there is a risk of a future data breach covered up by Tyler Technologies, Inc. and the State Bar of California blocking the member plaintiffs and Class will not be able to ameliorate the harm. It makes State Bar investigations less efficient and makes it harder for consumers to choose quality attorneys because the State Bar will be even less effective at eliminating the bad ones. This overall affects consumer welfare and competition that the antitrust laws were enacted to protect. [SAC ¶ 200]

Tyler Technologies is huge in the public sector software CMS space. [SAC 96-99].

The Defendants worked with E-magined and Kevan Schwitzer to obfuscate the breach in order to maintain their reputation without regard to the victims of the breach. [SAC ¶ 93-118]

As such, the State Bar of California, Tyler Technologies, Inc., Rick Rankin and Defendant Does 4 through 10 chose to protect their reputation over the reputation of the victims of the data breach knowing that the breach automatically would generate some sort of reputational harm to the victim aka plaintiffs and putative class. [SAC ¶ 122]

The breached confidential disciplinary records indexed on Google and elsewhere are nothing more than fake public disciplinary records floating around on the internet or dark web which poses the same risk to the attorneys who have been publicly disciplined. [SAC ¶ 123]. They were fake because they were not public and some were never acted upon.

**3**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*                22-cv-00983-DFM

Not one single attorney was afforded due process prior to the public posting of this embarrassing information that would result in public ridicule. Due process was required because it affects the property right (license of the attorney) of each plaintiff. As such, it is a constitutional violation of the plaintiffs' right under the Stigma plus test.  A profession violating the member's constitutional due process rights in this fashion can be held liable for violating the Sherman Antitrust Act.

The anticompetitive conduct affected interstate commerce because the conspiracy between the State Bar and Tyler Technologies and Does 4 through 10 affected members of the Bar who lived outside the state of California or out of state consumers needing representation from members of the Bar in California. Their model using a "page view" to downplay the scope of the breach and additional vulnerabilities was also used in interstate commerce. [SAC ¶ 198]

Plaintiffs allege that the Conspiracy to restrain trade under § 1 of the Sherman Antitrust Act between Defendant State Bar of California and Tyler Technologies makes it less likely that attorneys will continue to volunteer information in State Bar investigations which will increase costs for investigations and decrease public protection of accurately filtering the bad attorneys out of the PeopleLaw Market. [SAC ¶ 199]

The State Bar of California and other agencies continue to Tyler Technologies, Inc. Odyssey and related software programs and APIs due to Tyler Technologies' own market power in the public sector that is currently increasing. PeopleLaw Market members are not as willing to volunteer confidential information anymore to the State Bar which reduces efficiency in the market because there is a risk of a future data breach covered up by Tyler Technologies, Inc. and the State Bar of California blocking the member plaintiffs and Class will not be able to ameliorate the harm. It makes State Bar investigations less efficient and makes it harder for consumers to choose quality

**4**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

attorneys because the State Bar will be even less effective at eliminating the bad ones. This overall affects consumer welfare and competition that the antitrust laws were enacted to protect. [SAC ¶ 200]

Defendants Tyler Technologies, Inc. and the State Bar of California conspired to withhold the information about the breach. They obfuscated the breadth and impact in order to protect their own reputation making the breach worse for the member victims. [SAC ¶ 208]

This injury to the Plaintiffs and all members of this class is the type that antitrust laws were made to prevent. [SAC ¶ 209].

## II.    LAW

A complaint should not be dismissed for failure to state a claim "'unless it appears beyond doubt that the plaintiff can prove not set of facts in support of his claim which would entitle him to relief." *Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977) 549 F.2d 626, 632

> As we interpret the Court, to survive a Sherman Act challenge a particular practice, rule, or regulation of a profession, whether rooted in tradition of the pronouncements of its organizations, must serve the purpose for which the profession exists, *viz.* to serve the public. That is, it must contribute directly to improving service to the public. Those which only suppress competition between practitioners will fail to survive the challenge. This interpretation permits a harmonization of the ends that both the professions and the Sherman Act serve.
>
> *Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977) 549 F.2d 626, 632

"[A]n accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. " *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 563.

5

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

"[A] plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"" *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 563 [citations omitted].

