Lenore L. Albert, Esq. SBN 210876
LAW OFFICES OF LENORE ALBERT
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Email: lenalbert@InteractiveCounsel.com
Attorney for Plaintiffs, John Roe 1, Jane Roe 1,
Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of*
*themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, *on behalf of themselves and all others similarly situated*,<br><br>          Plaintiff,<br>vs.<br><br>THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; KEVAN SCHWITZER; RICK RANKIN; and DOES 4 through 10, inclusive,<br>          Defendants. | CASE NO. 22-cv-00983-DFM<br><br>Assigned to the Hon. Douglas F. McCormick<br>Crtm. 6B<br>Complaint filed: 03-18-2022<br><br>**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS** |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE THAT PLAINTIFFS** request this Court to TAKE

JUDICIAL NOTICE on the grounds that documents are publicly available on the internet

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

and not reasonably in dispute as to the admissions made by a party opponent contained therein or are vicarious admissions made by their agent. The information is relevant to support a preliminary injunction.

Plaintiffs request this Court take judicial notice under FRE 201 as follows:

1. Bus. & Prof. Code § 6086.10, a true and correct copy of which is attached hereto as Exhibit 1.

2. Lucy Ricca, Graham Ambrose, The High Highs and Low Lows of Legal Regulatory Reform, Stanford University (Oct. 17, 2022), a true and correct copy of which is attached hereto as Exhibit 2.

3. Prof. Bill Henderson, State Supreme Courts & The Challenge of PeopleLaw, Legal Evolution (Feb. 6, 2022), a true and correct copy of which is attached hereto as Exhibit 3.

4. The State Bar Second Amended Notice of Disciplinary Charges in the Matter of Lenore Albert SBC-22-O-30348 filed in June 2022, a true and correct copy of which is attached hereto as Exhibit 4.

5. The State Bar Closing Brief in the Matter of Lenore Albert SBC-22-O-30348 filed on January 6, 2023, a true and correct copy of which is attached as Exhibit 5.

6. Lenore Albert's Closing Brief in the Matter of Lenore Albert SBC-22-O-30348, refiled on January 9, 2023, a true and correct copy of which is attached as Exhibit 6.

7. Internal State Bar Memo dated March 1, 2022, in the Matter of Lenore Albert SBC-22-O-30348, a true and correct copy of which is attached as Exhibit 7.

**RELEVANCE**

The documents are relevant to support the plausibility of allegations in the Second Amended Complaint. The state statute shows it is not in sufficient detail to proscribe the

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO
DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

actual fee structure of the Disciplinary Costs to demonstrate any oversight or regulation by the state legislature. Both articles, which can be verified on the internet demonstrate there is a PeopleLaw Market in the legal sector and that it has been decreasing over the past 50 years. It supports the allegations about market behavior alleged in the antitrust causes of action in the Second Amended Complaint. The articles can be verified online at: https://law.stanford.edu/2022/10/17/the-high-highs-and-low-lows-of-legal-regulatory-reform-333-2/ and https://www.legalevolution.org/2022/02/state-supreme-courts-and-the-challenges-of-peoplelaw-287/

State Bar documents 5 through 8 show that the State Bar did not discontinue its practice of attempting to control the practice of law in federal court. After the State Bar learned plaintiff's counsel was gearing up this lawsuit, they interviewed Opposing counsel and others and filed Disciplinary charges exclusively for the practice of law in federal court where plaintiff's counsel was admitted. The documents can be verified online at https://www.calbar.ca.gov/. This is the epitome of anticompetitive conduct to show that the motions to dismiss on all grounds should be denied and let the case proceed.

Dated:  January 9, 2023          Respectfully Submitted,

LAW OFFICES OF LENORE ALBERT
/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs, John Roe 1, Jane Roe 1, Jane Roe 2, Jane Roe 3, and John Roe 2, *on behalf of themselves and all others similarly situated*

**3**

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

`

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 1968 S. Coast Hwy #3960, Laguna Beach, CA 92651. On January 9, 2023, I served a copy of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

On the interested parties in this action as follows:

**[x] BY E-SERVE and EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth. (Per Covid-19 Order)

**[] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Huntington Beach, California, to the aforementioned addressee(s).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: January 9, 2023

_/s/Lenore Albert_____
Lenore Albert

**4**

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*        22-cv-00983-DFM

1

## SERVICE LIST

2

**For Defendants State Bar of California**

3  COOLEY LLP

4  MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)

   3 Embarcadero Center

5  20th Floor

6  San Francisco, CA 94111

   Telephone: (415) 693-2000

7  Facsimile: (415) 693-2222

8  TIANA DEMAS (*pro hac vice*) (tdemas@cooley.com)

   110 N. Wacker Drive, Suite 4200

9  Chicago, IL 60606

10  Telephone: (312) 881-6500

    Facsimile: (312) 881-6598

11  BARRETT J. ANDERSON (318539) (banderson@cooley.com)

12  WALTER WAIDELICH (300798) (cwaidelich@cooley.com)

13  4401 Eastgate Mall

    San Diego, CA 92121

14  Telephone: (858) 550-6000

15  Facsimile: (858) 550-6420

16  GREGORY MERCHANT (341287) (gmerchant@cooley.com)

    3175 Hanover Street

17  Palo Alto, CA 94304

18  Telephone: (650) 843-5000

    Facsimile: (650) 849-7400

19

20   VANESSA L. HOLTON (111613)

21  General Counsel

    ROBERT G. RETANA (148677) Deputy General Counsel

22  SUZANNE C. GRANDT (304794)

23  Assistant General Counsel

    **OFFICE OF GENERAL COUNSEL**

24  **THE STATE BAR OF CALIFORNIA**

25  180 Howard Street

26  San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517

    Email: suzanne.grandt@calbar.ca.gov

27

28

5

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO
DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

**For Defendant Rick Rankin**
JEFFER MANGELS BUTLER & MITCHELL LLP
MICHAEL A. GOLD (Bar No. 90667)
*mgold@jmbm.com*
JUSTIN ANDERSON (Bar No. 328969)
*Janderson@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567


**For Defendant Tyler Technologies, Inc.**
Christina N. Goodrich (SBN 261722) christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard Seventh Floor Los Angeles, California 90067
Telephone: 310.552.5000 Facsimile: 310.552.5001

Beth W. Petronio, admitted *pro hac vice*
beth.petronio@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Facsimile: (214) 939-5849

## ECF LIST:

Barrett J. Anderson      banderson@cooley.com, efiling-notice@ecf.pacerpro.com,
efilingnotice@cooley.com, mdejesus@cooley.com

Beth W. Petronio      beth.petronio@klgates.com

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO
DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

Christina N. Goodrich    christina.goodrich@klgates.com, klgateseservice@klgates.com

David Belcher    david.belcher@faegredrinker.com, docketgeneral@faegredrinker.com, shanta.teekah@faegredrinker.com

Gregory John Merchant    gmerchant@cooley.com

Justin Alexander Anderson    janderson@jmbm.com, learly@jmbm.com, mastercalendar@jmbm.com

Lenore L Albert    lenalbert@interactivecounsel.com, docket@interactivecounsel.com, lenorealbert@msn.com

Michael Allan Gold    mgold@jmbm.com, cl7@jmbm.com, mastercalendar@jmbm.com, MGold@jmbm.com

Michael G Rhodes    rhodesmg@cooley.com, efiling-notice@ecf.pacerpro.com, eFilingNotice@cooley.com, john-brocales-7263@ecf.pacerpro.com, mrhodes@cooley.com, smartinez@cooley.com

Peter William Baldwin    peter.baldwin@faegredrinker.com, peter.baldwin@usdoj.gov, USACAC.criminal@usdoj.gov

Robert G Retana    robert.retana@calbar.ca.gov, joan.randolph@calbar.ca.gov

Suzanne Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov

Tiana A. Demas    tdemas@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com

Vanessa L Holton    vanessa.holton@calbar.ca.gov

Walter Waidelich    cwaidelich@cooley.com, kjones@cooley.com

Zachary Thomas Timm    zach.timm@klgates.com, klgateseservice@klgates.com

**7**

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE ANTITRUST CLAIMS**

*Roe v The State Bar of California, et al.*          22-cv-00983-DFM

EX 1

# Cal. Bus. & Prof. Code § 6086.10

Section 6086.10 - Costs

**(a)** Any order imposing a public reproval on a licensee of the State Bar shall include a direction that the licensee shall pay costs. In any order imposing discipline, or accepting a resignation with a disciplinary matter pending, the Supreme Court shall include a direction that the licensee shall pay costs. An order imposing costs pursuant to this subdivision is enforceable both as provided in Section 6140.7 and as a money judgment. The State Bar may collect these costs through any means provided by law.

**(b)** The costs required to be imposed pursuant to this section include all of the following:

**(1)** The actual expense incurred by the State Bar for the original and copies of any reporter's transcript of the State Bar proceedings, and any fee paid for the services of the reporter.

**(2)** All expenses paid by the State Bar which would qualify as taxable costs recoverable in civil proceedings.

**(3)** The charges determined by the State Bar to be "reasonable costs" of investigation, hearing, and review. These amounts shall serve to defray the costs, other than fees for the services of attorneys or experts, of the State Bar in the preparation or hearing of disciplinary proceedings, and costs incurred in the administrative processing of the disciplinary proceeding and in the administration of the Client Security Fund.

**(c)** A licensee may be granted relief, in whole or in part, from an order assessing costs under this section, or may be granted an extension of time to pay these costs, in the discretion of the State Bar, upon grounds of hardship, special circumstances, or other good cause.

**(d)** If an attorney is exonerated of all charges following a formal hearing, the attorney is entitled to reimbursement from the State Bar in an amount determined by the State Bar to be the reasonable expenses, other than fees for attorneys or experts, of preparation for the hearing.

**(e)** In addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to Section 6086.13, costs imposed pursuant to this section are penalties, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to protect the public. This subdivision is declaratory of existing law.

*Ca. Bus. and Prof'l. Code § 6086.10*

Amended by Stats 2020 ch 360 (AB 3362),s 4, eff. 1/1/2021.
Amended by Stats 2018 ch 659 (AB 3249),s 72, eff. 1/1/2019.
Amended by Stats 2003 ch 334 (AB 1708), s 4, eff. 1/1/2004.
See Stats 2003 ch 334 (AB 1708), s 11.



EX 2

Skip to main content

Stanford Law School

# The High Highs and Low Lows of Legal Regulatory Reform

October 17, 2022
By
Lucy Ricca (https://law.stanford.edu/directory/lucy-ricca/)
Graham Ambrose



**Source:** "Legal Innovation After Reform: Evidence from Regulatory Change (https://law.stanford.edu/publications/legal-innovation-after-reform-evidence-from-regulatory-change/)," Deborah L. Rhode Center on the Legal Profession (Sept 2022) at 18, Figure 1.

In the long run, however, it's all about the data. Initial findings from Utah and Arizona reform efforts.



Lucy Ricca & Graham Ambrose

The year 2020, known to most for global pandemic shutdowns, also heralded leaps and bounds in legal regulatory reforms. Utah (https://www.utcourts.gov/utc/news/2020/08/13/to-tackle-the-unmet-legal-needs-crisis-utah-supreme-court-unanimously-endorses-a-pilot-program-to-assess-changes-to-the-governance-of-the-practice-of-law/) and Arizona (https://iaals.du.edu/blog/arizona-carries-regulatory-reform-momentum-forward-historic-vote) approved extraordinary changes to the regulation of legal practice. Both states loosened the bans on nonlawyer ownership of legal practices and the practice of law by nonlawyers. Further, the Conference of Chief Justices issued a resolution (https://www.ncsc.org/__data/assets/pdf_file/0010/23500/02052020-urging-consideration-regulatory-innovations.pdf) urging states to consider regulatory innovations regarding the delivery of legal services, and the ABA approved a limited resolution

(https://www.americanbar.org/groups/centers_commissions/center-for-innovation/Resolution115/)encouraging consideration of regulatory innovation. Even Justice Neil Gorsuch weighed (https://iaals.du.edu/blog/becky-kourlis-and-neil-gorsuch-laud-regulatory-innovation-utah-and-arizona-urge-other-states)in with his support for regulatory innovation.

This year, on the other hand, has been more challenging. California's Closing the Justice Gap Working Group (https://www.calbar.ca.gov/About-Us/Who-We-Are/Committees/Closing-the-Justice-Gap-Working-Group), of which one of us (Lucy Ricca) was a member, was tasked with drafting a report to the State Bar's Board of Trustees on what a California regulatory sandbox might look like. But the group became a punching bag of several of its own lawyer members as well as powerful members of the state legislature. The group was finally shuttered this past summer when those legislators forbade the Bar, or any group formed by the Bar, to work on anything having to do with reform of ownership or unauthorized practice rules. See Joyce E. Cutler, "California Restrains State Bar From Expanding Nonlawyer Practice, (https://news.bloomberglaw.com/business-and-practice/california-restrains-state-bar-from-expanding-nonlawyer-practice)" *Bloomberg Law*, Sept 19, 2022. The ban also stopped any further work on paraprofessional licensing, a subject already addressed by a different working group that had completed and submitted its report.

Regulatory reform hit snags nationally, too. At its summer meeting, the ABA House of Delegates passed a non-binding resolution discouraging states from considering changes to the rules around nonlawyer ownership and investment. See "ABA Sides Against Opening Law Firms Up to New Competition (https://news.bloomberglaw.com/business-and-practice/aba-sides-against-opening-law-firms-up-to-new-competition)," *Bloomberg Law*, Aug 9, 2022. Although other states, including Washington and Michigan, continue to consider regulatory solutions to the justice gap, the once-substantial momentum for legal services reform seems to have stalled.

While the debates around legal regulatory reform and market liberalization continue, actual reforms proceed in Arizona and Utah. The Grand Canyon State abolished Professional Conduct Rule 5.4, allowing nonlawyers to own law firms. See Robert Ambrogi, "Arizona Is First State To Eliminate Ban On Nonlawyer Ownership Of Law Firms (https://www.lawnext.com/2020/08/arizona-is-first-state-to-eliminate-ban-on-nonlawyer-ownership-of-law-firms.html)," *LawSites*, Aug 31, 2020.

Utah, by contrast, has launched a regulatory "sandbox"—or controlled policy program—in which state regulators permit designated legal entities to allow non-lawyers to practice law or to own law firms. In both states, new legal service providers are emerging. See "Enter the Sandbox: Utah's bold new experiment in lawyer regulation (https://thepractice.law.harvard.edu/article/enter-the-sandbox/)," *The Practice* (Jan/Feb 2021). These entities are partnering with or employing lawyers while offering new services to the public.

In our view, now is a good time to pause and ask, "What do Utah and Arizona teach us about the potential impacts of regulatory reform?" Some of the foundational questions include:

What kinds of entities are entering the market?
How are they structured?
What services are they providing and to whom?
Is there evidence of consumer harm?

## New evidence from new reforms


(https://www.legalevolution.org/wp-content/uploads/sites/262/2022/10/P335-Engstrom-Walsh.png)
Prof. David Freeman Engstrom & Madeline Walsh

These are the questions driving a new report, "Legal Innovation After Reform: Evidence from Regulatory Change (https://law.stanford.edu/publications/legal-innovation-after-reform-evidence-from-regulatory-change/)," just released by the Deborah L. Rhode Center on the Legal Profession (https://law.stanford.edu/stanford-center-on-the-legal-profession/). This report, which we co-authored with Stanford Law Professor David Freeman Engstrom (https://law.stanford.edu/directory/david-freeman-engstrom/) and current 3L Madeline Walsh (https://www.linkedin.com/in/madeline-walsh-b40457203/), presents the first comprehensive study of the legal innovations emerging in Utah and Arizona post-reform.

We conducted the research as part of a policy lab at the law school—a small seminar in which students conduct research on policy questions for real-world clients. In this case, our "client" was the Regulation and Practice Reform Committee of the Michigan Justice for All Commission (https://www.courts.michigan.gov/administration/special-initiatives/justice-for-all-commission/), co-chaired by Michigan Supreme Court Justice Brian Zahra (https://www.courts.michigan.gov/courts/supreme-court/justices/justice-brian-k.-zahra/) and former Michigan Bar President Janet Welch (https://www.michbar.org/journal/Details/Saying-goodbye-to-Janet-Welch-After-15-years-state-bars-executive-director-retires?ArticleID=4327).

To begin to answer the questions raised above, we looked at two types of data. First, to understand what types of innovation are possible, we conducted in-depth, semi-structured interviews with 37 entities that have obtained authorization in liberalizing jurisdictions, half in Utah and Arizona and half in the U.K., where reform efforts are more mature. Second, to understand how much innovation may result in U.S. legal markets, and whom it may serve, we conducted a comprehensive analysis of the application, authorization, and other public-facing materials from all 57 of the authorized entities in Utah and Arizona as of June 30, 2022.

Our review led to several key insights and a more detailed understanding of what newly authorized legal service providers are doing in both Utah and Arizona.

## Toward a taxonomy of innovation

We found that regulatory reforms are spurring substantial innovation in five different ways, particularly in the ownership structure of providers and in their service delivery models. In particular, we have identified five innovation types: (1) traditional law firms making changes to their capital or business structure or service model; (2) "law companies" practicing law; (3) "non-law companies" as new entrants to the legal sector; (4) intermediary platforms; and (5) entities using nonlawyers and technology to practice law.

The first four categories involve business structure reforms and are mutually exclusive, though there are entities moving from one category to another (e.g., from firm to law company or from law company to non-law company). As shown in the below graphic, however, the fifth category is a little different.



**Source:** "Legal Innovation After Reform (https://law.stanford.edu/publications/legal-innovation-after-reform-evidence-from-regulatory-change/)" at 5.

This last category (type 5) captures entities that are implementing service model innovations through the use of non-lawyers and software in order to practice law. This innovation, which is new to the U.S. legal landscape, is available only to entities authorized through the Utah sandbox.

Note that it's possible that the entrant to the type 5 category may also be in one of the other four categories. For example, LawGeex (https://www.prweb.com/releases/utah_grants_license_to_lawgeex_first_ever_ai_company_to_practice_law/prweb17909413.htm) is a law company (type 2) authorized in the Utah sandbox which is also authorized to use software to offer legal advice and guided assistance to its users (type 5).

As noted in today's lead graphic (https://www.legalevolution.org/wp-content/uploads/sites/262/2022/10/P335-figure1a.png), Arizona has limited its legal regulatory reform to alternative business structures (ABS). In contrast, Utah's regulatory sandbox contemplates changes to the unauthorized practice of law (UPL).

Using our five-factor taxonomy, the graphic below summarizes the number of new entrants in both Utah and Arizona:



**Source:** "Legal Innovation After Reform (https://law.stanford.edu/publications/legal-innovation-after-reform-evidence-from-regulatory-change/)" at 37.

These categories show the kinds of innovations that may emerge as jurisdictions liberalize legal regulation.

***Traditional firms.*** Traditional firms make up 35% of authorized entities across Utah and Arizona. At this early stage, the traditional outlets are all local Utah and Arizona firms taking outside investment or non-lawyer owners. Their reasons range and include recognizing and retaining nonlawyer staff and raising capital to invest in technology or marketing.

***Law companies***. Like traditional firms, law companies make up 35% of authorized entities in Utah and Arizona. Law companies include several familiar names: Rocket Lawyer (https://www.rocketlawyer.com/newsroom/rocket-lawyer-joins-utah-in-nations-first-program-to-transform-legal-services), Legalzoom (https://investors.legalzoom.com/news-releases/news-release-details/arizona-supreme-court-approves-alternative-business-structure), Axiom (https://www.legalfutures.co.uk/latest-news/axiom-law-enters-regulation-for-first-time-with-us-abs), Elevate (https://elevateservices.com/news/elevate-becomes-first-ever-law-company-to-receive-an-alternative-business-structure-abs-license-in-the-u-s/), Hello Divorce (https://hellodivorce.com/), and LawGeex (https://www.prweb.com/releases/utah_grants_license_to_lawgeex_first_ever_ai_company_to_practice_law/prweb17909413.htm). Each of these companies has chosen to become regulated in order to hire lawyers to practice law. This perhaps anodyne observation highlights the potential for regulatory reform to create new opportunities for lawyers to practice law for the public as salaried employees of established companies. Regulatory reform, in other words, has the potential not to replace lawyers with artificial intelligence or algorithms but to enable them to focus on what they are good at—the practice of law.

***Non-law Companies***. 18% of entities are non-law companies—that is, new entrants to legal markets that have set up "one-stop shops" combining law and non-law expertise or, alternatively, have begun to offer legal services as an adjunct to their primary line of business. One-stop shops are often partnerships between lawyers and other professionals, such as accountants or financial advisers, and offer holistic, multi-professional solutions for their consumers. Companies moving into law from outside of the legal services industry include Law on Call (https://www.lawoncall.com/), which is the new legal subsidiary of a registered agent company (https://www.northwestregisteredagent.com/) authorized in the Utah sandbox.

***Intermediary Platforms.*** Intermediary platforms are familiar offerings to the general legal industry. These marketplace companies connect lawyers to potential consumers, either through direct referral fee arrangements if permitted or through a workaround as a marketing vendor. The three intermediaries are authorized in the Utah sandbox primarily to enable the direct referral fee arrangement. One of these is Off the Record (https://offtherecord.com/UT-utah/why-fight-your-traffic-ticket), the well-known traffic ticket marketplace.

