1  COOLEY LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  3 Embarcadero Center
   20th Floor
3  San Francisco, CA  94111
   Telephone:  (415) 693-2000
4  Facsimile:   (415) 693-2222

5  TIANA DEMAS (*pro hac vice*) (tdemas@cooley.com)
   110 N. Wacker Drive, Suite 4200
6  Chicago, IL  60606
   Telephone: (312) 881-6500
7  Facsimile:   (312) 881-6598

8  BARRETT J. ANDERSON (318539) (banderson@cooley.com)
   WALTER WAIDELICH (300798) (cwaidelich@cooley.com)
9  4401 Eastgate Mall
   San Diego, CA 92121
10 Telephone:  (858) 550-6000
   Facsimile:   (858) 550-6420

11
12 GREGORY MERCHANT (341287) (gmerchant@cooley.com)
   3175 Hanover Street
13 Palo Alto, CA 94304
   Telephone:  (650) 843-5000
   Facsimile:   (650) 849-7400

14
15 *Attorneys for Defendant*
   THE STATE BAR OF CALIFORNIA

16 *Counsel continued on following page*

17                    UNITED STATES DISTRICT COURT

18        CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

19

20 JOHN ROE 1, an individual; JANE        Case No. 8:22-cv-00983-DFM
   ROE 1, an individual; JANE ROE 2 an
21 individual; JANE ROE 3, an individual, **REPLY IN SUPPORT OF THE STATE**
   JOHN ROE 2, on behalf of themselves    **BAR OF CALIFORNIA'S**
22 and all others similarly situated,     **SUPPLEMENTAL MOTION TO DISMISS**
                                          **PLAINTIFFS' SECOND AMENDED**
23                    Plaintiffs,         **COMPLAINT**
          v.
24                                        Courtroom:  6B
   THE STATE BAR OF CALIFORNIA;          Judge:      Hon. Douglas F. McCormick
25 TYLER TECHNOLOGIES, INC.;             Date:       [The Clerk of Court will
   RICK RANKIN; and DOES 4 through       Time:       reach out to set a hearing
26 10, inclusive,                                    date, (Dkt. 110)]

27                    Defendants.

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    REPLY IN SUPPORT OF CA STATE
                                    BAR'S SUPP. MOTION TO DISMISS SAC
                                    CASE NO. 8:22-CV-00983-DFM

OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
ELLIN DAVTYAN (238609) (ellin.davtyan@calbar.ca.gov)
General Counsel
ROBERT G. RETANA (148677) (robert.retana@calbar.ca.gov)
Deputy General Counsel
SUZANNE C. GRANDT (304794) (suzanne.grandt@calbar.ca.gov)
Assistant General Counsel
180 Howard Street
San Francisco, CA 94105-1639
Telephone:   (415) 538-2388
Facsimile:    (415) 538-2517

*Attorneys for Defendant*
THE STATE BAR OF CALIFORNIA

Reply in Support of CA State
Bar's Supp. Motion to Dismiss SAC
Case No. 8:22-cv-00983-DFM

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................. 1

    A.    The SAC's Antitrust Claims Fail to Satisfy Rule 8 ............................ 1

    B.    The State Bar is Immune From Antitrust Liability ............................ 3

    C.    The SAC Fails to State a Sherman Act Claim .................................... 7

        i.    The SAC fails to state a Section 1 claim ................................ 8

            1.    No agreement ................................................................. 8

            2.    No unreasonable restraint ............................................. 11

            3.    No cognizable causal antitrust injury .......................... 13

        ii.    The SAC fails to state a Section 2 claim .............................. 14

            1.    The SAC's refusal to deal theory is inapplicable .......... 14

            2.    The SAC does not allege attempted monopolization ..... 14

    D.    Leave to Amend Would Be Futile ..................................................... 16

III.   CONCLUSION .......................................................................................... 17

CООLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,
    592 F.3d 991 (9th Cir. 2010) ..................................................................... 14

6

7

*Am. Needle, Inc. v. Nat'l Football League*,
    560 U.S. 183 (2010) ..................................................................................... 11

8

9

*Am. Society of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982) ..................................................................................... 15

10

11

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
    9 F.4th 1102 (9th Cir. 2021) ....................................................................... 11

12

*Bass v. Cnty. of San Diego*,
    2009 WL 10671992 (S.D. Cal. Aug. 25, 2009) ....................................... 7

13

14

*Bates v. State Bar of Arizona*,
    433 U.S. 350 (1977) ....................................................................................... 6

15

16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 9

17

18

*Benninghoff v. Sup. Ct.*,
    136 Cal. App. 4th 61 (2006) ....................................................................... 5

19

20

*Cal. Teachers Ass'n v. State of Cal.*,
    20 Cal.4th 327 (1999) ................................................................................... 7

21

22

*Cantor v. Detroit Edison Co.*,
    428 U.S. 579 (1976) ....................................................................................... 7

23

24

*Catlin v. Wash. Energy Co.*,
    791 F.2d 1343 (9th Cir. 1986) ................................................................... 15

25

*City of Columbia v. Omni Outdoor Advert., Inc.*,
    499 U.S. 365 (1991) .................................................................................. 3, 7

26

27

*Columbus Univ. v. Tummala*,
    2022 WL 1492167 (C.D. Cal. Feb. 8, 2022) ........................................ 9, 15

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1

### TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Copperweld Corp. v. Indep. Tube Corp.*,
4
    467 U.S. 752 (1984) ...................................................................... 11

5

*Daniels-Hall v. Nat'l Educ. Ass'n*,
6
    629 F.3d 992 (9th Cir. 2010) ....................................................... 10

7

*Fayer v. Vaughn*,
8
    649 F.3d 1061 (9th Cir. 2011) ..................................................... 13

9

*FTC v. Indiana Federation of Dentists*,
    476 U.S. 447 (1986) ................................................................ 12, 13

