Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Beth W. Petronio, admitted *pro hac vice*
beth.petronio@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone:  (214) 939-5815
Facsimile:   (214) 939-5849

Attorneys for Defendant
Tyler Technologies, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JOHN ROE 1, an individual; JANE ROE 1, an individual; JANE ROE 2 an individual; JANE ROE 3, an individual, JOHN ROE 2, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC., a Delaware corporation; KEVAN SCHWITZER, an individual; RICK RANKIN, an individual; and DOES 4 through 10, inclusive,<br><br>Defendants. | Case No. 8:22-cv-00983-DFM<br><br>**TYLER TECHNOLOGIES, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS SHERMAN ACT CLAIM IN SECOND AMENDED COMPLAINT**<br><br>[Assigned to Hon. Douglas F. McCormick, Courtroom 6B]<br><br>State Complaint Filed:  March 18, 2022 [Orange County Superior Court Case No. 30-02022-01250695-CU-AT-CXC]<br><br>First Amended Complaint Filed:    April 13, 2022<br><br>Notice of Removal Filed:    May 13, 2022<br><br>Second Amended Complaint Filed:    October 7, 2022<br><br>Hearing Date:    TBD |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................. 1

III.  CONCLUSION .......................................................................................... 7

# TABLE OF AUTHORITIES

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004).................................................................4

*Alliance Shippers, Inc. v. Southern Pac. Transp. Co.*,
  858 F.2d 567 (9th Cir. 1988) ...................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................4

*BBD Transp. Co., Inc. v. U.S. Steel Corp.*,
  No. C-74-1178-ACW, 1976 WL 1316 (N.D. Cal., Aug. 25, 1976)..........6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................5

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) .................................................................4

*Federal Trade Commission v. Indiana Federation of Dentists*,
  476 U.S. 447 (1986)..................................................................................3

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) .................................................................2

*Jack Russell Terrier Network v. Am. Kennel Club, Inc.*,
  407 F.3d 1027 (9th Cir. 2005) .................................................................4

*Kaplan v. Burroughs Corp.*,
  611 F.2d 286 (9th Cir. 1979) ...................................................................2

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)..................................................................................5

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018)..............................................................................3

*Oltz v. St. Peter's Community Hosp.*,
  861 F.2d 1440 (9th Cir. 1988) .................................................................2

*Saenz v. Univ. Interscholastic League*,
  487 F.2d 1026 (5th Cir. 1973) .................................................................6

*Sayre v. Google, Inc.*,
  No. C 19-02247, 2019 WL 6036703 (N.D. Cal. Nov. 14, 2019).............2

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991)..................................................................................6

*TP Link USA Corp. v. Careful Shopper LLC*,
  2020 WL 3063956 (C.D. Cal., Mar. 23, 2020) ........................................4

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ...................................................................4

## I. INTRODUCTION

The Roe Plaintiffs' Opposition to Defendant Tyler Technologies Motion to Dismiss the Antitrust Claims (the "Opposition" or "Opp.") continues to espouse a fatally deficient, confusing, conclusory and entirely speculative theory for Sherman Act antitrust liability against Tyler Technologies, Inc. ("Tyler"). The antitrust claim is ripe for dismissal pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). As it relates to Tyler, Roe Plaintiffs' Second Amended Complaint ("SAC") purports to assert a Sherman Act Section 1 claim for "Conspiracy to Restrain Trade by Obfuscating the Data Breach." (SAC ¶¶ 182; 186-213.) The basic premise of the Roe Plaintiffs' allegations is that Tyler and the State Bar agreed to "cover up" an alleged data breach to protect their reputations and that the supposed "cover up" could make "State Bar investigations less efficient…and less effective at eliminating the bad [attorneys]." (Opp., pp. 4-5). The SAC, however, fails to adequately allege any actual agreement, much less one to unreasonably restrain trade, and much less one that has caused any antitrust injury in a relevant market.

## II. ARGUMENT

As outlined in Tyler's Motion, the SAC fails to meet the "short and plain statement" pleading standard of Federal Rule of Civil Procedure 8. In addition to its verbosity, the SAC's allegations are confusing, repetitious, needlessly long, incomprehensible and conclusory. The SAC fails to articulate any coherent theory of antitrust liability against Tyler, and instead includes lengthy allegations about the State Bar's disciplinary procedures and long discussions about solo practitioners versus lawyers in "large law firms." These allegations are not only irrelevant to any purported antitrust claim, they appear to be motivated by counsel's own ongoing disciplinary proceedings with, and animosity towards, the State Bar, as evidenced by the inclusion of various pleadings from that proceeding in Plaintiffs' Request for Judicial Notice in

Opposition to Defendants Motion to Dismiss the Antitrust Claims (the "RJN").[1]  The Opposition does nothing to clarify the morass of irrelevant and incoherent allegations in the SAC, and the Court should dismiss the SAC pursuant to Rule 8.

