Lenore L. Albert *Suspended Cal State Bar 03-14-2024*
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Email: lenalbert@InteractiveCounsel.com
Attorney for Plaintiffs, John Roe 1, John Roe 3,
Jane Roe 2, Chad Pratt, and NZ *on behalf of
themselves and all others similarly situated.*
***IN FEDERAL COURT ONLY***

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE 1, an individual; JOHN ROE 3, an individual; JANE ROE 2 an individual; CHAD PRATT, an individual, NZ, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiff, <br> vs. <br><br> THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; RICK RANKIN; and DOES 4 through 10, inclusive, <br> Defendants. | CASE NO. 22-cv-00983-DFM <br><br> Assigned to the Hon. Douglas F. McCormick <br> Complaint filed: 03-18-2022 <br> Dismissed and remanded: 05-03-2023 <br><br> **DECLARATION OF CHAD PRATT** <br><br> Hearing Date: May 2, 2024 <br> Time: 10:00AM <br> Crtm: 6B – Sixth Floor |

I, Chad Pratt am a plaintiff in the case of John Roe v State Bar of California, Orange County Case Number 30-2022-01250695-CU-AT-CXC which was remanded from the federal court Case No. 22-cv-00983-DFM in this case.

1.      If called as a witness I could competently testify to the following of my own personal knowledge.

## DECLARATION OF CHAD PRATT

*Roe v The State Bar of California, et al.*      22-cv-00983

2.      My civil rights under the First and Fourteenth amendment are being violated by the State Bar's gamesmanship of charging, prosecuting and then suspending our counsel of record with recommendation of disbarment based solely on her practice in federal court.

3.      I am a whistleblower against the State Bar and was told that I would be protected, but I have not been protected.

4.      I am an attorney that was previously admitted to the State Bar of California.

5.      I am suspended with recommendation of Disbarment this year.

6.      I believe I am being retaliated on and treated unfairly as shown by the timeline of events. An overview is as follows:

7.      On March 18, 2022, this databreach putative class action was filed with anonymous Roe plaintiffs.

8.      On May 19, 2022, I received a notice from the State Bar giving me notice of their investigation filed by my client's opposing party regarding representations about the drafting of papers filed in federal court before Judge Gutierrez. Attached hereto and incorporated herein as **Exhibit 1** is a true and correct copy of the notice I received from the State Bar on May 19, 2022.

9.      Judge Gutierrez did not refer me for discipline to either the State Bar or the Central District of California and he did not testify for the State Bar at the disciplinary hearing.

10.     On May 23, 2022, I received notice, presumably from the State Bar, that a confidential investigation with my name attached to it was publicly posted on the internet at URL JudyRecords.com. Attached hereto and incorporated herein as **Exhibit 2** is a true and correct copy of the notice I received from the State Bar on May 23, 2022.

11.     On May 3, 2023, this case had its antitrust claims dismissed, including the claim that the State Bar was attempting to regulate attorneys practice in federal court. The court remanded the case back to state court.

2

**DECLARATION OF CHAD PRATT**

*Roe v The State Bar of California, et al.*          22-cv-00983

12.     On May 17, 2023, I received another notice from the State Bar which stated that the State Bar was proceeding forward to discipline me. Attached hereto and incorporated herein as **Exhibit 3** is a true and correct copy of the notice I received from the State Bar on May 19, 2022.

13.     On February 1, 2024, I received a recommendation of disbarment based on my practice before Judge Gutierrez in federal court.

14.     I believe that the State Bar retaliated against me.

15.     I have a history public discipline with the State Bar, and as such, disclose my name per the Court Order in the state court proceeding.

16.     As of today, I still have no proof that the State Bar's letter to me asserting there no page view was conclusively proven to be true.

17.     I am a plaintiff in the putative Class action of John Roe 1 v State Bar on the data breach along with other plaintiffs.

18.     My harm is greater than $26.34 ($5,000,000.00 / 191,000 class members).

19.     Each additional investigation by the State Bar that is published on the internet is further harm to me, my reputation, my privacy and causes me emotional distress.

20.     I paid approximately $75.00 for credit monitoring/dark web monitoring service because I started receiving phishing/spam scams after the databreach.

21.     None of the defendants offered us any kind of web monitoring service.

22.     Once something about me is posted on the internet, even if later deleted never really goes away.

23.     I want this court to vacate the remand to state court and the dismissal of the attempted monopoly claim because the State Bar has used its power to regulate my practice in federal court.

24.     The federal judge did not hold me in contempt and the federal court did not suspend me from practice as a result of my conduct, yet the state bar found it grounds to recommend my disbarment.

**3**

**DECLARATION OF CHAD PRATT**

*Roe v The State Bar of California, et al.*          22-cv-00983

25.    With the disbarment, the federal court can then disbar me based on reciprocity.

26.    As such, the state bar took my conduct in federal court as a way to force me out of my chosen profession.

27.    The state bar has done the same thing to my attorney after filing this lawsuit, too.

28.    The state bar suspended my attorney of choice, Lenore Albert from practicing law in the state of California and recommended disbarment on the grounds that she violated a local rule in the federal court in the Eastern District of California.

29.    I understand that this Court cannot enjoin the state bar from suspending or disbarring my attorney, but the inability for my counsel, Lenore Albert, to proceed by this abrupt interim suspension – by the very entity we are suing for its misdeeds – is irreparably harming me as a plaintiff in this case because Ms. Albert has worked diligently on this case, has institutional knowledge about both the facts underlying this case as well as the legal theories we are using to prosecute our claims that would be nearly impossible to replicate at this point in time, and time is of the essence in prosecuting our claims.

30.    Ms. Albert obtained multiple favorable rulings in this case on our behalf including my right to proceed anonymously.

31.    I believe that the interests of justice are best served by taking this case back into the federal court where it was in 2023 and permitting Ms. Albert's privileges to remain active in the Central District of California until there is a final adjudication of Ms. Albert's claims.

32.    I have a fundamental right to seek redress for my grievance with the judicial branch of government and by taking away my attorney in such an abrupt manner has violated that right.

33.    My attorney, Lenore Albert, attempted to get an emergency stay in the state court action but the clerk refused to file the papers because Lenore Albert could not reserve a hearing to appear the next day because that following day she would be suspended.

**4**

### DECLARATION OF CHAD PRATT

*Roe v The State Bar of California, et al.*        22-cv-00983

34.    We were all caught off guard.

35.    I make this declaration on behalf of the putative members of the class and the other plaintiffs who remain anonymous.

36.    Allowing the State Bar to hurt my case by suspending my attorney and letting them get away with it because they are a state agency undermines faith in the integrity of the judicial system.

37.    I have not been able to find other counsel to take over this lawsuit.

38.    I would be happy to answer any questions this federal court may have.

I declare under penalty of perjury of the law of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 2nd day of April, 2024 in Pasadena, California

By: __/s/Chad Pratt

Chad Pratt

**5**

**DECLARATION OF CHAD PRATT**

*Roe v The State Bar of California, et al.*        22-cv-00983

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 1968 S Coast Hwy #3960, Laguna Beach, CA 92651.  On April 2, 2024, I served a copy of the following document(s) described as:

**DECLARATION OF CHAD PRATT**


On the interested parties in this action as follows:

SEE ELECTRONIC SERVICE LIST ATTACHED

**[x] BY E-SERVE and EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth per CCP 1010.6.
**[] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Santa Ana, California, to the aforementioned addressee(s).
 I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: April 2, 2024

                                         _/s/_ Lenore Albert_____
                                              Lenore Albert

**6**

**DECLARATION OF CHAD PRATT**

*Roe v The State Bar of California, et al.*        22-cv-00983

### ELECTRONIC SERVICE LIST

**For Defendants State Bar of California**
David M. Liu
**FREEMAN MATHIS & GARY, LLP**
3030 Old Ranch Parkway | Suite 200 | Seal Beach, CA 90740-2713
D: 562-245-8405 | C: 562-682-8062
David.Liu@fmglaw.com

ROBERT G. RETANA (148677) Deputy General Counsel
SUZANNE C. GRANDT (304794)
Assistant General Counsel
**OFFICE OF GENERAL COUNSEL**
**THE STATE BAR OF CALIFORNIA**
180 Howard Street
San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517
Email: suzanne.grandt@calbar.ca.gov

**For Defendant Rick Rankin**
**JEFFER MANGELS BUTLER & MITCHELL LLP**
MICHAEL A. GOLD (Bar No. 90667)
*mgold@jmbm.com*
JUSTIN ANDERSON (Bar No. 328969)
*Janderson@jmbm.com*
1900 Avenue of the Stars, 7th Floor.
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567

**For Defendant Tyler Technologies, Inc.**
**K&L GATES LLP**
Beth Petronio
Christina N. Goodrich (SBN 261722) christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564) zach.timm@klgates.com
10100 Santa Monica Boulevard Seventh Floor
Los Angeles, California 90067
Telephone: 310.552.5000 Facsimile: 310.552.5001

**7**

### DECLARATION OF CHAD PRATT

*Roe v The State Bar of California, et al.*          22-cv-00983

EXHIBIT 1

## The State Bar
### *of California*

**OFFICE OF CHIEF TRIAL COUNSEL**

845 S. Figueroa Street, Los Angeles, CA 90017          213-765-1037          joy.nunley@calbar.ca.gov

May 19, 2022

Delivered via *My State Bar Profile*

**PERSONAL AND CONFIDENTIAL**

Chad T. Pratt
Chad T-W Pratt Sr & Associates Inc
660 S Figueroa St Ste 1960
Los Angeles, CA 90017-3447

Re:    Case Number:    22-O-03443
       Complainant:    Gunter Zielke

Dear Chad T. Pratt:

This letter is sent to you based upon information that you are not currently represented by
counsel in this matter.  If this is incorrect, please advise me within **five** days so that future
communications may be directed to your counsel.

The State Bar received a complaint from Gunter Zielke alleging the following:

> Mr. Zielke stated he is a beneficiary of the Alpha Beta Gamma Trust ("ABG").  An asset of
> the trust is real property located at 8801 Riderwood Drive, Sunland, CA  91040.  Mr. Zielke
> and others involved with ABG have been fighting with Scott Rosenstiel for several years
> regarding the property.  Mr. Rosenstiel was declared a vexatious litigant on June 15, 2017.
> You have been representing Mr. Rosenstiel in several of those lawsuits.

> Mr. Zielke alleges that you have knowingly filed baseless lawsuits against Mr. Zielke and that
> you have allowed your client to use your PACER login credentials to draft and file pleadings
> and motions, circumventing Mr. Rosenstiel's vexatious litigant status and therefore assisting
> Mr. Rosenstiel in the unauthorized practice of law.

> On January 4, 2019, Mr. Rosenstiel filed yet another lawsuit against Mr. Zielke in U.S.
> District Court, case number CV 19-96.  You substituted in as counsel for Mr. Rosenstiel on
> May 15, 2019 and immediately filed a First Amended Complaint.  In the case, the US District
> Court noted that all the pleadings, whether signed by you or some other attorneys on
> behalf of Mr. Rosenstiel, had the same format and writing style, had a condescending and

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Chad T. Pratt
May 19, 2022
Case No.:  22-O-03443
Page 2

disrespectful tone, and the overall quality was subpar.  Further, when these attorneys represented other parties in other cases the style and quality of the documents were drastically different.

When questioned by the court, you answered that you had prepared the documents filed in the U.S. District Court case.  The Court found your answers were "unsatisfactory and implausible" as there was sufficient evidence to show that it was actually Mr. Rosenstiel who authored the documents and submitted them under an attorney's name, and the attorneys, including you, were allowing Mr. Rosenstiel to author the documents and use the attorney's credentials for filing.  The Court then dismissed the case based on a lack of subject matter jurisdiction.

