PUBLIC MATTER—NOT DESIGNATED FOR PUBLICATION

**FILED**

MAR 1 1 2024

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

## STATE BAR COURT OF CALIFORNIA

### REVIEW DEPARTMENT

| | | |
|---|---|---|
| In the Matter of | ) | SBC-22-O-30348 |
| | ) | |
| LENORE LUANN ALBERT, | ) | OPINION AND ORDER |
| | ) | |
| State Bar No. 210876. | ) | |
| | ) | |

This is respondent Lenore LuAnn Albert's third discipline matter since she obtained her law license in December 2000. Her first discipline occurred in 2018 and resulted in a 30-day actual suspension. The second discipline matter resulted in a six-month actual suspension issued in 2019. Both suspensions continued until April 2021, once all costs associated with each suspension were paid. The instant matter involves Albert's actions, while suspended by the California Supreme Court, in two cases pending in the United States District Court (USDC) for the Eastern District of California (EDCA). Albert was charged in six counts that alleged failure to comply with the EDCA Local Rules, the unauthorized practice of law (UPL) in both California and the EDCA, and UPL as moral turpitude. The hearing judge found culpability on all counts, except moral turpitude. The hearing judge further determined that even though this is Albert's third discipline matter with disbarment presumed, disbarment was not warranted as Albert presented sufficiently compelling mitigation that clearly predominated. (Rules Proc. of

State Bar, tit. 4, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.8(b).)  The hearing judge

recommended an actual suspension of 18 months.

Both Albert and the Office of Chief Trial Counsel of the State Bar (OCTC) appeal the

hearing judge's decision.  OCTC seeks disbarment.  Albert argues for a dismissal of all counts

or, in the alternative, no actual suspension and a probationary period of six months.

Alternatively, she seeks a reproval or an admonition.  Both parties challenge various

determinations regarding aggravating and mitigating circumstances.  After an independent

review of the record (Cal. Rules of Court, rule 9.12), we find Albert culpable on all six counts,

and that mitigation does not substantially outweigh aggravation.[1]  We find Albert's disbarment is

called for under our disciplinary standards and applicable case law, and we so recommend.[2]

## I.  PROCEDURAL BACKGROUND

This matter was initiated on April 29, 2022, with OCTC's filing of the original notice of

disciplinary charges (NDC).  Thereafter, OCTC filed a first amended notice of disciplinary

charges followed by a second amended notice of disciplinary charges (SANDC) filed on

August 12, 2022.[3]  The SANDC charged Albert with six counts of misconduct: one violation of

---

[1] All affirmed culpability findings are established by clear and convincing evidence
unless otherwise noted.  (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 552 [clear and
convincing evidence leaves no substantial doubt and is sufficiently strong to command
unhesitating assent of every reasonable mind].)

[2] Any arguments of the parties not specifically addressed in this opinion have been
considered and rejected as without merit.  We did not consider any exhibit cited by a party that
was not admitted at trial. (Rules Proc. of State Bar, rule 5.151.2.)

[3] Albert moved to dismiss the NDC, the first amended NDC, and the SANDC.  The initial
motion was granted with leave to amend.  The other two motions were denied.  Albert does not
challenge those rulings on review.

rule 3.4(f) of the Rules of Professional Conduct,[4] UPL in two matters in violation of rule 5.5(a)

and Business and Professions Code sections 6068, subdivision (a), 6125, and 6126,[5] and moral

turpitude regarding UPL in violation of section 6106.  Albert filed an answer to the SANDC, a

day late, on September 30, 2022.  The parties submitted a Stipulation as to Facts and Admission

of Documents (stipulation) on September 26, 2022.  The matter proceeded to trial, remotely, on

December 13, 14, 16, and 21, 2022.  Following submissions of closing briefs in early January

2023, the hearing judge issued his decision on April 3, 2023.

Both Albert and OCTC timely sought review.  While the appeal was pending, Albert filed

multiple motions in the Review Department.  The motions included requests for judicial notice,

remand to the Hearing Department, requests to augment the record, and a request for abatement,

all of which were denied.  Respondent also sought and received extensions of time.  OCTC

moved to strike portions of Albert's opening brief that cited to an unpublished opinion and

unadmitted exhibits.  OCTC's motion was granted on August 11, 2023.  Following oral

argument on December 13, 2023, the matter was taken under submission.

## II.  FACTUAL BACKGROUND

**A.      Albert's Two California Suspensions Were in Effect from February 14, 2018
to March 16, 2018, and June 28, 2018 to February 21, 2021**

The California Supreme Court suspended Albert twice.  The first suspension stemmed

from a December 2015 NDC and subsequent culpability findings for a violation of section 6068,

subdivision (i) for failure to cooperate with OCTC in 2015, and failure to comply with three

sanction orders issued in 2012, in violation of section 6103.  In December 2017, the Supreme

---

[4] A reference to "rule" is to the current California Rules of Professional Conduct, effective November 1, 2018, unless otherwise noted.  A reference to "former rule" is to the California Rules of Professional Conduct that were in effect until October 31, 2018.

[5] A reference to "section" is to this source unless otherwise noted.

Court imposed a 30-day actual suspension, which continued until, inter alia, respondent paid full

restitution and paid costs associated with the underlying discipline process.  The order became

final when Albert's petition for rehearing was denied, and the suspension was effective as of

February 14, 2018 (Albert I or 2018 suspension).  A week later,  Albert filed for bankruptcy

protection under Chapter 13, and on June 1, 2018, Albert was retroactively reinstated effective

March 16, 2018.  Albert was warned that the State Bar could take other action if her bankruptcy

was converted to a Chapter 7 proceeding.  On June 26, 2018, Albert's bankruptcy was converted

to a Chapter 7 matter, and Albert's 2018 suspension resumed on June 28, 2018.  Albert had

actual notice the 2018 suspension resumed.  The restitution imposed in the 2018 suspension was

ultimately discharged; however, Albert remained responsible for costs.[6]  The 2018 suspension

remained in place until April 21, 2021.

Albert's second suspension stemmed from six culpability findings in two client matters.

The charged conduct occurred between 2014 and 2016.  The operative NDCs in the consolidated

matter were filed in September 2016 and May 2018.  Trial was in September 2018.  Albert was

found culpable for failure to perform with competence, failure to provide a client accounting,

failure to return unearned fees, failure to promptly return client files, failure to obey a court

order, and failure to cooperate with OCTC.  In its July 10, 2019 order, the Supreme Court

imposed an actual suspension of six months.  Albert was ordered to pay costs associated with the

underlying discipline process.  (Albert II or 2019 suspension.)  Albert's petition for rehearing

was denied.  The suspension was final and went into effect on August 28, 2019.  This 2019

---

[6] Since 2010, Ninth Circuit precedent did not permit discharge of disciplinary costs.  *In re
Findley* (9th Cir. 2010) 593 F.3d 1048, 1054; *In re Albert-Sheridan* (9th Cir. 2020) 960 F.3d
1188, 1192 ["Our court has already addressed whether a debtor may discharge the costs of the
State Bar's attorney disciplinary proceedings imposed under California Business and Professions
Code § 6086.10.  The clear answer is no."].)

suspension was imposed while the 2018 suspension was still in effect. The 2019 suspension continued until all conditions were fulfilled, including payment of costs. On April 21, 2021, Albert was returned to active status.

In sum, between the Albert I and Albert II matters, Albert was suspended from the practice of law from February 14 through March 16, 2018, and from June 28, 2018 through April 21, 2021. For purposes of this opinion, we use June 28, 2018,[7] as the operative start date of the Albert I suspension.

**B.    Albert's Limited Permission to Practice Before the Ninth Circuit in a Single Matter**

Prior to either California suspension, Albert represented Brooke Noble in a civil action filed in the EDCA against Wells Fargo Bank (*Noble* litigation).[8] The parties were involved in cross appeals before the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) regarding district court rulings below (*Noble* appeals).[9] On April 17, 2018, Albert submitted a pleading to the Ninth Circuit, and it was docketed in the *Noble* appeals as "Notice of Disqualification of Lenore Albert and Brooke Noble to proceed in Pro Per" (April 17 Disqualification Notice). The April 17 Disqualification Notice was not entered on the EDCA docket in the *Noble* litigation. The Ninth Circuit Appellate Commissioner (commissioner), in an order dated April 24, 2018, construed Albert's April 17 Disqualification Notice as a notice she was withdrawing as counsel. The order referenced Albert's self-described "'temporary disqualification' by the State Bar of California." The briefing schedule was stayed, and Albert

---

[7] June 28, 2018 was the date that Albert's 2018 suspension resumed following the conversion of her bankruptcy to a Chapter 7 proceeding.

[8] *Noble v. Wells Fargo Bank N.A., et al.* (E.D. Cal.) 14 CV 1963-DAD-EFG.

[9] *Noble v. Wells Fargo Bank, N.A.* (9th Cir.) Nos. 16-16362 and 17-17294.

Case 8:22-cv-00983-DFM    Document 145-9    Filed 04/02/24    Page 6 of 41    Page ID
#:2997

was ordered to provide Noble's contact information. The commissioner's order was entered on the EDCA docket for the *Noble* litigation.

