Electronically Filed by Superior Court of California, County of Orange, 02/01/2024 08:03:00 PM
30-2022-01250695-CU-AT-CXC - ROA # 293 - DAVID H. YAMASAKI, Clerk of the Court By C. Lopez, Deputy Clerk.
#:3113

Lenore L. Albert, Esq. SBN 210876
Email: lenalbert@InteractiveCounsel.com
LAW OFFICES OF LENORE ALBERT
1968 S Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Attorney for Plaintiffs, John Roe 1,John Roe 3,
Jane Roe 2, Chad Pratt, and NZ *on behalf of*
*themselves and all others similarly situated.*

# SUPERIOR COURT OF CALIFORNIA

# COUNTY OF ORANGE

| | |
|---|---|
| JOHN ROE 1, an individual; JOHN ROE 3; JANE ROE 2; CHAD PRATT; and NZ *on behalf of themselves and all others similarly situated*, <br><br> Plaintiff, <br> vs. <br><br> THE STATE BAR OF CALIFORNIA; TYLER TECHNOLOGIES, INC.; RICK RANKIN; and DOES 4 through 10, inclusive, <br> Defendants. | CASE NO. 30-2022-01250695-CU-AT-CXC <br><br> Assigned to the Hon. Randall J. Sherman, CX-105 <br> Complaint filed: 03-18-2022 <br><br> **FOURTH AMENDED CLASS ACTION COMPLAINT** <br><br> 1. **Invasion of Privacy (Cal. Const. Art I § 1)** <br> 2. **Negligence** <br> 3. **Govt Code §815.6 Liability** <br> 4. **Govt Code §815.4 Liability** <br> 5. **Negligence** <br> 6. **Deceit** <br><br> **[DEMAND FOR JURY TRIAL]** |

Plaintiffs John Roe 1, John Roe 3, Jane Roe 2, Chad Pratt, and NZ (referred to collectively as "Plaintiff" or "Plaintiffs"), by and through their attorney, amend their pleadings pursuant to the Court's order on demurrer and bring this action against Defendants, the State Bar of California, Tyler Technologies, Inc., Rick Rankin, and Does 4 through 10, and each of them so captioned, (collectively the "Defendants") and alleges the following on information and belief, except as to those allegations which pertain to the Plaintiffs and are within their personal knowledge:

**<u>PARTIES</u>**

1.      Plaintiff, John Roe 1, at all times mentioned herein relevant to this complaint is employed in and is a resident of Orange County, California and has filed a confidential Complaint with the State Bar of California. Plaintiff sues under the pseudonym of "John Roe 1" to protect his legitimate interests in his privacy.

2.      Plaintiff, John Roe 3, at all times mentioned herein relevant to this complaint was a resident of Sutter County, California. He had filed a confidential Complaint with the State Bar of California. Plaintiff sues under the pseudonym of "John Roe 3" to  protect his legitimate interest in his privacy.

3.      Plaintiff, Jane Roe 2, at all times mentioned herein relevant to this complaint was a former judge licensed by the State Bar of California and resident of San Diego County, California and was the subject of a confidential investigation filed with the State Bar of California. Plaintiff sues under the pseudonym of "Jane Roe 2" to protect her legitimate interests in her privacy.

4.      Plaintiff, Chad Pratt, at all times mentioned herein relevant to this complaint is an attorney licensed by the State Bar of California and resident of Los Angeles County, California and was the subject of a confidential investigation filed with the State Bar of California.

5.      Plaintiff, NZ, at all times mentioned herein relevant to this complaint is an attorney licensed by the State Bar of California and resident of Los Angeles County, California and was the subject of a confidential investigation filed with the State Bar of California. Plaintiff sues under the pseudonym of "NZ" to protect his legitimate interests in his privacy.

6.      Defendant THE STATE BAR OF CALIFORNIA, is a public corporation and has two offices located in (1) San Francisco, California; and (2) Los Angeles, California. On or about February 24, 2022, the State Bar announced that approximately 260,000 (later 322,525) confidential disciplinary records were posted on the internet on a website with the URL JudyRecords.com that anyone with internet access could freely view. It was not the result of a hack.

7.      Defendant RICK RANKIN, principal of RPR Impact, LLC, is an independent contractor hired to perform the services as interim Director of the Information Technology Department of the State Bar of California and regularly conducts business in the state of California.

8.      Defendant TYLER TECHNOLOGIES, INC. ("Tyler Technologies") is a Texas corporation that regularly conducts business in California and is the vendor that supplied the software product called Odyssey including the Odyssey Portal to the State Bar of California which has been blamed for the data breach due to its failure to have an adequate access control check in place.

9.      KEVAN SCHWITZER is a resident of Texas and operates a website at URL JudyRecords.com that publishes information from various federal and state agencies that is freely open to anyone who has internet access. Millions of confidential records were published on his website, of which approximately 322,525 were confidential investigations opened up by the State Bar of California.

10.     Plaintiff does not know the true names and capacities of the Defendants DOES 4 through 10, inclusive, and, as such, names said Defendants by such fictitious names. Plaintiff will amend the complaint to state the true name and capacity of the DOE Defendant(s) when such information is ascertained.

11.     Plaintiff is informed and believes, and alleges thereon, that each Defendant assisted, adopted, ratified, approved, conspired, or acted in concert therewith with the other Defendant(s).

12.     Plaintiff is informed and believes, and alleges thereon, that each Defendant is responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's' damages were proximately caused by the Defendants at all times mentioned in this complaint.

## SUMMARY OF THE FACTS

13.     On or about February 24, 2022 the State Bar of California learned that information about its confidential investigations which specifically identified the bar member, witness and/or complainant, had been exfiltrated or disclosed on the internet that anyone with access to the internet could freely read, share or download from JudyRecords.com.

14.     The State Bar of California is a public corporation with broad authority to initiate and open investigations on applicants and members. It maintains a large volume of sensitive private information containing the identity of the individual along with his or her birthdate, social security number, entire email and address history, expunged criminal records, medical records, banking information, and biometric data (fingerprints).

15.     Under longstanding common law and statutory principles, complaints to the State Bar not resulting in disciplinary action are privileged because confidentiality furthers the State Bar's interest in encouraging citizens to provide information and attorneys' interests in avoiding publications of unfounded complaints.

16.     These complaints are to be considered "highly confidential" which public policy would forbid the confidence to be violated. In some instances, even the attorney is not notified that a complaint or investigation has taken place.

17.    The State Bar knew that a charge from a complaint, no matter how guiltless the attorney might be, if generally known, would do the attorney irreparable harm even though the attorney is cleared by the State Bar.

18.    The State Bar also knew that it is essential to secure all possible information bearing on a complaint and necessarily much of the information can only be had upon the understanding that the informant and the information will be treated as confidential.

19.    Plaintiffs are informed and believe and allege thereon that the State Bar of California informed Defendants Tyler Technologies, Inc., Rick Rankin, and Does 4 through 10 how "highly confidential" these state bar investigations were and that the state bar intended to use Odyssey in the Department of the Office of Chief Trial Counsel where these records were created, maintained, and/or stored.

20.    The state bar confidential investigations are so highly confidential that a bar member is not entitled to learn of the investigation, obtain notice of State Bar subpoenas, or even obtain the records the state bar acquired against or on the member as part of their confidential investigation.

21.    The State Bar has not disclosed what was posted about each plaintiff or member of the class as a result of the breach; to date the plaintiffs and the members of the class can only speculate as to what confidential state bar investigation was publicly posted online or additional information that may have been exposed that was attached to their identity.

22.    Pursuant to the State Bar Act, the State Bar adopted rules that preliminary investigations shall not be made public and that all files, records and proceedings are confidential.

23.    All State Bar complaints and investigations are confidential until public Notice of Disciplinary Charges are filed pursuant to Bus & Prof Code § 6086.1. Some complaints and investigations never end up being prosecuted, others remain confidential through prosecution, and still others become confidential after being "expunged."

24.    Bus & Prof Code §§ 6086 and 6025 confer powers on the State Bar to adopt rules of procedure. Among those rules, the State Bar adopted Rules of Procedure, Rule 2301 which provides: "the files and records of the Office of Chief Trial Counsel are confidential."

25.    State Bar Rules of Procedure, Rule 2302(e)(2) similarly provides: "(a) information concerning inquiries, complaints or investigations is confidential, and shall not be shared outside of the State Bar Office of Chief Trial Counsel."

26.    The State Bar learned that the software they were using called Odyssey failed to have an or had an inadequate access control check which allowed the confidential state bar investigations including the

identity of the complainants, witnesses or bar members to be accessed and scraped and/or harvested by third parties online.

27.    The supplier of Odyssey, defendant Tyler Technologies, Inc. realized that it had sold Odyssey to multiple other state, county, and local agencies throughout the United States without a proper access control check in place and nonpublic information from those databases were posted on the internet, too.

28.    So, an agreement not known to the public or plaintiffs was made between Tyler Technologies, the State Bar of California, Rick Rankin, Does 4 through 10, and others, to delay informing plaintiffs and members of the class about the data breach, putting Defendants' interest above the plaintiffs and the class.

29.    Instead of giving expedient notice to the victims of the breach, the defendants went to great lengths to control the narrative and hide the information away from the public as they worked on this massive breach of millions of records.

