FILED

APR 2 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# ORDERED PUBLISHED

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LENORE L. ALBERT-SHERIDAN,<br>Debtor. | BAP No. CC-23-1024-SFL<br><br>Bk. No. 8:18-bk-10548-SC |
| LENORE L. ALBERT-SHERIDAN, dba Law Offices of Lenore Albert<br>Appellant,<br>v.<br>STATE BAR OF CALIFORNIA; MARICRUZ FARFAN; BRANDON TADY; ALEX HACKERT; PAUL BERNARDINO; HON. YVETTE ROLAND,<br>Appellees. | Adv. No. 8:18-ap-01065-SC<br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

APPEARANCES

Appellant Lenore L. Albert-Sheridan argued pro se; Suzanne C. Grandt argued for appellees.

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

Opinion by Judge Spraker
Concurrence by Judge Faris

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

Lenore L. Albert-Sheridan ("Albert") sued the State Bar of California ("State Bar"), its employees, and its representatives on various claims relating to her suspension from the practice of law. Her claims included violations of the automatic stay under § 362[1] and violations of the discharge injunction under § 524. The bankruptcy court dismissed some of Albert's claims and granted partial summary judgment as to others. Ultimately, the court held trial on the narrow remainder of her claims and entered judgment in Albert's favor for $21,627.48. Albert appeals this judgment together with the dismissal and summary judgment rulings.

This appeal is but one chapter in the drawn-out litigation between Albert and the State Bar. The State Bar suspended Albert's law license and ordered that, after a minimum period of suspension, she could reinstate her license by paying certain discovery sanctions, restitution, and costs. After Albert filed a chapter 13 bankruptcy petition, the State Bar eventually (but tardily) reinstated her license. When the bankruptcy court converted Albert's case to chapter 7, the State Bar suspended her again.

In earlier chapters of the litigation saga, Albert established that her obligations to pay discovery sanctions, restitution, and the amounts owed

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

to the State Bar's Client Security Fund ("CSF") were dischargeable. Prior chapters also established that the disciplinary costs assessed against her in her disciplinary proceedings were nondischargeable in a chapter 7 case under § 523(a)(7).

In the current chapter, Albert reprises these claims and argues that the State Bar violated the automatic stay while Albert was in bankruptcy. The bankruptcy court rejected these claims. We hold that the court was correct in most respects but erred in others. The disciplinary proceedings were valid regulatory proceedings excepted from the automatic stay by § 362(b)(4). But Albert originally filed her bankruptcy in chapter 13, in which all debts owed to the State Bar were dischargeable under § 1328(a). The State Bar's efforts to collect discovery sanctions and disciplinary costs violated the stay during this period. Upon conversion of her case to chapter 7, the disciplinary costs became nondischargeable as a matter of law. Yet, § 362(a)(6) still precluded the State Bar from taking any further actions to collect those costs during the pendency of her bankruptcy case. We hold that the bankruptcy court erred in dismissing Albert's claims that the State Bar's alleged collection efforts violated the automatic stay and remand for further proceedings on those claims.

Upon the entry of the discharge, the State Bar was enjoined from collecting any discovery sanctions, restitution, and the CSF obligation. It was not enjoined, however, from collecting the outstanding disciplinary costs or reinstating her suspension until she paid such costs. The State Bar

3

was entitled to suspend her license because she did not pay the nondischargeable disciplinary costs. It is true that the State Bar also suspended her license because she did not pay discharged debts and that this violated the discharge injunction. But Albert failed to plausibly allege or credibly prove that she suffered additional compensable injury because the State Bar suspended her license post-discharge for both proper and improper reasons.

Moreover, the State Bar had an objectively reasonable basis to believe that it legally could pursue the discovery sanctions, the client restitution, and the CSF debt after Albert received her discharge. At the time, this Panel had ruled, based on a Supreme Court decision, that these types of debts were nondischargeable. The Ninth Circuit later reversed our decision, but it was objectively reasonable for the State Bar to rely on decisions, including ours, holding that such debts were nondischargeable in the meantime. This means that the State Bar was not liable for contempt of the discharge injunction.

We find no error in the court's disposition on summary judgment or at trial. However, mindful of the stringent legal standards governing motions to dismiss, we hold that the court erred in dismissing Albert's claims for violation of the automatic stay under Civil Rule 12(b)(6)—but only as to her allegations that the State Bar failed to reinstate her license timely while she was in chapter 13 and reimposed the suspension after the conversion to chapter 7. We also hold that the bankruptcy court erred

4

when it held that it lacked subject matter jurisdiction of Albert's claims under the California constitution. We, therefore, AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this decision.

## FACTS[2]

### A. The disciplinary proceedings leading to the 2017 Suspension Order.

Albert is an attorney licensed to practice in California. In 2015 and 2016, the State Bar commenced disciplinary proceedings against Albert by filing Notices of Disciplinary Charges ("NDCs") in the State Bar Court alleging that she had failed to (1) cooperate with its investigations, (2) pay court-ordered discovery sanctions, (3) perform competent legal services, (4) account for client funds, and (5) refund unearned attorney's fees.[3]

On June 30, 2017, the Review Department of the State Bar Court found that Albert had received a fair trial, failed to cooperate with the investigation of her misconduct, and failed to comply with three discovery sanctions orders totaling $5,738 ("2017 Discovery Sanctions"). In December 2017, the California Supreme Court entered an order ("2017 Suspension Order") in which it adopted most of the State Bar's recommendations and

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] For a description of the State Bar disciplinary process, see *Hirsh v. Justices of Supreme Court of California*, 67 F.3d 708, 711–12 (9th Cir. 1995).

suspended Albert from the practice of law for at least 30 days, but continuing until she paid the 2017 Discovery Sanctions, as well as $18,714 in disciplinary costs awarded to the State Bar under California Business and Professions Code § 6086.10(b)(3) ("Disciplinary Costs").

**B.  Albert's bankruptcy and the first adversary proceeding against the State Bar.**

Albert did not immediately pay either the 2017 Discovery Sanctions or the Disciplinary Costs. Instead, on February 20, 2018, she filed a chapter 13 petition.

In March 2018, she moved for sanctions against the State Bar and others. She claimed that the State Bar violated the automatic stay when it refused to terminate her suspension and reinstate her as a licensed California attorney. She claimed that the continuation of her suspension was an impermissible attempt to collect dischargeable debts during the pendency of her bankruptcy stay.

The State Bar opposed the sanctions motion. It contended that it was acting under its police or regulatory power and not merely enforcing a monetary obligation. It further maintained that Albert was not entitled to injunctive relief and that she had not demonstrated that the alleged stay violation had injured her.

In April 2018, before the bankruptcy court held a hearing on the sanctions motion, Albert filed her first adversary complaint ("First Adversary") against the State Bar and several of its employees. Among

6

other things, she alleged that her debts to the State Bar were dischargeable and fell outside the scope of § 523(a)(7) and that the State Bar violated her rights under § 525(a)'s anti-discrimination provision.

After a hearing on May 3, 2018, the bankruptcy court deferred a final ruling on the motion but noted that the State Bar's "30-day actual suspension of Debtor's license to practice law as determined by the California Supreme Court commenced on February 14, 2018 and ran through and including March 16, 2018." The court observed that this "portion of the suspension [was] not based on condition of any payment of sanctions or disciplinary costs." The court further noted: "[w]hether the suspension continues past March 16, 2018 based on certain reinstatement conditions is the subject of an adversary proceeding which will be adjudicated in due course."

Four days later, on May 7, 2018, the State Bar moved to dismiss the First Adversary. The State Bar argued that the 2017 Discovery Sanctions and Disciplinary Costs were nondischargeable debts under § 523(a)(7) and that it properly continued Albert's suspension after the initial 30 days based on her failure to pay those debts. The State Bar also sought to dismiss Albert's other claims for relief.

While its motion to dismiss was pending, on June 1, 2018, the State Bar reinstated Albert effective as of March 16, 2018. It did not explain why it changed its position.

Shortly thereafter, on June 26, 2018, the bankruptcy court converted

the bankruptcy case to chapter 7. The State Bar then reimposed Albert's suspension pending payment of the 2017 Discovery Sanctions and Disciplinary Costs.

On August 9, 2018, the bankruptcy court granted the defendants' motion to dismiss the First Adversary. Albert appealed. This Panel affirmed the dismissal. We interpreted the Supreme Court's decision in *Kelly v. Robinson*, 479 U.S. 36 (1986), to mean that the 2017 Discovery Sanctions and Disciplinary Costs were nondischargeable under § 523(a)(7). *Albert-Sheridan v. State Bar (In re Albert-Sheridan*), 2019 WL 1594012, at *5-7 (9th Cir. BAP Apr. 11, 2019) ("*Albert I*"), *aff'd in part, rev'd in part and remanded,* 960 F.3d 1188 (9th Cir. 2020) ("*Albert II*"), *and aff'd,* 808 F. App'x 565 (9th Cir. Jun. 10, 2020) ("*Albert III*"). We further held that the State Bar could condition the reinstatement of Albert's law license on payment of nondischargeable debts without violating § 525. *Id.* at *8. We also affirmed the dismissal of Albert's other causes of action.