*Erickson v. Pardus* (2007) 551 U.S. 89, 93-94

## III.    LEGAL ARGUMENT

### A. The Records Are Fake Because They Are Not Public

The Defendants take task with the fact the SAC characterizes the confidential information floating around the internet as "fake public disciplinary records. (See, e.g., SAC ¶ 123). The records were 'fake' because they were not published. (TT MTD p. 5).

Not one single attorney was afforded due process prior to the public posting of this embarrassing information that would result in public ridicule. Due process was required because it affects the property right (license of the attorney) of each plaintiff. As such, it is a constitutional violation of the plaintiffs' right under the Stigma plus test.  A profession violating the member's constitutional due process rights in this fashion can be held liable for violating the Sherman Antitrust Act.

### B. FRCP 8(a) Standard is Met

Defendants argue that the pleading violates FRCP 8. The cause of action meets the FRCP 8a standard because it supports the elements with plausible facts pointing to antitrust injury. The Defendants do not complain of insufficiency as to and the SAC necessarily added allegations of parallel conduct between the State Bar and Tyler Technologies, identify some of the communications, the dates of those communications and the identity of the people speaking to show that the allegation of a conspiracy to cover up the data breach scandal existed.

**6**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

One simply cannot take the Defendants' complaint at the length because the additional paragraphs in the SAC now meet pleading requirements – to give notice to the Defendants – and get this case moving forward.

As explained in *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 597 which reviewed a motion to dismiss a Sherman Act § 1 claim that repeated the elements without any supporting facts, "the complaint here furnishes no clue as to which of the four ILECs (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place. "

Here, the plaintiffs alleged what Tyler Technologies and the State Bar agreed upon and when their illicit agreement took place. As such, the pleading meets the *Bell Atl. Corp. v Twombly* standard.

**C. There Is No Parker Immunity**

Initially, the Tyler Technology contends it is immune because the State Bar is immune. The State Bar is not immune for the reasons stated in plaintiff's Opposition to the State Bar's Motion to Dismiss the Antitrust Claims filed concurrently herewith and the arguments laid out there, are incorporated herein.

The State Bar has conceded, or at least has not postulated that the California Supreme Court or the State Legislature oversaw their cover up of the Data Breach scandal with Tyler Technologies. Additionally, they have not pointed out any clearly articulated state policy that has been adopted that a state agency should work with its software provider to cover up a data breach scandal. Consequently, there is no Parker immunity for the State Bar's act of covering up the Data Breach Scandal with Tyler Technologies under the test described in *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n* (2015) 574 U.S. 494, 503-04. (See SAC ¶188).

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

Tyler Technologies argues that since the State Bar is immune, it cannot be held liable under Section 1 of the Sherman Antitrust Act. It also argues that even if it is not immune, it cannot be held liable because it cannot commit a one-person conspiracy. (TT MTD p.10)

This is incorrect on both counts. Even if this Court were to find the State Bar immune (it is not), such immunity of a sovereign does not provide blanket immunity to Tyler. The United States Supreme Court clearly explained that "a state **does not** give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful, *Northern Securities Co.* v. *United States*, <u>193 U.S. 197, 332, 344-47</u>" *Parker v. Brown* (1943) 317 U.S. 341, 351. (bold added).

In *Cantor v. Detroit Edison Co.,* <u>428 U.S. 579</u>, <u>96 S.Ct. 3110</u>, <u>49 L.Ed.2d 1141</u> (1976)  the U.S. Supreme Court did not find Parker immunity for a utility company that created rates even though those fixed rates were reviewed and approved by a state agency. "The involvement of the state through its regulation of the practice afforded no immunity." *Boddicker v. Arizona State Dental Ass'n* (9th Cir. 1977) 549 F.2d 626, 631-32. To oversimply it, Detroit Edison (private company) filed its tariffs with the state regulatory commission and claimed immunity on that basis.