***Entities Using Non-Lawyers to Practice Law.*** As mentioned, the final category captures entities building innovative service models around the unauthorized practice of law (UPL) waivers available in the Utah sandbox. These include traditional firms (*e.g.*, 1LAW (https://www.1law.com/)), law companies (*e.g.*, Estate Guru (https://estateguru.com/attorneys/ut/)), and non-law companies (*e.g.*, Law-on-Call (https://www.lawoncall.com/)). Also included are entities primarily targeting low-income and indigent people, including all the nonprofit, community-based companies. One example is Rasa (https://www.rasa-legal.com/), a B-corporation that uses both AI-software and nonlawyer providers first to help Utahns determine whether they are eligible to expunge their criminal records and then to execute the expungement process. Rasa was recently named the winner of the Access to Justice Tech award at the American Legal Technology Awards (https://americanlegaltechnology.com/).

## The big picture: key takeaways

Our survey of these service providers yields several insights.

First, lawyers are central to the work of these new entities and to the innovation taking place within them. Lawyers are conceptualizing innovative ideas and driving their development. Lawyers are participating as owners, investors, compliance officers, supervisors, and providers. Lawyers are overseeing development and training, even where the entity's primary innovation is using software or nonlawyers to provide service.

Second, most entities across both Utah and Arizona are implementing both technological and other innovations—such as price innovations—to deliver legal services in new ways. Crucially, the primary market appears to be individual consumers and small businesses. Although there are a few entities primarily serving large corporations (*e.g.*, Axiom and Elevate), the strong majority are serving what Bill Henderson has labeled the PeopleLaw (https://www.legalevolution.org/category/peoplelaw/) market. This is an exciting development since we know the PeopleLaw sector has experienced significant stress and decline within the traditional regulatory landscape. See, e.g., Post 287 (https://www.legalevolution.org/2022/02/state-supreme-courts-and-the-challenges-of-peoplelaw-287/) (collecting data on five decades of PeopleLaw decline); Post 198 (https://www.legalevolution.org/2020/09/everyday-low-price-for-legal-services-in-arizona-198/) (discussing need in Pennsylvania); Post 042 (https://www.legalevolution.org/2018/01/legal-services-consumer-price-index-cpi-cost-going-up-wallet-share-going-down-042/) (showing shrinking wallet share of legal services in typical US households): Post 039 (https://www.legalevolution.org/2017/11/decline-peoplelaw-sector-037/) (discussing decline of PeopleLaw, including findings of Chicago Lawyers I and II studies).

Below is a breakdown by client type and jurisdiction:



**Source:** "Legal Innovation After Reform (https://law.stanford.edu/publications/legal-innovation-after-reform-evidence-from-regulatory-change/)" at 41.

As summarized in the graphic below, the Utah sandbox entities and Arizona ABSs have sought authorization to offer services across a wide variety of substantive legal areas:



**Source:** "Legal Innovation After Reform (https://law.stanford.edu/publications/legal-innovation-after-reform-evidence-from-regulatory-change/)" at 42.

A third takeaway is that addressing UPL within the reform agenda appears to be critical, at least at this stage, to serving lower-income populations. Utah offers UPL waivers to entities seeking to use software or nonlawyers to practice law under the entity's license. Arizona's reforms, in contrast, are directed at entities seeking to access non-lawyer ownership or investment. It's noteworthy that the Utah sandbox contains the only entities—all of them non-profits—that report serving primarily serve indigent and low-income people.

Finally, reform efforts to this point do not appear to pose a substantial risk of consumer harm. Data and information reported by Utah and Arizona regulators indicate that authorized entities do not appear to draw a substantially higher number of consumer complaints, as compared to their lawyer counterparts. For instance, Utah's June 2022 data reported one complaint per 2,123 services delivered, and Arizona has received no complaints. This is generally on par with the number of complaints lodged against lawyers.

## Moving past the low lows

The above lessons have important implications for the future of regulatory reform, a movement that remains as urgent as ever.

Political setbacks in California and elsewhere force proponents of reform to make the case, once again, for why reform matters at all. The case is not hard to make: This country's access-to-justice crisis continues to get worse by the year. The crisis is caused, in part, by the dysfunctional market for legal services instituted and upheld by regulations protecting lawyers from competition and innovation in the modern economy.

Opponents of reform stand by their usual arguments: allowing nonlawyer ownership or practice will undermine the ethical values and independence of the legal profession and result in lower quality legal services, leading to potentially significant consumer and societal harm, or that increased market liberalization will ultimately exacerbate the existing inequalities in access to justice.

Much about regulatory reform remains untested and unknown. But our report finds that at least some evidence does not support several doomsday predictions from reform's opponents. See, e.g., Sherry Levin Wallach, "Why Lawyers Reject Non-Attorney Firm Ownership (https://news.bloomberglaw.com/us-law-week/why-lawyers-reject-non-attorney-firm-ownership)," *Bloomberg Law*, Sept 30, 2022 (President of NYSA arguing, without evidence, that new entrants in Utah and Arizona are drawn only to lucrative areas of law already amply served by lawyers).

But more to the point, the status quo is not cost-free. The current system creates active and unaddressed harms to tens of millions of Americans who are priced out of the market altogether and never seek help for their legal problems, or who could represent themselves ably but are too discouraged or disillusioned to try. Lawyers like to think of themselves as problem-solvers. But too many lawyers seem unwilling to remove the barriers that block access to legal solutions.

At long last, it's time to try. It's heartening to see progress in Utah and Arizona. More data is sure to embolden other jurisdictions.

*This essay was first published by* Legal Evolution *(https://www.legalevolution.org/2022/10/the-high-highs-and-low-lows-of-legal-regulatory-reform-334/) on October 16, 2022. Read the complete article here (https://www.legalevolution.org/2022/10/the-high-highs-and-low-lows-of-legal-regulatory-reform-334/).*

*Lucy Ricca (https://law.stanford.edu/directory/lucy-ricca/) and Graham Ambrose (https://www.linkedin.com/in/grahamambrose/), two of the authors of the recently published Stanford Law report (https://law.stanford.edu/publications/legal-innovation-after-reform-evidence-from-regulatory-change/) on the legal regulatory changes taking place in Utah and Arizona. Ricca is the Director of Policy and Programs at the Deborah L. Rhode Center on the Legal Profession and was the founding Executive Director of the Office of Legal Services Innovation (the regulatory office overseeing the Utah sandbox). In addition, she remains a member of the Office's Executive Committee. Ambrose is currently a 2L at Stanford Law and a 2022-23 Civil Justice Fellow at the Rhode Center.*

**Category:**
Uncategorized
RSS Feed (https://law.stanford.edu/feed/)
Trackback URL (https://law.stanford.edu/2022/10/17/the-high-highs-and-low-lows-of-legal-regulatory-reform-333-2/trackback/)

Post Pagination

Previous Article The Dormant Commerce Clause (https://law.stanford.edu/2022/10/16/the-dormant-commerce-clause/)
Next Article Why Do Blue States Keep Prioritizing Lawyers Over Low-Income Americans? (https://law.stanford.edu/2022/10/18/why-do-blue-states-keep-prioritizing-lawyers-over-low-income-americans/)

© Stanford University, Stanford, California, 94305-8610 | https://law.stanford.edu/2022/10/17/the-high-highs-and-low-lows-of-legal-regulatory-reform-333-2/

EX 3



# State supreme courts and the challenges of PeopleLaw (287)

By Bill Henderson on February 6, 2022



---

**Improving the legal system requires state supreme courts to fully accept their role as regulators.**

---

For the sake of this post, let's assume the following statement is true:  Once every 100 years or so, the jurists who preside over the highest courts in the land are obligated to

evaluate the functioning of the legal system and, if necessary, make structural changes that will improve access, efficiency, and justice for the citizens they serve.

Two interrelated challenges follow.  First, how do the jurists decide if structural changes are necessary?  Second, how do the jurists find the time and acquire the expertise to carry out such a large and complex project?

Because the second challenge is so daunting, it's possible that every generation of jurists is reluctant to undertake a rigorous analysis of the legal system they preside over, as the findings might force them to take on the unfamiliar, uncomfortable, and time-consuming role of regulator. As a result, successive generations of busy, diligent jurists focus on the tasks at hand. This pattern continues until signs of breakdown become obvious to all.  Cf "**About SLRN — 2020 Report**" (reporting a declining norm of lawyer representation in state courts, as 60 -100% of family, housing, and consumer litigation matters now involve at least one pro se (self-represented) party).

The point of this thought experiment is not to characterize state supreme court justices as negligent regulators.  Rather, I am suggesting that our legal system has a difficult problem of self-conception—specifically, that our top judges understandably view themselves as skilled jurists who are tasked with the additional administrative duty of running a court system and that this self-conception is readily passed from one generation to the next with substantial reinforcement from the bar.

This self-conception is problematic because significant improvements to our legal system require state supreme judges to understand and accept the fact that they are indisputably the legal sector's regulator.  When this happens — and only *after* it happens — can they move on to the daunting challenge of how to use that power to create desirable and beneficial change.

## Reluctant regulators

A couple of years ago, I sketched out a version of the **above graphic**, which is a simplified summary of how the U.S. legal sector is regulated.  Basically, to conceptualize a future state, including the steps necessary to get there, I needed a working model of the current state.

Much to my surprise, when I was done, state supreme courts were at the center of everything important:

- **Market Structure**.  Through the adoption of ethics rules, state supreme courts were making decisions on the structure of the legal services market, deciding sources of capital and ownership structure (**MR 5.4**), who can provide legal advice (**MR 5.5**), incentives to innovate (**MR 5.6**'s ban on non-compete agreements), and how legal service providers and can market their services and acquire clients (**MR 7.2**–**7.3**).

- **Dispute Resolution**.  Through the accretion of elaborate rules of procedures, all of us have become anchored to the traditional courtroom as the sole way the judiciary could resolve disputes. Yet, state supreme courts have the power to create lower cost and more accessible forums that could substantially close the access to justice gap. Cf **Post 099** (reviewing the success of the Civil Resolution Tribunal and asking whether access to justice is primarily a design problem as opposed to a lack of funding to hire lawyers).

- **Licensure.**  Through educational requirements and bar exams, state supreme courts decide the types of professionals who can enter the legal field.  But what if, like the medical field, challenges of cost and quality are best addressed by a tiered credentialing system that enables lower cost but highly specialized professionals to handle what is common, routine, and familiar?  Cf **Post 275** (presenting data on the complex credentialing system that has evolved in the medical field).  Where would the regulatory competency come from? Cf **Post 059** (discussing how ethics rules undermined the workforce necessary for law's failed storefront revolution); **Post 140** (citing work of Rebecca Sandefur, which shows that lawyer-centric regulations compound problems of cost and access).

In our modern society, economic regulation follows a familiar path.  The legislature identifies a set of problems, which it attempts to solve through the passage of legislation.  In particularly complex areas, the legislation includes the creation of executive agencies, which are given the resources to develop specialized expertise that enables the implementation of prudent and effective policy.

Yet, for historical reasons rooted in the **separation of powers** doctrine and the risk of "government domination" of lawyers, "ultimate authority over the legal profession is vested largely in the courts." **Preamble to the Model Rules of Professional Conduct**, ¶¶ 10-11.

It's likely that the tradition-bound norms and inherent conservativism of the legal profession are partially attributable to jurists who expect to preside over a system they painstakingly mastered while in practice. Nothing about the typical career paths of judges sensitizes them to the fact that (a) they are regulators of a profoundly complex economic sector, and (b) if the system of regulation they preside over fails to evolve, ordinary citizens might gradually lose access to fair and impartial justice.

Thus, what might cause them to look up and ask difficult, foundational questions about the functioning of the current system and the necessity of designing a better system that better fits the times?

## Improving the law, regulating the system, or both?



Chief Justice McCormack,
Michigan Supreme Court

This post is partially inspired by a recent essay in the *Yale Law Journal* by **Chief Justice Bridget McCormack** of the Michigan Supreme Court. Justice McCormack acknowledges that many judges believe their role is to "interpret and apply the law" rather than envision ways to improve the system but goes on to argue that "this line of thinking is wrong on every count." Bridget Mary McCormack, "**Staying Off the Sidelines: Judges as Agents of Justice System Reform**," 131 Yale L J 175, 177-78 (2021).

In her Yale essay, Justice McCormack makes a slightly more targeted argument than I am making here, suggesting that judges are uniquely positioned to help improve substantive law, albeit defects in the law and problems with the administration of justice often overlap.  Specifically, Justice McCormick notes the ballooning number of pro se litigants in state courts, which "on a daily basis" puts many judges into direct contact with "the public trying to navigate the legal system." **Id** at 279

Justice McCormack continues:

> This experience provides judges with an informed perspective on what policies are working well and what policies are working *less* well. As direct witnesses to the daily experiences of people navigating legal problems, judges have critical information about what reforms are needed, as well as ideas on how such reforms can be implemented. Indeed, some failed criminal-justice reform efforts arguably failed because they lacked sufficient input from judges; when legislatures and executives act without the perspective of the judiciary, judges often find themselves administering laws with unintended consequences.

**Id** (footnotes omitted).

Justice McCormack is arguing that although many judges are uncomfortable in the realm of evaluating and advocating change in substantive policies, "they are ethically obligated to improve the judicial system over which they preside."  Id at 275.

I strongly concur with Justice McCormack's conclusion.  Yet, she may, in fact, be *understating* the burdens that rest on the shoulders of the judiciary:  in addition to running a court system, deciding difficult questions of law, and working to improve substantive policies enacted by the other two branches of governments, state supreme justices are regulators of a complex and critically important economic sector, which they perform part-time and without the technical expertise of the executive branch or the budgetary authority of the legislature.

Justices fill some of this void by seeking input and guidance for bar associations, which all-too-often offer an insular and self-interested perspective.  Clearly, we need something more and something better.  With sufficient time, study, and resources, I

believe our state supreme courts justices could and would devise a better model of self-regulation.  Further, going down this road is critical to the public's attitudes toward government and the rule of law.

## Are we there yet?

Properly defining a problem is the first and most crucial step in formulating a solution. Thus, with one exception, I am going to stop here and invite readers to reflect upon my analysis and send me your comments and corrections.

The one exception pertains to the first part of the above thought experiment, where I ask the question, "how do the jurists decide if structural changes [to the legal system] are necessary?"  In effect, this is the trigger that requires state supreme courts to acknowledge their role as legal sector regulators.  I want to suggest that the most important measures should focus on cost, accessibility, and fairness of the legal system for ordinary citizens.

Below is a graphic that documents roughly a half-century of decline in the relative size of the PeopleLaw sector.



**Percentage of Total Law Firm Receipts from Individuals**

Sources: Heinz et al, *Urban Lawyers: The New Social Structure of the Bar* at 43 (2005) (citing Census Bureau data for 1972 and 1992); US Census Bureau, Economic Census (2007, 2017). Graphic generated by Legal Evolution PBC.

Although a shrinking percentage of receipts for lawyers serving people is not necessarily a cause of alarm, as it could reflect a subsector that has become more mature and efficient, this trendline is accompanied by a large uptick in the proportion of self-represented litigants. According to the National Conference for State Court, 76% of all cases in state courts have at least one self-represented litigant. See NCSC, **_The Landscape of Civil Litigation in State Courts_** at iv (2015). More recently, the Self-Represented Litigation Network estimated that 60 -100% of family, housing, and consumer matters involve at least one pro se party. See "**About SLRN — 2020 Report**."

What is likely happening is a growing mismatch between what individuals can afford and the cost of using a lawyer to solve legal problems through the court system. Thus, individuals are left with two options: navigating the legal system on their own, or forgoing their rights because the combined cost and complexity are just too daunting.

This latter option would likely show up in a gradual decline in the number of civil filings. See, e.g., **Civil Filings in Illinois State Courts, 1997-2020** (showing more than 50% since 2010 despite state adding nearly a million residents).

My thought experiment suggests the likelihood of a "**boiling frog**" dynamic that makes it difficult to grasp the magnitude of changes that occur gradually over time.  To my mind, we have reached the point where we need significant structural changes in how the legal sector is regulated.  And that can only happen if state supreme court justices are willing to utilize the power and authority that only they possess.

---

**Update:**  Professor **Michael Madison** of Pitt Law, who is very attuned to the evolution of the legal services market, remarked that this essay "understates the complexity of how legal systems are regulated. By a lot." See **Madison Tweet**, Feb 8, 2022.  My lead graphic usually carries the title "A Simplified Model … " of the Regulation of the US Legal Sector. After reading Prof. Madison's comment, I updated the graphic. The simplified model conveys my core point that state supreme courts are the center of gravity/repository of power.

## Legal Evolution



Copyright © 2023, Legal Evolution PBC All Rights Reserved.

EX 4

STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL
GEORGE S. CARDONA, No. 135439
CHIEF TRIAL COUNSEL
CHRISTOPHER G. JAGARD, No. 191147
DEPUTY CHIEF TRIAL COUNSEL
KELLY McNAMARA, No. 214997
ASSISTANT CHIEF TRIAL COUNSEL
CINDY CHAN, No. 247495
SUPERVISING ATTORNEY
845 South Figueroa Street
Los Angeles, California 90017-2515
Telephone: (213) 765-1292

**Public Matter**

**FILED**

08/12/2022

**STATE BAR COURT**
**CLERK'S OFFICE**
**LOS ANGELES**

STATE BAR COURT

HEARING DEPARTMENT - LOS ANGELES

|                              |   |                                         |
|------------------------------|---|-----------------------------------------|
| In the Matter of:            | ) | Case No.  SBC-22-O-30348-DGS            |
|                              | ) |                                         |
| LENORE LUANN ALBERT,         | ) | **SECOND AMENDED NOTICE OF**            |
| State Bar No. 210876,        | ) | **DISCIPLINARY CHARGES**                |
|                              | ) |                                         |
|                              | ) | (OCTC Case No. 21-O-05360)              |
| An Attorney of the State Bar.| ) |                                         |

## <u>NOTICE - FAILURE TO RESPOND!</u>

**IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT THE STATE BAR COURT TRIAL:**

**(1) YOUR DEFAULT WILL BE ENTERED;**

**(2) YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU WILL NOT BE PERMITTED TO PRACTICE LAW;**

**(3) YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION AND THE DEFAULT IS SET ASIDE, AND;**

**(4) YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE. SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN ORDER RECOMMENDING YOUR DISBARMENT AND MAY RECOMMEND THE IMPOSITION  OF MONETARY SANCTIONS WITHOUT FURTHER HEARING OR PROCEEDING.  (SEE RULES PROC. OF STATE BAR, RULES 5.80 ET SEQ. & 5.137.)**

1184-1

The State Bar of California alleges:

<u>JURISDICTION</u>

1.   Lenore LuAnn Albert ("respondent") was admitted to the practice of law in the State of California on December 5, 2000.  Respondent was a licensed attorney at all times pertinent to these charges, and is currently a licensed attorney of the State Bar of California.

<u>COUNT ONE</u>
Rules of Professional Conduct, rule 3.4(f)
[Knowingly Disobeying Rules of a Tribunal]

2.   Respondent was admitted to practice before the United States District Court, Eastern District of California on or about December 17, 2014.  Pursuant to the local rules of the Eastern District of California ("the Court"), namely Local Rules 180 and 184, admission to and continuing membership in the bar of the Court is limited to attorneys who are active members in good standing of the State Bar of California and attorneys admitted to practice before the Court must promptly notify the Court of any change in status in any other jurisdiction that would make the attorney ineligible for membership in the bar of the Court or ineligible to practice before the Court.

3.   Respondent failed to promptly notify the Court of disciplinary action imposed by the California Supreme Court with regards to State Bar Case Nos. 15-O-11311, 15-O-11708, and 15-O-12260 [consolidated] and State Bar Case Nos. 16-O-12958 and 16-O-10548 [consolidated], which resulted in her suspension, effective June 2018 and August 2019, respectively, and thus made her ineligible to practice before the Court at least as early as June 2018, and a failure to do so was in violation of the rules of the United States District Court for the Eastern District of California, namely Local Rules 180 and 184, which were effective at all relevant times to date. Respondent thereby knowingly failed to comply with the local rules of the United States District Court for the Eastern District of California in willful violation of the Rules of Professional Conduct, rule 3.4(f).

1184-2

COUNT TWO
Business and Professions Code section 6068(a)
[Failure to Comply With Laws – Unauthorized Practice of Law]

4.    Respondent was admitted to practice before the United States District Court, Eastern District of California on or about December 17, 2014.  Pursuant to the local rules of the Eastern District of California ("the Court"), namely Local Rules 180 and 184, admission to and continuing membership in the bar of the Court is limited to attorneys who are active members in good standing of the State Bar of California and attorneys admitted to practice before the Court must promptly notify the Court of any change in status in any other jurisdiction that would make the attorney ineligible for membership in the bar of the Court or ineligible to practice before the Court.

5.    Respondent was actually suspended and ineligible to practice law between on or about June 28, 2018 and April 21, 2021, as a result of disciplinary action imposed by the California Supreme Court with regards to State Bar Case Nos. 15-O-11311, 15-O-11708, and 15-O-12260 [consolidated] and State Bar Case Nos. 16-O-12958 and 16-O-10548 [consolidated], and thus she was ineligible to practice in California as well as ineligible to practice before the Court during said time period.