10

*FTC v. Qualcomm Inc.*,
11
    969 F.3d 974 (9th Cir. 2020) ..................................................... 8, 11

12

*Goldfarb v. Virginia State Bar*,
13
    421 U.S. 773 (1975) ...................................................................... 6

14

*Hatch v. Reliance Ins. Co.*,
15
    758 F.2d 409, 415 (9th Cir. 1985) ................................................. 2

16

*Hicks v. PGA Tour, Inc.*,
17
    897 F.3d 1109 (9th Cir. 2018) ..................................................... 11

18

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
19
    2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) ............................ 7, 16

20

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ....................................................... 9
21

22

*Kesler v. Ikea U.S. Inc.*,
    2008 WL 413268 (C.D. Cal. Feb. 4, 2008) ................................. 15

23

*Koefoot v. Am. College of Surgeons*,
24
    652 F. Supp. 882 (N.D. Ill. 1987) ............................................... 15

25

*Lai v. USB-Implementers F., Inc.*,
26
    2015 WL 12746705 (C.D. Cal. Mar. 11, 2015) ........................... 16

27

*LiveUniverse, Inc. v. MySpace, Inc.*,
28
    304 Fed. App'x 554 (9th Cir. 2008) ............................................ 14

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ........................................................................ 8, 13

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) .............................................................................................. 8

*N.C. State Bd. of Dental Exam'rs v. FTC*,
   574 U.S. 494 (2015) .............................................................................................. 3

*Nevijel v. N. Coast Life Ins. Co.*,
   651 F.2d 671 (9th Cir.1981) ................................................................................ 2

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018) ...................................................................................... 12

*Parker v. Brown*,
   317 U.S. 314 (1943) .....................................................................................*passim*

*Roy v. Contra Costa Cnty.*,
   2015 WL 5698743 (N.D. Cal. Sept. 29, 2015)............................................*passim*

*Schmidt v. Herrmann*,
   614 F.2d 1221 (9th Cir. 1980) ............................................................................ 2

*Silva v. City of San Leandro*,
   744 F. Supp. 2d 1036 (N.D. Cal. 2010).......................................................*passim*

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
   547 F. Supp. 2d 1086 (C.D. Cal. 2007)............................................................ 16

*Summit Health, Ltd. v. Pinhas*,
   500 U.S. 322 (1991) .......................................................................................... 11

*Town of Hallie v. City of Eau Claire*,
   471 U.S. 34 (1985) .............................................................................................. 3

*United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp., Inc.*,
   2012 WL 12845620 (S.D. Cal. Sept. 5, 2012) .................................................... 3

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) .......................................................................................... 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) ............................................................................... 11

**Statutes**

California Business & Professions Code § 6086.10(a) ........................................ 5, 6

Sherman Antitrust Act
   Section 1 ...................................................................................................*passim*
   Section 2 ...................................................................................................*passim*

**Rules**

Federal Rules of Civil Procedure
   Rule 8 ......................................................................................................... 1, 2
   Rule 12(b)(6) ............................................................................................... 7

Cooley LLP
Attorneys at Law
Los Angeles

- v -

Reply in Support of CA State
Bar's Supp. Motion to Dismiss SAC
Case No. 8:22-cv-00983-DFM

## I. INTRODUCTION

Plaintiffs' Opposition to the State Bar's motion to dismiss, (Dkt. 115), asserts incorrect arguments, ignores or misconstrues controlling authority, and fails to clarify the incoherent and unsupported allegations in the SAC.[1]  The Sherman Act claims should be dismissed with prejudice for three reasons.

*First*, the SAC does not pass muster under Federal Rule of Civil Procedure 8 because it is prolix, confusing, repetitive, and conclusory.  Despite a second chance at pleading a claim in the SAC, Plaintiffs have not articulated a coherent or clear theory of antitrust liability as required by Rule 8.

*Second*, the State Bar is immunized from Plaintiffs' antitrust claims under *Parker v. Brown*, 317 U.S. 314 (1943).  The Opposition confirms that the Sherman Act claims in the SAC, insofar as they may be understood, rest on the same core theory that the Court ruled unactionable when it dismissed the Sherman Act claims in the FAC; namely, "that the State Bar's disciplinary system is anticompetitive because it disproportionally benefits large law firms and harms solo practitioners." (Dismissal Order at 5.)   Plaintiffs' antitrust claims should be dismissed again, this time with prejudice.

*Third*, the SAC's antitrust claims should also be dismissed with prejudice because they fail to state a claim under Sections 1 or 2 of the Sherman Act.  The Opposition does nothing to show that the SAC pleads the required elements for either claim, nor do Plaintiffs show that they would be able to do so if given leave to amend. Dismissal with prejudice is therefore appropriate.

## II. ARGUMENT

### A. The SAC's Antitrust Claims Fail to Satisfy Rule 8

Federal Rule of Procedure 8 requires a plaintiff to allege "a short and plain statement" showing it "is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Complaints that

---

[1] Shorthand references in this brief correspond to those in the State Bar's opening brief.  Additionally, "Br." refers to the State Bar's opening brief, (Dkt. 113-1), and "Opp." refers to Plaintiffs' Opposition, (Dkt. 115).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

are "verbose, confusing and almost entirely conclusory" do not satisfy the rule. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir.1981). The SAC fails the Rule 8 standard because it is overlong and repetitive (stretching over 66 pages and nearly 300 dense paragraphs), rests on supposition and speculative theories rather than well-pled facts, and fails to allege anything approaching a recognizable antitrust claim. The Opposition does not save it.