The SAC also fails to properly allege the specific elements of a Sherman Act Section 1 claim and should be dismissed pursuant to Rule 12(b)(6).  Section 1 "prohibits agreements that unreasonably restrain trade by restricting production, raising prices, or otherwise manipulating markets to the detriment of consumers."  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).  A plaintiff is required to allege "(1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually restrains competition."  *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988).  "An essential element of a Section 1 violation. . .is injury to competition in the relevant market."  *Alliance Shippers, Inc. v. Southern Pac. Transp. Co.*, 858 F.2d 567, 570 (9th Cir. 1988).  Here, the Roe Plaintiffs have not sufficiently alleged any of the required elements.

First, the Roe Plaintiffs have failed to properly plead a relevant market. Typically, "a 'relevant market' encompasses notions of geography along with product use, quality and description."  *Sayre v. Google, Inc.*, No. C 19-02247, 2019 WL 6036703, at *2 (N.D. Cal. Nov. 14, 2019) (citing *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 292 (9th Cir. 1979)).

Here, the Roe Plaintiffs are attempting to allege that the relevant market is the "PeopleLaw Market," which the SAC arbitrarily contends "consists of mainly solo practitioners," as distinguished from the "Organizational Clients Market," which the SAC defines as lawyers who "work in large firms representing large organizations." (SAC ¶192).  The SAC's allegations in this regard, however, fail to identify either a

---

[1] Tyler does not believe it is necessary for the Court to consider these pleadings for any purposes in connection with the Motion.  While pleadings in another matter may be considered appropriate material for judicial notice, the Opposition does not cite to them or explain their relevance to this matter or, more specifically, to the Motions pending before the Court.

geographic or product market, as contemplated by the Sherman Act, and are entirely conclusory and speculative.

The Opposition makes two arguments regarding the relevant market. Initially, the Opposition contends that "[a] geographical market is not required in the professions." (Opp., p. 11). The Roe Plaintiffs fail to cite any supporting authority for this suggestion. There is no basis for this Court to find that the requirements for an antitrust claim are different because the supposedly relevant market is an arbitrary subset of the legal profession.

Next, the Opposition contends that this Court need not delve into the market analysis because the Roe Plaintiffs have pleaded "actual detrimental effect." (Opp., p. 12). This argument is both legally and factually flawed. Legally, the Opposition's citation to *Federal Trade Commission v. Indiana Federation of Dentists*, 476 U.S. 447 (1986) is misplaced. (Opp., p. 16). In *Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) the United States Supreme Court rejected the suggestion that "actual detrimental effect" can be a substitute for identification and analysis of the relevant market in cases, like this one, where the alleged agreement is not between competitors. *Id.* at 2283 n.7 (internal citations omitted).

Factually, to support this argument, the Opposition cites evidence from a 2020 study regarding the decline in the number of solo practitioners in California. (Opp., p. 12 (citing SAC ¶196)). The Opposition ignores that the alleged anticompetitive activity—*i.e.*, the alleged "cover up"—did not occur until 2021 and could not have been the cause of the decline in the number of solo practitioners cited in a study published in 2020.

The Opposition also cites SAC ¶¶199, 201-205, but those paragraphs do not allege any "actual detrimental effect." (Opp., p. 12). Instead, the SAC weaves an entirely speculative tale of what *might* happen as a result of the alleged "cover up." The tale begins with the citation of some unspecified online "survey" conducted by an unnamed source that claims 68% of respondents (again an unspecified number of them)

3
REPLY MEMORANDUM IN FURTHER SUPPORT OF SUPPLEMENTAL
MOTION TO DISMISS SHERMAN ACT CLAIM

said they would be "less likely" to provide confidential information to the State Bar because of the alleged data breach. (SAC ¶¶79, 201). The Roe Plaintiffs then speculate that this reluctance to cooperate would necessarily translate to an increased cost of investigations, that the State Bar would need to pass that cost on to its member attorneys, that such additional cost would disproportionately impact solo practitioners, that such an impact would further decline the number of solo practitioners and result in more "bad" attorneys in the PeopleLaw market, thereby resulting in less choice for PeopleLaw consumers when selecting counsel. (Opp., p. 12; SAC ¶¶196-205). These allegations do not establish any "actual detrimental effect," and instead are rote speculation piled on top of conjecture and unsubstantiated supposition.

This Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Fayer*, 649 F.3d at 1064, (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the Roe Plaintiffs' speculative and conclusory allegations are simply not sufficient.