Mr. Zielke added that in another case in state court, Mr. Rosenstiel was determined to be the trustee of ABG. You represent Mr. Rosenstiel in that case.  Mr. Zielke alleges that you have been acting against Mr. Zielke as a beneficiary of ABG, causing a conflict of interest.

Your written response to these allegations along with any supporting documentation is requested.  If possible, please forward your written response as an attachment to an email addressed to the undersigned at                       .  **All** documents that you send to the State Bar, whether **copies or originals**, become State Bar property and are subject to destruction.

In addition, please provide the information requested below and legible copies of referenced documents:

1. Given that the U.S. District Court found sufficient evidence to show that it was not different attorneys drafting the documents but instead one person, Mr. Rosenstiel, please explain how documents filed with your name and credentials were so similar to other documents filed in the cases supposedly prepared by other attorneys.

2. Please explain your agreement with Mr. Rosenstiel as to specifically who would be drafting the documents to be filed.

3. Please explain how these documents were filed, and why you gave Mr. Rosenstiel access to your filing credentials.

4. At the time you took on the representation of Mr. Rosenstiel, were you aware that he had been declared a vexatious litigant?  If not, when did you learn and what action did you take to comply with the court's requirements concerning vexatious litigants?

**FAILURE TO PROVIDE ANY DOCUMENTS REQUESTED IN THIS LETTER MAY RESULT IN THE ISSUANCE OF A SUBPOENA DUCES TECUM.**

Chad T. Pratt
May 19, 2022
Case No.:  22-O-03443
Page 3


We must receive your written response and the documents requested, if any, by **June 6, 2022**.
Section 6068(i) of the Business and Professions Code states that it is the duty of an attorney to
cooperate with and participate in any State Bar Investigation. In addition, pursuant to Business
and Professions Code section 6086.10, you may be subject to a cost assessment for the
expenses incurred by the State Bar if this matter results in public discipline.

Upon request, the Office of Chief Trial Counsel will consider granting you additional time within
which to submit a written response to the allegations and the requested information and
documents.  A request for an extension of time must be in writing and state good cause as to
the specific constraints on your practice which are claimed to necessitate the additional time.
Any request for extension of time must be received by the undersigned on or before **June 6,
2022**.

Please feel free to contact me if you have any questions.

Sincerely,

Joy Nunley
Investigator

JN/

To: Chad T. Pratt
From:  The State Bar of California



## Your California Bar License Is at Risk.

**Take Action.**

The Office of Chief Trial Counsel of the State Bar of California has opened a formal investigation into potential ethical violations that you may have committed.

**Disbarment Is a Real Risk**. Over 100 California attorneys are disbarred every year, and about as many more are suspended from the practice of law. Even if this case does not seem substantial, an adverse finding can be used against you in a future case, increasing your chances of severe discipline.

**Reduce Your Risk.** Share your side of the story and mitigation evidence. Early intervention can also minimize the costs of the discipline process.

**Do Not Assume You Can Handle This Yourself.** Professional discipline is a complex area of practice, with its own rules of procedure. Counsel can help you navigate the process, provide an objective evaluation, and negotiate a favorable resolution.

**Representation Can Help.** State Bar research has found that attorneys who are not represented during the discipline process have a greater risk of being suspended or disbarred compared with attorneys who are represented by counsel.

**Attorneys Are Available to Help You.** In California, there is a robust practice area of attorneys who specialize in professional discipline cases. Find an attorney to provide competent advice on your discipline case. One source is the directory for the .*

\* The Association of Discipline Defense Counsel (ADDC) is independent of the State Bar of California, and membership in the ADDC is not required to participate in State Bar investigations or appear before the State Bar Court. The State Bar does not endorse ADDC or   any member thereof, but only provides this link as an informational service.

*San Francisco Office*
*180 Howard Street*
*San Francisco, CA 94105*

www.calbar.ca.gov

*Los Angeles Office*
*845 S. Figueroa Street*
*Los Angeles, CA 90017*

EXHIBIT 2

Re: Informational Notice Re Odyssey Portal Vulnerability

From: Chad Pratt (chadprattsr@gmail.com)

To: chadprattsr@gmail.com

Cc: lenalbert@interactivecounsel.com

Date: Monday, May 30, 2022, 01:35 PM PDT

On May 30, 2022, at 1:32 PM, Chad Pratt <chadprattsr@gmail.com> wrote:

On Mon, May 23, 2022 at 3:32 PM CA State Bar <noreply@castatebarodysseynotice.com> wrote:

## INFORMATIONAL NOTICE RE ODYSSEY PORTAL VULNERABILITY

Dear CHAD THOMAS-WILLIAM PRATT,

On February 24, 2022, the California State Bar became aware that judyrecords.com (judyrecords), a public website that aggregates nationwide court case records, had included both public and nonpublic State Bar case records in its search engine. These records came from the State Bar's Odyssey Portal, which was supposed to provide access to public case records only. The State Bar immediately asked the owner of judyrecords to remove the nonpublic records from the search engine (which they did) and launched an investigation with the assistance of a third-party IT forensics firm (Forensics Firm).

We are providing this notice to explain the steps we have taken to investigate and remediate the issue, and to inform you that **the State Bar has no evidence that your nonpublic State Bar record(s) had page views on judyrecords**.

**Immediate Steps Taken to Remove Nonpublic Records from Judyrecords**

The owner of judyrecords informed the State Bar that they had intended to index only publicly available State Bar case records, and they were unaware that records intended to be nonpublic had been automatically collected by their computer program, a technique called "scraping." Judyrecords fully cooperated with the State Bar's investigation and: (1) removed all confidential State Bar records from judyrecords by February 26, 2022; (2) provided relevant website logs and analytics logs; and (3) provided a detailed explanation of the scraping method used, which revealed a previously unknown vulnerability in the Odyssey case management software provided by Tyler Technologies, a third-party vendor.

The State Bar verified that this vulnerability allowed judyrecords to scrape both public and nonpublic State Bar attorney discipline case records from the Odyssey Portal. The scraping occurred on or about October 15, 2021.

The State Bar has no evidence that your nonpublic State Bar record(s) had page views on judyrecords.[1] To determine if a record may have been viewed, the State Bar and Forensics Firm analyzed detailed judyrecords website logs for the month of February 2022, as well as website analytics logs for the period between October 15, 2021, and February 26, 2022, the full period when State Bar records were indexed on the site.

**Data Fields Contained in Nonpublic Records**

The nonpublic State Bar records indexed on judyrecords contained basic case information:

- case number;
- file date;
- case type;
- case status;

- respondent name; and
- sometimes complaining witness or other witness names.

For some of these cases, the same information ultimately became public through the course of the State Bar's disciplinary process, including where discipline ultimately was imposed.

Full confidential case documents were not scraped by and were not indexed on judyrecords. That means no complaints, transcripts of hearings, mental health reports, or other documents related to nonpublic attorney discipline proceedings were available or viewed by unauthorized individuals as a result of the Odyssey vulnerability.

**More Information About the State Bar Investigation and Remediation**

The State Bar confirmed that judyrecords has deleted all nonpublic records from the site.

Importantly, the Odyssey vulnerability was only triggered by web scraping; regular searches of the Odyssey Portal did not permit access to nonpublic records. There is no evidence to suggest the Odyssey Portal was scraped by any entity besides judyrecords. The investigation revealed no evidence that scraped State Bar records were on internet archive sites. The State Bar took the Odyssey Portal offline on February 25, 2022, so Tyler Technologies could remediate the vulnerability.

Access to the State Bar's Odyssey Portal was restored on March 15, 2022, after Tyler Technologies had remediated the vulnerability. Thereafter, both the State Bar and the Forensics Firm confirmed that nonpublic records could no longer be scraped.

Our previous posts on this issue can be found here: https://www.calbar.ca.gov/About-Us/News/Data-Breach-Updates.

Sincerely,

The State Bar of California

---

[1] The State Bar sent separate notifications to persons whose nonpublic State Bar records had evidence of a page view.

AG483_v02

To unsubscribe from this list, please click on the following link: Unsubscribe

EXHIBIT 3

**Public Matter
FILED**

02/01/2024
**STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES**

**STATE BAR COURT OF CALIFORNIA**

**HEARING DEPARTMENT - LOS ANGELES**

| | | |
|---|---|---|
| In the Matter of | ) | Case No. SBC-23-O-30724-DGS |
| | ) | |
| CHAD THOMAS PRATT, | ) | DECISION AND ORDER OF |
| | ) | INVOLUNTARY INACTIVE |
| State Bar No. 149746. | ) | ENROLLMENT |
| | ) | |

## <u>Introduction</u>

In this contested disciplinary matter, Chad Thomas Pratt (Respondent) is charged with six

counts of professional misconduct relating to his practice of law in four cases.  The charged

misconduct includes one count each of seeking to mislead a judge and committing an act of

moral turpitude by making misrepresentations during a hearing and four counts related to the

unauthorized practice of law (UPL) after his license was suspended, two of which allege that

such conduct amounts to acts of moral turpitude.

After full consideration of the record, the court finds that the Office of Chief Trial

Counsel of the State Bar of California (OCTC) has satisfied its burden of proving three of the six

counts by clear and convincing evidence.[1]  Specifically, Respondent is found culpable of count one, seeking to mislead a judge, in violation of Business and Professions Code,[2] section 6068, subdivision (d); count two, committing an act of moral turpitude by making misrepresentations to the judge, in violation section 6106; and count three, UPL by appearing in court while suspended, in violation of sections 6125, 6126, and 6068, subdivision (a).  The court dismisses the three remaining counts alleging additional UPL, in violation of sections 6125, 6126, and 6068, subdivision (a), and acts of moral turpitude by Respondent's knowing UPL, in violation of section 6106.

As this is Respondent's fourth disciplinary proceeding in the last 10 years and he failed to prove compelling mitigation or otherwise provide a basis for departing from the presumptive sanction under standard[3] 1.8(b), the court recommends that Respondent be disbarred.

## Significant Procedural History

On June 22, 2023, OCTC initiated this proceeding by filing a Notice of Disciplinary Charges (NDC).  On June 30, Respondent filed a response to the NDC, denying the charges and raising various defenses.[4]

Prior to trial, numerous motions were filed and ruled upon.  The parties also filed a

---

[1] Clear and convincing evidence leaves no substantial doubt and is sufficiently strong to command the unhesitating assent of every reasonable mind.  (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 552.)  This "standard of proof . . . which requires proof making the existence of a fact highly probable – falls between the 'more likely than not' standard commonly referred to as a preponderance of the evidence and the more rigorous standard of proof beyond a reasonable doubt."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)

[2] Unless otherwise indicated, all statutory references are to this source.

[3] All references to standards (Stds.) are to the Rules of Procedure of the State Bar, title IV, Standards for Attorney Sanctions for Professional Misconduct.

[4] Though he did not specifically request a referral to the Alternative Discipline Program (ADP), Respondent asserted as an affirmative defense that he is eligible for the ADP.  In any case, on October 5, 2023, the court issued an order denying such request.

Stipulation as to Facts and Admission of Documents (Stipulation) on October 12, 2023.  A two-day trial was held on October 17 and 18.  During trial, the parties also entered into an oral stipulation.[5]  The parties filed timely post-trial briefs on November 6 and the court took the matter under submission the same day.

Throughout this case, OCTC was represented by Trial Counsel Eli D. Morgenstern while Respondent represented himself.