On April 24, 2018, the Ninth Circuit opened a reciprocal disciplinary proceeding against Albert (reciprocal disciplinary proceeding).[10] A Ninth Circuit reciprocal disciplinary proceeding occurs when that court "learns that a member of the bar of this Court has been disbarred or suspended from the practice of law by any court or other competent authority or resigns during the pendency of disciplinary proceedings . . . ." (9th Cir. R. 46-2(c).) An order to show cause (OSC) is then issued for the attorney to establish "why the attorney should not be suspended or disbarred from practice in this Court." (*Id.*) The commissioner deemed Albert's April 17 Disqualification Notice as consent to a reciprocal suspension in the Ninth Circuit and advised Albert could "petition for reinstatement to the bar of the Ninth Circuit" once the suspension ended and she had established she was in good standing with the California State Bar.

On June 13, 2018, Albert filed a "Petition for Reinstatement and OSC re: Sanctions against the State Bar" in the reciprocal disciplinary proceeding. The State Bar's June 1, 2018 letter of retroactive reinstatement was attached to the petition. The Ninth Circuit reinstated Albert the next day. On June 22, 2018, about three weeks after Albert was notified of her California retroactive reinstatement, Albert filed a notice of appearance in the *Noble* appeals.

The Ninth Circuit thereafter learned of Albert's renewed suspension, and on July 12, 2018, issued an order in Albert's reciprocal disciplinary proceeding.

As permitted by the Ninth Circuit's reciprocal discipline procedures, Albert elected to have a reciprocal disciplinary hearing. In a September 18, 2018 order, the commissioner required Albert to supplement her initial response to include, inter alia, identification of "all

---

[10] *In re: Lenore L. Albert* (9th Cir.) No. 18-80051.

-6-

other federal court, state, and agency bars to which she is admitted, *her current standing before
those courts or bars*, and the status of any disciplinary proceedings in those courts or bar."
(Italics added.)  The order reminded Albert that the reciprocal disciplinary proceeding was
limited to the issue of whether Albert's "right to practice *in this court* should be limited as a
result of the discipline imposed in California."  (Italics added.)  On October 5, Albert responded
with a list of cases pending in various courts.  In her supplemental response, Albert
acknowledged that she had been admitted to practice before the United States District Court in
the EDCA since December 17, 2014, but she did not disclose her current standing there.  She
stated there were no prior or pending disciplinary matters in the EDCA.  Following the
October 12, 2018 hearing in the reciprocal disciplinary proceeding, the Ninth Circuit ruled on
December 19, 2018, that Albert was suspended from practice before it, with one narrow
exception (Ninth Circuit reciprocal disciplinary proceeding order).  The Ninth Circuit permitted
Albert to continue as counsel in the *Noble* appeals and to respond to developments in those
appeals until the Ninth Circuit issued a decision.  None of the filings in the reciprocal
disciplinary proceeding were entered into the EDCA docket for the *Noble* litigation.  Albert
construed the Ninth Circuit reciprocal disciplinary proceeding order as giving her authority to
represent Noble in any matter that "related to" the pending appeals, including cases below in the
EDCA.[11]  On May 29, 2019, the Ninth Circuit issued its decision in the *Noble* appeals.

_____

[11] Albert also had litigation pending in the United States District Court for the Central
District of California (CDCA).  Like the Ninth Circuit and EDCA, CDCA has local rules that
require attorneys to be licensed in, and in good standing with, the State Bar.  Following an OSC
issued in a particular case on March 22, 2018, and Albert's response, Albert was disqualified in
that particular CDCA litigation as of April 4, 2018.  Whether Albert properly complied with the
CDCA Local Rules is not at issue here.

**C.    Albert Was Counsel of Record While Suspended by the California Supreme
Court and Pursuant to the Local Rules of the EDCA**

At all times relevant to this matter, the EDCA required attorneys to be "active members
in good standing of the State Bar of California." (E.D. Cal. L.R. 180(a).) In addition, EDCA
Local Rule (EDCA L.R.) 180(e) adopted the "standards of professional conduct required of
members of the State Bar of California and contained in the State Bar Act, the Rules of
Professional Conduct of the State Bar of California, and court decisions applicable thereto[.]"

Albert understood that the various federal district courts had their own, unique local
rules. In 2014, Albert was admitted to practice in the EDCA. Albert knew of the applicable
EDCA Local Rules since her 2014 admission to practice there. Albert, as an attorney admitted to
practice in the EDCA, was required to promptly report "any disciplinary action or any change in
status in any jurisdiction that would make the attorney ineligible for membership in the Bar of
this Court or ineligible to practice in this Court." (E.D. Cal. L.R. 184(b).) There is no system
that automatically notifies EDCA that discipline has been imposed by the California Supreme
Court. Moreover, if an attorney's eligibility status changes in such a manner that makes the
attorney ineligible to practice in the EDCA, the attorney is immediately suspended. (*Id.*) The
immediate suspension is self-effectuating; no court order is necessary or required. (E.D. Cal.
L.R. 184(b) ["If an attorney's status so changes with respect to eligibility, the attorney shall
forthwith be suspended from practice before this Court without any order of Court until
becoming eligible to practice"].) Suspended attorneys can challenge the automatic EDCA
suspension through the process detailed in EDCA L.R. 184(b), which requires the suspended
attorney to take the proactive step of filing a motion directed to the Chief Judge for the EDCA.

Upon Albert's 2018 and 2019 suspensions by the California Supreme Court, she was
automatically suspended from practice in the EDCA. Albert did not promptly notify the EDCA

of either of her two California suspensions as required by EDCA L.R. 184(b). She waited until

March 3, 2021, as detailed, *post.* Finally, Albert never challenged her EDCA suspension in the

manner provided by EDCA L.R. 184(b).

### 1. Albert's Representation of Noble in the EDCA While Suspended by the California Supreme Court

Marsha Kilgore (Kilgore) was Noble's mother. Kilgore was the plaintiff in *Kilgore v.*

*Wells Fargo Home Mortgage, et al.* (E.D. Cal.) No. 12-CV-0899-AWI-JDP (*Kilgore* litigation).

The case was dismissed in May 2013. Kilgore filed a motion for reconsideration in June 2013,

which was denied in 2014. Kilgore passed away in October 2013.

On August 18, 2019, while suspended in Albert I and while her petition for review of the

Albert II suspension was pending in the California Supreme Court, Albert filed four pleadings on

Noble's behalf in the *Kilgore* litigation.[12] Both Noble and the property involved in the litigation

were in California. The filed pleadings included: (1) a motion to vacate the judgment of

dismissal with Albert's and Noble's declarations; (2) a proposed order; (3) a "notice of errata;"

and (4) a pleading entitled, "Suggestion of Death" as to Kilgore. The captions on the pleadings

reflected both Albert and Leslie Westmoreland as attorneys of record for Noble and Kilgore's

estate and noted "(CAED federal jurisdiction only)."[13] Albert used "Esq." after her last name as

---

[12] The EDCA and the Ninth Circuit use an electronic case management system referred to as CM/ECF. Pleadings are electronically filed in a particular court and reflected on PACER, an electronic docket system. Users for both CM/ECF and PACER must have usernames and passwords to access those systems.

[13] Westmoreland submitted a form entitled "Notice to State Bar Regarding Employment of a Disbarred, Resigned, Suspended or Involuntarily Inactive Member" to the State Bar giving notice that he hired Albert as an employee/clerk effective July 12, 2019. The form cited to former rule 1-311(B) and (C) of the California Rules of Professional Conduct. The form detailed what Albert could and could not do. Albert testified she read and understood the scope of what she was and was not allowed to do. This restriction precluded Albert's appearance "on behalf of a client in any hearing or proceeding or before any judicial officer, arbitrator, mediator, court, public agency, referee, magistrate, commissioner, or hearing officer." (Former rule 1-311(B)(2).)

well as her State Bar number.  Albert electronically filed all four pleadings as Westmoreland did

not recall his password.[14]  Albert electronically signed the motion, her declaration, and the errata

notice.  Westmoreland was also an electronic signatory on the motion to vacate and the errata

notice.

Although Albert was under suspension in Albert I, her declaration did not say she was

currently suspended.  She did not mention the California Supreme Court had ordered another

suspension in Albert II, and that she had a petition for review pending.  Albert's declaration

contained the following information that touched on her 2018 Suspension:  (a) Noble testified at

Albert's State Bar proceedings (but provided no date of the proceeding); (b) Noble wrote a letter

on Albert's behalf to the Ninth Circuit commissioner; (c) during the pendency of the Ninth

Circuit appeal she was unjustly suspended by the "California State Bar" for violating a court

order by not paying sanctions; and (d) she protested the suspension.  Albert also stated in the

declaration that she understood that by filing the motion "I will probably have an OSC issued

against me to kick me out of this District, too."  The declaration closed with the sentence, "I

declare under penalty of perjury of the laws of the United States that the foregoing is true and

correct."  Albert knew that her ineligibility to practice in California rendered her unable to

practice in the EDCA, but she filed the August 2019 pleadings anyway.  Albert also knew that

the California Supreme Court had issued the Albert II suspension weeks before, although that

suspension order was not final until August 28.