30.    Plaintiffs filed this lawsuit as a result on March 18, 2022.

31.    On or about February 28, 2022, the State Bar of California's independent contractor, Nicholas Albright of E-Magined instructed Kevan Schweitzer "for future communication, let's leverage the following tag: Attorney-Client Privileged/Attorney Work Product" even though they were computer engineers, not lawyers.

32.    Defendant Rick Rankin representing the State Bar using Rick.Rankin@calbar.ca.gov email address, was copied on the February 28, 2022 email and permitted, let, instructed, adopted, or acquiesced in Nicholas Albright's approach.

33.    Additionally, on March 9, 2022, Defendant Tyler Technologies, Inc. employee Jeremy Ward put in charge of working with Kevan Schweitzer the operator of JudyRecords.com, told Schweitzer that Tyler Technologies decided to put a "hold[] on the CA clients" and "deal with" all of its California clients in "a single bucket."

34.    Defendants had already identified the victims of the State Bar data breach by February 28, 2022 and had finished their analysis of the breach by March 9, 2022 but the plaintiffs and the members of the class did not start receiving any type of notice of the breach until May 18, 2022 through July 10, 2022 (approximately 83 days after Defendant State Bar of California had knowledge of the breach) leading to an unreasonable delay caused by Defendant Tyler Technologies, Does 4 through 10, and others.

35.    Furthermore, the notice the Defendant State Bar distributed was insufficient. It failed to inform the plaintiffs and members of the class that the information was also indexed to Google and could

possibly be located on pay sites such as Lexis, Westlaw, Experian and could be found on the Dark Web, leaving the time loss and financial burden to the plaintiffs and the class.

36.     The Notice was insufficient in that it failed to explain that each confidential record of the 322,525 records were not personally reviewed; it failed to explain how §6007 records wound up on the internet; or how a social security number was located when the notice implied that only "docket" information was posted on JudyRecords.com. The Notice had no indicia of nothing more than spam because it did not come from the State Bar. It did not have a State Bar URL, address, Emblem, or name attached to it.

37.     The Notice was also misleading because it framed the extent of the breach in "page views" on JudyRecords.com but failed to inform the reader that (1) this was done through an analytical process that is not precise or exact; (2) via sampling of only a small portion of the records; and (3) the "page views" number did not include number of searches performed or whether the information was posted or viewed on other websites. It surely did not warn the reader that even if JudyRecords.com deleted the records, another party could have downloaded the information, and it may appear again on the internet in the future. Without this material information, it left many persons exposed to the breach to future risk of harm.

## THE STATE BAR'S ROLE

38.     The State Bar represents that it is an arm of the California Supreme Court which holds disciplinary hearings and makes recommendations on attorney suspensions and disbarments to the California Supreme Court.

39.     The State Bar publishes Ethic Opinions, Recommendations, and Review Department Opinions on its website.

40.     The State Bar knew or should have known that third parties look to scrape different court systems to post those cases on the internet to third party free access and paid access websites.

41.     As such, the State Bar knew or should have known that third parties would scrape opinions and case files from its website like any other judicial website.

42.     Yet, the State Bar failed to implement policies, systems and procedures that met industry standards necessary to protect such highly confidential information from being scraped or harvested when a third party would scrape or harvest the published recommendations and Review Department opinions.

43.    As a result, the identity of bar members under confidential investigations, along with the identity of complainants and confidential witnesses were scraped and/or harvested from the state bar website and posted on the internet resulting in harm caused in part by Defendant State Bar of California.

44.    The State Bar disregard for the plaintiffs' rights is almost McCarthyism because it has a stronger interest in collecting personal information on its members through its massive confidential investigations than it does in protecting the plaintiffs and class members privacy rights. On March 24, 2022 – one month after discovery of the data breach but before the State Bar notified the plaintiffs and members of the class about the breach, it announced it was moving forward to expand its confidential investigations to include acquiring photos of its members from the Department of Motor Vehicles to add to their data base.

### RICK RANKIN'S ROLE

45.    Plaintiffs are informed, believe, and allege thereon that Defendant Rick Rankin owns RPR Impact, LLC and holds himself out as a cybersecurity engineering leader. He was brought into the State Bar as an independent contractor to serve as the Information Technology director before the breach occurred.

46.    Industry standards for cybersecurity engineers would include penetration testing, which if performed on Odyssey would have revealed that there was no access control check in place.

47.    Another industry standard a cybersecurity engineer heading an Information Technology department would implement would have all confidential information encrypted in the event it wound up in the hands of third parties.

48.    Plaintiffs are informed and believe that Defendant Rick Rankin's failure to implement security measures such as regular penetration testing of Odyssey and encrypting the identity of bar members, witnesses or complainants subject to confidential investigations by the State Bar was another substantial factor in causing the breach and harm to the plaintiffs and members of the class.

49.    Additionally, some victims of the breach were persons seeking admission who were given notice of breach. Other victims of the breach were members that were compelled under Bus & Prof Code §6007 to submit to medical examinations by the State Bar. And at least one Social Security Number was posted on the internet evidencing that the nature, contents, and scope of the breach was much broader than merely "docket" data as represented in the delayed notifications.

### TYLER TECHNOLOGIES ROLE

50.    Tyler Technologies, Inc. develops software that it supplies to local, state and federal government agencies throughout the United States. One of its products is called Odyssey.

51.     It was a low-code/no-code solution which the State Bar intentionally selected over custom software built to manage its Office of Chief Trial Counsel records including the highly confidential state bar investigations.

52.     Kevan Schweitzer informed the State Bar that he was able to publicly access the State Bar's highly confidential state bar investigation matters because Odyssey failed to protect the State Bar's system from public access.

53.     Kevan Schweitzer demonstrated that accessibility was consistent with not performing access control checks.

54.     Tyler Technologies, Inc. was not communicating anything to the clients about the nature of the issue.

55.     Tyler Technologies never disclosed to the plaintiffs or the members of the class that the same issue was found on court systems using the Odyssey product such as found in the following California locations: Merced, San Mateo, Butte, Kings County, Sutter, Sonoma, Yuba, Stanislaus, Santa Cruz, Calaveras, Mendocino, Tehama and San Diego. This breach was repeated over and over throughout the country and possibly the largest coverup of this kind.

56.     Defendant Tyler Technologies, Inc., through its employee Jeremy Ward worked with Kevan Schweitzer the owner/operator of JudyRecords.com to control the narrative by downplaying its size and producing an analytic of "page views" to characterize the breach.

57.     Plaintiffs are informed, believe, and allege thereon that the downplaying of the scope of the breach was initiated in part by Defendant State Bar of California who was working on playing with the analytics.

58.     As support for this allegation, on March 7, 2022 Kevan Schweitzer communicated to Jeremy Ward that he thought it "can be a big win as far as being able to piggyback on Cal Bar's analysis, as well as being able to point to their ability to specifically determine which cases were affected."

59.     Plaintiffs and the class never received notifications regarding any of the confidential records leaked from the court systems and were never warned by any of the Defendants that even after this complaint was filed over a quarter million unprotected case links were still indexed on Google.com.

## ADDITIONAL FACTS

60.     In 2018, the Office of Chief Trial Counsel ("OCTC") launched an online complaint portal, allowing complaining witnesses to file complaints electronically, rather than on paper via mail.

61.    The following year, the State Bar of California OCTC transferred from an AS 400 Case Management System to a new Case Management System employing "Odyssey" which it purchased for approximately $3 million from Tyler Technologies. It kept its admissions database on different technology.

62.    Then in 2020, OCTC integrated the online complaint portal with Odyssey resulting in automatically opening confidential state bar investigations when the online complaint was submitted to eliminating the need of State Bar of California staff to manually enter data for complaints submitted on-line. However, these confidential investigations were not then encrypted as shown by the later posting onto the internet by a third party.

63.    In or about October 2021, Kevan Schwitzer scraped and/or harvested the cases from the California State Bar website and put them on the internet at JudyRecords.com which was free and open to anyone in the public that had internet access. Tyler Technologies, Inc. had a data breach before the State Bar data breach, yet the State Bar continued to use the Odyssey Portal without performing adequate security measures.

64.    Judyrecords.com site is set up to do a search by name wherein one can see the details of the investigation without having to click on the record. The search results are not uniform, but some level of detailed information shows up in a general search without having to select and view the actual file. The data includes the venue, the names of the parties, a URL to the record, and a case number.

65.    On or about February 22, 2022, the State Bar of California was informed confidential state bar investigations that included the identity of the bar member, witness or complainant were posted on the internet at https://Judysrecords.com.

66.    Plaintiff is informed and believes and alleges thereon that approximately 322,525 confidential state bar investigations identifying the bar member, witness or complainant was discovered on https://Judysrecords.com and had been there since on or about October 15, 2021.

67.    With the number of highly confidential investigations outnumbering the number of practicing attorneys in the state of California, plaintiffs and members of the class were anxious to know if their name was out there, how many times, and in relation to what investigation. The plaintiffs and members of the class also wanted to know the nature and contents of the breach and where else on the internet it could be.

68.    Defendant State Bar refused to give notice to the plaintiffs or class members or release any information helpful to them, so they filed this lawsuit on March 18, 2022 after filing State Bar tort claim forms with the agency.

69.     Defendant State Bar did not report the breach to the California Attorney General's office or local law enforcement. Instead, it used the time and press to obfuscate, downplay, and deny any liability. It has the specter of destroying and/or covering up the evidence or wrongdoing.