## C.   The Ninth Circuit's decisions.

Albert appealed the Panel's decision to the Ninth Circuit Court of Appeals. This resulted in two decisions. In an unpublished decision, the Ninth Circuit affirmed the dismissal of all the non-bankruptcy claims for relief. *Albert III*, 808 F. App'x at 566. It held that most of the non-bankruptcy claims depended on the dischargeability of both the Disciplinary Costs and the 2017 Discovery Sanctions. As the Ninth Circuit observed, this was a false premise because the Disciplinary Costs were

8

nondischargeable, and the State Bar could properly condition Albert's reinstatement on payment of the Disciplinary Costs. *Id.* at 566-67.

Separately, in a published decision, the Ninth Circuit held that the 2017 Discovery Sanctions were compensatory rather than punitive in nature and were not excepted from discharge under § 523(a)(7). *Albert II*, 960 F.3d at 1188, 1195-96.

## D.    Albert's discharge and issuance of a new suspension order.

In the meantime, on February 26, 2019, Albert received her chapter 7 discharge.

In January 2019, between this Panel's decision in *Albert I* and the Ninth Circuit's decisions in *Albert II* and *III*, the State Bar Court issued another decision ("2019 Decision"), and in July 2019 the California Supreme Court issued a second disciplinary order against Albert ("2019 Suspension Order"). The misconduct covered by this order was separate from that covered by the 2017 Suspension Order. It mostly concerned Albert's retention by Dr. Nira Schwartz-Woods as patent litigation counsel between 2014 and 2016. But it also addressed $875 in unpaid discovery sanctions imposed against Albert in 2015 in a lawsuit she prosecuted as plaintiffs' counsel against Fin City Foods, Inc. ("Fin City Sanction"). Between 2016 and 2018, the State Bar issued multiple NDCs regarding these matters and continued its investigation and prosecution of these disciplinary charges while Albert's bankruptcy case was pending. On January 9, 2019, prior to Albert's discharge, the State Bar Court found that

9

she willfully failed to: (1) perform her representation of Dr. Woods with competence; (2) account for client funds; (3) refund $20,000 in unearned fees; (4) cooperate in the State Bar's disciplinary investigation; (5) release the client's file; and (6) obey the sanctions order in the Fin City Foods litigation.

Based on these findings of misconduct, the California Supreme Court issued the 2019 Suspension Order. It placed Albert on probation for two years and suspended her from practice for a minimum of six months. The suspension would continue until she repaid the $20,000 retainer fee plus interest to Dr. Woods ("Woods Restitution"), the Fin City Sanction, and $18,841.90 in further Disciplinary Costs.[4]

Between 2019 and 2021, Albert and the State Bar communicated about the terms and status of her probation and the amounts she needed to pay to be eligible for reinstatement. Some of these communications took the form of quarterly probation reports the State Bar required Albert to fill out and the State Bar's responses to her efforts. The State Bar also issued additional NDCs and sent Albert emails in response to her inquiries regarding what she needed to pay to be reinstated ("Alleged Email Violations").

---

[4] In December 2020, the State Bar paid Dr. Woods $20,000 from the CSF. In accordance with the terms of the 2019 Suspension Order, the CSF directed Albert to reimburse it for this expenditure ("CSF Obligation") as a condition to her reinstatement.

## E.    Albert's second adversary proceeding.

In June 2020, Albert filed her second adversary proceeding against the State Bar and some of its employees ("Individual State Bar Defendants"). The parties stipulated to consolidate the remnants of her First Adversary with the second adversary proceeding and to allow her to file an amended consolidated complaint with additional claims ("Consolidated Adversary"). Albert's First Amended Complaint ("FAC") stated claims for: (1) dischargeability of debts under § 523(a)(7) against all defendants; (2) violation of the automatic stay and discharge injunction against all defendants; (3) violation of the Eighth Amendment of the U.S. Constitution for excessive fines against the State Bar; (4) violation of Article 1, Section 17, of the California Constitution for excessive fines against the State Bar; and (5) violation of § 525(a) against the State Bar for its failure to reinstate Albert's license based on a dischargeable debt.

In April 2021, Albert paid the State Bar $37,555.90, representing all outstanding Disciplinary Costs and all of the CSF Obligation. The State Bar reinstated Albert as an active licensed attorney on May 5, 2021.

## F.    Partial dismissal of the Consolidated Adversary.

In June 2021, the bankruptcy court granted the State Bar's motion to dismiss some of Albert's claims in the Consolidated Adversary.

The court dismissed her claims for violation of the automatic stay. The bankruptcy court concluded that the 2019 Decision was exempt from the automatic stay under § 362(b)(4). It did not directly address the

11

allegations pertaining to the timeliness of her reinstatement during the chapter 13 phase of her bankruptcy case, but the court rejected Albert's claim that the State Bar violated the automatic stay by reimposing her suspension after the conversion of her case to chapter 7. The court interpreted the Ninth Circuit's decision in *Albert II* to mean that the State Bar could properly condition Albert's reinstatement upon the payment of nondischargeable debt.

The bankruptcy court also dismissed Albert's claims for violation of the United States and California constitutions and under § 525(a), as well as all claims against the Individual State Bar Defendants. It denied leave to amend the dismissed claims.

The only surviving claims after the court's ruling on the motion to dismiss were Albert's: (1) first claim for relief against the State Bar seeking to determine the dischargeability of the debts she owed to the State Bar; and (2) second claim for relief against the State Bar for violation of the discharge injunction.

**G.    Partial summary judgment in the Consolidated Adversary.**

In April 2022, the State Bar moved for partial summary judgment on the two remaining claims for relief. But it excluded from its motion a small portion of the claim for violation of the discharge injunction: it admitted that it should have reinstated Albert's law license on April 21, 2021, when she paid the Disciplinary Costs and the CSF Obligation, that it did not do so until May 5, 2021, and that its delay violated the discharge injunction.

With respect to the first claim for relief, the State Bar argued that there was no genuine factual dispute regarding the dischargeability of the discovery sanctions, the Disciplinary Costs, and the Woods Restitution/CSF Obligation. All that remained was for the bankruptcy court to determine as a pure matter of law whether these debts were nondischargeable under § 523(a)(7).

As for the second claim for contempt, the State Bar asserted that none of its challenged conduct constituted an attempt to collect a discharged debt. But even if it did, the State Bar argued that there was no genuine dispute that it reasonably believed it was acting lawfully and not in violation of the discharge injunction.

The bankruptcy court granted the motion for partial summary judgment in June 2022. The court recognized that under *Albert II*, the discovery sanctions had been discharged but the Disciplinary Costs remained nondischargeable. The bankruptcy court also ruled that Albert's CSF Obligation was excepted from discharge under § 523(a)(7).

As for the contempt claim, the bankruptcy court held that the probation reports, the NDCs, and the Alleged Email Violations were not actions to collect discharged debts but rather served regulatory or disciplinary purposes. The court alternatively held that, even if some of these activities constituted actions to collect a debt, the Disciplinary Costs remained nondischargeable. As for the discovery sanctions, the bankruptcy court ruled that Albert failed to show that the State Bar lacked an

13

objectively reasonable basis for concluding that these debts were nondischargeable when the alleged collection efforts occurred. To the contrary, the bankruptcy court remarked that, "until the Ninth Circuit rendered its opinion in [*Albert II*] . . . , there was no [Ninth Circuit] precedent on this issue and both this Court and the Ninth Circuit B.A.P. were under the same impression as the State Bar that discovery sanctions were nondischargeable."

Shortly after the bankruptcy court's partial summary judgment, the Ninth Circuit held in *Kassas v. State Bar*, 49 F.4th 1158 (9th Cir. 2022) ("*Kassas II*"), *rev'g Kassas v. State Bar (In re Kassas)*, 631 B.R. 469 (Bankr. C.D. Cal. 2021) ("*Kassas I*"), that restitution obligations payable to the CSF were dischargeable in bankruptcy. Albert thereafter moved for reconsideration of the bankruptcy court's summary judgment ruling. The bankruptcy court partially granted the motion, acknowledging that, under *Kassas II*, the CSF Obligation had been discharged.

## H.    Trial and final judgment.

The bankruptcy court's decisions on the motions to dismiss and summary judgment left for trial only the issue of the State Bar's contempt for violation of the discharge injunction from the date on which Albert paid the Disciplinary Costs and the CSF Obligation (April 21, 2021) through the date of Albert's reinstatement (May 5, 2021). After a one-day trial, the court issued its memorandum decision holding the State Bar in contempt for the 15-day period. As the court explained, when Albert made the payment on

April 21, 2021, the State Bar told her that it would forthwith reinstate her. But, as the State Bar admitted, "through its employees, [it] continued to place administrative barriers, which delayed the re-activation of her license until May 5, 2021."

The court then made rulings regarding Albert's entitlement to damages against the State Bar. Albert claimed 22 categories of damages. For most of these categories, the court awarded little or no damages. It ruled that Albert presented insufficient evidence that she incurred any compensable damages or losses as a result of the 15-day delay.

Albert admitted that she could not recover her attorney's fees for self-representation. Still, she sought $300,133.75 for the "time" she spent on the matter. The court considered this to be a thinly disguised attempt to recover attorney's fees by a pro se litigant. It awarded her $922.50 ($45 per hour for 20.5 hours) for the time she said she spent over the 15 days attempting to push through her reinstatement after she paid the State Bar.

The court also awarded Albert $20,705.48 for various litigation costs she incurred. The bankruptcy court entered final judgment for Albert in the amount of $21,627.48 on January 27, 2023. Albert timely appealed. The State Bar has not appealed the entry of judgment against it.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334, and we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.    Did the bankruptcy court err when it dismissed some of Albert's claims for relief?