Furthermore, the Supreme Court stated that unlawful conduct has not been pronounced to be immune simply because "it was permitted or required by state law" which means even if this Court found immunity for the State Bar (and it should not), it does not mean Tyler Technology shares in that immunity. *Cantor v. Detroit Edison Co.* (1976) 428 U.S. 579, 600

Second, in California federal court, a business who conspires with a sovereign in violation of the antitrust laws is held liable. Even if one person to a conspiracy has immunity, it does not become a one-person conspiracy. It does not become a one-person

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

conspiracy any more than a person that gets caught as part of an undercover sting operation. In *U.S. v Rodriguez* (9th Cir. 2004) 360 F.3d 949, the defendant conspired with an undercover agent to steal cocaine from fictitious drug traffickers. The conviction of conspiracy was upheld. The Court explained:

> [T]his court has previously upheld convictions stemming from law enforcement sting operations, finding that the jurisdictional nexus is not frustrated by the impossibility of the actual robbery. *See, e.g., United States v. Montoya,*945 F.2d 1068, 1074 (9th Cir. 1991) (upholding prosecution for attempted extortion of a fictitious business run by the FBI), *abrogated on other grounds by United States v. Carpenter,*961 F.2d 824 (9th Cir. 1992); *Bailey,*227 F.3d at 797 (finding that defendant's attempt to rob FBI agent was sufficient because "the Hobbs Act criminalizes attempts as well as completed crimes, [and] the government need not even prove that interstate commerce was affected, only that there exists a `realistic probability' of an effect on commerce").

> *U.S. v. Rodriguez* (9th Cir. 2004) 360 F.3d 949, 957

Another analogy would be when one person has diplomatic immunity, but the other person does not. The person without diplomatic immunity still may be charged with violating the law. The Court should take short shrift of this argument.

### D. Fourth Cause Of Action - Section 1 Claims

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. This Court has long recognized that, "[i]n view of the common law and the law in this country" when the Sherman Act was passed, the phrase "restraint of trade" is best read to mean "undue restraint." *Standard Oil Co. of N.J. v. United States,*221 U.S. 1, 59–60, 31 S.Ct. 502, 55 L.Ed. 619 (1911). T

*Ohio v. Am. Express Co.* (2018) 138 S. Ct. 2274, 2283

**9**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Plaintiffs alleged that the Cover up of the Data Breach Scandal by Tyler Technologies and the State Bar caused injury.

### 1.  The Allegations Suggest an Agreement

Tyler Technologies claims there was no agreement between the State Bar and Tyler to cover up the breach. (TT MTD p. 9). First, Tyler misstates the allegations in the Second Amended Complaint. The Plaintiffs did not allege that Tyler entered into a conspiracy with the State Bar to "impact the legal services market." (TT MTD p. 9). The pleadings allege that Tyler Technologies entered into an agreement with the State Bar to cover up the Data Breach scandal, which led to harm in the legal services market. The fact that the Defendants did this to protect their reputation, is a commercial endeavor, not one for the benefit of the public, and as such both Tyler Technologies and the State Bar can be held liable.

The cover up was widespread and despicable. Plaintiffs do not have to show Tyler Technologies intended the consequences, only that they were part of the cover up scheme. Each actor in the conspiracy can have a different motive in entering the conspiracy, to be complete here.

The agreement can be inferred from the parallel conduct in not giving prompt notice and the communications obtained from Kevan Schwitzer. The SAC included email threads obtained from Kevan Schwitzer demonstrating a conspiracy to cover up the data breach between Tyler Technologies and the State Bar was plausible. The emails do not have to be directly between the State Bar and Tyler Technologies (nor would they be since these are from Schwitzer) to meet *Twombly* pleading standards. The emails clearly show Schwitzer, and Tyler Technologies are working with the State Bar to get the numbers down on the level of breach. The fact that both the emails refer to "page views" and the later email notices about the State Bar also use the specific phrase "page views"

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

demonstrates an agreement was made that they would use "page views" to obfuscate the breach – belatedly months after not giving any notice at all. It is plausible that such a conspiracy existed when reading the emails and observing the conduct of both Tyler and the State Bar. [SAC ¶ 106-123].

The delay by the State Bar and Tyler Technologies show they were working together. Economics provides some insight in the form of the famous "prisoner's dilemma" scenario.[1] Unless two guilty suspects can reach an agreement to withhold information, both will admit their guilt. The fact that they both attempted to cover up the breach, when they could have come clean at the expense of the other party, gives a reason to presume there was a meeting of the minds if not outright agreement.

Put differently: Both would face liability for actions that were "illegal and/or violated policies, procedures or best practices" (SAC ¶187). In the absence of a conspiracy or agreement, economic theory implies they would have individually acted sooner.