6.    Between in or around August 2019 and December 2019, respondent held herself out as entitled to practice law and actually practiced law when respondent was not an active member of the State Bar by committing the following acts in violation of Business and Professions Code sections 6125 and 6126, and thereby willfully violated Business and Professions Code section 6068(a):

(a)  Providing legal services and rendering legal advice to a client, Brooke Noble, a resident of California, regarding the matter *Marsha Kilgore v. Wells Fargo Bank*, Case No. 1:12-CV-00899 ("*Kilgore v. Wells Fargo*"), pending before the United States District Court, Eastern District of California, wherein the matter involved allegations of various causes of actions including fraud and deceit in violation of California Civil Code § 1572 and forgery in violation of California Penal Code § 470;

(b) Preparing and filing a Motion to Vacate the Judgment entered in *Kilgore v. Wells Fargo* ("Motion to Vacate") on behalf of Ms. Noble on or about August 18, 2019 and related

1184-3

documents on which she identified herself, along with attorney Leslie Westmoreland, as

"Attorneys for Plaintiff, BROOKE NOBLE;"

(c) Preparing and filing a reply brief in support of the Motion to Vacate in *Kilgore v.*
*Wells Fargo* on behalf of Ms. Noble on or about September 16, 2019 and related documents on
which she identified herself, along with attorney Leslie Westmoreland, as "Attorneys for
Plaintiff, BROOKE NOBLE;"

(d) Preparing and filing a Motion to Substitute a Party in *Kilgore v. Wells Fargo* on
behalf of Ms. Noble on or about October 28, 2019 and related documents on which she identified
herself, along with attorney Leslie Westmoreland, as "Attorneys for Plaintiff, BROOKE
NOBLE;"

(e) Preparing and filing a reply brief and supplemental declaration in *Kilgore v. Wells*
*Fargo* on behalf of Ms. Noble on or about November 12, 2019 on which she identified herself,
along with attorney Leslie Westmoreland, as "Attorneys for Plaintiff, BROOKE NOBLE."

<u>COUNT THREE</u>
Rules of Professional Conduct, rule 5.5(a)
[Unauthorized Practice of Law in Other Jurisdiction]

7.   Respondent was admitted to practice before the United States District Court, Eastern
District of California on or about December 17, 2014.  Pursuant to the local rules of the Eastern
District of California ("the Court"), namely Local Rules 180 and 184, admission to and
continuing membership in the bar of the Court is limited to attorneys who are active members in
good standing of the State Bar of California and attorneys admitted to practice before the Court
must promptly notify the Court of any change in status in any other jurisdiction that would make
the attorney ineligible for membership in the bar of the Court or ineligible to practice before the
Court.

8.   Respondent was actually suspended and ineligible to practice law between on or
about June 28, 2018 and April 21, 2021, as a result of disciplinary action imposed by the
California Supreme Court with regards to State Bar Case Nos. 15-O-11311, 15-O-11708, and 15-
O-12260 [consolidated] and State Bar Case Nos. 16-O-12958 and 16-O-10548 [consolidated],

1184-4

1   and thus she was ineligible to practice before the Court during said time period in accordance

2   with the Court's local rules.

3       9.   Between in or around August 2019 and December 2019, respondent practiced law

4   before the United States District Court, Eastern District of California by filing various documents

5   on behalf of her client, Brooke Noble, to vacate the judgment entered in *Marsha Kilgore v. Wells*

6   *Fargo Bank*, Case No. 1:12-CV-00899, including the documents identified in Paragraph 6 above

7   and incorporated herein as though fully set forth herein, and identifying herself, along with

8   attorney Leslie Westmoreland, as "Attorneys for Plaintiff, BROOKE NOBLE," on said

9   documents, when respondent was not entitled to practice law before the Court at the time of the

10  filings as a result of her suspension, in willful violation of the Rules of Professional Conduct,

11  rule 5.5(b).

12

13                    COUNT FOUR
                Business and Professions Code section 6068(a)
14          [Failure to Comply With Laws – Unauthorized Practice of Law]

15      10. Respondent was admitted to practice before the United States District Court, Eastern

16  District of California on or about December 17, 2014.  Pursuant to the local rules of the Eastern

17  District of California ("the Court"), namely Local Rules 180 and 184, admission to and

18  continuing membership in the bar of the Court is limited to attorneys who are active members in

19  good standing of the State Bar of California and attorneys admitted to practice before the Court

20  must promptly notify the Court of any change in status in any other jurisdiction that would make

21  the attorney ineligible for membership in the bar of the Court or ineligible to practice before the

22  Court.

23      11. Respondent was actually suspended and ineligible to practice law between on or

24  about June 28, 2018 and April 21, 2021, as a result of disciplinary action imposed by the

25  California Supreme Court with regards to State Bar Case Nos. 15-O-11311, 15-O-11708, and 15-

26  O-12260 [consolidated] and State Bar Case Nos. 16-O-12958 and 16-O-10548 [consolidated],

27  and thus she was ineligible to practice in California as well as ineligible to practice before the

28  Court during said time period.

1184-5

12. In or around February 2021, respondent held herself out as entitled to practice law and actually practiced law when respondent was not an active member of the State Bar by committing the following acts in violation of Business and Professions Code sections 6125 and 6126, and thereby willfully violated Business and Professions Code section 6068(a):

(a) Providing legal services and rendering legal advice to defendants Pritam Grewal, Manjeet K. Grewal, and Dev S. Grewal (collecitvely "the Grewals") regarding the matter *George Avalos v. Felipe Gonzalez, et al.*, Case No. 1:20-cv-01578 ("*Avalos v. Gonzalez*"), pending before the United States District Court, Eastern District of California, in which Mr. Avalos alleged violations of the American with Disabilities Act (42 U.S.C. §12181 et seq.) and Unruh Civil Rights Act (CA Civil Code § 51 et seq.) with regards to property located in California that was owned by the Grewals;

(b) Drafting the attorney-client fee agreement regarding the representation of the Grewals in *Avalos v. Gonzalez* while she was actually suspended and ineligible to practice; and

(c) Preparing and filing an answer on behalf of the Grewals on February 19, 2021 in response to the complaint filed in *Avalos v. Gonzalez* and identifying herself, along with attorney Leslie Westmoreland, as "Attorneys for Defendants," on the document.

COUNT FIVE
Rules of Professional Conduct, rule 5.5(a)
[Unauthorized Practice of Law in Other Jurisdiction]

13. Respondent was admitted to practice before the United States District Court, Eastern District of California on or about December 17, 2014.  Pursuant to the local rules of the Eastern District of California ("the Court"), namely Local Rules 180 and 184, admission to and continuing membership in the bar of the Court is limited to attorneys who are active members in good standing of the State Bar of California and attorneys admitted to practice before the Court must promptly notify the Court of any change in status in any other jurisdiction that would make the attorney ineligible for membership in the bar of the Court or ineligible to practice before the Court.

1184-6

14. Respondent was actually suspended and ineligible to practice law between on or about June 28, 2018 and April 21, 2021, as a result of disciplinary action imposed by the California Supreme Court with regards to State Bar Case Nos. 15-O-11311, 15-O-11708, and 15-O-12260 [consolidated] and State Bar Case Nos. 16-O-12958 and 16-O-10548 [consolidated], and thus she was ineligible to practice before the Court during said time period in accordance with the Court's local rules.

15. On or about February 19, 2021, respondent practiced law before the United States District Court, Eastern District of California by filing an answer on behalf of the Grewals in response to the complaint filed in *George Avalos v. Felipe Gonzalez, et al.*, Case No. 1:20-cv-01578 and identifying herself, along with attorney Leslie Westmoreland, as "Attorneys for Defendants," on the document, when respondent was not entitled to practice law before the Court at the time of the filing as a result of her suspension, in willful violation of the Rules of Professional Conduct, rule 5.5(b).

<u>COUNT SIX</u>
Business and Professions Code section 6106
[Knowingly Engaging in the Unauthorized Practice of Law]

16. Respondent was admitted to practice before the United States District Court, Eastern District of California on or about December 17, 2014.  Pursuant to the local rules of the Eastern District of California ("the Court"), namely Local Rules 180 and 184, admission to and continuing membership in the bar of the Court is limited to attorneys who are active members in good standing of the State Bar of California and attorneys admitted to practice before the Court must promptly notify the Court of any change in status in any other jurisdiction that would make the attorney ineligible for membership in the bar of the Court or ineligible to practice before the Court.

17. Respondent was actually suspended and ineligible to practice law between on or about June 28, 2018 and April 21, 2021, as a result of disciplinary action imposed by the California Supreme Court with regards to State Bar Case Nos. 15-O-11311, 15-O-11708, and 15-O-12260 [consolidated] and State Bar Case Nos. 16-O-12958 and 16-O-10548 [consolidated],

1184-7

1  and thus she was ineligible to practice in California as well as ineligible to practice before the
2  Court during said time period.

3      18. In or around February 2021, respondent held herself out as entitled to practice law
4  and actually practiced law when respondent knew that she was not an active member of the State
5  Bar and thus not eligible to practice law in either California or before the United States District
6  Court, Eastern District of California, by committing the following acts, and thereby committed
7  acts involving moral turpitude, dishonesty or corruption in willful violation of Business and
8  Professions Code section 6106:

9      (a) Providing legal services and rendering legal advice to defendants Pritam Grewal,
10 Manjeet K. Grewal, and Dev S. Grewal (collecitvely "the Grewals") regarding the matter *George*
11 *Avalos v. Felipe Gonzalez, et al.*, Case No. 1:20-cv-01578 ("*Avalos v. Gonzalez*"), pending
12 before the United States District Court, Eastern District of California, in which Mr. Avalos
13 alleged violations of the American with Disabilities Act (42 U.S.C. §12181 et seq.) and Unruh
14 Civil Rights Act (CA Civil Code § 51 et seq.) with regards to property located in California that
15 was owned by the Grewals;

16     (b) Drafting the attorney-client fee agreement regarding the representation of the
17 Grewals in *Avalos v. Gonzalez* while she was actually suspended and ineligible to practice; and

18     (c) Preparing and filing an answer on behalf of the Grewals on February 19, 2021 in
19 response to the complaint filed in *Avalos v. Gonzalez* and identifying herself, along with attorney
20 Leslie Westmoreland, as "Attorneys for Defendants," on the document.

21     19. A violation of section 6106 may result from intentional conduct or grossly negligent
22 conduct.  Respondent is charged with knowingly engaging in the unauthorized practice of law.
23 However, should the evidence at trial demonstrate that respondent held herself out as entitled to
24 practice law and actually practiced law when respondent was grossly negligent in not knowing
25 that she was not eligible to practice law in either California or before the United States District
26 Court, Eastern District of California, respondent must still be found culpable of violating section
27 6106 because engaging in the unauthorized practice of law through gross negligence is a lesser
28 included offense of knowingly engaging in the unauthorized practice of law.

1184-8

## NOTICE - INACTIVE ENROLLMENT!

**YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN INACTIVE ATTORNEY OF THE STATE BAR.   YOUR INACTIVE ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE RECOMMENDED BY THE COURT.**

## NOTICE - COST ASSESSMENT!

**IN THE EVENT THESE PROCEDURES RESULT IN PUBLIC DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING AND REVIEW OF THIS MATTER PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6086.10.**

## NOTICE – MONETARY SANCTION!

**IN THE EVENT THIS MATTER RESULTS IN ACTUAL SUSPENSION, DISBARMENT, OR RESIGNATION WITH CHARGES PENDING, YOU MAY BE SUBJECT TO THE PAYMENT OF A MONETARY SANCTION NOT TO EXCEED $5,000 FOR EACH VIOLATION, TO A MAXIMUM OF $50,000 PER DISCIPLINARY ORDER, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6086.13. SEE RULE 5.137, RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

Respectfully submitted,

THE STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL

DATED:  August 12, 2022          By:

Cindy Chan
Supervising Attorney

1184-9

# DECLARATION OF SERVICE

**CASE NUMBER(s): SBC-22-O-30348-DGS (OCTC Case No. 21-O-05360)**

I, the undersigned, am over the age of eighteen (18) years and not a party to the within action, whose business address and place of employment is the State Bar of California, 845 South Figueroa Street, Los Angeles, California 90017, declare that:

- on the date shown below, I caused to be served a true copy of the within document described as follows:

## SECOND AMENDED NOTICE OF DISCIPLINARY CHARGES

☐ **By U.S. First-Class Mail:  (CCP §§ 1013 and 1013(a))**

☒ **By U.S. Certified Mail:  (CCP §§ 1013 and 1013(a))**
- in accordance with the practice of the State Bar of California for collection and processing of mail, I deposited or placed for collection and mailing in the City and County of Los Angeles.

☐ **By Overnight Delivery:  (CCP §§ 1013(c) and 1013(d))**
- I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for overnight delivery by the United Parcel Service ('UPS').

☐ **By Fax Transmission:  (CCP §§ 1013(e) and 1013(f))**
Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed herein below.  No error was  reported by the fax machine that I used.  The original record of the fax transmission is retained on file and available upon request.

☒ **By Electronic Service:  (CCP § 1010.6 and Rules of Proc. of State Bar, rule 5.26.2)**
Based on rule 5.26.2, a court order, or an agreement of the parties to accept service by electronic transmission, I caused the above-named document(s) to be transmitted by electronic means to the person(s) at the electronic address(es) listed below.  If there is a signature on the document(s), I am the signer of the document(s), I am the agent of, or I am serving the document(s) at the direction of, the signer of the document(s). I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ *(for U.S. First-Class Mail)*  in a sealed envelope placed for collection and mailing at Los Angeles, addressed to:  *(see below)*

☒ *(for Certified Mail)*  in a sealed envelope placed for collection and mailing as certified mail, return receipt requested,
Article                                            at Los Angeles, addressed to:  *(see below)*
No.:      **9414 7266 9904 2171 3939 86**

☐ *(for Overnight Delivery)*  together with a copy of this declaration, in an envelope, or package designated by UPS,
Tracking                                       addressed to:  *(see below)*
No.:

| Person Served | Business Address | Fax Number | Courtesy Copy to: |
|---|---|---|---|
| **LENORE LUANN ALBERT** | **Law Offices of Lenore Albert**<br>**1968 S. Coast Hwy #3960**<br>**Laguna Beach, CA  92651-3681** | **Electronic Address** | **lenalbert@interactivecounsel.com** |

☐ **via inter-office mail regularly processed and maintained by the State Bar of California addressed to:**

**N/A**

I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for mailing with the United States Postal Service, and overnight delivery by the United Parcel Service ('UPS').  In the ordinary course of the State Bar of California's practice, correspondence collected and processed by the State Bar of California would be deposited with the United States Postal Service that same day, and for overnight delivery, deposited with delivery fees paid or provided for, with UPS that same day.

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after date of deposit for mailing contained in the affidavit.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

DATED:   August 12, 2022                           SIGNED:  _____

MARICELA GUERRERO
Declarant

EX 5

1    STATE BAR OF CALIFORNIA
     OFFICE OF CHIEF TRIAL COUNSEL
2    GEORGE S. CARDONA, No. 135439
     CHIEF TRIAL COUNSEL
3    CHRISTOPHER G. JAGARD, No. 191147
     DEPUTY CHIEF TRIAL COUNSEL
4    KEVIN TAYLOR, No. 151715
     ASSISTANT CHIEF TRIAL COUNSEL
5    CINDY CHAN, No. 247495
     SUPERVISING ATTORNEY
6    CHRISTINA WANG, No. 300286
     DEPUTY TRIAL COUNSEL
7    845 South Figueroa Street
     Los Angeles, California 90017-2515
8    Telephone: (213) 765-1292

**FILED** *mk*

1/6/2023

**STATE BAR COURT**

**CLERK'S OFFICE**

**LOS ANGELES**

9                    STATE BAR COURT

10         HEARING DEPARTMENT - LOS ANGELES

11

12   In the Matter of:                    )    Case No.  SBC-22-O-30348
                                          )
13   LENORE LUANN ALBERT,                 )    (OCTC Case No. 21-O-05360)
     State Bar No. 210876,                )
14                                        )    **STATE BAR'S CLOSING BRIEF**
                                          )
15   An Attorney of the State Bar.        )

16          The State Bar of California, Office of Chief Trial Counsel ("State Bar"), by and through

17   Supervising Attorney Cindy Chan, hereby submits its Closing Argument Brief following a four-

18   day trial that took place on December 13, 14, 16, and 21, 2022.

19

20                              Respectfully submitted,

21                              THE STATE BAR OF CALIFORNIA
                                OFFICE OF CHIEF TRIAL COUNSEL
22

23   DATED:  January 6, 2023        By: _____
                                        Cindy Chan
24                                      Supervising Attorney

25

26

27

28

                                          -1-

1

**TABLE OF CONTENTS**

2

3    I.    INTRODUCTION ................................................................. 1

4    II.   EVIDENCE AND TESTIMONY SUPPORTING CULPABILITY ................................. 1

5    III.  COUNT ONE – FAILURE TO COMPLY WITH EASTERN DISTRICT OF
           CALIFORNIA, LOCAL RULE 184 ................................. 5

6

7    IV.   COUNTS TWO AND THREE – UPL IN THE *KILGORE* MATTER ............................. 6

     V.    COUNTS FOUR, FIVE, SIX – KNOWINGLY ENGAGING IN UPL IN THE *AVALOS*
8          *V. GONZALEZ* MATTER ................................. 9

9    VI.   AGGRAVATION ................................................................. 12

10         A.    Prior Record of Discipline (Std. 1.5(a)) ........................... 12

11         B.    Multiple Acts of Wrongdoing (Std. 1.5(b)) ........................ 13

12         C.    Indifference/Lack of Insight (Std. 1.5(k).) ........................ 13

13         D.    Lack of Candor to the State Bar (Std. 1.5(l)) ..................... 14

14   VII.  MITIGATION ................................................................. 14

15         A.    No Mitigation for Good Faith Belief ........................... 14

16         B.    Respondent's Good Character ........................... 16

17         C.    Respondent's Pro Bono/Community Service ........................ 18

18   VIII. DISBARMENT IS WARRANTED TO PROTECT THE PUBLIC, THE COURTS, AND
           THE LEGAL PROFESSION ................................. 19

19

     IX.   MONETARY SANCTIONS ................................................................. 20

20

     X.    CONCLUSION ................................................................. 20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3 *Barnum v. State Bar* (1990) 52 Cal.3d 104..............................................................13, 20

4 *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal. 4th 119 .................7

5 *Blair v. State Bar* (1989) 49 Cal.3d 762 .....................................................................14, 18

6 *Bluestein v. State Bar* (1974) 13 Cal.3d 162 ....................................................................9

7 *In re Naney* (1990) 51 Cal.3d 186 .............................................................................9

8 *In re Utz* (1989) 48 Cal.3d 468 ................................................................................10

9 *In the Matter of Aquino* (1989) 49 Cal.3d 1122 ..............................................................17

10 *In the Matter of Bach* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 631 ...............................13

11 *In the Matter of Brown* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 309..............................17

12 *In the Matter of Carver* (Review Dept. 2016) 5 Cal. State Bar Ct. Rptr. 427 .......................11, 20

13 *In the Matter of Chesnut* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 166 ...........................18

14 *In the Matter of Davis* (Review Dept. 2003) 4 Cal. State Bar Ct. Rptr. 576, .............................16

15 *In the Matter of Dixon* (Review Dept. 1999) 4 Cal. State Bar Ct. Rptr. 23................................14

16 *In the Matter of Dyson* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 280 .............................18

17 *In the Matter of Gadda* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 416.............................13

18 *In the Matter of Heiner* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 301 ..............................7

19 *In the Matter of Hunter* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 63 ..............................20

20 *In the Matter of Mason* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 639.............................10

21 *In the Matter of McKiernan* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 420 .......................14

22 *In the Matter of Pasyanos* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 746 .......................5, 6

23 *In the Matter of Respondent G* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 181 ...................7

24 *In the Matter of Rose* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 646................................14

25 *In the Matter of Rubin* (Review Dept. 2021) 5 Cal. State Bar Ct. Rptr. 797 ..............................16

26 *In the Matter of Shalant* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 829 ...........................18

27 *In the Matter of Song* (Review Dept. 2013) 5 Cal. State Bar Ct. Rptr. 273 ..............................17

28 *In the Matter of Wyrick* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 83 ..............................11

*King v. State Bar* (1990) 52 Cal.3d 307 ............................................................................ 6

*Palomo v. State Bar* (1984) 36 Cal.3d 785 ...................................................................... 19

*Rodgers v. State Bar* (1989) 48 Cal.3d 300 .................................................................... 13

**Rules**

Rule 5.137(A) .................................................................................................................. 20

Rules of Professional Conduct, rule 1.0.1(f) ...................................................................... 5

Rules of Professional Conduct, rule 3.4(f) .......................................................................... 5

Rules of Professional Conduct, rule 5.3.1(b) ...................................................................... 8

## I.      INTRODUCTION

Respondent is charged in her third disciplinary matter with multiple acts of the unauthorized practice of law ("UPL") in two separate client matters while she was suspended and failing to report her two prior disciplines to the Eastern District of California in violation of their local rules.  Where both of respondent's prior disciplines involved failure to obey court orders, her current misconduct is yet another example of her disrespect of court orders and rules.  In viewing her misconduct across all three disciplinary matters, at the core of it all lies a disturbing pattern of self-serving interpretations of the law while ignoring their plain language.  Where respondent's mitigation is not compelling and is outweighed by various aggravating factors, disbarment is the only appropriate sanction to prevent further harm to the public, the court, and the legal profession.

## II.      EVIDENCE AND TESTIMONY SUPPORTING CULPABILITY

On December 17, 2014, respondent was admitted to the United States District Court, Eastern District of California ("Eastern District") under the court's Local Rule 180 subsection (a), which provides that "[a]dmission to and continuing membership in the Bar of this Court are limited to attorneys who are active members in good standing of the State Bar of California.[1]"  Respondent testified that she recalled submission of certificates of good standing from the California State Bar was a prerequisite to her admission.