At the threshold, the Opposition does not explain Plaintiffs' theory any more clearly than the SAC. Instead, Plaintiffs simply assert that the SAC contains "plausible facts pointing to antitrust injury," (Opp. at 5), which, even if true (and it is not), would not satisfy Rule 8 because the SAC remains impenetrable. Moreover, the only allegations the Opposition identifies as "plausible" are "some of the communications, the dates of those communications and the identity of the people speaking" that purportedly show "a conspiracy to cover up" the Incident. (*Id.*) But Plaintiffs do not explain how those anodyne communications—which show nothing more than the unremarkable fact that the State Bar and Tyler worked with Kevan Schwitzer, the owner of the third-party website involved in the Incident, to understand how the Incident occurred and to remedy it, (*see* SAC ¶¶ 103–18)— constitute an agreement to violate the Sherman Act (or any law). And the Opposition does not even attempt to link these communications to the SAC's other lengthy allegations about the State Bar's disciplinary system and cost structure, or the entirely meritless accusation that the State Bar is attempting to monopolize access to the federal judiciary.

The SAC's antitrust claims should thus be dismissed with prejudice because they constitute a "confusing, distracting, ambiguous, and unintelligible pleading[]." *Schmidt v. Herrmann*, 614 F.2d 1221, 1224 (9th Cir. 1980) (dismissing complaint for failure to satisfy Rule 8); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (upholding Rule 8(a) dismissal of complaint that "exceeded 70 pages in length, [and was] confusing and conclusory"); (Br. at 10–12).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

2

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-cv-00983-DFM

### B.    The State Bar is Immune From Antitrust Liability

The State Bar is entitled to *Parker* immunity because, just as the Court recognized when it dismissed the FAC's antitrust claims, Plaintiffs' theory of antitrust liability rests on the assertion that "the State Bar's disciplinary system is anticompetitive because it disproportionally benefits large law firms and harms solo practitioners." (Dismissal Order at 5.)  The SAC—although now larded with an additional 170 paragraphs of irrelevant, nonsensical, and conclusory allegations— still advances the same theory: that the State Bar's disciplinary system somehow harms "PeopleLaw" lawyers more than those who represent "Organizational Clients." (SAC ¶ 192.)  The State Bar is thus still entitled to immunity.

To begin, the Opposition misstates the *Parker* standard.  *Parker* immunizes a state entity's activities when two elements are met: first, "the challenged restraint [is] one clearly articulated and affirmatively expressed as state policy" and, second, "the policy [is] actively . . . supervised by the state." *N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 503–04 (2015) (citations omitted).  With respect to the first element, Plaintiffs argue that the state policy at issue must explicitly describe what action the state entity may take.  Not so.  *Parker* immunity requires only that the alleged activity be a "foreseeable result" of the clearly articulated state policy.

The Supreme Court addressed that very issue in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991), where it ruled that a state's policy allowing municipalities to adopt zoning regulations—a policy that did not explicitly permit anticompetitive conduct—was sufficient to trigger *Parker* immunity.  The Court reasoned that "[i]t is enough . . . if suppression of competition is the 'foreseeable result' of" the policy. *Id.* at 373; *see also Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43 (1985) (finding city immune under *Parker* and rejecting argument that, "[t]o pass the 'clear articulation' test, a legislature must expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects"); *United Nat'l Maint., Inc. v. San Diego Convention*

Cooley LLP
Attorneys at Law
Los Angeles

3

Reply in Support of CA State
Bar's Supp. Motion to Dismiss SAC
Case No. 8:22-cv-00983-DFM

1  *Ctr. Corp., Inc.*, 2012 WL 12845620, at *5 (S.D. Cal. Sept. 5, 2012) ("Express

2  authorization of particular anti-competitive conduct is not required; it is sufficient if

3  the alleged actions were a foreseeable result of a broader statutory authorization.").

4      Plaintiffs attempt to avoid *Parker* immunity by applying their incorrect *Parker*

5  standard to three purported "restraints," namely (1) an alleged conspiracy between

6  the State Bar and Tyler to "cover up" the Incident; (2) the State Bar's alleged effort

7  to monopolize access to federal courts; and (3) the State Bar's disciplinary cost

8  structure. (Opp. at 6–14.)  Each of these alleged "restraints"—even if properly

9  alleged with facts and not mere speculation (and they are not)—arise from the

10  State Bar's disciplinary system and thus are immunized under *Parker*.

11      *First*, the Opposition argues that there is no "clearly articulated state policy"

12  to permit the State Bar to "work with its software provider to cover up" the Incident.

13  (Opp. at 7.)  At the same time, Plaintiffs assert that the alleged "cover up" "hurt more

14  attorneys in the PeopleLaw market due to the way the State Bar disciplinary system

15  is structured." (Opp. at 2–3.)  That means the unsupported "cover up" allegations are

16  no different than the others already dismissed by the Court, and go to Plaintiffs' claim

17  that "the State Bar's entire attorney disciplinary system violates the Sherman Act."

18  (Dismissal Order at 4–7.)  The claim is thus not actionable under *Parker*.

19      *Second*, Plaintiffs contend that "there is no policy or oversight in the

20  State Bar's attempt to monopolize the Federal Bar and Court." (Opp. at 7.)  As far

21  as the State Bar can understand this theory, Plaintiffs seem to be claiming that the

22  State Bar determines who can practice law in California—which is exactly what it is

23  authorized by the State of California to do.  As to federal-court practice, the State Bar

24  does not have the authority (or interest) in regulating federal courts, which each create

25  their own local rules and may require, if they choose, that lawyers hold a State Bar

26  license to practice in their jurisdictions.  (Notably, had Plaintiffs tried to sue a federal

27  court for alleged antitrust violations similar to those they have alleged against the

28

4

State Bar, the court would be constitutionally immune from that challenge, too.)[2] And, in addition to being nonsensical and unsupported by any well-pled fact, Plaintiffs' theory is premised on a State Bar disciplinary proceeding involving Plaintiffs' counsel. (Opp. at 22.) As the Court ruled when dismissing the FAC's antitrust claims, "the State Bar's activity with respect to attorney discipline is defined and at the behest of the California Supreme Court." (Dismissal Order at 7.) No claim may stand against the State Bar for performing its constitutional and statutory duty of determining who can practice law in California.