Second, the Roe Plaintiffs have failed to sufficiently allege an agreement or conspiracy to restrain trade between "actual or potential competitors." *See Jack Russell Terrier Network v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1034 (9th Cir. 2005); *TP Link USA Corp. v. Careful Shopper LLC*, 2020 WL 3063956, at *10 (C.D. Cal., Mar. 23, 2020) (dismissing Section 1 claim for *inter alia* "fail[ure] to adequately allege a conspiracy consummated by actual or potential competitors"). The SAC does not—and cannot—allege that Tyler—a company in the business of licensing and implementing software systems—and the State Bar—an administrative agency created to assist the California Supreme Court in matters of attorney admission and discipline—are actual or potential competitors. The Opposition fails entirely to address this point.

4
REPLY MEMORANDUM IN FURTHER SUPPORT OF SUPPLEMENTAL
MOTION TO DISMISS SHERMAN ACT CLAIM

The SAC also fails to adequately allege "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citation omitted). The SAC includes only the conclusory allegation that "Defendants State Bar of California and Tyler Technologies entered into a conspiracy to minimize the data breach in order to preserve their reputation." (SAC ¶92; *see also* ¶¶66, 186). As described above, the SAC seems to be alleging that the Defendants' actions in "preserving their own reputation" *might* have the speculative and incidental impact of "also adversely affect[ing] competition generally by decreasing the client's ability to freely choose amongst members of the Bar." (SAC ¶189). Nothing in the SAC alleges a "conscious commitment" by either the State Bar or Tyler to unlawfully affect competition in the PeopleLaw market. Nor is there any plausible explanation why Tyler would do so.

The Opposition argues that an "agreement can be inferred from parallel conduct in not giving prompt notice and the communications obtained from Kevan Schwitzer." (Opp., p. 10). However, as the U.S. Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007), "allegations of parallel business conduct, taken alone, do not state a claim under § 1; plaintiffs must allege additional facts that 'ten[d] to exclude independent self-interested conduct as an explanation for defendants' parallel behavior.'" Here, the SAC itself alleges that Tyler's motivation was to "preserve their own reputation" (SAC ¶66)—self-interested conduct that only incidentally (according to the Roe Plaintiffs' speculation) affected competition the PeopleLaw market.[2] The allegations of parallel conduct are not sufficient.

The Opposition contends that the "email threads obtained from Kevin Schwitzer" establish an agreement. (Opp., p. 15). None of those emails, however, are between the State Bar and Tyler. Nor do they contain any agreement to engage in a "cover up" or to otherwise delay notifications. Instead, those communications are merely emails

---

[2] Tyler, of course, denies that it undertook any actions to "cover up" the data breach or that it was motivated to do so in order to preserve its reputation.

between Tyler and the individual responsible for harvesting data from Tyler's customers in an effort to understand the nature and scope of the situation. Nor does the use of the term "page views"—a technical industry term—support the conclusion that Tyler and the State Bar were consciously committing to a common scheme to restrain competition among solo legal practitioners in California.

Third, the SAC has not properly alleged any conduct that "actually restrained competition" and resulted in an antitrust injury. Here, at most, the Roe Plaintiffs have alleged speculative, uncertain and potentially negative impacts on certain individual attorneys. (*See, e.g.,* SAC ¶211). As noted below, the Roe Plaintiffs' speculative tale of increased costs that ultimately "decrease the client's ability to freely choose amongst members of the Bar" (SAC ¶189) is not supported by any non-conclusory factual allegations of actual injury.

Citing *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322 (1991), the Opposition appears to suggest that the Roe Plaintiffs "need not allege, or prove, an actual effect on interstate commerce." (Opp., p. 14). *Summit*, however, was merely discussing the requirement of interstate commerce in the context of federal court jurisdiction. *Summit* does not suggest that the Roe Plaintiffs need not allege an actual antitrust injury.

Finally, as this Court has previously held, the State Bar is immune from antitrust liability under these circumstances.[3] As a result, the claim against Tyler must also be dismissed because Tyler cannot conspire with an immune entity. *See, e.g., Saenz v. Univ. Interscholastic League,* 487 F.2d 1026, 1028 (5th Cir. 1973); *BBD Transp. Co., Inc. v. U.S. Steel Corp.*, No. C-74-1178-ACW, 1976 WL 1316, at *6 (N.D. Cal., Aug. 25, 1976).

---

[3] Tyler reincorporates the authorities cited in the State Bar's Memorandum of Points and Authorities in Support of the State Bar of California's Supplemental Motion to Dismiss Plaintiffs' Second Amended Complaint, along with the additional arguments in the State Bar's Reply Memorandum.

## III. CONCLUSION

In light of the foregoing, Tyler respectfully requests that the Court grant the Motion, dismiss all of the Roe Plaintiffs' claims against Tyler, and grant Tyler such other and further relief to which it may be entitled.

**K&L GATES LLP**

Dated: January 23, 2023

By: */s/ Zachary T. Timm*
Beth W. Petronio
Christina N. Goodrich
Zachary T. Timm

Attorneys for Defendant
TYLER TECHNOLOGIES, INC.