## Jurisdiction

Respondent was admitted to the practice of law in California on December 4, 1990, and has since been a licensed attorney of the State Bar of California (State Bar).

## Findings of Fact

The following findings of fact are based on the above-referenced Stipulation, the parties' oral stipulation, the admitted documentary evidence, and the testimony at trial.[6]

**Evidentiary Record**

The record before this court includes various court records, some of which are used merely for comparative purposes and others which contain civil court findings that support the alleged disciplinary violations herein.  Nonetheless, the existence of related civil findings and conclusions of law "does not modify the fundamental requirement that, to establish a disciplinary violation, OCTC must prove each element of a charged violation by clear and convincing evidence."  (*In the Matter of Kittrell* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 195, 203.) To the extent civil findings are made based upon proof under a lesser evidentiary standard, they are not given preclusive effect.  Even so, this court affords them a strong presumption of validity,

---

[5] The parties stipulated that Respondent's client, Scott Rosenstiel, used the email address marshastern@hotmail.com.

[6] The court also took judicial notice of the August 2022 calendar month.

if they are supported by substantial evidence. (See *Maltaman v. State Bar* (1987) 43 Cal.3d 924, 947; *In the Matter of Kinney* (Review Dept. 2014) 5 Cal. State Bar Ct. Rptr. 360, 365.)

In this discipline case, the court has applied the clear and convincing evidence standard of proof to independently assess the records admitted from the relevant civil proceedings, resolving all reasonable doubts in Respondent's favor. (*In the Matter of Kittrell*, *supra*, 4 Cal. State Bar Ct. Rptr. at p. 206; *In the Matter of Oheb* (Review Dept. 2006) 4 Cal. State Bar Ct. Rptr. 920, 934.) In addition, Respondent was given fair opportunity to present evidence to contradict, temper, or explain all admitted civil records. (*In the Matter of Kittrell*, *supra*, 4 Cal. State Bar Ct. Rptr. at p. 206.) After considering them in conjunction with the entirety of the record in this case, the court determines the civil findings summarized herein generally are supported by substantial evidence and affords them a strong presumption of validity. (See *Maltaman v. State Bar*, *supra*, 43 Cal.3d at p. 947; *In the Matter of Kinney*, *supra*, 5 Cal. State Bar Ct. Rptr. at p. 365.)

**Percipient Witness Credibility**

As the Review Department has instructed, "the hearing judge, as the trier of fact in State Bar proceedings, is to determine the credibility of witnesses . . . ." (*In the Matter of Respondent O* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 581, 588.) Here, three witnesses testified regarding culpability: Respondent, attorney Joseph Chaim Rosenblit, and attorney Susan Murphy.

At trial, the court closely observed the witnesses' testimony, considering, among other things, their demeanors; the manner and character of their testimony; their interests in the outcome of this proceeding; and their capacities to perceive, recollect, and communicate the matters on which they testified. After doing so, and evaluating each witness's testimony in the context of the record as a whole, the court finds the testimony of Rosenblit and Murphy to be

highly credible, honest, forthright, direct, and specific.  (See Evid. Code, § 780; *In the Matter of Wright* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 219, 227 [court should declare how it weighs evidence and determines witness credibility].)  Their testimony was reasonable, materially consistent, and supported by the documentary evidence.  The court credits it fully.

As to Respondent's testimony, though credible in his recollection of when he received notice of his license suspension and his efforts to stop Rosenstiel and his affiliates from filing pleadings under Respondent's name in the state court proceedings, his testimony generally lacked credibility when it came to describing his relationship with Rosenstiel and his recollection of what portion of the pleadings he supposedly assisted with in the federal court cases.[7]  Still, in evaluating the evidence and making the below described findings of fact, the court recognizes that its rejection of Respondent's incredible testimony "does not reveal the truth itself or warrant an inference that the truth is the direct converse of the rejected testimony."  (*Edmondson v. State Bar* (1981) 29 Cal.3d 339, 343, internal quotations omitted.)

**Background**

The allegations in this case stem from Respondent's representation of Scott Rosenstiel and his affiliates in two federal and two state court cases.  Since 2013, Rosenstiel has been attempting to quiet title on a home located on Riderwood Drive in Sunland, California (Riderwood Property) through various lawsuits.  In June 2017, Rosenstiel was designated as a vexatious litigant by the California courts.  In response, Rosenstiel used different attorneys, including Respondent, to continue to pursue his claims in court.  He also used acquaintances to serve as his shadow plaintiffs.  In each of these cases, Rosenstiel prepared and filed the pleadings with the court under his then-attorney's name – affixing the attorney's electronic signature to the

---

[7] Respondent also asserted at trial that the attorney-client privilege prevented him from disclosing what contributions he made.  This court dismisses this assertion as the communication or discussion between Respondent and his client related thereto was not sought.

documents and, in the federal court cases, using his attorney's Public Access to Court Electronic Records (PACER) account to file the documents.

**Respondent's Representation of Rosenstiel and His Affiliates in Federal Court**

*The Lewis matter*

On October 5, 2018, attorney Robert L. Bachman filed a complaint for quiet title and declaratory relief in the United States District Court, Central District of California, case No. 2:18-cv-08615-PSG-JEM, in a matter entitled *LeRoy Albert Lewis, Trustee, Marsha Stern Nevada Irrevocable Spendthrift Trust v. Maximilian Sandor, et al* (*Lewis* matter).

On May 30, 2019, United States District Court Judge Philip S. Gutierrez filed an order granting a request for Respondent to substitute in place of Bachman as the attorney of record for the plaintiff in the *Lewis* matter.

Between June 21 and July 29, 2019, the following four pleadings were filed in the *Lewis* matter under Respondent's name and using Respondent's PACER account: (1) "Plaintiff's Response to Court's Order to Show Cause ("OSC") of 10 June 2019"[8] (Exh. 72); (2) "Notice Of Application and Leave to File Application for This Court to Hear the Application for Entry of Default and Default Judgment and to Excuse Leroy Albert Lewis From Appearing" (Exh. 75); (3) "Plaintiff's Response to Court's Order to Show Cause ("OSC") of 24 July 2019"[9] (Exh. 85); and (4) "Plaintiff's **Reply** to Defendant's Response to Order to Show Cause ("OSC") of 24 July 2019". (Exh. 86.)

Respondent's information appeared in the caption of each of these documents as follows:

Chad Thomas Pratt, Sr., Esq.
California State Bar No. 149746

---

[8] On June 10, the district court issued an order to show cause as to why the *Lewis* matter should not be dismissed for lack of prosecution.

[9] On July 24, the district court issued an order to show cause as to why the *Lewis* matter should not be dismissed for lack of subject matter jurisdiction.

Law Office of Chad Thomas Pratt, Sr.
660 South Figueroa Street, suite 1960
Los Angeles, California 90017
1.213.840.2423
chadprattsr@gmail.com

Although Respondent's information appeared in the caption and the documents contained

his electronic signature,[10] Respondent did not draft or file these pleadings; rather, Rosenstiel did.

**_The Rosenstiel matter_**

On January 4, 2019, in a related matter, Bachman filed a complaint for injunctive relief

and damages in the United States District Court, Central District of California, case No.

2:19-cv-00096-PSG-JEM, in a matter entitled _Scott Eric Rosenstiel v. Maximilian Sandor aka_

_Joachim Steingruebner_ (_Rosenstiel_ matter).

On May 10, 2019, Rosenstiel filed a form entitled "Request for Approval of Substitution

or Withdrawal of Counsel" – seeking to have Respondent replace Bachman as his attorney of

record in the _Rosenstiel_ matter.[11]  The form was signed by Bachman, Respondent, and

Rosenstiel.  The district court granted the request on May 14.

Between May 10 and July 24, 2019, the following pleadings were filed in the _Rosenstiel_

matter under Respondent's name and using Respondent's PACER account: (1) "Plaintiff's

Response to OSC and <u>Emergency</u> Application to Serve Defendant by Mail Per FRCP 4(f)(3), Or

in the Alternative, by Publication" (Exhs. 15 and 17); (2) "First Amended Complaint for

Reformation of: Deed, Declaratory and Injunctive Relief, and Damages: 28 U.S.C. 1331, 1332,

1367(a), and 2201 and 2202" (Exh. 22); (3) "Request to Enter Default" (Exh. 25); (4) "Notice of

Application and Application For Entry of Default and Default Judgment" (Exhs. 28 and 33);

---

[10] Respondent's electronic signature appeared as either "/s/ Chad Thomas Pratt, Sr., Esq.
/s/" (see, e.g., Exh. 72, p. 1) or just "/s/" over the line above his name (see, e.g., Exh. 75, p. 2).

[11] It was filed a second time along with a proposed order, on May 11.

(5) "Notice of Application and Leave to File Application for This Court to Hear the Application

for Entry of Default and Default Judgment and to Excuse Leroy Albert Lewis From Appearing"

(Exh. 36); and (6) "Plaintiff's Response to Court's Order to Show Cause ("OSC") of 24 July

2019" [12] (Exh. 40).

     As with the pleadings in the *Lewis* matter, although Respondent's name and information

appeared in the caption and the documents contained an "/s/" on the line above his typewritten

name, Respondent did not draft or file the aforementioned pleadings; rather, Rosenstiel did.

### *The July 29, 2019 hearing in connection with the Lewis and Rosenstiel matters*

     On July 29, 2019, Judge Gutierrez held a hearing on the *Lewis* and *Rosenstiel* matters.

Respondent, making his first court appearance in these matters, appeared on behalf of the

plaintiffs.  Rosenstiel also appeared while Lewis did not – despite having been ordered to do so.

Murphy appeared on behalf of the defendants. [13]

     At the hearing, Judge Gutierrez directed questions at Respondent concerning the identity

of the drafter of the various pleadings filed in the cases on behalf of the Plaintiffs.  Respondent

made the following oral statements and representations as detailed in the transcript:

        THE COURT: … There was a pleading received last night around
        1:20, 1:30 in the morning.  Were you awake?

        [RESPONDENT]: Yes.

        THE COURT: Was that from you?

        [RESPONDENT]: Yes.

        THE COURT: You've written all of the pleadings in this case?

        [RESPONDENT]: Yes, your Honor.

---

    [12] On July 24, the district court issued an order to show cause as to why the *Rosenstiel*
matter should not be dismissed for lack of subject matter jurisdiction.

    [13] Murphy represented the defendants in various lawsuits dealing with the Riderwood
Property between 2016 and 2020.

THE COURT: No one else has ghost written them and used your PACER?

[RESPONDENT]: No.

THE COURT: Because that seems to be an allegation in a different case; right? Are you aware of that allegation?

[RESPONDENT]: I'm aware of that allegation.

THE COURT: That's not happening here?

[RESPONDENT]: That is not happening here.

THE COURT: So you've written everything?

[RESPONDENT]: Yes.

THE COURT: So then my question becomes so if Mr. Lewis says he knows nothing about this case, how is he a plaintiff in a case alleging allegations on information and belief if he knows nothing about this case?

[RESPONDENT]: He's just the trustee, Your Honor, that's all, and he's standing as trustee asserting his claims so that we can get the -- try to win this house back, Your Honor.

THE COURT: He's not a straw-man?

[RESPONDENT]: No, Your Honor.

THE COURT: That's an allegation in a different case. There was, I believe, someone who was dead who was still making assertions in another case.

[RESPONDENT]: I'm aware of that, Your Honor, and I deny that.

THE COURT: Okay. It seems to me, when I've looked at other pleadings that you've submitted in other cases, that the writing style is quite different than in this case, and I'm concerned about that. It seems a lot more direct, maybe rude.