Wells Fargo opposed Albert's motion and noted pursuant EDCA L.R 184, Albert was not

allowed to practice law.  Wells Fargo suggested Albert be sanctioned or held in contempt as she

failed to report the suspension as required.  On September 16, 2019, Albert filed a reply brief

---

[14] There is no evidence Westmoreland could not reset his password.

with an attached declaration. The caption reflected both Albert and Leslie Westmoreland as
attorneys of record for Noble and Kilgore's estate and noted "(CAED federal jurisdiction only)."
Albert used "Esq." after her last name as well as her State Bar number. Both Albert and
Westmoreland electronically signed the pleading, but Albert electronically filed it.

At the time the reply was filed, the Albert I suspension was still in effect and the six-
month suspension in Albert II had been in effect for almost three weeks. Albert's September 16
declaration contained no information about either suspension. In Albert's reply brief, she
claimed she "informed this Court" about her suspension in her August 18 declaration, and that
she had Westmoreland sign onto the pleadings "in case she was booted from it." Contrary to the
language in EDCA L.R. 184(b), Albert argued that the EDCA Chief Judge had to issue an OSC,
and there could be no EDCA suspension until the completion of that process, as the EDCA must
give her notice and an opportunity to be heard. Albert did not reference the process to challenge
the suspension provided in EDCA L.R. 184(b) or the EDCA's adoption of the State Bar Act, the
Rules of Professional Conduct of the State Bar of California, and applicable court decisions.

Albert further argued Wells Fargo misconstrued the EDCA Local Rules, but later claimed
she did not read EDCA L.R. 184. At trial in this matter, Albert claimed she spent at least 50
hours researching whether she could appear in the EDCA before filing the motion to vacate.
Moreover, Albert further claimed the Ninth Circuit's reciprocal disciplinary proceeding order
allowed her to proceed in the EDCA as the case was related to the *Noble* appeals in the Ninth
Circuit. Albert asserted the Ninth Circuit commissioner, at the hearing on her reciprocal
disciplinary proceeding, said she could file "papers" in the EDCA *Kilgore* litigation.[15]  Albert

---

[15] The transcript of that hearing was not offered as an exhibit at trial. Albert requested we
take judicial notice of that transcript in June 2023. We denied her request on July 7, 2023.

also testified that it was her understanding that Westmoreland had a telephone call either with

U.S. District Court Judge Anthony Ishii, the judge assigned to the *Kilgore* litigation, or his court

clerk. According to Albert, in that call she was given permission to file the pleadings. Judge

Ishii testified at trial that he did not speak with Westmoreland in the case nor did any of his staff

mention a conversation with Westmoreland. Further, Judge Ishii testified that he would not have

had an ex parte communication about whether it was appropriate to file pleadings in a case, nor

would his staff be permitted to have such a conversation.[16]

On October 28, 2019, while both the Albert I and Albert II suspensions were in effect,

Albert filed a motion to substitute Noble into the *Kilgore* litigation as a party. Albert and

Westmoreland worked together on the Noble filings in *Kilgore*. The two communicated mostly

by telephone but also used email and text messaging. They reviewed each other's work.

The caption for the substitution filing reflected both Albert and Westmoreland as

attorneys of record for Noble and Kilgore's estate and once again noted "(CAED federal

jurisdiction only)." Albert used "Esq." after her last name as well as her State Bar number. Both

Albert and Westmoreland electronically signed the pleading, and Albert electronically filed it.

Albert did not inform the court she was suspended. Following Wells Fargo's opposition, Albert

electronically filed a reply, digitally signed by her and Westmoreland. The caption reflected

both Albert and Leslie Westmoreland as attorneys of record for Noble and Kilgore's estate and

once again noted "(CAED federal jurisdiction only)." In the reply, Albert did not inform the

court she was suspended.

Both the motion to vacate and the motion to substitute a party were denied on the merits.

The court acknowledged Wells Fargo's argument that Albert was not entitled to practice but

---

[16] Westmoreland did not testify at trial.

-12-

declined to address the issue.  As noted above, a suspension pursuant to EDCA L.R. 184 required

no action on the part of the judge assigned to the case.

### 2.  Albert's 2021 Representation of the Grewals in the EDCA While Suspended by the California Supreme Court

On February 12, 2021, Albert mailed a letter to the EDCA Clerk's Office requesting two

"certificates of good standing" and enclosed a check to cover the fee.  That same day, Albert

printed a screen capture of the EDCA website showing her EDCA status as "active."  However,

as of February 12, Albert had not informed the EDCA of either California suspension.

Upon receipt of Albert's letter, the EDCA Clerk's Office checked her license status on

the State Bar's website.  That check revealed Albert was not in good standing.  The matter was

brought to the attention of the EDCA Clerk's Office Operations Manager, Roxanne Gonzalez

(R. Gonzalez).[17]  R. Gonzalez verified that Albert was suspended.  Albert was not issued the

certificates, and her check was returned.  At some point between receipt of Albert's February

letter and March 2, 2021, R. Gonzalez changed Albert's EDCA status to inactive as required by

EDCA Local Rules.

On February 19, 2021 (the week after Albert mailed her letter request for a certificate of

good standing), Albert electronically filed an answer to a civil complaint on behalf of Pritam,

Manjeet, and Dev Grewal (the Grewals) in *Avalos v. Gonzalez, et al*. (E.D. Cal.) No. 20-CV-

01578-NONE-BAM (*Avalos* litigation).  Both Albert and Westmoreland were listed on the

caption as attorneys of record.  Following Albert's last name was "Esq." and her State Bar

number.  Albert also inserted an asterisk after her state bar number.  That asterisk is not defined

---

[17] The EDCA does not automatically receive discipline orders from the California
Supreme Court.  Staff must manually check the State Bar website.  According to R. Gonzalez,
this is usually done when an attorney applies for admission to the EDCA, seeks certificates of
good standing, or an issue is otherwise brought to the attention of the Clerk's Office.

anywhere in the pleading. Albert testified at trial she was told by an unidentified individual to place the asterisk next to her State Bar number which "had something to do with my suspension," but she did not otherwise clarify the relevance of the asterisk. As Westmoreland explained in a later declaration, his name was added to the pleadings in the *Avalos* litigation because of "the delicate nature of [Albert's] license." In his declaration, Westmoreland stated he referred the Grewals to Albert because he "knew [Albert] still had her membership in good standing in this Court." Albert drafted, at Westmoreland's instruction, the attorney-client fee agreement. The *Avalos* litigation was assigned to U.S. Magistrate Judge Barbara A. McAuliffe.

On February 22, 2021, Albert received an email regarding potential settlement of the *Avalos* litigation from a paralegal employed by plaintiff's counsel. On February 24, plaintiff's counsel, Craig Côté, sent Albert a follow-up email asking if she had "settlement authority." Albert responded to Côté the next day, stating that she did not have settlement authority as she had not yet heard "from my clients" and would be in contact with Côté when they responded to her.

On March 2, 2021, Albert emailed Judge Ishii's court clerk, Victoria Gonzales (V. Gonzales) about her recent EDCA status change to suspended.[18] The following day, Albert emailed R. Gonzalez and copied the legal assistant to Judge Kimberly J. Mueller, the Chief Judge of the EDCA. Albert mentioned she had been suspended by the "California State Bar" since 2018. Albert's email to R. Gonzalez was similar to the email sent to V. Gonzales. R. Gonzalez responded to Albert within hours and explained why Albert's status had changed and quoted portions of the EDCA Local Rules.

---

[18] In the email, Albert recounts that the weekend prior she was in good standing. That weekend would have been February 27-28, 2021.

On March 3, 2021, Albert responded to a follow-up email from Côté and advised she did not have settlement authority.  Albert also told Côté that the EDCA "has taken away my status and changed it.  Today it shows inactive."  Albert directed Côté to communicate with Westmoreland.

Albert also wrote to Magistrate Judge McAuliffe on March 3, 2021.  Albert requested she be allowed to continue her representation of the Grewals with Westmoreland as co-counsel. Albert advised she had been suspended by the "State Bar" since 2018.  In that same letter, Albert asserted Judge Ishii "allowed me to represent the estate of Ms. Kilgore" in the *Kilgore* litigation while suspended.  On March 5, 2021, Magistrate Judge McAuliffe issued an order to show cause (March OSC) directed at Albert as to "why her request for admission to this Court should not be denied on the basis that she is not authorized to practice law in the State of California."  On March 26, 2021, Chief Judge Mueller referred Albert's request for permission to continue her representation of the Grewals to Magistrate Judge McAuliffe for all further proceedings.

Albert filed responses to the March OSC in March and April 2021.  On April 2, 2021, Westmoreland filed a declaration on Albert's behalf stating that he held her in high regard, Albert was ethical, and Albert's "trial skills are just as good as mine, if not better."  In that declaration, Westmoreland stated he referred the Grewals to Albert, and that Albert drafted the fee agreement with "the clients" at his direction.  A hearing was held on April 16, and the OSC was discharged on May 12 as Albert provided evidence that she had been reinstated as an active member of the State Bar as of May 5, 2021.