70.     From May 18, 2022 through mid-July 2022, the California State Bar created a third party email address and an out of state address or used an agent to create the same and sent generic notices filled with conflicting or deceitful information but did not contain exactly what was put out there about the plaintiffs and the class and it is something they cannot obtain themselves because JudyRecords.com pulled the records down and the State Bar refuses to inform the plaintiffs and class on the basis that all investigations not resulting in public discipline are confidential.

71.     The State Bar of California and Rick Rankin failed to use best practices because the database containing the confidential state bar investigations was bloated with approximately 513,000 confidential complaints more than five years old. Best practices would have had a system in place to delete these old files that did not result in a public disciplinary matter from the database.

72.     The Plaintiffs and members of the class did not permit, consent, or authorize their identity attached to confidential state bar investigations to be posted onto the internet.

73.     Plaintiff is informed and believes and alleges thereon that Defendant Rick Rankin failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information which gave JudyRecords.com the ability to obtain the identity of the people who were subjected to confidential investigations and place it in the public domain which the State Bar now denies any such duty.

74.     Defendant Tyler Technologies, Inc.'s use of low-code or no-code solutions to build a program is quick but when integrating with databases or using other cloud services and letting the software leave the native platform endpoint security issues arise where best practices would include ensuring an adequate access control check was in place upon installation/deployment/subscription based on the highly confidential nature of the state bar investigations at issue.

75.     As a direct and proximate result of the unreasonable conduct of Rick Rankin, Tyler Technologies, the State Bar of California, and Does 4 through 10, and each of them, jointly and severally, the identity of the plaintiffs and members of the class associated with approximately 322,525 confidential state bar investigations were posted on the internet.

76.    Plaintiff and the class remain at risk because repairing or installing an access control check is temporary and can easily be disabled. Industry standards require regular penetration testing and the encryption of confidential data.

77.    The public disclosure of the identity of a complainant or member under investigation is known to lead to irreparable harm to an attorney's reputation and can lead to job instability, loss of business, threats of extortion, and an unfair advantage to the attorney's adversaries. Likewise, publication of the identity of a complainant or witness is known to lead to an unfair advantage provided to the informant's adversaries phishing for information online or create more adversaries from the member's allies.

78.    The average cost to repair or combat reputational harm on the internet is between $10,000.00 to $25,000.00 per year.

79.    This data breach of 322,525 confidential state bar investigations caused by Defendants Tyler Technologies, Inc., the State Bar of California, Rick Rankin and Does 4 through 10, and each of them, jointly and severally, has proximately caused privacy harm, time loss, mitigation costs, paranoia, worry, anxiety, irreparable reputational harm, and will continue to cost the plaintiffs and members of the class time to research the internet every so often to ensure that these confidential records do not reappear. The plaintiffs and members of the class have also been subjected to spam and had to obtain monitoring services for the dark web.

## Tort Claims Filed

80.    On or about March 14, 2022, John Roe 1, Jane Roe 1 and Jane Roes 2 revealing their true identity to the defendants, filed tort claims with the State Bar of California prior to filing suit and Suzanne Grandt of the State Bar of California denied those claims. A general claim for the plaintiffs and members of the class was filed before this lawsuit was filed and Suzanne Grandt of the State Bar of California denied those claims. After this case was filed and the notices were received, Chad Pratt and John Roe 3 using their true identity filed tort claims with the State Bar of California through counsel of record and Suzanne Grandt of the State Bar of California denied those claims as well.

81.    John Roe 1, Jane Roe 1, and Jane 2  are informed and believe and allege thereon that their identity was part of the data breach because there was a confidential state bar investigation relating or referring to them, but they did not receive a notice from the State Bar of California about the breach.

82.    Chad Pratt was added to this complaint in April 2022. He was admitted to the State Bar of California on December 4, 1990 and defendants know his true identity. On May 22, 2022 Chad Pratt received a letter from the State Bar of California informing him that the State Bar was going investigate

him and proceed with disciplinary proceedings. The very next day, on <u>May 23, 2022</u> Chad Pratt then received a Notice of the Data Breach by way of email from: <u>noreply@castatebarodysseynotice.com</u>. Similarly, NZ who had no prior public disciplinary actions also started receiving state bar investigation letters and complaints after he was notified that his identity was part of the breach and had "page views" causing attorneys' serious concern and a great loss to their peace of mind after the data breach.

83.    Plaintiffs are informed and believe and allege thereon that the Defendant State Bar of California is using the identity of the named plaintiffs in a way to try to minimize the damage value of the case by either withholding the notices from the named plaintiffs or initiating proceedings so that if they become public, then the damage looks de minimus, but in fact such measures and tactics demonstrate the great risk showing the damage to be significant that this has caused to the plaintiffs and members of the class.

84.    Chad Pratt paid $74.99 for an annual subscription to mitigate or monitor dark web disclosures because after the data breach, he began spending a lot of time trying to get rid of spam and phishing.

85.    Chad Pratt has also spent time to determine if this confidential record has appeared on any other websites such as Lexis, Westlaw, Google or elsewhere.

## **JOHN ROE 1**

86.    Plaintiff, John Roe 1, at all times mentioned herein relevant to this complaint is employed in and is a resident of Orange County, California and filed a confidential Complaint with the State Bar of California before the data breach.

87.    Plaintiff sues under the pseudonym of "John Roe 1" to protect his legitimate interests in his privacy.

88.    Plaintiff John Roe 1 filed a State Bar tort claim with the State Bar prior to this complaint being filed on March 18, 2022, on his behalf and others similarly situation. The claim was denied.

89.    John Roe 1 is not an attorney but employed in public relations mainly for cybersecurity firms.

90.    In or about 2018 he complained against an attorney who represented he was making mistakes in his legal work and was not able to practice law due to an ongoing medical condition but continued the practice of law anyway.

91.    The State Bar opened an investigation, but no public discipline resulted from the investigation.

92.    Although the State Bar represented that all confidential State Bar investigations were scraped by Kevan Schweitzer and placed on the internet, Plaintiff did not receive a notice of the data breach from the State Bar about the data breach of the confidential State Bar investigation although the State Bar has plaintiff's current mail and email address. Plaintiff is informed, believes, and alleges thereon that either

the notice was put in spam or not sent on the basis that the State Bar received his identity and tort claim form on or about March 14, 2022 before the notices of breach were sent out in May 2022 in an attempt to eliminate him as a representative of the class.

93. Because John Roe 1 already works in the world of cybersecurity he had already spent a considerable amount of money and time setting up a robust system which has prevented the phishing/spam emails and phone calls that others have experienced. It would be unreasonable to expect others to have spent thousands of dollars on such a robust system, thus the fact that this part of harm did not exist in this plaintiff's situation does not make him representative of the class. On the other hand, he is uniquely qualified to testify to just how much money and time he had to spend in order to prevent phishing/spam due to the impact of the data breach.

94. The attorney plaintiff complained about was not his former attorney but an adversary in the local community who has multiple allies.

95. Like the other plaintiffs and members of the class, John Roe 1's belief in justice or integrity in the system has been further damaged or destroyed, feeling violated by a system that was supposed to protect him from his adversaries and their allies. He now has no faith in the integrity of the state bar system or that it is set up to assure justice. He also must now take the time out of everyday life to mitigate the actual and potential impact of the data breach by closely reviewing and monitoring phone calls, emails for phishing attacks and the internet for docket activity to reappear or get circulated by his adversaries or their allies.

96. Plaintiff suffered privacy harm and a great loss of peace of mind.

## **JOHN ROE 3**

97. Plaintiff ,John Roe 3 substituted in for Jane Roe 1 is a resident of Sutter County, California.

98. He previously made a complaint about an attorney with the State Bar of California that did not result in public discipline which resulted in a confidential State Bar investigation prior to the breach. On or about June 13, 2020 he received a notice from the State Bar that it had opened an investigation into the matter and assigned a case matter to it.

99. He is not an attorney and works at a family ranch and lounge.

100. Plaintiff sues under the pseudonym of "John Roe 3." to protect his legitimate interests in his privacy.

101.    On May 23, 2022 he received an email notifying him that his identity along with the confidential state bar investigation was found posted on the internet, but it was represented to him that there were "no page views" in the notice he received.

102.    John Roe 3 was left exposed and as a result, he received an unusual amount of phishing/scam phone calls after the breach interfering with his daily life (approximately ninety-nine in one day) costing him loss of time, annoyance, and money. Additionally, someone used his social security number other than himself.

103.    John Roe 3 is informed and believes and alleges thereon that his information that was exfiltrated from the State Bar included his phone number and was placed on the dark web based on the number of calls plaintiff John Roe 3 received thereafter. The purpose of keeping a complainant's identity confidential to act as a safety valve for the complainant who feels violated by an attorney has been eroded by the data breach for John Roe 3

104.    He has lost money in mitigation of the spam/phishing; loss of time by now having to deal with the actual and potential impact of the data beach in his daily life by having to closely review and monitor his emails and phone call. He spent approximately $395.00 due to breach. His belief in justice or integrity in the system has been further damaged or destroyed, feeling violated by a system that was supposed to protect him from his adversaries and their allies. He now experiences overwhelming outbursts of frustration, paranoia and stress as a result. Hearing of another data breach in the news or online triggers a PTSD type of response of immediately reminding the plaintiff of this data breach and the irreparable harm that it has caused which is hard to put into words other than an emotional harm of anxiety, paranoia, anger, and serious distress. Plaintiff now has the burden of continuing to monitor his credit based on unauthorized use of his social security number plus the internet to see if the information attached to his identity will reappear. He has suffered a great loss of peace of mind.