2.    Did the bankruptcy court err when it granted the State Bar partial summary judgment?

3.    Did the bankruptcy court err when it entered judgment in favor of Albert but awarded her damages of only $21,627.48?

4.    Do any of Albert's evidentiary or discovery arguments support reversal?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's dismissal under Civil Rule 12(b)(6), which is made applicable in adversary proceedings by Rule 7012(b). *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 570-72 & n.3 (9th Cir. BAP 2011). We also review de novo its summary judgment ruling. *Stadtmueller v. Sarkisian (In re Medina)*, 619 B.R. 236, 240 (9th Cir. BAP 2020), *aff'd*, 2021 WL 3214757 (9th Cir. July 29, 2021). Jurisdictional issues also are reviewed de novo. *See McCowan v. Fraley (In re McCowan)*, 296 B.R. 1, 2 (9th Cir. BAP 2003) ("Whether a court has subject matter jurisdiction is a question of law that we review de novo."). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

The bankruptcy court's legal conclusions after trial are reviewed de novo, and its factual findings are reviewed under the clearly erroneous

standard. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009), *aff'd*, 407 F. App'x 176 (2010). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## CIVIL RULE 12(b)(6) STANDARDS

When we review an order granting a Civil Rule 12(b)(6) motion, we consider the legal sufficiency of the plaintiff's complaint. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). We must assess whether the complaint presents a cognizable legal theory and whether it contains sufficient factual allegations to support that theory. *Id.* Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A claim is facially plausible when it contains factual allegations that, if taken as true, would allow the court to reasonably infer that the defendant is liable to the plaintiff. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Additionally, we do not accept as true mere legal conclusions because they cannot by themselves establish a plausible claim for relief. *Id.*

## SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when the pleadings and

17

evidence submitted show that there are no genuine issues of material fact
and the movant is entitled to judgment as a matter of law. Civil Rule 56(a)
(incorporated by Rule 7056); *Roussos v. Michaelides (In re Roussos)*, 251 B.R.
86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). The moving
party bears the initial burden of demonstrating an absence of a genuine
issue of material fact. Once the moving party has met its initial burden, the
non-moving party must show specific facts establishing the existence of
genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256
(1986).

## DISCUSSION

### A.     Events During the Bankruptcy Case.

Albert's first set of claims are based on alleged violations of the
automatic stay that went into effect when she filed her chapter 13 petition
and remained in effect until she received her chapter 7 discharge. The
automatic stay is a statutory injunction that prohibits most actions to collect
prepetition debts or to execute upon property of the estate. § 362(a); *see also*
*Gruntz v. Cnty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081–82 (9th Cir. 2000)
(en banc) (describing sweeping scope of automatic stay).

The automatic stay is broad, but it is subject to exceptions. The
exception that is particularly relevant to this appeal is § 362(b)(4), which
provides that the automatic stay does not apply to "the commencement or
continuation of an action by a governmental unit . . . to enforce such
governmental unit's . . . police and regulatory power, including the

18

enforcement of a judgment other than a monetary judgment . . . ."

This exception covers professional disciplinary proceedings conducted by state licensing agencies. It does not, however, apply to actions solely serving a pecuniary interest. *See Poule v. Registrar of Contractors (In re Poule)*, 91 B.R. 83, 85-88 (9th Cir. BAP 1988). Courts must distinguish between valid and necessary governmental action and "a circumvented method of collecting a dischargeable judgment from the debtor." *Watson v. Shandell (In re Watson)*, 192 B.R. 739, 745 n.5 (9th Cir. BAP 1996) (citing *Stovall v. Stovall*, 126 B.R. 814, 815–16 (N.D. Ga. 1990)), *aff'd*, 116 F.3d 488 (9th Cir. 1997).

Violations of the automatic stay have consequences. Actions taken in violation of the automatic stay are void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571-72 (9th Cir. 1992). Additionally, § 362(k) allows individual debtors to recover damages caused by a violation of the automatic stay. *See Koeberer v. Cal. Bank of Com. (In re Koeberer)*, 632 B.R. 680, 687 (9th Cir. BAP 2021); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995), *appeal dismissed sub nom., Ramirez v. Sharp (In re Ramirez)*, 201 F.3d 444 (9th Cir. 1999) (table). To recover actual damages under § 362(k), the debtor must allege and prove that the stay violation was willful, specifically that the defendant "knew of the automatic stay, and its actions in violation of the stay were intentional." *Stuart v. City of Scottsdale (In re Stuart)*, 632 B.R. 531, 538 (9th Cir. BAP 2021) (quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002)), *aff'd*, 2023 WL 5011739

19

(9th Cir. Aug. 7, 2023). Importantly, the debtor need not prove that the defendants intended to violate the stay. *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992).

### 1. Period 1: Chapter 13 petition date to end of minimum suspension.

We begin our analysis with the period that began when Albert filed her bankruptcy petition and the automatic stay was invoked, and ended on March 16, 2018, when the minimum 30-day suspension period under the 2017 Suspension Order expired. Although Albert's contentions are muddled, she seemed to concede that the State Bar did not violate the automatic stay during this period. Her concession is correct. The automatic stay did not prevent the State Bar from exercising its police or regulatory powers unless it was employing those powers solely for pecuniary purposes. During Period 1, the 2017 Suspension Order provided that Albert could not reinstate her license even if she paid all of her debts in full. Therefore, the suspension during Period 1 had no pecuniary purpose, and it did not violate the automatic stay.

### 2. Period 2: End of minimum suspension to reinstatement in chapter 13.

After the minimum suspension term ended on March 16, 2018, the 2017 Suspension Order entitled Albert to reinstatement if she paid the 2017 Discovery Sanctions and the Disciplinary Costs. In short, the only thing that stood between Albert and her license during this period was the

payment of debt. Albert alleged in her FAC that the State Bar violated the automatic stay by refusing to reinstate her law license until June 1, 2018, based on her failure to pay debt.[5]

The bankruptcy court rejected this claim, reasoning that the State Bar did not violate the automatic stay during this period because some of those debts (the Disciplinary Costs) were not dischargeable. It relied on the Ninth Circuit's decision in *Albert II.* In this respect, the bankruptcy court misconstrued *Albert II.* In that decision, the court of appeals held that the State Bar did not violate § 525(a). That section bars a governmental unit from withholding a license "solely because [the debtor] . . . has not paid a debt that is dischargeable . . . ." The court of appeals did not discuss the effect of the automatic stay because no stay violation claims were before the court. Section 525(a) is different from § 362(a) in a crucial respect: the former only protects debtors against adverse consequences from dischargeable debts; while the latter protects debtors from the enforcement of "claims," which includes both dischargeable and nondischargeable debts. *Compare* § 525(a) (preventing discrimination against debtors and others by virtue of being a debtor or not having "paid a debt that is dischargeable in the case under this title . . ."), *with* § 362(a)(6) (staying "any act to collect, assess, or recover a claim against the debtor that arose before

---

[5] The State Bar claimed that it backdated the reinstatement of Albert's license as of March 16, 2018. We need not decide which date is relevant because it would only affect the amount of any damages, and we leave that issue to the bankruptcy court on remand.

commencement of the case under this title"); *see generally Johnson v. Home
State Bank*, 501 U.S. 78, 83 (1991) (explaining that "claim" means "right to
payment, whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed,
undisputed, legal, equitable, secured, or unsecured" and that "Congress
intended by this language to adopt the broadest available definition of
'claim'" (citations omitted)).

The Ninth Circuit affirmed the prior dismissal of Albert's claims
under § 525, but her subsequent claim under § 362(k) remains. Albert's
FAC is poorly drafted, but it contains sufficient allegations to sustain this
portion of her claim. Albert alleged that, "[o]n March 16, 2018, after the 30-
day suspension period had ended, Ms. Albert demanded the State Bar
defendants reinstate her license, but they failed and refused to do so on the
ground Ms. Albert had not paid [the 2017 Discovery Sanctions] plus 10%
interest." FAC at ¶ 22. Albert also specifically alleged that "[s]uch illegal
attempt included but is not limited to refusing to reinstate Ms. Albert's law
license from March 16, 2018 to May 30, 2018 in a timely manner and then
by revoking her license again on June 28, 2018 through at least February 2,
2019 because the [2017 Discovery Sanctions] was dischargeable debt." FAC
at ¶ 100. Albert further alleged that she suffered actual damages
proximately caused by the State Bar's willful stay violation.

These factual allegations are adequate. On our review of the
bankruptcy court's order partially granting the State Bar's motion to

dismiss, we are obligated to accept her allegations as true and construe
them in the light most favorable to Albert. *See Johnson*, 534 F.3d at 1122. The
allegations sufficiently state a claim for violation of the automatic stay.
While Albert was in chapter 13, all debts owed to the State Bar were
dischargeable under § 1328(a), including the Disciplinary Costs, because
§ 523(a)(7) does not apply in chapter 13. Accordingly, there is no question
that § 362(a)(6) stayed the State Bar from attempting to collect **any** debts
owed by Albert while she was in chapter 13. Any effort to collect these
debts as a condition of reinstatement of Albert's law license, therefore,
violated the automatic stay. The bankruptcy court erred in dismissing this
claim under Civil Rule 12(b)(6). We remand for further proceedings on
Albert's claim that the State Bar violated the stay by attempting to collect
the 2017 Discovery Sanction and Disciplinary Costs while she was in
chapter 13.