### 2.  The Restraint Was Unreasonable

Tyler Technologies alleged that the SAC failed to allege harm or restraint to competition for the Sherman Act Section 1 claim, including a geographic market. A geographical market is not required in the professions.

---

[1] "Students of strategy and bargaining cut their teeth on the game of Prisoners' Dilemma. Two prisoners, unable to confer with one another, must decide whether to take the prosecutor's offer: confess, inculpate the other, and serve a year in jail, or keep silent and serve five years. If the prisoners could make a (binding) bargain with each other, they would keep silent and both would go free. But they can't communicate, and each fears that the other will talk. So, both confess. Studying Prisoners' Dilemma has led to many insights about strategic interactions." *Page v. U.S.* (7th Cir. 1989) 884 F.2d 300, 301

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

The purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition, "proof of actual detrimental effect, such as a reduction of output," can obviate the need for an inquiry into market power, which is but a "surrogate for detrimental effect." 7 P. Areeda, Antitrust Law ¶ 1511, p. 429 (1986).

> the finding of actual, sustained adverse effects on competition in those areas where IFD dentists predominated, viewed in light of the reality that markets for dental services tend to be relatively localized, is legally sufficient to support a finding that the challenged restraint was unreasonable even in the absence of elaborate market analysis.

> *Federal Trade Commission v. Indiana Federation of Dentists* (1986) 476 U.S. 447, 461

SAC ¶196 cites evidence that decline in solo practitioners resulted in more people self-representing in court, which reflects a reduction in output.  The challenged conduct raises cost of investigation (SAC ¶¶199, 201-205), which disproportionately would fall on solo practitioners (SAS ¶195).

The Sherman Act reflects a legislative judgment that competition will produce better legal services if competition is not constrained.

> As we have remarked before, the "Sherman Act reflects a legislative judgment that ultimately competition will produce not only lower prices, but also better goods and services... **That is equally so when the quality of legal advocacy**, rather than engineering design, is at issue.

> *Federal Trade Commission v. Superior Court Trial Lawyers Ass'n* (1990) 493 U.S. 411, 423-24 (Bold added). (citations omitted).

Academic research has confirmed the economic implication that the cost of hiring an attorney is related to the likelihood of self-representation (as presented in SAC ¶205).  For example, "Lacking funds to hire an attorney, those with lower incomes are

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

significantly more likely to represent themselves." Lynn Mather, Changing Patterns of Legal Representation in Divorce: From Lawyers to Pro Se, JOURNAL OF LAW AND SOCIETY, Vol. 30(1), at 148.

The PeopleLaw Market is a recognized market in the legal sector. See, "The High Highs and Low Lows of Legal Regulatory Reform" written by Stanford University, where it is noted " the PeopleLaw sector has experienced significant stress and decline within the traditional regulatory landscape." Id. The article can be found on the internet at: https://law.stanford.edu/2022/10/17/the-high-highs-and-low-lows-of-legal-regulatory-reform-333-2/ ( Lucy Ricca, Graham Ambrose, The High Highs and Low Lows of Legal Regulatory Reform, Stanford University (Oct. 17, 2022). See also, State Supreme Courts & The Challenge of PeopleLaw which can be found on the internet at: https://www.legalevolution.org/2022/02/state-supreme-courts-and-the-challenges-of-peoplelaw-287/ (Prof. Bill Henderson, State Supreme Courts & The Challenge of PeopleLaw, Legal Evolution (Feb. 6, 2022).).

Professor Bill Henderson described how the market structure is developed:

Market Structure. Through the adoption of ethics rules, state supreme courts were making decisions on the structure of the legal services market, deciding sources of capital and ownership structure (MR 5.4), who can provide legal advice (MR 5.5), incentives to innovate (MR 5.6's ban on non-compete agreements), and how legal service providers and can market their services and acquire clients (MR 7.2–7.3).

Prof. Bill Henderson, State Supreme Courts & The Challenge of PeopleLaw, Legal Evolution (Feb. 6, 2022)

The state bar's own reports (e.g., 2020 Annual Discipline Report) show that the State Bar is aware that the PeopleLaw market is more likely to receive complaints. Logically, the State Bar could expect that a data breach of those complaints

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

would harm PeopleLaw practitioners relatively more (and therefore harm competition by affecting lower-cost providers of legal services more?). Similarly, it would know the cost structure is regressive and hurts PeopleLaw practitioners relatively more (SAC ¶219). Does this show intent?