Between February 14, 2018, and March 16, 2018, and June 28, 2018, and April 21, 2021, respondent was suspended as a result of two prior disciplines ordering actual suspension.  (Exs. 2, 6, 7.)  Pursuant to the Eastern District's Local Rule 184:

> If an attorney's status so changes with respect to eligibility, the attorney shall **forthwith be suspended from practice before this Court without any order of Court until becoming eligible to practice**. Upon written motion to the Chief Judge, an attorney shall be afforded an opportunity to show cause why the attorney should not be suspended or disbarred from practice in this Court. (Emphasis.)

Thus, pursuant to Local Rule 184, respondent was suspended from practice before the Eastern District by virtue of her California suspension during the same time periods she was

---

[1] Eastern District of CA Local Rule 180 has been effective at all relevant times herein.  (Exhibits 8, 9, 10, 60.)

ineligible to practice in California where her admission to the Eastern District was premised upon her good standing in California.  (Judge Ishii Testimony.)

On April 4, 2018, the court in the matter *Aleksander Mackovski et al. v. City of Garden Grove et al.*, Case No. 8:11-cv-01538, pending before the Central District of California, disqualified her from representing the plaintiff in the matter due to her California suspension, citing to the Central District's Local Rule 83-3.3 as grounds for suspension where said rule provides that "[a]ny attorney previously admitted to the Bar of this Court who no longer is enrolled as an active member of the Bar, Supreme Court, or other governing authority of any State, territory or possession, or the District of Columbia, shall not practice before this Court."  (Ex. 59.)

On April 17, 2018, respondent filed a "Notice of Temporary Disqualification" before the United States Court of Appeals for the Ninth Circuit with regards to a pending appeal in which she was representing the plaintiff, Brooke Noble, in the matter *Brooke Noble v.  Wells Fargo Bank, N.A.* before the (hereinafter "Noble Appeal").  (Ex. 16.)  Her notice did not inform the court of her discipline but rather stated the following:

> an employee at the California State Bar wrongfully and unlawfully suspended her license by back dating the suspension to February 14, 2018. The State Bar court has refused to reinstate the license to date although it says it was a 30 day suspension. Make no mistake this was an unlawful act by the employee of the State Bar and is in furtherance of their cover up in assisting sovereign citizen extremists targeting consumer lawyers with paper terrorism in the form of massive amounts of State Bar complaints. Nevertheless, until a court is willing to rule on the unlawfulness, Brooke Noble will have to proceed in pro per until such time this political battle with the State Bar is won by Ms. Albert.

On June 22, 2018, respondent filed a "Notice of Appearance of Counsel for Brooke Noble" before the Ninth Circuit in the Noble Appeal.  (Ex. 19.)

On July 12, 2018, the Ninth Circuit initiated reciprocal discipline proceedings against respondent after it learned on or about June 28, 2018, that respondent was suspended in California. (Ex. 52.)  On December 19, 2018, following a hearing in the matter, the Ninth Circuit ordered respondent suspended from the practice of law in the Ninth Circuit with the limited exception that respondent "remain counsel of record for Brooke Noble in the related pending appeals, *Noble v. Wells Fargo*, Nos. 16-16362, 17-17294, and respond to any developments in those cases."   (Ex.

1   20.)  The Ninth Circuit issued a Memorandum of Decision on the Noble Appeal on May 29, 2019,

2   and the matter was concluded.  (Ex. 16.)

3        On August 18, 2019, while she was still suspended in California as a result of her first

4   discipline, respondent filed a Motion to Vacate dismissal and related documents on behalf of

5   Brooke Noble in the matter *Marsha Kilgore v. Wells Fargo Bank, N.A., et al.* Case No. 1:12-cv-

6   00899 before the Eastern District of California ("*Kilgore* matter").  (Exs. 22, 23, 24, 25.)

7   Respondent admitted to preparing and filing these documents with her electronic case filing

8   ("ECF") account and identifying herself as "Attorney" for Brooke Noble in all of these pleadings.

9        On August 28, 2019, while respondent was still serving her suspension from the first

10   discipline, respondent's second discipline became effective.  (Ex. 2.)

11        On September 9, 2019, Wells Fargo filed an opposition to the Motion to Vacate filed in the

12   *Kilgore* matter.  (Ex. 26.)  In addition to addressing the substantive grounds of the motion, Wells

13   Fargo also raised the issue of respondent's ability to practice before the court as a result of her

14   California suspension and specifically cited to the Eastern District's Local Rule 184.

15        On September 16, 2019, respondent filed a reply brief in response to Wells Fargo's

16   opposition, wherein she addressed their argument concerning her eligibility to practice, stating that

17   Wells Fargo was "misconstruing the Local Rule and misinformed."  (Ex. 27 at 27-018.)

18   Respondent admitted to preparing and filing the reply brief with her ECF account and identifying

19   herself as "Attorney" for Brooke Noble on the document.

20        On October 28, 2019, respondent filed a Motion to Substitute Party in the *Kilgore* matter.

21   (Ex. 29.)   Respondent admitted to preparing and filing the document with her ECF account and

22   identifying herself as "Attorney" for Brooke Noble on the document.

23        On November 12, 2019, respondent filed additional documents in support of the Motion to

24   Vacate in the *Kilgore* matter.  (Ex. 30.)  Respondent admitted to preparing and filing the documents

25   with her ECF account and identifying herself as "Attorney" for Brooke Noble on the documents.

26        On December 23, 2019, the court in the *Kilgore* matter issued an Order denying the Motion

27   to Vacate.  The court in its order indicated its awareness of respondent's California suspension but

28   declined to address the issue, stating "For ease of resolution, the court will address the merits of

the fraud on the court argument." (Ex. 31 at 31-002.) The court's denial of the Motion to Vacate effectively concluded the proceedings. Judge Anthony Ishii, the presiding judge on the matter, testified at the disciplinary hearing that Local Rule 184 provides for "automatic" suspension as a result of ineligibility to practice in California and that it was not necessary for the court to issue an order for her suspension.

On February 19, 2021, in a separate client matter, respondent, while still suspended, filed an answer on behalf of Pritam Grewal, Manjeet K. Grewal, and Dev. S. Grewal in response to the complaint filed against said defendants in the matter *George Avalos v. Felipe Gonzalez, et al.*, Case No. 1:20-cv-01578, before the Eastern District of California. (Ex. 33.) Respondent admitted to preparing and filing the Answer with her ECF account and identifying herself as "Attorney" for the Grewal defendants.

On February 22, 2021, the opposing counsel's paralegal emailed respondent with a settlement offer. (Ex. 62 at 62-013.) Respondent's co-counsel on the matter, Leslie Westmoreland, Esq., was not copied on this email. On February 25, in response to said settlement offer, respondent replied: "I do not have settlement authority yet from my clients. When I hear back from them, I will let you know." (62-011.) Mr. Westmoreland was not copied on this email.

On March 2, 2021, respondent discovered that her status in the Eastern District of California had been changed to "inactive." Roxanne Gonzalez, Operations Supervisor at the Eastern District, testified that she changed respondent's status to "inactive" shortly after discovering that she was suspended in California sometime around February 12, 2021. (Ex. 40 at 40-016.)

On March 3, 2021, respondent submitted a letter to the court in the *Avalos v. Gonzalez* matter requesting permission to represent the Grewal defendants in light of her recent status change. (Ex. 35.) That same day, respondent also emailed opposing counsel in the matter to notify them that she had been placed on "inactive" status and to direct all communications to Mr. Westmoreland with copy to respondent. (Ex. 62 at 62-007.) Up until this point, all of the parties' communications regarding the matter had been directed to respondent.

On March 5, 2021, the court in the *Avalos v. Gonzalez* matter issued an order requiring respondent to show cause as to why she should be permitted to represent the defendants in the matter in light of her California suspension.  (Ex. 36.)

On April 21, 2021, respondent was reinstated back to active status in California.

On May 12, 2021, the court in the *Avalos v. Gonzalez* matter discharged the OSC in light of respondent's reinstatement in California.  The court did not address whether her practice while suspended constituted UPL, but instead directed her to complete the process for readmission to and continuing membership in the Eastern District pursuant to Local Rule 180(a) and  reminded of her obligation pursuant to Local Rule 184 to promptly notify the court of any disciplinary action or any change in status in any jurisdiction that would make her ineligible for membership in the Eastern District or ineligible to practice before the court. (Ex. 41.)

## III.    COUNT ONE – FAILURE TO COMPLY WITH EASTERN DISTRICT OF CALIFORNIA, LOCAL RULE 184

Respondent admitted that she did not report *either* of her disciplines to the Eastern District as required by the court's Local Rule 184 subsection (b), which provides, in relevant part:

> **"(b) Notice of Change in Status**. An attorney who is a member of the Bar of this Court or who has been permitted to practice in this Court shall promptly notify the Court of any disciplinary action or any change in status in any jurisdiction that would make the attorney ineligible for membership in the Bar of this Court or ineligible to practice in this Court."

While respondent's failure to comply with the local rule is undisputed, respondent asserts that her failure to comply was not done "knowingly." (Rules of Professional Conduct, rule 3.4(f).) The term "knowingly" means "actual knowledge of the fact in question."  (Rules of Professional Conduct, rule 1.0.1(f).)  "A person's knowledge may be inferred from the circumstances."  (*Id.*) For example, in *In the Matter of Pasyanos* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 746, the attorney was charged with failing to update her moral character application in order to disclose a 2001 misdemeanor complaint filed against her in violation of former rule 1-200(A), which prohibits a member from knowingly making a false statement regarding a material fact or knowingly omitting a material fact in connection with an application for admission to the State Bar.  The Review Department agreed with the hearing judge's finding of culpability, finding that

1  the knowledge requirement was satisfied where "the attorney was well aware that these charges

2  were the type to be disclosed timely to the CBE, since she had disclosed other, similar information

3  concerning her contacts with Yardley on her application to the CBE." (*Id*. at 753 citing *King v.*

4  *State Bar* (1990) 52 Cal.3d 307, 313-314 [establishing the level of knowledge for a violation of

5  the Rules of Professional Conduct].)

6        There is ample evidence to support the conclusion that respondent knew that she should

7  have reported her discipline to the Eastern District where she had recently undergone reciprocal

8  discipline proceedings before the Ninth Circuit and where the Central District disqualified her

9  from representing a client on a matter as a result of her California suspension.  Indeed, respondent

10  was notified of Local Rule 184 and the reporting requirements at least as early as September 9,

11  2019, by opposing counsel in a brief filed in the *Kilgore* matter.  Respondent testified that she

12  reviewed this brief and prepared/filed the response thereto.  Respondent's testimony that she did

13  not in fact review the local rule at the time of the filing is belied by her statement in the reply brief

14  itself that the opposing party was "misconstruing the Local Rule and misinformed."  (Ex. 27.)

15  Given the substantial amount of time she allegedly devoted to researching her eligibility to practice

16  in the Eastern District while suspended in California, her ignorance of the very rule that clearly

17  spells out her eligibility is not credible.  Thus, there is clear and convincing evidence that

18  respondent knowingly violated Local Rule 184 when she failed to report her disciplines and

19  resulting suspensions to the Eastern District in violation of rule 3.4[2].

20  **IV.    COUNTS TWO AND THREE – UPL IN THE *KILGORE* MATTER**

21        Count Two charges respondent with UPL in violation of Business and Professions Code

22  sections 6125 and 6126 and Count Three charges respondent with UPL in violation of Rules of

23  Professional Conduct rule 5.5(a)(1) (practice of law in another jurisdiction where to do so would

24  be in violation of regulations in that jurisdiction) with regards to respondent's representation of

25  Ms. Noble in the *Kilgore* matter.  In order to prevail on Counts Two and Three, the State Bar does

26  not have to establish that respondent *knew* she was suspended or even intended to violate a rule of

27

28      [2] Rule 3.4 became effective on November 1, 2018, after the effective date of respondent's first
discipline.  However, respondent's failure to report the first discipline is still a violation of the
rule where she failed to report the discipline after the effective date of the rule.

professional conduct - it need only prove that respondent intended to perform the act(s) resulting in a violation of the rules of professional conduct. (*In the Matter of Respondent G* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 181, 183; *In the Matter of Heiner* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 301, 319 [violations of §§ 6125, 6126 and § 6068, subd. (a), established for single court appearance by attorney who did not know of his involuntary inactive enrollment].)

Here, respondent admitted to preparing and filing documents on behalf of Brooke Noble in the *Kilgore* matter with her ECF account before the Eastern District of California wherein she identified herself as the "Attorney" for Ms. Noble in the action. Respondent asserts a series of legal arguments in defense of the charges – none are availing.

First, respondent claims that she did not violate sections 6125 and 6126 because the *Kilgore* matter was pending in federal court – not state court. This argument fails, however, where the practice of law in California is not limited to litigation in California state courts. *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal. 4th 119 is the seminal case on the issue of the meaning of the phrase "practice law in California" in section 6125 and defined the practice of law "in California" as that which "entails sufficient contact with [a] California client to render the nature of the legal service a clear legal representation." (*Id*. at 128.) Physical presence in California is only one factor to consider in deciding whether the unlicensed lawyer has violated section 6125. "For example, one may practice law in the state in violation of section 6125 although not physically present here by advising a California client on California law in connection with a California legal dispute by telephone, fax, computer, or other modern technological means." (*Id*.)

Respondent's representation of Ms. Noble before the Eastern District in the *Kilgore* matter constituted the practice of law in California where Ms. Noble was a California resident at the time of representation and respondent's legal services necessarily entailed advising Ms. Noble in a matter that involved claims under California law, including allegations of fraud and deceit in violation of California Civil Code § 1572 and forgery in violation of California Penal Code § 470. (Ex. 15.) Indeed, respondent repeatedly referenced California law in support of her legal arguments asserted in the Motion to Vacate that she filed as "Attorney" for Ms. Noble. (Exs. 22, 56.) Thus, there is clear and convincing evidence that respondent held herself out as entitled to

1   practice law and in fact practiced law in her representation of Ms. Noble in the *Kilgore* matter in

2   violation of Business and Professions Code sections 6125 and 6126.

3       Second, respondent claims that she was not precluded from practice before the Eastern

4   District by virtue of her suspension in California.   However, it is indisputable that her

5   admission/eligibility to practice before the Eastern District was premised upon her eligibility to

6   practice in California.  (See e.g. *In the Matter of Wittenberg* (Review Dept. 2015) 5 Cal. State Bar

7   Ct. Rptr. 418 (where attorney was culpable of violating former rule 1-300(B) when he engaged in

8   UPL before the United States Patent and Trademark Office.)  Local Rule 184 has been in effect

9   since the alleged dates of UPL and to date as confirmed by Judge Ishii.  Thus, any attacks on the

10   constitutionality of the local rule cannot serve as a defense to culpability.  Nevertheless, the rule

11   specifically provides for due process where the attorney is afforded an opportunity to show cause

12   as to why the attorney should not be suspended.  Respondent did not make a motion to the court

13   as provided by the Local Rule and instead engaged in UPL in violation of the Eastern District's

14   rules.  Thus, there is clear and convincing evidence of UPL in violation of rule 5.5(a)(1).

15       Finally, contrary to respondent's assertions, respondent's submission of pleadings on

16   behalf of Ms. Noble as her "attorney" is expressly prohibited by rule 5.3.1 (former rule 1-311).

17   Subsection (b) of said rule prohibits a suspended lawyer employed under rule 5.3.1. from the

18   following activities:

19       (1) **Render legal consultation or advice** to the client;

20       (2) **Appear on behalf of a client** in any hearing or proceeding or before any

21           judicial officer, arbitrator, mediator, court, public agency, referee, magistrate, commissioner, or hearing officer;

22       (3) Appear as a representative of the client at a deposition or other discovery matter;

23       (4) Negotiate or transact any matter for or on behalf of the client with third parties;

24       (5) Receive, disburse, or otherwise handle the client's funds; or

25       (6) **Engage in activities that constitute the practice of law**.

26   (Rules of Professional Conduct, rule 5.3.1(b) (emphasis.)

27       Even if her co-counsel, attorney Leslie Westmoreland, had actually reviewed the pleadings

28   prior to their filing, respondent still clearly engaged in activities that are prohibited by the rule.  It

is well settled that the unauthorized practice of law encompasses the holding out by the attorney that he or she is entitled to practice. (*Bluestein v. State Bar* (1974) 13 Cal.3d 162, 175, fn. 13 [use of term "Of Counsel" on letterhead to describe an unlicensed person constitutes unauthorized practice]; *In re Naney* (1990) 51 Cal.3d 186 [suspended attorney implied to a prospective employer that he was entitled to practice taxation law by using his bar admission date on a resume].)  Not only did respondent identify herself as "Attorney" on behalf of Ms. Noble, but she also admitted to representing Ms. Noble in the action and communicating with her about the case.  In fact, there was no documentary or testimonial evidence presented that would suggest that Ms. Noble was in fact attorney Westmoreland's client.

**V.    COUNTS FOUR, FIVE, SIX – KNOWINGLY ENGAGING IN UPL IN THE *AVALOS V. GONZALEZ* MATTER**

Count Four charges respondent with UPL in violation of Business and Professions Code sections 6125 and 6126 and Count Five charges respondent with UPL in violation of Rules of Professional Conduct rule 5.5(a)(1) (practice of law in another jurisdiction where to do so would be in violation of regulations in that jurisdiction) with regards to respondent's representation of the Grewal defendants in the *Avalos v. Gonzalez* matter.  As discussed above, the State Bar need not establish that respondent knew she was suspended or intended to engage in UPL in order to prevail on Counts Four and Five.  Here, respondent admitted to preparing and filing the answer on behalf of the Grewal defendants with her ECF account before the Eastern District wherein she identified herself as the "Attorney" for said defendants in the action while she was suspended.

Respondent's representation of the Grewal defendants constituted the practice of law in California under *Birbrower* where the plaintiff had alleged violations of the Unruh Civil Rights Act (CA Civil Code § 51 et seq.), a California statute, with regards to property located in California that was owned by the Grewals. (Exs. 33, 34.)  Furthermore, respondent drafted the attorney-client fee agreement regarding the representation of the Grewals and engaged in settlement communications on their behalf.  Her employment by Mr. Westmoreland under rule 5.3.1 (former rule 1-311) is not a defense to culpability where she clearly engaged in activities that are prohibited by the rule – identifying herself as the defendants' "Attorney" on the answer and engaging in

communications on their behalf.  (*In re Utz* (1989) 48 Cal.3d 468, 483, fn. 11 [practice of law includes doing and performing services in any matter pending in court, providing legal advice and counsel, and preparing legal instruments through which rights may be secured].)  Thus, there is clear and convincing evidence that respondent held herself out as entitled to practice law and in fact practiced law in her representation of the Grewal defendants in violation of Business and Professions Code sections 6125 and 6126.  Where respondent's eligibility to practice before the Eastern District was based solely upon her ability to practice in California, her representation of the Grewals was also in violation of the Eastern District's rules and thus there is clear and convincing evidence of UPL in violation of rule 5.5(a)(1).

Count Six charges respondent with *knowingly* engaging in UPL with regards to her representation of the Grewal defendants, which constitutes an act of moral turpitude. (*In the Matter of Mason* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 639, 641-642 [misconduct involved moral turpitude because attorney appeared in court knowing he was suspended].)  It is indisputable that respondent was aware of her suspension at the time she filed an answer on behalf of the Grewal defendants in February 2021.

Respondent maintains, however, that she did not intentionally engage in UPL because she believed, based on her legal research and consultation with others (none of whom testified), that she was still entitled to practice law before the Eastern District despite her California suspension. Respondent testified that she engaged in at least 50 hours of legal research on this issue – while she was able to recall the specific cases that allegedly support her legal argument that she was entitled to practice before the district court despite her suspension, she conveniently could not remember the local rules she reviewed.

Respondent's alleged reliance on case law to support her conclusion that she was not prevented from practicing before the Eastern District is unavailing.  First, she had already been disqualified in the Central District of California from representing a plaintiff in a case due to her California suspension in April 2018[3]. (Ex. 59.)  Second, the case law she testified having relied

---

[3] Local Rule 83-3.3 of the Central District, which governs eligibility to practice in the Central District, is nearly identical to Local Rule 180 of the Eastern District.

1    upon – *Theard v. United States* (1957) 354 U.S. 278; *Selling v. Radford* (1916) 243 U.S. 46; and

2    *In re Kramer* (9th Cir. 1999) 193 F.3d 1131 – was considered by the Ninth Circuit in her reciprocal

3    discipline proceeding and she was nonetheless still suspended in the Ninth Circuit as a result of

4    her California suspension.  (Exs. 20, 59.)  Finally, and most importantly, the language of Local

5    Rule 184 is clear – that in the event an attorney's status changes with respect to eligibility, an

6    attorney shall "forthwith be suspended from practice before [the Eastern District] without any

7    order of Court until becoming eligible to practice."  Rather than making a motion to the Chief

8    Judge so that she could show cause as to why she should not be suspended from practice as

9    explicitly provided by the rule, respondent chose instead to ignore the rule and practice before the

10   court in violation thereof.

11          Respondent also maintained that she believed she was authorized to practice before the

12   Eastern District because her status on the Eastern District's website was "active" as of February

13   12, 2021.  (Ex. 40 at p. 14.)  However, she could not have reasonably relied on the information on

14   the website where she had not reported either of her prior disciplines to the Eastern District[4] as of

15   said date and where Local Rule 184 provides for an automatic suspension.  Indeed, had the court

16   been made aware of her prior discipline, the clerk would have immediately changed her status to

17   reflect ineligibility on the website.  (Gonzalez Testimony.)