*Third*, the Opposition asserts that the State Bar's disciplinary cost structure is not immune from antitrust liability for several reasons; all lack merit. Plaintiffs start by arguing that the cost structure is "created, instituted, and enforced by the Board at the State Bar alone." (Opp. at 8–9.) Plaintiffs are simply incorrect. As explained in the State Bar's opening brief, "[t]he Legislature . . . grants the Supreme Court the authority to assess costs," including the State Bar's costs, when imposing disciplinary orders on attorneys found culpable of committing ethical violations. (Br. at 4 (citing Cal. Bus. & Prof. Code. § 6086.10).) The State Bar calculates its costs using an objective formula that has been in place for nearly 30 years and then recommends a cost award to the Supreme Court. (*Id.* (citing Ex. D).) The Supreme Court may adopt or reject the costs as part of the final disciplinary order. (*Id.*) Attorneys against whom costs are assessed may seek various forms of relief from those costs. (*Id.* at 5– 6.)[3] This process, as shown by statutes, rules, and properly incorporated documents,

---

[2] Plaintiff's citation to *Benninghoff v. Superior Court*, 136 Cal. App. 4th 61 (2006), is misplaced because that case did not involve *Parker* immunity or an antitrust claim. Rather, it concerned a request by the State Bar for a state court to assume jurisdiction over a former lawyer's unauthorized practice of law. *Id.* at 65. The state court sustained the request as to the former lawyer's state-court practice, but ruled that his federal practice was beyond its reach because "federal courts and agencies [have the right] to control who practices before them." *Id.* at 74. Here, the State Bar has not requested that a state court assume jurisdiction over anyone's federal-court practice, and the ongoing disciplinary action against Plaintiffs' counsel is irrelevant to the claims in this lawsuit. (*See* Dkt. 117, Ex. 5 (State Bar's Closing Brief) at 1.)

[3] The Opposition makes several incorrect representations that warrant correction. The State Bar did not "acknowledge[] that it operates outside the oversight of the California Supreme court or the legislature," nor did it "conflate[]" its annual license

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

5

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1    demonstrates that the State Bar's disciplinary costs structure is both the foreseeable

2    result of a clearly articulated state policy and actively supervised by the state.

3    (*See also* Dismissal Order at 6 ("The State Bar is a component of the California

4    judiciary, subject to the supervision of the California Supreme Court.").)[4]

5        The Opposition cites to *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975),

6    and argues that, for *Parker* immunity to apply, the State Bar's disciplinary cost

7    structure must be "*compelled by* the direction of the State acting as a sovereign to

8    charge the attorneys more if they want to defend against a disciplinary charge." (Opp.

9    at 12 (emphasis in original).)    Plaintiffs elide that the Legislature adopted

10   Section 6086.10(a) of the California Business and Professions Code, which provides

11   that "the Supreme Court shall include a direction [in each disciplinary order] that the

12   licensee shall pay costs."  In other words, the State Bar's disciplinary cost structure

13   *is* compelled by the State.  Moreover, the State Bar Antitrust Policy expressly

14   provides that the California Supreme Court has "the authority to review State Bar

15   actions for antitrust issues and impacts on competition."  (Ex. F at 1.)[5]  Thus, as the

16   State Bar argued in its opening brief, *Goldfarb*'s holding is inapplicable to this case

17   because "the State Bar's fees and costs are set at the direction, authorization, and

18   supervision of the Legislature and Supreme Court."  (Br. at 14.)

19 ─────────────

20   fees with disciplinary costs.  (Opp. at 9–10.)  The Opposition is also wrong that
     "traditionally there is no relief" from disciplinary costs.  (*Id.* at 9.)  The explanations
21   of California's attorney discipline system above and in the State Bar's opening brief
     (*see* Br. at 3–6), show why each of these statements is false.

22   [4] Plaintiffs' effort to distinguish *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977),
     fails.  (Opp. at 10–11.)  The Court quoted that case twice, (Dismissal Order at 5, 7),
23   and the State Bar likewise cited it for the proposition that a state supreme court's
     "affirmative command" is entitled to *Parker* immunity, (Br. at 14).  That the
24   command came from Arizona's supreme court and concerned attorney advertising is
     of no moment; the principle applies equally to California supreme court decisions on
25   disciplinary orders recommended by the State Bar.

26   [5] The Opposition argues that the Antitrust Policy is a "red herring" because it does
     not compel action, (Opp. at 12), but that is plainly incorrect.  The Antitrust Policy
27   expressly commands that "the State Bar must take no action in violation of the
     antitrust laws" and further explains that "[t]he Supreme Court, in the exercise of its
28   inherent authority, may conduct a de novo review and may modify or reject any
     policy or action of the State Bar relating to the regulation of the practice of law,
     including any that may implicate antitrust and competition issues."  (Ex. F at 1–2.)