[RESPONDENT]: I apologize, Your Honor. It was late --

THE COURT: I don't know if you should apologize if you are not writing it. I'm concerned that you are not writing this.

[RESPONDENT]: I am writing it, Your Honor.

(Exh. 48, pp. 5-7.)

Upon questioning by Judge Gutierrez, Murphy, who had experience working with Respondent at a prior law firm and had extensive experience with Rosenstiel's pleadings as defense counsel in his many lawsuits, affirmed that Rosenstiel had a history of drafting and filing pleadings using his attorneys' PACER accounts.  Murphy further affirmed she believed the same thing was happening with Respondent because the writing style mirrored that of Rosenstiel's prior filings.

At the conclusion of the hearing, the court orderd the matters submitted and indicated that both matters would be dismissed with prejudice in a written order.

### *Judge Gutierrez's order dismissing the Lewis and Rosenstiel matters*

On July 31, 2019, Judge Gutierrez issued orders dismissing the *Lewis* and *Rosenstiel* matters with prejudice for lack of subject matter jurisdiction, concluding, among other things, that there was bad faith conduct on the part of the plaintiffs and Respondent.  Judge Gutierrez found Respondent's claims that he was the author of the filings with his name on them to be "unsatisfactory and implausible as the evidence that *Plaintiff* authored the court filings and submitted [them] under an attorney's name is overwhelming."  (Exh. 43, p. 5, italics in original.) In so finding, Judge Gutierrez listed three reasons he had to believe that the plaintiff's pleadings were written and filed by Rosenstiel, rather than by any attorney: (1) the format and writing styles of the court filings had stayed the same throughout the course of litigation despite three different attorneys[14]; (2) the filings were drastically different in style and quality compared to filings by those same attorneys in other cases; and (3) Rosenstiel had a history of filing pleadings and briefs he wrote himself under the assumed identity of an attorney.

---

[14] The three attorneys were identified as Rosenblit, Bachman, and Respondent.

**Evidence in Support of the District Court's findings in the *Lewis* and *Rosenstiel* matters**

In addition to the above-noted pleadings in the *Lewis* and *Rosenstiel* matters, this court

received into evidence pleadings that were prepared and filed by Rosenstiel in another federal

court matter involving the Riderwood Property, *Marsha Stern, Scott Eric Rosenstiel, and*

*Federal Homeowners Relief Foundation v. Gunter Zielke aka Gunter M. Zielke aka Gunter*

*Maria Zielke aka Merlin Silk aka Alex Hamlin, Prapapun Zielke aka Prapapun Chaiprasert aka*

*Gigi Zielke, and Does 1-10 Inclusive*, United States District Court, Central District of California,

case No. 2:17-cv-08421-PSG-AJW (*Zielke* matter).  Rosenstiel was represented by Rosenblit,

and later Bachman, in the *Zielke* matter.  On appeal from the judgment in the *Zielke* matter,

Rosenstiel was represented initially by Bachman and then Respondent.

Across all three federal matters (*Zielke, Lewis,* and *Rosenstiel*), the pleadings drafted and

filed by Rosenstiel bore distinctive similarities, both in form and in substance.  For example, the

attorney's information on the caption pages in the pleadings prepared by Rosenstiel are

formatted identically – including listing the attorneys' license numbers after "California State

Bar No." and listing the telephone number with a "1" in front of the area code and periods

instead of dashes.  Also, unique but consistent across the pleadings is the formatting of dates,

with the day written before the month, as opposed to the more common "month-day-year"

format used in the United States.  The pleadings also consistently utilized British English

spellings of words, as opposed to the American English spelling.  (See, e.g., Exh. 40, p. 10, fn. 1

["emphasised"]; Exh. 54, p. 30 ["authorise"]; Exh. 85, p. 19 ["summarise" and "centralised"];

Exh. 90, p. 15 ["notarised"]; and Exh. 145, p. 72 ["disfavoured"].)  Finally, the pleadings used

footnotes, underlining, and bold frequently.

In substance, Rosenstiel's pleadings rely upon extensive block quotes from various

sources without any fact-based legal analysis and makes frequent and irrelevant references to

ancestry or race. Moreover, his tone is often disrespectful, presumptuous, and unprofessional.

For example, the complaint in the *Zielke* matter, which was prepared and filed by Rosenstiel

under Rosenblit's name, states:

> Gunter is a citizen of Germany (and as will be shown below, is a Nazi whose family fought for the Nazis in WWII, and he has expressed anti-white sentiment in general and anti-Jewish sentiment in particular) and, had he succeeded in selling the house out from under Plaintiffs, he would have taken the money and fled back to Germany. As this Court will eventually see, Gunter is a pathological liar. He set up his two trusts, to wit, the Alpha Beta Gamma Trust and Sunland Financial Services, with the sole purpose of defrauding the federal government after it pursued him for filing false tax returns. After the federal government filed suit against him, he tried to deceive the Dept of Justice ("DOJ") by sending it a letter under the name of Alex Hamlin, who is a fictitious person, in which he claimed that he and his wife reside in Germany....[15]

(Exh. 106, p. 12.)

Similarly, the first amended complaint in the *Zielke* matter, which was also prepared and

filed by Rosenstiel under Rosenblit's name, includes the following footnotes:

> There are different kinds of racists. For example, there are Nordicists, whose in-group includes only people of Northern and Western European extraction. There are white nationalists, whose ingroup includes most gentile people of European descent. Gunter Zielke is what's known as an "Eurasianist." His ingroup also includes, to some extent, East Asians.

(Exh. 107, p. 38, fn. 13.)

> The use of antiquated legal terms such as "quadroon" are used for the sake of accuracy as Plaintiffs believe it would be misleading to describe Gibson as "black" or "African-American" due to his relatively light hue and mixed-white ancestry. Nor could Gibson's mother be called "African-American" as she was a French citizen who lived in France. She was not an American of any kind.

(Exh. 107, p. 40, fn. 16.)

---

[15] Quoted language from the pleadings appears exactly as written in the original, with any uppercase font, quotations, grammatical errors, and missing punctuation.

Rosenblit credibly testified that he did not prepare the aforementioned pleadings that bore his name. Rather, Rosenstiel had an arrangement with Rosenblit whereby Rosenstiel would prepare the pleadings with Rosenblit's name and electronic signature and file the pleading utilizing Rosenblit's PACER login information. However, after Rosenstiel filed a request for entry of default in the *Zielke* matter, despite Rosenblit's agreement with Murphy to extend the response deadline, Rosenblit terminated the arrangement, stating in an email on April 24, 2018: "Please find new counsel. I have changed the PACER login info." (Exh. 113, p. 26.)

So, Rosenstiel hired Bachman as his attorney. Like Rosenblit, Bachman did not draft or file the pleadings. The writing of the pleadings filed under Bachman's name closely resembled the style and content of Rosenstiel's prior court filings and Bachman confirmed to Murphy that he had permitted Rosenstiel to file documents under his name and using his PACER account.

Though Respondent took over for Bachman in the *Zielke*, *Lewis,* and *Rosenstiel* matters, the style and core substance of the pleadings did not change. The pleadings continued to be littered with footnotes, irrelevant asides, and inappropriate racial references. For example, the following footnotes appeared in a September 23, 2019 brief filed under Respondent's name, on appeal from the *Zielke* matter:

> As is apparent from his name, Mr. Madrid is Hispanic. In actuality though, he's of Sephardic Jewish descent. The surname "Madrid" is the giveaway as Jews would frequently adopt surnames associated with their locale in order to not stick out and thereby diminish antiSemitism from the general population.

(Exh. 128, p. 29, fn. 5.)

> While Mr. Madrid does have the dark skin tone typical of a Mexican-American, it is not black. However, one cannot always expect accuracy in slurs from gang members.

(Exh. 128, p. 31, fn. 6.)

-13-

The brief further provided, in pertinent part:

> **There's also very little to say for an attorney who would voluntarily represent an open Nazi engaged in a conspiracy to deprive a Jewish family of their home.**

(Exh. 128, pp. 66-67.)

Additionally, the overall tenor of the pleadings filed under Respondent's name in the

*Zielke, Lewis,* and *Rosenstiel* matters was drastically different from his pleadings in this matter.[16]

For example, one of the pleadings in the *Lewis* matter stated:

> So unless there's something which Plaintiff is missing - some rule buried somewhere else or something in the case law which he has not discovered - the clerk's refusal to enter default was wrongful and this Court is obligated to hear Plaintiff's Application to enter default judgment.

(Exh. 75, p. 4.)

While another pleading in the *Lewis* matter, stated:

> It is especially important that leave to amend be granted, not only because Plaintiff is completely flabbergasted to learn that Sandor is a United States citizen (at least if the proffered document is not yet another Gunter-photoshop job), but because, if this Action is dismissed, the statute of limitations under CCP 338(d) has probably run. Plaintiff believes this Action should be resolved on the merits, and if we ever get to that point, this Court will see that the evidence favouring Plaintiff is truly overwhelming.

(Exh. 85, p. 2.)

The memorandum of points and authorities in support thereof further provided:

> After the Zielkes and Sandor succeeded in having their favourite judge (illegally) assume jurisdiction over the case, they filed a motion for relief from default under CCP 473(b) on 4 May 2017, which is more than six months beyond the absolute six month deadline imposed therein. Nevertheless, their favourite judge not only granted the motion but dismissed the case outright.

---

[16] In his pleadings filed before this court, Respondent respectfully asked the court for relief and cited to law when asserting a legal proposition – utilizing diction, syntax, and tone in stark contrast to that in the pleadings filed in the *Zielke*, *Lewis*, and *Rosenstiel* matters.

…

> This Court is simply wrong as a matter of law in concluding that it
> lacks jurisdiction over the subsequent enforcement of its own
> judgments.  **All** of the case law is to the contrary.  Does this Court
> not recall that Plaintiff already briefed this issue in his Response to
> the Court's OSC of 29 November 2018?

(Exh. 85, pp. 20 and 24.)

This same condemnatory tone was used in the two "Plaintiff's Notice of Motion and

Motion to Alter or Amend a Judgment Pursuant to FRCP 59(e) and FRCP 60(b)(1), (3), (4) and

(6)" filed in the *Lewis* and *Rosenstiel* matters, respectively, after the July 31, 2019 dismissal

orders.  As with the earlier pleadings, these pleadings contained Respondent's name and contact

information in the caption and his electronic signature, yet the tone and criticism of the district

court in these two additional pleadings were consistent with prior pleadings prepared and filed by

Rosenstiel and not authored by Respondent.  For example, in the *Lewis* pleading, the

memorandum of points and authorities stated:

> Under these facts though, this is absolutely an abuse of discretion.
> What the Court should do is not be Fonzie (who could never admit
> to being wrong), admit it confused the two FACs, and applaud
> Plaintiff for not misleading the Court by not filing a verified
> complaint when he in fact lacked personal knowledge.

(Exh. 90, p. 10.)

And further stated:

> As for the "quality of writing," this really intrudes upon first
> amendment grounds.  Plaintiff, like all others, has a
> constitutionally-secured right to file petitions with the Court. There
> is no qualification for either the quality of writing or who might be
> helping Plaintiff or his counsel prepare the paperwork. Indeed, the
> vast majority of attorneys rely upon paralegals to do their research
> and writing for them. This is well known. So what? This really is
> pretextual and motivated by clear bias. The Court does not like
> Plaintiff's tone and is looking for any excuse to dismiss the action
> and punish him to the tune of half a million dollars! For this
> reason, the sanction not only violates Plaintiff's first amendment
> right of access to the Courts, but denies him his first amendment

> right – and that of his counsel - to involve anyone of his choice in
> document preparation.