### III.  CULPABILITY

**A.**    **Count One – Violation of Rule 3.4(f) for Failure to Comply with EDCA Local Rules 180 and 184**

SANDC count one charged Albert with a willful violation of rule 3.4(f) by failing to promptly notify the EDCA of her Albert I and Albert II suspensions as required by EDCA Local Rules 180 and 184.  Rule 3.4(f) states, "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."   Rule 3.4(f) went into effect in November 2018.[19]  The hearing judge found Albert culpable for failure to promptly notify the EDCA of her Albert II suspension, and we affirm.[20]

The Albert II suspension was effective August 28, 2019, after rule 3.4(f) became operative.  Albert had actual notice of her suspension.  Albert did not directly inform any EDCA judicial officer of this suspension until March 3, 2021.  Albert knew of the EDCA Local Rules and also knew there were different local rules among the various federal courts.  By September 2019, Albert had actual knowledge of EDCA L.R. 184, as Wells Fargo cited that rule in its September 9 opposition to the *Kilgore* litigation motion to vacate.  Albert discussed her California suspensions in her September 19 reply brief.  At the time she filed the reply brief, Albert had been suspended in Albert II for several weeks.  Hence, due to Wells Fargo's citation to the rule, Albert had actual direct notice of her automatic suspension, and that EDCA L.R. 184(b) required her to promptly notify the EDCA of her Albert II suspension.  Albert did not directly inform the EDCA she was, in fact, suspended in Albert II until March 3, 2021.

---

[19] "Knowingly" and "tribunal" are separately defined at rule 1.0.1(f), (m).

[20] The hearing judge did not find culpability for failure to promptly report the Albert I suspension, as rule 3.4(f) was not in effect in February or June of 2018.  OCTC does not challenge that determination, and we affirm.

On review, Albert asserts she gave notice of her suspension that satisfied the EDCA

Local Rules. Albert claims her April 17 Disqualification Notice filed in the Ninth Circuit was

adequate notice to the EDCA because that Ninth Circuit filing was also docketed in the *Noble*

litigation pending in the EDCA. Hence, she notified "the court" as required by EDCA L.R. 184.

This argument is not supported by the evidence. Albert's April 17 Disqualification Notice was

not docketed in the *Noble* litigation. Only the commissioner's April 24, 2018 order was

docketed in the *Noble* litigation. The hyper-links within that docket entry were to Wells Fargo's

and Noble's notices of appeal. Moreover, the Ninth Circuit is a court separate from the EDCA.

Finally, Albert's April 17 Disqualification Notice was filed more than a year *before* the effective

date of the Albert II suspension.

Albert argues a second notification was contained in the motion to vacate filed in the

*Kilgore* litigation in which she "notified the court of her continued suspension." We disagree.

Albert filed the *Kilgore* motion to vacate ten days before the August 18, 2019 effective date of

the Albert II suspension. More importantly, Albert did not clearly and unambiguously say she

was *currently* suspended by the California Supreme Court. At least two entries in Albert's

declaration in support of the motion to vacate referred to her suspensions in the past tense. The

fact that Albert's two suspensions overlapped did not eliminate the requirement that she report

"any disciplinary action or any change in status" as required by EDCA L.R. 184(b). In the plain

language of EDCA L.R. 184(b), each event triggered its own reporting requirement.

Albert's argument on review that she "openly refused" to comply with EDCA L.R. 184

as provided for by rule 3.4(f), is not supported by the facts. Open refusal requires frankness not

present here. After the Albert II suspension became effective, Albert did not personally inform

the EDCA, Chief Judge Mueller, or Judge Ishii of her suspension while the *Kilgore* litigation

was pending. She waited until March 2022 in the *Avalos* litigation to disclose her suspension.

There is no evidence Albert promptly informed the EDCA of her objections to and/or refusal to

comply with EDCA Local Rules 180 or 184.  Even on review, while Albert objects to the EDCA

automatic suspension with the onus on her to file a motion to be reinstated, she does not

articulate an objection to the prompt self-reporting requirement of EDCA L.R. 184(b).  Finally,

we find her constitutional arguments focused on EDCA Local Rules 180 and 184 and the

EDCA's application of those rules unpersuasive.

The only unambiguous notice Albert provided of her 2019 suspension was on March 3,

2021, to Magistrate Judge McAuliffe and Chief Judge Mueller's administrative assistant.  That

was not "promptly" done by any measure, and Albert is culpable under count one.  (See EDCA

L.R. 184(b).)

**B.      Counts Two and Three – Violation of Section 6068(a) for Failure to Comply
with California Law and Unauthorized Practice of Law in Another
Jurisdiction in Violation of Rule 5.5(a)(1) (*Kilgore* Litigation)**

The hearing judge found Albert culpable for counts two and three of the SANDC.

SANDC count two charged Albert with violating section 6068, subdivision (a) (6068(a)),

through her violations of the State Bar Act provisions prohibiting unauthorized practice of law

(UPL) (§§ 6125-6126.)[21]  (*In the Matter* of *Trousil* (Review Dept. 1990) 1 Cal. State Bar Ct.

Rptr. 229, 236-237 [violation of section 6068(a) can be based on violations of sections 6125 and

6126]; *In the Matter of Lilley* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 476, 487

[section 6068(a) is the appropriate charge for other violations of the State Bar Act that do not

contain references to discipline in the provisions themselves]; *In the Matter of Acuna* (Review

Dept. 1996) 3 Cal. State Bar Ct. Rptr. 495, 506 [same].)  Section 6125 provides, "No person

shall practice law in California unless the person is an active licensee of the State Bar."  Section

---

[21] Section 6068(a) imposes a duty on attorneys to support the Constitution and laws of the
United States and California.

6126 makes it a misdemeanor offense for a person to hold themselves "out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state . . . ."

Count two alleged that Albert held herself out as entitled to practice law and actually practiced law in the EDCA while suspended as she:  (1) provided legal advice and services to Noble in the *Kilgore* litigation; (2) prepared and filed the August 18, 2019 motion to vacate, the September 6, 2019 reply brief, and other "related documents" on Noble's behalf in the *Kilgore* litigation; (3) in October 2019 prepared and filed a motion to substitute Noble as a party; and (4) prepared and filed a November 12, 2019 reply brief with Noble's supplemental declaration in the *Kilgore* litigation.  SANDC count three charged Albert with the unauthorized practice of law in another jurisdiction (EDCA) for the actions in count two.  The hearing judge found Albert culpable of both counts, and we affirm.  We note that deception is not a required element of either section 6125 or 6126, nor is lack of deception a defense.  (*In the Matter of Burke* (Review Dept. 2016) 5 Cal. State Bar Ct. Rptr. 448, 455 [discussing mens rea for §§ 6125 and 6126 violations]; *Morgan v. State Bar* (1990) 51 Cal.3d 598, 604.)   The EDCA adopted the "standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and court decisions applicable thereto[.]" (E.D. Cal. L. R. 180(e).)

The record amply supports the UPL charge alleged in count two.  While suspended in both Albert I and Albert II, Albert held herself out as being entitled to practice law in the *Kilgore* litigation, in violation of section 6126.  Between August and November 2019, Albert electronically filed multiple *Kilgore* litigation pleadings she drafted with Westmoreland.  Albert listed herself as an attorney, used "Esq." following her name, and listed herself above Westmoreland.  She used her State Bar number.  Albert signed pleadings as counsel of record,

-19-

and her signature line was above Westmoreland's. These are all clear signals she held herself

out as an attorney on the matter. This course of conduct violated section 6126. (cf. *In the Matter*

*of Wyrick* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 83, 88-91 [section 6106 violations

where suspended attorney created false impression of present ability to practice by using terms

"Member, State Bar of CA" and honorific "Esq."].) While Albert had been hired by

Westmoreland, she knew her activities were limited by former rule 1-311, as she read the form

Westmoreland submitted to the State Bar in July 2019.

OCTC challenges the hearing judge's finding that OCTC did not meet its burden of proof

for the portion of count two that alleged Albert also actually practiced law while suspended, in

violation of section 6125. We affirm the hearing judge's finding. We agree that what constitutes

the practice of law is wide-ranging. (*Birbrower, Montalbano, Condon & Frank v. Superior*

*Court* (1998) 17 Cal.4th 119, 128.) OCTC argues on review that Albert's statements in her

August 18, 2019 declaration in support of the motion to vacate filed in the *Kilgore* litigation and

exhibits attached thereto are evidence she actually practiced law. We disagree that such an

expansive interpretation is appropriate here. In addition, there is no evidence that Westmoreland

failed to supervise Albert regarding the tasks referenced in the August 18 declaration pursuant to

former rule 1-311.

Turning next to whether Albert's conduct in *Kilgore* was in violation of rule 5.5(a)(1), as

charged in count three, we affirm the hearing judge's culpability finding on this count.[22]

However, as the conduct charged in this count is duplicative of count two, we do not give

---

[22] We reject Albert's claim that SANDC counts three and five must be dismissed due to
the typographical error (citation to rule 5.5(b)) in the final sentence of each count. Albert's
answer and OCTC's pretrial statement establish Albert had adequate and sufficient notice of the
charges against her. (*Read v. State Bar* (1991) 53 Cal.3d 394, 408-409; *In the Matter of
Respondent V* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 442, 446.)

additional disciplinary weight to this count.  (See *In the Matter of Sampson* (Review Dept. 1994)
3 Cal. State Bar Ct. Rptr. 119, 127 [no additional disciplinary weight for former rule 4-100(A)
violation as it was duplicative of moral turpitude violation].)