105.    A tort claim form was filed with the State Bar prior to this complaint being filed on March 18, 2022 on his behalf and all others similarly situated. The State Bar denied the claim a few weeks thereafter.

106.    Plaintiff's suffered privacy harm as a result of the data breach.

**JANE ROE 2**

107.    Plaintiff, Jane Roe 2, at all times mentioned herein relevant to this complaint was a former judge licensed by the State Bar of California and resident of San Diego County, California and was the subject of a confidential investigation filed with the State Bar of California.

108.    Plaintiff sues under the pseudonym of "Jane Roe 2" to protect her legitimate interests in her privacy.

109.    Plaintiff Jane Roe 2 was investigated for a medical condition and is informed and believes and alleges thereon that the State Bar file contains her private medical records. No public disciplinary action is shown on her member profile.

110.    A claim was filed with the State Bar on her behalf on March 14, 2022 prior to the filing of this lawsuit and was later denied by the State Bar. On or about September 20, 2022, another claim was filed with the State Bar in her own name, revealing her identity to the defendants but that claim was denied, too.

111.    The ADA protects Plaintiff Jane Roe 2, and she has no knowledge of receiving a notice of breach from the State Bar but is well aware that a private investigation was in her file at the State Bar.

112.    As a result, plaintiff is informed and believes and alleges thereon that the State Bar failed to send out notices that would comply with the ADA in such a manner that plaintiff would know she received one or the defendants knew of plaintiff's identity and purposefully failed to give her notice in order to attempt to eliminate her as a representative of the class although the State Bar represented that all confidential State Bar investigations were scraped by Kevan Schweitzer and placed on the internet,.

113.    The State Bar has broad powers to compel any attorney at any time in their career, including former judges, to submit to a physical or psychological medical exam and to place that attorney on inactive status simply if the attorney refuses to comply. The purpose of keeping an attorney's identity confidential under this section of the State Bar as with any other confidential investigation in that such public disclosure would cause irreparable harm to their reputation. It is also supported by HIPAA, the California Medical Information Act, and the Lanterman-Petris Short Act. The State Bar codes its disciplinary proceedings under this section differently which is "docket type" of information that was consistent with the Notices that at least six such instances were discovered online leading to harm.

114.    Plaintiff's harm whether potential or actual, based on the impact of this data breach, has caused a time loss in plaintiff's everyday life trying to make sure that this docket information attached to her identity is not reappearing anywhere online. She also believes she lost money as a result of the breach.

115.    The data breach has exacerbated plaintiff's emotional distress with dealing with the state bar and retriggered PTSD.

116.    Plaintiff suffered privacy harm. She has suffered a great loss of peace of mind.

## **CHAD PRATT**

117.     Plaintiff, Chad Pratt, at all times mentioned herein relevant to this complaint is an attorney
licensed by the State Bar of California and resident of Los Angeles County, California and was the
subject of a confidential investigation filed with the State Bar of California.

118.     Plaintiff sues under the pseudonym of "Chad Pratt" to protect his legitimate interests in his
privacy.

119.     Plaintiff Chad Pratt is a solo practitioner protecting consumers in litigation and/or criminal
defense and was investigated for representing homeowners seeking loan modifications approximately a
decade ago. He has a disciplinary record wherein he has been disciplined repeatedly over the same
practice when new complaints are made by those who sought services a decade ago. A claim was filed
with the State Bar on his behalf on March 14, 2022 prior to the filing of this lawsuit and was later
denied by the State Bar. On or about September 20, 2022, another claim was filed with the State Bar in
his own name.

120.     On May 21, 2022, the State Bar drafted a letter informing Chad Pratt he was going to be charged
with a new State Bar investigation unrelated to loan modifications that had occurred approximately 3 to
4 years prior in federal court.

121.     On May 22, 2022, the very next day, Chad Pratt received a Notice of the breach informing him
that his identity was found on JudyRecords.com in relation to a confidential state bar investigation but it
purportedly had "no page views."

122.     Because the confidential state bar investigation letter from the State Bar dated May 21, 2022
concerned matters that predated the breach, Chad Pratt is informed and believes and alleges thereon that
the State Bar decided to begin the investigation process because Chad Pratt's confidential investigation
had a page view on Judyrecords.com even though the notice they sent said there was no evidence of
page views, thus causing him harm.

123.     Chad Pratt spent approximately $75.00 in mitigation of the data breach to obtain
antivirus/monitoring services because he started to receive spam/phishing emails and/or phone calls
after the breach. Plaintiff must now take time and effort to mitigate the actual and potential impact of
the data breach on his everyday life by closely reviewing and monitoring phone calls, emails for
phishing attacks, case dockets to ensure that this  cases or cases do not reappear or get circulated to his
adversaries or their allies to further impugn his reputation or character.

124.    Hearing of any data breach or the state bar results in triggering PTSD type symptoms where he feels like he is having a nervous breakdown, including extreme worry, anger, distress, paranoia, feeling of being thrown into the middle of a corrupt system like fodder and retaliation by the state bar. He also is experiencing paranoia that his adversaries and former clients upon learning of these other confidential investigations will jump on the wagon to obtain money or benefits through the Client Security Fund system or him directly akin to extortion causing further money loss or further reputational harm.

125.    He has suffered a great loss of peace of mind.

## NZ

126.    Plaintiff, NZ, at all times mentioned herein relevant to this complaint is an attorney licensed by the State Bar of California and resident of Los Angeles County, California and was the subject of a confidential investigation filed with the State Bar of California.

127.    Plaintiff has no public record of discipline and sues under the pseudonym of "NZ" to protect his legitimate interests in his privacy.

128.    Plaintiff NZ is a solo practitioner protecting consumers in litigation and was investigated by State Bar of California which did not result in public discipline.

129.    A claim was filed with the State Bar on his behalf on March 14, 2022 prior to the filing of this lawsuit and was later denied by the State Bar. On or about September 20, 2022, another claim was filed with the State Bar in his own name.

130.    On May 18, 2022, NZ received a Notice of the State Bar data breach informing him that his identity was found on JudyRecords.com in relation to a confidential state bar investigation and it had "page views" resulting in a serious invasion of his privacy.

131.    Since the data breach, NZ has been inundated with multiple State Bar investigations, mainly frivolous complaints about which he is seriously concerned.

132.    Because the confidential state bar investigation letters from the State Bar concern matters that predated the breach, NZ is informed and believes and alleges thereon that the State Bar decided to begin the investigation process because NZ's confidential investigation had a page view on Judyrecords.com causing him harm.

133.    NZ seeks to preserve his reputation in California and filing of any public disciplinary charges would irreparably harm him.

134.    NZ has suffered a great loss of peace of mind.

**The Conspiracy**

135.    Plaintiffs and members of the class allege they were not only harmed by the data breach, but also by the later delay in notification and coverup of the nature and extent of the breach. Discovery is continuing into this area and plaintiffs reserve the right to amend the pleadings as the information is in the possession and control of the defendants.

136.    Plaintiffs and the members of the putative class claim that they were harmed by the Defendants Tyler Technologies, Rick Rankin, the State Bar of California, Does 4 through 10, Kevan Schwitzer, Jeremy Ward and E-Magined, statutory violations, and/or constitutional violations alleged herein and that Tyler Technologies, Rick Rankin and the State Bar of California, and Does 4 through 10 are each responsible for the harm because they were part of a conspiracy to commit the torts, statutory violations, and/or constitutional violations in order to cover up and obfuscate the nature and extent of the data breach leading to the delay in notification, if any at all to the plaintiffs and the members of the class.

137.    Defendants agreed orally or in writing or implied by the nature of the acts done to unreasonably delay notification of the data breach and mislead the plaintiffs and members of the class of the nature and extent of the breach, in an effort to coverup the larger data breach aka to commit a wrongful act as more fully described in this pleading.

138.    That Tyler Technologies, Rick Rankin and State Bar of California were aware that the Notifications were going to be worded with "page views" that "docket information" normally does not contain medical information from a §6007 proceeding or a social security number and that this breach was not contained to JudyRecords.com nor was it limited to State Bar of California records so Tyler Technologies and their clients wanted this breach covered up planned to commit a wrongful act as more fully described in this pleading in order to cover up the true nature and extent of the breach.

139.    Tyler Technologies, Rick Rankin and State Bar of California agreed with each other and with Jeremy Ward and Kevan Schweitzer and others and intended that the wrongful act(s) leading to the delayed notification and coverup of the nature and extent of the breach alleged to have been committed.

140.    Even if Defendants Rick Rankin, Tyler Technologies and/or the State Bar of California did not personally commit a wrongful act or did not know all of the details of the agreement or the identities of all of the other participants, Defendants, and each of them still conspired to commit a wrongful act of covering up the data breach as more fully described in the pleadings.

141.    Defendants' participation can be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators.

### Vicarious Liability of Tyler Technologies, Inc.

142.    Jeremy Ward and Doe Defendants 4 through 5 were Tyler Technologies employee and/or agent; and Jeremy Ward and Doe Defendants 4 through 5 were acting within the scope of its employment and/or agency when it harmed plaintiffs and members of the class making Tyler Technologies, Inc. jointly and severally liable.

### CLASS ALLEGATIONS

143.    Class Definition: Plaintiffs bring this suit as a class action on behalf of themselves and all other similarly situated persons as a member of a Class defined as follows:

> a.  All persons identified in the approximately 322,525 confidential aka "nonpublic" California State Bar records received by Kevan Schwitzer, the owner/operator of https://JudyRecords.com.