### 3. Period 3: First reinstatement to chapter 7 conversion.

In her FAC, Albert alleged that the State Bar continuously violated
the automatic stay during this period. These allegations do not meet the
test of plausibility. Albert did not identify any act of the State Bar that
violated the stay during the limited period after the State Bar reinstated her
license up to the conversion of her bankruptcy and the reimposition of her
suspension. The bankruptcy court did not err in dismissing this portion of

her claims.

### 4.    Period 4: Conversion to chapter 7 to discharge (2/26/19).

The bankruptcy court converted Albert's bankruptcy case from chapter 13 to chapter 7 on June 26, 2018. Conversion of her bankruptcy case to chapter 7 made § 523(a)(7) applicable where it was not in chapter 13. *Compare* § 523(a), *with* § 1328(a)(2). As a result, the Disciplinary Costs became nondischargeable upon conversion of the case while the 2017 Discovery Sanctions remained dischargeable as held in *Albert II*, 960 F.3d at 1188, 1195-96. The State Bar then reimposed Albert's suspension from the practice of law subject to paying the 2017 Discovery Sanctions and the Disciplinary Costs. Albert has alleged in the FAC that the State Bar violated the automatic stay by seeking to collect both debts through various actions, including the reimposition of her suspension.

The bankruptcy court dismissed Albert's claims for stay violations on the basis that that the Disciplinary Costs were nondischargeable. It reasoned that the State Bar properly conditioned her reinstatement to practice law on the payment of that debt. Section 362(a)(6) continued to stay the State Bar's efforts to collect the dischargeable 2017 Discovery Sanctions, but the question arises whether it also stayed collection of the nondischargeable Disciplinary Costs while Albert was in chapter 7.

Section 362(a) defines the scope of the automatic stay and specifically precludes any act to collect any prepetition claims, which the 2017 Discovery Sanctions and the Disciplinary Costs were. As noted above,

24

§ 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ." Section 362(b) lists the exceptions to the automatic stay. The State Bar acted under § 362(b)(4) to investigate and adjudicate the claims of professional misconduct against Albert, and then to enforce its judgments against her. Section 362(b)(4) provides:

> under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, **including the enforcement of a judgment other than a money judgment**, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

(Emphasis added.)

While § 362(b)(4) excepts actions and enforcement of judgments invoking a governmental unit's police and regulatory power, the statute specifically excludes enforcement of money judgments from its exception. Accordingly, "section 362(b)(4) by its own terms does not permit a [governmental creditor] to 'enforce . . . a money judgment' obtained in a police power proceeding. Thus, section 362(b)(4) defers to other provisions of the Code to determine whether the state may collect money." *Hawaii v. Parsons (In re Parsons)*, 505 B.R. 540, 545 (Bankr. D. Haw. 2014); *see also United States v. Perez (In re Perez)*, 61 B.R. 367, 368 (Bankr. E.D. Cal. 1986) (permitting governmental action to proceed to judgment under § 362(b)(4)

25

but holding "that any attempts to collect any money judgment which might be rendered in that action shall not be pursued except through debtor's bankruptcy proceeding").

Neither § 362(a) nor § 362(b) differentiates between dischargeable and nondischargeable debts in the application of the stay or its exceptions. Yet, binding authority in this circuit holds that creditors who obtain a nondischargeable judgment are not stayed from collecting nondischargeable debts so long as collection is sought from property that is not property of the bankruptcy estate. *Palm v. Klapperman (In re Cady)*, 266 B.R. 172, 180 (9th Cir. BAP 2001) ("Section 362 [does] not preclude the execution of a judgment, which has been held by the bankruptcy court to be non-dischargeable, upon property of the debtor which is not property of the estate." (quoting *Watson v. City Nat'l Bank (In re Watson)*, 78 B.R. 232, 235 (9th Cir. BAP 1987)), *aff'd,* 315 F.3d 1121 (9th Cir. 2003); *see Cal. State Univ. v. Gustafson (In re Gustafson)*, 111 B.R. 282, 286 (9th Cir. BAP 1990) ("We therefore determine that the automatic stay applies to preclude a creditor's attempts to collect a claim that is presumed, but not yet determined by the bankruptcy court, to be nondischargeable under section 523(a)(8)."), *rev'd on other grounds*, 934 F.2d 216 (9th Cir. 1991); *In re Watson*, 78 B.R. at 233-34 (holding that a creditor who obtains a § 523 judgment of nondischargeability may proceed with execution on non-estate property without obtaining relief from the automatic stay).

These cases do not address whether creditors holding

26

nondischargeable debts that are neither presumed nondischargeable, such as under § 523(a)(8), nor require a bankruptcy court judgment under § 523(c), are subject to the automatic stay. As relevant here, § 362(b)(4) provides that judgment debts arising from governmental police and regulatory powers are not excepted from the automatic stay. Because § 362(b)(4) is clear that the recovery of monetary judgments remains subject to the automatic stay, any actions to recover such a debt violates the automatic stay absent relief from stay under § 362(d). As a result, any action by the State Bar to collect either the 2017 Discovery Sanctions or the Disciplinary Costs during Albert's bankruptcy necessarily violated the automatic stay.

Albert's allegations of stay violations in the FAC are chaotic. We have focused on the allegations pertaining to her liability under the 2017 Suspension Order, but she also asserts that the State Bar's later disciplinary proceedings involving her representation of Dr. Woods and the Fin City Sanction violated the automatic stay. As discussed in more detail elsewhere in this decision, we agree with the bankruptcy court that the adjudication of the disciplinary proceedings against Albert during the pendency of her bankruptcy that ultimately resulted in the 2019 Decision and the 2019 Suspension Order fall squarely within the stay exception provided by § 362(b)(4). Those actions did not violate the automatic stay.

We reverse and remand the bankruptcy court's dismissal of Albert's claims that the State Bar's efforts to collect the 2017 Discovery Sanctions

and Disciplinary Costs violated the automatic stay. The court erred in concluding that the automatic stay did not apply to the State Bar's collection efforts while Albert was in chapter 7. Albert's allegations that the State Bar sought to collect the 2017 Discovery Sanctions and Disciplinary Costs in violation of the automatic stay state viable claims for purposes of defeating the motion to dismiss.

## B.    Post-Discharge Events.

As we have noted, Albert received her discharge under chapter 7 on February 26, 2019. The discharge has two effects. First, it "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ." § 524(a)(1). Second, it "operates as an injunction against . . . an act[ ] to collect, recover or offset any [discharged] debt as a personal liability of the debtor . . . ." § 524(a)(2).

The discharge only applies to dischargeable debts. Among the debts that are not discharged in chapter 7 is "any debt . . . to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ." § 523(a)(7).

Unlike violations of the automatic stay, the Bankruptcy Code does not provide a statutory remedy to debtors for a violation of the discharge injunction. But because it is an injunction, a party who violates it may be liable for contempt. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507

(9th Cir. 2002). Contempt arises from a **knowing** violation of a clear order

of the court. *See ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996,

1007-09 (9th Cir. 2006); *Nash v. Clark Cnty. Dist. Att'y's Off. (In re Nash)*, 464

B.R. 874, 880 (9th Cir. BAP 2012).

      The discharge injunction is a "specific and definite" court order that

may support contempt. *In re Bennett*, 298 F.3d at 1069. To impose liability,

however, Albert was required to show by "clear and convincing evidence"

that the State Bar "(1) knew the discharge injunction was applicable and

(2) intended the actions which violated the injunction." *In re ZiLOG, Inc.*,

450 F.3d at 1007 (quoting *In re Bennett*, 298 F.3d at 1069).

      The creditor's knowledge of the discharge injunction for purposes of

contempt is subject to an objective standard. In *Taggart v. Lorenzen*, 139

S. Ct. 1795 (2019), the Supreme Court held that civil contempt sanctions

only are appropriate "when there is **no objectively reasonable basis** for

concluding that the creditor's conduct might be lawful under the discharge

order." *Id.* at 1801 (emphasis added). Thus, to hold a party in contempt, the

debtor must prove that there was "**[no] fair ground of doubt** as to the

wrongfulness of the defendant's conduct." *Id.* (emphasis added) (quoting

*Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

      The Ninth Circuit's consideration of the contempt claim in *Taggart*

after remand from the Supreme Court is instructive. There, the underlying

question was whether the debtor had "returned to the fray" in postpetition

litigation such that attorney's fees could be awarded for his postpetition

conduct despite entry of the discharge. The Ninth Circuit observed that the question it needed to answer was "whether the Creditors had some— indeed, *any*—objectively reasonable basis for concluding that Taggart might have 'returned to the fray' and that their motion for post-petition attorney's fees *might have* been lawful." *Lorenzen v. Taggart (In re Taggart)*, 980 F.3d 1340, 1348 (9th Cir. 2020) (citing *Taggart*, 139 S. Ct. at 1799).

### 1. The Discharge Did Not Entirely Void the 2019 Suspension Order.

Albert argues that the 2019 Suspension Order violated the discharge and is therefore void. The bankruptcy court correctly rejected this contention.[6]

The 2019 Suspension Order was the culmination of lengthy disciplinary proceedings examining Albert's prepetition conduct and her compliance with her professional obligations. Albert was charged with eight counts of professional misconduct involving two distinct matters. With respect to Albert's representation of Dr. Woods, the State Bar Court found that Albert failed to: (1) provide competent representation; (2) render an account of client funds; (3) return unearned fees; (4) cooperate with the State Bar investigation; and (5) return client papers and property.