Consequently, the reality of actual harm negates the need for in depth market analysis and the motion should be denied.

### 3. Antitrust Injury

Tyler Technology alleges there is no causal antitrust injury. (TT MTD p. 9).

The SAC alleged evidence from a survey suggested the cost of investigations will be increasing because lawyers are not as willing to cooperate in a confidential investigation by the State Bar after the data breach. (SAC ¶¶199, 201-205).

Numerous other avenues for antitrust injury were alleged in the SAC, also. (e.g., ¶¶189, 207-208, 211, 235-238).

Next, Tyler Technologies argues this is not a per se violation. Plaintiffs did not allege a per se violation. Most restraints are analyzed under the traditional "rule of reason." *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). The rule of reason requires the factfinder to "weigh all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Id.*

Additionally, under 15 U.S.C. § 1, "Plaintiffs "need not allege, or prove, an actual effect on interstate commerce to support federal jurisdiction." *Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322, 330-31.

Like *Summit Health, Ltd*, "the case is necessarily more significant than the fate of "just one [attorney] whose business is so small that his destruction makes little difference to the economy." [citation]. The case involves an alleged restraint on the practice of

[legal] services. The restraint was accomplished by an alleged misuse of a [State Bar] process, which [is] the gateway that controls access to the market for [legal] services. [] The competitive significance of respondent's exclusion from the market must be measured not just by a particularized evaluation of his own practice, but rather by a general evaluation of the impact of the restraint on other participants and potential participants in the market from which he has been excluded." *Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322, 332

Like *Summit Health*, the FAC alleges that the State Bar "conspired with others to abuse that process" which was unlawful under the IPA and Business & Professions Code in California to support a cause of action under the Sherman Act. *Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322, 333. [FAC ¶106-111]

In the, *United States v. Real Estate Boards* (1950) 339 U.S. 485, 490, the U.S. Supreme Court found that controlling a market by suppression of competition, even by a Real Estate Board through price fixing was illegal.

### 4. The Professions Are Given Unique Treatment

Many defendants cases are inapposite because the Professions like lawyers are given unique treatment tailored to their profession. "The fact that a restraint operates upon a profession as distinguished from a business is, of course, relevant in determining whether that particular restraint violates the Sherman Act." *Koefoot v. American College of Surgeons* (N.D. Ill. 1987) 652 F. Supp. 882, 887, citing *Goldfarb*.

For example, in "the Sherman Act antitrust context, the professions are considered a part of interstate commerce." *National Pharmacies, Inc. v. De Melecio* (D.P.R. 1999) 51 F. Supp. 2d 45, 55 (collecting cases).

### E. Leave to Amend

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

If the Court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities."

> *In re Yahoo! Inc. Customer Data Sec. Breach Litig.* (N.D. Cal. 2018) 313 F. Supp. 3d 1113, 1127 (FRCP 15(a)).

Plaintiff requests leave to amend if the Court is declined to dismiss on any basis provided by the Defendant because such dismissal would be a mere technicality that Plaintiff will be able to correct.

### IV.    CONCLUSION

Wherefore plaintiff respectfully requests this Court deny Defendant Tyler Technologies' motion to dismiss and Order the Defendant to Answer the Second Amended Complaint.

Dated:  January 9, 2023

Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT
/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs, John Roe 1, Jane Roe 1, Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of themselves and all others similarly situated*

**16**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

`

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 1968 S. Coast Hwy #3960, Laguna Beach, CA 92651. On January 9, 2023, I served a copy of the following document(s) described as:

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES MOTION TO DISMISS THE ANTITRUST CLAIMS**

On the interested parties in this action as follows:

**[x] BY E-SERVE and EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth. (Per Covid-19 Order)

**[] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Huntington Beach, California, to the aforementioned addressee(s).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: January 9, 2023

                                        _/s/Lenore Albert_____
                                           Lenore Albert

**17**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

1

**SERVICE LIST**

2

**For Defendants State Bar of California**

3

COOLEY LLP

4

MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)

3 Embarcadero Center

5

20th Floor

6

San Francisco, CA 94111

Telephone: (415) 693-2000

7

Facsimile: (415) 693-2222

8

TIANA DEMAS (*pro hac vice*) (tdemas@cooley.com)