18          Considering all these facts and circumstances, respondent made an informed decision to

19   practice before the Eastern District based on a self-serving interpretation of the case law and

20   deliberately ignored the clear language of the local rule itself.  Thus, respondent is culpable of

21   moral turpitude by committing UPL through willful blindness, which is tantamount to having

22   actual knowledge that she was ineligible to practice law. (*In the Matter of Carver* (Review Dept.

23   2016) 5 Cal. State Bar Ct. Rptr. 427, 432-433 [attorney found culpable of moral turpitude by

24   committing UPL through willful blindness]; see also *In the Matter of Wyrick* (Review Dept. 1992)

25   2 Cal. State Bar Ct. Rptr. 83, 91 [grossly negligent UPL may constitute moral turpitude].)

26

27   _____

28   [4] The declaration respondent filed in the *Kilgore* matter contained no details regarding either of
     her prior disciplines and/or their effective dates of suspension.  (Ex. 23.)  There was no testimony
     by either Judge Ishii or Roxanne Gonzalez that the court was aware of her prior disciplines as of
     February 12, 2021 when respondent's status in the Eastern District showed her as "active."

## VI.    AGGRAVATION

### A.    Prior Record of Discipline (Std. 1.5(a))

Respondent's misconduct is significantly aggravated by her two prior discipline records because they demonstrate her ongoing disrespect for the rules governing attorney ethics and professionalism. (Std. 1.5(a) [prior record of discipline is aggravating circumstance].)  In her first disciplinary matter, effective June 28, 2018[5], respondent received 30 days of actual suspension in the consolidated proceeding, Case Nos. 15-O-11311, 15-O-11708, and 15-O-12260, after the Review Department found respondent culpable of failing to cooperate with a State Bar investigation with respect to Case No. 15-O-11311 in July 2015 in violation of BPC section 6068(i) and disobeying three superior court orders issued in August 2012 to pay sanctions (Case No. 15-O-11708) in violation of BPC section 6103.  Aggravation included multiple acts of misconduct and indifference toward rectification.  In its opinion, the court wrote "Of equal concern is the fact that she blames everyone but herself for her misconduct."  (Ex. 6 at p. 18.)

In respondent's second discipline, effective August 28, 2019, respondent received six (6) months of actual suspension in the consolidated proceeding, Case Nos. 16-O-12958 and 16-O-10548, after the Hearing Department found respondent culpable of six counts of misconduct occurring between 2015 and 2017:  (1) failing to competently perform legal services in one client matter in violation of former RPC, rule 3-110(A); (2) failing to account in one client matter in violation of former RPC, rule 4-100(B)(3); (3) failing to return unearned fees in one client matter in violation of former RPC, rule 3-700(D)(2); (4) failing to cooperate in a State Bar investigation with respect to Case No. 16-O-12958; (5) failing to promptly release the client file in one client matter in violation of former RPC, rule 3-700(D)(1); and (6) failing to obey a court order in violation of BPC section 6103.  Aggravation included a prior record of discipline, multiple acts of misconduct, and indifference, where she claimed that the disciplinary proceeding resulted from her "poking the bear" criticisms of the State Bar.  (Ex. 7 at p. 17.)  No mitigating circumstances were found.

---

[5] Respondent was suspended briefly between February 14, 2018, and March 16, 2018, prior to being suspended on June 28, 2018.

1    Continuing in the vein of her disrespect for court orders and rules, respondent committed

2    UPL in the present case in direct contravention to two Supreme Court Orders imposing suspension

3    and to local rules of the Eastern District. (*In the Matter of Gadda* (Review Dept. 2002) 4 Cal. State

4    Bar Ct. Rptr. 416, 443-444 [similarities between prior and current misconduct render previous

5    discipline more serious, as they indicate prior discipline did not rehabilitate]; *Barnum v. State Bar*

6    (1990) 52 Cal.3d 104, 112 ["Other than outright deceit, it is difficult to imagine conduct in the

7    course of legal representation more unbefitting an attorney" than willful violation of court orders].)

8    **B.    Multiple Acts of Wrongdoing (Std. 1.5(b))**

9    Respondent committed multiple acts of misconduct: she knowingly failed to report her

10    two disciplines which resulted in her suspension in California to the Eastern District as required

11    by its local rules; she submitted multiple filings in the *Kilgore* matter over the course of

12    approximately three months on behalf of Ms. Noble wherein she identified herself as her attorney;

13    she filed an answer on behalf of the Grewal defendants when she knew she was not entitled to

14    practice and she further engaged in communications with opposing counsel on their behalf. (*In*

15    *the Matter of Bach* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 631, 646-647 [three instances

16    of misconduct considered aggravating as multiple acts of misconduct].)

17    **C.    Indifference/Lack of Insight (Std. 1.5(k).)**

18    Respondent demonstrated lack of insight throughout the proceeding where she repeatedly

19    attacked the character of other attorneys in support of her conspiracy theory that the State Bar was

20    somehow colluding with them to wrongfully target her. (*Rodgers v. State Bar* (1989) 48 Cal.3d

21    300, 317 ["[A]n attorney's lack of insight into the wrongfulness of his actions" may be an

22    aggravating factor].) This belief was mimicked by many of respondent's character witnesses who

23    derived most of their knowledge regarding the alleged misconduct from respondent herself. While

24    many of her efforts at presenting evidence to support her theory that she was wrongfully targeted

25    were thwarted by the Court, her attempts to present this evidence cannot be ignored. Indeed,

26    respondent testified that her only regret was not printing a screenshot from the Eastern District

27    website that supposedly showed that she was active as of the date of filing of the Answer for the

28    Grewals, thus continuing to ignore the fact that she would have nonetheless still been ineligible to

1    practice before the Eastern District pursuant to the local rules.  Respondent's lack of insight is a

2    significant aggravating factor which raises concerns as to whether respondent is likely to engage

3    in similar misconduct in the future.  (*Blair v. State Bar* (1989) 49 Cal.3d 762, 781-82.)

4        **D.    Lack of Candor to the State Bar (Std. 1.5(l))**

5        Respondent was hardly cooperative during the State Bar investigation of the misconduct

6    in this matter.  While respondent communicated with the State Bar, she failed to answer any of the

7    State Bar's questions in substance and instead accused it of "harassing" and "annoying" her.  (Exs.

8    44, 46.)  When asked straightforward factual questions regarding the extent of her engagement and

9    communications with the clients, she asserted the Fifth Amendment privilege against self-

10   incrimination, despite the fact that the State Bar made no mention of potential criminal liability in

11   its correspondence.  Indeed, the fact that respondent not once asserted the Fifth Amendment

12   privilege in the disciplinary proceedings indicates that she did not reasonably believe it applied –

13   her refusal to respond in substance to any of the State Bar's factual inquiries thus can be construed

14   as none other than obstruction.  (See *In the Matter of Dixon* (Review Dept. 1999) 4 Cal. State Bar

15   Ct. Rptr. 23, 41-42 [improper invocation of the Fifth Amendment may properly be considered an

16   aggravating factor where culpability has otherwise been found].)

17  **VII.    MITIGATION**

18       **A.    No Mitigation for Good Faith Belief**

19       Respondent has offered various explanations for the misconduct.  At the outset, respondent

20   should not receive any mitigation to the extent she claims she committed the misconduct due to

21   her ignorance of the relevant rules.  (*In the Matter of McKiernan* (Review Dept. 1995) 3 Cal. State

22   Bar Ct. Rptr. 420, 427 ["it is [not] appropriate to reward respondent for his ignorance of his ethical

23   responsibilities"].)  To the extent her misconduct is attributable to her *interpretation* of the rules,

24   she is still not entitled to mitigation where those beliefs were not objectively reasonable and where

25   there is insufficient evidence that she honestly held them in light of the circumstances.  (std. 1.6(b);

26   *In the Matter of Rose* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 646, 653; *In the Matter of*

27   *McKiernan*, *supra*, 3 Cal. State Bar Ct. Rptr. at 427 [respondent should not be rewarded "for his

28   ignorance of his ethical responsibilities."].)

1      With regards to Count One, respondent asserts that by notifying the Ninth Circuit in the

2   Noble Appeal of her "temporary disqualification," the Eastern District had notice of her suspension

3   because the Order issued on April 24, 2018 (Ex. 18) as a result of said Notice was also filed in the

4   Eastern District in the underlying matter.  However, this argument is flawed for several reasons –

5   the April 24, 2018, Order that was also filed in the Eastern District matter mentioned nothing about

6   respondent's discipline or suspension.  Indeed, her April 17, 2018, notification to the Ninth Circuit

7   (which was indisputably *not* filed in the Eastern District docket) mentions nothing about having

8   been disciplined – rather respondent characterized her suspension as a "TEMPORARY"

9   Disqualification that resulted from the State Bar "wrongfully and unlawfully" suspending her

10  license.  This document could not have reasonably been construed to either have provided notice

11  of her discipline nor was it made to the Eastern District.

12      With regards to her UPL in the *Kilgore* matter, respondent offers two primary reasons for

13  her UPL: (1) she believed her California suspension did not prevent her from practicing in federal

14  court and (2) she believed that the Ninth Circuit's Order of suspension allowed her to continue

15  representing Ms. Noble.  As explained above with regards to Count Six (knowingly engaging in

16  UPL), respondent deliberately ignored the clear language of the Eastern District's Local Rule 184

17  and her reliance on case law was unreasonable in light of the fact that she had already been

18  suspended by the Ninth Circuit despite its consideration of the very same case law she allegedly

19  relied upon.  Next, the Ninth Circuit's Order of suspension was very clear as to which matters she

20  could continue representing Ms. Noble:

21      "For the convenience of the court and in the interest of justice, Albert shall remain
          counsel of record for Brooke Noble **in the related pending appeals, *Noble v. Wells
22        Fargo*, Nos. 16-16362, 17-17294, and respond to any developments in those
          cases**." (Ex. 20, emphasis.)
23

24      Respondent testified that she construed "related pending appeals" to include the *Kilgore*

25  matter, but this lacks credibility where respondent knew very well that the *Kilgore* matter never

26  went on appeal so "related pending appeals" could not have reasonably been construed to include

27  the *Kilgore* matter.  Indeed, the *Kilgore* matter had been dismissed and inactive as of the date of

28  issuance of the Ninth Circuit Order of suspension.  Furthermore, respondent's alleged belief that

-15-

1  she was permitted to represent Ms. Noble in the *Kilgore* matter by the Ninth Circuit is contradicted

2  by her statement in the supporting declaration she filed in said matter where she acknowledged it

3  was possible the court would issue an OSC to "kick [her] out" of the Eastern District due to her

4  California suspension.  (Ex. 23 at pp. 9-10.)

5  　　　　Finally, as discussed in detail with respect to Count Six above, respondent's UPL in her

6  representation of the Grewal defendants was done knowingly where she was willfully blind to the

7  Eastern District local rules, which provided for her automatic suspension upon her ineligibility to

8  practice in California.  Even if this Court concludes that respondent is not culpable of knowingly

9  engaging in UPL, the burden of proof in proving good faith is on the respondent and the

10  circumstances clearly show that respondent's beliefs that she could represent the Grewal

11  defendants was neither objective reasonable nor honestly held.

12  　　**B.    Respondent's Good Character**

13  　　　　Respondent presented good character testimony from 10 individuals and an additional 8

14  character witness declarations from individuals who did not testify were admitted into evidence.

15  However, several issues diminish the strength of their testimony. First, aside from James Ocon

16  (respondent's romantic partner) and Ed Garza (respondent's long-time friend), most of the

17  witnesses had only limited interactions with respondent and/or had not had any recent interactions

18  with respondent of significance. Indeed, there was no detailed testimony regarding respondent's

19  daily conduct and mode of living. (*In the Matter of Rubin* (Review Dept. 2021) 5 Cal. State Bar

20  Ct. Rptr. 797, 816-817 citing *In the Matter of Davis* (Review Dept. 2003) 4 Cal. State Bar Ct. Rptr.

21  576, 592 [testimony of acquaintances, neighbors, friends, associates, employers, and family

22  members on issue of good character, with reference to their observation of attorney's daily conduct

23  and mode of living, entitled to great weight].)

24  　　　　Second, the witnesses, though generally aware of the allegations, did not actually believe

25  that respondent was culpable of the alleged misconduct[6].  (*In the Matter of Song* (Review Dept.

---

26

27  [6] James Ocon, Theresa Marasco, Joanne Anderson, Thomas Scott Schales, Chad Pratt, Greg

28  Meinhardt, Holly Burns, Antonio Marasco, Deborah Rich, Monique Bryher, Christine Rossi, Gerald Senear, and Dan Chmielewski – testified (or stated in their declarations) that they did not believe respondent actually committed the alleged misconduct and instead downplayed respondent's actions.

1  2013) 5 Cal. State Bar Ct. Rptr. 273, 280 [limited weight given to testimony of witnesses who

2  believed the charges were due to a mistake or misunderstanding].)  Of these witnesses, several of

3  them even went so far as to suggest that respondent was improperly targeted by the State Bar as a

4  result of a conspiracy theory involving sovereign extremists. (*In the Matter of Aquino* (1989) 49

5  Cal.3d 1122, 1131 [seven witnesses and twenty letters of support not given significant weight as

6  the witnesses were unfamiliar with the details of the misconduct].)  Ironically, respondent's

7  romantic partner (James Ocon) testified that his opinion of her good character would actually

8  change if she was found culpable of the misconduct.

9       Third, only two attorneys - Brian Liddicoat and Chad Pratt – testified on respondent's

10  behalf. (Std 1.6(f).)  Mr. Liddicoat, however, has not had any meaningful contact with respondent

11  since 2016, and thus his testimony is entitled to nominal weight.  Mr. Pratt's testimony is likewise

12  not entitled to much weight where he himself has previously been disciplined twice for

13  misconduct, including aiding in UPL.  (*In the Matter of Brown* (Review Dept. 1993) 2 Cal. State

14  Bar Ct. Rptr. 309, 319 [serious consideration given to attorneys' testimony due to their "strong

15  interest in maintaining the honest administration of justice"].) Theresa Marasco is a paralegal and

16  could also be considered part of the legal community, but her testimony suffers from a number of

17  issues that diminish its weight.  Not only did she testify that she did not believe respondent to be

18  culpable of the alleged misconduct, but she is also a current client of respondent with a pending

19  case who admittedly has a strong interest in the outcome of the proceeding and respondent being

20  able to practice law.  (Cal. Evid. Code § 780(f).)

21       Finally, aside from Ms. Marasco, there were three other witnesses who are current clients

22  of respondent and/or have a direct personal and financial interest in the outcome of this proceeding

23  where they testified that their cases would be negatively impacted if respondent was disbarred and

24  unable to provide them with legal assistance/representation.  The mitigative weight afforded to

25  their testimony should be reduced due to the inherent bias these witnesses have towards the

26  outcome of these proceedings.

27       Based on the foregoing, respondent is entitled to only limited weight in mitigation for good

28  character.

-17-

### C.    Respondent's Pro Bono/Community Service

Respondent testified to performing *pro bono* work on one client matter as well as volunteer work.  However, respondent's testimony as to the frequency and recency of her community service efforts were vague and uncorroborated by any documentary or testimonial evidence.  The only specific volunteer event she recalled having participated in within the last few years was one holiday stocking stuffing event for veterans in December 2020.  Respondent also testified to having developed an algorithm related to long term COVID and that this information was shared free of charge with VICE news.  However, details regarding this project, including the amount of pro bono time and resources respondent devoted, were not provided and there was no corroborating testimony.  (*In the Matter of Dyson* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 280, 287 [little weight given to pro bono activities where respondent testified but evidence fails to demonstrate level of involvement]; *In the Matter of Shalant* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 829, 840 [limited weight in mitigation where community service evidence based solely on respondent's testimony].)  Thus, she is only entitled to minimal mitigating weight for her limited community service efforts and representation of one pro bono client.

Respondent also testified to being very politically active - attending political rallies and running for public office.  However, there is no decisional case law that supports mitigation for political activism.  Given the partisan nature of politics, a political cause/activity viewed as beneficial by one member of the community may be viewed as destructive by another, and thus it would not be appropriate to assign mitigation for advancing political causes.  Furthermore, respondent's run for public office advances her *own* interests and there was no evidence introduced to show that her political campaigns benefitted the public/community.  Even if she was elected and served in public office, these positions are generally compensated.  (*In the Matter of Chesnut* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 166, 176 [to the extent that respondent was compensated for an activity, he is not entitled to mitigating credit for *pro bono* community service]; *Blair v. State Bar* (1989) 49 Cal.3d 762, 780 [minimal weight where attorney testified to practicing in underserved community where it was a for profit business and thus not altogether altruistic].)

1

**VIII.  DISBARMENT IS WARRANTED TO PROTECT THE PUBLIC, THE COURTS, AND THE LEGAL PROFESSION**

2

3       Standard 1.8(b) provides that disbarment is appropriate where an attorney has two or more

4   prior records of discipline if: (1) an actual suspension was ordered in any of the prior disciplinary

5   matters; or (2) the prior and current disciplinary matters demonstrate a pattern of misconduct; or

6   (3) the prior and current disciplinary matters demonstrate the attorney's unwillingness or inability

7   to conform to ethical responsibilities. Respondent has two prior records of discipline, both of

8   which resulted in the imposition of actual suspension.  Furthermore, her prior and current

9   disciplinary matters reveal that she is unwilling or unable to conform to her ethical responsibilities

10  where all three disciplinary matters involve failures to comply with court orders and rules. Her

11  violation of court orders in her first two disciplinary proceedings and her UPL in the present matter

12  demonstrate a disrespect for the legal system that directly relates to her fitness to practice law and

13  to serve as an officer of the court.

14      Second, this case does not fall within an exception to standard 1.8(b), where respondent

15  can avoid disbarment where "the most compelling mitigating circumstances clearly predominate

16  or the misconduct underlying the prior discipline occurred during the same time period as the

17  current misconduct." Here, the present misconduct occurred after the misconduct underlying the

18  two prior discipline cases, and respondent's mitigation for good character and community service

19  is neither compelling nor does it predominate over the significant aggravation for two prior

20  discipline records, multiple acts of misconduct, lack of insight, and lack of candor with the State

21  Bar during the investigation.

22      The State Bar and this Court have had to intervene at least three times over the past two

23  decades to ensure that respondent adheres to the professional standards required of those who are

24  licensed to practice law in California. Overall, she has demonstrated at least "pervasive

25  carelessness" toward her practice and compliance with ethical rules since 2012. (*Palomo v. State*

26  *Bar* (1984) 36 Cal.3d 785, 796.) Respondent's discipline record presents a disturbing pattern

27  involving disrespect for court rules/orders and the judicial process. Considering her past and

28  present misconduct, which have all been aggravated by her lack of insight and attempts to blame

-19-

1    others, it is clear that respondent is either "unwilling or unable" to conform her behavior to the

2    rules of professional conduct. (*Barnum v. State Bar*, supra, 52 Cal.3d at p. 111.) Further probation

3    and suspension would be inadequate to prevent respondent from committing future misconduct.

4    (*Id.* at pp. 112-113 [disbarment imposed where attorney's probation violations left court no reason

5    to believe he would comply with lesser discipline].)

6    　　　　Based on the foregoing, the standards and decisional law support the conclusion that

7    disbarment is warranted and necessary to protect the public, the courts, and the legal profession.

8    (See e.g., *In the Matter of Carver*, supra, 5 Cal. State Bar Ct. Rptr. 427 [disbarment where attorney

9    with two prior disciplines knowingly committed UPL and significant aggravation outweighed

10    limited mitigation]; *In the Matter of Hunter* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 63

11    [disbarment where attorney with two prior disciplines was unable to conform conduct to ethical

12    norms with multiple aggravating factors and no mitigation].)

13    **IX.    MONETARY SANCTIONS**

14    　　　　Where the NDC was filed on April 29, 2022 and provided respondent with notice that she

15    could be subject to monetary sanctions, it is recommended that she be ordered to pay monetary

16    sanctions in the amount of $5,000. (Rule 5.137(A), et seq.)  This amount constitutes the amount

17    of total sanctions allowed for actual suspension under rule 5.137(E) and is appropriate in light of

18    respondent's UPL in two client matters and alleged financial hardship.

19    **X.    CONCLUSION**

20    　　　　Based on the foregoing, the State Bar recommends that respondent be disbarred from the

21    practice of law and ordered to pay disciplinary costs and monetary sanctions in the amount of

22    $5,000.

23    　　　　　　　　　　　　　　　Respectfully submitted,

24    　　　　　　　　　　　　　　　THE STATE BAR OF CALIFORNIA
　　　　　　　　　　　　　　　　　OFFICE OF CHIEF TRIAL COUNSEL

25

26    DATED:　January 6, 2023　　　　By:　

27    　　　　　　　　　　　　　　　Cindy Chan
　　　　　　　　　　　　　　　　　Supervising Attorney

28

# DECLARATION OF SERVICE

**CASE NUMBER(s): SBC-22-O-30348**

I, the undersigned, am over the age of eighteen (18) years and not a party to the within action, whose business address and place of employment is the State Bar of California, 845 South Figueroa Street, Los Angeles, California 90017, Sandra.bird@calbar.ca.gov, declare that:

- on the date shown below, I caused to be served a true copy of the within document described as follows:

## STATE BAR'S CLOSING BRIEF

☐ **By U.S. First-Class Mail: (CCP §§ 1013 and 1013(a))**

☐ **By U.S. Certified Mail: (CCP §§ 1013 and 1013(a))**
- in accordance with the practice of the State Bar of California for collection and processing of mail, I deposited or placed for collection and mailing in the City and County of Los Angeles.

☐ **By Overnight Delivery: (CCP §§ 1013(c) and 1013(d))**
- I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for overnight delivery by the United Parcel Service ('UPS').

☐ **By Fax Transmission: (CCP §§ 1013(e) and 1013(f))**
Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed herein below. No error was reported by the fax machine that I used. The original record of the fax transmission is retained on file and available upon request.

☒ **By Electronic Service: (CCP § 1010.6 and Rules of Proc. of State Bar, rule 5.26.2)**
Based on rule 5.26.2, a court order, or an agreement of the parties to accept service by electronic transmission, I caused the above-named document(s) to be transmitted by electronic means to the person(s) at the electronic address(es) listed below. If there is a signature on the document(s), I am the signer of the document(s), I am the agent of, or I am serving the document(s) at the direction of, the signer of the document(s). I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ *(for U.S. First-Class Mail)* in a sealed envelope placed for collection and mailing at Los Angeles, addressed to: *(see below)*

☐ *(for Certified Mail)* in a sealed envelope placed for collection and mailing as certified mail, return receipt requested, Article _____ at Los Angeles, addressed to: *(see below)* No.:

☐ *(for Overnight Delivery)* together with a copy of this declaration, in an envelope, or package designated by UPS, Tracking _____ addressed to: *(see below)* No.:

| Person Served | Business Address | Fax Number | Courtesy Copy to: |
|---|---|---|---|
| **LENORE LUANN ALBERT** | | | |
| | | **Electronic Address** | |
| | | **lenalbert@interactivecounsel.com** | |

☐ **via inter-office mail regularly processed and maintained by the State Bar of California addressed to:**

**N/A**

I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for mailing with the United States Postal Service, and overnight delivery by the United Parcel Service ('UPS'). In the ordinary course of the State Bar of California's practice, correspondence collected and processed by the State Bar of California would be deposited with the United States Postal Service that same day, and for overnight delivery, deposited with delivery fees paid or provided for, with UPS that same day.

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after date of deposit for mailing contained in the affidavit.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

DATED:  January 6, 2023                    SIGNED: _____
                                                            SANDRA BIRD
                                                            Declarant

EX 6

FILED *mk*

1/9/2023

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

Lenore L. Albert, Esq. SBN 210876
Law Offices of Lenore Albert
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Ph: 424-365-0741
Email: lenalbert@interactivecounsel.com
Respondent, LENORE L. ALBERT, pro se

STATE BAR COURT

HEARING DEPARTMENT – LOS ANGELES

| | |
|---|---|
| In the Matter of:<br><br>LENORE LUANN ALBERT<br>No. 210876 | Case No. SBC-22-O-30348-DGS<br><br>Filed 4/28/2022<br><br>Assigned to: Hon. Dennis G. Saab<br><br>**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**<br><br>**Trial Date: December 13, 14, 16, 21, 2022**<br>**Due Date: January 6, 2023**<br>**Ctrm: C – No Appearance** |

i
**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert* SBC 22-O-303048-DGS

# **TABLE OF CONTENTS**

I.   Summary of Material Facts.................................................................................1

II.  Culpability   ....................................................................................................2

   A.  The Standard for the State Bar is Clear and Convincing Evidence .............................3

   B.  The State Bar Admitted that Albert was "at all times" Licensed to Practice Law ........4

   C.  The Charge of Holding Oneself Out As Entitled to Practice Law Must Fail ...............5

   D.  The State Bar Failed to Prove Albert Knowingly Disobeyed an Obligation to the
       Eastern District in Violation of Rule 3.4f (Count 1)........................................7

       1.  The Open Refusal Exception Applies...........................................................6

       2.  Local Rule 180 ......................................................................................6

   E.  Count 2 – Bus & Prof Code §6068 (By Way of UPL) in Kilgore Matter in 2019 ........6

       1.  LR 180, 184 and the Rules of Prof. Conduct Do Not Apply to Section
           6068 ..................................................................................................

       2.  Section 6126 Does Not Apply to Attorneys Suspended by the State Bar ........6

       3.  Section 6125 is Limited to Conduct Occurring "In California" State Court .....8

       4.  State Bar Cannot Legally Expand the Definition of "In California" To
           Federal Court ....................................................................................9

   F.  Count 4 – Drafting and Filing Papers in Grewal Fail for the Same Reason as in
       Kilgore
       .........................................................................................11

   G.  No Rule 5.5 Violation in Count 3 & 5 Because Albert Was in Good Standing in
       the Eastern District Working Under Westmoreland with a Rule 1-311 Notice..........12

   H.  Count 6 – No Evidence Exists Supporting a Charge of Moral Turpitude Under
       Section 6106 .....................................................................................12

   I.  The Standards Weigh Heaving Toward Mitigation in Albert's Favor .......................13

       1.  The State Bar Did Not Prove Its Case in Aggravation ...................................13

           a.  Prior Discipline In Aggravation is Too Muddy of a Road To Go
               Down.......................................................................................14

           b.  The State Bar's Violation of 11 USC 524(a) Made Both Prior
               Disciplinary Orders Void Ab Initio ..................................................14

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**

*In re Lenore Albert*   SBC 22-O-303048-DGS

2. Albert-s Mitigating Factors Outweigh the State Bar's Aggravating Factors ................................................................................................................15

3. Any Punishment Would Be Punitive Which is Contrary to the Purpose of Discipline ...............................................................................................................18

J.   No Basis for an Award of Monetary Sanctions Exists in this Case.............................19

K.  State Bar Discipline Should Not Punish With Excessive Fines and Costs.................19

III.   Conclusion   .............................................................................................................................20

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

# TABLE OF AUTHORITIES

**Cases**

*Albert-Sheridan v. State Bar of Cal.* (In re Albert-Sheridan) (9th Cir. 2020) 960 F.3d 1188 ........ 1, 8, 17

*Altizer v. Highsmith* (2020) 52 Cal.App.5th 331, 340 ................................................. 9, 10

*Ames v. State Bar* (1973) 8 Cal.3d 910, 921 ............................................................. 21

*Bates v State Bar* (1990) 51 Cal.3d 1056, 1060 .......................................................... 8

*Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, 74 ............................. 10

*Birbrower, Montalbano, Condon Frank v. Superior Ct.* (1998) 17 Cal.4th 119, 123 ......................... 4, 7

*Birbrower, Montalbano, Condon Frank v. Superior Ct.* (1998) 17 Cal.4th 119, 130 ........................... 9

*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 347 ................................ 23

*Citizens United v. Schneiderman* (S.D.N.Y. 2016) 203 F. Supp. 3d 397, 411 ................................ 20

*Connally v. General Const. Co.* (1926) 269 U.S. 385, 391 ................................................. 11

*Cowen v. Calabrese*, 230 Cal.App.2d 870, 872-73 ........................................................ 9

*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208—1209 ......................................... 22

*Fox v. Alexis* (1985) 38 Cal.3d 621, 630-631 ............................................................ 22

*In re Cadwell* (1975) 15 Cal.3d 762, 772-73 ............................................................ 23

*In re Fraas* (Nev. 2012) 381 P.3d 623 .................................................................. 23

*In re Gurrola* (B.A.P. 9th Cir. 2005) 328 B.R. 158, 170 ............................................ 16, 17

*In re Gurrola*, 328 B.R. 158, 175-176 (BAP 9th Cir. 2005). ............................................... 1

*In re Kramer* (9th Cir. 2002) 282 F.3d 721 ............................................................. 12

*In re McCue* (1930) 211 Cal. 57, 66 .................................................................. 9, 13

*In re Poole* (9th Cir. 2000) 222 F.3d 618, 622 .......................................................... 7

*In re Stocker* (Aug. 25, 2022, S275166 ................................................................. 22

*In re Strick* (1983) 34 Cal.3d 891, 902 ............................................................... 15

*In the Matter of Marilyn Scheer*, 11-O-108881 *et al.* Rev. Dept. (March 18, 2014) ......................... 15

*In the Matter of Philip Koebel St. Bar* 15-O-11448, p. 32 (Jan. 5, 2021) ................................... 22

*In the Matter of Wu* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 263, 267 ............................... 22

*John Roe v State Bar of California*, 22-cv-00983-DFM (No. 113-1 p.30 (CD Cal. 11-21-2022 ................. 24

*Kassas v. State Bar of Cal.*, 49 F.4th 1158 (9th Cir 2022) ............................................ 2, 17

iv

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**

*In re Lenore Albert*   SBC 22-O-303048-DGS

*Kinnear v. City and County of San Francisco* (1963) 35 Cal. Rptr. 43, 47 ........................................... 21

*Ling Tie v. Peng Chan* (C.D. Cal., Dec. 12, 2014, CV 14-01211 BRO (RZx)) [pp. 1] ........................ 10

*McCray v. State Bar* (1985) 38 Cal.3d 257, 263 ................................................................................... 3

*Myers v. Philip Morris Companies. Inc.* (2002) 28 Cal.4th 828, 841 ................................................... 22

*Obbard v. State Bar* (2020) 48 Cal.App.5th 345, 351 ........................................................................... 9

*People v. Starski* (2017) 7 Cal.App.5th 215, 226 .................................................................................. 5

*Rodgers v, State Bar* (1989)48 Cal.3d 300, 315 ................................................................................... 2

*Selling v. Radford* (1917) 243 U.S. 46, 51 .............................................................................. 6, 7, 12

*Singmoungthong v. Astrue* (E.D. Cal., July 12, 2011, 1:09cv1328 DLB) [pp. 5-6] ....................... 5, 14

*Theard* v. *United States,* 354 U.S. 278, 282 ................................................ 6, 7, 12, 13, 16, 18

*Timbs v. Indiana* (2019) 139 S. Ct. 682 ......................................................................... 22, 23

*U.S. v. Wunsch* (9th Cir. 1995) 84 F.3d 1110, 1120 .......................................................... 11

*United States v. Hoffman* (9th Cir. 1984) 733 F.2d 596, 599 ......................................... 12, 13

*Winterrowd v. American General* (9th Cir. 2009) 556 F.3d 815, 824 ............................... 5

*Womack v. Lovell* (2015) 237 Cal.App.4th 772, 776 ........................................................ 4

**Statutes**

§ 6086.13 ................................................................................................................... 19

§6068 ..................................................................................................................... ii, 7, 14

11 U.S.C.§ 524(a) .................................................................................................... 15

6068 .......................................................................................................... ii, 7, 9, 10, 11

6125 ................................................................................................... ii, 7, 8, 9, 11, 18

6126 ......................................................................................................... ii, 7, 8, 9, 11

Cal. Bus & Prof Code § 6001.1 ................................................................................. 20

FRCP 83 ................................................................................................................... 6

Section 6106 ........................................................................................... ii, 12, 13, 18

**Other Authorities**

1.6(b) ....................................................................................................................... 15

1.6(c) ....................................................................................................................... 15

1.6(e) ....................................................................................................................... 16

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

1.6(f) .................................................................................................................. 16

1.6(g) .................................................................................................................. 16

1.6(h) .................................................................................................................. 16

1.6(I) .................................................................................................................. 16

1.6(j) .................................................................................................................. 16

Standard 1.5(L) .................................................................................................. 14

Standard 1.7(c) .................................................................................................. 19

Standard 2.19 ..................................................................................................... 18

The Globe, <u>What's the Difference in Legal Titles?</u> (Chris Michell, adjunct professor of law at Univ of the Pacific, McGeorge School of Law ................................................................. 4

**Rules**

180 .............................................................................................ii, 1, 2, 5, 7, 14

184 ...............................................................................................ii, 5, 6, 7, 10

Former Rule 1-311 ..........................................................................6, 9, 16

Rule 3.4f ................................................................................................ii, 5, 6, 7

Rule 5.137 .................................................................................................... 19

Rule 5.5 ...................................................................................ii, 7, 11, 12, 13

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

# I. SUMMARY OF MATERIAL FACTS[1]

1. Pursuant to the Eastern District of CA Local Rule 180, admission to the federal court of the Eastern District of CA ("Eastern District") is limited to attorneys who are active members in good standing of the Cal. State Bar. [Stip, Ex 60]. On December 17, 2014, Respondent, Lenore Luann Albert ("Albert") was admitted to practice before the Eastern District. Albert was a member of the California State Bar in good standing on December 17, 2014. [Ex 1 & 2]. 2. On December 13, 2017, Albert received a 30-day suspension from the California Supreme Court in Case No. 15-O-11311 ("First Order"). The First Order became final on February 14, 2018. [Ex 6]. Albert's reinstatement was conditioned on the payment to a third party of approximately $5,768.00 plus 10% interest and costs to the State Bar of $18,714.00. [RJN]. 4. Albert filed for relief under Chapter 13 of the Bankruptcy Code on February 20, 2018. [RJN]. Albert's Chapter 13 case was converted to a case under Chapter 7 of the Bankruptcy Code on June 26, 2018. On _February 26, 2019,_ Albert received a discharge of her debts. [Ex 1180]. Under 11 U.S.C.§ 524, a _permanent injunction_ issued which prevented creditors, including the State Bar, from enforcing pre-petition debt. Non-bankruptcy court orders relating to Albert's discharged debts were rendered void *ab initio. In re Gurrola*, 328 B.R. 158, 175-176 (BAP 9th Cir. 2005).

5. The California Supreme Court issued a second order suspending Albert for an additional six months on July 10, 2019, in Case No. 16-O-10548 ("Second Order"). [Ex 7]. The Second Order conditioned Albert's reinstatement on paying a third party approximately $47 and a former client approximately $20,000 with 10% interest. The Second Order required payment of State Bar costs of approximately $18,490. [Ex 7 – RJN]. Albert's law license was suspended for one year, stayed, with actual suspension of six months and two years' probation. 6. On April 20, 2021, Albert obtained a $60,000 loan to pay the State Bar to reinstate her law license. [Schales & Albert testimony, Ex 1124]

7. On June 10, 2020, the Ninth Circuit held that Albert's debts to the third parties listed in the California Supreme Court's First and Second Orders constituted dischargeable debt. (*Albert-Sheridan v. State Bar of Cal.* (In re Albert-Sheridan) (9th Cir. 2020) 960 F.3d 1188). On, August 1, 2022, the Ninth Circuit confirmed that Client Security Fund debt is also dischargeable in bankruptcy. *Kassas v. State Bar of Cal*., 49 F.4th 1158 (9th Cir 2022). 8. Because Albert did not have the financial ability to make

the payments required by the First and Second Orders, her suspension lasted three years. On July 30, 2019, attorney Leslie Westmoreland ("Westmoreland") submitted a Rule 1-311 Notice to the State Bar hiring her to do clerical work for his law office dated July 12, 2019. [Ex 1022]. 9   Westmoreland employed Albert to assist with her former client Brooke Noble. Ms. Noble had appealed her case from Eastern District to the Ninth Circuit. When Albert's license was not reinstated after the 30-days suspension, Albert notified the Ninth Circuit of her suspension which was then listed on Ms. Noble's District Court case docket on April 17, 2018. [Ex 17, 63]

10.  The Ninth Circuit issued an Order to Show Cause, concluding that it was in the "interest of justice" to allow Albert to continue representing Noble in "all" cases or matters. [Ex 18, 20 - RJN]. 11. Albert proceeded to represent Ms. Noble on appeal. On May 29, 2019, the Ninth Circuit ruled by Memorandum affirming the summary judgment in favor of Wells Fargo Bank but also stated in a footnote that the appeal left open the issue of the wrongful eviction and foreclosure. [Ex 21 -RJN]

12.. The conduct or actions are not in dispute.  Since her reinstatement as of April 21, 2021, Albert's license has not been suspended.  Her status in the Eastern District is active so there is no risk of any future UPL before that court. [Ex 2]. 18.  Albert testified that in both the *Kilgore* and *Grewal* matters, Westmoreland was supervising her work pursuant to the Rule 1-311 letter. Although almost all of their communications were by telephone, Albert had a few emails and screenshots to corroborate her testimony. [Testimony of Albert & Exs. 1029-1031, 1035, 1038 (on Noble) and Exs. 1101, 1171 and 1173 (on Grewal).] At trial, State Bar counsel introduced without chagrin or apology, an email from Manning challenging whether Albert was involved in settlement negotiations.   In response, Albert introduced the pages the State Bar's counsel appears to have intentionally <u>omitted</u> from the email chain which showed that Westmoreland was conducting the settlement negotiations with Manning on the Grewal matter, not Albert. [Ex 62 compared with Ex 1176] An attorney is required to refrain from misleading and deceptive acts without qualification.  *Rodgers v, State Bar* (1989)48 Cal.3d 300, 315.19.  When Albert realized the State Bar would be prosecuting her for unauthorized practice in federal court, she drafted a letter to Chief Judge Kimberly Mueller of the Eastern District requesting Rule 180 be amended to comply with Ninth Circuit policy. The letter was referred to Scott Cameron of the Judicial Advisory Committee. [Ex 1034 and 1038].

## II.   <u>CULPABILITY</u>

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

The burden is on the State Bar to prove by clear and convincing evidence that Albert committed the unauthorized practice of law in the Eastern District. It is undisputed that Albert was only affiliated with three cases in the Eastern District: *Noble v Wells Fargo, Kilgore v Wells Fargo* and *Avalos v Gonzales* (Grewal). [Ex 1006].

The State Bar did not prove the charged conduct occurred in a **California state court**. Nor could the State Bar prove that Albert's notice of disqualification on April 17, 2018, was not "prompt" because Albert's dates of her 15-O-11311 suspension kept changing and at that time, it read suspended. Thus, the State Bar did not prove Albert failed to "promptly" notify the "Court" as required by the Eastern District Local Rules. The evidence shows that the California Supreme Court modified its First and Second Orders of suspension deleting the financial conditions which delayed Albert's reinstatement after the 30-day suspension in 2018, and the six-month suspension in 2019 because such orders violated bankruptcy law. [Ex 1001, 1002, 1003,1177, and 2].

A.  **The Standard for the State Bar is Clear and Convincing Evidence**

The State Bar or Office of Chief Trial Counsel ("OCTC") must prove each disciplinary count with clear and convincing evidence, which is a significantly higher standard than more likely than not. "While it is not essential that the proof of guilt be established beyond a reasonable doubt, yet the charges must be sustained by convincing proof to a reasonable certainty and any reasonable doubts should be resolved in favor of the accused." *McCray v. State Bar* (1985) 38 Cal.3d 257, 263 (citations omitted).

Where Albert provided the Court with contradictory evidence on an issue, the State Bar's position is undermined, and doubt created which should result in a finding for Albert. Additionally, if the State fails to present substantial evidence to support its charge, then its weaker evidence should be deemed insufficient to meet its burden.

B.  **State Bar Admitted that Albert was "at all times" Licensed to Practice Law**

The State Bar filed six overlapping charges based on allegations that Albert was holding herself out as an attorney practicing law while suspended in federal court. The State Bar alleged in its Second Amended Notice of Disciplinary Charges ("SANDC") at paragraph One that "**Respondent was a licensed attorney at all times pertinent to these charges** and is currently a licensed attorney of the State Bar of California." (Emphasis added) [RJN]. The State Bar did not make licensure an issue at

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

trial. The Cal. Supreme Court requires that individuals not be licensed for sustaining a claim of UPL. (*See, Birbrower, Montalbano, Condon Frank v. Superior Ct.* (1998) 17 Cal.4th 119, 123, "None of Birbrower's attorneys were licensed to practice law in California"). State Bar also stipulated that Plaintiff was at all times a Member of both the State Bar and U.S. District Court for the Central District of California.

The State Bar must be consistent. In *Womack v Lovell*, licensure of an opposing party alleged in a pleading is a <u>conclusively</u> <u>established</u> <u>judicial</u> <u>admission</u> at trial.

> We conclude this is one of those relatively rare cases where a party can be bound by a judicial admission made in an unverified complaint. (citation). Here, the judicial admission that the general contractor was licensed…rendered the question of licensure assuredly *uncontroverted* for purposes of <u>section 7031</u>. Because of the judicial admission, the rule [] does not apply.

> *Womack v. Lovell* (2015) 237 Cal.App.4th 772, 776

Like *Womack v Lovell*, the judicial admission that Albert was licensed, compounded by the State Bar's failure to assert licensure renders the question of licensure uncontroverted for purposes of the State Bar Act and the Eastern District Local Rules.  Additionally, the State Bar represented in the Data Breach case, it has no interest in controlling practice in federal court. (*John Roe v State Bar of California*, 22-cv-00983-DFM (Doc. No. 113-1 p.30 (11-21-2022). "There are times it is error for a trial court to ignore the impact of an admission made in a party's pleadings, and [this Court should] conclude this case was one of those times." *Womack v. Lovell* (2015) 237 Cal.App.4th 772, 786.

C.   <u>**The Charge of Holding Oneself Out As Entitled to Practice Law Must Fail**</u>

The term esquire, "Esq." only has legal significance in New York. In California, the title does not mean that a person is eligible to practice law. "The fact that a person uses the term 'Esquire' after his name is not sufficient to show that the person held himself out to be entitled to practice law." *People v. Starski* (2017) 7 Cal.App.5th 215, 226. (*See also*, The Globe, <u>What's the Difference in Legal Titles</u>? (Chris Michell, adjunct professor of law at Univ of the Pacific, McGeorge School of Law.).

The State Bar has wasted its judicial resources in bringing these unsubstantiated charges against Albert. Even under a worst-case analysis, these claims should be considered technical mistakes.  The Eastern District does not characterize Albert's actions as UPL by  "identifying herself, along with attorney Leslie Westmoreland, as "Attorneys for…" because "[e]ven though their names were sometimes included on briefs as attorneys for the plaintiffs, the nature of their brief-writing function in

4
**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

supporting [duly admitted attorney] McChesney never changed." *Singmoungthong v. Astrue* (E.D. Cal., July 12, 2011, 1:09cv1328 DLB) [pp. 5-6].   It was uncontroverted that Westmoreland was a member of the Eastern District. The State Bar failed to meet its substantial legal burden because the Eastern District has previously held such conduct not UPL.

The charge was baseless because the Ninth Circuit has previously ruled that documents filed with these labels are not "treated as unauthorized practice of law" in federal court.  "[T]he licensed attorneys alone remain responsible to the clients, there are no court appearances as attorney, and no holding out of the unlicensed person as an Independent giver of legal advice." *Winterrowd v. American General* (9th Cir. 2009) 556 F.3d 815, 824. Like *Winterrowd,* Albert's work was filtered through Westmoreland. More importantly Albert was a member in good standing in the Eastern District when the papers were filed.

D. **The State Bar Failed To Prove Albert Knowingly Disobeyed an Obligation to the Eastern District in Violation of Rule 3.4f (Count 1)**

The State Bar charged Albert with violating Rule 3.4f because she "failed to promptly notify the Court of disciplinary action imposed by the California Supreme Court" in Case 15-O-11311 and 16-O-10548 in violation of Local Rule 180 and 184. California Rules of Professional Responsibility, Rule 3.4f prohibits a member from "**knowingly**\* disobey[ing] an obligation under the rules of a tribunal\* except for an open refusal based on an assertion that no valid obligation exists." *Id*. [emphasis added]. The Rule is identical to ABA Model Rule 3.4 subsection c. Under subsection c, Albert's open refusal based on *Theard* insulates her from discipline.

Suspension in 15-O-11311: The State Bar's proof of violation Local Rule 184 is clouded by the fact that on May 30, 2018, Albert's license still showed as suspended from February 14, 2018 forward in Case No. 15-O-11311. Albert notified the Eastern District by docketing her Notice of Disqualification in the *Noble* Matter before Judge Drozd of the Eastern District on April 17, 2018. When Albert was working for Westmoreland on *Kilgore*, she notified Eastern District Judge Ishii by declaration dated August 18, 2019. The Ninth Circuit ordered that Albert could proceed in the Noble matters which led her back to Judge Ishii's court after the Ninth Circuit affirmed summary judgement. The considerable contradictory evidence clouds the State Bar's claims preventing it from carrying its heavy burden in proving a violation of Rule 3.4f.

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

Suspension in 16-O-10548: The State Bar's proof that Albert violated Local Rule 184 is undercut by Albert's declaration notifying Judge Ishii of her suspension on August 18, 2019, one month after the July 2019 Second Order. Rule 184 states that the attorney shall notify the "Court" and Albert did. On March 3, 2021, Albert notified Judge McAuliffe of her suspensions by letter filed by ECF after she learned that the Operations Supervisor had unilaterally changed her status.  The State Bar failed to meet its burden that Albert violated Rule 3.4f by violating Local Rule 184-- failing to promptly notify the Eastern District of her suspension.

### 1.  **The Open Refusal Exception Applies**

Additionally, the State Bar failed to rebut Albert's evidence that she had a reasonable basis for openly refusing to automatically deem herself suspended in the Eastern District based on *Theard* and *Selling*. Rule 3.4f has an open refusal exception. Proof of Albert's open refusal can be found in the Declarations and Notice of Disqualification to Judge Ishii and Judge McAuliffe. Albert informed both Courts she was suspended and believed her membership was still in good standing in the Eastern District. If this was not an open assertion that no valid obligation existed, then it was a mistake. State Bar disciplinary hearings should not punish attorneys for honest mistakes.

Albert could not have known that her behavior was unethical or illegal because the (1) California Supreme Court has held such conduct does not violate the  Bus & Prof Code on the grounds those laws were inapplicable (*Birbrower, Montalbano, Condon Frank v. Superior Ct.* (1998) 17 Cal.4th 119, 130; (2) her conduct was authorized under the Rules (Former Rule 1-311); and/or (3) authorized under federal law. (*Theard* v. *United States,* 354 U.S. 278, 282). Former Rule 1-311 does not caution about working with an attorney in federal court and Albert repeatedly asked the State Bar employee, Vanessa Holton, Esq. for guidance in 2018 prior to working with Mr. Westmoreland.

The State Bar misinterpreted the local rules in a manner that would be unconstitutional as applied. The Eastern District was required to comply with the *Selling* factors (to satisfy due process concerns) before issuing a reciprocal suspension. See, *Selling v. Radford* (1917) 243 U.S. 46, 51 which requires giving the attorney notice that the attorney has a reasonable amount of time to object ***if*** the federal court is considering reciprocal suspension based on a state bar suspension. The Eastern District was bound to follow this procedure notwithstanding its local rules. (FRCP 83).  Kicking an attorney out

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

of federal court based on a state bar suspension would be objectionable and invalid. *Theard v. United States,* 354 U.S. 278 (1957). See also, *In re Poole* (9th Cir. 2000) 222 F.3d 618, 622.

The State Bar presented the testimony of Operations Supervisor, Roxanne Gonzales, who admitted she is not a Judge and does not work for one at the Eastern District.  Gonzales nevertheless unilaterally changed Albert's status on her own. Gonzales claimed she could not recall ever taking such action in the past. The State Bar also called Judge Ishii who testified he did not issue an order or hold a hearing to determine Albert's status.

### 2. Local Rule 180

Finally, Eastern District Local Rule 180 is irrelevant here. Rule 180 only involves admission. Since Albert was in good standing with the State Bar when she was admitted to the Eastern District on December 17, 2014 through the alleged misconduct period, no violation of Local Rule 180 occurred. Accordingly, the Court should find that the State Bar failed to prove by clear and convincing evidence that Albert violated Rule 3.4f by failing to comply with Eastern District Rules 180 and 184

### E. Count 2 – Bus & Prof Code §6068 (By Way of UPL) in Kilgore Matter in 2019

#### 1. LR 180, 184 and The Rules of Prof. Conduct Do Not Apply to Section 6068

The State Bar charged that. Albert "was…ineligible to practice before the Eastern District Court during said time period." SANDC ¶5. (There are no allegations she was practicing in California). The State Bar's evidence was undermined by a screenshot showing Albert's membership in the Eastern District was active, reflecting that she was eligible through February 2021.

Violation of 3.4f above cannot support a violation of Section 6068. The California Supreme Court has repeatedly held that State Bar Rules of Professional Conduct are not "laws of this state" within the meaning of Bus & Prof Code §6068: *Bates v State Bar* (1990) 51 Cal.3d 1056, 1060. Since state rules are not state laws under *Bates,* the federal local rules cannot be equated with "law of the United States." The State Bar has not met its burden under Section 6068 based on a purported violation of Eastern District Local Rules 180 and 184.  Rule 5.5 is not incorporated into the Section 6068 count; neither is the allegation of moral turpitude (6106). These counts do not support a Section 6068 violation. Sections 6125 and 6126 also do not support a Section 6068 violation because they do not apply to practice <u>in a federal court</u>.

#### 2. Section 6126 Does Not Apply to Attorneys

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

Section 6126 does not apply here because Albert was a suspended attorney. The State Bar appears to have abandoned this claim.  For a Section 6125 violation, the State Bar was required to establish: (1) the practice of law; (2) in California; (3) with an inactive license; (4) the conduct was unauthorized; and (5) was incompetent. *Altizer v. Highsmith* (2020) 52 Cal.App.5th 331, 340.

### 3.  Section 6125 is Limited to Conduct Occurring "In California"

The State Bar's case is fatally flawed because it failed to prove that the challenged conduct **occurred in California**. Shortly after the State Bar's inception in 1927, the California Supreme Court held that the State Bar Act (Bus & Prof Code) applies only to state court. The clear rule was laid out by the California Supreme Court in 1930: "[t]he State Bar Act and other statutes enacted for the purpose of regulating the practice of law in this state **are applicable to our state courts only**." (*In re McCue* (1930) 211 Cal. 57, 66.) (emphasis added). The OCTC is not the proper authority to determine or change what "in California" means. It is not a *technical issue* within their expertise or authority. "The proper definition[s] [are] not a technical issue within the State Bar's area of expertise." *Obbard v. State Bar* (2020) 48 Cal.App.5th 345, 351

Like *Obbard* the State Bar failed to present the senior State Bar officials who were required to carefully consider the agency's interpretation prior to filing these charges. In 1998, the California Supreme Court reiterated again that "The Act does not regulate practice before United States courts." *Birbrower, Montalbano, Condon Frank v. Superior Ct.* (1998) 17 Cal.4th 119, 130. "There are certain exceptions to section 6125's broad prohibition. *Id*. at 129. For example, section 6125 does not prohibit the practice of law before federal courts." *Id*. at 130 (*citing, Cowen v. Calabrese*, 230 Cal.App.2d 870, 872-73). The Federal courts agree. "The prohibition against unauthorized law practice is within the state's **police power** and is designed to ensure that those performing legal services do so competently." *Ling Tie v. Peng Chan* (C.D. Cal., Dec. 12, 2014, CV 14-01211 BRO (RZx)) [pp. 1] "More broadly, state law cannot restrict the right of federal courts and agencies to control who practices before them…Once federal admission is secured, a change in circumstances underlying state admission . . . is `wholly negligible' on the right to practice before a federal court"]. *Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, 74 The appellate court in *Benninghoff v. Superior Court of Orange County* (2006) 136 Cal.App.4th 61, found that the State Bar violated Benninghoff's right to practice in federal court and ordered the State Bar to return his federal practice files. "Once federal

admission is secured, a change in circumstances underlying state admission . . . is `wholly negligible'
on the right to practice before a federal court"].) Thus, the court erred by assuming jurisdiction over
Benninghoff's federal practice." *Benninghoff v. Superior Court of Orange County* (2006) 136
Cal.App.4th 61, 74

The State Bar's entire case for UPL was aimed at *two federal court cases* which the State Bar
Act does not cover. Consequently, it is irrelevant what actions Albert took or how the papers were
labeled because those actions did not occur *in a California state court case*. As a matter of law, the
State Bar did not prove any violation under Sections 6068, 6125 or 6126. The State Bar also failed to
bring forward any evidence that the papers filed in *Kilgore* were incompetent although the *Altizer* court
states it is an element. No evidence was produced to demonstrate that Albert provided legal services or
provided any legal advice to a client. Albert also successfully challenged the State Bar's evidence
concerning whether her conduct was authorized because she was working for Westmoreland who
reviewed her work before it was filed in accordance with Former Rule 1-311. The SANDC charged
Albert with "preparing and filing" law and motion papers on August 18, 2019, September 16, 2019,
October 28, 2019, and November 12, 2019, with her and Westmoreland as "Attorneys for Plaintiff,
Brooke Noble" in the Eastern District. Former Rule 1-311 allowed for the "member to perform
research, drafting or clerical activities, including but not limited to: drafting of pleadings, briefs…and
direct communications with the client or third parties." Rule 1-311(c).[2]

### 4. State Bar Cannot Legally Expand the Definition of " In California" To Federal Court

Because California Supreme Court precedent limited a Section 6125 UPL to action in "state
court" the State Bar has no basis for disciplining Albert by expanding the definition without offending
well established principles of due process. As the United States Supreme Court cautioned in *Connally v
General Const. Co*, any statute that "forbids or requires the doing of an act" where reasonable men can

---

[2] Ms. Noble did not testify. No evidence of legal advice was presented.  Albert testified that she assisted
Westmoreland as authorized under Former Rule 1-311.  Albert prepared and filed papers subject to
Westmoreland's review. Albert corroborated her testimony with emails and text messages of her
communications with Westmoreland. Former Rule 1-311 authorized her to draft papers; no one needs a law
license to file papers in court. Albert's testimony was uncontroverted. It is curious if not disturbing that State Bar
investigator Hom admitted he did not speak to Westmoreland, Noble or the Court as part of his investigation.
Hom's testimony is supported by the Unsigned State Bar Investigative Report. [Ex 1146].

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

"differ as to its application" is vague and violates the "first essential element of due process of law." (*Connally v. General Const. Co.* (1926) 269 U.S. 385, 391.) The law requires clear and unequivocal demarcation of what is allowed or not allowed under a statute; this requirement applies equally to the State Bar Act and the California State Bar's disciplinary rules, and Rules of Professional Responsibility. The Ninth Circuit likewise concluded that the terms in Section 6068 are unconstitutionally vague like former Bus & Prof Code § 6068(f) phrase "offensive personality." (*U.S. v. Wunsch* (9th Cir. 1995) 84 F.3d 1110, 1120). "A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited." *Id*. at 1119.

> Laws that are insufficiently clear are void for three reasons: (1) To avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary or discriminary interpretations by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms.

> *U.S. v. Wunsch* (9th Cir. 1995) 84 F.3d 1110, 1119, citing *Grayned v. City of Rockford,* 408 U.S. 104, 108-109 (1972).

The Eastern District Local Rules do not support discipline in this case because *Theard* is controlling authority which must be followed. As explained by the U.S. Supreme Court, a local rule of the federal courts requiring automatic or immediate disbarment without first affording the attorney due process of a hearing in that federal court prior to suspension court cannot stand.

> Despite the mandatory nature of the language of rule 7(c), the Supreme Court has held that an attorney disbarred from a state bar association may not be summarily disbarred from practice before a federal court even if the state bar membership was the predicate upon which the lawyer was admitted to the federal court. In *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).

> *United States v. Hoffman* (9th Cir. 1984) 733 F.2d 596, 599.

The Court in *In re Kramer* (9th Cir. 2002) 282 F.3d 721 explained how the Central District of California's attempt to summarily disbar an attorney based on a State Bar disbarment was reversed in *Kramer I* for invoking a Local Rule (similar to Eastern District Rule 184) which failed to follow *Selling* and *Theard*. The U.S. Supreme Court prohibits a federal court from automatically issuing a reciprocal suspension without first providing due process to the member; to do so offends traditional notions of due process - and is unconstitutional. Albert's testimony that she reasonably believed that an attorney enters the federal court in one door but exits through another is based on United States Supreme Court

precedent..(*Theard v. United States,* 354 U.S. 278 (1957) "[w]hile a lawyer is admitted into a federal court by way of state court, he is not automatically sent out of the federal court by the same route." *Id.* at 281.

In *Theard,* a district court's local rule (like that of the Eastern District) provided that an attorney "will be forthwith suspended" if that attorney was disbarred in another jurisdiction. [Ex 61]. The Court in *Theard* explained that was unconstitutional and the district court had to give the attorney a chance to plead his case to keep his admission before he could be suspended or disbarred from that federal district court. (*Theard v. United States,*.354 U.S. 278, 281-82 (1957)). The "Court reaffirmed its decision that a state disbarment is not conclusively binding on a federal court and that an attorney facing disbarment from a federal court is entitled to procedural due process." *United States v. Hoffman* (9th Cir. 1984) 733 F.2d 596, 599. "Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred. If the accusation rests on disbarment by a state court [] it is not conclusively binding on the federal courts." *Theard v. United States* (1957) 354 U.S. 278, 282. The Court reasoned:

> While a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route. The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included.
>
> *Theard v. United States* (1957) 354 U.S. 278, 281

This charge must fail because the State Bar twisted CAED Local Rules to make them inconsistent with U.S. Supreme Court law.

## F. **Count 4 - Drafting and Filing Papers in Grewal Fail for The Same As in Kilgore**

The State Bar charged Albert with violating Section 6068a in similar fashion in the *Grewal* matter. Albert filed the Answer prior to the Operations Supervisor changing her status. Albert rebutted the State Bar's evidence by showing the OSC issued by Judge McAuliffe in *Grewal*, which was discharged upon Albert's reinstatement on April 20, 2021. Because Bus & Prof Code §6125 cannot regulate the practice before the federal courts, neither can Rule 5.5. "The State Bar Act and other statutes enacted for the purpose of regulating the practice of law in this state are applicable to our state courts only." *In re McCue* (1930) 211 Cal. 57, 66 [ 293 P. 47] (underline added). State Bar failed to prove a violation of Sections 6126, 6126 or 6068 in the Grewal matter.

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

G. **No Rule 5.5 Violation In Count 3 & 5 Because Albert Was In Good Standing in the Eastern District Working Under Westmoreland with a Rule 1-311 Notice**

The State Bar has also charged Albert with violating Rule 5.5(a) as to both Kilgore and Grewal matters. Rule 5.5(a) states "[a] lawyer admitted to practice law in California shall not: (1) practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction; or (2) knowingly* assist a person* in the unauthorized practice of law in that jurisdiction." Id.

For the reasons previously discussed, the State Bar failed to prove Albert practiced law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

The State Bar failed to prove that Albert was not a member in good standing in the Eastern District during Kilgore and Grewal or that she could not put her name on the pleadings or work with Westmoreland.

Additionally, the State Bar failed to provide any evidence that the Eastern District had found Albert in violation of its regulations. The State Bar failed to present any order of discipline, sanction, or admonishment by of Albert by the Eastern District.

Most importantly, as Albert hammers the fatal nail in this coffin, the Eastern District has precedent showing it does not even characterize the type conduct charged to constitute UPL. (See, *Singmoungthong v. Astrue* (E.D. Cal., July 12, 2011, 1:09cv1328 DLB) [pp. 5-6] where the U.S. District Court for the Eastern District of California held there was no unauthorized practice of law where attorneys not licensed in the district drafted papers and even put their names on the papers as "Attorneys for" when another attorney was licensed in the district who the others supported.).

H. **Count 6 - No Evidence Exists Supporting a Charge of Moral Turpitude Under Section 6106**

The charge of moral turpitude was mean-spirited and the most offensive of all charges alleged by the SANDC. To impugn Albert's character with a baseless charge of moral turpitude ensured she would defend fully against these charges all the way to trial. Then, for the State Bar fail to even pretend to prove any act to support it exists is beyond the pale by an organization (funded by its members) that is supposed to exemplify civility and ethical practice among California attorneys.  Albert can only wonder what the true reasons were for the State Bar's filing of the NDC against her.  The State Bar Act, including Section 6106 does not apply to conduct in federal court.

Because all conduct alleged in the SANDC is based on conduct before the Eastern District, where Albert was a member, Section 6106 does not apply, and the State Bar's claims must fail. Even if applicable, which Albert disputes, the State Bar failed to prove a violation of Section 6106 which bars the commission of any act involving moral turpitude, dishonesty, or corruption. The State Bar had the burden to show that Albert's actions were vile, depraved or base. It failed do so.

Second, not all UPL is considered moral turpitude *per se*. For example, the Court in the case of in re Marilyn Scheer found her representation of clients in loan modification cases *in other states* constituted the unauthorized practice of law. However, no finding of moral turpitude attached to the Review Department's Opinion. (See, *In the Matter of Marilyn Scheer*, 11-O-108881 *et al.* Rev. Dept. (March 18, 2014).). *Marilyn Scheer*, Case Nos. 12-O-14071 *et al.* There can be a good faith misinterpretation of the law. As in Albert's case, no other jurisdiction found Scheer's practice unauthorized under the multijurisdictional practice rules (ABA Rule 5.5, adopted by most states).

Lying, cheating, and stealing are acts of moral turpitude. (*In re Strick* (1983) 34 Cal.3d 891, 902.). Twenty or so witnesses testified Albert has done none of those things; there was no evidence to the contrary. Albert had nothing to gain. Her suspension and conduct were both honest and forthright. She occupied that suspension and flew it like a flag for all to see. Not because she was proud of it, she was brought to utter shame that only other "pond scum" would recognize. It was her belief that she could take the 30 days suspension and find reason somewhere, somehow to regain admission – even if it took three years to do so. No federal court should be interested in whether Albert paid the State Bar $60,000.00 or not. The time was served – again and again.

Albert has never been convicted of a crime, she does not do drugs, she does not have a mental health issue and she does not have an addiction to alcohol or drugs. Well-respected witnesses came forward to testify about her law-abiding nature. She does not lie, cheat, or steal.

Moral turpitude is something significantly more than what Albert is being accused of and only murder (as opposed to solicitation of murder) is an act of moral turpitude per se. *In re Strick* (1983) 34 Cal.3d 891, 902. To put. Albert in the same category with murderers is as ridiculous as stalker attorney David Seal and his bleeding stabbed bird poem. Albert has not hurt anyone physically, financially, or emotionally. There has been no harm to a client, a party, opposing counsel or the courts. She has not been accused of being incompetent or unfit to practice law. As such, the Court should find Albert's conduct was not an act of moral turpitude.

I.   **The Standards Weigh Heavily Toward Mitigation in Albert's Favor**

     1.   **The State Bar Did Not Prove Its Case in Aggravation**

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

The State Bar argued Standard 1.5(L) applied lack of candor and cooperation. However, Albert showed she was responding to communications with the State Bar. [Ex 43-46]. Moreover, she was also in concurrent disciplinary proceeding 20-O-00045. When confronted with possible criminal charges, Albert took the Fifth Amendment to figure out what the State Bar was up to; but Albert prepared for trial, cooperated in discovery, and when she confirmed there was no possibility of criminal accusations. Cal. Bus & Prof. Code §6068(i). There were no victims here and Albert was candid with the parties, opposing counsel, and the Courts - at all times. Thus, the State Bar has not proven lack of candor or cooperation.  Prior to trial Albert stipulated to approximately 12 proposed facts by the State Bar and an additional 23 trial exhibits.

### a. <u>Prior Discipline In Aggravation is Too Muddy of a Road To Go Down</u>

The State Bar has not proven aggravation beyond prior suspensions because Albert testified that after the State Bar filed the initial NDC in April 2022, Albert wrote Judge Mueller and expressed concern that the federal court's local rule (which the State Bar initially focused on – Rule 180) was incompatible with U.S. Supreme Court precedent and requested a rule change. Her testimony was corroborated by admission of the letter she wrote and Judge Mueller's email response directing her to its committee that handles review of the Local Rules. [Albert Testimony] Albert was forthright before the State Bar investigation with the Eastern District that the *Selling* factors and *Theard* required due process before a suspension in their Court could occur. She hid nothing and immediately changed course when told to stop. She also gave Investigator Hom and State Bar counsel Chan *Theard* to research when they opened their investigation. She apologized to the Court, and her witnesses corroborated her testimony that if the Court finds a violation, it was merely a mistake on Albert's part which she sincerely regrets, done without any willful intent, indifference, or malice.

### b. <u>The State Bar's Violation of 11 USC 524(a) Made Both Prior Disciplinary Orders Void Ab Initio</u>

Section 524(a) of the Bankruptcy Code voids *any order* that violates the discharge injunction. "It follows, that the defense of discharge in bankruptcy is an absolute, nonwaivable defense." *In re Gurrola* (B.A.P. 9th Cir. 2005) 328 B.R. 158, 170.   The delay in Albert's reinstatement resulted from her inability to pay the debts ordered to third parties and the State Bar's Costs.  Her debts to third parties were discharged on February 26, 2019. But the State Bar in typical fashion, ignored federal bankruptcy law. Albert was forced to appeal her bankruptcy issues to the Ninth Circuit to confirm the law involving discharged mandatory payment obligations. On June 10, 2020, the Ninth Circuit held that

14

Albert's debts to third parties had been discharged. (*Albert-Sheridan v. State Bar of Cal.* (In re Albert-Sheridan) (9th Cir. 2020) 960 F.3d 1188. On August 1, 2022, the Ninth Circuit confirmed that Client Security Fund (subrogated) payment obligations were dischargeable in *Kassas v. State Bar of Cal.* (9th Cir. 2022) 49 F.4th 1158.

On August 1, 2022, the Ninth Circuit held that the State Bar was wrong to conclude that Client Security Fund debt is nondischargeable. Since the payment of discharged debt was the main impediment to Albert's reinstatement, the Supreme Court Orders were void and unenforceable under 11 U.S.C.§ 524(a).  The Second Order of July 10, 2019, including State Bar costs was void because the order sought to recover discharged debt in violation of the discharge injunction of Section 524(a) of the Bankruptcy Code. These did not become void when the Ninth Circuit ruled. They became void on the date of Albert's bankruptcy discharge. As the Bankruptcy Appellate Panel explained:

> a creditor has a <u>duty</u> to obey the discharge injunction, which duty is a modern corollary of the venerable rule that "all persons concerned in executing [void] judgments . . . are considered in law as trespassers." (citation).

*In re Gurrola* (B.A.P. 9th Cir. 2005) 328 B.R. 158, 174

Like *Gurrola,* the State Bar had a duty to comply with the discharge injunction, and it did not. It trespassed on the law and the extent of that trespass is still being litigated. The State Bar bungled its investigation and went full steam ahead thinking it could catch a frog on a lily pad after it obtained notice in March 2022 that Albert was going to file a complaint against the State Bar on the data breach incident. The record is devoid of clear and convincing evidence defining the void suspension period.

## 2. <u>Albert's Mitigating Factors Outweigh the State Bar's Aggravating Factors</u>

There are nine mitigating factors.  Albert practiced for 18 years without a record of discipline and any allegations of UPL will not likely occur because she has been reinstated to practice in California and has been admitted to Michigan in addition back in the Eastern District and the Centra District of California. She has never been suspended by the U.S. Supreme Court. (1.6(a)). Albert testified to her good faith belief that was honestly held and objectively reasonable that *Theard v United States* applied as discussed and shown in her declarations to the Court. (1.6(b)) which was corroborated through testimony of others who knew her. There was no evidence of harm to any client, the public or administration of justice. (1.6(c)). The evidence shows that Albert immediately wrote Judge McAuliffe and cooperated with the Court when the Operations Supervisor changed her status.  Albert notified the

Eastern District on April 17, 2018, and Judge Ishii on August 18, 2019 of her suspension--exhibiting spontaneous candor, and cooperation to all. (1.6(e)). She took prompt objective steps at the time by writing the letter, the declarations and even her initial notice of disqualification. Plus, Albert worked with Westmoreland after he sent the Rule 1-311 letter to the State Bar. When State Bar charges were about to be filed, Albert wrote the Chief Judge of the Eastern District suggesting a Local Rule change. (1.6(g)).

Albert had already been reinstated for nearly one year prior to the filing of the present UPL charges. It would be impossible for Albert to commit UPL because she is now in good standing in both state and federal Courts, making the act remote in time and showing subsequent rehabilitation. It also shows the excessive delay by the State Bar Court. (1.6(h) and 1.6(I)). Restitution in the form of giving her notice of disqualification in April 2018 and later informing the Court about the Operation Supervisor's change in status was made without threat of a disciplinary proceeding in either Court. (1.6(j)). Her actions were honest, forthright, and tempered with respect for judicial process throughout.

Extraordinary good character attested to by a wide range of references in the legal and general communities who were aware of *the full extent* of the conduct alleged came forward with live testimony and by declaration in mitigation. (1.6(f).). In mitigation, eleven or so people testified live to Albert's good character and gave specific instances of her good character throughout her life from childhood onward to the present. Fifteen letters and declarations were also filed in support of her good character. Both Mr. Ocon (a veteran who received an award from the brigadier admiral) and Ms. Paula Gilbert-Bonnaire (a client who just won a fraudulent foreclosure trial) submitted character letters to the Eastern District in April 2021. [Ex 28, 30 RJN] Opposing counsel emailed Albert that he did not oppose her representation of Grewal after the Court issued the OSC. [Ex 1070]

Ms. Keyes, a childhood friend from Michigan testified on paper to Albert's honesty when their friend was abducted on their way to school wherein Ms. Albert and Ms. Keyes reported their friend's abduction and their initial witness testimony in a matter that took many turns, eventually helped lead the way to enacting a federal law for Post-Conviction DNA testing and for exonerating a wrongfully convicted person of her murder. [Keyes Decl. Ex 1122].

Others in the legal community testified to Albert's honesty and integrity including a paralegal and Chair of the Santa Monica Housing Commission (Theresa Marasco); a retired federal agent (Greg Meinhardt); two attorneys (Brian Liddicoat and Chad Pratt); and one retired purple heart veteran, expert witness in trauma counseling, and former peace officer (Ed Garza). Michael Chernus, a retired probation officer and co-credentials committee member of the California Democratic Party also

testified by declaration. [Ex 1125, 1130, 1140] Dan Chmielewski, former CDP delegate and DPOC member testified to  Albert's good character, integrity, and honesty as a fellow delegate in the party along with Ed Garza, Deborah Rich and Michael Chernus by declaration. [Ex 1133, 1135, 1130] Dan Chmielewski owns a public relations firm and is an expert with many awards in his industry. [Ex 1154]. Ed Garza has a purple heart and many Congressional awards. Monique Bryher, a licensed real estate professional, and Christine Rossi both testified by declaration only as to the former being a colleague that both knew Leslie Westmoreland and the latter a neighbor that saw the politics. [Ex 1136, 1137]. So did Gerald Senear, a strong advocate for the wrongfully convicted and former founder of a group advocating for parenting time for fathers. [Ex 1138]. Former or current clients that testified to Albert's honesty, integrity and good character included Holly Burns and Joanne Anderson – and need for her legal services in the community. Holly Burns is a college student. Joanne Anderson is a retired real estate broker and expert in that field. Two additional declarations from clients were also admitted (Antonio Marasco and Simon Valenzuela). Mr. Schales, a Los Angeles County civil engineer, also testified to Ms. Albert's good character and competence in handling Gilbert-Bonnaire's trial. [Ex 1124, 1126, 1127, 1141, 1151] Last, but not least, one of the most powerful figures to testify from the Maryland/D.C. area was Mark Aitken, SVP of engineering at Sinclair Broadcast Group, who testified to Albert's honesty, integrity, and good reputation that she had developed in the broadcast technology area while she was suspended. So did Jim Ocon. Jim O'Brien, president of Aveco a leading international tech company in automation testified by declaration. [Ex 1129, 1131, 1139] Mark Aitken is an industry leader at the top of his field in an organization that operates approximately 150 broadcast stations across the United States and has won many industry awards in engineering.  Albert demonstrated her lifelong dedication to the law and her hard work where she was trying to regain reinstatement of her license, not flaunting the rules. She was working hard at doing things outside of the area of law to try to sustain herself, not advertising or making money by holding herself out as an attorney while she was suspended.

Albert presented evidence that she did <u>not</u> hold herself out as an attorney practicing law in California while she was suspended. This case is atypical of a UPL case. She was attending trade shows in 2019 and 2020 with Jim Ocon until covid shutdown everything in broadcast technology. [Ocon & Albert testimony, Ex 1093] Albert also started a tech company called Simply Lenore in October 2019 creating a litigation computer program which filled her time more than her pocketbook. For example, she had a group of nearly 10,000 people who had Long Covid symptoms. She was building a computer program for litigators and used one of the modules to cluster and track Long Covid symptoms over time

using a machine learning artificial intelligence model. She was interviewed by Vice News and after the piece aired, it was placed on YouTube where it garnered over 300,000 views. It helped many people get medical care and led to a SAMS application with the NHS on March 16, 2021. [Ex 1040, 1041, 1086] She testified her tech startup was no flash in the pan and she fought for two years to obtain her trademarks "ICanID" and "MasterMined" from the USPTO. [Ex 1043-1044] The evidence showed she was working with Jim Ocon on the OConsortium technology tour demonstrating ATSC 3.0 technology glass-to-glass throughout the country during Covid. Mark Aitken, Jim Ocon and Jim Obrien all testified to this in person and/or by declaration. Plus, she was identified in several photos. [Ex 1084. , 1119, 1129, 1131, 1139]. Ms. Albert also engaged in many civic duties at city council meetings, CDP, writing legal articles, and participating in nonprofits. [Test. of Albert, Ex 1094-1096]  She even stuffed stockings for the homeless vets at Heroes Landing, Christmas 2020. [Test. of Garza, Albert, Ex 1087, 1089]. Albert judged college Moot Court competitions, and joined ABA, FBA, NACA, OCBA and CAOC, too.

As a Delegate to the California Democratic Party (CDP) she wrote several consumer protection resolutions which all passed. [Testimony of Albert, Ex 1090 identified but not admitted].  She also ran for office inside and outside the party. [Ex 1091, 1115, 1116, 1117]. In a famous New York case, *Citizens United v. Schneiderman* (S.D.N.Y. 2016) 203 F. Supp. 3d 397, 411, New York law includes "patriotic" activities as being charitable. In California, "A right to seek public office is akin to the right to hold it as well as to the First Amendment right to petition the government since seeking and gaining an office may be a most effective way to redress grievances (8 U.C.L.A. L.Rev. 729). L.Rev. 729)." *Kinnear v. City and County of San Francisco* (1963) 35 Cal. Rptr. 43, 47.

### 3.  <u>Any Punishment Would Be Punitive Which is Contrary to the Purpose of Discipline</u>

Standard 2.10 (§ 6125 UPL), 2.11 (§ 6106 moral turpitude), and 2.12 (§ 6068/3.4f) do not apply. The facts don't fit. Standard 2.19 is the only possible standard to apply if found culpable because the other standards are all covered by the statutes in the State Bar Act which the California Supreme Court has already determined through precedent cannot apply to conduct in federal court. Standard 2.19 provides: "Suspension not to exceed three years or reproval is the presumed sanction for a violation of a provision of the Rules of Professional Conduct not specified in these Standards." Without any formal interpretation or an Order reprimanding Albert for violation by the Eastern District, the Court should go for reproval. The factors in mitigation outweigh the factors in aggravation with "net effect"

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

1  demonstrating that a "lesser sanction is needed to fulfill the primary purposes of discipline [by]

2  impos[ing] or recommend[ing] a lesser sanction that what is otherwise specified in a given Standard."

3  (Standard 1.7(c)). Something lesser than disbarment or suspension is appropriate here because there has

4  been "little or no injury to a client, the public, the legal system, or the profession" and the record shows

5  that Albert 'has the ability to conform to ethical responsibilities in the future." (Standard 1.7(c)). Where

6  there is no intent to deceive, defraud or oppress, like this case, the button needs to push downward to a

7  private reproval which is adequate. *Ames v. State Bar* (1973) 8 Cal.3d 910, 921.[3]

8       J.    **No Basis for an Award of Monetary Sanctions Exists In this Case**

9       Most of the alleged conduct took place 2019--while Albert was suspended. There was only one

10 paper filed in Grewal, an Answer, in 2021. No warning was given to Albert between these two

11 instances. Thus, the vast majority of alleged misconduct occurred prior to April 1, 2020, the effective

12 date of Rule 5.137 which implements Business and Professions Code § 6086.13.  Albert contends the

13 State Bar failed to produce evidence that would warrant a penalty such as sanctions in this case because

14 no harm was caused the public or the courts. More than 160 cases have issued sanctions since the

15 enactment, but none similar to the charges made here. Upon resignation only $1,000. was issued and

16 made payable over three years in *In re Stocker* (Aug. 25, 2022, S275166). Moreover, because the

17 statute is not *retroactively applied*, this Court should not issue monetary sanctions in this case because

18 most of it occurred in 2019 prior to the effective date of State Bar Rule of Procedure 5.137. See Judge

19 Roland's Opinion *In the Matter of Philip Koebel St. Bar* 15-O-11448, p. 32 (Jan. 5, 2021) citing, *In the*

20 *Matter of Wu* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 263, 267 [the rules of statutory

21 construction apply when interpreting the Rules of Procedure of the State Bar]; *Evangelatos v. Superior*

22 *Court* (1988) 44 Cal.3d 1188, 1208—1209 [absent an express retroactivity provision in the statute or

23 clear extrinsic sources of intended retroactive application, a statute should not be retroactively applied];

24 *Myers v. Philip Morris Companies. Inc.* (2002) 28 Cal.4th 828, 841 [where retroactive application of a

25 statute is ambiguous, the statute should be construed to apply prospectively]; *Fox v. Alexis* (1985) 38

26 Cal.3d 621, 630-631 [the date of the offense controls the issue of retroactivity]. Id. If the Court does

27 consider issuing a sanction it should take into account that no client was harmed, no court order was

28 violated, and no opposing counsel was offended. Ms. Albert has been in bankruptcy since 2018.  *Timbs*

*v. Indiana* (2019) 139 S. Ct. 682. The evidence showed that Albert did not have the type of disposable

---

[3] Even those soliciting murder get the Court's grace. (See, *Montag v. State Bar* (1982) 32 Cal.3d
721, 723,

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

income to pay $21,000.00 for State Bar costs to defend her license in addition to any sanctions or fines being requested by the State Bar. (Albert testimony, Ex 1156, 1167 identified but not admitted].

### K. State Bar Discipline Should Not Punish With Excessive Fines or Costs

The point of discipline is to protect the public. As a consumer protection attorney, Albert's interests are consistent with the ethics that this honorable State Bar upholds. Her practice represents those who need greater access and inclusion in the legal system. That was no less true of people like Brooke Noble and her now deceased mother, Ms. Kilgore. "Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." Cal. Bus & Prof Code § 6001.1

The law the State Bar is using for UPL is inapposite because either they were matters in a state court where UPL occurred or the person was never a member of the federal court, or they were flying solo without assisting another attorney in good standing, or failed to gain admission when they were a member in good standing in a state where it was required.

Costs *should not* be awarded to the State Bar but to Albert. If Costs are awarded to the State Bar, then the Court should recommend an affordable annual payment plan to comply with the Eighth Amendment. *Timbs v. Indiana* (2019) 139 S. Ct. 682. It should also be a *pro rata* share to be consistent with California law on the right of a professional to defend her reputation in  administrative proceedings. *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 347. (Meaning the State Bar Disciplinary costs like the cost of rent in California – is just too high).

Finally, any suspension term should be offset by credit for the time Albert was previously suspended based on the debt the Ninth Circuit later ruled was discharged on February 26, 2019.

The Court can credit prior suspension time as time served in this case and other pending matters before this Court. *In re Cadwell* (1975) 15 Cal.3d 762, 772-73. If the Court is inclined to issue a suspension, Albert contends credit should be given for her 30-day suspension and six-month suspension elongated to three years based on the State Bar's failure to recognize the discharge of mandatory payment obligations. See also, *In re Fraas* (Nev. 2012) 381 P.3d 623 (attorney who mistakenly did UPL, then ceased upon knowledge did not warrant an additional two years' probation). Albert's witnesses testified that she should remain in practice because her work benefits the public.

### III.    CONCLUSION

Either, "the State Bar has no conceivable motive for controlling the practice of law before the federal judiciary"( *John Roe v State Bar of California*, 22-cv-00983-DFM (No. 113-1 p.30 (CD Cal. 11-21-2022)) or it doesn't. Wherefore, Respondent requests this Court deny and dismiss all charges

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

with prejudice, award Albert costs, and whatever further relief is just. If it must punish, then no more than necessary.

Dated:  January 6, 2023                          Respectfully Submitted,

                                                 /s/ Lenore Albert
                                                 LENORE L. ALBERT
                                                 Respondent, pro se

**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

CORRECTED PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years; that I am employed in Orange County, California; my
business address is 1968 S. Coast Hwy #3960, Laguna Beach, CA 92651

On January 6, 2023, I served a copy of the following document(s) described as
**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**

On the interested parties in this action as follows:

Cindy Chan
Senior Trial Counsel
State Bar of California
Office of Chief Trial Counsel
845 South Figueroa Street
Los Angeles, California 90017-2515
(213) 765-1292

**[ ] BY OVERNIGHT MAIL –** I caused such document(s) to be placed in pre-addressed envelope(s)
with postage thereon fully prepaid and sealed, to be deposited as Express/Priority Mail for next day
delivery at Westminster, California, to the aforementioned addressee(s).
**[ ] BY PERSONAL DELIVERY** – I caused such document(s) to be placed in an envelope and hand
delivered to the partie(s) at the hearing in court on this matter.
**[ ] BY FAX** – I caused such document(s) to be transmitted Facsimile from the offices located in
Westminster, California this business day to the aforementioned recipients.
**[ ] BY MAIL –** I caused such document(s) to be placed in pre-addressed envelope(s) with postage
thereon fully prepaid and sealed, to be deposited as regular US Mail at Westminster, California, to the
aforementioned addressee(s).
**[ x] BY EMAIL  –** I caused such document(s) to be transmitted to the office(s) of the addressee(s)
listed above by electronic mail at the e-mail address(es) set forth above.

        I declare under penalty of perjury under the laws of the State of California and the United States
of America that the foregoing is true and correct.

Dated: January 6, 2023

/s/ Lenore Albert
Lenore Albert

22
**RESPONDENT LENORE L. ALBERT'S CLOSING TRIAL BRIEF**
*In re Lenore Albert*   SBC 22-O-303048-DGS

EX 7

# The State Bar
## *of California*

**WITNESS INTERVIEW MEMORANDUM**

DATE OF CONTACT:  March 1, 2022

TO:  **FILE**

FROM:  B. Hom, Investigator          _____

RESPONDENT NAME:  Lenore Albert

FILE NUMBER:  21 O 05360

INTERVIEW OF:        Kamran Javandel, Esq.
                     Cindy Chan, SA
                     Benson Hom, Inv.

METHOD OF CONTACT:         Telephonic  - Zoom Meeting – Cindy Chan's Room

TIME INTERVIEW BEGAN:  About 2:00 pm      TIME INTERVIEW ENDED:  About 2:20 pm

DATE MEMO PREPARED:  March 1, 2022

---

Attorney Javandel provided the following:

This was a wrongful death action re Kilgore.  Wells Fargo had lawfully evicted Kilgore by foreclosure.  The Noble action was that the eviction was wrongful by the sheriff.  Wells Fargo was granted the right to the property.  Wells Fargo prevailed by summary judge.

Mr. Javandel also represented Wells Fargo on the appeal.

Regarding document no. 38, the court meant in R's suspension by the Ninth Circuit, she could respond on Noble's behalf.  Yes, this probably included filing briefs in their jurisdiction.

Mr. Javandel said that he looked at some emails.  He recalled the dealings with R was unpleasant.  There is an email dated June 28, 2018 that R was suspended on October 15,2018.  Albert had filed a motion to extend time to file brief.

There was a window when R was not suspended   There was some confusion on her Bar status.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

SB-004344

1007-1

Mr. Javandel recalled speaking to Susan Grant who told him that R was not eligible and the suspension was lifted due to the bankruptcy.  R was concern about the motion for extension and that it might confuse per Grant.  Grant advised that R representing Noble was a violation even if the 9th circuit allowed.  There were no emails with Grant, they spoke only by phone.

Mr. Javandel stated that on 11/21, R filed 1 day late.  Then the court issued the Order that R was reciprocally suspended except for developments in the case.

On February 26, 2019, R filed a supplementation.

On March 12, 2019, R filed an acknowledgment of a hearing date that was vacated.

There is a box in ECF for the attorney to click to certify membership in good standing.

In August 2019, R filed a motion  to vacate.

Mr. Javandel was in the other case.  He did not represent Wells Fargo but was on the service list.  R was making accusation against him and his firm.

Lea Curran is not at that firm anymore.  She handled the response.  R's motions were denied.

Mr. Javandel will check his records if he has a copy of the Appellate commissioner report.