1    Plaintiffs also assert that the State Bar is not immune under *Parker* because the

2 cost structure "requires attorneys to pay more in costs if they demand an

3 administrative hearing." (Opp. at 10.) The only authority they cite for this novel

4 proposition is *California Teachers Association v. State of California*, 20 Cal.4th 327

5 (1999). That case is inapposite here because it did not address *Parker* immunity or

6 an antitrust claim. Because disciplinary costs are integral to the State Bar's

7 administration of the attorney disciplinary system as articulated in state law, and each

8 disciplinary order and its related costs is directly reviewed by the California Supreme

9 Court, the State Bar's cost structure is immunized under *Parker*.[6]

10    Because the antitrust claims alleged against the State Bar in the SAC arise

11 entirely from the State Bar's disciplinary system, they are foreclosed by *Parker*

12 immunity and should be dismissed with prejudice. *See Bass v. Cnty. of San Diego*,

13 2009 WL 10671992, at *4 (S.D. Cal. Aug. 25, 2009) (dismissing Sherman Act claim

14 with prejudice under *Parker* immunity).[7]

15    **C.    The SAC Fails to State a Sherman Act Claim**

16    Plaintiffs' antitrust claims also fail to state a claim under Federal Rule of

17 Civil Procedure 12(b)(6). The Opposition does not remedy the SAC's numerous

18 pleading deficiencies for the Sherman Act claims, including that Plaintiffs do not

19 aver sufficient non-conclusory facts to render the claims plausible. (Br. at 14–16.)

20 Furthermore, the Opposition falls short of showing that the SAC pleads any of the

21 required elements of claims under Sections 1 or 2 of the Sherman Act. Both claims

22 should be dismissed with prejudice. *See Int'l Norcent Tech. v. Koninklijke Philips

23 Elecs. N.V.*, 2007 WL 4976364, at *16 (C.D. Cal. Oct. 29, 2007), *aff'd,* 323 F. App'x

24

---

25 [6] Plaintiffs assert that the State Bar is not immune under *Cantor v. Detroit Edison Co.*, 428 U.S. 579 (1976). *Cantor* involved a lawsuit between two private entities

26 and the Court addressed only whether "private conduct required by state law is exempt from the Sherman Act." *Id.* at 592. There is no dispute that the State Bar is

27 a public entity engaging in solely public activity. *Cantor* is inapplicable.

[7] Insofar as Plaintiffs argue the State Bar is not immune simply because they allege

28 a "conspiracy," (*see, e.g.*, Opp. at 2), that argument fails because "[t]here is no . . . conspiracy exception" to *Parker* immunity, *Omni Outdoor Advert.*, 499 U.S. at 374.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

7

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

571 (9th Cir. 2009) (dismissing complaint with prejudice where it failed "to allege something more than a conclusory violation of the Sherman Act").

### i.    The SAC fails to state a Section 1 claim

To state a Section 1 claim, a plaintiff must plausibly allege "(1) the existence of an agreement, and (2) that the agreement was in unreasonable restraint of trade," *FTC v. Qualcomm Inc.*, 969 F.3d 974, 988–89 (9th Cir. 2020) (internal quotation marks omitted), and also that the agreement "actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')," *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).  The Opposition does not resuscitate the SAC's failure to plead that the State Bar entered into a prohibited agreement, unreasonably restrained trade, or caused Plaintiffs to suffer a cognizable injury.  (Br. at 16–21.)

### 1.    No agreement

Plaintiffs assert that the State Bar agreed with Tyler to "cover up" the Incident.  (Opp. at 16.)  As an initial matter, Plaintiffs fail to respond to the State Bar's argument that, as a matter of law, no prohibited agreement could have existed because the State Bar and Tyler are not in the same supply chain and are not competitors.  (Br. at 17.)  Plaintiffs also do not identify any allegations in the SAC that the State Bar had a "'conscious commitment to a common scheme designed to achieve an unlawful objective.'"  (*Id.* (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citation omitted)).)  Either of these grounds is sufficient to dismiss the claim, and the Opposition's failure to address them means Plaintiffs "have conceded that the claim fails."  *Roy v. Contra Costa Cnty.*, 2015 WL 5698743, *3 n.7 (N.D. Cal. Sept. 29, 2015) (cleaned up); *see also Silva v. City of San Leandro*, 744 F. Supp. 2d 1036, 1050 (N.D. Cal. 2010) ("Plaintiffs do not address this argument in their Opposition brief, implicitly conceding that these claims fail.").

The Section 1 claim also fails because the SAC and incorporated documents contradict Plaintiffs' "cover up" allegations.  As Plaintiffs concede, the State Bar

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

8

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

promptly informed the public about the Incident on February 26, 2022, only two days
after the State Bar learned about it.  (Exs. A, B.)[8]  The SAC and incorporated
documents also show that the State Bar regularly updated the public about the
Incident and its efforts to resolve it through website posts and notifications to each
affected individual.  (SAC ¶¶ 75, 89, 124, 126–27; Exs. A, B.)  These facts
demonstrate that, far from covering up the Incident, the State Bar was transparent
and forthcoming with the public from the very start.

     The Opposition argues that the State Bar and Tyler delayed responding to the
Incident, which shows that they "were working together" because "economic theory
implies they would have individually acted sooner."  (Opp. at 15–16.)  The Court
should disregard these conjectural and factually deficient allegations.  The SAC and
properly incorporated documents show there was no delay: on learning of the
Incident, the State Bar immediately started investigating its cause and extent, and
only two days later informed the public about the Incident and the efforts to remedy
it. (Exs. A, B.)  Given those facts, Plaintiffs' hypothesized "economic theory" cannot
demonstrate an illegal agreement.  And while Plaintiffs baldly assert that the State
Bar and Tyler were incentivized to agree to cover up the Incident because otherwise
they would "face liability" or lose their reputations, (Opp. at 16), they do not identify
what potential liability or reputational threat existed or why the State Bar would have
agreed to mislead the public to avoid any such imagined threat.  Finally, even if the
SAC alleged a delay by the State Bar and Tyler in responding to the Incident (and it
does not), "allegations of parallel business conduct, taken alone, do not state a claim
under § 1."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007); *see also
Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (affirming dismissal

---

[8] Plaintiffs do not oppose the State Bar's Request for Judicial Notice. (Dkt. 114.) As
with the State Bar's request for judicial notice in its first motion to dismiss, the Court
should grant it and find Exhibits A–F incorporated by reference and properly subject
to judicial notice. (*See* Dismissal Order at 3 n.1.)  In contrast, Plaintiffs' Request for
Judicial Notice, (Dkt. 117), is improper because a "complaint may not be amended
by briefs in opposition to a motion to dismiss," *Columbus Univ. v. Tummala*, 2022
WL 1492167, at *6 (C.D. Cal. Feb. 8, 2022) (cleaned up).

Cooley LLP
Attorneys at Law
Los Angeles

9

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1  of Section 1 claim where plaintiffs "failed to plead any evidentiary facts beyond

2  parallel conduct to prove their allegation of a conspiracy").

3       The Opposition also contends that "email threads obtained from

4  Kevan Schwitzer" show the existence of an agreement between the State Bar and

5  Tyler. (Opp. at 15.)[9] None of the communications alleged in the SAC, even when

6  viewed in the light most favorable to Plaintiffs, show anything of the sort. (*See, e.g.*,

7  SAC ¶¶ 103–18.) Those messages were not between the State Bar and Tyler and do

8  not contain any suggestion of an explicit or implied agreement between the two

9  organizations to cover up the Incident or mislead the public about it. Further, of the

10  21 communications, only one was sent to Mr. Schwitzer by an individual affiliated

11  with the State Bar—Rick Rankin, the State Bar's interim IT director—and it merely

12  expresses that the State Bar was investigating the cause of the Incident. (*See id.*

13  ¶ 104.) The other messages were between Mr. Schwitzer and a Tyler employee, and

14  simply discussed the Incident and how to resolve it. (*Id.* ¶¶ 103, 105–18.) These

15  unremarkable emails do not support Plaintiffs' baseless charge of a cover up.

16       Plaintiffs next speculate that, because individuals at the State Bar and Tyler

17  both used the phrase "page views," it "demonstrates an agreement . . . to obfuscate"

18  the Incident. (Opp. at 15.) The Opposition offers no supporting authority for that

19  conclusory proposition. In any event, that two individuals used a common phrase to

20  describe a technical aspect of the Incident hardly demonstrates a cover up. The Court

21  should reject Plaintiffs' unsupported and speculative allegations. *See Daniels-Hall*

22  *v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however,

23  required to accept as true allegations . . . that are merely conclusory, unwarranted

24  deductions of fact, or unreasonable inferences.").

25       Finally, the Section 1 claim fails because the State Bar cannot legally conspire

26  with its own Governing Board. (Br. at 16–17.) In response, Plaintiffs contend that

27

28

---

[9] Plaintiffs obtained these emails from Mr. Schwitzer, who was initially named a defendant, in exchange for dismissing him as a defendant in this case. The Court dismissed Mr. Schwitzer from the case on May 20, 2022. (*See* Dkt. 26).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES
10
REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

the State Bar "'was controlled by a group of competitors and served, in essence, as a vehicle for ongoing concerted activity.'" (Opp. at 19 (quoting *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010).) But to plead a Section 1 claim, a plaintiff must allege that "the agreement joins together 'independent centers of decisionmaking,'" as opposed to "unilateral behavior flowing from decisions of a single enterprise." *Am. Needle*, 560 U.S. at 195–96. The SAC does not allege any facts suggesting that the State Bar and its Governing Board acted independently with respect to any of the alleged conduct at issue in this case. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (explaining Section 1 "reaches unreasonable restraints of trade . . . between *separate* entities").[10] The Section 1 claim therefore must be dismissed for failure to plead an improper agreement.

## 2.    No unreasonable restraint

To plead an unreasonable restraint of trade, Plaintiffs must satisfy either the *per se* rule or the rule of reason. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1108 (9th Cir. 2021). Plaintiffs concede that they "never alleged this was a per se violation." (Opp. at 19.) And Plaintiffs' fail to state a claim under the rule of reason because the SAC does not sufficiently allege a relevant market or that the State Bar intended to restrain trade. (Br. at 18–19.)

"Courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market." *Qualcomm*, 969 F.3d at 992; *see also Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) ("Without a definition of that market there is no way to measure [a defendant's] ability to lessen or destroy competition."). The only markets alleged in the SAC— those for "PeopleLaw" and "Organizational Clients" lawyers, (SAC ¶ 192)—are insufficient for many reasons. For example, they do not "include both a geographic market and a product market." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th

---

[10] Plaintiffs' reference to *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991), should be discounted because that case concerned whether a federal court could exercise diversity jurisdiction over a Section 1 claim, an issue not present here.

Cooley LLP
Attorneys at Law
Los Angeles

11

Reply in Support of CA State
Bar's Supp. Motion to Dismiss SAC
Case No. 8:22-cv-00983-DFM

1  Cir. 2018).  The Opposition's bare argument that "[a] geographical market is not

2  required in the professions," (Opp. at 16), is unsupported by any authority.

3  Additionally, lawyers in these two "markets" do not compete with each other or with

4  the State Bar, (Br. at 19), failings Plaintiffs do not bother to address.  *See Silva*, 744

5  F. Supp. 2d at 1050 (N.D. Cal. 2010); *Roy*, 2015 WL 5698743 at *3 n.7.

6       Rather, Plaintiffs cite to the decision in *Federal Trade Commission v. Indiana*

7  *Federation of Dentists*, 476 U.S. 447 (1986), and contend that this Court need not

8  engage in the required market analysis because they allege an "actual detrimental

9  effect." (Opp. at 16.)  That view was expressly rejected by the Supreme Court in

10  *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018).  In that case, the Court

11  observed that "[t]he plaintiffs argue that we need not define the relevant market in

12  this case because they have offered actual evidence of adverse effects on

13  competition—namely, increased merchant fees.  We disagree." *Id.* at 2285 n.7

14  (internal citations omitted).  Rather, the Court clarified that it "need not define a

15  relevant market" only in cases where plaintiffs plead "horizontal restraints

16  involv[ing] agreements between competitors not to compete in some way." *Id.*

17  Plaintiffs do not allege a horizontal restraint or an agreement between competitors,

18  and thus the holding from *Indiana Federation* is inapposite.

19       But even if *Indiana Federation* did apply, Plaintiffs would need to offer more

20  than guesswork to meet the standard; they would need to provide "*proof* of actual

21  detrimental effects." *Am. Express*, 138 S. Ct. at 2284 (emphasis added).  Plaintiffs

22  have not done this.  The SAC offers nothing but speculation and conclusions.  For

23  example, Plaintiffs cite to a "decline in solo practitioners" from the State Bar's 2020

24  Annual Discipline Report and argue this shows a detrimental effect on the market.

25  (Opp. at 16 (citing SAC ¶ 196).)  But Plaintiffs ignore that the Incident occurred in

26  2021—*after* the 2020 report was published—and thus neither the Incident nor the

27  State Bar's response to it could have contributed to the alleged decline.

28       Other than the 2020 report, the Opposition offers only a tedious and lengthy

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

12

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

chain of assumptions about what "would" happen (not what *did* happen) or what the State Bar "could expect" or "would know" (not what it *actually* expected or knew). (Opp. at 16, 18.)  Specifically, Plaintiffs theorize that the alleged "cover up" *could* cause fewer lawyers to willingly provide information to the State Bar, which *could* cause the State Bar to need more money to conduct its investigations, which *could* cause the State Bar to raise fees on licenses, which *could* result in those fees falling disproportionally on solo practitioners, which *could* result in fewer solo practitioners in the market, which *could* result in less choice for individuals seeking to hire one. (*Id.*)  Plaintiffs' rank speculation is not proof of actual detriment sufficient to satisfy the *Indiana Federation* test.  *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (holding court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations").

Additionally, the Opposition fails to address the SAC's utter lack of allegations that the State Bar "intend[ed] to harm or unreasonably restrain competition." *McGlinchy*, 845 F.2d at 811; (*see also* Br. at 19).  Instead, Plaintiffs concede that the SAC alleges only that the State Bar intended "to preserve [its] reputation[]," (Opp. at 2 (citing SAC ¶¶ 66, 93, 105)), which does not plead intent to restrain competition.  Plaintiffs also assert that "the State Bar *could expect*" that the Incident "would harm PeopleLaw practitioners relatively more," (*id.* at 18 (emphasis added)), but such conjecture does not plausibly allege intent.  Plaintiffs thus fail to allege an unreasonable restraint of trade.

### 3.  No cognizable causal antitrust injury

The Opposition devotes only four sentences to antitrust injury, citing a few paragraphs in the SAC without responding to the State Bar's argument that those paragraphs are devoid of non-conclusory allegations.  (Opp. at 18.)  Nothing in the Opposition establishes that the SAC pleads any of the required elements of a cognizable causal antitrust injury.  (*See* Br. at 18–21.)  For example, Plaintiffs wholly ignore the State Bar's argument that the SAC does not plead the required causal link

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

13

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1    between the allegedly anticompetitive conduct and the SAC's conclusory litany of
2    speculative injuries.  Plaintiffs thus effectively concede they have no rebuttal.  *See*
3    *Silva*, 744 F. Supp. 2d at 1050 (N.D. Cal. 2010); *Roy*, 2015 WL 5698743 at *3 n.7.
4    The Court should dismiss the SAC for failure to allege antitrust injury.

5                   **ii.    The SAC fails to state a Section 2 claim**

6          Section 2 claims require that a plaintiff plead three elements: "(a) the
7    possession of monopoly power in the relevant market; (b) the willful acquisition or
8    maintenance of that power; and (c) causal anti-trust injury."  *Allied Orthopedic*
9    *Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010).
10   Plaintiffs do not state a Section 2 claim because, as with the Section 1 claim, the SAC
11   fails to plead a relevant market, the State Bar's intent to restrain trade, or a cognizable
12   causal antitrust injury.  (*See* Sections II.C.i.1–3, *supra*; *see also* Br. at 21–22.)

13         Further, the Opposition also fails to save either of Plaintiffs' theories of
14   Section 2 liability: that the State Bar (1) engaged in a prohibited refused to deal or
15   (2) attempted to monopolize the federal judiciary.  (Br. at 22–25.)

16                 **1.    The SAC's refusal to deal theory is inapplicable**

17         A refusal to deal exists only when a party "refus[es] to cooperate with rivals."
18   *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).
19   No refusal to deal occurred here because the State Bar does not compete with solo
20   practitioners and did not "unilaterally terminate" a prior "course of dealing" with solo
21   practitioners. *LiveUniverse, Inc. v. MySpace, Inc.*, 304 Fed. App'x 554, 556 (9th Cir.
22   2008) (cleaned up).  The State Bar's opening brief identified these deficiencies,
23   (Br. at 22), but the Opposition does not address them.  Plaintiffs thus concede their
24   theory fails; the Court should dismiss it.  *See Silva*, 744 F. Supp. 2d at 1050 (N.D. Cal.
25   2010); *Roy*, 2015 WL 5698743 at *3 n.7.

26                 **2.    The SAC does not allege attempted monopolization**

27         Section 2 attempted monopolization claims require that a plaintiff allege "(1) a
28   specific intent to monopolize a relevant market; (2) predatory or anticompetitive

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

14

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

conduct; and (3) a dangerous probability of success." *Catlin v. Wash. Energy Co.*, 791 F.2d 1343, 1348 (9th Cir. 1986). There are numerous defects in Plaintiffs' fanciful theory that the State Bar is attempting to monopolize access to federal courts. Access to federal courts is not a relevant market, and the SAC does not explain how the State Bar is attempting to monopolize it or what its motive would be to do so. (Br. at 23–25.) Nor does the SAC allege that the State Bar has somehow prevented Plaintiffs from practicing law in federal court.

Instead, the only support for this argument referenced in the Opposition is a disciplinary proceeding involving Plaintiffs' counsel. (Opp. at 22.) That proceeding is not alleged in the SAC and is irrelevant because counsel is not a party and cannot serve as a class representative. *See Kesler v. Ikea U.S. Inc.*, 2008 WL 413268, at *4 (C.D. Cal. Feb. 4, 2008) ("[I]t is well-settled that an attorney may not serve both as class representative and as class counsel." (cleaned up)).[11] Even if counsel's disciplinary proceeding were relevant, the mere existence of a disciplinary proceeding falls short of supporting Plaintiffs' claim that the State Bar is broadly attempting to monopolize every solo practitioner's access to the federal judiciary.

Finally, the Opposition vaguely asserts that some authority cited by the State Bar is "inapposite because . . . lawyers are given unique treatment tailored to their profession." (Opp. at 23.) Plaintiffs do not identify which authority they believe is inapposite, nor do they explain how the Court should give their claims "unique treatment."[12] Their attempted monopolization theory and Section 2 claim both fail.

---

[11] As noted in footnote 8, *supra*, "the complaint may not be amended by briefs in opposition to a motion to dismiss," *Columbus Univ.*, 2022 WL 1492167, at *6 (internal quotation marks and citation omitted).

[12] Plaintiffs' authority does nothing to clarify things. *Koefoot v. American College of Surgeons* concerned a rule adopted by the American College of Surgeons, and the decision addressed a series of pre-trial motions on two issues: (1) whether the case should be tried under the *per se* rule or the rule of reason and (2) whether the challenged rule could be found legal because it was adopted with good motives. 652 F. Supp. 882, 885 (N.D. Ill. 1987). Neither of those issues are present here; *Koefoot* has no bearing. The Opposition's quotes from disjointed parts of both the majority and dissent in *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982), are likewise inapplicable. That case turned on "whether [a nonprofit organization's] liability under a theory of apparent authority is consistent

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

### D.    Leave to Amend Would Be Futile

The Court should deny Plaintiffs' request for leave to file a fourth pleading in this case.  When a plaintiff "has already been given leave to amend his complaint, the [Court] may exercise its discretion more broadly to find that further amendment would be futile." *Int'l Norcent Tech*, 2007 WL 4976364, at *15.  Plaintiffs amended their complaint before the case arrived before this Court, (Dkt. 1 ¶ 10), and then the Court gave Plaintiffs a chance to cure the myriad deficiencies in their claims after it dismissed the antitrust claims in the FAC, (Dismissal Order at 9).  Plaintiffs have failed to cure the manifest defects in their claims at any of these stages.  The Court should exercise its discretion to dismiss the antitrust claims with prejudice.

Dismissal with prejudice is especially appropriate when the "Court's prior order addressed the defects in Plaintiff's initial Complaint at length" but plaintiff "failed to allege sufficient facts to cure those defects." *Lai v. USB-Implementers F., Inc.*, 2015 WL 12746705, at *8 (C.D. Cal. Mar. 11, 2015) (dismissing antitrust claim with prejudice); *see also Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1098 (C.D. Cal. 2007) (dismissing with prejudice when "[n]o additional pleading or discovery will alter th[e] reality" plaintiff cannot plead a Sherman Act claim).  The Court's Dismissal Order explained in detail the problems with the FAC's antitrust claims, and the SAC contains the same fatal flaws.  Nothing in the Opposition suggests that Plaintiffs will be able to cure these defects if given a fourth try.  The Court should dismiss Plaintiffs' claims under Sections 1 and 2 of the Sherman Act with prejudice.

Finally, while not a sufficient ground on its own to deny yet another amendment, the State Bar must note that this case has imposed significant costs and distractions from its statutory job of regulating the practice of law in California.[13]  In

---

with the intent behind the antitrust laws," *id.* at 569, but Plaintiffs do not assert a claim of apparent authority against the State Bar.

[13] *See, e.g.*, *Board of Trustees Discusses Challenging 2023 State Bar Budget*, The State Bar of California (Jan. 20, 2023), *available at* https://www.calbar.ca. gov/About-Us/News/News-Releases/board-of-trustees-discusses-challenging-2023-

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

16

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM

1    hundreds of pages of pleadings, Plaintiffs have attempted to portray the State Bar's

2    reasonable response to, and judicious efforts to resolve, an unforeseen Incident into

3    an imaginary antitrust conspiracy.  The consequence of allowing Plaintiffs yet

4    another futile amendment will be more expense and burden on the State Bar, reducing

5    its ability to do its important work.[14]

6    **III.   CONCLUSION**

7         For the foregoing reasons, the State Bar respectfully requests that the Court

8    grant its motion and dismiss the SAC's Sherman Act claims with prejudice.

9

10

11

12   Dated:  January 23, 2022              COOLEY LLP

13

14                                        */s/ Tiana Demas*
                                          Tiana Demas
15
                                          *Attorneys for Defendant*
16                                        THE STATE BAR OF CALIFORNIA

17

18

19

20

21

22

23

24   _____
     state-bar-budget (reporting that this month "the State Bar Board of Trustees grappled
25   with tough decisions around the agency's 2023 budget" and "[w]ith only one fee
     increase in nearly 25 years, [the State Bar is] stretched impossibly thin, even as we
26   do all we can to fulfill our mandated obligation to protect the public from bad-actor
     lawyers").
27
     [14] For these same reasons, the State Bar respectfully requests that the Court dismiss
28   the entire action, as argued in the State Bar's opening and reply briefs filed in support
     of its initial motion to dismiss.  (Dkts. 38, 68.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

17

REPLY IN SUPPORT OF CA STATE
BAR'S SUPP. MOTION TO DISMISS SAC
CASE NO. 8:22-CV-00983-DFM