(Exh. 90, p. 14.)

Finally, as discussed *post*, Respondent admits to allowing Rosenstiel to prepare and file

documents under his name in the state court matters.  And there is no reason to believe that the

arrangement was any different in the federal court matters.

In sum, the evidence clearly and convincingly supports Judge Gutierrez's findings that

Respondent was not truthful in stating that he, not Rosenstiel, wrote the pleadings that were filed

under his name.

**Respondent's Representation of Rosenstiel and his affiliates in State Court**

### *Respondent's suspension from the practice of law in California*

Effective August 10, 2022, in case No. S273221 (State Bar Court No. SBC-20-O-30867),

Respondent was suspended from the practice of law for a minimum of one year and until he

shows proof of his rehabilitation under Standard 1.2(c)(1).

Prior to this, on July 13, 2022, the Supreme Court had filed an order that, pursuant to

rule 9.18(a) of the California Rules of Court, the disciplinary order would become final upon the

date of the Supreme Court's order denying Respondent's July 7 petition for rehearing.[17]

On Wednesday, August 10, the Supreme Court filed an order denying Respondent's

petition for rehearing and the discipline order became final as of that date.  Although the

Supreme Court posted a description of the August 10, 2022 order on the docket on its website the

same day the order was issued, Respondent did not receive notice that his suspension became

effective until August 15 – when he noticed that his status on his State Bar profile page had been

---

[17] Respondent filed a petition for rehearing of the Supreme Court's order imposing
discipline and denying his petition to modify the State Bar Court's discipline recommendations.

changed from active to inactive and showed that he was "not eligible to practice law in CA."[18]
Respondent was not signed up for email notifications and did not look up the status of his case
on the Supreme Court's website during this time.[19]   Instead, he was monitoring his profile on
the State Bar website.

### The Madrid matter

Respondent represented the plaintiffs, Rosenstiel and Danniel Madrid, in a lawsuit filed
on January 16, 2020, in the Los Angeles Superior Court, case No. 20BBCV00050, entitled
*Danniel Madrid and Scott Eric Rosenstiel v. Candace Howell, et al.* (*Madrid*), alleging various
causes of action related to the Riderwood Property.  The matter was dismissed without prejudice,
on January 13, 2022, after neither party appeared for the hearing.

On July 14, 2022, on behalf of the plaintiffs, Respondent filed a motion for relief from
dismissal.  As with the motions filed in the federal matters, Respondent's name and contact
information appeared in the caption and contained an "/s/" for his signature.  (Exh. 149, p. 17)

On Friday, August 12, 2022 – two days after the Supreme Court suspension order became
effective – Respondent appeared telephonically on behalf of plaintiffs for a hearing on the
motion for relief for dismissal.[20]  The superior court, Judge Frank Tavelman presiding, granted
the motion and set aside the dismissal.  Sometime after the hearing, opposing counsel informed
Judge Tavelman that Respondent was not entitled to practice law on August 12, 2022, when
Respondent appeared before the court.

---

[18] The State Bar received the Supreme Court's August 10 order denying Respondent's
petition for rehearing on August 15 and changed his status on State Bar's website on that date.

[19] Individuals may look up current cases and register for email notifications related to a
particular case on the Supreme Court's website.

[20] Respondent had checked his status on the State Bar website that day and confirmed it
still listed him as an active attorney.

So, on August 30, 2022, Judge Tavelman conducted a further hearing. Respondent did not appear. At the hearing, Judge Tavelman vacated the order setting aside the dismissal and reinstated the court's January 13 dismissal order. Judge Tavelman also ordered that a copy of the August 30, 2022 minute order be mailed to the State Bar.

### *The Federal Homeowners matter*

Respondent represented petitioner Kenneth Adler, a friend of Rosenstiel, in a matter entitled *In re Federal Homeowners Relief Foundation*, in the San Bernardino County Superior Court, case No. TRUPS2000203 (*Federal Homeowners*). The case was filed in probate and dealt with the Riderwood Property. Although Respondent's name and contact information appeared in the caption of the pleadings filed in *Federal Homeowners* and contained his electronic signature, he did not write the pleadings. Instead, as in the federal matters, he gave Rosenstiel, as Adler's agent, permission to prepare and file pleadings under Respondent's name.

However, in early August 2022, Respondent contacted Rosenstiel by telephone and email and instructed him to stop submitting pleadings bearing his name and to not set any hearings. Specifically, between August 2 and 6, he wrote emails instructing Rosenstiel to hire new counsel. For example, on August 2, he wrote: "Need sub out yesterday [¶] Please handle tomorrow." (Exh. 1017, p. 1.) Then on August 3, he wrote: "Need sub out asap [¶] I have provided many attys [¶] Pick one [¶] You will be proper (sic) soon…" (Exh. 1017, p. 2.) And in two separate emails on August 6, he wrote: "Just sub me out asap Monday" and "If NOT sub out I will be compelled to file notice of suspension and you will be pro per as per Rule Court 9.20 (suspended attorney must notice all when suspended)". (Exh. 1017, pp. 1, 3.)

Then, on August 8, Respondent wrote:

> caLL AZUMA to sub into cases !!!

> DO NOT FILE ANYTHING IN MY NAME
> DO NOT FILE ANYTHING IN MY NAME
>
> NO C OURT APPEARANCES
> NO COURT APPEARANCES
> NONE …..
>
> CANNOT RISK ANYTHING …..

(Exh. 1017, p. 4.)

Finally, on August 15 at 3:50 p.m. Respondent sent Rosenstiel the following email:

> **I am SUSPENDED as of 8-15-22.**
>
> **Do NOT FILE ANYTHING MY NAME THIS DAY
> FORWARD, 8-15-22 and DO NOT SET ANY COURT
> APPEARANCES !!!!**
>
> **NEED A SUB OF ATTY ALL CAESS BY TOMORROW, I
> WILL HAVE TO FILE DECLARATIONS  BY THE END OF
> THE WEEK..;**
>
> **I NEED TO BE PAID FOR ALL PAST WORK ASAP
> URGENT**
>
> **URGENT
> URGENT
> URGENT**

(Exh. 1017, p. 5.)

Regardless of Respondent's communications with Rosenstiel, on August 11, 2022 – a day after Respondent's suspension became effective – a pleading captioned "Petitioner's Opposition to Respondent's Motion to Dismiss" was filed by fax.[21]  Although Respondent did not assist with the preparation of this document, his name and contact information appeared in the caption as the attorney for Adler and the pleading contained his electronic signature.

---

[21] The fax banner noted it came from Adler, sent from a fax number ending in 4457, noted it began on page 7 of 62, and included the date and time.  (Exh. 174, p. 1.)

Also on August 11, a substitution of attorney form was filed by fax.[22]  Although

Respondent did not assist with the preparation of this document, his name and contact

information again appeared in the caption and the document contained his electronic signature

over the heading of "SIGNATURE OF NEW ATTORNEY".  (Exh. 175.)  The former attorney

was not listed nor was there a signature for the former attorney.  This document was prepared

incorrectly as Respondent would not have been the new attorney, as he was the current attorney.

On August 15, a pleading captioned "Petitioner's Reply to Respondents' Opposition to

Petitioner's Motion for Sanctions Pursuant to CCP 128.7" was filed by fax.[23]  Again, although

Respondent had no part in the preparation of this document, his name and contact information

appeared in the caption and the document contained his electronic signature.

Finally, on August 24, 2022, two pleadings were filed by fax, another substitution of

attorney form and a pleading captioned "Declaration of Chad Thomas William Pratt, Sr. in

Regards to the Depositions".  (Exhs. 178 and 179.)  In both filings, Adler is listed as a Petitioner

without an attorney and Adler's contact information, rather than Respondent's, appeared in the

caption.  On the substitution of attorney form, Respondent's electronic signature appeared as the

former attorney and the form indicated that Adler would be representing himself.

**Respondent sends apology to Judges Gutierrez and Tavelman**

On August 7, 2023, Respondent mailed apology letters to Judge Gutierrez and Judge

Tavelman.  In the letter to Judge Gutierrez, he wrote that he apologizes if he "attempted to

mislead or misinform [Judge Gutierrez] which was NOT [his] intention or motive , or what [he]

believe[d he] did on JULY 29th, 2019."  (Exh. 1001, p. 1.)  Respondent maintained that he

---

[22] The fax banner noted that it was page 6 of 62 and bore the same date and time as the
fax banner for the opposition to the motion to dismiss, which came from Adler.  (Exh. 175.)

[23] The fax banner again noted that it came from Adler, sent from a fax number ending in
4457.  (Exh. 176, p. 1.)

drafted and filed all pleadings under his name, "in collaboration with [his] former client[.]"
(*Ibid.*)  In the letter to Judge Tavelman, he wrote that he appeared in court on August 12
"believing in 'good faith' that [he] was indeed a licensed attorney on that date" – explaining that
he did not receive the mailed notice from the Supreme Court until the following Monday.  (Exh.
1003.)

### Conclusions of Law

***Count One– § 6068, subd. (d) (Seeking to Mislead a Judge)***
***Count Two– § 6106 (Moral Turpitude – Misrepresentation)***

Counts one and two charge Respondent with violating section 6068, subdivision (d)
(misleading a judge) and section 6106 (moral turpitude – misrepresentation), respectively, by
making false and misleading statements in response to Judge Gutierrez's questions at the July 29,
2019 hearing in connection with the *Lewis* and *Rosenstiel* matters.

As a preliminary matter, the required showing to establish a violation of either of the
above-noted statutes is substantially similar.  Section 6068, subdivision (d), provides that an
attorney shall never seek to mislead the judge by an artifice or false statement of fact or law.
Likewise, it is well established that acts of moral turpitude, in violation of section 6106, include
an attorney's false or misleading statements to a court.  (*Bach v. State Bar* (1987) 43 Cal.3d 848,
855; *Chefsky v. State Bar* (1984) 36 Cal.3d 116, 124.)  Importantly, in evaluating whether a
statement was false or misleading, "[n]o distinction can . . . be drawn among concealment, half-
truth, and false statement of fact."  (*Grove v. State Bar* (1965) 63 Cal.2d 312, 315.)
Additionally, materiality must be shown.  (See, e.g., *In the Matter of Farrell* (Review Dept.
1991) 1 Cal. State Bar Ct. Rptr. 490, 497 [misrepresentation to tribunal must be material to
issues before it].)  Therefore, culpability under either statute requires, at a minimum, a showing
that the alleged misrepresentations or omissions were false or misleading, factual, and material.

Further, culpability under section 6068, subdivision (d), requires a showing that
Respondent acted with the *intent to deceive* the court, regardless of whether the court was
actually deceived.  (See *In the Matter of Chesnut* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr.
166, 174 [attorney must act with intent to deceive to violate section 6068, subd. (d)]; see also
*Davis v. State Bar* (1983) 33 Cal.3d 231, 240 [actual deception of the court is not required].)
Whereas a finding of gross negligence in creating a false impression is sufficient for a violation
of section 6106, regardless of Respondent's intent.  (See *In the Matter of Moriarty* (Review
Dept. 1999) 4 Cal. State Bar Ct. Rptr. 9, 15; see also *In the Matter of Wyrick* (Review Dept.
1992) 2 Cal. State Bar Ct. Rptr. 83, 90-91.)

Specifically, OCTC alleges that Respondent made false and/or misleading statements by
(1) answering "Yes" to Judge Gutierrez's question as to whether Respondent had written all the
pleadings in the two matters; and (2) answering "No" to Judge Gutierrez's question about
whether anyone had ghost-written the pleadings and used Respondent's PACER account to file
them, because Respondent knew that Rosenstiel had written the pleadings and used
Respondent's PACER account to file them.  In his defense, Respondent argues: (1) he was not
prepared for Judge Gutierrez's questions; (2) he clearly misunderstood the questions because he
could not have possibly drafted *all* of the pleadings in the matters; and (3) his answers were true.
Respondent also claims that a violation of section 6068, subdivision (d) cannot be shown
because Judge Gutierrez did not testify to establish that he was misled.

Preliminarily, as noted above, section 6068, subdivision (d), only requires a showing that
the attorney intentionally *sought* to mislead a judge.  Accomplishing the deceit is not required.
(See *Vickers v. State Bar* (1948) 32 C2d 247, 253 ["The conduct denounced … is not the act of
an attorney by which he successfully misleads the court, but the presentation of a statement of
fact, known by him to be false, which tends to do so."]; see also *Codiga v. State Bar* (1978)

20 Cal.3d 788, 793 ["deceit by an attorney is reprehensible misconduct whether or not harm results and without regard to any motive or personal gain"].)  Therefore, the fact that Judge Gutierrez did not testify in these proceedings is of no consequence.

The court further finds Respondent's other arguments equally unavailing.  First, unlike questions directed at the merits of the case, which an attorney may not be prepared to answer, the questions posed to Respondent were straightforward, uncomplicated, and did not deal with a substantive issue in the case.  No preparation was necessary.  Second, it would be unreasonable to interpret Judge Gutierrez's questions as applying to pleadings prepared by predecessor counsel and/or by defense counsel just as it would be unreasonable to interpret Respondent's answers as having been intended to refer to pleadings filed before he was on the case.  Judge Gutierrez began his questioning by specifically referring to the pleading filed in the early morning hours of that day and Respondent responded that he was responsible for writing that pleading and took responsibility for all other pleadings filed under his name.

Finally, the record clearly and convincingly supports a finding that Respondent's statements to Judge Gutierrez were false, or at the very least misleading.  There is no support for Respondent's claims that he collaborated with and assisted with preparing and filing the pleadings for Rosenstiel, who was prevented from doing so himself due to his designation as a vexatious litigant.  Even so, that is not what Respondent represented to Judge Gutierrez. Respondent repeatedly asserted and/or implied that he, and only he, was the one writing the pleadings with his name on them and submitting them to the court.  This is false.  The evidence presented – including the prior pleadings admittedly drafted and filed by Rosenstiel as compared to other pleadings that were drafted by Respondent and the credible testimony of Murphy, who was very familiar with Rosenstiel's writing style from the many lawsuits she defended – clearly and convincingly demonstrates that Respondent did not draft the pleadings that bore his name

and were filed with his PACER account.  Judge Gutierrez pointedly sought this information from

Respondent and Respondent deliberately sought to mislead the judge with his responses to the

judge's line of questioning so as not to implicate his client or himself in any wrongdoing.

Therefore, the court finds by clear and convincing evidence that Respondent is culpable

for a violation of section 6068, subdivision (d), by knowingly and intentionally answering Judge

Gutierrez's line of questioning at the July 29, 2019 hearing in a deceptive manner, as charged in

count one.  The court also concludes these knowingly false and misleading statements amount to

an act of moral turpitude in violation of section 6106, as charged in count two.  However,

because the conduct alleged in count two is duplicative of count one, the court does not assign

any additional weight in culpability for count two.  (See *In the Matter of Chesnut, supra,* 4 Cal.

State Bar Ct. Rptr. at p. 175 [where same facts underlie §§ 6106 and 6068, subd. (d) violations,

no additional weight was given to § 6106 violation in determining the appropriate discipline].)

### *Count Three – § 6068, subd. (a) (Failure to Comply with California Laws – UPL)*

Section 6068, subdivision (a), provides that it is the duty of an attorney "to support the

Constitution and laws of the United States and of this state."  Therefore, section 6068,

subdivision (a), constitutes a conduit whereby attorneys may be disciplined for violating laws

that are not otherwise disciplinable under the State Bar Act (i.e., section 6000 et seq.).  (See *In

the Matter of Lilley* (Review Dept.1991) 1 Cal. State Bar Ct. Rptr. 476, 487, and cases cited

therein.)  Case law has established that a violation of section 6068, subdivision (a), may be

predicated on violations of sections 6125 and 6126.  (*In the Matter of Trousil* (Review

Dept.1990) 1 Cal. State Bar Ct. Rptr. 229, 236-237.)  Section 6125 provides: "[n]o person shall

practice law in California unless the person is an active licensee of the State Bar" and section

6126 prohibits any person who is not an active licensee of the State Bar (or otherwise authorized

to practice law in the state of California) from holding himself or herself out as entitled to
practice law or otherwise practicing law.

In count three, OCTC charges Respondent with violating section 6068, subdivision (a),
by holding himself out as entitled to practice law and actually practicing law at the August 12,
2022 hearing in *Madrid*, while he was suspended from the practice of law.

Although Respondent admits to having appeared telephonically in the *Madrid* matter,
after the effective date of his suspension, he argues that he did not know his suspension was
effective until Monday, August 15, 2022, when he received the notice from the Supreme Court
and saw the change of status on the State Bar website.  Therefore, he contends that he is not
culpable of misconduct because his appearance was a mistake of fact.  Although the court found
Respondent credible in explaining that he did not know of his suspension at the time that he
appeared in the *Madrid* matter, sections 6125 and 6126 do not require a showing that Respondent
knowingly committed UPL in order to constitute a violation.  (See *In the Matter of Heiner*
(Review Dept.1990) 1 Cal. State Bar Ct. Rptr. 301, 318-319 [violations of §§ 6125, 6126, and
6068, subd. (a), established by single court appearance by attorney who did not know of his
involuntary inactive enrollment].)  Rather, it is sufficient to show that Respondent's conduct was
willful.  Here, there is no question that Respondent intended to appear in court in *Madrid*.
Therefore, his conduct was willful.  (See *In the Matter of Taggart* (Review Dept. 2001) 4 Cal.
State Bar Ct. Rptr. 302, 309 [willfulness does not require showing that attorney "intended the
consequences of his acts or omissions, it simply requires proof that he intended the act or
omission itself"].)

Based on the foregoing, the court finds clear and convincing evidence that Respondent
practiced law while he was on disciplinary suspension in willful violation of sections 6125 and

6126, and thereby violated section 6068, subdivision (a).  So, culpability is found under count three.

### Count Four – § 6106 (Moral Turpitude – Knowingly Engaging in UPL)

In count four, OCTC charges Respondent with committing an act of moral turpitude by knowingly (or grossly negligently) engaging in UPL in *Madrid*, by the same act alleged in count three.  As this court has already found that Respondent engaged in UPL by appearing at the August 12, 2022 court hearing on behalf of his clients when his license was suspended, the court next considers whether Respondent acted with the requisite level of intent, guilty knowledge, or, at a minimum, gross negligence to prove moral turpitude.  (See *In the Matter of Respondent H* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 234, 241; see also *In the Matter of Wyrick, supra,* 2 Cal. State Bar Ct. Rptr. at p. 91.)

Preliminarily, the court found Respondent's testimony that he did not know his status changed prior to August 15 to be credible.  No evidence was presented that Respondent viewed the Supreme Court website, signed up for notifications on the website, nor that he was otherwise notified of the suspension before the hearing.  Nonetheless, OCTC makes various arguments as to why Respondent either intentionally or through willful blindness, practiced law when he knew or reasonably should have known that he was not eligible to do so.

OCTC argues a reasonable attorney would have considered the possibility, if not likelihood, that there would be lag time between the filing of the Supreme Court order and the updating of Respondent's profile page on the State Bar's website and he should have been visiting the Supreme Court online docket daily.  The court disagrees.  Respondent was regularly checking his mail and the State Bar website for his license status and could not reasonably be expected to know how the State Bar's website is administered.  OCTC also argues Respondent could have signed up for email notifications with the Supreme Court and did not, demonstrating

a willful blindness.  The court again disagrees.  OCTC did not present evidence that parties to a

case are required to separately sign up for email notifications in order to receive notice of the

rulings in a case and Respondent reasonably expected to receive notice as a party in the case.

Resolving all reasonable doubts in Respondent's favor, the court finds insufficient

evidence to support a finding that Respondent's actions involved moral turpitude, dishonesty, or

corruption.  Accordingly, count four is dismissed with prejudice.  (See *In the Matter of Heiner,*

*supra,* 1 Cal. State Bar Ct. Rptr. at p. 319 "[e]vidence that an attorney made a single court

appearance while ignorant of his or her inactive status is insufficient to establish clearly and

convincingly that the attorney acted with moral turpitude"]; see also *In the Matter of Hazelkorn*

(Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 602, 606 [UPL did not involve moral turpitude

where attorney honestly believed entitled to practice].)

### Count Five – § 6068, subd. (a) (Failure to Comply with California Laws – UPL)
### Count Six – § 6106 (Moral Turpitude – Knowingly Engaging in UPL)

In count five, OCTC charged Respondent with violating section 6068, subdivision (a), by

holding himself out as entitled to practice law and actually practicing law by filing or causing to

be filed the following pleadings in *Federal Homeowners* on behalf of his client, all of which

contained Respondent's signature: (1)"Petitioner's Opposition to Respondents' Motion to

Dismiss; Memorandum of Points and Authorities, Declarations, Proposed Order," filed on

August 11, 2022; (2) "Substitution of Attorney-Civil," filed on August 11, 2022; (3) "Petitioner's

Reply to Respondents' Opposition to Petitioner's Motion for Sanctions Pursuant to CCP 128.7;

Memorandum of Points and Authorities; Declaration," filed on August 15, 2022; and

(4) "Substitution of Attorney-Civil," filed on August 24, 2022.

In count six, OCTC charged Respondent with committing an act of moral turpitude by

knowingly (or grossly negligently) engaging in UPL in the *Federal Homeowners*, by the same

acts alleged in count five.

As noted above, there is no dispute that Respondent was suspended from the practice of law in California, effective August 10, 2022.  So, any pleadings prepared and filed by Respondent after his suspension would constitute UPL.  However, the evidence before the court does not demonstrate that Respondent played any part in the drafting and/or filing of the aforementioned pleadings, which were filed after the effective date of his suspension.

As an initial matter, the substitution of attorney filed on August 24, 2022, does not bear Respondent's name as counsel.  In fact, his signature only appears on that document for the purposes of withdrawing from representation.  Moreover, although Respondent had previously given his client permission to prepare and file pleadings bearing his name as counsel, that permission was revoked as of August 8 when Respondent unequivocally told Rosenstiel to not file any more pleadings in his name and instructed him to substitue Respondent out of the cases.  (Cf. *In the Matter of Rodriguez* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 480, 493 [finding a violation of § 6125 where the attorney "knowingly permitted a complaint bearing his name as counsel to be filed after the effective date of his suspension"].)  In fact, Respondent had referred his clients to a new attorney and was actively taking steps to withdraw from the *Federal Homeowners* matter as early as August 2.  Under these facts, it would be improper to attribute any subsequent filings to Respondent.

Based on the foregoing, counts five and six are dismissed with prejudice.

### Aggravation and Mitigation

**Aggravation**

OCTC must establish aggravating circumstances by clear and convincing evidence. (Std. 1.5.)  The court finds that OCTC has established two aggravating factors: prior record of discipline and multiple acts of wrongdoing.  However, the court does not find aggravation for indifference or significant harm to the administration of justice.

### *Prior Record of Discipline (Std. 1.5(a))*

Respondent has three prior records of discipline.

In his first disciplinary matter, effective March 13, 2014, in case No. S215044 (State Bar Court No. 12-O-16642), the Supreme Court suspended Respondent from the practice of law for one year, stayed, and imposed a two-year probation term with conditions, including an actual suspension for 30 days (*Pratt I*). Respondent stipulated to failing to deposit a $5,000 settlement check into his client trust account (CTA) in violation of Rules of Professional Conduct, former rule 4-100(A),[24] commingling in violation of former rule 4-100(A), and failing to maintain CTA records in violation of former rule 4-100(B)(3). Respondent's misconduct was aggravated by multiple acts of wrongdoing and mitigated by his lack of prior discipline and his cooperation by entering into a pretrial stipulation.

In his second disciplinary matter, effective February 16, 2015, in case No. S222942 (State Bar Court Nos. 13-O-12312 (13-O-12367; 13-O-12757)), the Supreme Court suspended Respondent from the practice of law for three years, stayed, and imposed a three-year probation term with conditions, including an actual suspension for the first year and until Respondent made restitution (*Pratt II*). The case involved misconduct as the owner of a real estate law firm and occurred prior to the imposition of discipline in *Pratt I*. Respondent was found culpable of 14 counts of misconduct, including failing to perform with competence, failing to properly supervise his staff, aiding UPL, failing to provide appropriate accountings, failing to return unearned fees, and failing to communicate with his clients. In aggravation, Respondent had a prior record of discipline, committed multiple acts of misconduct, failed to make restitution, and caused significant harm to his clients. There were no mitigating factors.

---

[24] Unless otherwise indicated, all references to former rules are to the former Rules of Professional Conduct, in effect through October 31, 2018.

Finally, as noted *supra*, effective August 10, 2022, in case No. S273221 (State Bar Court No. SBC-20-O-30867), the Supreme Court suspended Respondent from the practice of law for two years, stayed, and imposed a two-year probation term with conditions, including an actual suspension for a minimum of the first year and until he provides proof of his rehabilitation under Std. 1.2(c)(1) (*Pratt III*). The case again involved misconduct as the owner of a real estate law firm, occurring during the same time period as the misconduct in *Pratt II*. Respondent was found culpable of eight counts of misconduct, including committing acts of moral turpitude, failing to comply with state and federal laws, aiding UPL, collecting illegal fees, and failing to return unearned fees. In aggravation, Respondent had two prior records of discipline, committed multiple acts of wrongdoing, caused significant harm to his clients who were vulnerable victims, and exhibited indifference. In mitigation, the court found good character, excessive delay by the State Bar, and community service.

The fact that Respondent's misconduct again involves moral turpitude – a repetition of his prior misconduct – and again demonstrates an improper delegation of his duties and responsibilities as an attorney, the court concludes Respondent's prior records of discipline merit substantial weight in aggravation. (Cf. *In the Matter of Gadda* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 416, 443- 444 [similarity between prior and current misconduct shows lack of rehabilitation and renders previous discipline more serious aggravation]; see also, *In the Matter of Bouyer* (Review Dept.1998) 3 Cal. State Bar Ct. Rptr. 888, 892-893 [three prior disciplines found to be a serious aggravating factor].).)

### *Multiple Acts of Wrongdoing (Std. 1.5(b))*

Respondent committed multiple acts of wrongdoing by his false statements to the judge during the July 29, 2019 hearing in the *Lewis* and *Rosenstiel* matters and by his UPL by making a single court appearance in *Madrid* after the effective date of his disciplinary suspension.

Although Respondent committed these acts of misconduct in separate court matters, the court assigns limited weight in aggravation for multiple acts of wrongdoing because they were discrete acts that both arose from Respondent's representation of Rosenstiel and his affiliates in litigation related to the Riderwood Property.  (See *In the Matter of Bach* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 631, 646 ["two matters of misconduct may or may not be considered multiple acts"]; see also *In the Matter of Amponsah* (Review Dept. 2019) 5 Cal. State Bar Ct. Rptr. 646, 653 [finding modest aggravating weight is appropriate for attorney's three acts of wrongdoing]; compare *In the Matter of Shalant* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 829, 839 [two counts of misconduct arising from one transaction did not constitute multiple acts of misconduct].)

### *Indifference (Std. 1.5(k))*

OCTC argues that Respondent displayed indifference by filing numerous unsuccessful pretrial motions and by his behavior at trial – arguing that his testimony lacked credibility and criticizing Respondent for arguing a motion to dismiss after OCTC's case-in-chief.  The court does not agree.

Attorneys have the right to contest charges brought against them in motions and by presenting evidence and testimony at trial.  Furthermore, while his testimony as it relates to the *Lewis* and *Rosenstiel* matters did not aid in his defense, it does not clearly and convincingly establish Respondent's "indifference toward rectification or atonement for the consequences of the misconduct."  (Std. 1.5(k).)  Respondent has distanced himself from Rosenstiel and acknowledged in his apology letter to Judge Gutierrez that he exercised poor judgment in assisting Rosenstiel with his causes of action.

In sum, though Respondent's motions were unsuccessful and this court found some of his testimony lacking in credibility, the court does not find clear and convincing evidence

establishing Respondent's indifference for the purposes of aggravation.  (Cf. *In re Morse* (1995)
11 Cal.4th 184, 209 [accused attorney has the right to vigorously defend oneself].)

### Significant Harm to the Administration of Justice (Std. 1.5(j))

Citing to *In the Matter of Mason* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 639,
OCTC argues that Respondent caused significant harm to the administration of justice because
the superior court vacated its August 12, 2022 ruling and reinstated the dismissal in *Madrid* after
discovering that Respondent appeared while he was not entitled to practice law.  However, in
*Mason*, though the court found that mitigation for lack of harm was not proper, the court did
conversely find that the attorney's UPL warranted aggravation for significant harm.  Likewise,
although the effect of appearing in court may have negatively impacted the justice system,
OCTC did not show that Respondent's telephonic appearance, without actual knowledge of his
suspension, caused *significant* harm to the administration of justice.  Therefore, the court does
not find aggravation for this circumstance.

**Mitigation**

Respondent bears the burden of proving mitigating circumstances by clear and
convincing evidence.  (Std. 1.6.)  The court finds mitigation for good faith belief, cooperation,
and community service.  However, the court does not find any other mitigating circumstances
have been established by clear and convincing evidence.

### Good Faith Belief (Std. 1.6(b))

Mitigation may include a "good faith belief that is honestly held and objectively
reasonable."  (Std. 1.6(b); see also *Sternlieb v. State Bar* (1990) 52 Cal.3d 317, 331 [credible
good faith belief must also be objectively reasonable to qualify for mitigation].)  Respondent
argues that he acted reasonably and in good faith at all times.  However, as discussed, *supra,*
although the court found Respondent credible as to when he became aware of his suspension

and therefore appeared in court under the good faith belief that he was entitled to do so, this court does not find Respondent's belief that he answered Judge Gutierrez's questions truthfully to be either credible or objectively reasonable.  A reasonable attorney would have asked for clarification if confused by a judge's questions, would have alerted the judge to his concerns about divulging possibly privileged information, or would have qualified his answers by saying that he assisted in the preparation and filing of the documents, instead of falsely implying that his client had nothing to do with the drafting of the pleadings.  Therefore, while the court does not credit Respondent with good faith as it relates to counts one and two, the court finds limited weight in mitigation for his good faith belief – solely as it relates to Respondent's culpability for UPL by appearing in court while suspended as found in count three.

### Extreme Emotional Difficulties (Std. 1.6(d))

Mitigation based upon extreme emotional difficulties is appropriate if expert testimony establishes the difficulties were directly responsible for the misconduct, and if the attorney proves that the difficulties no longer pose a risk that the lawyer will commit future misconduct. (Std. 1.6(f).)  However, even in the absence of expert testimony, emotional difficulties and family problems have been considered mitigating if they are extreme and directly responsible for the misconduct.  (*Lawhorn v. State Bar* (1987) 43 Cal.3d 1357, 1364 [affording mitigation for emotional difficulties absent expert testimony].)

Here, although Respondent established though his own testimony that he experienced depression after the passing of his wife in July 2018, was drinking alcohol around the time of the hearing in the *Lewis* and *Rosenstiel* matters, has been a member of the Lawyers Assistance Program since August 2021, and has been alcohol free for several years, he failed to establish the requisite nexus between his dishonest misconduct and his emotional or mental difficulties. In fact, Respondent maintains that he did not commit any misconduct by his statements to the

court at the July 2019 hearing.  Therefore, the court cannot assign any mitigation for such
circumstances.

### Cooperation (Std. 1.6(e))

To receive mitigation under standard 1.6(e), Respondent must establish "spontaneous
candor and cooperation displayed to the victims of the misconduct or to the State Bar."  Here,
Respondent entered into the Stipulation, conceding certain facts in prior pleadings and agreeing
to the authenticity of many of OCTC's exhibits.  As a result, OCTC did not need to call all of the
witnesses identified prior to trial to establish such facts and to authenticate documents.  This
significantly shortened the length of trial, which was completed in two days.  Accordingly,
Respondent is entitled to moderate weight in mitigation for saving OCTC and the State Bar
Court significant time and resources.  (See *Silva-Vidor v. State Bar* (1989) 49 Cal.3d 1071, 1079
[mitigation warranted for stipulation as to facts and culpability]; but see *In the Matter of Johnson*
(Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 179, 190 [more extensive weight in mitigation for
attorney who admits culpability and facts].)

### Extraordinary Good Character (Std. 1.6(f))

To receive mitigation under standard 1.6(f), Respondent must establish that he possesses
"extraordinary good character attested to by a wide range of references in the legal and general
communities, who are aware of the full extent of the misconduct[.]"  Here, although Respondent
did provide a wide range of references from the legal and general communities, who collectively
wrote 12 good character letters,[25] the authors exhibited no awareness of the present misconduct.
Rather, the letters spoke of Respondent's prior wrongdoings and were apparently drafted in
support of his earlier filed request for relief from actual suspension.  Because the character
references did not demonstrate *any* awareness of the present misconduct, the court does not

---

[25] Respondent did not call any of the character witnesses to testify.

afford Respondent with mitigation credit for extraordinary good character under standard 1.6(f).

### Community Service

The court finds that Respondent established pro bono work and community service as a mitigating circumstance.  (*Calvert v. State Bar* (1991) 54 Cal.3d 765, 785.)  Respondent provided numerous instances of his service to the community.  For example, Respondent explained that he volunteers as an usher at the 11 a.m. mass at St. Bede's Catholic Church for the last two to three years.  He is also a member of the Knights of Columbus, a Catholic men's volunteer organization, for the last year.  In addition to Respondent's testimony, attorneys Kenneth H. Han, Joseph C. Longo, and Anthony Lemus all wrote about his volunteer service with the church – including his assistance with a non-profit Catholic education program for young adults.  Although Respondent's testimony may have lacked some specificity in terms of time commitments, collectively, Respondent's evidence of his volunteer work warrants moderate weight in mitigation.  (Cf. *In the Matter of Shalant, supra,* 4 Cal. State Bar Ct. Rptr. at p. 840 [limited mitigation weight for community service established only by the attorney's testimony].)

### Remoteness in Time and Subsequent Rehabilitation (Std. 1.6(h))

Mitigation may be found if the underlying misconduct was remote in time and there is an adequate showing of subsequent rehabilitation.  Here, Respondent's misconduct is not remote in time nor has he demonstrated a sufficiently prolonged period of post-misconduct practice to establish rehabilitation as he continues to be ineligible to practice law.  (Compare *In the Matter of Crane and DePew* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 139, 157 [where NDC filed three and one-half years after original complaint and the attorney showed six years of unblemished practice between the date of alleged misconduct and the disciplinary hearing].)  Accordingly, the court does not find mitigation for remoteness in time and subsequent rehabilitation.

**<u>Discussion</u>**

OCTC urges the court to disbar Respondent from the legal profession.  On the other hand, Respondent contends that an admonition[26] or, at most, a public reproval is the appropriate disposition.

The purpose of State Bar disciplinary proceedings is not to punish the attorney, but to protect the public, the courts, and the legal profession; to maintain the highest possible professional standards for attorneys, and to preserve public confidence in the legal profession. (Std. 1.1.; *Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; *Cooper v. State Bar* (1987) 43 Cal.3d 1016, 1025.)

In determining the level of discipline, the court looks to both the standards and decisional law for guidance.  (*Drociak v. State Bar* (1991) 52 Cal.3d 1085, 1090; *In the Matter of Taylor* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 563, 580.)  The analysis begins with the standards, which promote the consistent and uniform application of disciplinary measures and are entitled to great weight.  (*In re Silverton* (2005) 36 Cal.4th 81, 91 [Supreme Court will not reject recommendation arising from standards absent grave doubts as to propriety of recommended discipline].)

Standard 1.7 provides that the appropriate sanction for the misconduct found must be balanced with any mitigating or aggravating circumstances.  And, if two or more acts of professional misconduct are found in a single disciplinary proceeding, the sanction imposed shall be the most severe of the applicable sanctions.  (Std. 1.7(a).)

Here, the most severe applicable sanction can be found in standard 1.8(b), which provides that, if an attorney has two or more prior records of discipline, disbarment is appropriate if:

---

[26] Because Respondent has been found culpable of a serious offense involving moral turpitude, an admonition is not permissible.  (See Rules Proc. of State Bar, rule 5.126(A), (B).)

(1) an actual suspension was ordered in any of the prior matters; (2) the prior and current matters demonstrate a pattern of misconduct; or (3) the prior and current matters demonstrate an unwillingness or inability to conform to ethical responsibilities.[27]  Respondent's case meets two of these criteria, as he was actually suspended in each of his three prior disciplines and his prior and current misconduct demonstrate an unwillingness or inability to conform to his ethical responsibilities over the last 10 years.

Although standard 1.8(b) provides for two exceptions to the presumptive sanction of disbarment, neither applies here.  The current and former misconduct did not occur during the same time periods and Respondent's mitigation for entering into a pretrial stipulation, good faith belief as it relates to his UPL, and community service is neither compelling nor does it predominate over the serious nature of his misconduct, which involved dishonesty, and the substantial aggravation for his three prior records of discipline.

Nonetheless, the court acknowledges that disbarment is not mandatory for a fourth discipline.  (*Conroy v. State Bar* (1991) 53 Cal.3d 495, 506-507 [disbarment is not mandatory in every case of two or more prior disciplines].)  But, if the court deviates from recommending disbarment, the court must articulate clear reasons for doing so. (Std. 1.1; *Blair v. State Bar* (1989) 49 Cal.3d 762, 776, fn. 5 [requiring clear reasons for departure from standards].)  Here, Respondent has not identified an adequate reason for the court to depart from the presumptive sanction in standard 1.8(b), and the court is unable to discern any.  This court must therefore apply standard 1.8(b).

---

[27]Standards 2.11 and 2.12(a), which apply to Respondent's misrepresentations to Judge Gutierrez, provide for disbarment or actual suspension as the presumed sanction.  Similarly, standard 2.10(a) provides for disbarment or actual suspension as the presumed sanction for UPL while on disciplinary suspension – the degree of sanction dependent upon whether the attorney knew they were not entitled to practice law.

Respondent's misconduct was serious, as it involved dishonesty.  Moreover, his actions

had the effect of helping Rosenstiel to thwart the court's order declaring him to be a vexatious

litigant.  Respondent's decision to allow his client, who he knew had been declared a vexatious

litigant, to prepare and file pleadings under Respondent's name and bar number is yet another

improper use of his law license and demonstrates incredibly poor judgment.  Significantly,

Respondent's prior involvements with the State Bar disciplinary system have proven inadequate

to prevent him from continuing to commit misconduct – the present misconduct occurring well

after he was on notice of his prior wrongful actions – thereby demonstrating his unwillingness or

inability to "reform his conduct to the ethical strictures of the profession."  (*Gary v. State Bar*

(1988) 44 Cal. 3d 820, 828-829.)

Looking to comparable case law, the court found some guidance in *In the Matter of

Carver* (Review Dept. 2016) 5 Cal. State Bar Ct. Rptr. 427.  In his third disciplinary proceeding,

Carver was disbarred after being found culpable of acts of moral turpitude by knowingly

engaging in UPL while on disciplinary suspension.  In aggravation, the court found indifference,

concealment, and two prior records of discipline – a reproval for two misdemeanor convictions

not involving moral turpitude and a 90-day actual suspension for violating the conditions of his

reproval.  In mitigation, the court awarded moderate weight for good character.  Based on

Carver's two prior disciplines involving actual suspension, the court found that standard 1.8(b)

applied and Carver's case did not meet either exception under the standard.  Acknowledging that

disbarment is not mandatory for a third discipline, the court could not find any clear reason to

depart from standard 1.8(b) in view of Carver's "varied misconduct over several years" and "his

bad faith and willful blindness to his professional obligations in the present case."  (*In the Matter

of Carver, supra,* 5 Cal. State Bar Ct. Rptr. at p. 436.)

Like Carver, Respondent has demonstrated his unwillingness or inability to comply with his professional obligations over a period of several years. The balance of aggravation and mitigation in this matter is also very similar to that in *Carver*. Thus, as in *Carver,* where Respondent has failed to meet the requirements of one of the enumerated exceptions or otherwise provide a clear basis to deviate from standard 1.8(b), disbarment is appropriate.[28]

Having considered the nature and extent of the misconduct, the aggravating circumstances in balance with the mitigating circumstances, as well as relevant case law, the court finds that Respondent's disbarment is necessary to preserve public confidence in the legal profession, to maintain the highest professional standards, and to protect the public, the courts, and the legal profession.

**Monetary Sanctions are Recommended**

Having found that disbarment is appropriate, the court turns to the parties' arguments regarding the imposition of monetary sanctions. (Rules Proc. of State Bar, rule 5.137(E)(1) [the State Bar Court shall make a recommendation regarding monetary sanctions where disbarment is the recommended discipline].) The guidelines provide for monetary sanctions up to $5,000 in matters recommending disbarment. (Rules Proc. of State Bar, rule 5.137(E)(2)(a).) However, on a finding of good cause such as financial hardship, the court has discretion to waive, or allow payments in installments, but the burden lies with the respondent by a preponderance of the evidence. (Rule 5.137(E)(4).)

OCTC argues that this court should recommend the imposition of monetary sanctions in the amount of $5,000 because of the nature of the violations, which involve dishonesty and UPL.

---

[28] Accord *In the Matter of Tishgart* (Review Dept. 2014) 5 Cal. State Bar Ct. Rptr. 338 [attorney with minimal mitigation and three priors disbarred after engaging in UPL] and *In the Matter of Burke* (Review Dept. 2016) 5 Cal. State Bar Ct. Rptr. 448 [attorney with limited mitigation and two priors disbarred after failing to obey court orders and engaging in UPL.]

Respondent, on the other hand, argues that the court should not impose any monetary sanctions due to his financial hardship.

At trial, Respondent testified that he has limited financial resources as he is raising children as a widowed single parent, he has been unemployed for the last year – only doing odd jobs since his suspension, and he has been relying on obtaining loans to pay for his daily living expenses. He also testified that he has tried to advance a website and some marketing businesses but they have not been successful. However, Respondent did not submit any financial records or other documentation to support his claims of financial hardship. As such, the court finds insufficient evidence to support Respondent's requested relief at this time.[29]

In consideration of all the facts and circumstances of this case, the court finds that monetary sanctions in the middle of the up-to-$5,000 range are appropriate. While Respondent's misconduct is serious and involves acts of dishonesty, it did not occur over an extended period of time and was relatively limited in scope. Moreover, the balance of aggravation and mitigation supports this amount. This is Respondent's fourth disciplinary matter, and his misconduct is only somewhat mitigated by his good faith belief as it relates to the UPL, his cooperation by entering into a pretrial stipulation to facts, and his community service. Therefore, monetary sanctions in the amount of $2,500 are appropriate.

### Recommendations

It is recommended that Chad Thomas Pratt, State Bar Number 149746, be disbarred from the practice of law in California and that his name be stricken from the roll of attorneys.

**California Rules of Court, Rule 9.20**

It is further recommended that Chad Thomas Pratt be ordered to comply with California

---

[29] This is without prejudice to Respondent to bring a future motion for relief under rule 5.138 of the Rules of Procedure of the State Bar.

Rules of Court, rule 9.20, and to perform the acts specified in subdivisions (a) and (c) of that rule

within 30 and 40 calendar days, respectively, after the date the Supreme Court order imposing

discipline in this matter is filed.[30] (*Athearn v. State Bar* (1982) 32 Cal.3d 38, 45 [the operative

date for identification of clients being represented in pending matters and others to be notified is

the filing date of the Supreme Court order imposing discipline].)

**Monetary Sanctions**

It is further recommended that Chad Thomas Pratt be ordered to pay monetary sanctions

to the State Bar of California Client Security Fund in the amount of $2,500 in accordance with

Business and Professions Code section 6086.13 and rule 5.137 of the Rules of Procedure of the

State Bar.  Monetary sanctions are enforceable as a money judgment and may be collected by the

State Bar through any means permitted by law.  Monetary sanctions must be paid in full as a

condition of reinstatement or return to active status, unless time for payment is extended

pursuant to rule 5.137 of the Rules of Procedure of the State Bar.

**Costs**

It is further recommended that costs be awarded to the State Bar in accordance with

Business and Professions Code section 6086.10, and are enforceable both as provided in

Business and Professions Code section 6140.7 and as a money judgment, and may be collected

by the State Bar through any means permitted by law.  Unless the time for payment of discipline

costs is extended pursuant to subdivision (c) of section 6086.10, costs assessed against an

---

[30] Chad Thomas Pratt is required to file a rule 9.20(c) affidavit even if he has no clients to
notify on the date the Supreme Court files its order in this proceeding.  (*Powers v. State Bar*
(1988) 44 Cal.3d 337, 341.)  In addition to being punished as a crime or contempt, an attorney's
failure to comply with rule 9.20 is, inter alia, cause for disbarment, suspension, revocation of any
pending disciplinary probation, and denial of an application for reinstatement after disbarment.
(Cal. Rules of Court, rule 9.20(d).)

attorney who is actually suspended or disbarred must be paid as a condition of applying for reinstatement or return to active status.

### Order of Involuntary Inactive Enrollment

Chad Thomas Pratt is ordered transferred to involuntary inactive status pursuant to Business and Professions Code section 6007, subdivision (c)(4). His inactive enrollment will be effective three calendar days after this order is served and will terminate upon the effective date of the Supreme Court's order imposing discipline herein, or as provided for by rule 5.111(D)(2) of the State Bar Rules of Procedure or as otherwise ordered by the Supreme Court pursuant to its plenary jurisdiction.

Dated:  February 1, 2024

DENNIS G. SAAB
Judge of the State Bar Court