Rule 5.5(a)(1) provides "A lawyer admitted to practice law in California shall not
practice law in a jurisdiction where to do so would be in violation of regulations of the
profession in that jurisdiction."  Albert was required to be an active member, in good standing, of
the State Bar of California in order practice in the EDCA.  (E.D. Cal. L.R. 180(a).)  Albert was
not an active member in good standing with the State Bar during the effective dates of her two
suspensions.  Hence, Albert was automatically suspended from the ability to practice in the
EDCA.  Albert knew of the EDCA rules.  There was an EDCA mechanism for Albert to
challenge the automatic suspension and be reinstated.  Albert did not follow the procedure to
challenge the automatic suspension set forth in EDCA L.R. 184(b); instead, she represented
Noble in the *Kilgore* litigation and filed numerous pleadings when EDCA Local Rules 180 and
184 prohibited her from doing so.  This was in violation of rule 5.5(a).

**C.     Counts Four and Five – Violation of Section 6068(a) Failure to Comply with
        California Law and Violation of Rule 5.5(a)(1) Unauthorized Practice of Law
        in Another Jurisdiction (*Avalos* Litigation)**

SANDC count four charged Albert with unauthorized practice of law in the *Avalos*
litigation in violation of sections 6068(a), 6125, and 6126.  Specifically, count four alleged that
Albert provided legal advice and services to the Grewals in the *Avalos* litigation, drafted the
attorney-client fee agreement, and prepared and filed the Grewals' answer in the *Avalos*
litigation.  In that answer, Albert and Westmoreland were identified as attorneys of record.
SANDC count five charged Albert with the unauthorized practice of law in another jurisdiction
(EDCA) for the actions set forth in count four.  The hearing judge found Albert culpable on both
counts, and we affirm.  However, as the conduct charged in count four is duplicative of count six

-21-

detailed *post,* we do not give additional disciplinary weight to this count.  (*In the Matter of
Sampson, supra,* 3 Cal. State Bar Ct. Rptr. at p. 127.)

   The record clearly and convincingly supports the section 6126 UPL charge in count four.
Albert held herself out as being entitled to practice law in the *Avalos* litigation while suspended.
She electronically filed the Grewals' answer to the complaint, identified herself as an attorney,
and she used "Esq." and her State Bar number following her name.  Albert also listed herself in
the caption above Westmoreland.  Albert signed the pleading as counsel of record, and her
signature line was above Westmoreland's.  Albert electronically filed the answer, not
Westmoreland, and therefore knew the answer contained indicia that she was an attorney.  The
unexplained asterisk next to Albert's State Bar number on pleadings does not alter the reasonable
conclusion that she held herself out as an attorney entitled to practice law.  In addition, Albert
made affirmative statements that she represented the Grewals beyond filing the answer.  Namely,
in her correspondence with Magistrate Judge McAuliffe, R. Gonzalez, and V. Gonzales, Albert
stated she and Westmoreland represented the Grewals and she referred to herself and
Westmoreland as co-counsel.  Hence, Albert held herself out as entitled to practice law when she
was not. (cf. *In the Matter of Wyrick, supra,* 2 Cal. State Bar Ct. Rptr. at p. 91.)

   On review, OCTC challenges the hearing judge's finding that OCTC did not meet its
burden of proof that Albert also actually practiced law in the Avalos litigation while suspended,
in violation of section 6125.  The "practice [of law] includes both representation of others in
court proceedings as well as 'legal advice and counsel and the preparation of legal instruments
and contracts by which legal rights are secured' without regard to whether a court proceeding is
pending" (*In the Matter of Hoffman* (Review Dept. 2020) 5 Cal. State Bar Ct. Rptr. 698, 705,
quoting *Baron v. City of Los Angeles* (1970) 2 Cal.3d 535, 542-543; *Morgan, supra,* 51 Cal.3d
pp. 603-604 [negotiating settlement with opposing counsel constitutes practice of law.])  In

-22-

addition to Albert's communications with Magistrate Judge McAuliffe and court staff, OCTC argues Albert's email exchange regarding preliminary settlement discussions with plaintiffs' representatives was sufficient evidence that Albert was engaged in the unauthorized practice of law. In Westmoreland's declaration filed in support of Albert for the March OSC, there are no substantive statements that he supervised her as required by rule 1-311. His statements about Albert are consistent with the *Avalos* pleadings. He saw her and treated her as a duly licensed attorney. Westmoreland's statement in his declaration that he directed Albert to draft the Grewals' fee agreement does not alter our conclusion. In the same sentence, Westmoreland also states Albert "insisted I collect the money and hold it in my IOLTA account." Albert directing Westmoreland is the opposite of Albert acting under the supervision of Westmoreland; it is Albert instructing Westmoreland. Based on the totality of the record, we disagree with the hearing judge and reverse as to the section 6125 charge within count four. Albert is culpable of the unauthorized practice of law in violation of section 6125.

Albert's conduct in *Avalos* was also in violation of rule 5.5(a)(1), as charged in count five. We affirm the hearing judge's culpability finding on this count. Albert was required to be a member in good standing of the State Bar of California in order practice in the EDCA. (E.D. Cal. L.R. 180.) Albert knew the EDCA rules. Albert was automatically suspended from the ability to practice in the EDCA when she was suspended by the California Supreme Court in Albert I and Albert II. The EDCA Local Rules had a mechanism for Albert to challenge the automatic suspension, yet Albert did not follow the procedure set forth in EDCA L.R. 184(b) prior to filing the answer in *Avalos*. However, as the conduct charged in counts four and five are duplicative of count six, we do not give additional disciplinary weight to these counts. (See *In the Matter of Sampson*, *supra*, 3 Cal. State Bar Ct. Rptr. 119, 127 [no additional disciplinary weight for former rule 4-100(A) violation as it was duplicative of moral turpitude violation].)

D.    **Count Six – Moral Turpitude in the *Avalos* Litigation**

SANDC count six charged that Albert engaged in an act of moral turpitude in violation of section 6106 by engaging in UPL by holding herself out as entitled to practice law and actually practicing law when she provided legal advice and services to the Grewals in the *Avalos* litigation, drafted the Grewals' attorney-client fee agreement, and prepared and filed the Grewals' answer in the *Avalos* litigation.  The hearing judge found Albert had an honest but mistaken and unreasonable belief she could practice in the EDCA when she filed the Grewals' answer.[23]  We disagree.

Section 6106 provides, in part, that the commission of any act involving dishonesty, moral turpitude, or corruption constitutes cause for suspension or disbarment.  This includes affirmative misrepresentations as well as omission of material facts.  (*In the Matter of Crane and Depew* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 139, 154-155.)  An attorney's intent can be established by direct or circumstantial evidence.  (*Zitny v. State Bar* (1966) 64 Cal.2d 787, 792.)  Willful blindness is also evidence of specific intent.  (*In the Matter of Carver* (Review Dept. 2016) 5 Cal. State Bar Ct. Rptr. 427, 432-433.)

In lieu of specific intent, gross negligence can amount to moral turpitude.  (*Simmons v. State Bar* (1970) 2 Cal.3d 719, 729 [moral turpitude in violation of § 6106 by gross negligence rather than intentional dishonesty].  A defense to a charge of moral turpitude by gross negligence occurs where an attorney honestly, but unreasonably, believes in the justifiability of their actions. (*In the Matter of Klein* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 1, 9-11.)

---

[23] As the hearing judge found no culpability for the allegations in count four that Albert provided legal advice and services to the Grewals in the *Avalos* matter, the hearing judge focused on Albert's preparation and filing of the Grewals' answer.

Albert knew she was suspended in Albert I from February 14 through March 16, 2018; it

resumed on June 28, 2018; and she knew that her Albert II suspension had been in effect since

August 28, 2019.  Albert was aware of the EDCA Local Rules and that the various federal courts

have different local rules.  At trial, Albert claimed she always looked at a court's local rules.

The Wells Fargo September 9, 2019 opposition to Albert's motion to vacate in the *Kilgore*

litigation gave Albert actual knowledge that, pursuant EDCA L.R. 184(b), her California

suspensions made her ineligible to practice in the EDCA.  Both of Albert's suspensions were in

effect when she filed the Grewals' answer in the *Avalos* litigation in February 2021.

We find clear and convincing evidence in the record to support a finding that after

September 9, 2019, Albert was willfully blind to her EDCA suspension.  Willful blindness is

"tantamount to having actual knowledge [she] was ineligible to practice law []" in the EDCA

until her suspensions concluded.  (*In the Matter of Carver, supra,* 5 Cal. State Bar Ct. Rptr. at

pp. 432-433.)[24]  Albert filed the Grewals' answer in February 2021.  Albert had been

continuously suspended since June 28, 2018.  In her March 3, 2021 correspondence, Albert

informed Magistrate Judge McAuliffe that Judge Ishii permitted her to appear in the *Kilgore*

matter.  Albert repeated that statement in her OSC response.  Judge Ishii did not give Albert

permission.  Albert blames the EDCA Clerk's Office personnel for creating confusion about her

status in early 2021.  The only reason the EDCA website showed Albert as active on

February 12, 2021, is because Albert did not comply with EDCA L.R. 184 and inform the EDCA

of her suspensions.

---

[24] OCTC relies on *In the Matter of Hoffman, supra,* 5 Cal. State Bar Ct. Rptr. 698.  That
case is factually dissimilar to the instant case.  It does not provide useful guidance as to whether
Albert was intentionally dishonest, grossly negligent, or had an honest but unreasonable belief
she was entitled to practice in the EDCA.  Hoffman had a previous discipline for UPL as moral
turpitude.  Hoffman stipulated in that prior discipline that almost identical UPL conduct to the
instant matter was moral turpitude.  (*Id.* at pp. 708-709.)

Nor did Albert honestly rely on her "active" status designation reflected on the court's website in February 2021.  Due to the *Kilgore* litigation, Albert had actual knowledge that EDCA L.R. 184 required her to self-report her suspensions.  This was approximately 18 months before she checked her EDCA status in February 2021.  Albert purposefully failed to comply with the applicable EDCA rules.  R. Gonzalez did not inappropriately change Albert's status once she learned of Albert's suspension, as Albert argues on review.  Finally, the evasive manner in which Albert skirted around her State Bar status in the *Kilgore* litigation and initially in the *Avalos* litigation is further evidence of her intent to conceal her knowledge of the applicable rules and her State Bar status from the EDCA.  Albert's characterizations of her suspensions in the *Kilgore* and *Avalos* filings indicate that her intent was to obfuscate and confuse the issue. The above conduct supports culpability for moral turpitude as charged in count six.

We reject Albert's argument on review that *In the Matter Carver, supra,* 5 Cal. State Bar Ct. Rptr. 427 and other moral turpitude/UPL cases are inapplicable because those cases dealt with UPL in "state court."  Here, the EDCA Local Rules are clear who can and cannot practice in the EDCA.  Attorneys must be "active members in good standing of the State Bar of California." (EDCA L.R. 180(a).)  Due to her suspensions by the California Supreme Court, Albert was not an active member in good standing while those suspensions were in effect.  She was required to promptly report her suspensions.  Hence, while suspended in Albert I and Albert II, Albert was prohibited from practicing in the EDCA by operation of the EDCA's Local Rules.

**E.      Albert's Claims of Other Violations**

Albert raises numerous claims in defense of the culpability findings beyond the exhibits and witness testimony.  Albert claims the investigative process violated her federal privacy rights, the investigation was retaliatory, a State Bar official violated federal bankruptcy law, and an OCTC attorney "used bad faith and lack of candor to the tribunal" in order to harass Albert

and violate her federal constitutional rights.  Albert further alleges federal law was violated when the suspensions in Albert I and Albert II remained in effect until she paid the associated disciplinary costs.  We find the allegations conclusory and not supported by the record in this case.[25]

## IV.  AGGRAVATION AND MITIGATION

OCTC must establish aggravating circumstances by clear and convincing evidence. (Std. 1.5.)[26]  Albert has the same burden to prove mitigation.  (Std. 1.6.)

### A.    Aggravation

### 1.  Prior Record of Discipline (Std. 1.5(a))

A prior record of discipline can be an aggravating factor. The hearing judge assigned moderate weight to this factor due to Albert's two prior suspensions.  The judge reasoned that the Albert II conduct occurred before the imposition of the Albert I suspension, and the conduct here was relatively limited in scope and not repetitive.  OCTC argues that substantial weight is appropriate as both Albert I and Albert II occurred prior to the instant case and the hearing judge erred in finding the instant conduct was not repetitive of Albert's prior conduct.  Albert does not challenge the hearing judge's conclusion.

As to Albert's  prior suspensions, "prior discipline is a proper factor in aggravation '[w]henever discipline is imposed.'[Citation]."  (*In the Matter of Sklar* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 602, 618.)  Albert knew of both prior suspensions before she committed the misconduct in this third matter.  The effective dates of both the Albert I and

---

[25] On review, Albert also argues she has a "complete defense" to all counts due to a "mistake of fact" regarding her status to practice in the EDCA.  Therefore, Albert argues, all counts should be dismissed.  We find this argument without merit.

[26] All references to standards are to the Rules of Procedure of the State Bar, title IV, Standards for Attorney Sanctions for Professional Misconduct.

Albert II suspensions occurred before Albert's conduct that is the basis of our culpability

findings in the SANDC. Although the two prior disciplinary matters overlapped, it does not

change the fact that she was aware of both suspensions prior to committing the current

misconduct. Moreover, Albert's failure to comply with the self-reporting requirement of EDCA

L.R. 184, and that she continued to practice in the EDCA while suspended, is analogous to the

acts of failure to follow court orders. Based on our independent review of the record, we find

substantial weight should be assigned to this factor.

### 2. Multiple Acts (Std. 1.5(b))

"Multiple acts of wrongdoing" is an aggravating factor. (Std. 1.5(b).) Three instances of

misconduct is considered "multiple." (*In the Matter of Bach* (Review Dept. 1991) 1 Cal. State

Bar Ct. Rptr. 631, 646-647 [three instances of misconduct considered multiple acts].) The

hearing judge assessed limited weight to this aggravating circumstance. OCTC argues that

substantial weight is appropriate, as Albert filed several pleadings in the *Kilgore* litigation in late

2019 and then an answer in the *Avalos* litigation in early 2021 while suspended in Albert I and II.

She was precluded from practice in the EDCA pursuant to that jurisdiction's rules. Albert

objects to OCTC seeking additional aggravation, as OCTC did not seek this factor in the Hearing

Department.

Albert's misconduct sufficiently establishes aggravation for multiple acts of misconduct

under this standard. However, as only three events occurred, limited weight is properly assigned

to this factor. (*In the Matter of Amponsah* (Review Dept. 2019) 5 Cal. State Bar Ct. Rptr. 646,

653 [modest aggravating weight for three acts of wrongdoing.]; *In the Matter of Shkolnikov*

(Review Dept. 2021) 5 Cal. State Bar Ct. Rptr. 852, 864 [limited weight for three ethical

violations].)

### 3. Significant Harm to the Client, the Public, or the Administration of Justice (Std. 1.5(j))

"Significant harm to the client, the public, or the administration of justice" is an aggravating factor. (Std. 1.5(j).) The hearing judge did not discuss this aggravating factor but did discuss the corollary mitigating factor. (Std. 1.6(c).) On review, OCTC seeks substantial weight for this factor, and Albert objects, contending there was no showing of harm to a client or that substantial court time or resources were used. OCTC is correct, harm to the administration of justice is a consideration in this factor. (*In the Matter of Reiss* (Review Dept. 2012) 5 Cal. State Bar Ct. Rptr. 206, 217 [wasted judicial time and resources considered aggravating].) However, OCTC does not articulate how the EDCA was harmed. If Albert had reported her California suspensions at the outset to the EDCA, and then sought readmission, the OSC process referenced in EDCA L.R. 184(b) (like the one initiated by Magistrate Judge McAuliffe) would have ensued. However, in March 2021, Albert wasted judicial time and resources in her March 2021 correspondence with V. Gonzales (Judge Ishii's court clerk), R. Gonzalez, and her initial correspondence with Magistrate Judge McAuliffe. Hence, limited weight in aggravation is warranted.

### 4. Indifference (Std. 1.5(k))

"Indifference toward rectification or atonement for the consequences of the misconduct" is an aggravating factor. (Std. 1.5(k).) The hearing judge did not find aggravation for indifference, finding OCTC did not meet its burden of proof. OCTC argues on review that we should find substantial weight.

The law does not require false penitence, but it does require an attorney to accept responsibility for wrongful acts and show some understanding of culpability. (*In the Matter of Katz* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 502, 511.) Here, Albert was willfully blind

-29-

to the EDCA Local Rules that prohibited her appearances in *Kilgore* and *Avalos*.  Albert shifted

responsibility to Judge Ishii for not issuing an OSC and blamed EDCA staff for inappropriately

changing her EDCA status once they learned she was suspended.  At trial, Albert testified that

she did not believe she misinterpreted either EDCA L.R. 180 or EDCA L.R 184.  She still holds

that view.  Albert has consistently demonstrated indifference towards her misconduct.

Accordingly, we find moderate weight is appropriate for this factor.  (*In the Matter of*

*Duxbury* (Review Dept.1999) 4 Cal. State Bar Ct. Rptr. 61, 68 [aggravation appropriate where

attorney shows lack of a "full understanding of the seriousness of [the] misconduct"].)

### 5.  Lack of Candor (Std. 1.5(l))

"Lack of candor and cooperation to the victims of the misconduct or to the State Bar

during disciplinary investigations or proceedings" is an aggravating factor.  (Std. 1.5(l).)  The

hearing judge did not find aggravation for lack of candor, but OCTC asserts on review that

substantial weight should be applied here due to Albert's lack of candor at trial.

In support of its position, OCTC cites to two items of Albert's testimony.  First, she

testified that the "court never did order my suspension or discipline in the *Grewals* matter."

Albert's testimony was technically accurate.  The suspension from practice in the EDCA did not

require a court order and the Magistrate Judge's OSC did not order Albert's suspension.  The

OSC stated Albert was not eligible to practice in California and thereby not able to practice in

the EDCA by operation of the applicable local rules.  The OSC required Albert to show cause

"why her request for admission to this Court should not be denied on the basis that she is not

authorized to practice law in the State of California."

Second, OCTC argues Albert testified falsely when she said, "And I was informed that I

could file Grewal, that I was still an active member in the Eastern District, just like I was with

the U.S. Supreme Court."  OCTC's quoted sentence was part of a significantly longer answer.

Albert's complete answer is consistent with her February 12, 2021 review of the EDCA website.
Albert's screen capture of the EDCA website that same day showed her EDCA status as
"active." There is no dispute the Grewals' answer was filed on February 19, 2021. We agree the
reason why the EDCA listed Albert as "active" was because she failed to self-report her two
suspensions. However, OCTC has not met its burden of proof that Albert's EDCA status was
changed on its website prior to February 19, and that Albert knew her status had changed,
rendering the quoted testimony untruthful. Next, the clause, "And I was informed that I could
file Grewal," appears to refer to Albert's testimony about Westmoreland recounting to Albert a
purported conversation he had with Judge Ishii. As unrealistic as the Westmoreland story seems,
OCTC did not meet its burden of proof that Albert lied about Westmoreland telling her the Judge
Ishii story, or that she lied about her understanding of Westmoreland's account.

**B.    Mitigation**

**1.  Good Faith Belief (Std. 1.6(b))**

A "good faith belief that is honestly held and objectively reasonable" is a mitigating
factor. (Std. 1.6(b).) No weight was given to this factor, and Albert argues on review she should
be accorded "some weight." Albert was willfully blind to the applicable EDCA Local Rules that
required her to be an active member of the State Bar. She testified at trial that she knew of the
EDCA Local Rules and also knew there were different local rules among the various federal
courts. We affirm and assign no weight to this factor.

**2.  Lack of Harm to the Client, the Public, or the Administration of Justice
(Std. 1.6(c))**

"Lack of harm to the client, the public, or the administration of justice" is a mitigating
factor. (Std. 1.6(c).) The hearing judge found moderate weight in mitigation for this factor
because although there was harm to the administration of justice, Albert's wrongdoing did not

-31-

harm any clients.  Albert does not challenge this finding, and OCTC argues Albert should not
receive any mitigation under this factor because aggravation should be found pursuant to
standard 1.5(j).  We agree with OCTC, as we found aggravation pursuant to 1.5(j).  (*In the
Matter of Mason* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 639, 642 [no mitigation for lack
of client harm where attorney harmed administration of justice].)

### 3.  Cooperation (Std. 1.6(e))

"Spontaneous candor and cooperation displayed to the victims of the misconduct or to the
State Bar" is a mitigating factor.  (Std. 1.6(e).)  The hearing judge assigned minimal weight in
mitigation for this factor based on the very limited stipulation.  We agree.  Albert requests
substantial weight based on her "extensive stipulation" to facts and documents.  The stipulation
involved very few facts, and all were easily provable.  (*In the Matter of Johnson* (Review Dept.
2000) 4 Cal. State Bar Ct. Rptr. 179, 190 [more extensive weight in mitigation for those who
admit culpability and facts].)

### 4.  Extraordinary Good Character (Std. 1.6(f))

Albert is entitled to mitigation if she establishes extraordinary good character attested to
by a wide range of references in the legal and general communities who are aware of the full
extent of her misconduct.  (Std. 1.6(f).)  The hearing judge found substantial weight for this
factor.  OCTC argues only minimal weight is appropriate.  Upon review of the trial testimony
and declarations of Albert's character witnesses, we assign moderate weight to this factor.

Ten individuals testified at trial, eight of those witnesses also submitted declarations.
Nine additional declarations in support of Albert's good character were admitted at trial.  The
character evidence was from a wide variety of professions that included a civil engineer, a retired
probation officer, real estate professionals, a graphic artist, a retired federal special agent, a
paralegal, and an attorney.  Some of the character witnesses and declarants were long time

friends, others Albert knew from volunteer activities, while others were business acquaintances.

Several observed how Albert conducted herself in the political arena and in the practice of law.

Overall, the witnesses expressed highly favorable opinions of her good character.

Three trial witnesses and three declarants lacked sufficient familiarity with the

misconduct alleged in Albert's current matter. The trial testimony of these witnesses, including

one attorney, showed they did not have a complete understanding of the misconduct. Normally,

we give serious consideration to character evidence from an attorney, but we cannot do so when

the attorney is not fully aware of the misconduct. (*In the Matter of Brown* (Review Dept. 1993)

2 Cal. State Bar Ct. Rptr. 309, 319.) One character declaration makes no mention of the

underlying charges. Two other declarations had unspecific references to the instant charges.

Even though the declarants had positive opinions of Albert's good character, we give them less

weight than the hearing judge, because there was an insufficient showing they understood the

charges.

Two more witnesses testified that their opinion of Albert's good character would change

if she was found culpable of UPL. As there is culpability on the UPL counts, their testimony

cannot support mitigation under this factor. Two witnesses and one declarant believed UPL was

unethical or otherwise inappropriate, yet would not accept a factual determination that Albert

committed UPL. One even testified that if Albert was found to have done "something wrong,"

he would consider the finding a "direct hit on the wrong target," meaning there was a punitive

application of the law and "not in the spirit that the law was created."

In a similar vein, another witness testified that a culpability finding against Albert for

UPL would not change her opinion about Albert's moral character. This witness also believed

the instant charges were retaliatory. Four other declarants stated they were familiar with the

charges, yet they did not believe Albert committed misconduct or believed there was an ulterior

-33-

or improper motive behind the instant charges. One of these declarants stated that the case against Albert seemed to be a "vendetta."

We give little weight to the opinion of a suspended attorney who testified to Albert's good character. Such a witness does not warrant significant consideration of an attorney in good standing. This witness testified he was currently suspended for aiding UPL, and that he had a prior record of discipline. (See *Pacheco v. State Bar* (1987) 43 Cal.3d 1041, 1053 [significant weight is afforded to attorney witnesses because "such persons possess a keen sense of responsibility for the integrity of the legal profession. [Citations.]"].)

We find the most persuasive testimony was that of retired therapist Edward Garza. Garza agreed a suspended attorney should not practice law, and it would be unethical to do so. Yet, he testified such a finding against Albert would not change his opinion of her good character. Like many of Albert's witnesses, Garza gave first-hand accounts of other instances of Albert's moral character. However, unlike several of Albert's character witnesses, his unchanged opinion was not based on the rejection of a factual finding of culpability but on his personal experience with Albert.

Based upon this record, we decrease the mitigating weight given by the hearing judge from substantial to moderate. Two witnesses that had sufficient knowledge of Albert's matter changed their opinion upon a finding of UPL, and six others had insufficient knowledge of the case. However, sufficient character evidence remains to reject OCTC's request for minimal weight.

### 5. Pro Bono and Community Service

An attorney's pro bono work and community service can be a mitigating circumstance. (*Calvert v. State Bar* (1991) 54 Cal.3d 765, 785.) The hearing judge found moderate weight appropriate for this factor based upon the nature and type of Albert's activities. Albert seeks

substantial weight, and OCTC does not challenge the judge's determination. While Albert's witnesses frequently could not remember precise dates of her community-based and civic involvement activities, several character witnesses were able to corroborate her accounts. We also note some activities predate the COVID-19 pandemic. Based upon the totality of the record, we agree with the judge and find moderate weight is appropriate.

### 6. Remorse and Recognition of Wrongdoing (Std. 1.6(g))

Standard 1.6(g) provides mitigation credit where an attorney takes "prompt objective steps, demonstrating spontaneous remorse and recognition of the wrongdoing and timely atonement." The hearing judge applied no weight to this factor and determined Albert did not meet her burden of proof. Albert argues on review that she "should have been given credit" for this factor and argues substantial weight is warranted, as she apologized at trial. Albert further argues evidence of recognition regarding her conduct was her letter to the Ninth Circuit in April 2018, as that letter was within the time period required by the Albert I suspension to inform courts of her suspension. She also argues she wrote to Magistrate Judge McAuliffe in March 2021, after she learned her status had been changed to inactive. Albert confuses acts she was required to do, such as notifying the Ninth Circuit and the EDCA of her suspension, with mitigation under this standard. Albert has not established this factor by clear and convincing evidence, and we apply no weight to this factor.

### 7. Remoteness in Time and Subsequent Rehabilitation (Std. 1.6(h))

In mitigation, the remoteness in time of the misconduct and subsequent rehabilitation can be considered. (Std. 1.6(h).) The hearing judge did not assign mitigation under this factor. Neither party challenges this determination on review, and we affirm.

### 8. Excessive Delay (Std. 1.6(i))

"Excessive delay by the State Bar in conducting disciplinary proceedings causing prejudice to the lawyer" is a mitigating circumstance. (Std. 1.6(i).) In order to receive mitigation for this factor, Albert must establish the delay "'impeded the preparation or presentation of an effective defense.'" (*In the Matter of Jones* (Review Dept. 2022) 5 Cal. State Bar Ct. Rptr. 873, 895, quoting *In the Matter of Respondent K* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 335, 361.) The hearing judge assigned no weight to this factor, and we affirm. We find no clear and convincing evidence that the amount of time between the end of the current misconduct and the filing of the NDC in this matter was excessive or resulted in any prejudice to Albert.

### 9. Credit for Prior Suspensions

On review, Albert requests credit for the time spent on her first 30-day suspension, as it lasted for five years. As we recommend disbarment, this argument is moot. Even if a suspension were recommended, we find no basis in the law or in fact to reduce any period of suspension.

## V. DISCIPLINE

The purpose of attorney discipline is not to punish the attorney, but to protect the public, the courts, and the legal profession; to preserve public confidence in the profession; and to maintain high professional standards for attorneys. (Std. 1.1.) Our disciplinary analysis begins with the standards, which are guidelines and not mandatory, but to which we give great weight to promote consistency. (*In re Silverton* (2005) 36 Cal.4th 81, 91-92.) The standards are to be followed "whenever possible." (*In re Young* (1989) 49 Cal.3d 257, 267, fn. 11.)

We analyze the applicable standards in three steps. First, we determine which standard specifies the most severe sanction for the misconduct at issue. (Std. 1.7(a).) Second, we

determine whether an applicable exception applies to the most severe, applicable standard.
Third, we examine whether there is any reason to depart from the discipline set forth in the
applicable standard. We also look to comparable case law for guidance. (*Snyder v. State Bar*
(1990) 49 Cal.3d 1302, 1310-1311.)

Here, the most severe disciplinary sanction is Standard 1.8, as Albert has two prior
instances of discipline, each with an actual suspension. Standard 1.8(b) provides that disbarment
is appropriate where an attorney has two or more instances of misconduct if (1) an actual
suspension was ordered in one of the prior matters; (2) the prior and current matters together
demonstrate a pattern of misconduct; or (3) the prior disciplinary matters coupled with the
current record demonstrate the member's unwillingness or inability to conform to ethical
responsibilities.

Two exceptions to standard 1.8(b)'s presumption of disbarment apply to those cases
where "the most compelling mitigating circumstances clearly predominate," or the prior acts of
misconduct occurred in the same time period as the current acts of misconduct. (Std. 1.8(b).)
Neither exception applies to Albert. All of the misconduct underlying Albert I occurred between
2012 and 2015. The conduct underlying Albert II occurred between 2014 and 2016. Albert is
culpable in this instant matter for conduct in count one that started on August 28, 2019, when she
failed to inform the EDCA of the Albert II suspension. Counts two through six involve conduct
in 2019 and 2021. Hence, the hearing judge was correct that Albert's prior misconduct did not
occur at the same time as the current conduct at issue in the SANDC.

We do disagree, however, with the hearing judge that the record supports a finding that
the "most compelling mitigating circumstances clearly predominate." (Dec. p. 47.) In
mitigation, Albert has moderate weight for good character and for her pro bono activities, and
minimal weight for cooperation. Albert's mitigation is not "the most compelling" nor do the

-37-

mitigating factors clearly predominate when examined alongside Albert's conduct here.  We find
standard 1.8 applies, and Albert's disbarment is presumed.

We now turn to whether there is any reason to depart from the presumption of disbarment
in standard 1.8(b).  In determining an appropriate level of discipline, we also weigh factors in
aggravation and in mitigation.  (Std. 1.7(b)-(c).)  We find no basis to depart based upon the
record in this case.  Albert was willfully blind to the EDCA Local Rule that required her to
immediately report her suspension.  Albert was vague and indirect in her pleadings in the *Kilgore*
matter where she referred to her California suspensions in the past tense.  Albert misrepresented
to Magistrate Judge McAuliffe that Judge Ishii permitted her to practice in the EDCA when he
did not.  Albert accused EDCA staff of inappropriately changing her EDCA status to inactive.

On review, Albert raises several arguments for departure from standard 1.8(b).  These
arguments include: no EDCA judge suspended her from practice in that jurisdiction, the State
Bar Act does not apply to federal courts, and her conduct was aberrational and warranted a
warning letter.  We do not find these arguments compelling in light of the detailed factual record.

Albert's prior discipline matters involved failure to comply with court orders, failure to
cooperate with OCTC, failure to perform with competence, failure to provide an accounting,
failure to return unearned fees, and failure to promptly return client files.  Since her suspensions
in Albert I and II, Albert has knowingly disobeyed an obligation under the rules of the EDCA, in
violation of rule 3.4(f), engaged in UPL in the *Kilgore* and *Avalos* litigation matters, and
committed misconduct involving moral turpitude.  All of these violations occurred over
approximately 10 years, almost half of Albert's tenure as an attorney.

Our decision not to depart from Standard 1.8's presumption of disbarment is also
consistent with analogous case law, and we find *In the Matter of Carver, supra,*

5 Cal. State Bar Ct. Rptr. 427, provides helpful guidance. Carver's two prior discipline matters included a public reproval on a criminal conviction matter followed by failure to comply with probation conditions imposed in his prior discipline. In his third matter, Carver committed UPL in violation of sections 6068(a), 6125, and 6126 and moral turpitude by engaging in UPL through willful blindness which resulted in Carver's disbarment. (*In the Matter of Carver, supra*, at pp. 431-433.) Like Carver, this is the third time the State Bar has had to proceed against Albert, as she is unable to comply with the rules and standards that govern an attorney's conduct in California. Albert's attempts to distinguish *In the Matter of Carver* from the facts here are not successful. Like Carver, Albert's conduct was more serious in this third matter than her two prior matters, as she ignored EDCA Local Rules and engaged in UPL, including UPL with moral turpitude. (*Id.* at pp. 435-436.) Moreover, Albert was less than forthcoming with the EDCA bench in her attempts to address her Albert I and Albert II suspensions in the *Kilgore* and *Avalos* litigation. Disbarment is appropriate and necessary for the protection of the public, the courts, and the legal profession.

## VI.   RECOMMENDATION

It is recommended that Lenore LuAnn Albert, State Bar Number 210876, be disbarred from the practice of law in California and that her name be stricken from the roll of attorneys.

## VII.   CALIFORNIA RULES OF COURT, RULE 9.20

It is further recommended that Lenore LuAnn Albert be ordered to comply with California Rules of Court, rule 9.20, and to perform the acts specified in (a) and (c) within 30 and 40 calendar days, respectively, after the date the Supreme Court order imposing discipline in

this matter is filed.[27]  (*Athearn v. State Bar* (1982) 32 Cal.3d 38, 45 [the operative date for

identification of clients being represented in pending matters and others to be notified is the

filing date of the Supreme Court order imposing discipline].)

## VIII.   MONETARY SANCTIONS

It is further recommended that Lenore LuAnn Albert be ordered to pay monetary

sanctions to the State Bar of California Client Security Fund in the amount of $5,000 in

accordance with Business and Professions Code section 6086.13 and rule 5.137 of the Rules of

Procedure of the State Bar.  We find $5,000 is appropriate pursuant to rule 5.137(E)(2) of the

Rules of Procedure of the State Bar due to the serious nature of the offenses at issue, and

culpability on the UPL as a moral turpitude count, and we recommend disbarment.  On review,

Albert did not offer any cogent argument as to why monetary sanctions should not be imposed in

this matter.  Monetary sanctions are enforceable as a money judgment and may be collected by

the State Bar through any means permitted by law.  Monetary sanctions must be paid in full as a

condition of reinstatement or return to active status, unless time for payment is extended

pursuant to rule 5.137 of the Rules of Procedure of the State Bar.

## IX.   COSTS

It is further recommended that costs be awarded to the State Bar in accordance with

Business and Professions Code section 6086.10, and are enforceable both as provided in

Business and Professions Code section 6140.7 and as a money judgment, and may be collected

by the State Bar through any means permitted by law.  Unless the time for payment of discipline

---

[27] Lenore LuAnn Albert is required to file a rule 9.20(c) affidavit even if she has no
clients to notify on the date the Supreme Court files its order in this proceeding.  (*Powers v. State
Bar* (1988) 44 Cal.3d 337, 341.)  In addition to being punished as a crime or contempt, an
attorney's failure to comply with rule 9.20 is, inter alia, cause for disbarment, suspension,
revocation of any pending disciplinary probation, and denial of an application for reinstatement
after disbarment.  (Cal. Rules of Court, rule 9.20(d).)

costs is extended pursuant to subdivision (c) of section 6086.10, costs assessed against an attorney who is actually suspended or disbarred must be paid as a condition of applying for reinstatement or return to active status. Albert's objections to the manner in which costs are assessed is not a basis to not award costs in this matter.

## X.   INVOLUNTARY INACTIVE ENROLLMENT

Lenore LuAnn Albert is ordered transferred to involuntary inactive status pursuant to Business and Professions Code section 6007, subdivision (c)(4). Her inactive enrollment will be effective three calendar days after this order is served and will terminate upon the effective date of the Supreme Court's order imposing discipline herein, or as provided for by rule 5.111(D)(2) of the State Bar Rules of Procedure or as otherwise ordered by the Supreme Court pursuant to its plenary jurisdiction.

HONN, P. J.


WE CONCUR:

RIBAS, J.

STOVITZ, J.*

---

* Retired Presiding Judge of the State Bar Court, serving as Review Judge Pro Tempore by appointment of the California Supreme Court.