144.    Excluded from the Class are the Court, plaintiffs' counsel, Defendants, and their affiliates, subsidiaries, current or former employees, officers, directors, agents, representatives, and their family members.

145.    Numerosity:  The persons who comprise the Plaintiff Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Class members are so numerous and are dispersed throughout the state that joinder of all Class members is impracticable. Class members can be identified, *inter alia*, through records maintained by the Defendants.

146.    Common Questions of Fact and Law:  Nearly all factual, legal, statutory, declaratory, and injunctive relief issues that are raised in this Complaint are common to the Plaintiff Class and will apply uniformly to every member of the Plaintiff Class.

147.    Defendants have acted or refused to act on grounds generally applicable to the class.

148.    A class action is superior to other methods for the fast and efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent rulings in different courts. A class action regarding the issues in this case does not create any problems of manageability.

149.    The nature of notice to the proposed class required and/or contemplated would Defendant's list, when disclosed, would most likely be notice through email from Defendant's list which already identifies the complainants and attorney members along with their contact information, including email is the best practicable method possible. Also, mailing, media, the internet and/or other general notices are contemplated to ensure notice.

**FIRST CAUSE OF ACTION**

**Invasion of Privacy – Cal Constitution Art 1 § 1**

**(Plaintiff Jane Roe 2, Chad Pratt, NZ and those Similarly Situated Against Defendant State Bar of California)**

150.    Plaintiffs incorporate herein by reference paragraphs 1 through 149 above in this pleading as though fully set forth herein.

151.    First Defendant State Bar of California harmed plaintiffs' Chad Pratt, Jane Roe 2, NZ and members of the Class that are attorneys.

152. Defendant State Bar of California amassed a vast amount of approximately 370,489 State Bar investigations which the Office of Chief Trial Counsel initiated against its members of which 322,525 were confidential.

153. The 322,525 confidential State Bar investigations found on the internet in 2022 exceeded the State Bar of California's reported membership of 268,179 licensed attorneys in 2022.

154. Plaintiff is informed and believes and alleges thereon that the Office of Chief Trial Counsel had been overreaching in its authority with impunity by investigating its own members without probable cause collecting information on them that they could not otherwise obtain because approximately ninety-six percent (96%) of the State Bar members totaling 256,159 had one or more confidential State Bar investigation posted JudyRecords.com attached to their identity.

155. This overreach by Defendant State Bar of California of investigating approximately ninety-six percent (96%) of the membership and amassing over 322,525 confidential State Bar investigations in its database - discovered on or about February 24, 2022 as a result of the data breach - was  either a serious invasion of the members privacy or an egregious breach of the social norms underlying the members' privacy rights.

156. Plaintiffs and the class had a **legally protected privacy interest** to be free from government intrusion without a legitimate purpose for investigation such as a probable cause or a serious suspicion that the member had committed a disciplinable offense.

157.    Plaintiffs and the class had a **reasonable expectation of privacy** that any state bar investigation would not be instituted or maintained without a reasonable suspicion or probable cause under Bus & Prof Code § 6044 in order to conform to the members' constitutional rights.

158.    Defendant State Bar of California's conduct by investigating its members in mass without a legitimate purpose constituted **a serious invasion** of the plaintiffs' and Class members' privacy.

159. The State Bar use of its expansive power to investigate its own members without a legitimate purpose such as probable cause or a serious suspicion that the member had committed a disciplinable offense was and remains **an egregious breach of the social norms** underlying their privacy rights of which has not been seen since the days of McCarthyism (except for the most exceptional situations that do not apply here such as the FISA Court wherein national security interests to thwart terrorism are weighed).

160.    Investigations by the State Bar on such a massive scale was a**n egregious breach of the social norms** underlying the plaintiffs' and Class members' privacy rights that has not been seen since the days of McCarthyism and/or was an impact on the privacy of plaintiffs' and the Class privacy rights that is more than slight or trivial.

161.    To the extent that the confidential State Bar investigation may have been outside the statute of limitations, plaintiffs invoke the **delayed discovery rule** to toll the statute of limitations on the grounds that (1) plaintiffs did not discover the State Bar had a confidential investigation in its database or had even conducted a confidential State Bar investigation against the plaintiff or class; and (2) plaintiffs and the class were unable to have made earlier discovery of this fact on the grounds that State Bar uses its Rules of Procedure and Bus & Prof Code §6086.10 in refusing to divulge the existence of a confidential State Bar investigation to its own members.

162.    As a direct and proximate result, Plaintiffs have suffered a privacy injury and Defendant State Bar of California was a substantial factor in causing that harm.

163.    **Second**, Defendant State Bar of California, Rick Rankin and Tyler Technologies, Inc. harmed Plaintiff NZ and approximately 1,300 other  members of the Class who received notice that a confidential State Bar investigation was posted on JudyRecords.com and had evidence of a "page view" by Does 4 through 10.

164. Plaintiff NZ and the class comprising of approximately 1,300 State Bar members had a **legally protected privacy interest** in not having their identity revealed in connection with the approximately 1,034 confidential state bar investigations that were posted on the internet where other people had viewed them.

165.    Plaintiff NZ and the class of 1,300 had **a reasonable expectation of privacy** that any state bar investigation would remain confidential unless or until a notice of disciplinary charges was filed and that their identity until that time would remain confidential because it was part of common law and codified in Bus & Prof Code § 6086.1.

166.    Defendant State Bar of California's failure to either (1) hire an Information Technologies Director to perform reasonable security measures that would have discovered the security vulnerability; or (2) use reasonable security measures such as using encryption in order to prevent the public posting of plaintiffs and the members of the class identity on the internet in connection with a confidential state bar investigation was conduct that resulted in **an unjustified and serious invasion of privacy**.

167.    Defendant State Bar of California and Does 4 through 10's conduct, jointly and severally, constituted a serious invasion of privacy causing privacy harm.

168.    Plaintiffs are informed and believe that Defendant State Bar of California still has not encrypted or redacted the information before going back online and taken other standard industry security measures leaving plaintiffs at further risk warranting injunctive relief.

169.    As a result of the breach, Plaintiffs and members of the class suffered a privacy injury by having their identity posted on the internet in relation to a confidential state bar investigation and plaintiffs  and the class will continue to suffer harm in the future on the grounds they will forever e the targets of time consuming and annoying spam, phishing schemes and be burdened with spending time and financial resources to ensure that the information does not reappear again on the internet.

170.    Privacy damage to plaintiffs John Roe 1, John Roe 3, Jane Roe 2, Chad Pratt, NZ and all members of the Class resulted in general damages causing the plaintiffs great loss of peace of mind, humiliation, shame, mortification, and grievous mental pain and suffering.

171.    Reputation damage to plaintiff NZ and the other 1,300 class members resulted in general damages causing plaintiffs great humiliation, shame, mortification, and grievous mental pain and suffering, and tends to injure their personal and business reputation.

172.    Plaintiffs and class members must now take their time and effort to mitigate the actual and potential impact of the data breach out of their everyday lives by closely reviewing and monitoring phone calls and emails for phishing attacks and spam; by closely reviewing and monitoring public court docket databases such as Lexis, Westlaw, Justia. LegalEagle, Casetext, Google Scholar and the like to ensure that their identity associated with a confidential state bar investigation does not reappear on the internet or get circulated by his or her adversaries and their allies to impugn the reputation and character of the plaintiff or class member. Plaintiffs and the class members also must be ever vigilant against retaliatory actions against them by the state bar or others and their reputation has been irreparably harmed. Plaintiffs and the class members have spent money on antivirus services including but not limited to Norton LifeLock, McAfee, Experian Credit Monitoring and/or other brand credit and dark

web monitoring service to assist in monitoring the dark web, their credit reports for added docket activity and phishing scams.

173.    Plaintiffs have also experienced emotional harm of PTSD like symptoms whenever they hear of another data breach because this data breach has caused them paranoia, anger, severe distress and a mistrust of the integrity of the state bar or justice as alleged by the plaintiff's experiences above. Unlike other breaches, this one includes the risk of retaliation by adversaries and their allies or the state bar. It also includes a known irreparable harm to one's reputation affecting their professional livelihood.

174.    As such, Plaintiffs and the Class members are entitled to damages and injunctive relief against all Defendants.

175.    Plaintiffs and the Class are entitled to costs and reasonable attorney fees.

## SECOND CAUSE OF ACTION

### Negligence

### (All Plaintiffs against Defendants Tyler Technologies, Inc.)

### (Demurrer Overruled 01-12-2024)

176.    Plaintiffs incorporate herein by reference paragraphs 1 through 175 above in this pleading as though fully set forth herein.

177.    This cause of action is being brought on behalf of all Plaintiffs and all members of all Classes.

178.    Plaintiffs and all class members identity was posted on the internet in connection with a confidential state bar matter.

179.    Defendant Tyler Technologies was negligent for failure to have an or an adequate access control check on its product called Odyssey, the failure of which was below industry standards.

180.    An access control check is reasonable security measures to protect the access of personal or confidential information from third parties.

181.    Defendant Tyler Technologies as the software developer and the State Bar of California as the initiator of confidential investigations and collector of personal information owed plaintiffs and members of the class a duty to implement and maintain adequate security measures to safeguard plaintiffs' personal information and existence of state bar investigations consistent with public policy, state bar policies, statutes, and California privacy laws.

   a.    It was foreseeable that plaintiffs and the class would be harmed if Tyler Technologies' Odyssey failed to have an access control check because it sold the product to the State

Bar of California for its use in OCTC where confidential state bar investigations take
place.

b.  It was reasonably certain that the plaintiffs and members of the class suffered a privacy
injury without a proper access control check on Odyssey after the State Bar started to use
it.

c.  Defendant's conduct is closely connected to the injuries the plaintiffs suffered.

d.  Defendant Tyler Technologies bears some moral blame for failing to protect confidential
information by failing to have an access control check in place in the Odyssey platform
that it sold to the State Bar.

182.    It is foreseeable that the identity of the people under investigation, in addition to the identity of
the complainants or witnesses would reach the internet when there was no access control check
maintained on the Odyssey platform the state bar chose to purchase from Tyler Technologies.

183.    Tyler Technologies breached one more of the duties alleged above which was a proximate cause
of plaintiffs and the members of classes' harm.

184.    As a result of the breach, Plaintiffs and members of the class suffered a privacy injury by having
their identity posted on the internet in relation to a confidential state bar investigation and plaintiffs  and
the class will continue to suffer harm in the future on the grounds they will forever be the targets of time
consuming and annoying spam, phishing schemes and be burdened with spending time and financial
resources to ensure that the information does not reappear again on the internet.

185.    Plaintiffs and class members must now take their time and effort to mitigate the actual and
potential impact of the data breach out of their everyday lives by closely reviewing and monitoring
phone calls and emails for phishing attacks and spam; by closely reviewing and monitoring public court
docket databases such as Lexis, Westlaw, Justia. LegalEagle, Casetext, Google Scholar and the like to
ensure that their identity associated with a confidential state bar investigation does not reappear on the
internet or get circulated by his or her adversaries and their allies to impugn the reputation and character
of the plaintiff or class member. Plaintiffs and the class members also must be ever vigilant against
retaliatory actions against them by the state bar or others and their reputation has been irreparably
harmed. Plaintiffs and the class members have spent money on antivirus services including but not
limited to Norton LifeLock, McAfee, Experian Credit Monitoring and/or other brand credit and dark
web monitoring service to assist in monitoring the dark web, their credit reports for added docket
activity and phishing scams.

186.    Plaintiffs have also experienced emotional harm of PTSD like symptoms whenever they hear of another data breach because this data breach has caused them paranoia, anger, severe distress and a mistrust of the integrity of the state bar or justice as alleged by the plaintiff's experiences above. Unlike other breaches, this one includes the risk of retaliation by adversaries and their allies or the state bar. It also includes a known irreparable harm to one's reputation affecting their professional livelihood.

187.    As a direct and proximate cause, defendant Tyler Technologies was a substantial factor in causing the harm suffered by the plaintiffs and members of the class including but not limited to loss of money, lost time and increase in spam/phishing due to the breach.

188.    The harm caused by the defendant resulted in damage to the plaintiffs and members of the class in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### Govt Code §815.6 Liability – Negligence of Public Entity

### (All Plaintiffs and the Class against Defendant State Bar of California)
### (Demurrer Overruled 01-12-2024)

189.    Plaintiffs incorporate herein by reference paragraphs 1 through 188 above in this pleading as though fully set forth herein.

190.    This cause of action is being brought on behalf of all Plaintiffs and all members of the class.

191.    The identity of the plaintiffs and all members of the class was posted on the internet in connection with a confidential state bar investigation because the State Bar of California failed to use reasonable care in keeping this information confidential.

192.    Defendant State Bar of California was under a mandatory duty to:

    a.    Keep all State Bar investigations confidential unless and until public notice of disciplinary charges were filed pursuant to Bus. & Prof. Code §6086.1 and State Bar Rules of Procedure, Rules 2301 and 2302.

    b.    Keep all State Bar §6007 investigations confidential which contained medical information pursuant to Cal Civ Code §56.36, Welf & Inst Code §5330, Bus. & Prof. Code §6086.1, and State Bar Rules of Procedure, Rules 2301 and 2302.

    c.    Keep all the plaintiffs and class social security numbers confidential pursuant to Cal Civ Code §1798.85-89, Bus. & Prof. Code §6086.1, and State Bar Rules of Procedure, Rules 2301 and 2302.

193.    The enactment of these statutes and rules were designed to protect against the type of harm (privacy harm) suffered by the plaintiffs and members of the class.

194.    The State Bar is under no obligation to investigate any one member of the bar; however, it chose to do so, bringing about an additional duty to refrain from engaging in conduct that places the person under investigation or the witnesses and complainants at risk. Once the State Bar collects confidential information, it is not the rule of the bar or its officers to distribute that confidential information or allow it to be distributed onto the internet.

195.    The scope of the agency's powers to initiate confidential investigations and collect confidential information without notifying the member of the investigation or the contents thereof is broad.

196.    But the scope of the bar's authority, when it undertakes to collect this information and begin an investigation obligates the bar to then make sure such confidential information or investigation it initiates is securely stored away from public view which plaintiffs would expect to be consistent with the State Bar's own Ethics Opinion on this issue No. 20-0004 published on or about August 10, 2021.

197.    Defendant State Bar of California as the initiator of confidential investigations and collector of personal information owed plaintiffs and members of the class a duty to implement and maintain adequate security measures to safeguard plaintiffs' personal information and existence of nonpublic state bar investigations consistent with public policy, state bar policies, statutes, and California privacy laws.

     a.   It was foreseeable that plaintiffs and the class would be harmed if the State Bar of California failed to use reasonable care in ensuring confidential state bar investigations were securely stored in a way third parties could not access them or if they did could not read them because they were encrypted.

     b.   It was reasonably certain that the plaintiffs and members of the class would suffer a privacy injury if those confidential investigations were made public.

     c.   Defendants' conduct is closely connected to the injuries the plaintiffs suffered.

     d.   Defendant State Bar of California bears some moral blame for failing to protect the confidential information it collected and confidential investigations it instituted on persons who likely did not even know there was a State Bar investigation instituted and continues to not know the details, nature or extent of those investigations.

198.    It is foreseeable that the identity of the people under investigation, in addition to the identity of the complainants or witnesses would reach the internet when there was no access control check maintained on the Odyssey platform the state bar chose to purchase from Tyler Technologies.

199.    The State Bar breached one more of the duties alleged above which was a proximate cause of plaintiffs and the members of classes' harm.

200.    As a result of the breach, Plaintiffs and members of the class suffered a privacy injury by having confidential investigation or other matter held by the state bar posted on the internet along with their identity. Plaintiffs will continue to suffer harm in the future on the grounds they will now be burdened with ensuring that the information does not reappear on the internet.

201.    As a direct and proximate cause, Defendant State Bar of California was a substantial factor in causing the harm suffered by the plaintiffs and members of the class including but not limited to loss of money, lost time and increase in spam/phishing due to the breach.

202.    As a result of the breach, Plaintiffs and members of the class suffered a privacy injury by having their identity posted on the internet in relation to a confidential state bar investigation and plaintiffs  and the class will continue to suffer harm in the future on the grounds they will forever be the targets of time consuming and annoying spam, phishing schemes and be burdened with spending time and financial resources to ensure that the information does not reappear again on the internet.

203.    Plaintiffs and class members must now take their time and effort to mitigate the actual and potential impact of the data breach out of their everyday lives by closely reviewing and monitoring phone calls and emails for phishing attacks and spam; by closely reviewing and monitoring public court docket databases such as Lexis, Westlaw, Justia. LegalEagle, Casetext, Google Scholar and the like to ensure that their identity associated with a confidential state bar investigation does not reappear on the internet or get circulated by his or her adversaries and their allies to impugn the reputation and character of the plaintiff or class member. Plaintiffs and the class members also must be ever vigilant against retaliatory actions against them by the state bar or others and their reputation has been irreparably harmed. Plaintiffs and the class members have spent money on antivirus services to assist in monitoring the dark web, their credit reports for added docket activity and phishing scams.

204.    The harm caused by the defendant resulted in damage to the plaintiffs and members of the class in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### Govt Code §815.4 Liability

### (All Plaintiffs against Defendant State Bar of California)

205.    Plaintiffs incorporate herein by reference paragraphs 1 through 204 above, paragraphs 215 through 247 below in this pleading as though fully set forth herein.

206.    This cause of action is being brought on behalf of all Plaintiffs and all members of the class.

207.    Defendant State Bar of California was under a mandatory duty to keep all State Bar investigations confidential unless and until public notice of disciplinary charges were filed pursuant to Bus. & Prof. Code §6086.1 and State Bar Rules of Procedure, Rules 2301 and 2302.

208.    The enactment was designed to protect against the type of harm (privacy harm) suffered by the plaintiffs and members of the class.

209.    Defendant Rick Rankin was an independent contractor hired by the State Bar of California at an annual salary of approximately $126,000.00 to act as the interim Information Technologies Director and was under a duty to maintain reasonable security measures at the State Bar yet Defendant failed to exercise reasonable care in preventing the data breach.

210.    Defendant Rick Rankin was under a duty to make sure that industry standards were employed by the State Bar and he breached his duty when the bar failed maintain cybersecurity industry standards such as continuous vulnerability management, conducting regular penetration testing and other security testing, encryption of confidential records to ensure things like access control checks were in place, and if not, the data would not be readable if posted on the internet.

211.    He also failed to ensure the State Bar deleted old confidential investigations that did not lead to public discipline. Defendant Rick Rankin also failed to ensure the state bar adopted and enforced retention and destruction policies which led to approximately 322,525 confidential state bar investigations that had not resulted in public discipline to be scraped and/or harvested and posted onto the internet.

212.    Failure to implement these reasonable security measures (CIS Controls) proximately led to the data breach alleged herein.

213.    Defendant Rick Rankin's unreasonable care was a substantial factor in the State Bar of California's breach of this mandatory duty and was the direct and proximate cause of injury suffered by the plaintiffs' and members of the class such as privacy harm, mitigation costs, and loss of time.

214.    As a result of the breach, Plaintiffs and members of the class suffered a privacy injury by having confidential investigation or other matter held by the state bar posted on the internet along with their identity. Plaintiffs will continue to suffer harm in the future on the grounds they will now be burdened with ensuring that the information does not reappear on the internet.

215.    As a further direct and proximate cause, plaintiffs and the class are left to speculate how many of those confidential state bar investigations were they the target of considering there were more confidential state bar investigations posted on the internet than active members of the bar and how invasive the state bar has been in the members affairs leading to anxiety, stress and fear that this could land in the hands of their adversaries or their allies causing future harm to their career or reputation.

216.    The State Bar of California is liable for Rick Rankin's failure to use reasonable care under Govt Code §815.4.

## **FIFTH CAUSE OF ACTION**

### **Negligence**

### **(All Plaintiffs against All Defendants)**

217.    Plaintiffs incorporate herein by reference paragraphs 1 through 216 above in this pleading as though fully set forth herein.

218.    This cause of action is being brought on behalf of all Plaintiffs and all members of the class.

219.    **Tyler Technologies, Inc.:** Defendant Tyler Technologies was under a duty to build and maintain its Odyssey case management system including the Odyssey Portal with reasonable security measures in place, including adequate access control so only authorized users could gain access to confidential State Bar investigations from the State Bar's database. .

220.    On or about February 2016, the California Department of Justice defined what "constitutes a lack of reasonable security" to include the CIS Controls published by the Center for Internet Security's Critical Security Controls (CIS Controls) in the California Data Breach Report 2012-2015 (Feb. 2016) at p. v (available online at https://oag.ca.gov/privacy/databreach/list). These CIS Controls (available at https://www.cisecurity.org/controls) include:

    a.   Control 01: Inventory and Control of Enterprise Assets

    b.   Control 03: Data Protection

    c.   Control 06: Access Control Management

    d.   Control 07: Continuous Vulnerability Management

    e.   Control 14: Security Awareness and Skills Training

  f. Control 15: Service Provider Management

  g. Control 16: Application Software Security

  h. Control 17: Incident Response Management

  i. Control 18: Penetration Testing

221. Defendant **Tyler Technologies** breached its duty of care by failing to meet industry data security standards (CIS Controls) in creating and maintaining Odyssey Case Management system including the Odyssey Portal.

222. As a result of Defendant Tyler Technologies' breach, the plaintiffs and members of the Class were harmed because 322,525 confidential State Bar investigations that included the plaintiffs' and Class members' identities were exfiltrated, harvested and/or scraped by judyrecords.com in or about October 10, 2021 and placed on the internet.

223. <u>State Bar of California:</u> Defendant State Bar of California also owed the plaintiffs and all members of the class a duty to keep the state bar investigations confidential unless and until formal public disciplinary charges were filed and to employ an Information Technologies Director that would adequately perform reasonable security measures to maintain the confidentiality of these records.

224. Defendant State Bar of California breached its duty in violation of Cal. Bus. & Prof. Code § 6086.1, Rule 2301, Rule 2302 and/or Cal Const Art. 1 § 1 because the confidential state bar investigations were released onto the internet with the identification of the plaintiffs attached to them as more fully alleged above.

225. Defendant State Bar of California also breached its duty to employ an Information Technology Director with the education, experience and skillset to perform reasonable security measures including industry standard CIS Controls by employing Defendant Rick Rankin of RPR Impact.

226. Defendant State Bar of California was also under a duty to notify the plaintiffs promptly of the data breach and provide them with a toolset to mitigate any further harm.

227. The California Department of Justice has defined prompt notice of a data breach to mean within 10 days.

228. The Defendant State Bar of California breached its duty to promptly notify the plaintiffs and class members of the data breach by delaying notification until May 2022 (nearly 3 months later).

229. <u>Rick Rankin:</u> Defendant Rick Rankin, as the interim Information Technologies Director of the State Bar of California was under a duty to implement reasonable security measures to safeguard the 322,525 confidential State Bar investigations the State Bar Office of Chief Trial Counsel had amassed

and/or adequately supervise, train and employ those who could implement the reasonable security measure at the State Bar.

230.    On or about February 2016, the California Department of Justice defined what "constitutes a lack of reasonable security" to include the CIS Controls published by the Center for Internet Security's Critical Security Controls (CIS Controls), NISTR 800-88r1, NISTR SSDF, OWASP, and other cybersecurity best practices outlined by SAFECode, the Software Alliance, OWASP, the Council of Registered Security Testers (CREST), and the PCI Security Standards Council. These CIS Controls (available at https://www.cisecurity.org/controls) include:

    a.  Control 01: Inventory and Control of Enterprise Assets

    b.  Control 03: Data Protection

    c.  Control 06: Access Control Management

    d.  Control 07: Continuous Vulnerability Management

    e.  Control 14: Security Awareness and Skills Training

    f.  Control 15: Service Provider Management

    g.  Control 16: Application Software Security

    h.  Control 17: Incident Response Management

    i.  Control 18: Penetration Testing

231.    Defendant Rick Rankin breached his duty by failing to perform reasonable security procedures (or employing, supervising and adequately training the employees within the IT Department to do so) as outlined by the Center for Internet Security's Critical Security Controls (CIS Controls) and other industry standards listed above.

232.    Defendants Tyler Technologies, Inc., the State Bar of California, and Rick Rankin, and each of them, jointly and severally, were a substantial factor in causing the plaintiffs and Class members' harm leading to the failure to discover a security vulnerability in the Odyssey case management system, including the Odyssey Portal that resulted in the harvesting, scraping, exfiltration of 322,525 confidential state bar investigations that were placed on JudyRecords.com.

233.    The plaintiffs' injuries resulted from an occurrence, the nature of which the statute or regulation or industry data security standard was designed to prevent (designed to prevent a privacy injury).

234.    The plaintiffs and members of the class were people who suffered the injury that the statute was designed to protect.

235.    As a direct and proximate cause of Defendants' breaches, the plaintiffs and all class members suffered general damages of emotional distress, including but not limited to, fear, anxiety, paranoia, shame, loss of sleep, depression, and spending time and expense trying to figure out what they could do to protect themselves, their reputation and/or their health wellbeing.

236.    Privacy damage to plaintiffs John Roe 1, John Roe 3, Jane Roe 2, Chad Pratt, NZ and all members of the Class resulted in general damages causing the plaintiffs great loss of peace of mind, humiliation, shame, mortification, and grievous mental pain and suffering.

237.    As a result of the breach, Plaintiffs and members of the class suffered general damages in the form of a privacy injury by having their identity posted on the internet in relation to a confidential state bar investigation and plaintiffs  and the class will continue to suffer harm in the future on the grounds they will forever be the targets of time consuming and annoying spam, phishing schemes and be burdened with spending time and financial resources to ensure that the information does not reappear again on the internet.

238.    Plaintiffs and class members must now take their time and effort to mitigate the actual and potential impact of the data breach out of their everyday lives by closely reviewing and monitoring phone calls and emails for phishing attacks and spam; by closely reviewing and monitoring public court docket databases such as Lexis, Westlaw, Justia. LegalEagle, Casetext, Google Scholar and the like to ensure that their identity associated with a confidential state bar investigation does not reappear on the internet or get circulated by his or her adversaries and their allies to impugn the reputation and character of the plaintiff or class member. Plaintiffs and the class members also must be ever vigilant against retaliatory actions against them by the state bar or others and their reputation has been irreparably harmed. Plaintiffs and the class members have spent money on antivirus services to assist in monitoring the dark web, their credit reports for added docket activity and phishing scams.

239.    Plaintiffs and all class members are entitled to actual damages and general damages against defendants Tyler Technologies, Inc., Rick Rankin, and the State Bar of California, jointly and severally.

## SIXTH CAUSE OF ACTION

### Deceit

**(All Plaintiffs against Defendant Tyler Technologies,  and Does 4 through 10)**

240.    Plaintiffs incorporate herein by reference paragraphs 1 through 239; and paragraphs 260 through 265 below in this pleading as though fully set forth herein.

241.    Jeremy Ward, at all times mentioned in this cause of action, was employed by Defendant Tyler Technologies, Inc. as the Senior Director of Systems Engineering and was working within his scope of employment at Tyler Technologies, Inc.

242.    Defendant Tyler Technologies, Inc. was in a relationship wherein it an owed a duty to the plaintiffs and all class members to disclose a material fact about the data breach on the grounds that Tyler Technologies, Inc.'s lack of access control check caused the data breach and the plaintiffs and all members of the class were victims of the data breach.

243.    Defendant Tyler Technologies, Inc. acquired information about the data breach that could have mitigated further harm to the plaintiffs but failed to disclose it to the plaintiffs and all members of the Class.

244.    Defendant Tyler Technologies, Inc. intentionally failed to disclose certain facts to the plaintiffs; or disclosed some facts to the plaintiffs through the State Bar's Notice but intentionally failed to disclose other facts listed below, making the disclosure deceptive; or *defendant* intentionally failed to disclose certain facts that were known only to it and that plaintiffs could not have discovered; or defendant prevented plaintiffs from discovering certain facts to wit:

      a.    On March 9, 2022 Jeremy Ward was aware that Tyler Technologies was holding onto the California clients, including the State Bar of California because Tyler Technologies was going to deal with them as a single bucket and he memorialized that intention in an email he wrote to Kevan Schweitzer.

      b.    On March 11, 2022 Jeremy Ward wrote another email to Kevan Schweitzer disclosing that Tyler Technologies, Inc. was "taking an extremely holistic approach … and asked Kevan Schweitzer to prohibit searches on JudyRecords.com for another week because Tyler Technologies decided it could "avoid other issues coming up and having to discuss notifications for other records." Jeremy Ward then asked Kevan Schweitzer to cover up the breaches by asking "Would you be willing to make Odyssey Portal records not searchable for the next two weeks."

      c.    On March 18, 2022 Jeremy Ward wrote another email to Kevan Schweitzer disclosing that Tyler Technologies has "notices that some of the pages" from JudyRecords.com "are being indexed by Google (and presumably other search engines) and as such were concerned that "some of the non-public cases might have been indexed and are still visible." Kevan Schweitzer replied he did not index any of his pages to Google except

for appellate and supreme court opinions. As such, Tyler Technologies knew or had reason to know that another third party other than JudyRecords.com had also exfiltrated, scraped or harvested cases that were stored or accessible through the Odyssey portal including confidential State Bar Investigations.

245. Defendant Tyler Technologies, Inc. owed a duty to plaintiffs and the members of the class to inform them that (1) the notices being sent to the victims of the State Bar breach was going to be delayed (2) the delay was so that Tyler Technologies could help its other clients avoid sending out notices of the data breach of their case files; and (2) there was some evidence that another party had accessed the confidential State Bar investigation other than Kevan Schweitzer who was operating JudyRecords.com because pages from JudyRecords.com were found indexed on Google so just because there was a "page view" on JudyRecords.com did not mean a third party did not actually view the confidential state bar investigation.

246. Plaintiffs and all members of the Class did not know of the concealed fact[s] alleged above.

247. Defendant Tyler Technologies, Inc. intended to deceive plaintiffs and the members of the Class by Concealing the facts alleged above.

248. Had the omitted information been disclosed, plaintiffs and all members of the class reasonably would have behaved differently by taking the data breach more seriously.

249. Plaintiffs and all members of the Class were harmed.

250. Defendant Tyler Technologies, Inc.'s concealment was a substantial factor in causing plaintiffs' harm.

251. By disclosing only some of the information, Defendants conduct was deceitful.

252. Defendants Tyler Technologies, Rick Rankin and Does 4 through 10 intended that plaintiffs and the members of the putative class rely on these representations in order to minimize and downplay the nature and extent of the data breach.

253. Plaintiffs and the members of the putative class reasonably relied on Tyler Technologies, representation and many did little or nothing thinking that these records were only on an obscure website and permanently deleted never to see the light of day or failed to get the notice because it came from an obscure website email address.

254. Plaintiffs and the members of the putative class are being harmed because once information is on the internet it is never really permanently deleted. It can reappear online by any third party that may

have shared or downloaded it. It can be on the dark web or indexed by Google or appear on harder to reach paid databases like Lexis, Westlaw, or credit reporting agencies.

255.    Plaintiffs and the members of the putative class's reliance on Tyler Technologies, representation is a substantial factor in causing them harm.

256.    Privacy damage to plaintiffs John Roe 1, John Roe 3, Jane Roe 2, Chad Pratt, NZ and all members of the Class resulted in general damages causing the plaintiffs great loss of peace of mind, humiliation, shame, mortification, and grievous mental pain and suffering.

257.    Reputation damage to plaintiff NZ and the other 1,300 class members resulted in general damages causing plaintiffs great humiliation, shame, mortification, and grievous mental pain and suffering, and tends to injure their personal and business reputation.

258.    Plaintiffs and class members must now spend money to mitigate the risk of loss and take their time and effort to mitigate the actual and potential impact of the data breach out of their everyday lives by closely reviewing and monitoring phone calls and emails for phishing attacks and spam; by closely reviewing and monitoring public court docket databases such as Lexis, Westlaw, Justia. LegalEagle, Casetext, Google Scholar and the like to ensure that their identity associated with a confidential state bar investigation does not reappear on the internet or get circulated by his or her adversaries and their allies to impugn the reputation and character of the plaintiff or class member. Plaintiffs and the class members also must be ever vigilant against retaliatory actions against them by the state bar or others and their reputation has been irreparably harmed. Plaintiffs and the class members have spent money on antivirus services to assist in monitoring the dark web, their credit reports for added docket activity and phishing scams.

259.    Jeremy Ward was a controlling manager of defendant Tyler Technologies, Inc. and his actions amounted to actual fraud, corruption and/or actual malice entitling plaintiffs and members of the Class to an award of punitive damages as more fully alleged below.

## **EXEMPLARY DAMAGES**

260.    Defendants Tyler Technologies, Inc. and Does 4 through 10 conduct is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

261.    Defendants Tyler Technologies, Inc., by and through Jeremy Ward, and Does 4 through 10 intentionally misrepresented or concealed a material fact as specifically alleged above entitling plaintiffs and members of the class to punitive damages.

262.     The conduct constituting malice, oppression, or fraud by Jeremy Ward, Kevan Schweitzer, and Does 4 through 10, was authorized by one or more officers, directors, or managing agents of Tyler Technologies, Inc.

263.     Alternatively, one or more officers, directors, or managing agents of Tyler Technologies, Inc. knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct from Jeremy Ward and Kevan Schweitzer after it occurred.

264.     The aforementioned conduct of Defendants Tyler Technologies, Inc. and Does 4 through 10, was malicious and/or an intentional misrepresentation, deceit, or concealment of a material fact or with the intention on the part of the Defendants Tyler Technologies, Inc. and Does 4 through 10 to thereby deprive plaintiffs of property or legal rights or otherwise causing injury.

265.     The aforementioned conduct of Defendants Tyler Technologies, Inc. and Does 4 through 10 was despicable conduct that subjected Plaintiffs and the members of the class to a cruel and unjust hardship in conscious disregard of Plaintiffs and class members privacy rights and right to know, so as to justify an award of exemplary and punitive damages.

## **PRAYER FOR RELIEF**

**First Cause of Action**

    1.   Damages;

    2.   Injunctive relief;

    3.   Costs;

    4.   Attorney fees; and

    5.   Any further relief the court would deem appropriate and just.

**Second, Third, Fourth, and Fifth Causes of Action**

    1.   Actual Damages;

    2.   General Damages;

    3.   Costs; and

    4.   Any further relief the court would deem appropriate and just.

**Sixth Cause of Action**

    1.   Actual Damages;

    2.   General Damages;

    3.   Punitive Damages,

    4.   Costs; and

5. Any further relief the court would deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for all legal claims.

Dated:  February 1, 2024

Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT
/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs, John Roe 1,John Roe 3,
Jane Roe 2, Chad Pratt, and NZ *on behalf of
themselves and all others similarly situated.*

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 1968 S Coast Hwy #3960, Laguna Beach, CA 92651. On February 1, 2024, I served a copy of the following document(s) described as:
**FOURTH AMENDED CLASS ACTION COMPLAINT**
SEE ELECTRONIC SERVICE LIST ATTACHED

**[x] BY E-SERVE and EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth per CCP 1010.6.
**[ ] BY MAIL–** I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as regular US Mail at Santa Ana, California, to the aforementioned addressee(s).
 I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: February 1, 2024

                                    _/s/_ Lenore Albert_____
                                    Lenore Albert

**38**
Fourth Amended Class Action Complaint
*Roe v The State Bar of California, et al.*          30-2022-01250695-CU-AT-CXC

## ELECTRONIC SERVICE LIST

**For Defendants State Bar of California**
David M. Liu
**FREEMAN MATHIS & GARY, LLP**
3030 Old Ranch Parkway | Suite 200 | Seal Beach, CA 90740-2713
D: 562-245-8405 | C: 562-682-8062
David.Liu@fmglaw.com

ROBERT G. RETANA (148677) Deputy General Counsel
SUZANNE C. GRANDT (304794)
Assistant General Counsel
**OFFICE OF GENERAL COUNSEL**
**THE STATE BAR OF CALIFORNIA**
180 Howard Street
San Francisco, CA 94105-1639 Telephone: 415-538-2388; Facsimile: 415-538-2517
Email: suzanne.grandt@calbar.ca.gov

**For Defendant Rick Rankin**
**JEFFER MANGELS BUTLER & MITCHELL LLP**
MICHAEL A. GOLD (Bar No. 90667)
*mgold@jmbm.com*
JUSTIN ANDERSON (Bar No. 328969)
*Janderson@jmbm.com*
1900 Avenue of the Stars, 7th Floor.
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567
**For Defendant Tyler Technologies, Inc.**
**K&L GATES LLP**
Beth Petronio
Christina N. Goodrich (SBN 261722) christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564) zach.timm@klgates.com
10100 Santa Monica Boulevard Seventh Floor
Los Angeles, California 90067
Telephone: 310.552.5000 Facsimile: 310.552.5001