---

[6] Albert also challenges the 2019 Decision as void. The 2019 Decision was issued in January 2019, before the bankruptcy court granted Albert a discharge in February 2019. It was subject to the automatic stay rather than the discharge injunction. The disciplinary proceedings resulting in the 2019 Decision against Albert were proper exercises of the regulatory powers of the State Bar excepted from the stay under § 362(b)(4). *Wade v. State Bar (In re Wade)*, 948 F.2d 1122, 1123 (9th Cir. 1991).

Most of these findings do not concern Albert's failure to pay her debts—
dischargeable or otherwise. Thus, there is no basis to say that the entirety
of the 2019 Suspension Order violated the discharge.

Albert vaguely argues that the State Bar used the disciplinary
proceedings leading up to and including the 2019 Suspension Order as a
form of leverage solely to collect dischargeable debts. This bald allegation
is neither specific nor plausible enough to withstand dismissal under Civil
Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. The record makes clear that the State
Bar had ample non-pecuniary reasons to take disciplinary action against
Albert.[7]

Admittedly, the 2019 Suspension Order did provide for the
continuation of a mandatory suspension conditioned on repayment of the
Woods Restitution and the Fin City Sanction. Albert has established that
those debts are dischargeable. But this alone does not render the
disciplinary proceedings pecuniary in nature, because her license was
suspended for multiple, independently sufficient reasons, many of which
had nothing to do with Albert's failure to pay her debts. A judgment

---

[7] *Bertuccio v. California State Contractors License Board (In re Bertuccio)*, 414 B.R. 604,
616-17 (Bankr. N.D. Cal. 2008), does not help Albert. In that case, two California state
agencies suspended Bertuccio's contractor's license solely because he failed to pay state
taxes. The agencies refused to reinstate the license immediately after he filed his chapter
13 bankruptcy. *Id.* at 607-08. The parties ultimately agreed that the taxes were
dischargeable and that Bertuccio was entitled to reinstatement of his license. *Bertuccio*
differs from this case because the agencies had no reason to suspend Bertuccio's license
other than his failure to pay a dischargeable debt. In contrast, Albert committed
multiple unprofessional acts that had nothing to do with the payment of money.

subsuming both dischargeable and nondischargeable debt is not void in its entirety under § 524(a)(1) simply because it also included the discharged debt. *See In re Poule*, 91 B.R. at 85-88.

Albert argues that *In re Slater*, 573 B.R. 247 (Bankr. D. Utah 2017), permits courts to void the entirety of a judgment if it includes any dischargeable debt. *Slater* involved a default judgment entered against the debtor for both discharged prepetition debts and postpetition debts not subject to the debtor's discharge. The bankruptcy court held that the judgment was void. In a footnote, the court observed that, "although an argument could be made that only part of the [judgment] relating to the 2007 Note is void, the Court determines that carving the [judgment] up as to void and not void would be problematic." *Id.* at 257 n.50.

We respectfully decline to follow *Slater*. The court did not explain why it would be "problematic" to separate the nondischargeable and dischargeable parts of the judgment; the decision lays out the dollar amount of each part. *Id.* at 251-52. More importantly, § 524(a) unambiguously provides that a judgment is void only "to the extent" it rests on a discharged debt, so the *Slater*'s decision to void the entire judgment lacked a statutory basis.

Section 524(a)(1) is clear, and we are bound to apply it to void the 2019 Suspension Order—but only to the extent it imposed continued liability for the Fin City Sanction, the Woods Restitution, and the CSF Obligation. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). Accordingly, we

32

affirm the bankruptcy court's dismissal of Albert's claim that the 2019 Decision and 2019 Suspension Order were void in their entirety for violation of the discharge.

### 2. The bankruptcy court did not err by granting partial summary judgment on Albert's claims for contempt against the State Bar.

Albert further argues that the bankruptcy court erred by granting summary judgment to the State Bar on her claims for contempt arising from its post-discharge efforts to collect the dischargeable Woods Restitution, CSF Obligation, and Fin City Sanction imposed under the 2019 Suspension Order. She is wrong. She has established that these debts are dischargeable. It follows that the State Bar violated the discharge injunction by attempting to collect those debts. But Albert failed to show that the State Bar was in contempt and liable for damages.

#### a. Before *Albert II*.

Not every violation of the discharge injunction results in liability for contempt. Albert was required to establish that there was no "objectively reasonable basis" for the State Bar to believe that its actions did not violate the discharge. *Taggart,* 139 S. Ct. at 1801.

Prior to the Ninth Circuit's decisions in *Albert II* and *Kassas II*, bankruptcy courts and the BAP ruled that liabilities like the Fin City Sanction, Woods Restitution, and CSF Obligation were nondischargeable. Indeed, when the California Supreme Court entered its 2019 Suspension

Order, we had just affirmed the bankruptcy court's ruling that the 2017
Discovery Sanctions were nondischargeable under § 523(a)(7). The Ninth
Circuit later decided that our decision was incorrect, recognizing that there
was "considerable confusion among federal courts and practitioners about
section 523(a)(7)'s scope." *Albert II*, 960 F.3d at 1195 (quoting *Scheer v. State
Bar (In re Scheer)*, 819 F.3d 1206, 1210 (9th Cir. 2016)). Until the Ninth
Circuit decided *Albert II*, our decision in *Albert I* gave the California
Supreme Court and the State Bar an objectively reasonable basis to believe
that their conduct did not violate the discharge.

Albert also maintains that the State Bar was in contempt of the
discharge injunction when it refused to reinstate her law license on
February 24, 2020, when the mandatory six-month suspension under the
2019 Suspension Order expired. Again, the continuation of the suspension
was improperly conditioned on the repayment of the Fin City Sanction and
the Woods Restitution, but this was not established until June 10, 2020,
when the Ninth Circuit entered its decision in *Albert II*. Until then, our
decision in *Albert I* gave the State Bar an objectively reasonable basis to
condition reinstatement on the repayment of the Fin City Sanction and
Woods Restitution.

Further, the continued post-discharge suspension was also
conditioned on the payment of the Disciplinary Costs imposed by the 2019
Suspension Order, and the Ninth Circuit held that such costs are not
discharged. In other words, the State Bar was entitled to suspend Albert

34

based on her failure to pay the nondischargeable Disciplinary Costs, and Albert failed to establish that she suffered additional damage because the State Bar also continued the suspension based on her failure to pay discharged debts. This also warranted the bankruptcy court's partial summary judgment.

### b. After *Albert II*.

Albert argues that the post-discharge conversion of the Woods Restitution into the CSF Obligation is a separate basis for contempt. The CSF paid the Woods Restitution on December 18, 2020, after the Ninth Circuit had decided *Albert II*. She argues that by paying Dr. Woods what Albert owed her in dischargeable client restitution, the State Bar improperly changed her debt from one owed to a third party to one owed to a governmental entity. Once the obligation was owed to the State Bar's CSF, the State Bar argued that the CSF Obligation fell within the scope of § 523(a)(7)'s discharge exception. But Albert has established that both debts are dischargeable. As such, the conversion of the Woods Restitution into the CSF Obligation did not change Albert's rights.

Albert cites the bankruptcy court's decision in *Kassas I* as evidence that the State Bar did not have a fair ground to doubt that the CSF Obligation was dischargeable. This is simply wrong. The bankruptcy court in *Kassas I* recognized that *Albert II* did not address the dischargeability of CSF debt. 631 B.R. at 472. Based on the Supreme Court's decision in *Kelly*, *Kassas I* concluded that "[t]he reimbursement obligation consequently

35

bears the hallmarks of a 'fine, penalty, or forfeiture' because it forces [the attorney] to 'confront, in concrete terms, the harms his actions have caused.'" *Id.* at 475 (quoting *Kelly,* 479 U.S. at 49 n.10). Indeed, the bankruptcy court here granted summary judgment in large part based on *Kassas I.* It was not until the Ninth Circuit published its opinion reversing *Kassas I* on August 1, 2022, that the law in this circuit established that CSF debts are dischargeable. By that time, Albert's license had been reinstated for over a year. Accordingly, even if Albert could state some damage from the State Bar's efforts to collect the CSF Obligation, the State Bar had fair ground to doubt that the debt was discharged when it took its actions. This ground of doubt negated the claim for contempt based on the CSF Obligation.

### c. Failure to reinstate immediately after payment of the CSF Obligation and Disciplinary Costs.

Albert argues that the State Bar was in contempt for failing to reinstate her license immediately after she paid the CSF Obligation and the Disciplinary Costs on April 20, 2021.[8] The bankruptcy court agreed with this proposition: it held the State Bar in contempt for the period from April

---

[8] Albert states that the State Bar also violated the discharge order by petitioning "the California Supreme Court to modify the Orders to include the payments Albert made on April 20, 2021." Albert never develops this argument or states how this conduct might have resulted in damages different from those caused by the State Bar's failure to reinstate her license after she paid the CSF Obligation and Disciplinary Costs. Accordingly, she has failed to establish any reversible error (assuming she means to suggest that this was a separate ground for contempt).

21, 2021 through May 5, 2021, when the State Bar reinstated her license, and entered judgment against the State Bar for the amount she paid.

But Albert also contends that she is entitled to interest on the $20,801 she paid to the State Bar to satisfy the CSF Obligation until the State Bar reimbursed her. Again, Albert confuses the State Bar's discharge violation with its liability for contempt. The State Bar did violate the discharge injunction by collecting the CSF Obligation, but it did so with an objectively reasonable basis for concluding that the CSF Obligation was nondischargeable. The record reflects that the State Bar promptly reimbursed Albert for her payment of the CSF Obligation after the Ninth Circuit issued its *Kassas II* decision. Accordingly, the State Bar was not liable for contempt damages (in the form of interest or otherwise) for collecting and temporarily retaining the $20,801 Albert paid to satisfy the CSF Obligation.

## C.     The bankruptcy court correctly dismissed Albert's § 525 claim.

In her FAC, Albert alleged that the State Bar had violated § 525(a) by refusing to reinstate her license solely based on her failure to pay discharged debts. The bankruptcy court dismissed this claim as moot and because reinstatement was conditioned on payment of nondischargeable debt as well.

Albert's claim is frivolous. She completely ignores the fact that this Panel and the Ninth Circuit upheld the dismissal of a similar § 525(a) claim for relief stated in her First Adversary. As both decisions explained, the

State Bar validly conditioned her reinstatement on the payment of a
nondischargeable debt without violating § 525(a). *Albert II*, 960 F.3d at 1196;
*Albert I*, 2019 WL 1594012, at *8. These holdings are law of the case. *See
FDIC v. Kipperman (In re Com. Money Ctr., Inc.)*, 392 B.R. 814, 832-33 (9th Cir.
BAP 2008). They are fatal to this claim.

We also agree with the bankruptcy court that Albert's § 525(a) claim
was moot. The only relief she sought in respect of this claim was injunctive
relief, costs, and attorney's fees, and "[a]ny further relief this Court may
deem fair and just." By the time of the hearing on the State Bar's motion to
dismiss, the State Bar had reinstated her, so there was no basis for
injunctive relief, and she never alleged anything plausibly establishing her
right to "further relief."

Albert cites *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953), in
support of her argument that the State Bar's voluntary cessation of the
allegedly unlawful activity does not justify dismissal of the claim as moot.
However, *W. T. Grant* and other Supreme Court cases have held that
voluntary cessation of the unlawful conduct moots requests for declaratory
and injunctive relief when the plaintiff lacks a "reasonable expectation that
the wrong will be repeated[.]" *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975)
(quoting *W. T. Grant Co.*, 345 U.S. at 633) (listing cases). Albert has
speculated that other future wrongs might occur, but she offered nothing
to show that her fears amounted to a "reasonable expectation."

Albert has not demonstrated that the bankruptcy court erred in

38

dismissing her § 525(a) claim.

**D.  The bankruptcy court did not commit reversible error in granting
summary judgment on Albert's claim for declaratory relief.**

Albert argues that the bankruptcy court erred "[b]ecause there was
no order after summary judgment **in Albert's favor** declaring the debts
discharged . . . ." (Emphasis added). Albert contends that, "[w]ithout
correcting the record, the Orders stood as collectible to the world . . . ." She
maintains that a declaratory judgment is necessary to state the
dischargeability of the debts the State Bar attempted to collect from her.
She does not explain why anything other than the orders and judgment
entered in the Consolidated Adversary were required.

To state a claim for declaratory judgment under the Federal
Declaratory Judgment Act, 28 U.S.C. § 2201, the plaintiff must demonstrate
that an "actual controversy" exists between the parties as required by
Article III of the U.S. Constitution, and the court must consider whether in
its discretion to exercise its jurisdiction over the actual controversy. *GEICO
v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998); *Am. States Ins. Co. v. Kearns*,
15 F.3d 142, 143-44 (9th Cir. 1994). An actual controversy exists if the
dispute is "definite and concrete, touching the legal relations of parties
having adverse legal interests; and that it be real and substantial and admit
of specific relief through a decree of a conclusive character, as
distinguished from an opinion advising what the law would be upon a
hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118,

127 (2007) (cleaned up). A court may dismiss a claim for declaratory relief if
it is duplicative of, substantially similar to, or commensurate with relief
sought under another cause of action. *Mangindin v. Wash. Mut. Bank*, 637 F.
Supp. 2d 700, 707-08 (N.D. Cal. 2009). A claim brought under the Federal
Declaratory Judgment Act "should be denied when it will neither serve a
useful purpose in clarifying and settling the legal relations in issue nor
terminate the proceedings and afford relief from the uncertainty and
controversy faced by the parties." *United States v. Washington*, 759 F.2d
1353, 1357 (9th Cir. 1985) (en banc).

In *Albert II* and *Kassas II*, the Ninth Circuit held that obligations like
the Fin City Sanction, the Woods Restitution, and the CSF Obligation were
dischargeable. After those decisions, the State Bar did not contend
otherwise. Accordingly, there was no immediate and actual controversy
about the dischargeability of these debts and no basis for a declaratory
judgment in the exact form that Albert demanded.

The bankruptcy court did not err in entering summary judgment on
Albert's claim for declaratory relief.

**E.      Albert's challenges to the Disciplinary Costs as constitutional
         violations.**

Albert's third claim for relief in the FAC alleged that the State Bar's
Disciplinary Costs were excessive and violated the Eighth Amendment of
the U.S. Constitution, as made applicable to the States by the Fourteenth
Amendment. She similarly alleged in her fourth claim for relief that the

40

Disciplinary Costs also violated Article I, Section 17, of the California
Constitution. Albert argues that the Disciplinary Costs were improperly
assessed in fixed amounts regardless of the amount in controversy in the
underlying disciplinary action. She further alleged that most of the
Disciplinary Costs assessed against her bore no relationship to the minor
nature of her violations.

### 1. The bankruptcy court properly dismissed Albert's Eighth Amendment Claim for excessive fines against the State Bar.

The bankruptcy court dismissed Albert's claim under the Eighth
Amendment pursuant to Civil Rule 12(b)(1) for lack of subject matter
jurisdiction. While we disagree with the bankruptcy court's decision that it
lacked subject matter jurisdiction (for the reasons given in the next section),
we agree that dismissal of this claim was proper. The State Bar was not
amenable to suit on this basis, so the FAC failed to state a claim against the
defendants.

The court correctly observed that claims for violation of
constitutional rights require statutory authority and treated her claim as if
it were premised on 42 U.S.C. § 1983 ("§ 1983"). *See, e.g., Pimentel v. City of
L.A.*, 974 F.3d 917, 922 (9th Cir. 2020) (excessive fee claim brought against a
municipality under § 1983); *Blickenstaff v. City of Hayward*, 2023 WL 187100,
at *3 (N.D. Cal. Jan. 13, 2023) (same). Albert has not challenged these
decisions.

The bankruptcy court held that the State Bar was not amenable to suit

under § 1983 because this statute only covers violation of constitutional rights by "persons." State agencies are not "persons" within the meaning of the statute. *See Isaacs v. USC Keck Sch. of Med.*, 853 F. App'x 114, 117 (9th Cir. 2021) (citing *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004)); *Johnson v. Dep't of Soc. & Health Servs.*, 800 F. App'x 595 (9th Cir. 2020); *McReynolds v. Washington*, 2021 WL 736927, at *10 (W.D. Wash. Feb. 25, 2021), *aff'd*, 2022 WL 16756387 (9th Cir. Nov. 8, 2022).

On appeal, Albert cites *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019), which applied the Eighth Amendment's Excessive Fines Clause to state governments within a civil forfeiture proceeding. Albert also cites *Pimentel v. City of Los Angeles*, 966 F.3d 934, 937-38 (9th Cir.), *as amended on denial of reh'g*, 974 F.3d 917, 920 (9th Cir. 2020), which applied *Timbs* to a municipality in a § 1983 action. But local governments are recognized as persons subject to § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Neither of these cases involved a state agency like the State Bar.

The bankruptcy court had subject matter jurisdiction, but Albert had no claim because the State Bar was not amenable to suit on the claim. The court thus did not err when it dismissed these claims.

## 2. The court had subject matter jurisdiction of Albert's excessive fines claim based on the California Constitution.

The bankruptcy court also dismissed Albert's excessive fines claim under Article 1, Section 17, of the California Constitution based on Civil Rule 12(b)(1) for lack of jurisdiction. The State Bar sought dismissal of the

state law claim because Albert failed to allege how the claim was related to

the core bankruptcy matters raised in the FAC. Albert opposed dismissal

because she alleged in the FAC that the Consolidated Adversary was a core

proceeding "within the meaning of 28 USC § 157 and 28 USC § 1334

pursuant to FCP 7001 [sic]."

Courts ordinarily must examine their subject matter jurisdiction for

each claim brought. *See, e.g.*, *Holdner v. Krietzberg*, 2019 WL 1783057, at *4

(D. Or. Mar. 14, 2019), *report and recommendation adopted*, 2019 WL 1783044

(D. Or. Apr. 23, 2019); *Gentile Fam. Indus. v. Diatom, LLC*, 2015 WL 13917008,

at *5 (C.D. Cal. Mar. 5, 2015). To establish bankruptcy jurisdiction over a

particular claim, a plaintiff must prove that the claim arises in the

bankruptcy case, arises under the Bankruptcy Code, or is related to the

bankruptcy case. 28 U.S.C. § 1334(b). Albert failed to identify the basis for

jurisdiction under 28 U.S.C. § 1334(b) or the facts alleged in the FAC

supporting such jurisdiction. Instead, she argued that the motion must be

denied because no party had made a motion to have her ancillary state law

claim heard in state court.

The bankruptcy court dismissed this state law claim because it did

not arise under the Bankruptcy Code or in a case under the Code. *See*

*Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729

F.3d 1279, 1285-87 (9th Cir. 2013). The bankruptcy court also noted that

Albert had the burden of alleging facts supporting its jurisdiction, but the

FAC did not contain any facts suggesting that the bankruptcy court had

43

"related to" jurisdiction over the fourth claim for relief. The bankruptcy
court rejected the notion that it had "ancillary jurisdiction" over the state
law claim. It observed that ancillary jurisdiction is permitted to dispose of
"factually interdependent claims" by a single court. *Battleground Plaza v.
Ray (In re Ray)*, 624 F.3d 1124, 1135 (9th Cir. 2010) (citing *Sea Hawk Seafoods,
Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n)*, 439 F.3d 545, 549 (9th Cir.
2006)). But the court held that nothing in the FAC indicated that the fourth
claim for relief was factually interdependent with Albert's dischargeability
claim, her contempt claim, or her § 525(a) claim.

On appeal, Albert summarily argued that jurisdiction exists because
the excessive nature of the Disciplinary Costs are interrelated to her claims
under § 525(a) and § 524. Again, she failed to develop this argument.
Instead, in her reply brief, she argued that the bankruptcy court had core
jurisdiction to rule on the allowance or disallowance of the State Bar's
proof of claim. She has not effectively challenged the bankruptcy court's
discussion of ancillary jurisdiction.

We disagree with the bankruptcy court's jurisdictional analysis.
Bankruptcy courts have subject matter jurisdiction over proceedings
"arising under title 11, or arising in or related to cases under title 11." 28
U.S.C. § 1334. A proceeding "arises under" title 11 if it presents claims for
relief created or controlled by title 11. A proceeding "arises in" a
bankruptcy case if the claims would have no existence outside of a
bankruptcy case, even if they are not explicitly created or controlled by title

44

11. *Double Diamond Distrib., Ltd. v. Garman Turner Gordon LLP (In re U.S.A.
Dawgs, Inc)*, 657 B.R. 98, 110 (9th Cir. BAP 2024) (citing *In re Ray*, 624 F.3d at
1131). "Related to" jurisdiction exists if

> the outcome of the proceeding could conceivably have any
> effect on the estate being administered in bankruptcy. . . . An
> action is related to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or freedom of action (either
> positively or negatively) and which in any way impacts upon
> the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (9th Cir. 1984) (cleaned up), *partially
overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124
(1995).

We agree that Albert's constitutional claims do not "arise under" the
Bankruptcy Code; rather, they arise under the applicable constitutional
provisions. We also agree that those claims did not "arise in" her
bankruptcy case, because the same claims could arise in a non-bankruptcy
setting. But Albert's claims were "related to" her bankruptcy case because
they affected the amount of Albert's nondischargeable obligations and thus
"could alter [her] rights, liabilities, options, or freedom of action (either
positively or negatively) . . . ." *Id.* The bankruptcy court has subject matter
jurisdiction to determine the amount of any claim against the debtor,
whether that claim is or is not discharged.

Both Albert and the bankruptcy court went astray when they
evaluated the relatedness of Albert's state constitutional claims to the

categories of "core proceedings." This was incorrect. The court's subject
matter jurisdiction turned on the relationship between those claims and
Albert's bankruptcy case. Whether those claims were "core proceedings"
bears on whether the bankruptcy court or the district court may enter final
judgment on the claims, and does not pertain to either court's subject
matter jurisdiction.

Albert's scattered pleading and ever-changing arguments have
confused the jurisdictional analysis. But again mindful of the standards
applied to the State Bar's motion to dismiss, we must reverse the dismissal
of Albert's claims under the California Constitution. We express no opinion
on any other aspect of those claims, including (1) whether the bankruptcy
court may or must decline to decide those claims on grounds other than
subject matter jurisdiction, (2) whether the California Supreme Court's final
decisions in the 2017 Suspension Order and the 2019 Suspension Order
have preclusive effect that bars those claims in whole or in part,
(3) whether the *Rooker-Feldman* doctrine bars a federal court from
addressing those claims, or (4) the merits of those claims.

**F.    The bankruptcy court correctly applied quasi-judicial immunity to
the Individual State Bar Defendants.**

Albert challenges the bankruptcy court's dismissal of all claims
against the Individual State Bar Defendants. She named them as
defendants as to the first claim for declaratory relief and the second claim
for violations of the automatic stay and discharge injunction. The

46

bankruptcy court followed our decision in *Albert I* and held that state bar
judges, prosecutors, and probation officers are "entitled to absolute quasi-
judicial immunity under the Civil Rights Act for acts performed in their
official capacities." 2019 WL 1594012, at *9. This is not only a correct
statement of law; it is law of the case. *See generally Am. Express Travel
Related Servs. Co. v. Fraschilla (In re Fraschilla)*, 235 B.R. 449, 454 (9th Cir.
BAP 1999) (explaining legal standards governing law of the case doctrine),
*aff'd*, 242 F.3d 381 (9th Cir. 2000) (table).

Albert does not explain how her claims could withstand quasi-
judicial immunity. In her FAC, she sued the Individual State Bar
Defendants for: (1) the instigation and prosecution of the disciplinary
proceedings themselves; (2) the resulting recommendations that led to the
California Supreme Court's issuance of the 2017 and 2019 Suspension
Orders; and (3) the monitoring and reporting associated with Albert's
probation as contemplated in those orders. These are prototypical quasi-
judicial activities that are protected by such immunity. S*ee Hirsh*, 67 F.3d at
715 (citing *Butz v. Economou*, 438 U.S. 478, 511-17 (1978)); *Demoran v. Witt*,
781 F.2d 155, 157 (9th Cir. 1985); *see also Fort v. Washington*, 41 F.4th 1141,
1144 (9th Cir. 2022) (holding that quasi-judicial immunity extended to the
administrative act of scheduling a parole hearing by the state's parole
board); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981) ("If an
official's role is functionally equivalent to that of a judge, the official will be

47

granted equivalent immunity.").

Albert alleges that the Individual State Bar Defendants' actions were motivated by politics, personal animus, or her failure to pay the discharged debts. But their motivations are irrelevant. As the Supreme Court has explained, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted).[9]

The bankruptcy court did not commit reversible error when it dismissed the Individual State Bar Defendants.

## G. The bankruptcy court's damages findings were not clearly erroneous.

Albert argues that the bankruptcy court should have awarded her damages for emotional distress and "delay and harassment." The court declined to do so. It explained that Albert provided insufficient evidence

---

[9] Albert also argues that there could never be quasi-judicial immunity for violating a federal court order. She cites *Hutto v. Finney*, 437 U.S. 678 (1978), and *Twin Sisters Gun Club v. Emlen*, 2018 WL 1335394, at *9 (E.D. Cal. Mar. 15, 2018), in support of her argument. *Hutto* is inapposite. It dealt with the **sovereign** immunity of state officials and whether that immunity insulated them from being held in contempt when they violated orders issued by a federal court that was hearing a matter in which the officials already were parties. 437 U.S. at 690-91. *Twin Sisters Gun Club* applied quasi-judicial immunity to one of the two individual defendants in that case but analyzed why the other defendant was not entitled to a separate and distinct **qualified** or **"good faith"** immunity. 2018 WL 1335394, at *10-11. Neither case addressed quasi-judicial immunity as it applies to the Individual State Bar Defendants.

that, during the 15-day period of the State Bar's admitted violation of the
discharge injunction, she suffered compensable damages on either ground.
It also found that there was insufficient evidence to justify a larger
damages award for this 15-day period on any other ground.

Albert does not explain why these findings were clearly erroneous.
She merely disagrees with the court's findings. She also cites several cases
that she maintains support the proposition that she **might** have incurred
compensable damages. *See Schmitt v. SN Servicing Corp.*, 2021 WL 3493754,
at *8-9 (N.D. Cal. Aug. 9, 2021); *Copeland v. Kandi (In re Copeland)*, 441 B.R.
352, 367-68 (Bankr. W.D. Wash. 2010); *In re Ramirez*, 183 B.R. at 590. None of
these cases help explain why the bankruptcy court's damages findings
were clearly erroneous on this record. Given our review of the record, we
cannot say that these findings were illogical, implausible, or without
support in the record.

Albert additionally argues that the bankruptcy court should have
awarded her at least $125,169.25 in punitive damages. The bankruptcy
court found that the evidence presented did not justify any punitive
damages. Once again, Albert has not done anything to demonstrate on
appeal that this finding was clearly erroneous. Moreover, a bankruptcy
court has no authority to award punitive damages for contempt other than
"relatively mild" non-compensatory fines. *See Ocwen Loan Servicing, LLC v.
Marino (In re Marino)*, 577 B.R. 772, 788–89 & n.12 (9th Cir. BAP 2017), *aff'd
in part, dismissed in part*, 949 F.3d 483 (9th Cir. 2020).

**H.     The challenged evidentiary and discovery rulings did not affect the outcome of this appeal.**

Albert challenges the bankruptcy court's decision to excuse the State Bar's former counsel, James Chang, from testifying at trial. She also disputes the exclusion from trial of some of her expert witnesses. Finally, she asserts that the court erroneously denied her motion to compel discovery.

The denial of discovery-related motions is not grounds for reversal absent a clear showing of prejudice. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1048 (9th Cir. 2016). Similarly, we only will reverse an evidentiary ruling "if any error would have been prejudicial to the appellant." *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012) (citing *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 811 (9th Cir. 2008)).

Albert has not demonstrated any prejudice arising from the bankruptcy court's evidentiary and discovery rulings. Nor is any evident to us in light of our review of the record and our analysis of this appeal. Consequently, Albert's arguments based on the bankruptcy court's evidentiary and discovery rulings do not justify reversal.

**I.     The bankruptcy court properly denied leave to amend.**

In three sentences, Albert argues that the bankruptcy court should have granted her leave to amend the portions of the FAC that the bankruptcy court dismissed with prejudice. But the trial court is not

obliged to grant leave to amend when amendment would be futile. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). The bankruptcy court denied leave after considering that the First Adversary and the Consolidated Adversary already had been pending for three years, Albert already had made two full attempts to plead legally sufficient claims for relief, and the dismissed claims largely suffered from "substantive" deficiencies. "[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed." *Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (cleaned up). Here, both the First Adversary and the Consolidated Adversary concerned essentially the same conduct by the State Bar, its officials, and its other representatives. Albert never explained how she could amend the FAC to cure its defects. The bankruptcy court did not abuse its discretion.

## CONCLUSION

For the reasons set forth above, we REVERSE the portions of the bankruptcy court's decision: (1) dismissing Albert's stay violation claim based on the State Bar's failure to promptly reinstate her license to practice law while she was in chapter 13 and its reimposition of the suspension after her case was converted to chapter 7; and (2) dismissing her claims under the California Constitution. As to those matters, we REMAND for further proceedings consistent with this decision. We AFFIRM the

51

bankruptcy court's decision in all other respects.

Concurrence begins on next page.

FARIS, Bankruptcy Judge, concurring:

I agree with the majority's result and reasoning. I write separately to
make three additional points.

## I.

In section A.4 of the Discussion, the majority holds that the State Bar
violated the automatic stay when it reimposed Albert's conditional
suspension after the court converted her case from chapter 13 to chapter 7.
The majority discusses and distinguishes prior decisions of this Panel and
the Ninth Circuit holding that the automatic stay does not bar enforcement
of a nondischargeable claim, at least against property that is not property
of the estate. *Watson v. City Nat'l Bank (In re Watson)*, 78 B.R. 232 (9th Cir.
BAP 1987); *Palm v. Klapperman (In re Cady)*, 266 B.R. 172 (9th Cir. BAP 2001),
*aff'd*, 315 F.3d 1121 (9th Cir. 2003). I agree that those decisions are
distinguishable, and I also think that they are no longer good law.

Section 362(a) does not distinguish between dischargeable and
nondischargeable debts. That section bars (among other things) the
enforcement of a "claim." § 362(a)(1), (5), (6). The Bankruptcy Code
provides a sweeping definition of the term "claim." § 101(5). The definition
of "claim" does not even mention, let alone distinguish between,
dischargeable and nondischargeable obligations. Further, the language of
§ 523 makes clear that an obligation is a "claim" whether it is dischargeable
or not. That section makes certain kinds of "debt" nondischargeable. "The
term 'debt' means liability on a claim." § 101(12). If the word "claim" did

1

not include nondischargeable obligations, then the reference to "debts" that are not "discharged" would be redundant.

It is equally clear that the automatic stay often protects property that is not property of the estate. For example, § 362(a)(1) blocks the "commencement or continuation . . . of [any] action or proceeding against the debtor [on a prepetition claim] or to recover a claim against the debtor that arose" prepetition. This section applies regardless of whether the claimant seeks recovery from estate or non-estate property. Similarly, § 362(a)(6) bars "any act to collect, assess, or recover a claim against the debtor that arose" prepetition. Again, this subsection effectively protects property whether it belongs to the estate or not.

In short, there is no textual support for the argument that the automatic stay does not apply to nondischargeable claims.

In *Watson* and *Cady*, this Panel and the Ninth Circuit held that "the automatic stay provisions of Section 362 do not preclude the execution of a judgment, which has been held by the bankruptcy court to be non-dischargeable, upon property of the debtor which is not property of the estate." *In re Watson*, 78 B.R. at 235; *see also In re Cady*, 266 B.R. at 176; *cf. Cal. State Univ. v. Gustafson (In re Gustafson)*, 111 B.R. 282, 286 (9th Cir. BAP 1990) ("We therefore determine that the automatic stay applies to preclude a creditor's attempts to collect a claim that is presumed, but not yet determined by the bankruptcy court, to be nondischargeable under section 523(a)(8)."), *rev'd on other grounds*, 934 F.2d 216 (9th Cir. 1991). Those cases

2

rely on policy justifications and legislative history, not the language of the statute. In *Watson*, the majority of this Panel was persuaded that there was "no valid reason" to give a debtor who has suffered a nondischargeable judgment "the opportunity to delay and/or hinder the creditor from executing upon post-petition property, which is not property of the bankruptcy estate . . . ." 78 B.R. at 234. The Panel also quoted legislative history stating that the automatic stay is "one means of protecting the debtor's discharge[,]" *id.* at 234 (quoting H.R. Rep. No. 95-595 (1978), *as reprinted* in U.S.C.C.A.N. 5787, 6299), and reasoned that "[t]here is a lack of logic in allowing a creditor release from a discharge only to hold him in place as if he were still affected by the discharge or the prospect thereof[,]" *id.* at 235. In *Cady*, this Panel followed *Watson* as "binding authority," 266 B.R. at 180, and the Ninth Circuit affirmed, simply adopting this Panel's decision, 315 F.3d 1121.

Judge Meyers dissented from the Panel's decision in *Watson*, pointing out that the language of the statute did not support the majority's decision. 78 B.R. at 236-37 (Meyers, J., dissenting). In *Cady*, Judge Berzon dissented from the Ninth Circuit's majority decision, agreeing with Judge Meyers' reasoning in *Watson*. 315 F.3d at 1122-23 (Berzon, J., dissenting).

The dissenters were prescient. Almost two decades after Judge Berzon wrote her dissent, the Supreme Court unanimously held in *City of Chicago v. Fulton*, 592 U.S. 154 (2021), that the City of Chicago did not violate the automatic stay when it retained possession of a vehicle that it

3

had impounded before the debtor filed a bankruptcy petition. The Court's analysis focused entirely on the language of § 362 (including that section prior to an amendment) and a related provision (§ 542(a)). The Court was aware that its decision would have negative practical consequences for debtors, because Justice Sotomayor explained them in detail in a separate opinion. 592 U.S. at 163-64 (Sotomayor, J., concurring). But those consequences did not change any justice's mind. Even Justice Sotomayor concurred.

*Fulton* makes clear that, when interpreting § 362, we must begin with the statute's language, and our analysis must also end there unless the statute is ambiguous. As Judges Berzon and Meyers pointed out, the language of § 362 does not support the holding of *Watson*, *Gustafson*, or *Cady*. I would therefore hold that those decisions are no longer good law. This reinforces our unanimous holding that the State Bar violated the automatic stay when it reimposed Albert's suspension upon the conversion to chapter 7.

II.

Our partial reversal of the bankruptcy court's decision may not lead to a victory for Albert.

First, if she is proceeding on a contempt theory, she would have to surmount the *Taggart* standard by proving that there was no "fair ground of doubt" that the State Bar's reinstatement of the suspension would violate the automatic stay. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019).

4

Given that *Watson* and *Cady* were on the books when the State Bar acted, this may be an impossible task.

Second, whether she employs a contempt theory or § 362(k), she would have to prove that she suffered compensable damages due to the stay violation. These damages would be limited at best, and might be nonexistent, because the State Bar was fully entitled to reimpose the suspension when Albert received her discharge. In other words, the State Bar jumped the gun by only a few months. Albert would have to show that she could have restarted her practice and made it profitable between the time the State Bar incorrectly reimposed the suspension (in mid-2018) and the date of her discharge (February 26, 2019).

Third, the bankruptcy court might (or might not) exercise its discretionary power to grant the State Bar retroactive relief from the stay. *See Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21 (9th Cir. BAP 2003) ("A bankruptcy court has authority to [grant]. . . annulment [of the automatic stay] providing retroactive relief, which, if granted, moots any issue as to whether the violating sale was void because, then, there would have been no actionable stay violation." (citation omitted)).

## III.

We do not condone any of Albert's conduct. The State Bar charged her with very serious professional misconduct, including (in effect) stealing money from her clients. Her briefing and oral argument before this Panel were incompetent. She richly deserved the suspension and other discipline

5

that the California Supreme Court imposed.

There is an irony at the core of this case: if the supreme court had imposed an unconditional suspension, or had simply disbarred her, Albert would have no recourse under the Bankruptcy Code. Albert has claims under the Bankruptcy Code only because the supreme court offered her a way to salvage her legal career. Although we hold that the State Bar failed (in some relatively minor respects) to comply with the Bankruptcy Code, our decision should not meaningfully hinder the crucial work of the State Bar in protecting the public from incompetent and unethical attorneys.