110 N. Wacker Drive, Suite 4200

9

Chicago, IL 60606

10

Telephone: (312) 881-6500

Facsimile: (312) 881-6598

11

BARRETT J. ANDERSON (318539) (banderson@cooley.com)

12

WALTER WAIDELICH (300798) (cwaidelich@cooley.com)

13

4401 Eastgate Mall

San Diego, CA 92121

14

Telephone: (858) 550-6000

15

Facsimile: (858) 550-6420

16

GREGORY MERCHANT (341287) (gmerchant@cooley.com)

3175 Hanover Street

17

Palo Alto, CA 94304

18

Telephone: (650) 843-5000

Facsimile: (650) 849-7400

19

20

VANESSA L. HOLTON (111613)

21

General Counsel

ROBERT G. RETANA (148677) Deputy General Counsel

22

SUZANNE C. GRANDT (304794)

23

Assistant General Counsel

**OFFICE OF GENERAL COUNSEL**

24

**THE STATE BAR OF CALIFORNIA**

25

180 Howard Street

26

San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517

Email: suzanne.grandt@calbar.ca.gov

27

28

**18**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

1

2

3  **For Defendant Rick Rankin**

4  JEFFER MANGELS BUTLER & MITCHELL LLP
   MICHAEL A. GOLD (Bar No. 90667)

5  *mgold@jmbm.com*

6  JUSTIN ANDERSON (Bar No. 328969)
   *Janderson@jmbm.com*

7  1900 Avenue of the Stars, 7th Floor

8  Los Angeles, California 90067-4308
   Telephone: (310) 203-8080

9  Facsimile: (310) 203-0567

10

11 **For Defendant Tyler Technologies, Inc.**

12 Christina N. Goodrich (SBN 261722) christina.goodrich@klgates.com
   Zachary T. Timm (SBN 316564)

13 zach.timm@klgates.com

14 **K&L GATES LLP**

15 10100 Santa Monica Boulevard Seventh Floor Los Angeles, California 90067
   Telephone: 310.552.5000 Facsimile: 310.552.5001

16

17 Beth W. Petronio, admitted *pro hac vice*

18 beth.petronio@klgates.com
   **K&L GATES LLP**

19 1717 Main Street, Suite 2800

20 Dallas, TX 75201
   Telephone: (214) 939-5815

21 Facsimile: (214) 939-5849

22
                          **ECF LIST:**
23

24 Barrett J. Anderson     banderson@cooley.com, efiling-notice@ecf.pacerpro.com,

25 efilingnotice@cooley.com, mdejesus@cooley.com

26 Beth W. Petronio     beth.petronio@klgates.com

27

28
                             **19**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Christina N. Goodrich    christina.goodrich@klgates.com,
klgateseservice@klgates.com

David Belcher    david.belcher@faegredrinker.com,
docketgeneral@faegredrinker.com, shanta.teekah@faegredrinker.com

Gregory John Merchant    gmerchant@cooley.com

Justin Alexander Anderson    janderson@jmbm.com, learly@jmbm.com,
mastercalendar@jmbm.com

Lenore L Albert    lenalbert@interactivecounsel.com, docket@interactivecounsel.com,
lenorealbert@msn.com

Michael Allan Gold    mgold@jmbm.com, cl7@jmbm.com,
mastercalendar@jmbm.com, MGold@jmbm.com

Michael G Rhodes    rhodesmg@cooley.com, efiling-notice@ecf.pacerpro.com,
eFilingNotice@cooley.com, john-brocales-7263@ecf.pacerpro.com,
mrhodes@cooley.com, smartinez@cooley.com

Peter William Baldwin    peter.baldwin@faegredrinker.com, peter.baldwin@usdoj.gov,
USACAC.criminal@usdoj.gov

Robert G Retana    robert.retana@calbar.ca.gov, joan.randolph@calbar.ca.gov

Suzanne Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov

Tiana A. Demas    tdemas@cooley.com, efiling-notice@ecf.pacerpro.com,
efilingnotice@cooley.com

Vanessa L Holton    vanessa.holton@calbar.ca.gov

Walter Waidelich    cwaidelich@cooley.com, kjones@cooley.com

Zachary Thomas Timm    zach.timm@klgates.com, klgateseservice@klgates.com

**20**

**PLAINTIFFS' OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES
MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM